# EXHIBIT B


Westlaw.

Slip Copy  
2004 WL 2203724 (E.D.Pa.)  
(Cite as: 2004 WL 2203724 (E.D.Pa.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available

United States District Court,  
E.D. Pennsylvania  
Mary Ellen JONES, Arcieca Shepperd, Plaintiffs,  
v.  
AAMES FUNDING CORPORATION, et al.,  
Defendants.  
No. Civ.A. 04-MC-119.

Sept. 28, 2004.

Brian R. Mildenberg, Sherri J. Braunstein, Mildenberg & Stalbaum PC, Philadelphia, PA, for Plaintiff.

Barbara Kiely, Philadelphia, PA, Dean C. Waldt, Ballard Spahr Andrews & Ingersoll, LLP, Voorhees, NJ, for Defendants.

*MEMORANDUM AND ORDER*

DAVIS, J.

I. INTRODUCTION

\*1 Presently before the Court is the Recommendation of the Honorable Bruce Fox, United States Bankruptcy Judge, dated July 6, 2004 (Doc. No. 1). For the reasons that follow, it is hereby ORDERED that the reference in this case is WITHDRAWN.

II. FACTUAL AND PROCEDURAL HISTORY

In or around September of 2001, Plaintiff Mary Jones, an elderly low-income homeowner, contacted Defendant Aames Funding Corporation, which is licensed to do business in Pennsylvania as Aames Home Loan ("Aames"), in an effort to refinance her mortgage. Pl. Amend. Compl. at 5-6; Def. Aames Funding Corp. Answer to Pl. Amend. Compl. at 2. Aames allegedly advised Jones that consolidating her debt and refinancing her mortgage with their company would be financially advantageous. As a result, Plaintiff decided to refinance her mortgage with Aames. Pl. Amend. Compl at 6. Plaintiff Arcieca Shepperd co-signed the mortgage with her mother. Id. Plaintiff Jones contends that Aames delivered to her and Shepperd a substantially different loan than was discussed in initial conversations between the parties without her knowledge or consent. Though Aames had communicated to Plaintiffs that the refinancing would result in a cash payment to them of $5,000, Plaintiffs received only $2,000 from Defendants at settlement. According to Plaintiffs, the HUD-1 form states that Defendants disbursed $3,453.07 to Plaintiffs at settlement and assessed them $6,407.73 in various loan-related fees. Id. at 6-7. In addition, Plaintiff Jones contends that Aames made a payment to her original mortgage company that exceeded the principal balance on the mortgage by $4,000 without her knowledge, an amount Plaintiff assumes is a prepayment penalty. Id. at 6. Under the terms of the Aames loan, Plaintiff, who lives on a fixed monthly Social Security income of $579.40, is required to make monthly payments of $550.43. Id. at 8.

Defendant Countrywide Home Loans began servicing the loan at some point in 2002, and continues to do so. Id. at 7. Defendant Aames assigned the mortgage to Defendant Bankers Trust Company of CA, who securitized the loan into Defendant Aames Trust, the current holder of the loan. Id. at 10. On or about September 24, 2003, Plaintiff Jones attempted to rescind the loan by sending a letter to Defendants, who have failed to respond to this request in any way. Id. at 12. Plaintiff alleges that the predatory lending practices engaged in by Defendants placed her in an untenable financial position and proximately caused her to file for Chapter 13 bankruptcy protection to save her home. Id. at 10.

On March 3, 2004, Plaintiff Mary Jones filed an adversary complaint against the various Defendants named above, claiming violations of the Truth in

Slip Copy
2004 WL 2203724 (E.D.Pa.)
(Cite as: 2004 WL 2203724 (E.D.Pa.))

Page 2

Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), the Home Ownership and Equity Protection Act of 1994, 5 U.S.C. § 1639(a) et seq. ("HOEPA"), the Real Estate Settlement Procedures Act, 12 U.S.C. § 2501 et seq. ("RESPA"), the Equal Credit Opportunity Act, 15 U.S.C. § 1691(e) ("ECOA"), the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 201-1 et seq., and common law breach of contract and fraud. Pl. Am. Compl. at 2. Plaintiff Sheppard joined the proceedings as co-mortgagor of the alleged predatory mortgage by way of the First Amended Complaint filed by Plaintiffs on May 18, 2004. Plaintiffs have demanded a trial by jury and seek damages and equitable and declaratory relief. Id. at 12-13, 14-15, 16, 18, 19-20, 22-23; 24-25. All Defendants have answered Plaintiff's Complaint, and have failed to object or consent to Plaintiff's request for a jury trial.

*2 On July 6, 2004, the Honorable Bruce Fox, United States Bankruptcy Judge, recommended that these proceedings be heard in district, rather than bankruptcy, court (Doc No 1). Applying Third Circuit precedent, Judge Fox found that Plaintiffs' claims are non-core claims. Recommend at 3. Judge Fox further found that the bankruptcy court does not have subject matter jurisdiction over non-core claims unless all parties consent to that court's entry of a final judgment. Id. at 4. As Defendants have not consented to a jury trial by the bankruptcy court on these issues, Judge Fox recommended that this Court recognize the bankruptcy court's lack of jurisdiction and withdraw the reference. Id. at 4-5.

