## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE IT GROUP, INC., et al. | ) Case No. 02-10118 (MFW) |
| Debtors, | ) Jointly Administered |
| | ) |
| ———————————————— | ) |
| | ) |
| IT LITIGATION TRUST, | ) |
| Plaintiff, | ) Civ. A. No. 04-CV-1268 (KAJ) |
| | ) |
| v. | ) |
| | ) |
| DANIEL A. D'ANIELLO, FRANCIS J. | ) |
| HARVEY, JAMES C. McGILL, | ) |
| RICHARD W. POGUE, PHILLIP B. | ) |
| DOLAN, E. MARTIN GIBSON, ROBERT | ) |
| F. PUGLIESE, CHARLES W. SCHMIDT, | ) |
| JAMES DAVID WATKINS, ANTHONY | ) |
| J. DeLUCA, HARRY J. SOOSE, THE | ) |
| CARLYLE GROUP, THE CARLYLE | ) |
| GROUP, L.L.C., CARLYLE PARTNERS | ) JURY TRIAL DEMANDED |
| II, L.P., CARLYLE SBC PARTNERS, II, | ) |
| L.P., CARLYLE INTERNATIONAL | ) |
| PARTNERS II, L.P., CARLYLE | ) |
| INTERNATIONAL PARTNERS III, C/S | ) |
| INTERNATIONAL PARTNERS, | ) |
| CARLYLE INVESTMENT GROUP, L.P., | ) |
| CARLYLE-IT INTERNATIONAL | ) |
| PARTNERS, L.P., CARLYLE-IT | ) |
| INTERNATIONAL PARTNERS II, L.P., | ) |
| CARLYLE-IT PARTNERS L.P., and T.C. | ) |
| GROUP, L.L.C., | ) |
| Defendants. | ) |

## DEFENDANTS' BRIEF IN SUPPORT OF JOINT MOTION
## TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Date: March 2, 2005

Mark D. Collins (ID No. 2981)
Marcos A. Ramos (ID No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: ramos@rlf.com

Thomas L. Patten
Laurie B. Smilan
David A. Becker
LATHAM AND WATKINS, LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Telecopier: (202) 637-2201
E-mail: tom.patten@lw.com

*Attorneys for Defendants Daniel A.
D'Aniello, Francis J. Harvey, James C.
McGill, Richard W. Pogue, Phillip B. Dolan,
E. Martin Gibson, Robert F. Pugliese,
Charles W. Schmidt, James David Watkins,
The Carlyle Group, The Carlyle Group
L.L.C., Carlyle Partners II, L.P., Carlyle
SBC Partners II, L.P., Carlyle International
Partners II, L.P., Carlyle International
Partners III, C/S International Partners,
Carlyle Investment Group, L.P., Carlyle-IT
International Partners, L.P., Carlyle-IT
International Partners II, L.P., Carlyle-IT
Partners L.P. and T.C. Group, L.L.C.*

Roger D. Anderson (ID No. 3480)
SMITH, KATZENSTEIN & FURLOW LLP
800 Delaware Avenue, 7th Floor,
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Email: randerson@skfdelaware.com

Charles A. De Monaco
Kimberly L. Haddox
DICKIE MCCAMEY & CHILCOTE, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222
Telephone: (412) 392-5523
Telecopier: (412) 392-5367
Email: demonac@dmclaw.com

*Attorneys for Defendant,
Harry J. Soose, Jr.*

Ronald S. Gellert (ID No. 4259)
ECKERT, SEAMANS, CHERIN & MELLOTT,
LLC
The Towne Center
4 East 8th Street, Suite 200
Wilmington, DE 19801
Telephone: (302) 425-0430
Email: rgellert@eckertseamans.com

Mark A. Willard
Paul D. Steinman
F. Timothy Grieco
ECKERT SEAMANS CHERIN & MELLOT,
LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219-2788
Telephone: (412) 566-6000
Telecopier: (412) 566-6099
Email: mark.willard@escm.com

*Attorneys for Defendant, Anthony J.
DeLuca*

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

II.    NATURE AND STAGE OF PROCEEDINGS ............................................ 3

    A.     PROCEDURAL POSTURE .................................................... 3

    B.     NATURE OF PLAINTIFF'S CLAIMS ......................................... 4

III.   ARGUMENT ..................................................................... 6

    A.     PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED
          PURSUANT TO FED. R. CIV. P. 12(B)(1) BECAUSE THE COURT
          DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER
          THOSE CLAIMS ......................................................... 6

          1.     Standard of Review ............................................. 6

          2.     Plaintiff's Claims Do Not Fall Within This Court's Limited
               Bankruptcy Jurisdiction ........................................ 6

               a.     Plaintiff's Claims Do Not Arise in, Arise Under And
                    Are Not Related To A Bankruptcy Case Pursuant to
                    28 U.S.C. § 1334(b) ........................................ 8

          3.     The Exercise of Supplemental Jurisdiction Over the State Law
               Claims Would be Inappropriate .................................. 13

               a.     This Court Does Not Have Supplemental Jurisdiction
                    Over the State Law Claims Because They Are Not
                    Part of The Same "Case or Controversy" As The
                    Avoidance and Fraudulent Transfer Claims ................... 14

               b.     Even If There Is Supplemental Jurisdiction Over The
                    State Law Claims, The Court Should Decline to
                    Exercise It ............................................... 16

IV.    CONCLUSION .................................................................. 20

### TABLE OF AUTHORITIES

**Cases**

*Antico Vacca Technologies, Inc. v. Steel Technologies, Inc. (In re Gruppo Anttco, Inc.)*, 2004 Bankr. LEXIS 2162 (Bankr. D. Del. Nov. 10, 2004) .................................... 11

*Belcufine v. Aloe*, 112 F.3d 633 (3d Cir. 1997) ...................................................... 8

*Binder v. Price Waterhouse & Co., LLP (In re: Resorts International, Inc.)*, 372 F.3d 154 (3d Cir. 2004) ...................................................................... passim

*Bodenner v. Graves*, 828 F. Supp. 516 (W.D. Mich. 1993)...................................... 18

*Brown v. G.E. Capital Corp. (In re Foxmeyer Corp.)*, 296 B.R. 327 (Bankr. D. Del. 2003) ........................................................................................ 15

*Carpet Group Int'l v. Oriental Rug Imp. Ass'n*, 227 F.3d 62 (3d Cir. 2000) ........... 6

*Carter v. Rodgers*, 220 F.3d 1249 (11th Cir. 2000) .................................................... 8

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) ........................................................ 7

*De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003) ........................... 17, 18

*First Western SBLC, Inc. v. Mac-Tac, Inc.*, 231 B.R. 878 (D.N.J. 1999).............. 10

*Freer v. Mayer*, 796 F. Supp. 89 (S.D.N.Y. 1992) .................................................. 19

