## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re. | ) |
| | ) Chapter 11 |
| THE IT GROUP, INC , et al | ) Case No  02-10118 |
| Debtors, | ) Jointly Administered |
| | ) |
| _____ | ) |
| | ) |
| IT Litigation Trust, | ) |
| Plaintiff, | ) |
| | ) |
| v | ) |
| | ) Civil Action No .  04-1268 KAJ |
| DANIEL A  D'ANIELLO, FRANCIS J | ) |
| HARVEY, JAMES C  McGILL, RICHARD | ) |
| W  POGUE, PHILIP B  DOLAN, E  MARTIN | ) |
| GIBSON, ROBERT F  PUGLIESE, CHARLES | ) |
| W. SCHMIDT, JAMES DAVID WATKINS, | ) |
| ANTHONY J  DeLUCA, HARRY J  SOOSE, | ) |
| THE CARLYLE GROUP, THE CARLYLE | ) |
| GROUP, L L C , CARLYLE PARTNERS II, | ) JURY TRIAL DEMANDED |
| L P , CARLYLE SBC PARTNERS, II, L P , | ) |
| CARLYLE INTERNATIONAL PARTNERS | ) |
| II, L P , CARLYLE INTERNATIONAL | ) |
| PARTNERS III, L P , C/S INTERNATIONAL | ) |
| PARTNERS, CARLYLE INVESTMENT | ) |
| GROUP, L P , CARLYLE-IT | ) |
| INTERNATIONAL PARTNERS, L P , | ) |
| CARLYLE-IT INTERNATIONAL | ) |
| PARTNERS II, L P , CARLYLE-IT | ) |
| PARTNERS L P , and T C  GROUP, L LC , | ) |
| Defendants | ) |
| | ) |
| | ) |

## DEFENDANTS' BRIEF IN SUPPORT OF JOINT MOTION
## TO DISMISS FOR FAILURE TO STATE A CLAIM

Date:  March 2, 2005

Mark D. Collins (ID No. 2981)
Marcos A. Ramos (ID No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: ramos@rlf.com

Thomas L. Patten
Laurie B. Smilan
David A. Becker
LATHAM AND WATKINS, LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Telecopier: (202) 637-2201
E-mail: tom.patten@lw.com

*Attorneys for Defendants Daniel A.
D'Aniello, Francis J. Harvey, James C.
McGill, Richard W. Pogue, Phillip B. Dolan,
E. Martin Gibson, Robert F. Pugliese,
Charles W. Schmidt, James David Watkins,
The Carlyle Group, The Carlyle Group
L.L.C., Carlyle Partners II, L.P., Carlyle
SBC Partners II, L.P., Carlyle International
Partners II, L.P., Carlyle International
Partners III, C/S International Partners,
Carlyle Investment Group, L.P., Carlyle-IT
International Partners, L.P., Carlyle-IT
International Partners II, L.P., Carlyle-IT
Partners L.P. and T.C. Group, L.L.C.*

Roger D. Anderson (ID No. 3480)
SMITH, KATZENSTEIN & FURLOW LLP
800 Delaware Avenue, 7th Floor,
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Email: randerson@skfdelaware.com

Charles A. De Monaco
Kimberly L. Haddox
DICKIE MCCAMEY & CHILCOTE, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222
Telephone: (412) 392-5523
Telecopier: (412) 392-5367
Email: demonac@dmclaw.com

*Attorneys for Defendant,
Harry J. Soose, Jr.*

Ronald S. Gellert (ID No. 4259)
ECKERT, SEAMANS, CHERIN & MELLOTT,
LLC
The Towne Center
4 East 8th Street, Suite 200
Wilmington, DE 19801
Telephone: (302) 425-0430
Email: rgellert@eckertseamans.com

Mark A. Willard
Paul D. Steinman
F. Timothy Grieco
ECKERT SEAMANS CHERIN & MELLOT,
LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219-2788
Telephone: (412) 566-6000
Telecopier: (412) 566-6099
Email: mark.willard@escm.com

*Attorneys for Defendant, Anthony J.
DeLuca*

# TABLE OF CONTENTS

I     INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II    NATURE AND STAGE OF PROCEEDINGS ......................................................... 3

    A.    Background – IT Group and the Carlyle Defendants' Investment ................ 3

    B.    Procedural Posture .................................................................................... 4

    C.    Nature of Plaintiff's Claims ....................................................................... 5

ARGUMENT ............................................................................................................. 6

I.    PLAINTIFF'S BREACH OF FIDUCIARY DUTY AND WASTE CLAIMS
    MUST BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6) ............................... 6

    A.    Plaintiff's Claims For Breach Of The Duty Of Loyalty Are
        Inadequately Pled .................................................................................... 7

    B.    IT Group's Certificate Of Incorporation Expressly Eliminates
        The Director Defendants' Liability For Non-Intentional
        Breaches Of The Duty Of Care And Claims Of Corporate
        Waste ....................................................................................................... 9

    C.    Plaintiff's Claims For Breach Of Fiduciary Duty Based On
        Defendants' Allegedly Ill-Advised Business Strategy Fail To
        State A Claim Because Such Actions Were Protected By The
        Business Judgment Rule ........................................................................... 11

    D.    Plaintiff's Allegations Are Wholly Insufficient To State A
        Fiduciary Duty Claim For The Defendants' Alleged Failure of
        Oversight .................................................................................................. 14

    E.    Plaintiff Fails To State A Claim For Corporate Waste ............................... 15

    F.    Plaintiff's Breach Of Fiduciary Duty Claims Against The
        Carlyle Defendants Must Be Dismissed Because The Carlyle
        Defendants Did Not Owe A Fiduciary Duty To IT Group's
        Shareholders Or Creditors ........................................................................ 16

    G.    Plaintiff's Complaint Fails To Allege Sufficient Facts To
        Establish That The Carlyle Defendants Aided Or Abetted A
        Breach Of Fiduciary Duty ......................................................................... 20

II    THE SIXTH THROUGH EIGHTH CLAIMS FOR RELIEF, FOR
    VIOLATIONS OF THE BANKRUPTCY CODE, MUST BE DISMISSED
    FOR FAILURE TO STATE A CLAIM ............................................................. 21

    A.    Plaintiff's Sixth Claim For Relief Fails To State A Claim ......................... 21

i

B.      Plaintiff's Seventh Claim For Relief Fails To State A Claim . . . . . . 23

C.      Plaintiff's Seventh Claim For Relief Pursuant To 11 U.S.C. § 548 Should Be Dismissed As Untimely . . . . . . . . . . . . . . . 24

D.      Plaintiff's Eighth Claim for Relief Pursuant To Section 544 Of The Bankruptcy Code And 6 Del. Code § 1304(a)(1) Should Be Dismissed As Untimely . . . . . . . . . . . . . . . . . . 25

III     PLAINTIFF'S CLAIM FOR UNLAWFUL DIVIDEND PAYMENTS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6) BECAUSE PLAINTIFF FAILS TO PLEAD THE PREDICATE FACTS AS TO THE DIRECTORS' KNOWLEDGE OF IT GROUP'S FINANCIAL CONDITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

## CASES

*In re Abbott Labs. Derivative S'holders Litig.,*
    325 F.3d 795 (7th Cir. 2003) .................................................. 14

*Amalgamated Bank v. Yost,*
    2005 U.S. Dist. LEXIS 1280 (E.D. Pa. 2005) .......................... 14

*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984) ................................................. 13, 19

*In re BHC Communications Inc. S'holders Litig.,*
    789 A.2d 1 (Del. Ch. 2001) ................................................... 10

*Brehm v. Eisner,*
    746 A.2d 244 (Del. 2000) ..................................................... 16

*In re Caremark Int'l, Inc. Derivative Litig.,*
    698 A.2d 959 (Del. Ch. 1996) ........................................... 14, 15

*Citron v. Steego Corp.,*
    1988 WL 94738 (Del. Ch. Sept. 9, 1988) ............................... 18

*Continuing Creditors' Co. of Star Telecommunications, Inc. v. Edgecomb,*
    2004 U.S. Dist. LEXIS 25807 (D. Del. Dec. 21, 2004) ....... passim

*Crescent/Mach I Partners, L.P. v. Turner,*
    846 A.2d 963 (Del. Ch. 2000) ............................................... 20

*In re Delmarva Sec. Litig.,*
    794 F. Supp. 1293 (D. Del. 1992) ........................................... 3

*EBS Litig. LLC v. Barclays Global Investors, N.A.,*
    304 F.3d 302 (3d Cir. 2002) .................................................. 26

*Emerald Partners v. Berlin,*
    787 A.2d 85 (Del. 2001) ....................................................... 17

*Grobow v. Perot,*
    539 A.2d 180 (Del. 1988) ....................................................... 8

*Guttman v. Huang,*
    823 A.2d 492 (Del. Ch. 2003) .............................................. 8, 9

*Ivanhoe Partners v. Newmont Mining Corp.,*
    535 A.2d 1334 (Del. 1987) ................................................... 17

*In re J.P. Stevens & Co. S'holders Litigation,*
    542 A.2d 770 (Del. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kearney v. Jandernoa,*
    957 F. Supp. 116 (W.D. Mich. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Levine v. Smith,*
    591 A.2d 194 (Del. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Malpiede v. Townson,*
    780 A.2d 1075 (Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Official Comm. Of Unsecured Creditors of Integrated Health Services v.*
    *Elkins,* 2004 Del. Ch. LEXIS 122 (Del. Ch. 2004) . . . . . . . . . . . . . . . . . . . 16