III. STANDARD OF REVIEW

In reviewing a bankruptcy court's recommended findings, the district court applies "a clearly erroneous standard to findings of fact ... [and] a de novo standard of review to questions of law." Berkery v. Comm'r, Internal Revenue Serv., 192 B.R. 835, 837 (E.D.Pa.1996) (citing, inter alia, Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir.1981)), aff'd, 111 F.3d 125, 1997 WL 169267 (1997). De novo review requires the district court to make its own legal conclusions, "without deferential regard to those made by the bankruptcy court." Fleet Consumer Discount Co. v. Graves (In re Graves), 156 B.R. 949, 954 (E.D.Pa.1993), aff'd, 33 F.3d 242 (3d Cir.1994).

The Supreme Court has held that a finding of fact, even if supported by evidence, is clearly erroneous "when ... the reviewing court is left with the definite and firm conviction that a mistake has been committed." Berkery, 192 B.R., at 837 (citing United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

IV. DISCUSSION

Upon review, this Court agrees with Judge Fox's determination that Plaintiff's claims do not give rise to core bankruptcy proceedings. The Third Circuit considers a proceeding to be core under 28 U.S.C. § 157 "if it invokes a substantive right provided by Title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.), 72 F.3d 1171, 1178 (3d Cir.1996) (quoting In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 267 (3d Cir.1991)). A core proceeding "must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be peripheral state law involvement." Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc., 107 B.R. 34, 39 (D.Del.1989) (quoting Acolyte Elec. Corp. v. City of New York, 69 B.R. 155, 173 (Bankr.E.D.N.Y.1986)). Here, Plaintiffs raise various federal and state statutory and common law claims against Defendants based on the pre-petition issuance of and collection on an allegedly predatory mortgage. These are not claims that arise from a substantive right provided by federal bankruptcy law, nor are they claims that only arise in the context of a bankruptcy proceeding. See e.g., Beard v. Braunstein, 914 F.2d 434, 443 (3d Cir.1990) (stating that suit for pre-petition contract damages is non-core); In re Derienzo, 254 B.R. 334, 338 (M.D.Pa.2000) (holding that claimed violations of TILA and Pennsylvania consumer protection laws were non-core); In re Second Pine, Inc., 107 B.R. 48, 49 (E.D.Pa.1989) (stating that fraudulent misrepresentation claim based on pre-petition representations and reliance was non-core). Because each of these claims can be brought independent from the bankruptcy proceedings and can be adjudicated according to state and federal laws without reference to the Bankruptcy Code, they are non-core.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2203724 (E.D.Pa.)
(Cite as: 2004 WL 2203724 (E.D.Pa.))

Page 3

*3 This Court also agrees with Judge Fox's finding that Plaintiffs' demand for and Defendants' refusal to consent to a jury trial removes this adversary proceeding from the bankruptcy court's jurisdiction. The Third Circuit has held that "a bankruptcy court cannot conduct a jury trial in a non-core proceeding." *Beard*, 914 F.2d at 443. Section 157 states that only the district court can enter a final judgment or order in a non-core matter heard by the bankruptcy court. The bankruptcy court is limited to issuing proposed findings of fact and law and the district court has the power to conduct a de novo review of any matter timely and specifically objected to by the parties. 28 U.S.C. § 157(c)(1). The Third Circuit's holding in *Beard* is premised on the conflict between section 157(c)'s limitation on the bankruptcy court's ability to render a final judgment in non-core matters and the Seventh Amendment's guarantee that "no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." *Id*. Were a fact to be found by a jury in a non-core proceeding in bankruptcy court, that fact is potentially reviewable de novo by the district court, a situation that is incompatible with the Seventh Amendment.

In *Beard*, however, the Third Circuit indicated that a bankruptcy judge could conduct a jury trial in a non-core proceeding so long as it had the consent of all parties. *Id*. n. 14. Consent may be implied, but "a court should not lightly infer from a litigant's conduct consent to have private state-created rights adjudicated by a non-Article III bankruptcy judge." In re Derienzo, 254 B.R. at 339 (quoting *In re Pioneer Inv. Servs. Co.*, 946 F.2d 445, 449 (6th Cir.1991)). Plaintiffs have demanded a jury trial in the bankruptcy court on non-core matters. There is nothing in the record that suggests that Defendants have explicitly consented to a jury trial in the bankruptcy court. In addition, Defendants could have objected to the bankruptcy court's July 6, 2004 recommendation for withdrawal, thereby expressly or implicitly consenting to the bankruptcy court's issuance of a final judgement on these matters. Defendants did not do so. As such, the bankruptcy court lacks jurisdiction over these proceedings, and the reference must be withdrawn pursuant to 28 U.S.C. § 157(d).

V. CONCLUSION

For all these reasons, the Recommendation of the Honorable Bruce Fox, United States Bankruptcy Judge, dated July 6, 2004 (Doc. No.1) is ACCEPTED and the reference in this case is WITHDRAWN. An appropriate order follows.

2004 WL 2203724 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

· 2:04MC00119 (Docket)
(Jul. 09, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.