*Glinka v. Abraham & Rose Co., Ltd.*, 199 B.R. 484 (D. Vt. 1996) ......................... 16

*Grimes v. Graue (In re Haws)*, 158 B.R. 965 (Bankr. S.D. Tex. 1993) .................. 12

*Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999) ....................................................... 9

*Hameli v. Nazario*, 930 F. Supp. 171 (D. Del. 1996) ............................................. 16

*Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.*, 107 B.R. 34 (D. Del. 1989).................................................................................................. 9

*Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n*, 997 F.2d 581(9th Cir. 1993) ................. 10

*In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004) .......................... 11

*In re Doctors Hospital of Hyde Park, Inc.*, 308 B.R. 311 (N.D. Ill. 2004).............. 8

*In re Integrated Health Services, Inc.*, 291 B.R. 615 (Bankr. D. Del. 2003)........... 9

In re LaRoche Industries, Inc., 312 B.R. 249 (Bankr. D. Del. 2004)...................... 10

*In re Northwestern Corp.*, 319 B.R. 68 (D. Del. 2005) ............................................ 9

*In re Radcliffe*, 317 B.R. 581 (D. Conn. 2004) ...................................................... 16

*Jackson v. City of San Antonio*, 270 F.R.D. 55 (W.D. Tex. 2003) ......................... 17

*Johnson v. Cullen*, 925 F. Supp. 244 (D. Del. 1996) .............................................. 19

*Jones v. Aames Funding Corp.*, 2004 WL 2203724, *2 (E.D. Pa. 2004) ................. 9

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994) ................... 7

*Liberty Mutual Ins. Co. v. Lone Star Indus.*, 313 B.R. 9 (D. Conn. 2004) ............. 16

*Lyon v. Whismam*, 45 F.3d 758 (3d Cir. 1995) .............................................. 14, 16

*MarchFirst, Inc. v. LeaveLaw.com, Inc.*, 2004 WL 756605, *2 (N.D. Ill. Feb. 27, 2004) ........................................................................................................... 15

*Martin v. Philadelphia Facilities Management Corp.*, 2004 WL 1628922, *1 (E.D. Pa. July 16, 2004) ..................................................................................... 18

*Mellon v. Delaware & Hudson Ry. Co. (In re Delaware & Hudson Ry. Co.)*, 122 B.R. 887 (D. Del. 1991) .................................................................................. 10

*Millipore Corp. v. University Patents, Inc.*, 682 F. Supp. 277, 231 (D. Del. 1987) ................. 8

*Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189 (9th Cir. Nev. 2005) ............................................................................................................. 11

*Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977) .............................. 6

*Nanavanti v. Burdette Tomlin Mem. Hosp.*, 857 F.2d 96 (3d Cir. 1988) ............................... 14

*Occunomix International, LLC v. North Ocean Ventures, Inc.*, 2003 WL 22240660, *1 (S.D.N.Y. Sept. 30, 2003) ....................................................... 18

*Official Committee of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352 (E.D.Pa. 2000) ............................................................................................................. 16

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) ............................................................ 10

*Parker & Parsley Petroleum v. Dresser Indus.*, 972 F.2d 580 (5th Cir.1992) ..................... 20

*PHP Liquidating, LLC. v. Robbins*, 291 B.R. 592 (D. Del. 2003) .................................... 15, 19

*Portfolio Lease Funding Corp. v. Seagate Tech, Inc., (In re Atlantic Computer Sys., Inc.)*, 163 B.R. 704 (Bankr. S.D.N.Y. 1994) .............................................. 11

*Rahl v. Bande*, 316 B.R. 127 (S.D. N.Y. 2004) ................................................................. 11

*Samson v. Harvey's Lake Borough*, 881 F. Supp. 138 (M.D. Pa. 1995) ............................... 19

*Schoener v. Mendel*, 1996 WL 284996 (E.D. Pa. May 24, 1996) ........................................ 14

*Selinger v. Whiteman (In re Midstate Mortg. Investors, Inc.)*, 105 Fed. Appx. 420 (3d Cir. 2004) .................................................................................................. 11

*Shugrue v. Continental Airlines*, 977 F. Supp. 280 (S.D.N.Y. 1997) .................................... 12

*Simmons v. Johnson, Curney & Fields, P.C.*, 205 B.R. 834 (W.D. Tx. 1997) ..................... 18

*Stadler v. McCulloch*, 949 F. Supp. 311 (E.D. Pa. 1996) .................................................... 14

*Torkelson v. Maggio (In re Guild and Gallery Plus, Inc.)*, 72 F.3d 1171 (3d Cir. 1996) ............................................................................................................... 7

*Trans World Airlines, Inc. v. Karabu Corp.*, 196 B.R. 711 (Bankr. D. Del. 1996) ................. 8

*TTS, Inc. v. Stackfleth*, 142 B.R. 96 (Bankr. D. Del. 1992) .................................................. 10

*Youngblood Group v. Lufkin Fed. Savings and Loan Assoc.*, 932 F. Supp. 859 (E.D. Tex. 1996) ...................................................................................... 18, 20

## Other Authorities

11 U.S.C. § 1141(b) ............................................................................................. 11

11 U.S.C. § 548 .................................................................................................... 15

28 U.S.C. § 1334 ............................................................................................ passim

28 U.S.C. § 1367 ............................................................................................ passim

28 U.S.C. § 157 ............................................................................................. 4, 6, 7

Federal Rule of Civil Procedure 12 ............................................................... 1, 6

Patrick D. Murphy, *A Federal Practitioner's Guide to Supplemental Jurisdiction
Under 28 U.S.C. § 1367*, 78 Marq. L. Rev. 973, 1024 (1995) ....................... 17

**DEFENDANTS' BRIEF IN SUPPORT OF JOINT MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 1334(c)(1), Defendants Daniel A. D'Aniello, Francis J. Harvey, James C. McGill, Richard W. Pogue, Phillip B. Dolan, E. Martin Gibson, Robert F. Pugliese, Charles W. Schmidt, James David Watkins, Anthony J. DeLuca, Harry J. Soose, Jr., The Carlyle Group, The Carlyle Group L.L.C., Carlyle Partners II, L.P., Carlyle SBC Partners II, L.P., Carlyle International Partners II, L.P., Carlyle International Partners, III, C/S International Partners, Carlyle Investment Group, L.P., Carlyle-IT International Partners, LP, Carlyle-IT International Partners, II, L.P., Carlyle-IT Partners L.P., and T.C. Group, L.L.C. (collectively, "Defendants"), by and through their respective undersigned counsel, hereby move this Court to dismiss Counts I through V and IX of the First Amended Complaint filed on January 28, 2005 (the "Amended Complaint" or "AC"). In support of this motion, Defendants state as follows.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants in this case are former directors, officers and shareholders of the now-defunct IT Group, Inc. ("IT Group" or the "Company"). The claims in this case were originally asserted by the Official Committee of Unsecured Creditors (the "Creditors Committee") in the IT Group bankruptcy proceeding, Adversary Proceeding No. 04-51336-MFW. The Creditors Committee's claims have since vested in the IT Litigation Trust, which has been substituted as Plaintiff. Subsequently, this Court, *sua sponte*, withdrew the reference of this adversary proceeding to the Bankruptcy Court. The Litigation Trust has since filed the Amended Complaint which is the subject of this Motion to Dismiss.