*PHP Liquidating, LLC v. Robbins,*
    291 B.R. 592 (D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Pardo v. Avanti Corporate Health System, Inc. (In re APF Co.),*
    274 B.R. 634 (Bankr. D. Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Pardo v. Gonzaba (In re APF Co.),*
    308 B.R. 183 (Bankr. D. Del. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Prod. Res. Group, LLC v. NCT Group, Inc.,*
    863 A.2d 772 (Del. Ch. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Rales v. Blasband,*
    634 A.2d 927 (Del. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Sea-Land Corp. S'holders Litigation,*
    1987 WL 11283 (Del. Ch. May 22, 1987) . . . . . . . . . . . . . . . . . . . 17, 18, 19

*Stanziale v. Nachtomi, ("Stanziale I"),*
    2004 U.S. Dist. LEXIS 7375 (D. Del. Apr. 20, 2004) . . . . . . . . . . . . . passim

*Stanziale v. Nachtomi ("Stanziale II"),*
    2004 U.S. Dist. LEXIS 15664 (D. Del. Aug. 6, 2004) . . . . . . . . . . . . . . 7, 15

*In re The Limited Inc. S'holders Litigation,*
    2002 WL 537692 (Del. Ch. March 27, 2002) . . . . . . . . . . . . . . . . . . . . . . . 8

*TWA, Inc. v. Marsh USA Inc.,*
    305 B.R. 228 (Bankr. D. Del. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Unocal Corp. v. Mesa Petroleum Co.,*
    493 A.2d 946 (Del. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.),*
    288 B.R. 189 (Bankr. D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*In re W National Corp S'holders Litigation*,
2000 WL 710192 (Del. Ch. May 22, 2000) . . . . . . . . . . . . . . 18, 19

*Wal-Mart Stores v. AIG Life Ins. Co.*,
860 A.2d 312 (D. Del. 2004) . . . . . . . . . . . . . . . . . . . . 10

*In re Walt Disney Co. Derivative Litig.*,
825 A.2d 275 (Del. Ch. 2003) . . . . . . . . . . . . . . . . . . 14

**DOCKETED CASES**

*Claybrook v. Southwestern Bell Telephone Co.*,
Adv. Pro. No. 01-101542 . . . . . . . . . . . . . . . . . . . . . . 22

*Pardo v. Found. Health Corp.*,
Adv. Proc. No. 00-806 (PJW) (Bankr. D. Del. Jan. 21, 2004) . . . 23

**STATUTES**

11 U.S.C. §§ 544 . . . . . . . . . . . . . . . . . . . . . . . . 23

11 U.S.C. § 548(a)(1) . . . . . . . . . . . . . . . . . . . . . . 24

6 Del. C. § 1309(1) . . . . . . . . . . . . . . . . . . . . . . . 25

8 Del. C. § 102(b)(7) . . . . . . . . . . . . . . . . . . . . . . 10

8 Del. C. § 170 (a) . . . . . . . . . . . . . . . . . . . . . . . 26

8 Del. C. § 172 (2004) . . . . . . . . . . . . . . . . . . . . . 26

8 Del. C. § 174 . . . . . . . . . . . . . . . . . . . . . . . 25, 28

8 Del. C. § 173 . . . . . . . . . . . . . . . . . . . . . . . . . 25

## DEFENDANTS' BRIEF IN SUPPORT OF JOINT MOTION
## TO DISMISS FOR FAILURE TO STATE A CLAIM

Pursuant to Federal Rule of Civil Procedure 12(b)(6), each of the Defendants in this action, by and through their respective undersigned counsel, hereby move this Court to dismiss the First Amended Complaint (the "Complaint" or "AC") as set forth below for failure to state a claim  Defendants Anthony J  DeLuca, Daniel A  D'Aniello, Francis J  Harvey, James C  McGill, Richard W  Pogue, Philip B  Dolan, E  Martin Gibson, Robert F  Pugliese, Charles W  Schmidt, and James David Watkins are referred to herein as the "Director Defendants "  Defendants The Carlyle Group, The Carlyle Group L L C , Carlyle Partners II, L P , Carlyle SBC Partners II, L P , Carlyle International Partners III, C/S International Partners, Carlyle Investment Group, L P , Carlyle-IT International Partners, L P , Carlyle-IT International Partners, II, L P , Carlyle-IT Partners L P  and T C  Group, L L C  are referred to herein as the "Carlyle Defendants "  Defendant Harry J  Soose, Jr , is referred to herein as "Soose "

In support of this motion, Defendants state as follows

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's claims in this case fail as a matter of law  The Plaintiff here, the IT Litigation Trust, makes wide-ranging but superficially-alleged claims that the demise of IT Group, Inc  ("IT Group") resulted not from an ordinary business failure, but from wanton mismanagement by and divided loyalties of its Board of Directors, its senior officers, and certain of its shareholders  As set forth herein, however, Plaintiff's claims for breach of fiduciary duties, corporate waste, preferential and fraudulent transfers, and unlawful payment of dividends are unsupported by factual allegations and wholly insufficient to state a claim

<u>First</u>, Plaintiff identifies no conduct by any Defendant that constitutes a breach of fiduciary duty  He does not, and cannot, allege any act that suggests a breach of the duty of loyalty.  there is no allegation that any director or officer received a personal financial benefit from any (unspecified) transaction or (unspecified) business decision at issue in the case

There are no allegations – beyond Plaintiff's mere say-so – that any Director was "controlled" in his decision-making by the Carlyle Defendants, and therefore lacked independence. Plaintiff's claims for breach of the duty of care are premised on nothing but the suggestion that IT Group's acquisition strategy turned out, in hindsight, not to have worked. The claims based on alleged mismanagement are precluded by the "exculpation clause" included in IT Group's Certificate of Incorporation and by the business judgment rule. Moreover, Plaintiff's bald allegations that the Defendants "failed to act" do not remotely meet the extraordinarily high standard for failure-of-oversight claims set by the Delaware courts.

Plaintiff's fiduciary duty claims against the Carlyle Defendants fail for the additional reason that the Carlyle Defendants did not owe a fiduciary duty to IT Group's shareholders or creditors. Plaintiff's asserted predicate for such a claim – that the Carlyle Defendants were "controlling shareholders" of IT Group – fails because the Carlyle Defendants were minority stockholders that did not have, and are not shown to have exerted, control over IT Group's board or officers. Additionally, because Plaintiff fails sufficiently to allege that the Director Defendants breached their fiduciary duties, or any facts showing that the Carlyle Defendants knowingly participated in such a breach, Plaintiff's claim that the Carlyle Defendants aided and abetted a breach also fails. The aiding and abetting claims, like all of Plaintiff's breach of fiduciary duty claims, must be dismissed.

Second, Plaintiff's claims for violations of the Bankruptcy Code are also deficient. The Complaint is silent with regard to the fundamental facts required to be pleaded, *i.e.*, the size of the antecedent debt and the specifics of any alleged transfer including what transfers were made, which Defendants received a fraudulent transfer, and how such transfers were made without fair consideration. Moreover, Plaintiff's claim for actual fraud under Delaware's Uniform Fraudulent Transfer Act for payments made between 1998 and January 2001 is too late: the statute bars all claims for payments IT Group made to Defendants prior to January 28, 2001.

2

Third, Plaintiff's claim under Delaware law for the unlawful payment of dividends must be dismissed because Plaintiff has not only failed to plead facts establishing insolvency, but also because the Complaint does not allege that the Directors knew IT Group was insolvent at the time the Company made dividend payments.

Accordingly, because Plaintiff's allegations cannot support any of its purported causes of action, the Complaint should be dismissed for failure to state a claim.

## II.    NATURE AND STAGE OF PROCEEDINGS

### A    Background – IT Group and the Carlyle Defendants' Investment

IT Group was a publicly-traded company headquartered in Monroeville, Pennsylvania and incorporated in Delaware that provided environmental consulting, engineering and construction, remediation, and facilities management services for both government and private sector commercial clients worldwide  *See* Excerpts from IT Group Form 10-K dated March 22, 1999, Exh  A to Becker Decl , at A0004-A0005 [1]  The Carlyle Defendants had a significant equity investment in IT Group, and thus had every reason to want the Company to perform well   As Plaintiff acknowledges, the Carlyle Defendants invested $45 million in IT Group in 1996, purchasing 45,000 shares of 6% Cumulative Convertible Participating Preferred Stock  *See* AC ¶ 31  In 2001, Carlyle added nearly $6 million dollars to its investment, purchasing over one million shares of IT Group common stock in the open market  *See* Excerpts from IT Group Form 10-K dated March 20, 2001, Exh  B to Becker Decl , at A0012

Although Carlyle owned less than 25% of IT Group's stock, as a result of their sizeable investment, the Carlyle Defendants obtained the right to appoint a majority of the IT Group Board of Directors for a five-year period – a measure specifically authorized by IT

---

[1]  When presented with a 12(b)(6) motion to dismiss, the Court may consider publicly-filed documents such as a company's SEC filings  *See In re Delmarva Sec  Litig* , 794 F  Supp  1293, 1299 (D  Del  1992) (noting that the Court may take "judicial notice of certain facts that are of public record" and that "SEC filings fall within this category")

Group's shareholders in a special meeting. *See* Excerpts from IT Group Form 10-K dated June 24, 1997, Exh. C to Becker Decl., at A0017. After May 1999, however, following IT Group's decision to increase the Board's size to eleven members, the Carlyle Defendants declined to exercise this right, and appointed only five of the Company's Directors. *See* Excerpts from IT Group Proxy Statement dated May 20, 1999, Exh. D to Becker Decl., at A0024-A0027.