The asserted basis for jurisdiction in the Amended Complaint is Plaintiff's unfounded allegation that its claims fall within this Court's bankruptcy jurisdiction. However, this Court lacks subject matter jurisdiction over Plaintiff's claims for breach of fiduciary duty, corporate waste, and aiding and abetting breach of fiduciary duty (Counts I-

V), and one statutory count for unlawful payments of dividends under Delaware law (Count IX) (the "State Law Claims"). The State Law Claims are wholly separate from, and predominate over, the avoidance and fraudulent transfer claims asserted in Counts VI, VII, and VIII of the Amended Complaint. As quintessentially state-law causes of action regarding the Defendants' alleged pre-petition conduct, they do not fall within the scope of this Court's bankruptcy jurisdiction. As the Third Circuit recently made clear in *Binder v. Price Waterhouse & Co., LLP (In re: Resorts International, Inc.)*, 372 F.3d 154 (3d Cir. 2004) ("*Binder*"), where matters – such as the State Law Claims here – do not have a close nexus to a bankruptcy plan or proceeding, and do not affect the interpretation, implementation, consummation, execution or administration of a confirmed plan or incorporated litigation agreement – there is no bankruptcy jurisdiction over such claims.

Accordingly, because the Plaintiff's claims do not satisfy the threshold legal requirements for bankruptcy jurisdiction, this Court lacks subject matter jurisdiction over the State Law Claims and such claims should be dismissed. Moreover, the exercise of supplemental jurisdiction over the State Law Claims under 28 U.S.C. § 1367 would be inappropriate here. As an initial matter, the subject matter of the State Law Claims – broad allegations of mismanagement and mis-direction of IT Group over a period of approximately five years – do not arise from the same nucleus of common fact as the claims asserted in Counts VI, VII, and VIII and are thus not part of the same "case or controversy" under 28 U.S.C. § 1367(a). Even if the Court were to determine that the avoidance and fraudulent conveyance claims were part of the same case or controversy as the State Law Claims, discretionary dismissal is appropriate under 28 U.S.C. § 1367(c), because the State Law Claims predominate, both in terms of the necessary proof and the nature of recovery likely sought. Consequently, the State Law Claims should therefore be dismissed.

In the event the Court determines that it does have jurisdiction over the State Law Claims and denies this Motion, Defendants have filed contemporaneously herewith a Joint Motion to Dismiss For Failure to State a Claim, and Brief in Support thereof, stating

2

grounds on which Plaintiff's claims should be dismissed on the merits. That Motion includes grounds for dismissal of the avoidance and fraudulent transfer claims asserted in Counts VI, VII, and VIII of the Amended Complaint, which are not the subject of this Motion regarding subject matter jurisdiction. In addition, certain foreign Carlyle-affiliated Defendants and Defendant Richard W. Pogue have filed contemporaneously herewith a Motion to Dismiss for lack of personal jurisdiction and Memorandum in support.[1]

## II.    NATURE AND STAGE OF PROCEEDINGS

### A.    PROCEDURAL POSTURE

IT Group filed its petition for bankruptcy in the U.S. District Court for the District of Delaware on January 16, 2002. The bankruptcy proceeding was referred to the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On January 15, 2004, the "Creditors Committee" commenced this action by filing a complaint against the Defendants, which was served on Defendants on or about May 4, 2004.

The First Amended Joint Chapter 11 Plan of the IT Group, Inc. (the "Plan") was confirmed by Order of the Bankruptcy Court dated April 5, 2004, and the Effective Date of the Plan was subsequently established as April 30, 2004. Pursuant to the pertinent provisions of the confirmed Plan (including Sections 4.2, 7.10 (I) and 7.11 of the Plan), upon the occurrence of the Effective Date, title to all of the assets of the Debtors, including the remaining causes of action, vested in the Litigation Trust, if the proper election of the Litigation Trust Alternative was made prior to the Effective Date, or otherwise in the reorganized Debtor entities. *See* Section 4.2 of Plan. Under the Plan, the Litigation Trust is therefore assigned extensive post-confirmation administrative duties. By a Stipulation among the parties dated August 27, 2004, the parties agreed to substitute the Litigation Trust

---

[1]    The Defendants' filing of the instant Motion To Dismiss is not intended to waive or concede any defenses, including any defense relating to personal jurisdiction.

as Plaintiff in this action. The Bankruptcy Court approved the Stipulation in its entirety on September 1, 2004. (BK No. 04-51336(MFW), D.I. 17).

On September 8, 2004, this Court withdrew the reference of this adversary proceeding to the bankruptcy court pursuant to 28 U.S.C. § 157(d). *See* Order dated September 8, 2004 in main IT Group bankruptcy proceeding (BK No. 02-10118(MFW), D.I. 5498). By agreement among the parties, Defendants were permitted until October 29, 2004 to move, answer or otherwise respond to the Complaint, unless otherwise agreed by the parties or ordered by the Court. On October 29, 2004, Defendants moved to dismiss the Complaint on the following grounds: this Court lacked subject matter jurisdiction over the State Law Claims set forth in Counts I through V; the avoidance claims set forth in Counts VI and VII failed to state a claim; and the Court lacked personal jurisdiction over certain, so-called Carlyle Defendants (below) and individual Defendant Pogue. By agreement among the parties, Plaintiff was permitted until January 28, 2005 to respond to the motions to dismiss. On January 28, 2005, Plaintiff filed the Amended Complaint. By agreement among the parties, Defendants have been permitted until March 2, 2005 to move, answer, or otherwise respond to the Amended Complaint.