IT Group embarked on a strategy of acquiring competitors and companies in complimentary lines of business, hoping that these acquisitions would generate additional revenue while achieving scale economies through synergies and reduction of redundant costs, thereby improving overall profitability. *See* AC ¶¶ 32-38. Although this strategy generated a dramatic increase in the Company's revenue (which nearly quadrupled between 1996 and 2000), it did not achieve the hoped-for synergies, costs savings and boost in earnings, in large part because of an overall downturn in the economy which began in late 2000. Accordingly, IT Group suspended its strategy to grow through acquisitions and instead implemented cost-cutting measures to improve its financial situation. Despite these measures, the Company's liquidity and cash flow problems worsened, and then were exacerbated by the material effects of the September 11, 2001 terrorist attacks on the economy in general and governmental spending priorities in particular. In the last half of 2001, the Company rescinded two quarters of preferred stock dividends, with the Carlyle Defendants' approval and to their financial detriment. Nonetheless, IT Group declared bankruptcy on January 16, 2002.

Throughout this time period, the Carlyle Defendants did not sell any of their holdings. When IT Group declared bankruptcy, the Carlyle Defendants lost their entire investment of over $50 million. The members of the IT Group Board continued to serve throughout IT Group's bankruptcy process, without compensation, until the confirmation of the IT Group Chapter 11 Plan of Reorganization in April 2004.

        B    <u>Procedural Posture</u>

The procedural posture of this action is set forth at pp. 3-4 of Defendants' Brief in

Support of their Motion To Dismiss For Lack of Subject Matter Jurisdiction ("SMJ Brief"),
which is incorporated herein by reference.

        C.     Nature of Plaintiff's Claims

This action was initially brought in the Bankruptcy Court by the Official Committee
of Unsecured Creditors of the IT Group. *See* Complaint dated January 15, 2004, in
Adversary Proceeding No. 04-51336, Case No. 02-10118 (MFW). The IT Litigation Trust
("Plaintiff") was substituted as the Plaintiff in this action by stipulation of the parties. *See*
SMJ Brief at 3-4.

Plaintiff's Complaint asserts nine causes of action. The First through Fourth Claims
for Relief allege that all Defendants breached their fiduciary duties allegedly owed to IT
Group, its shareholders and its creditors by mismanaging the Company, failing adequately to
oversee the Company's operations, failing to take sufficient measures to mitigate the
Company's financial problems, "artificially extending" the Company's life for the purported
benefit of the Carlyle Defendants, and making transfers for the benefit of unnamed insiders.
*See* AC ¶¶ 58-75. Although not specified, the fiduciary duty claim against the Carlyle
Defendants appears to be grounded on fiduciary duties the Defendants owed as a purported
"controlling shareholder" of IT Group. The Fifth Claim for Relief alleges that the Carlyle
Defendants aided and abetted the breach of fiduciary duty by the other Defendants, though
the Complaint does not indicate how. *See* AC ¶¶ 76-79. The Ninth Claim for Relief, brought
under Delaware Code § 174 against the Director Defendants, alleges that they illegally paid
dividends while IT Group was insolvent. *See* AC ¶ 116-118.

The Sixth and Eighth Claims for Relief, brought against a subset of the Director
Defendants and against the Carlyle Defendants, assert claims for avoidance of recovery of
preferential transfers (*see* AC ¶¶ 80-96) and recovery of fraudulent conveyances (*see* AC ¶¶
109-115), respectively, under the U.S. Bankruptcy Code and Delaware Code § 1303. The
Seventh Claim for Relief seeks recovery and avoidance of constructively fraudulent transfers
– *i.e.*, the Carlyle Defendants quarterly dividend payments on their 6% preferred stock –

under the U.S. Bankruptcy Code. *See* AC ¶¶ 97-108.

## ARGUMENT

I.    **PLAINTIFF'S BREACH OF FIDUCIARY DUTY AND WASTE CLAIMS MUST BE DISMISSED UNDER FED. R. CIV. P. 12(B)(6)**

Plaintiff's fiduciary duty claims against the Defendants fall into three categories.

First, Plaintiff claims the Defendants breached their duty of loyalty by (1) artificially

extending the life of the Company in hopes that the Carlyle Defendants could recoup their

investment and (2) making unspecified transfers for the benefit of unspecified insiders. *See*

Counts I-III against the Director Defendants and Soose, AC ¶¶ 58-71, Counts IV and V

against the Carlyle Defendants, AC ¶¶ 72-79. Second, Plaintiff claims that Defendants

breached their duty of care by making poor business decisions, i.e., by "embarking on an

acquisition and debt binge," making ill-advised acquisitions, and dissipating the Company's

assets. *See* AC ¶¶ 1; 58-79. Third, Plaintiff challenges Defendants' failure to act, alleging

that Defendants "failed to inform themselves" of all information about IT Group's financial

condition and alternatives to improve its prospects; failed to retain restructuring, bankruptcy

and legal advice until it was too late; and failed to "take any action" to reduce IT Group's

debt and conserve its assets. *See id.*

Two recent cases decided by this Court, *Continuing Creditors' Comm. of Star*

*Telecommunications, Inc. v. Edgecomb, et al.*, 2004 U.S. Dist. LEXIS 25807, at *36-37 (D.

Del. Dec. 21, 2004) ("*Star*"), and *Stanziale v. Nachtomi*, 2004 U.S. Dist. LEXIS 7375, at *10

(D. Del. Apr. 20, 2004) ("*Stanziale I*"), decided on similar facts, conclusively demonstrate

that Plaintiff's conclusory allegations do not suffice to state a claim for breach of fiduciary

duty or waste. As was held in those cases, Plaintiff's conclusory duty of loyalty claims must

be dismissed because there are no allegations demonstrating that any of the Defendants

engaged in self-dealing or acted in any way that was inconsistent with the interests of IT

Group, its shareholders, and its creditors. As was also held in *Star* and *Stanziale I*, Plaintiff's

duty of care and corporate waste claims are precluded by the "exculpation clause" in IT

Group's Amended Certificate of Incorporation and the business judgment rule. Moreover, as this Court held in *Stanziale I*, 2004 U.S. Dist. LEXIS 7375, and *Stanziale II*, 2004 U.S. Dist. LEXIS 15664 (D. Del. Aug. 6, 2004), the Plaintiff here fails to allege facts showing the egregious abdication of duties necessary to sustain a lack of oversight claim. Furthermore, Plaintiff's allegations do not establish that the Carlyle Defendants owed <u>any</u> fiduciary duties with respect to IT Group, or that they "aided and abetted" any individual Defendant's alleged breach. For each of these reasons, as shown below, Counts I – V must be dismissed.

### A. Plaintiff's Claims For Breach Of The Duty Of Loyalty Are Inadequately Pled

To state a claim for a breach of the duty of loyalty, the Plaintiff "must plead facts demonstrating that a majority of [the Director Defendants were] interested and/or lacked independence" with respect to a challenged action.[2] *Star*, 2004 U.S. Dist. LEXIS 25807, at *26 (quoting *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002)). As stated in *Star*, "to show that a director was interested, it is usually necessary to show that the director was on both sides of a transaction or received a benefit not received by the shareholders." *Id.* at *26 (quoting *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993) ("'[a] director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the other stockholders '") Here, there are no facts supporting any allegation that the Carlyle Defendants or any of the Director Defendants had any interest inconsistent with IT Group's shareholders.

Plaintiff claims that the Carlyle Defendants were paid stock dividends and unspecified consulting fees, and "artificially extended the life of IT Group in an effort to

---

[2] Although Plaintiff apparently intends to allege that Defendant Soose breached his duty of loyalty to IT Group, he alleges literally nothing to suggest how Soose engaged in such a breach, or how he benefited from any such conduct. Indeed, the Complaint alleges nothing about Soose beyond his residence and job titles. *See* AC ¶ 13. Accordingly, any duty of loyalty claims must be dismissed. *See Star*, 2004 U.S. Dist. LEXIS 25807, at *32-33 (dismissing duty of loyalty claims against non-director officers who "did not participate in any board votes," were "scarcely mentioned in the Complaint," and about whom no facts were pled other than job titles and dates of service)

7

obtain a return of the [their] equity investment." AC ¶ 1. Plaintiff then alleges, in a purely conclusory fashion, that the Director Defendants lacked independence and approved the consulting fees, dividends and the successive financings meant to keep IT Group afloat because they were under the purported control of the Carlyle Defendants. *Id.* These allegations are plainly insufficient under *Star.*

First, in *Star*, this Court expressly rejected claims based on a "desire to increase the share price," and therefore a desire to increase the value of one's holdings. The Court held:

> Plaintiff's argument rests on the unsupportable premise that a director who owns a lot of stock cannot [act in] a disinterested fashion. <u>No precedent cited by the Plaintiff stands for the proposition that stock ownership, coinciding with a Board decision that may affect the price of those shares, is adequate to show a breach of the duty of loyalty.</u>

*Id.* at *28 (emphasis added).