B.   **NATURE OF PLAINTIFF'S CLAIMS**

Plaintiff's Amended Complaint asserts nine separate claims for relief. Counts I through V and IX are based upon the Defendants' alleged conduct with respect to the management and direction of the business affairs of IT Group. The State Law Claims allege that IT Group's directors and officers breached their fiduciary duties under both a common law fiduciary duty theory and under the "Trust Fund Doctrine" (*see* AC ¶¶ 63-66), and wasted IT Group's corporate assets (*see* AC ¶¶ 67-71). The State Law Claims further allege that the entities denominated the "Carlyle Defendants"[2] "controlled" IT Group and its Board

---

[2]   Plaintiff's Amended Complaint defines the Carlyle Defendants to include defendants The Carlyle Group, the Carlyle Group, L.L.C., Carlyle Partners II, L.P., Carlyle SBC Partners II, L.P., 
*(Footnote continued on next page)*

of Directors (*see* AC ¶¶ 30-31), and that through this purported control, the Carlyle Defendants breached a fiduciary duty they owed to IT Group and its creditors, and aided and abetted the alleged breach of fiduciary duty by the Board of Directors. *See* AC ¶¶ 58-79. Count IX of the State Law Claims alleges that the Director Defendants[3] made unlawful dividend payments under Delaware state law. *See* AC ¶¶ 116-118.[4]  The State Law Claims do not assert any cause of action which arises under either the Bankruptcy Code or the IT Group Plan of Reorganization.  Nor do the causes of action asserted in the State Law Claims require any interpretation of or reference to the Bankruptcy Code or the IT Group Plan for their resolution.  The Sixth, Seventh and Eighth Claims For Relief assert unrelated avoidance and fraudulent transfer claims under the U. S. Bankruptcy Code against a subset of the named Defendants.[5]  *See* AC ¶¶ 80-115.

---

Carlyle International Partners H., L.P., Carlyle International Partners III, L.P., C/S International Partners, Carlyle Investment Group, L.P., Carlyle-IT International Partners, L.P., Carlyle-IT International Partners II, L.P., Carlyle-IT Partners, L.P., and TC Group, L.L.C. *See* AC ¶ 26.

[3]  The Director Defendants are defined as individual Defendants D'Aniello, Harvey, McGill, Pogue, Dolan, Gibson, Pugliese, Schmidt, Watkins, and DeLuca. *See* AC Preface.

[4]  Plaintiff denominates the State Law Claims as follows: "Breach of Fiduciary Duties against the Directors and Officers" (Count I); "Breach of Fiduciary Duties against the Directors and Officers under the 'Trust Fund Doctrine'" (Count II); "Waste of Corporate Assets against the Directors and Officers" (Count III); "Breach of Fiduciary Duties against the Carlyle Defendants" (Count IV); "Aiding and Abetting Breach of Fiduciary Duty against the Carlyle Defendants" (Count V); "Liability of Director Defendants for Unlawful Payment of Dividends Under Del. Code §174" (Count IX).

[5]  Count VI is brought against individual Defendants Gibson, Harvey, Pogue, Pugliese, Schmidt and Watkins, and each of the Carlyle-affiliated defendants.  Count VII is brought against only the Carlyle-affiliated defendants.   Count VIII is brought only against the Carlyle-affiliated defendants, as well as the Defendants listed in Count VI.

## III.    ARGUMENT

**A.    PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED PURSUANT TO FED R. CIV. P. 12(B)(1) BECAUSE THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THOSE CLAIMS**

### 1.    Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of jurisdiction over the subject matter." This motion presents a facial challenge to subject matter jurisdiction. *See Carpet Group Int'l v. Oriental Rug Imp. Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000) (citing *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A facial challenge attacks the allegations as pled in the complaint, and, as with a motion under Rule 12(b)(6), the court must presume the truthfulness of such allegations. *See id.* Here, Defendants present a facial challenge to the Plaintiff's claims: the Court lacks subject matter jurisdiction over such claims, even assuming the truth of the allegations pled.

### 2.    Plaintiff's Claims Do Not Fall Within This Court's Limited Bankruptcy Jurisdiction

Plaintiff's State Law Claims in this case must be dismissed because they do not fall within this Court's bankruptcy jurisdiction. The entirety of the Amended Complaint's jurisdictional allegations are that "this [case] constitutes a civil proceeding involving title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), or arising in or related to the . . . [IT Group] jointly administered chapter 11 cases," and that the Court "also has supplemental jurisdiction over the Delaware State law claims pursuant to title 28 U.S.C. §1367." AC ¶ 27. But scrutiny of the remaining allegations of the Amended Complaint demonstrates that the State Law Claims do not "arise under," "arise in" or "relate to" the IT Group bankruptcy proceeding. *See* 28 U.S.C. § 157; 28 U.S.C. § 1334. To the contrary, they are fundamentally state law causes of action with no close nexus to the bankruptcy proceeding, and thus do not fall within this Court's statutorily-prescribed jurisdiction.

Furthermore, the State Law Claims fall outside this Court's supplemental jurisdiction because they are not part of the same "case or controversy" as the three Title 11 counts. Even if the Court were to hold otherwise, the Court should decline to exercise supplemental jurisdiction, as those claims predominate over the Title 11 counts and the Title 11 counts themselves are subject to dismissal for failure to state a claim.

It is axiomatic that the federal courts are courts of limited jurisdiction, which "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *see also, Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995) ("The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by statute."). Accordingly, while this Court's bankruptcy jurisdiction is one of several forms of jurisdiction that it may exercise, its scope is constrained by Congress' grant of jurisdiction. Congress' limited grant of bankruptcy jurisdiction under 28 U.S.C. § 1334 provides for jurisdiction over four discrete types of Title 11 matters, namely: (1) cases under Title 11; (2) proceedings arising under Title 11; (3) proceedings arising in a case under Title 11; and (4) proceedings relating to a case under Title 11.[6] *See Binder*, 372 F.3d at 162; *Torkelson v. Maggio (In re Guild and Gallery Plus, Inc.)*, 72 F.3d 1171, 1175 (3d Cir. 1996). Therefore, the Third Circuit has recognized that for bankruptcy jurisdiction to exist, the Court must find that the dispute in question either (1) involves a substantive right under the Bankruptcy Code ("core" bankruptcy jurisdiction); or (2) could affect the bankruptcy estate or the debtor ("related to" jurisdiction). *Binder*, 372 F.3d at 162. Plaintiff bears the burden of proving that the complaint falls within one of those narrow grants of jurisdiction. *See generally, Kokkonen*, 511 U.S. at 377; *see also Trans World Airlines, Inc. v. Karabu Corp.*, 196 B.R.

---

[6]    28 U.S.C § 1334 provides that the district courts "shall have original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or <u>related to</u> cases under title 11" (emphasis added). The district court may refer such cases or proceedings to the bankruptcy court pursuant to 28 U.S.C. § 157(a). *Binder,* 372 F.3d at 161.