Second, payment for services of directors, "without more, do[es] not establish any financial interest." *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988). Similarly, the fact that directors, officers or shareholders obtain compensation for consulting also does not, obviously, demonstrate a breach of fiduciary duty. *See, e.g., In re The Limited, Inc. S'holders Litig.*, 2002 WL 537692, *4-5 (Del. Ch. March 27, 2002) (director's position as principal of a company that received $400,000 in annual revenue from defendant did not raise reasonable doubt of his independence); *Guttman v. Huang*, 823 A.2d 492, 502 (Del. Ch. 2003) (payment of legal fees for services by lawyer-director, not shown to be material or dependent on Board conduct, did not give rise to reasonable doubt regarding the director's disinterest in considering demand). Finally, the fact that certain board members are large stockholders "does not create a disqualifying 'personal pecuniary interest' to defeat the operation of the business judgment rule." *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 958 (Del. 1985). Indeed, in *Star* this Court held that stock sales by insiders are not sufficient to give rise to any inference of a breach of a duty of loyalty: "Under Delaware law, simply selling company stock does not make a director interested." 2004 U.S. Dist. LEXIS

8

25807, at *29-30 (quoting *Guttman,* 823 A 2d at 502 ("it is unwise to formulate a common law rule that makes a director 'interested' whenever [it is alleged] that he made sales of the company stock ")) As this Court stated in *Star,* such an argument "simply cannot withstand scrutiny " *Id* at 30  Clearly, the argument that a shareholder can be deemed "interested" because it receives dividends on stock which is not sold also "cannot withstand scrutiny " *Id*

Finally, Plaintiff has pled no facts showing the Director Defendants were somehow "controlled" by the Carlyle Defendants and caused the Defendants to act in some way that was contrary to the interest of IT Group or its shareholders [3]  As stated in *Star,* "it is obvious, though, that showing a director lacks independence because of a subservient relationship to an interested person depends in the first instance on showing that the supposedly dominating person is actually [self-] interested " *Id* at *32  To paraphrase this Court,

> Because the Plaintiff has failed to plead facts from which it could be inferred that [the Carlyle Defendants were] interested,    it follows that the Plaintiff has failed to plead facts from which it could be inferred that those remaining directors were beholden to an interested [party]      By extension, the Plaintiff has not adequately pleaded a breach of the duty of loyalty by [the Carlyle Defendants or] the Board

*Id*  Accordingly, such claims must be dismissed

### B.    IT Group's Certificate Of Incorporation Expressly Eliminates The Director Defendants' Liability For Non-Intentional Breaches Of The Duty Of Care And Claims Of Corporate Waste

As this Court held in *Star* and *Stanziale I,* Plaintiff's claims that the Defendant Directors abdicated their management duties, acted with gross negligence, and engaged in corporate waste, must be dismissed because the exculpation clause in IT Group's Certificate

---

[3]  Plaintiff's allegation that "the Carlyle Defendants possessed and exercised control over the IT Group" (AC ¶ 14) is misguided  Although permitted to appoint a majority of the IT Group board, the Carlyle Defendants did not do so after May 14, 1999, instead appointing five members of the ten-member Board after that point  See Excerpts from IT Group Definitive Proxy Statement dated May 20, 1999, Exh  D to Becker Decl , at A0024  Further, as noted *infra,* a director's appointment by a particular shareholder or entity, without specific allegations establishing that she was "controlled," are legally insufficient to demonstrate control

of Incorporation,[4] adopted pursuant to 8 Del C § 102(b)(7), immunizes the Company's

directors from liability arising from non-intentional breaches of the duty of care. *See Star,*

2004 U S. Dist LEXIS 25807, at *36-38 (citing *Prod Res Group, LLC v NCT Group, Inc ,*

863 A 2d 772, 794-95 (Del. Ch 2004))[5]   Thus, claims brought by shareholders or creditors,[6]

such as those asserted here, alleging that the Defendant Directors abdicated their

management duties, acted with gross negligence, and engaged in corporate waste, "fail[] as a

matter of law because the exculpation clause protects the [Director Defendants] against any

claim for a breach of the duty of care " *Id* at *38, *41.

      In *Star,* this Court ruled that the bankrupt company's exculpation clause precluded

similar claims by the Creditors' Liquidating Trust for alleged mismanagement related to a

---

[4] *See* IT Group's Certificate of Amendment of Certificate of Incorporation, Exh E to Becker
Decl , at A0028, which provides:

> A director of this Corporation shall not be personally liable to the Corporation or
> its stockholders for monetary damages for a breach of fiduciary duty as a
> director, except to the extent such limitation of liability is prohibited by the
> Delaware General Corporation Law as the same exists hereafter amended

The Court may take judicial notice of IT Group's Amended Certificate of Incorporation *See In re
BHC Communications Inc S'holders Litig ,* 789 A 2d 1, 9 (Del Ch 2001) (taking judicial notice
of the exculpatory provisions of the Defendant company's certificates of incorporation); *see also
Wal-Mart Stores v AIG Life Ins Co ,* 860 A 2d 312, 321 n 28 (D Del 2004) (noting that on a
motion to dismiss, the court may take judicial notice of contents of documents required by law to
be filed and actually filed with state officials, including certificate of incorporation)

[5] As Vice Chancellor Strine of the Delaware Court of Chancery recently noted,

> One of the primary purposes of § 102(b)(7) is to encourage directors to undertake
> risky, but potentially value-maximizing, business strategies, so long as they do so
> in good faith  To expose directors to liability for breach of the duty of care for
> claims of mismanagement asserted by creditors guts this purpose by denying
> directors the protection of § 102(b)(7) when they arguably need it most  That is,
> when, despite the directors' good intentions, the business plan of the firm did not
> generate financial success and the firm has become insolvent, the possibility of
> hindsight bias about the directors' prior ability to foresee that their business plans
> would not pan out is at its zenith and when the exculpatory charter provision is
> most useful

*Prod Res ,* 863 A 2d at 777

[6] This case was brought initially on behalf of the Official Committee of Unsecured Creditors of
IT Group (the "Creditors Committee")  Upon confirmation of the IT Group Chapter 11 Plan of
Reorganization, the Creditors Committee's claims vested in the Plaintiff, IT Litigation Trust

corporate acquisition, a separate merger, and efforts to obtain capital to avoid bankruptcy. *Id.* at *37-38. *See also Malpiede v. Townson*, 780 A.2d 1075, 1093-95 (Del. 2001) (en banc) (affirming dismissal of breach of fiduciary duty of care claims pursuant to 8 Del. C. § 102(b)(7)). The same result is required here: Plaintiff's duty of care and corporate waste claims[7] – based on hindsight allegations that the Director Defendants improperly managed IT Group and undertook an aggressive acquisition strategy that ultimately did not succeed – are precisely the types of claims barred by § 102(b)(7) and *Star*, 2004 U.S. Dist. LEXIS 25807. As Chief Justice Veasey put it, Plaintiff's claims "are unavailing because defendants have brought forth the Section 102(b)(7) charter provision that bars such claims. This is the end of the case." *Malpiede*, 780 A.2d at 1094-95.

> **C.      Plaintiff's Claims For Breach Of Fiduciary Duty Based On Defendants' Allegedly Ill-Advised Business Strategy Fail To State A Claim Because Such Actions Were Protected By The Business Judgment Rule**

Plaintiff's claims are also barred by the business judgment rule. As this Court has held, under the business judgment rule, absent allegations "of facts showing self-dealing or improper motive, a corporate officer or director is not legally responsible to the corporation for losses that may be suffered as a result of a decision that an officer made or that directors authorized in good faith." *Star*, 2004 U.S. Dist. LEXIS 25807, at *21 (quoting *Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1051 (Del. Ch. 1996)). Thus, where as here, there are no facts supporting a breach of the duty of loyalty, Plaintiff can only "overcome the presumption of the business judgment rule [by] alleging with particularity facts which establish that the contested decision was not a product of valid business judgment." *Stanziale I*, 2004 U.S. Dist. LEXIS 7375, at *8-9 (*quoting In re Gen. Motors Class E Stock Buyout Sec. Litig.*, 694 F. Supp. 1119, 1132 (D. Del. 1988)) (emphasis added); *see also Star*, 2004 U.S. Dist. LEXIS

---

[7] "Absent a breach [of] loyalty, §102(b)(7) protects directors and officers from a claim of corporate waste." *Star*, 2004 U.S. Dist. LEXIS 25807, at *41 (quoting *Green v. Phillips*, 1996 LEXIS 76, (Del. Ch. June 19, 1996)).

25807, at *23 (plaintiff must plead facts raising "a reasonable doubt that the challenged transaction was the product of a valid exercise of a valid business judgment") (quoting *Levine v Smith*, 591 A 2d 194, 205 (Del 1991))[8]

Here, Plaintiff offers only conclusory allegations that the Defendants pursued a "roll-up strategy long after they knew or should have known it was a failure" (AC ¶ 61(f), ¶ 65(f), ¶ 74(f)), paying too much for acquisitions, pushing IT Group further into debt, making transfers to "insiders," and "artificially extending the life of the insolvent company " AC ¶ 61(b), (c), (f), (g), (h); ¶ 65(b), (c), (f), (g), (h); ¶ 74(b), (c), (f), (g), (h) These unsupported generalized allegations are patently insufficient to overcome the business judgment rule presumption Plaintiff has failed to allege <u>facts</u>, which, if true, would demonstrate that any of the Defendants did not have a good faith belief that IT Group's acquisition strategy and continued efforts to obtain credit and remain solvent were in the Company's best interest

In *Stanziale I*, this Court recently considered starkly similar allegations, i e , that "the Directors resolved to borrow millions of dollars for the purchase of new jet engines and authorized the lease of new jet engines, while the Debtor still had debt associated with its older engines," knowing that the Company "was suffering a severe cash flow problem " 2004 U S Dist LEXIS 7375, at *10 Plaintiff alleged the Directors' "decisions caused the Debtor to incur 'substantial additional debt' and led to 'significant losses '" *Id* at *11 This Court disposed of the claim, noting:

> While the directors may, indeed, have exercised poor business judgment in
> borrowing and authorizing the purchase and lease of new jet engines, the facts