711, 714 (Bankr. D. Del. 1996) ("[P]laintiff . . . has the burden to prove that the standard [for subject matter jurisdiction] has been satisfied."); *Millipore Corp. v. University Patents, Inc.,* 682 F. Supp. 277, 231 (D. Del. 1987) (same). Here, as demonstrated below, Plaintiff has not and cannot carry that burden.

      a.    *Plaintiff's Claims Do Not Arise in, Arise Under And Are Not Related To A Bankruptcy Case Pursuant to 28 U.S.C. § 1334(b)*

      This Court does not have bankruptcy jurisdiction over the State Law Claims under a theory that the claims arise in, arise under or are "related to" a case under Title 11. Although "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11," 28 U.S.C. § 1334(b), none of those scenarios applies here. The Creditors Committee commenced this case as an adversary proceeding ancillary to the IT Group bankruptcy proceeding; such cases are deemed not to "arise in" a Title 11 case. *Carter v. Rodgers,* 220 F.3d 1249, 1253 (11th Cir. 2000) (the 'arising in a case under' category is thought to involve administrative type matters, or matters that could arise only in bankruptcy). Further, the fact that the State Law Claims did not "arise under" Title 11 is apparent on their face – they assert claims grounded in state law, not arising under any federal statute, much less the Bankruptcy Code. *See* AC ¶¶ 58-79; *see also Carter,* 220 F.3d at 1254 ("arising under" proceedings are matters invoking a substantive right created by Bankruptcy Code); *In re Doctors Hospital of Hyde Park, Inc.,* 308 B.R. 311, 317 (N.D. Ill. 2004) (breach of contract and fraud counts found to arise under state common law, not the Bankruptcy Code); *Belcufine v. Aloe,* 112 F.3d 633, 638 (3d Cir. 1997) (if the jurisdictional grant set out in 28 U.S.C. § 1334(b) is based on the "arising under" jurisdiction of Article III of the Constitution, it must follow that the action is one that arises under federal law).

      The Complaint, pre-amendment, alleged that federal jurisdiction was conferred because this was a "core" proceeding under Section 157(b)(2)(A), (H), (K) and (O)

of Title 28 of the United States Code. Complaint, ¶ 28.  However, Plaintiff properly omitted this allegation from the Amended Complaint, conceding, as it must, that these claims are "non-core."  This is a crucial omission since the Plaintiff clearly and correctly recognizes that its claims in Counts One through Five and Count Nine are premised solely on Delaware state law.

State law causes of action have repeatedly been determined to be non-core matters.  *See Halper v. Halper*, 164 F.3d 830, 836-837 (3d Cir. 1999) (Bankruptcy Court lacked core proceeding jurisdiction to enter a final judgment regarding a Guaranty's enforceability).  *See also, Guild & Gallery Plus*, 72 F.3d at 1178-1179 (finding claims non-core because they could exist outside of bankruptcy and be filed in State Court); *In re Northwestern Corp.*, 319 B.R. 68, 74-75 (D. Del. 2005) (finding employee's pre-petition, state law employment claim non-core because it did not implicate substantive rights arising under Title 11 of the Bankruptcy Code); *Jones v. Aames Funding Corp.*, 2004 WL 2203724, *2 (E.D. Pa. 2004) (finding claims based upon pre-petition issuance and collection of predatory mortgage non-core because they were not claims that arose from a substantive right provided by federal bankruptcy law); *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.*, 107 B.R. 34, 39-40 (D. Del. 1989) (holding adversarial proceeding was non-core because state claims involved no interpretation of Bankruptcy Code and were otherwise not related to underlying bankruptcy proceeding).

Delaware's federal courts have similarly determined actions for breach of fiduciary duty and waste of corporate assets to be non-core.  *See, e.g., In re Integrated Health Services, Inc.*, 291 B.R. 615, 618 (Bankr. D. Del. 2003) (concluding that the adversarial proceeding was non-core, and holding that "[t]he allegations of breach of fiduciary duty and waste of corporate assets are quintessential state law causes of action."); *TTS, Inc. v.*

9

*Stackfleth*, 142 B.R. 96, 99 (Bankr. D. Del. 1992); *Mellon v. Delaware & Hudson Ry. Co.* (*In re Delaware & Hudson Ry. Co.*), 122 B.R. 887, 894-95 (D. Del. 1991).[7]

Likewise, the State Law Claims are not "related to" a case under Title 11. The Third Circuit's recent controlling decision in *Binder* is dispositive on this issue, holding that the test of whether a claim is "related to" a bankruptcy proceeding is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *See Binder*, 372 F.3d at 164 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). As *Binder* explained, claims that do not require interpretation of the Bankruptcy Code or of the Chapter 11 plan of reorganization in a bankruptcy proceeding are not sufficiently related to a bankruptcy case to vest a bankruptcy court with jurisdiction over those claims. *See Binder*, 372 F.3d at 168-71.

As with the claims at issue in *Binder*, Plaintiff's claims here do not require interpretation of or reference to either the Code or the IT Group Chapter 11 Plan, precluding the exercise of jurisdiction over these claims by this Court. This is particularly true where, as here, the claims at issue are being pursued after the confirmation of the Chapter 11 Plan, when the existence of the bankruptcy estate has terminated and the bankruptcy process ended.[8] As the Third Circuit articulated in *Binder*, for "related to" jurisdiction to exist at the

---

[7] Moreover, even if the State Law Claims were deemed "core" bankruptcy matters, which they are not, such a determination would not alone suffice to confer subject matter jurisdiction over them. *In In re LaRoche Industries, Inc.*, 312 B.R. 249 (Bankr. D. Del. 2004), the Bankruptcy Court noted, quoting *Binder*, that "[w]e need not resolve whether this is a 'core' proceeding for subject matter jurisdictional purposes because 'whether a particular proceeding is core represents a question wholly separate from that of subject matter jurisdiction.'" Id. at 257. *LaRoche* involved a post-confirmation claim for breach of a pre-confirmation contract wherein the debtor moved to reopen the bankruptcy case in order to pursue its claim to enforce contractual rights acquired under an asset purchase agreement. The Court there applied the factors cited by the Third Circuit in *Binder*, and concluded that it lacked jurisdiction over the claims in that case. *Id.* at 253-258.

[8] *See, e.g., Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n*, 997 F.2d 581, 587 (9th Cir. 1993) (confirmation of plan of reorganization normally terminates the existence of the bankruptcy estate); *First Western SBLC, Inc. v. Mac-Tac, Inc.*, 231 B.R. 878, 882 (D.N.J. 1999) (post-confirmation, the bankruptcy court must not retain jurisdiction and should end the bankruptcy process); *Portfolio Lease Funding Corp. v. Seagate Tech, Inc.*, (*In re Atlantic Computer Sys.*,
(*Footnote continued on next page*)

post-confirmation stage, "the claim must affect an integral aspect of the bankruptcy process –
there must be a close nexus to the bankruptcy plan or proceeding." 372 F.3d at 167. Only
claims that directly affect the "interpretation, implementation, consummation, execution, or
administration of the confirmed plan," such as claims concerning provisions of or alleging
breaches of a confirmation plan can satisfy the "close nexus" test in post-*Binder* case law.
*See Selinger v. Whiteman (In re Midstate Mortg. Investors, Inc.)*, 105 Fed. Appx. 420 (3d
Cir. 2004); *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189 (9th Cir. Nev.
2005) (claims alleged breach of confirmation plan and related agreements and could affect
implementation and execution of plan). *See also Rahl v. Bande*, 316 B.R. 127 (S.D. N.Y.
2004) ("related to" jurisdiction found where court required to determine which claims were
transferred to litigation trust created under the plan).