---

[8] Citing the dearth of authority addressing the pleading standards governing non-derivative claims brought by a creditors committee against the director defendants for breaches of fiduciary duties, this Court in *Star* stated that the analysis of a motion to dismiss such claims "must be informed by precedents arising from derivative actions where the plaintiff alleges that demand should be excused as futile " *Star*, 2004 U S Dist LEXIS 25807, at *20 Because the procedural posture in *Star* mirrors the procedural posture in the instant motion to dismiss, Defendants rely on *Star* as well as, where necessary, the demand futility cases cited therein *See also Prod Res*, 863 A 2d at 801 (noting in the context of a direct claim brought by a creditor against director, "[e]valuating a creditor's claim that directors gave breached fiduciary duties owed to the firm involves no novel inquiry, as the court can draw deeply on the principles that apply in typical derivative cases")

that Plaintiff alleges, taken in the light most favorable to the Plaintiff, do not constitute such egregiously bad decisions as to abrogate the business judgment rule    A person of sound business judgment could have believed the decision to purchase or lease new engines was rational. Nor does that decision show that the directors did not act in good faith. Therefore, Plaintiff's allegations do not fall into any exceptions to the general statement that an officer or director, absent self-dealing or improper motive, is not liable for business decisions made in good faith

*Id* at *11-12 (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (only acts that are "egregious, patently frivolous, or capricious" which "no person of ordinary sound business judgment would believe" to be rational constitutes an "abuse of discretion" not protected by the business judgment rule)) [9]

As in *Stanziale I*, Plaintiff here alleges – at best[10] – that the Defendants "exercised poor business judgment," when their decisions are viewed in hindsight. As the Court therein stated (quoting the Delaware Supreme Court), "to allege that a corporation has suffered a loss as a result of a lawful transaction, within the corporation's powers, authorized by a corporate fiduciary acting in good faith pursuant of corporate purposes, does not state a claim for relief against that fiduciary no matter how foolish the [decision] may appear retrospect." *Id* at *12 (quoting *Gagliardi*, 683 A.2d at 1052). Absent any allegations showing that any of Defendants' actions were "beyond the bounds of reasonable judgment," *Id* at *12 n.5 (citing *JP Stevens*, 542 A.2d at 780-81), Plaintiff's duty of care claim premised on the Defendants' business decision to allow the Company to take on debt must be dismissed. [11]

---

[9] *See also id* at *12 n.5 (citing *In re J.P. Stevens & Co. S'holders Litig.*, 542 A.2d 770, 780-81 (Del. 1998) (business judgment rule protects Directors absent allegations that a "decision is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith")

[10] As this Court stated in *Star*, conclusory allegations that the Defendants' conduct was not a valid exercise of business judgment "will not be accepted as true without specific allegations of fact to support them." *Star*, 2004 U.S. Dist. LEXIS 25807, at *22-23

[11] Any duty of care claim asserted against Mr. Soose, an officer of IT Group, should similarly be dismissed. As this Court stated in *Stanziale I*, when rejecting such claims against corporate officers, "Plaintiff has merely alleged that the Officers acted in bad faith, and conclusory allegations are not considered as expressly pleaded facts or factual inferences, sufficient to rebut the presumption of good faith inherent in the business judgment rule." *Stanziale I*, 2004 U.S. Dist. LEXIS 7375, at *15 (internal citation omitted). This Court further stated that "a corporate officer is not legally responsible for losses that result from a good faith decision if there are not any facts

**D.**   **Plaintiff's Allegations Are Wholly Insufficient To State A Fiduciary Duty Claim For The Defendants' Alleged Failure of Oversight**

Plaintiff faces a nearly insurmountable hurdle in establishing a breach of fiduciary duty based on the Defendants' alleged "failure to inform themselves" and alleged failure to act  *See* AC ¶¶ 61, 65, 69, 74  As this Court has noted, a claim premised on an alleged failure to act or oversee a Company's affairs, is "'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment'"  *Stanziale I*, 2004 U S  Dist  LEXIS 7375, at *20 (quoting *In re Caremark Int'l, Inc  Derivative Litig*, 698 A 2d 959, 967 (Del  Ch  1996))  For such claims to survive a motion to dismiss, Plaintiff must allege "a sustained or systematic failure of the board to exercise oversight" that evidences a "lack of good faith"  *Caremark*, 698 A 2d at 967;[12] *Amalgamated Bank v  Yost*, 2005 U S  Dist  LEXIS 1280, at *49 n 27 (E D  Pa  2005) (noting a "lack of good faith   is a necessary condition to liability [for an] oversight claim")

As was the case in *Stanziale II*, here "there are no facts alleged to support the

---

showing self-dealing or improper motive "  *Id*  at *24  Here, not only has Plaintiff failed to allege any facts that would support a finding that Mr  Soose "acted in bad faith" or engaged in "self-dealing or improper motive," it has not even made a "conclusory allegation" of such conduct  Indeed, he is only identified by name in Paragraph 13 of the Complaint  In the absence of any facts showing – let alone allegations claiming – bad faith or self-dealing, the duty of care claims asserted against Mr  Soose, as well the non-officer defendants, should be dismissed  Thus, there is no basis in fact or law given to support a grant of relief against Mr  Soose, or any other non-officer Defendant

[12] Notably, the *Caremark* decision itself only <u>hypothesized</u> the possibility of a failure of oversight claim  698 A 2d at 968-70  In the nearly ten-year period since that decision, the Delaware courts have declined to impose liability on this basis, and the courts permitting such claims to proceed past the motion to dismiss stage have been faced with alleged oversight failures far more extreme than the lack of timely action alleged here  *In re Walt Disney Co  Derivative Litig*, 825 A 2d 275 (Del  Ch  2003) (board alleged to have consciously and intentionally disregarded its responsibilities in summarily approving Michael Ovitz's $140 million severance package); *In re Abbott Labs  Derivative S'holders Litig*, 325 F 3d 795 (7th Cir  2003) (board ignored six years worth of FDA warnings, several of which were sent to the chairman of the board, that ultimately resulted in Abbott paying a $100 million civil fine to the FDA – the largest ever – and suffering approximately $250 million in additional product loss and suspension)  Indeed, this Court has noted that even after *Walt Disney*, a failure of oversight claim cannot proceed past the motion to dismiss phase where "Plaintiff has not alleged facts that show that the directors consciously and intentionally disregarded their responsibilities" or "that the directors didn't care about the effect their decision would have on the Debtor "  *Stanziale I*, 2004 U S  Dist  LEXIS 7375, at *22

conclusion that the defendants    lacked good faith in the exercise of their monitoring responsibilities." 2004 U S Dist LEXIS 15664, at *11   All Plaintiff alleges are generalized conclusions that the Defendants "failed to inform themselves of all material information"; "failed to preserve, maximize, and not dissipate the assets for the benefit of the Company and its creditors" and "knowingly or recklessly ignore[ed] facts of the Company's insolvency." AC ¶ 61(a), (d), (e); ¶ 65(a), (d), (e); ¶ 74(a), (d), (e)  But the Complaint nowhere identifies what material information the Defendants should have become knowledgeable about, what facts the Defendants ignored, or what actions the Defendants failed to take to maximize and preserve IT Group's assets  Plaintiff cannot even allege that the Defendants didn't consult experts – because they did – AC ¶ 53-54, but merely argues in hindsight that they did not do so soon enough  *See* AC ¶ 61(i), ¶ 65(i), ¶ 74(i) (Defendants "fail[ed] to timely retain restructuring advisors to inform themselves of their duties.")

In short, other than generally intimating that Defendants failed to prevent IT Group's insolvency, Plaintiff does not allege <u>any</u> facts demonstrating that the Defendants engaged in a "sustained and systematic" abdication of their oversight duties tantamount to bad faith as required to state a claim for failure of oversight  Accordingly, for these additional reasons, Plaintiff's "failure of oversight" claims must fail  *See, e g , Stanziale II*, 2004 LEXIS 15664, at *11 (dismissing failure of oversight claim where plaintiff alleged "'no evidence that the director defendants were guilty of a sustained failure to exercise their oversight function.'") (quoting *Caremark*, 698 A 2d at 972); *see also Prod. Res* , 863 A 2d at 798-99 (dismissing "mismanagement and inadequate oversight allegations [that] are wholly conclusory and fail to meet even notice pleading requirements")

### E.    Plaintiff Fails To State A Claim For Corporate Waste

Plaintiff's claim for corporate waste also must be dismissed [13]  Again, this Court has

---

[13] As noted, *supra* I B, Plaintiff's corporate waste claim is also precluded by § 102(b)(7)  *See Star*, 2004 U S Dist LEXIS 25807, at *41 (quoting *Green*, 1996 LEXIS 76, at *22)  ("Absent a breach [of] loyalty, §102(b)(7) protects directors and officers from a claim of corporate waste")  The Plaintiff's corporate waste claim against all of the Defendants is conclusory, and as this Court has

15

held that "[t]he Delaware standard for pleading corporate waste is stringent," and to prevail,
Plaintiff must allege facts showing "'an exchange that is so one sided that no business person
of ordinary, sound judgment could conclude that the corporation has received adequate
consideration '" *Star*, 2004 U S Dist LEXIS 25807, at *40 (quoting *Official Comm Of
Unsecured Creditors of Integrated Health Servs v Elkins*, 2004 Del Ch LEXIS 122, at *63-
64 (Del Ch 2004) and citing *Brehm v Eisner*, 746 A 2d 244, 263 (Del 2000)) Given this
high burden, "'[w]aste is a standard rarely satisfied in Delaware court '" *Star*, 2004 U S Dist
LEXIS 25807, at *40 (quoting *Elkins*, 2004 U.S Dist LEXIS 122, at *17) (waste can be
shown only if the transaction at issue was "irrational") [14] As the Delaware Supreme Court
noted in *Brehm*, if "there is any substantial consideration received by the corporation and if
there is a good faith judgment that in the circumstances the transaction is worthwhile, there
should be no finding of waste, even if the fact finder would conclude *ex post* that the
transaction was unreasonably risky " *Brehm*, 746 A 2d at 263 (quoting *Lewis v Vogelstein*,
699 A 2d 327, 336 (Del Ch 1997))

Here, Plaintiff has not alleged facts suggesting that any of IT Group's acquisitions –
as to which no details are provided – or any other expenditure resulted in "an exchange that is
so one sided that no business person of ordinary, sound judgment could conclude that the
corporation has received adequate consideration" or that Defendants went forward with
transactions that served no corporate purpose Accordingly, Plaintiff's corporate waste claim
must be dismissed

**F. Plaintiff's Breach Of Fiduciary Duty Claims Against The Carlyle Defendants Must Be Dismissed Because The Carlyle Defendants Did Not Owe A Fiduciary Duty To IT Group's Shareholders Or Creditors**

Plaintiff's fiduciary duty claims against the Carlyle Defendants fail for another,

---

stated in *Stanziale I*, "conclusory allegations are not sufficient to overcome the protections of the business judgment rule " 2004 U S Dist LEXIS 7375, at *27

[14] "That standard applies equally to claims against officers and directors " *Id* at *40-41 (quoting *In re Walt Disney Co*, 2004 Del Ch LEXIS 132, *14 (Del Ch Sept 10, 2004))

16

independent reason: the Carlyle Defendants owed no fiduciary duty to IT Group, its shareholders or its creditors [15] Plaintiff's assertion that the Carlyle Defendants were "controlling shareholders" of IT Group and, thus, owed duties to the Company's creditors, is simply incorrect. AC ¶¶ 1, 14, 31.