     Conversely, courts have refused to entertain "related to" jurisdiction in the
absence of a "close nexus." *See In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir.
2004) (independent claims against non-debtor not involving assets of bankruptcy estate,
having no ability to affect directly plan administration); *Antico Vacca Technologies, Inc. v.
Steel Technologies, Inc. (In re Gruppo Anttco, Inc.)*, 2004 Bankr. LEXIS 2162 (Bankr. D.
Del. Nov. 10, 2004) (independent third-party claim having no effect on bankruptcy estate).

     Plaintiff here cannot meet its burden of establishing the requisite "close
nexus." The State Law Claims are unrelated to the distribution of any assets under the Plan,
do not arise "in connection" with the Plan, and require no construction or interpretation of the
Plan for their resolution. Indeed, because the IT Group estate ceased to exist on April 30,
2004 (the Effective Date of the IT Group Chapter Plan), the Plaintiff's lawsuit cannot, by
definition, have any effect upon the IT Group's bankruptcy estate. *See Binder, 372 F.3d at*

---

*Inc.)*, 163 B.R. 704 (Bankr. S.D.N.Y. 1994) ("[C]onfirmation and substantial consummation of
the Debtor's Joint Plan means that [the] Debtor's estate no longer exists."); *see also* 11 U.S.C.
§ 1141(b) (stating that except as otherwise provided in the plan or the Order confirming the plan,
the confirmation of the plan vests all of the property in the estate of the debtor).

167-169; *see also Shugrue v. Continental Airlines*, 977 F. Supp. 280, 289 (S.D.N.Y. 1997) (dismissing defendants' state law counterclaims as outside § 1334 jurisdiction because they were "affirmative claims seeking [damages] for common law torts[, claims which were] independent from the bankruptcy proceedings"). Consequently, there is no possibility of "related to" jurisdiction here.

The case of *Grimes v. Graue (In re Haws)*, 158 B.R. 965 (Bankr. S.D. Tex. 1993), cited with approval in *Binder*, 372 F.3d at 168, presents a particularly close parallel to Plaintiff's allegations in this case. In *Haws*, the trustee for a liquidating trust asserted post-confirmation claims for pre-confirmation breach of fiduciary duty and other state law torts allegedly committed by a partner of the debtor. In concluding that it did not have subject matter jurisdiction over the trustee's claims, the *Haws* court explained:

> [The trustee] fails to demonstrate how the damages, if any, recovered from this adversary are necessary to effectuate the terms of the Haws plan as confirmed in June 1990. <u>Nowhere in the lawsuit is the bankruptcy court being asked to construe or interpret the confirmed plan or to see that federal bankruptcy laws are complied with</u> in the face of violations.
>
> Moreover, <u>the state law causes of action set forth in the Complaint could have been brought in state court whether or not the bankruptcy case was ever filed</u>. . . . The only nexus to this bankruptcy case is that the plaintiff in this matter is a liquidating trustee representing a group of creditors appointed pursuant to the confirmed plan or reorganization.

*Id.* at 971 (emphasis added). The *Haws* court thus concluded that it did not have subject matter jurisdiction over the plaintiff-trustee's state law breach of fiduciary duty and other tort claims because those claims "would have no conceivable effect on the bankruptcy estate." *Id.*

Similarly here, the Litigation Trust's State Law Claims against Defendants can have no conceivable effect on the IT Group bankruptcy estate, which has since ceased to exist. There is no need to interpret or implement the IT Group Plan of Reorganization in order to address and resolve these claims – indeed, the Plan of Reorganization is not central,

or even relevant, to those issues. The only possible nexus between the Plaintiff's claims and the bankruptcy estate is that a recovery by the Plaintiff might increase the assets of the Litigation Trust and its beneficiaries. However, the Third Circuit in *Binder* squarely rejected this possibility as too slender a reed upon which to base subject matter jurisdiction:

> Such attenuated effect on the reorganized debtor does not create a close nexus to the bankruptcy plan or proceeding sufficient to confer bankruptcy court jurisdiction.    After assigning away its right, title and interest in the Litigation Trust's litigation claims, the reorganized debtor would have no greater claim to the proceeds from this . . . action than any other Litigation Trust creditor. <u>Any funds eventually received by the debtor as a result of the . . . dispute would be incidental to the bankruptcy process.</u>

*Binder*, 372 F.3d at 169-170 (emphasis added).    Plaintiff's claims here are likewise incidental, and no less attenuated, to the administration of the bankruptcy estate, and thus fail to meet the standards of "related to" jurisdiction.

In sum, Plaintiff alleges no cognizable basis for this Court to exercise its bankruptcy jurisdiction over the State Law Claims.    Those claims must therefore be dismissed.

### 3.    The Exercise of Supplemental Jurisdiction Over the State Law Claims Would be Inappropriate

Plaintiff's allegations also do not support the exercise of supplemental jurisdiction over the State Law Claims under 28 U.S.C. § 1367. As shown below, those claims fall outside this Court's supplemental jurisdiction because they are not part of the same "case or controversy" as the three Title 11 counts. Further, even if the Court were to hold otherwise, the Court should decline in its discretion to exercise supplemental jurisdiction over the State Law Claims because (1) those claims predominate over the bankruptcy claims; and (2) the bankruptcy counts themselves are subject to dismissal for failure to state a claim.

a.    *This Court Does Not Have Supplemental Jurisdiction Over the State Law Claims Because They Are Not Part of The Same "Case or Controversy" As The Avoidance and Fraudulent Transfer Claims*

Title 28 U.S.C., Section 1367, provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." For a district court adjudicating federal claims (such as bankruptcy claims brought under title 11) to exercise supplemental jurisdiction to hear state claims, "[t]he state and federal claims must derive from a common nucleus of operative fact," and the plaintiff's claims must be such that "he would ordinarily be expected to try them all in one judicial proceeding." *Lyon v. Whismam*, 45 F.3d 758, 760 (3d Cir. 1995) (holding nexus between federal Fair Labor Standards Act claims and state contract and tort claims was inadequate to support supplemental jurisdiction and dismissing claims *sua sponte*). The connection between the state claims and the federal claims cannot be "tangential." *Schoener v. Mendel*, 1996 WL 284996 (E.D. Pa. May 24, 1996) (dismissing state corporate waste and accounting claims for lack of a sufficient connection to federal ERISA claims) (citing *Nanavanti v. Burdette Tomlin Mem. Hosp.*, 857 F.2d 96, 105 (3d Cir. 1988)).

Courts within the Third Circuit have consistently recognized that the exercise of supplemental jurisdiction is inappropriate when there is only a "loose nexus" between the state and federal claims. *See, e.g., Stadler v. McCulloch*, 949 F. Supp. 311, 313-14 (E.D. Pa. 1996) ("loose nexus" between plaintiffs' state claim under employee medical plan and federal claim under ERISA "is not enough to warrant the assertion of supplemental jurisdiction.").