Under Delaware law, it is well-settled that a party is considered a "controlling shareholder," with a concomitant fiduciary duty, "<u>only</u> if it owns a majority interest in or exercises control over the business affairs of the corporation." *Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987) (noting that "by definition" no fiduciary duty exists where shareholder owned 26% minority interest and did not control majority of board); *see also In re Sea-Land Corp. S'holders Litig.*, 1987 WL 11283, *4 (Del. Ch. May 22, 1987) ("[a] stockholder is not deemed controlling unless it owns a majority of the stock or has exercised <u>actual</u> domination and control in directing the corporation's business affairs") (emphasis added) (citations omitted). Moreover, "the <u>potential</u> ability to exercise control is not equivalent to the <u>actual</u> exercise of that ability," and thus will not suffice to establish a fiduciary duty as controlling stockholder. *Sea-Land,* 1987 WL 11283, at *5 (emphasis added).

Here, as the Complaint concedes, the Carlyle Defendants were minority shareholders. AC ¶ 31 ("[t]he Carlyle Defendants received approximately 25% of the IT Group's voting power. . ."). This percentage of ownership is even less than the 26% the Delaware Supreme Court held in *Ivanhoe Partners,* "by definition," does not to give rise to a fiduciary duty. 535 A.2d at 1344. [16] Plaintiff must therefore demonstrate that the Carlyle Defendants exercised

---

[15] Plaintiff's Complaint offers only the following unsupported allegations: (1) all Defendants "act[ed] for the benefit, and under the control and direction, of The Carlyle Defendants" (AC ¶ 1); (2) "[a]t all relevant times, the Defendants possessed and exercised control over the IT Group" (AC ¶14); (3) the Carlyle Defendants "obtained the right to elect a majority of the IT Group's directors" (AC ¶¶ 14, 31); and (4) through this supposed control of the Board, the Carlyle Defendants adopted a "Roll Up Strategy" for IT Group of acquiring the Company's competitors (AC ¶ 32)

actual control of IT Group's conduct. *See, e g, Emerald Partners v. Berlin,* 787 A 2d 85, 94 (Del 2001) ("a shareholder who owns less than 50% of a corporation's outstanding stock, without some additional allegation of domination through actual control of corporate conduct, is not a 'controlling stockholder' for fiduciary duty purposes"), *Sea-Land,* 1987 WL 11283, at *4 (dismissing claim predicated on fiduciary duty owed as "the complaint admits that [defendant] was not a majority (51%) stockholder" and did not control day-to-day affairs of the company)

Plaintiff's wholly conclusory allegations concerning the Carlyle Defendants' 25% stock ownership and their right to nominate a majority of Directors are wholly insufficient to demonstrate any such "actual control," however. *See, e g, Sea-Land,* 1987 WL 11283, at *4-5 (dismissing "conclusory allegations concerning [39 5% shareholders'] stock control" as insufficient to bestow "fiduciary status")[17]; *see also In re W Nat Corp S'holders Litig,* 2000 WL 710192, at *1, *11-17 (Del Ch May 22, 2000) (dismissing complaint where "[t]he fact that    a large shareholder played some role in the nomination process" was sufficient to support the notion that [defendant] dominated" or "exercised actual control over the Company's business and affairs"), *see also Kearney v. Jandernoa,* 957 F Supp 116, 118-19 (W D Mich 1997) (applying Delaware law, dismissing complaint where plaintiffs "asserted

---

[17] In *Sea-Land,* Vice Chancellor Jacobs rejected plaintiffs' contention that "controlling shareholder" status—with its accompanying fiduciary duty—could be inferred where a 39 5 percent stockholder had the right to nominate several directors. 1987 WL 11283, at *4-5. The *Sea-Land* court granted defendants' motion to dismiss:

> Here no allegation is made that [defendant] actually took any steps to exert leverage to pressure Sea-Land to accede to a transaction that disadvantaged Sea-Land's other stockholders. Nor does the complaint allege that [defendant] acted in any other way so as to influence the Sea-Land directors' conduct. Thus even allowing plaintiffs the benefit of all reasonable inferences from the pleaded facts, no sufficient basis exists for bestowing (involuntarily) upon [defendant] the mantle of a fiduciary

*Id* at *5. *See also Citron v. Steego Corp,* 1988 WL 94738, at *6-7 (Del Ch Sept 9, 1988) (refusing preliminary injunction based on fiduciary duty claims where plaintiff offered no evidence that 48 8% shareholder actually exercised control over board)

nothing more than legal conclusions" that "Defendants were controlling shareholders")

As the Delaware Supreme Court has stated:

> [I]t is not enough to charge that a director was nominated by or elected at the behest of those controlling the outcome of a corporate election  That is the usual way a person becomes a corporate director  It is the care, attention and sense of individual responsibility to the performance of one's duties, not the method of election, that generally touches on independence

*Aronson v  Lewis*, 473 A 2d at 816 (47 % shareholders who selected <u>all</u> of the directors not shown to be controlling shareholders for the purposes of demonstrating demand futility in a shareholder derivative case)  In other words, as the *Aronson* court succinctly stated, "[t]he shorthand shibboleth of dominated and controlled directors is insufficient " *Id*

The fact that Carlyle Defendants had the <u>right</u> to appoint a majority of the Board is by itself insufficient to establish that Carlyle <u>exercised actual control</u> over the IT Group Board especially since the right was not actually exercised after May 1999  The Complaint alleges no facts whatsoever to establish that the Carlyle Defendants influenced or exerted leverage over the IT Group Board members in their consideration of the transactions or decisions about which Plaintiff complains  In fact, Plaintiff alleges nothing more than that <u>two</u> of the IT Group's <u>nine</u> (and later ten) Directors (D'Aniello and Dolan) were Managing Directors of the Carlyle Defendants' companies, and further alleges the tenuous connection that two other Director Defendants (Harvey and Watkins) served as Directors of other corporations in which the Carlyle Defendants invested

These allegations cannot support Plaintiff's conclusion that the Carlyle Defendants "controlled" IT Group's Board  *Aronson*, 473 A 2d at 815; *Western*, 2000 WL 710192, at *15 n 46 (stockholder appointed <u>all</u> of the board members and was not deemed to be a controlling shareholder), *see also Sea-Land*, 1987 WL 11283, at *4-5 (same)  Accordingly, the Complaint fails to establish that the Carlyle Defendants owed a fiduciary duty to IT Group or its shareholders [18]  Plaintiff's fiduciary duty claim against the Carlyle Defendants must

---

[18]  To the extent Plaintiff is asserting claims on behalf of IT Group's creditors in this action

therefore be dismissed

**G.    Plaintiff's Complaint Fails To Allege Sufficient Facts To Establish That The Carlyle Defendants Aided Or Abetted A Breach Of Fiduciary Duty**

Plaintiff alleges that the Carlyle Defendants "aided and abetted" the Directors' and Officers' breaches of their fiduciary duties," AC ¶¶ 76-79, a cause of action with three elements: "(1) the existence of a fiduciary relationship; (2) a breach of that relationship; and (3) knowing participation by the defendant in the fiduciary's breach." *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 989 (Del. Ch. 2000). Although Plaintiff does allege the existence of a fiduciary relationship between the Director Defendants and the Company, Plaintiff fails to plead any facts necessary to establish the remaining elements.