Here, Plaintiff's State Law Claims bear only a tangential relationship to the statutory avoidance and fraudulent conveyance claims. The theory of liability, the underlying conduct and the necessary proof are significantly different. Plaintiff's proof of the State Law

14

Claims will (at least presumably) entail proof of each Defendant's state of mind; of individual actions that breached fiduciary duties, were conspiratorial, or were wasteful; and of the details of this conduct over the prolonged period of time in which it allegedly occurred.

Plaintiff's avoidance and fraudulent transfer claims, by contrast, are mechanical and fixed to dates and financial determinations: the preference claims must establish specific payments made within the statutory preference period; while the fraudulent transfers claims, among other things, must show (a) that the debtor did not receive reasonably equivalent value for its transfer, and (b) either (i) that the debtor was insolvent at the time of the transfer or became insolvent as a result of it, (ii) that at the time of transfer, the debtor engaged in a business or transaction (or was about to) for which any property remaining with the debtor was "unreasonably small capital," or (iii) that at the time of the transfer, the debtor intended to incur or believed it would incur debts beyond its ability to pay. 11 U.S.C. § 548. *See PHP Liquidating, LLC. v. Robbins*, 291 B.R. 592 (D. Del. 2003) (Farnan, J.) (motion to dismiss granted for facially deficient fraudulent transfer claim); *Brown v. G.E. Capital Corp. (In re Foxmeyer Corp.)*, 296 B.R. 327 (Bankr. D. Del. 2003) (due to earlier decision denying corporate veil piercing, trustee could not prevail on counts alleging fraudulent intent). Moreover, the State Law Claims apply to *all* Defendants, where the avoidance and fraudulent conveyance counts brought under the federal Bankruptcy Code are brought against only some.

Such disparate state and federal causes of action are not sufficiently connected to meet the "same case or controversy" requirements for supplemental jurisdiction. They do not require proof of the same underlying facts, precluding the requisite "common nucleus" of facts. *See, e.g., MarchFirst, Inc. v. LeaveLaw.com, Inc.*, 2004 WL 756605, *2 (N.D. Ill. Feb. 27, 2004) (dismissing defendant's state-law counterclaims as insufficiently connected to plaintiff's bankruptcy preference claim to support supplemental jurisdiction, despite fact that counterclaims were based in part on plaintiff's assurance that the allegedly preferential payment would be protected); *Liberty Mutual Ins. Co. v. Lone Star Indus.*, 313

B.R. 9, 21 (D. Conn. 2004) (court lacked supplemental jurisdiction under § 1367 over insurer's declaratory judgment claim against bankrupt insured, where such claim would not require reference to any facts pertaining to insured's bankruptcy and there was thus no "common nucleus of facts" supporting supplemental jurisdiction); *Glinka v. Abraham & Rose Co., Ltd.*, 199 B.R. 484 (D. Vt. 1996) (court lacked supplemental jurisdiction over claims by bankruptcy trustee and debtor's primary secured creditor regarding entitlement to certain dinnerware sets where such claim did not share "common nucleus of operative fact" with claims over which court possessed bankruptcy jurisdiction). *Cf. In re Radcliffe*, 317 B.R. 581, 590 (D. Conn. 2004) (exercise of supplemental jurisdiction appropriate when all counts are based upon same facts).    Further, there is no reason that Defendants here should expect to defend the avoidance or fraudulent transfer claims in the same proceeding as the State Law Claims. *See Lyon*, 45 F.3d at 761; *Hameli v. Nazario*, 930 F. Supp. 171, 182-83 (D. Del. 1996) (holding no supplemental jurisdiction because plaintiff's federal due process and state tort claims "overlap[ed] only slightly" and parties had the expectation that the claims would be resolved separately).    For these reasons, this Court does not have supplemental jurisdiction over the State Law Claims, and should dismiss them.[9]

       *b.*    *Even If There Is Supplemental Jurisdiction Over The State Law Claims, The Court Should Decline to Exercise It*

Even if the Court were to determine that the State Law Claims were part of the same case or controversy as Plaintiff's avoidance and fraudulent conveyance claims, the

_____

[9] If the Court concludes that federal jurisdiction exists over the State Law Claims, the claims asserted against the Defendants not named in Counts VI-VIII would be subject to severance. Those claims, which derive solely from alleged breaches of fiduciary duty, bear only a tangential relationship to the statutory avoidance and fraudulent transfer claims asserted against the other Defendants.  In addition, the State Law Claims against these Defendants will require different witnesses and documentary proof and would allow a trial by jury.  Grouping the State Law Claims with the others would no doubt lead to confusion and prejudice the interests of these Defendants. For these reasons, severance would be proper. See generally, *Official Committee of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D.Pa. 2000).

Court should decline to exercise supplemental jurisdiction over them under 28 U.S.C. § 1367(c). That section provides that

> [t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
>
> (1)  The claim raises a novel or complex issue of State law,
>
> (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)  the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

It is plain from the face of the Complaint that the State Law Claims predominate over the remaining counts. This factor alone provides a powerful reason for the Court not to exercise supplemental jurisdiction over them – courts and commentators alike have recognized that it is inappropriate for a district court to permit a "federal tail…to wag what is in substance a state dog." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003) (declining supplemental jurisdiction over state where class of state wage law claims plaintiffs predominated over class of federal Fair Labor Standards Act claimants); *Jackson v. City of San Antonio*, 270 F.R.D. 55, 59-61 (W.D. Tex. 2003) (following reasoning of *De Asencio*); *see also* Patrick D. Murphy, *A Federal Practitioner's Guide to Supplemental Jurisdiction Under 28 U.S.C. § 1367*, 78 Marq. L. Rev. 973, 1024 (1995) ("a state dog cannot wag a federal tail and remain in federal court.").

Here, permitting federal jurisdiction would, in essence, allow Plaintiff's State Law Claims to bootstrap the avoidance and fraudulent transfer counts into federal court. The State Law Claims seek an unspecified amount of money and will require the great majority of discovery, judicial resources and proof if the action goes forward. The face of the Amended Complaint itself indicates the State Law Claims will entail an analysis of, *inter alia*, whether

the Officers and Directors kept themselves reasonably informed of available information; the circumstances leading up to the Company's acquisitions, including evaluation analyses; the extent to which the Officers and Directors were aware of facts relating to the Company's financial condition and what that condition was; the rationale for employing the so-called "Roll-Up Strategy" efforts to keep the Company in business and the reasons for not seeking bankruptcy protection earlier; the decision-making process for retaining "restructuring advisors" and the timing thereof; and whether the Officers and Directors "wasted" corporate assets. AC ¶¶ 60, 64, 68, 73. Each of these inquiries will no doubt be fact-intensive, requiring considerable discovery and likely judicial resources. The remaining claims, by contrast, concentrate on specific payments and financial circumstances at specific times, and thus will require far less of the Court's and the parties' time and resources.