As shown in Sections A-F, *supra,* the Complaint fails to provide the basic facts needed to support a finding that any breach occurred. Plaintiff also fails to show that any of the Carlyle Defendants "knowingly participated" in the non-existent breach. The Complaint is completely bereft of any allegation concerning either the Defendants' state of mind, or of what acts could be deemed participation in the Director Defendants' alleged breach. Absent such allegations, Plaintiff's conclusory assertion of aiding and abetting must be dismissed. *See, e.g., Turner*, 846 A.2d at 989 (granting motion to dismiss aiding and abetting claims where complaint contains "no well-pleaded facts to support imputing knowledge of wrongdoing" by "each" alleged aider and abettor)

---

(indeed, the IT Group Creditors Committee originally brought this case, with the Litigation Trust substituted as Plaintiff after plan confirmation), it is far from clear that any fiduciary duty would have been owed to the Company's creditors until IT Group was demonstrably insolvent. As Vice Chancellor Strine noted in *Production Resources,* fiduciary duties to a firm's creditors arise "[w]hen a firm has reached the point of insolvency." 863 A.2d at 790-91. However, "[t]he more difficult issue is whether there is a zone in which the directors' duties to the firm fundamentally change and whether creditors can assert fiduciary duty claims (e.g. for injunctive relief) before the firm becomes insolvent. If creditors have standing to bring derivative claims in the "zone of insolvency," they will share that standing with stockholders, leading to the possibility of derivative suits by two sets of plaintiffs with starkly different conceptions of what is best for the firm." *Id.* at 790 n.56

II.    **THE SIXTH THROUGH EIGHTH CLAIMS FOR RELIEF, FOR VIOLATIONS OF THE BANKRUPTCY CODE, MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM**

A.    **Plaintiff's Sixth Claim For Relief Fails To State A Claim**

Plaintiff's Sixth Claim for Relief for avoidance of alleged preferential transfers fails to set forth the minimum information required to state a proper preference claim  In order to survive a motion to dismiss a preference claim, the complaint must provide:

> (a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer

*TWA, Inc  v  Marsh USA Inc*, 305 B R  228, 232 (Bankr  D  Del  2004), *see also Pardo v Gonzaba (In re APF Co )*, 308 B R  183, 188 (Bankr  D  Del  2004) (same); *Valley Media, Inc  v  Borders, Inc  (In re Valley Media, Inc )*, 288 B R  189, 192 (Bankr  D  Del  2003) (same)  Plaintiff's Sixth Claim for Relief falls far short of alleging the minimum information necessary to state a preference claim

As an initial matter, the Complaint is completely silent as to the nature of the alleged antecedent debt  It does not specify an agreement under which the alleged preferential transfers were made, but instead simply parrots the statutory language  *See* AC ¶ 91 ("The Avoidable Transfers were made on the account of an antecedent debt because the Avoidable Transfers were made by one or more of the Debtors upon an obligation owed by one or more of the Debtors before the Avoidable Transfers were made ")  Moreover, the Complaint makes no attempt to differentiate between the Carlyle Defendants (*see* AC ¶ 87) or to specify the alleged antecedent debt owed by Debtors to any one of the individual Defendants  *See id* ¶¶ 90-91  Clearly, Plaintiff's Sixth Claim for Relief fails to provide fair notice to the Defendants regarding the nature and extent of the alleged antecedent debt owed by Debtors to any of them  *See, e g , Marsh USA Inc*, 305 B R  at 232 ("simply quoting the statutory language is not sufficient to survive a motion to dismiss"); *Gonzaba*, 308 B R  at 188

Plaintiff's description of the alleged preferential transfers also fails to provide fair

notice to Defendants. For example, Plaintiff's Complaint simply alleges that the "Carlyle Defendants" "received an Avoidable Transfer of $2,076,000," but makes no effort to separately state how much each of these 12 separate defendants allegedly received from the Debtors. *See* AC ¶ 87. Plaintiff also does not set forth (i) the date of the alleged transfer(s), (ii) the name of the transferor or (iii) any other identifying information sufficient to enable Defendants to ascertain the specific payments alleged by Plaintiff to be preferential. *See id* ¶¶ 80-87. Plaintiff did not even attach a schedule to the Complaint setting forth this important identifying information. In short, Plaintiff's non-specific allegations have left Defendants to speculate regarding (i) the exact transfers attacked by Plaintiff and (ii) which among the separate Defendants received the alleged preferential transfers. Clearly, the Federal Rules do not countenance such pleading. *See, e.g., Pardo v. Avanti Corporate Health Sys., Inc. (In re APF Co.)*, 274 B.R. 634, 639-640 (Bankr. D. Del. 2001) ("Although liberal, the pleading requirements of the Federal Rules are not intended to reduce a defendant to guesswork and conjecture").

Motions to dismiss have been granted based upon complaints indistinguishable from this one. For example, in *Marsh USA Inc.*, the plaintiff's complaint generally alleged that defendant had received a preferential transfer in an amount not less than two million dollars. *Marsh USA Inc.*, 305 B.R. at 232. The Court granted defendant's motion to dismiss for failure to state a claim, holding that:

> The complaint is deficient for a failure to provide the nature and amounts of the debts, dates of payment transactions, amounts of the payment transactions, etc. This complaint is similar to the pleadings in *Claybrook v. Southwestern Bell Telephone Co.*, Adv. Pro. No. 01-101542, Walsh, J. (Bankr. D. Del. April 3, 2002), in which I granted the motion to dismiss because of the insufficiency of the complaint. In *Claybrook* the 'only fact alleged in the Complaint in support of Plaintiff's claims is that during the ninety days prior to the Petition Date, Debtors made preferential transfer(s) to the Defendant totaling at least $24,901.31.' *Id.* at 4. Here, similar to *Claybrook*, the complaint only provides one aggregated payment amount and then paraphrases the relevant statutory language.

*Marsh USA Inc*, 305 B R at 232-233, *see also Gonzaba*, 308 B R at 188 (granting Rule 12(b)(6) motion where plaintiff failed to identify the alleged preferential transfers by date, transferor and transferee); *Borders, Inc*, 288 B R at 192 (granting Rule 12(b)(6) motion where complaint alleged aggregate preference amount and failed to identify transfers by date, transferor and transferee); *Avanti*, 274 B R 640-641 (same)

As the Complaint fails to provide fair notice to Defendants, including failing to identify the alleged antecedent debt or the date, transferor and/or individual transferee of the alleged preferential transfers (as to the Carlyle Defendants), Defendants' Motion should be granted and Plaintiff's Sixth Claim for Relief should be dismissed

### B. Plaintiff's Seventh Claim For Relief Fails To State A Claim

Plaintiff's Seventh Claim for Relief is brought solely against the "Carlyle Defendants" and attempts to state constructive fraudulent transfer claims pursuant to both 11 U S C §§ 544 and 548   Complaint ¶¶ 96-106   Neither claim provides Defendants with fair notice of the grounds upon which such claims rest

As with Plaintiff's preference claim, Plaintiff's fraudulent transfer claims fail to distinguish among any of the individual Carlyle Defendants or provide any individual Carlyle Defendant with notice regarding a specific transfer received by that individual Defendant *See AC* ¶¶ 98-101   Plaintiff does not specify the allegedly relevant state law *See id* Plaintiff does not specify any "actual creditor" of Debtors as required under Section 544(b) or set forth allegations sufficient for the Defendants to discern the existence of any such creditor *See id* ¶ 105   Nor does Plaintiff engage in any discussion of the manner in which Debtors received less than reasonably equivalent value or fair consideration in exchange for the alleged fraudulent transfers   Instead, as with Plaintiff's preference claim, Plaintiff merely parrots the statutory language *See id* ¶¶ 97-103 (alleging that "Debtors did not receive reasonably equivalent value or fair consideration for the payments")

The Federal Rules do not countenance a pleading which places defendants in the position of "guesswork and conjecture" *See, e g, Avanti*, 274 B R at 639-640   Plaintiff's

23

allegations place Defendants in just such a position. Similar constructive fraudulent transfer claims have been dismissed by this Court. *See Pardo v. Found. Health Corp.*, Adv. Proc. No. 00-806, slip op. (PJW) (Bankr. D. Del. Jan. 21, 2004), pp. 2-3 (granting defendants Rule 12(b)(6) motion to dismiss Section 544 and 548 constructive fraudulent transfer claims where plaintiff's complaint failed to identify "[w]hich of the defendants got what?"); *Avanti,* 274 B.R. at 639-640 (granting defendants Rule 12(b)(6) motion where plaintiff's Section 544 claim failed to set forth sufficient background information to enable defendants to discern information supportive of the elements of Section 544(b)).

Plaintiff's fraudulent transfer allegations are general, vague and fail to apprise the individual Defendants regarding (i) which among them is alleged to have received a fraudulent transfer or (ii) how any such transfer was made without reasonably equivalent value or fair consideration. Accordingly, Plaintiff's Seventh Claim for Relief should be dismissed for failure to state a claim.

**C.    Plaintiff's Seventh Claim For Relief Pursuant To 11 U.S.C. § 548 Should Be Dismissed As Untimely**

Plaintiff's Seventh Claim for Relief should be dismissed to the extent that it seeks to avoid and recover alleged fraudulent transfers made more than one year prior to the IT Group's petition date. Section 548(a)(1) of the Bankruptcy Code only allows the "trustee" to attempt to "avoid any transfer of an interest of the debtor in property . . . that was made on or within one year before the date of the filing of the [debtor's] petition." 11 U.S.C. § 548(a)(1). IT Group filed its Petition for Relief on January 16, 2002. AC ¶ 56. Plaintiff's Seventh Claim for Relief under Section 548 of the Bankruptcy Code, however, seeks to avoid alleged transfers made earlier than January 16, 2001, *i.e.* more than one year prior to IT Group's petition date. *See* AC ¶ 98 (seeking to avoid $1,362,254 in payments allegedly made in 1998), ¶ 99 (seeking to avoid $2,765,700 in payments allegedly made in 1999) and ¶ 100 (seeking to avoid $2,765,700 in payments allegedly made in 2000) (collectively, the "1998-2000 Payments"). Because the 1998-2000 Payments were made earlier than "one year before

the date of the filing of the [debtor's] petition," Plaintiff's Seventh Claim for Relief should be dismissed to the extent that it seeks to avoid and recover the 1998-2000 Payments pursuant to Section 548 of the Bankruptcy Code

> **D.    Plaintiff's Eighth Claim for Relief Pursuant To Section 544 Of The Bankruptcy Code And 6 Del. Code § 1304(a)(1) Should Be Dismissed As Untimely**