Courts in such situations have consistently declined under § 1367(c)(2) to exercise supplemental jurisdiction over the predominant state claims. *See De Asencio*, 342 F.3d at 311; *Martin v. Philadelphia Facilities Management Corp.*, 2004 WL 1628922, *1 (E.D. Pa. July 16, 2004) (declining to exercise supplemental jurisdiction over state law employment claims that predominated over federal due process claim); *Simmons v. Johnson, Curney & Fields, P.C.*, 205 B.R. 834, 846 (W.D. Tx. 1997) (recommending that district court, pursuant to § 1367(c), decline to exercise supplemental jurisdiction over debtor's legal malpractice claims against former counsel because debtor's state claims predominated over federal claims); *Bodenner v. Graves*, 828 F. Supp. 516, 518 (W.D. Mich. 1993) (declining jurisdiction over state claims, including fiduciary duty claims, that predominated over federal RICO count); *Youngblood Group v. Lufkin Fed. Savings and Loan Assoc.*, 932 F. Supp. 859, 870-71 (E.D. Tex. 1996) (dismissing former Chapter 11 debtor's state contract claims against savings and loan because they predominated over federal antitrust claims); *Occunomix International, LLC v. North Ocean Ventures, Inc.*, 2003 WL 22240660, *1 (S.D.N.Y. Sept. 30, 2003) (declining to exercise jurisdiction over state fraud and contract claims that predominated over federal Electronic Communications Privacy Act claim). This is true even

when the proceedings have advanced significantly farther than the case here. *See, e.g., Freer v. Mayer*, 796 F. Supp. 89, 94 (S.D.N.Y. 1992) (dismissing for lack of jurisdiction, on summary judgment after discovery, fiduciary duty and corporate waste claims that predominated over federal securities claim); *PHP Liquidating*, 291 B.R. at 602 (granting defendants' motion to dismiss as no state avoidance action was proven).

As discussed in Defendants' Brief in Support of their Joint Motion To Dismiss For Failure To State A Claim, although this Court has ably resolved complex issues of Delaware fiduciary duty law, since these claims involve fundamental issues of state law, the Delaware Court of Chancery is a specialized court uniquely situated to make determinations on such matters. "The content and extent of fiduciary duties, corporate waste and the business judgment rule are fundamental issues of state law," (*Freer*, 796 F. Supp. at 94) and "federal courts should avoid needless decisions of state law both as a matter of comity and to promote justice between the parties." *Johnson v. Cullen*, 925 F. Supp. 244, 252 (D. Del. 1996) (declining jurisdiction over state law claims); *Samson v. Harvey's Lake Borough*, 881 F. Supp. 138, 145 (M.D. Pa. 1995) (declining to exercise supplemental jurisdiction over state law claims). As aptly stated by the *Freer* court: "We do not believe that we should reach out our jurisdictional arm to embrace issues of a state character thereby depriving the state courts of the opportunity to develop and apply state law in this area...." (*Freer*, 796 F. Supp. at 94) Accordingly, this Court should decline under § 1367(c)(1) to address the issues raised in the State Law Claims.

Finally, the Carlyle Defendants have filed contemporaneously with this motion a Motion To Dismiss for lack of personal jurisdiction. Although district courts are not <u>required</u> to decline jurisdiction over state claims when the accompanying federal claims on which supplemental jurisdiction is premised are dismissed, they usually do so under § 1367(c)(3), and the Court should do so here. *See, e.g., Johnson*, 925 F. Supp. at 252 (declining jurisdiction over remaining state-law counts after federal § 1983 claims dismissed); *Freer*, 796 F. Supp. at 94 (declining jurisdiction over fiduciary duty and waste

claims after dismissal of federal securities law claim); *Youngblood*, 932 F. Supp. at 871 ("[n]ow that the sole federal claim has been dismissed, there is an even stronger argument for declining to exercise supplemental jurisdiction."), citing *Parker & Parsley Petroleum v. Dresser Indus.,* 972 F.2d 580 (5th Cir.1992) ("[o]ur general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.").

## IV.    CONCLUSION

For the reasons set forth herein, Defendants respectfully request that this Court dismiss Counts I through V and IX of the Amended Complaint.

Dated:  March 2, 2005                              Respectfully submitted,


_/s/_____         _/s/_____
Ronald S. Gellert (ID No. 4259)         Roger D. Anderson (ID No. 3480)
ECKERT, SEAMANS, CHERIN & MELLOTT, LLC  SMITH, KATZENSTEIN & FURLOW LLP
The Towne Center                        800 Delaware Avenue, 7th Floor,
4 East 8th Street, Suite 200            P.O. Box 410
Wilmington, DE  19801                   Wilmington, DE 19899
Telephone:  (302) 425-0430              Telephone:  (302) 652-8400
Email:  rgellert@eckertseamans.com      Email:  randerson@skfdelaware.com

Mark A. Willard                         Charles A. De Monaco
Paul D. Steinman                        Kimberly L. Haddox
F. Timothy Grieco                       DICKIE MCCAMEY & CHILCOTE, P.C.
ECKERT SEAMANS CHERIN & MELLOT, LLC     Two PPG Place, Suite 400
U.S. Steel Tower                        Pittsburgh, PA  15222
600 Grant Street, 44th Floor            Telephone:  (412) 392-5523
Pittsburgh, PA  15219-2788              Telecopier:  (412) 392-5367
Telephone:  (412) 566-6000              Email:  demonac@dmclaw.com
Telecopier:  (412) 566-6099
Email:  mark.willard@escm.com           *Attorneys for Defendant, Harry J. Soose, Jr.*

*Attorneys for Defendant, Anthony J. DeLuca*

_/s/_____
Mark D. Collins (ID No. 2981)
Marcos A. Ramos (ID No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  ramos@rlf.com

Thomas L. Patten
Laurie B. Smilan
David A. Becker
LATHAM AND WATKINS, LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone:  (202) 637-2200
Telecopier:  (202) 637-2201
E-mail:  tom.patten@lw.com

*Attorneys for Defendants Daniel A.
D'Aniello, Francis J. Harvey, James C.
McGill, Richard W. Pogue, Phillip B. Dolan,
E. Martin Gibson, Robert F. Pugliese,
Charles W. Schmidt, James David Watkins,
The Carlyle Group, The Carlyle Group
L.L.C., Carlyle Partners II, L.P., Carlyle
SBC Partners II, L.P., Carlyle International
Partners II, L.P., Carlyle International
Partners III, C/S International Partners,
Carlyle Investment Group, L.P., Carlyle-IT
International Partners, L.P., Carlyle-IT
International Partners II, L.P., Carlyle-IT
Partners L.P. and T.C. Group, L.L.C.*