Plaintiff's Eighth Claim for Relief attempts to state a claim for actual fraud under Delaware's Uniform Fraudulent Transfer Act   *See* AC ¶¶ 107-113 (alleging that certain transfers to Defendants were made with "actual intent to hinder, delay or defraud Debtor's creditors")   Plaintiff's claim, however, is untimely as to the majority of the transfers identified as fraudulent by Plaintiff   A plaintiff may only seek to avoid an alleged fraudulent transfer pursuant to 6 Del. Code  § 1304(a)(1) "within 4 years after the transfer was made "  6 Del. C. § 1309(1) [19]  Plaintiff's Eighth Claim for Relief was first filed on January 28, 2005 *See* AC ¶ 26  Accordingly, Plaintiff may not seek to avoid any transfer made to Defendants prior to January 28, 2001   *See* 6 Del. C. § 1309(1)   Plaintiff's Eighth Claim for Relief, however, seeks to avoid the 1998-2000 Payments (see AC ¶ 111) as well as unidentified payments allegedly made by IT Group to Defendants sometime between January 16, 2001 and January 16, 2002   *See id*  Accordingly, Defendants respectfully request that Plaintiff's Eighth Claim for Relief be dismissed as untimely to the extent that Plaintiff seeks to avoid any payments made by IT Group to Defendants prior to January 28, 2001

## III.    PLAINTIFF'S CLAIM FOR UNLAWFUL DIVIDEND PAYMENTS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6) BECAUSE PLAINTIFF FAILS TO PLEAD THE PREDICATE FACTS AS TO THE DIRECTORS' KNOWLEDGE OF IT GROUP'S FINANCIAL CONDITION

Plaintiff's Ninth Claim for Relief against the Director Defendants insufficiently alleges a violation of 8 Del. Code § 174, which provides that directors may be held liable for

---

[19]  Although Section 1309(1) also provides that a plaintiff may seek to avoid a transfer "within 1 year after the transfer  was or could reasonably have been discovered by the claimant," Plaintiff does not allege that this provision of Section 1309(1) applies   *See* AC ¶¶ 107-113

the unlawful payment of dividends or unlawful stock purchases or redemptions resulting from willful or negligent violations of 8 Del Code §§ 160 or 173  Section 173, in turn, provides that corporations shall pay dividends only in accordance with the statute and identifies the permissible forms in which dividends may be declared and paid  *See* 8 Del C § 173  Section 170 further provides that directors may declare and pay dividends either out of the corporation's "surplus" or out of its net profits for the fiscal year in which the dividend is declared  *See* 8 Del C § 170 (a)  The directors may not, however, pay out any dividend in the event that "the capital of the corporation    shall have been diminished     to an amount less than the aggregate amount of the capital represented by the issued and outstanding stock of all classes having a preference upon the distribution of assets " *Id*  Thus, stock dividends occurring while a corporation is insolvent are prohibited by Delaware law  *See, e g , EBS Litig LLC v Barclays Global Investors, N A* , 304 F 3d 302, 305 (3d Cir 2002)

Courts construing these sections of the Delaware statute have held that "to state a cause of action under § 174, a creditor first must prove that the corporation depleted its surplus in paying the dividend  *See* 8 Del C §170 (a)(1)  "The directors, however, have almost unfettered discretion in defining the extent of the corporation's surplus " *In re Color Tile, Inc* , 2000 U S Dist LEXIS 1303, at *10-11 (D Del Feb 9, 2000)  That is because, in determining the amount of the corporation's assets, liabilities, or any other facts pertinent to the existence of a surplus, Directors are entitled to rely

> in good faith on the records of the corporation and upon such information, opinions, reports or statements presented to the corporation by any of its officers or employees or committees of the board of directors, or by any person as to matters the director reasonably believes are within such other person's professional or expert competence

8 Del C § 172 (2004)

To meet the burden to properly plead insolvency, Plaintiff must plead facts that show the Company has either (1) "a deficiency of assets below liabilities with no reasonable

prospect that the business can be successfully continued in the face thereof," or (2) "an inability to meet maturing obligations as they fall due in the ordinary course of business." *See, e.g., Prod. Res.*, 863 A.2d at 782. "It is not always easy to determine whether a company even meets the test of solvency," let alone to define the "zone of insolvency." *Id.* at 790 n.56. Moreover, in addition to pleading facts sufficient to establish insolvency, Plaintiff must show that the Directors knew or should have known that the corporation's assets were insufficient to render a dividend at the time the dividend was paid (or stock redeemed). *PHP Liquidating, LLC v. Robbins*, 291 B.R. 592, 598 (D. Del. 2003).

Here, the Amended Complaint is devoid of any allegations as to facts showing the Company's purported insolvency, to what extent its capital was impaired, or any facts regarding the Company's finances generally at the specific times that the dividends were paid. Plaintiff alleges that unlawful dividends totaling approximately $8,967,929 were paid to the Carlyle Defendants in various increments throughout 1998, 1999 and 2000, with the final payment occurring in August 2001. AC ¶¶ 99, 101-103. Plaintiff then summarily alleges that "[t]he dividends paid to the Carlyle Defendants were made when the Debtor was insolvent or caused the Debtor to become insolvent; and as a result, were illegal under Delaware law and in violation of 8 Del. C. §174." AC ¶117. There are no allegations that, during the relevant timeframes, IT Group's liabilities exceeded its assets with no reasonable prospect that the business could continue, or that IT Group could not pay its debts in the ordinary course of business. The Complaint completely fails to plead the predicate facts to meet the test of insolvency, relying on impermissible conclusory allegations.

Nor does Plaintiff plead, as it must, any facts to show that the Directors knew that IT Group was insolvent or approaching insolvency at the time they decided to declare the subject dividends. To the contrary, Plaintiff alleges that the Director Defendants first became aware of the Company's precarious financial condition <u>after</u> the last dividend payment had been made. Thus, the Amended Complaint alleges that the last dividend was paid in August 2001, but that it was not until late November or early December 2001 that the Defendants

27

first looked into the Company's financial problems and retained professionals to investigate the Company's options, at which time all dividends were immediately suspended   AC ¶¶ 53, 103   It was in January 2002, following unsuccessful efforts to remedy the situation, that the company filed bankruptcy   AC ¶57

There are in fact no allegations as to what the individual directors knew or believed, or that they relied on information that was not credible in drawing conclusions about the company's finances   Because the directors of a Delaware corporation have wide discretion in exercising judgment as to a Company's finances, as set forth above, some allegation of wrongful conduct or imprudent reliance on financial records, beyond the purely conclusory assertions in the Complaint, is surely necessary to support a claim for the payment of unlawful dividends under 8 Del  C   § 174

Furthermore, the Litigation Trust is either in possession of or has access to all of the financial and business records of IT Group   Accordingly, the Litigation Trust should be well capable of pleading in a non-conclusory manner facts showing how and when IT Group became insolvent and if the Directors had knowledge of the insolvency when the dividends were paid   There are no such allegations in the Complaint, and the § 174 claim should be dismissed

28

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court

dismiss the Complaint with prejudice.

Dated: March 2, 2005
      Wilmington, Delaware                Respectfully submitted,


                             _/s/_____

                             Mark D. Collins (ID No. 2981)
                             Marcos A. Ramos (ID No. 4450)
                             RICHARDS, LAYTON & FINGER, P.A.
                             One Rodney Square
                             P.O. Box 551
                             Wilmington, Delaware 19899
                             Telephone: (302) 651-7700
                             Facsimile: (302) 651-7701
                             E-mail: ramos@rlf.com

                             Thomas L. Patten
                             Laurie B. Smilan
                             David A. Becker
                             LATHAM AND WATKINS, LLP
                             555 Eleventh Street, N.W., Suite 1000
                             Washington, D.C. 20004-1304
                             Telephone: (202) 637-2200
                             Telecopier: (202) 637-2201
                             E-mail: tom.patten@lw.com

                             *Attorneys for Defendants Daniel A. D'Aniello,*
                             *Francis J. Harvey, James C. McGill, Richard*
                             *W. Pogue, Philip B. Dolan, E. Martin Gibson,*
                             *Robert F. Pugliese, Charles W. Schmidt, James*
                             *David Watkins, The Carlyle Group, The Carlyle*
                             *Group L.L.C., Carlyle Partners II, L.P., Carlyle*
                             *SBC Partners II, L.P., Carlyle International*
                             *Partners III, C/S International Partners, Carlyle*
                             *Investment Group, L.P., Carlyle-IT*
                             *International Partners, L.P., Carlyle-IT*
                             *International Partners II, L.P., Carlyle-IT*
                             *Partners L.P. and T.C. Group, L.L.C.*


                             -and-

_/s/_____
Ronald S. Gellert (ID No. 4259)
ECKERT, SEAMANS, CHERIN & MELLOTT, LLC
The Towne Center
4 East 8th Street, Suite 200
Wilmington, DE 19801
Telephone: (302) 425-0430
Email: rgellert@eckertseamans.com

Mark A. Willard
Paul D. Steinman
F. Timothy Grieco
ECKERT SEAMANS CHERIN & MELLOT, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219-2788
Telephone: (412) 566-6000
Telecopier: (412) 566-6099
Email: mark.willard@escm.com

*Attorneys for Defendant, Anthony J. DeLuca*

_/s/_____
Roger D. Anderson (ID No. 3480)
SMITH, KATZENSTEIN & FURLOW LLP
800 Delaware Avenue, 7th Floor, P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Email: randerson@skfdelaware.com

Charles A. De Monaco
Kimberly L. Haddox
DICKIE MCCAMEY & CHILCOTE, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222
Telephone: (412) 392-5523
Telecopier: (412) 392-5367
Email: demonac@dmclaw.com

*Attorneys for Defendant, Harry J. Soose, Jr.*