# EXHIBIT A

LEXSEE 2005 U.S. DIST. LEXIS 1280

AMALGAMATED BANK, as Trustee for THE LONGVIEW COLLECTIVE INVESTMENT FUND, Derivatively on Behalf of AMERICASOURCEBERGEN CORPORATION Plaintiff, v. R. DAVID YOST et al. Defendants and AMERICASOURCEBERGEN CORPORATION Nominal Defendant.

CIVIL ACTION NO. 04-0972

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2005 U.S. Dist. LEXIS 1280

January 31, 2005, Decided

**DISPOSITION:** Defendants' motion to dismiss granted without prejudice. Plaintiffs' request to convert motion to dismiss to motion for summary judgment denied. Plaintiffs' motion to strike granted in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For AMALGAMATED BANK, as Trustee for THE LONGVIEW COLLECTIVE INVESTMENT FUND, Derivatively on Behalf of AMERICASOURCEBERGEN CORPORATION Plaintiff: AMBER L. ECK, RANDALL J. BARON, WILLIAM S. LERACH, LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP, SAN DIEGO, CA; DEBORAH R. GROSS, LAW OFFICES BERNARD M. GROSS, PC, PHILADELPHIA, PA.

For R. DAVID YOST et al. Defendants: STEVEN E. BIZAR, HOWARD D. SCHER, BUCHANAN INGERSOLL, P.C., PHILADELPHIA, PA.

For AMERICASOURCEBERGEN CORPORATION Nominal Defendant: HOWARD D. SCHER, BUCHANAN INGERSOLL, P.C., PHILADELPHIA, PA.

**JUDGES:** William H. Yohn, Jr., J.

**OPINIONBY:** William H. Yohn Jr.

**OPINION:**

**MEMORANDUM AND ORDER**

YOHN, J.

Plaintiff Amalgamated Bank brings this shareholder derivative suit on behalf of AmericasourceBergen Corporation ("ABC") against the ten current members of ABC's board of directors and certain current and former executives of ABC ("defendants"). The parties are diverse and this court has jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff asserts the following causes of action under Delaware law: (1) breach of fiduciary duty, (2) abuse of control, (3) gross mismanagement, (4) waste of corporate [*2] assets, n1 (5) unjust enrichment, and (6) usurpation of a corporate opportunity. n2

-----

n1 Plaintiff only sues the defendant directors for waste. Pl.'s Compl. at P 95.

n2 Plaintiff only sues the eight defendants who allegedly traded on inside information for unjust enrichment and usurpation of a corporate opportunity. Pl.'s Compl. at P 98, 102.

-----

Presently before the court is defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 on the grounds that plaintiff (1) lacks standing and (2) failed to establish that pre-suit demand is excused. Also before the court is plaintiff's motion to strike exhibits and impertinent language in defendants' motion to dismiss.

The court has considered defendants' motion to dismiss and plaintiff's motion to strike. For the reasons

Case 1:04-cv-01268-***-MPT    Document 38-2    Filed 03/02/2005    Page 3 of 14

Page 2
2005 U.S. Dist. LEXIS 1280, *

set forth below, I will grant plaintiff's motion to strike in part and grant defendants' motion to dismiss without prejudice.

## [*3] I. FACTUAL BACKGROUND n3

> n3 The foregoing factual account accepts all allegations contained in the complaint as true.

ABC is one of the nation's largest wholesale distributors of pharmaceuticals. Pl.'s Compl. at P 2. ABC was formed in August 2001 following the merger of Amerisource Health Corporation ("Amerisource") and Bergen Brunswig Corporation ("Bergen"). Id. at P 32. Eight of the ten members of ABC's Board of Directors acted as directors for ABC's predecessor corporations. Defendants Yost, Gozon, Wilson, and Hagenlocker served as directors for Amerisource. Id. at P 37. Defendants Martini, Brady, Mellor, and Rodgers served on Bergen's Board. Id. ABC's other two directors, defendants Cotros and Henney, were appointed after the merger. The three remaining defendants, Collis, Carpenter, and Dimick, acted as executive officers for Bergen and continued in that capacity at ABC after the

suffered pain and injury, and at least one victim has filed suit against ABC. Id. In addition, between 2001 and 2002, ABC's subsidiaries allegedly purchased counterfeit Procit, another anti-anemia drug. Id. at P 57. n5 Plaintiff claims that defendants approved ABC's purchase and distribution of counterfeit drugs, subjecting the corporation to substantial liability. Id. at P 84.

> n5 None of plaintiff's allegations concerning counterfeit drugs specify that defendant's wrongdoings took place after the August 29, 2001 merger that spawned ABC. Nonetheless, for the purpose of this motion, I will assume that this misconduct took place after the merger and hence ABC is responsible.

Defendants also allegedly approved a fraudulent scheme to collect duplicate rebates from drug manufacturers. Manufacturers offer rebates to distributors who sell to institutional pharmacies because their prices are based on Medicare and Medicaid schedules. Id. at P 59. All of ABC's contracts [*6] with institutional pharmacies include "own and use" clauses,

[*7]

According to the complaint, in February 2001, six months before the ABC merger, the FBI notified defendants of the 1999 sting and the subsequent investigation. *Id.* at P 67. Until Strusz's guilty plea in September 2003, defendants allegedly concealed the investigation from the public, artificially inflating ABC's stock prices. *Id.* During this period, defendants Martini, Yost, Brady, Hagenlocker, Rodgers, Collis, Carpenter and Dimick ("the selling Defendants") sold over $35 million in ABC stock. *Id.*

The complaint also alleges that defendants abused their control of the company by paying Yost, Martini, and Martini's son, the former president of ABC, excessive compensation. *Id.* at P 15-16, 40, 88. In addition, defendants allegedly forgave substantial loans made to Martini and his son by Bergen. *Id.* at P 40. Lastly, plaintiff asserts that ABC's directors receive unwarranted and excessive compensation. *Id.* at P 40.

Due to defendants' misconduct, plaintiff alleges that ABC lost a $25 million contract with the Veterans' Administration, its largest customer. *Id.* at P 72. This loss caused ABC to lower its 2003 earnings estimates by $0.40 per share. *Id* [*8]

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and any reasonable inferences that may be drawn therefrom, to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996); *Colburn v. Upper Darby Township*, 838 F.2d 663, 665-66 (3d Cir. 1988) (citations omitted). Although the court must construe the complaint in the light most favorable to the plaintiff, it need not accept as true legal conclusions or unwarranted factual inferences. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

Courts will grant a 12(b)(6) motion to dismiss "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim. [*9] " *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).

## III. PLAINTIFF'S MOTION TO STRIKE

In conjunction with their motion to dismiss, defendants submit nine exhibits, marked A through I. Plaintiff moves to strike these exhibits pursuant to Federal Rule of Civil Procedure 12(f) n7, and alternatively asks the court to convert defendants' motion into a motion for summary judgment with opportunity for discovery.

> n7 Under this rule, courts may strike "any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).

To decide a motion to dismiss, courts generally "may not consider matters extraneous to the pleadings." *Burlington*, 114 F.3d at 1420. However, courts may consider documents "integral or explicitly relied on in the complaint" as well as matters of public record, which may be judicially noticed. *Id.* (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)); [*10] *see also In re NAHC, Inc., Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002). Courts may take judicial notice of facts that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Fed. R. Evid. 201. When a court considers an extraneous document on motion to dismiss, it may not use the document to decide facts in dispute because the court must accept all well-pleaded facts as true. *See Nami*, 82 F.3d at 65.

### A. SEC Proxy Forms

Plaintiff alleges that eight of the defendants sold company stock while in possession of material non-public information. Pl.'s Compl. at P 10. In the complaint, plaintiff alleges that defendants netted over $35 million from their illicit trades. *Id.* at P 10. However, plaintiff fails to report defendants' total holdings, or the percentage of their holdings that were sold. This omission makes it difficult to determine whether defendants' trades were suspicious or unusual. Defendants provide three SEC proxy forms to establish defendants' total holdings in [*11] ABC. Defs.' Mem. Supp. Mot. Dismiss Ex. A-C. Plaintiff urges the court to strike these documents.

The court can consider defendants' holdings in ABC because the complaint explicitly refers to the number of shares sold by each defendant. Pl.'s Compl. at P 67. In *Burlington*, the court explained that the purpose of allowing courts to consider extraneous documents in motions to dismiss is to prevent plaintiffs from maintaining claims by "extracting an isolated statement from a document and placing it in the complaint." 114 F.3d at 1426. Here, plaintiff cannot argue that defendants

Case 1:04-cv-01268-***-MPT    Document 38-2    Filed 03/02/2005    Page 5 of 14

Page 4
2005 U.S. Dist. LEXIS 1280, *

fraudulently traded on inside information without showing that defendants' trades were suspicious given their total holdings. In *Oran*, an insider trading case brought under SEC Regulations, the Third Circuit took judicial notice of the defendants' total stockholdings where "the District Court found that the absence of this information was fatal to plaintiffs' case . . . because 'plaintiffs provided no information as to whether the trades were normal and routine for each executive'." *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000). Here, the court may consider defendants' total stockholdings before deciding [*12] whether defendants' stock trades are suspicious enough to excuse shareholder demand.

Additionally, if the court considers defendants' holdings, it will not create risk of surprise or prejudice because plaintiff uses these numbers in its Opposition Brief. *See* Pl.'s Opp. Defs.' Mot. Dismiss at 17.

B. Documents Relating to the Criminal Case Against Robert Strusz

In the complaint, plaintiff alleges that Robert Strusz, "a sales manager at [ABC's] n8 Sacramento distribution center" was convicted for Medicare fraud. This assertion is confusing because ABC did not exist until the August 29, 2001 merger. In their motion to dismiss, defendants include the government's Second Superceding Information and Strusz's plea agreement to show that Strusz was never employed by ABC and his conduct took place well before the merger. Defs.' Mem. Supp. Mot. Dismiss at 6-7, Ex. D, E. Plaintiff argues that the court should strike this material because it creates a factual dispute that the court cannot resolve on a motion to dismiss. Pl.'s Reply Supp. Mot. Strike at 6.

---

n8 Plaintiff actually states that Strusz was "a sales manager at Americasource's Sacramento distribution center", but the complaint defines AmericasourceBergen (ABC) as "Americasource."

---

[*13]

Although courts have considered criminal case dispositions on motions to dismiss, there is no need to consider these documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). From the face of the complaint, plaintiff fails to connect Strusz's conduct with ABC or defendants because the FBI sting took place two years before the 2001 merger. *See* Pl.'s Compl. at P 7. Moreover, plaintiff's allegations that defendants concealed the FBI investigation and traded on this information do not depend on whether ABC or defendants are responsible for Strusz's conduct. *See id.* at 67. Consequently, I will grant plaintiff's motion to strike defendants' Exhibits D and E.

C. Documents Relating to Criminal Cases Against McKesson Corporation

The complaint alleges that due to defendants' misconduct, ABC lost a $ 25 million contract with the Veterans Administration to competitor McKesson Corporation. Defendants argue that ABC's legal trouble did not cause the company to lose the contract because McKesson is embroiled in legal problems of its own. Defs.' Mem. Supp. Mot. Dismiss at 10-11. To support this claim, defendants attach a press release and an indictment describing the charges [*14] against McKesson. Defs.' Mem. Supp. Mot. Dismiss Ex. F, G. Plaintiff urges the court to strike these documents because they raise an impermissible factual dispute. Pl.'s Reply Supp. Mot. Strike at 7.

Defendants may not use the McKesson documents to dispute plaintiff's claim that ABC lost its contract due to defendants' misconduct. This is a factual issue and in a motion to dismiss the court must accept the complaint's factual allegations as true. *See Nami*, 82 F.3d at 65. Moreover, the court may not consider the McKesson documents because they are not "integral or explicitly relied on in the complaint." In fact, the complaint says nothing about McKesson's legal trouble. For these reasons, I grant plaintiff's motion to strike Exhibits F and G to defendants' motion to dismiss.

D. ABC's Closing Share Prices

Defendants argue that news of the FBI investigation was not material because public disclosure of the information scarcely affected ABC's stock price. Defs.' Mem. Supp. Mot. Dismiss at 20-21. To bolster their argument, defendants include a list of ABC's closing stock prices for 2003. *Id.* Ex. H.

Courts often taken judicial notice of stock prices in SEC cases. [*15] *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (finding no reversible error where district court took judicial notice of stock prices compiled by the Dow Jones news service); *Ieradi v. Mylan Lab., Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000) (taking judicial notice of stock prices reported by Quotron Chart Services). Additionally, ABC's stock prices are "capable of accurate and ready determination" because the company's opening and closing stock prices are reported on the NASDAQ website. *See* Defs.' Opp.Pl.s' Mot. Strike at 7 n.3. Plaintiff claims that the court may not consider this information because materiality is a question of fact. Pl.'s Reply Supp. Mot.

Strike at 5. Nonetheless, the question of materiality is not central to my analysis and I deny plaintiff's motion to strike defendants' Exhibit H.

E. ABC's Certificate of Incorporation

Defendants contend that plaintiff must meet a heightened burden because ABC's Certificate of Incorporation exempts directors from liability for certain conduct. *See* Defs' Mem. Supp. Mot. Dismiss at 26. In support of this argument, defendants attach ABC's Certificate of Incorporation [*16] as Exhibit I. Under Delaware law, which governs defendants' motion to dismiss, n9 courts may properly take judicial notice of a certificate of incorporation for this purpose. *See In re Baxter Int'l, Inc S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995) ("The court may take judicial notice of the certificate in deciding a motion to dismiss."). Additionally, a certificate of incorporation's "accuracy cannot be questioned" because it a public document filed with the Secretary of State. Consequently, I deny plaintiff's motion to strike defendants' Exhibit I.

---

n9 I discuss choice of law in Part IV.B & C.

---

F. Plaintiff's Request to Convert Defendants' Motion into a Motion for Summary Judgment with Opportunity for Discovery

Plaintiff contends that if the court considers defendants' exhibits, it must convert the motion to dismiss into a motion for summary judgment with opportunity for discovery. Ordinarily, when a "court considers evidence beyond the complaint in deciding a Rule 12(b)(6) motion, [*17] it is converted to a motion for summary judgement." *Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 2000) (citing Fed. R. Civ. P. 12(c)). However, as I discussed above, courts may consider documents "integral to or expressly relied upon in the complaint", as well as matters of public record, without converting a motion to dismiss into a motion for summary judgment. *Burlington*, 114 F.3d at 1426; *see also Pension Benefit*, 998 F.2d at 1196. Moreover, derivative plaintiffs must meet the pleading requirements set forth in Federal Rule 23.1 before causing corporations to expend resources and money in discovery. *See Stepak ex rel Southern Co. v. Addison*, 20 F.3d 398, 410 (11th Cir. 1994) (recognizing that under Federal Rule 23.1, "the shareholder is not normally entitled to discovery at the demand stage."). Finally, the Delaware Supreme Court has expressly held that derivative plaintiffs have sufficient "tools at hand" to develop facts for pleadings without discovery. *Brehm v. Eisner*, 746 A.2d 244, 266-67 (Del. 2000).

Here, the court may consider defendants' [*18] Exhibits A, B, C, H, and I because they are matters of public record. Thus, I deny plaintiff's request to convert the motion to dismiss into a motion for summary judgment.

G. Conclusion

For the above reasons, I will grant plaintiff's motion to strike Exhibits D, E, F and G and deny the motion to strike Exhibits A, B, C, H, and I.

IV. DEFENDANTS' MOTION TO DISMISS

A. Derivative Suits Generally

A derivative suit "permits an individual shareholder to bring a suit to 'enforce a corporate cause of action against officers, directors, and third parties.'" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95, 114 L. Ed. 2d 152, 111 S. Ct. 1711 (1991) (quoting *Ross v Bernhard*, 396 U.S. 531, 534, 24 L. Ed. 2d 729, 90 S. Ct. 733 (1970)). It "places in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" *Kamen*, 500 U.S. at 95 (quoting *Cohen v Beneficial Loan Corp.*, 337 U.S. 541, 548, 93 L. Ed. 1528, 69 S. Ct. 1221 (1949)). To protect against abuse of this remedy, courts developed the standing and demand requirements, which are set forth [*19] in Federal Rule of Civil Procedure 23.1. n10 *See Kamen*, 500 U.S. at 95; *Blasband v. Rales*, 971 F.2d 1034, 1040 (3d Cir. 1992).

---

n10 This rule provides that:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction

on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

[*20]

B. Standing

Under Federal Rule 23.1(1), to maintain a derivative suit, the complaint must allege "that the plaintiff was a shareholder . . . at the time of the transaction of which the plaintiff complains . . . ." In *Bangor Punta Operations, Inc. v. Bangor & A. R. Co.*, 417 U.S. 703, 708 & n.4, 41 L. Ed. 2d 418, 94 S. Ct. 2578 (1974), the Supreme Court observed that there is some question as to whether this rule applies in diversity cases because it may be substantive rather than procedural, and thus violate the teachings of *Erie R.R. v. Tompkins*, 304 U.S. 64, 79-80, 82 L. Ed. 1188, 58 S. Ct. 817 (1938). n11 The Court chose not to resolve this issue n12 because the applicable state law contained an identical contemporaneous ownership requirement. *See id.* at 709, 714 (approving the district court's decision not "to resolve this issue . . . since its examination of state law indicated that Maine probably followed the 'prevailing rule' requiring contemporaneous ownership in order to maintain a shareholder derivative action"); *see also Bensen v. American Ultramar*, No. 92 CIV 4420, 1996 U.S. Dist. LEXIS 1222, at *18 n.9 (S.D.N.Y. Feb. 6, 1996) ("In this diversity case, [*21] I need not decide whether the New York or federal 'contemporaneous ownership' rule applies. Here, both would apply in the same way.")

(citing *Bangor Punta*, 417 U.S. 703 at 708 & n.4, 41 L. Ed. 2d 418, 94 S. Ct. 2578) (additional citations omitted). Here, Delaware follows a contemporaneous ownership requirement similar to the federal rule. n13 *See* Del. Code Ann. Tit. 8 § 327 ("In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law.")

n11 In *Erie*, the Court held that in diversity actions courts should apply state substantive law and federal procedural law. 304 U.S. at 79-80.

n12 More than thirty years after *Bangor Punta* this issue remains unsettled. *See* Leslie M. Kelleher, *Taking "Substantive Rights" (in the Rules Enabling Act) More Seriously*, 74 Notre Dame L. Rev. 47, 116 n.299 (1998); G. Richard Shell, *Arbitration and Corporate Governance*, 67 N.C. L. Rev. 517, 575 n.264 (1989) ("The issue of whether rule 23.1 is substantive or procedural is not finally settled."). [*22]

n13 Because ABC is a Delaware corporation, Delaware substantive law applies here.

In *Blasband*, a derivative suit arising under Delaware law, the Third Circuit did not consider Federal Rule 23.1(1)'s contemporaneous ownership requirement. 971 F.2d 1040. Instead, the court applied Del. Code Ann. Tit. 8 § 327, which both parties agreed was applicable, to evaluate the plaintiff's standing. *Id.* Here, like *Blasband*, both parties appear to agree that the court should apply Delaware standing law. n14 Hence, because the standing requirements for derivative plaintiffs in Delaware and the Federal Rules are virtually identical, and because neither party disputes that Delaware law applies, I will use Delaware law to evaluate plaintiff's standing. *See Brambles USA, Inc. v. Blocker*, 731 F. Supp. 643, 648 & n.8 (D. Del. 1990) (applying Delaware standing law where "the parties [did] not complain[] of any inconsistency between federal and state law," "all parties argue decisions from the courts of the State of Delaware," and the court "[found] [*23] that following either would produce the same result").

n14 Defendants exclusively rely on Delaware

Case 1:04-cv-01268-***-MPT    Document 38-2    Filed 03/02/2005    Page 8 of 14

Page 7
2005 U.S. Dist. LEXIS 1280, *

standing law and plaintiff does not dispute that Delaware law applies. *See* Defs.' Mot. Dismiss at 11-12; Pl.'s Opp. Defs.' Mot. Dismiss at 32; Defs.' Reply to Pl.'s Opp Defs.' Mot. Dismiss at 1 n.1.

Under Delaware law, "in the context of a corporate merger, . . . a derivative shareholder must not only be a stockholder at the time of the alleged wrong and at time of commencement of suit but that he must also maintain shareholder status throughout the litigation." *Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del. 1984) (citations omitted). Defendants argue that plaintiff lacks standing to assert claims that arise out of conduct that occurred prior to ABC's creation. Defs.' Mem. Supp. Mot. Dismiss at 11. The complaint repeatedly refers to misconduct that occurred as far back as 1996. Pls.' Compl. at P 42-49, 54, 62. However, it also states that ABC "was created in August of 2001." *Id.* at P 32. [*24] Thus, ABC's predecessor corporations and their directors must be responsible for this conduct. *Id.* at P 42-48. n15 Plaintiff only claims to own stock in ABC, and thus cannot ground its claims on conduct that took place before August 2001. n16 *See id.* at P 80.

> n15 At times, the complaint attributes pre-merger conduct to ABC. Compl. at P 54, 62. I will assume that one of ABC's predecessor corporation was responsible for this conduct.
>
> n16 While plaintiff may not ground its claims on defendants' pre-merger conduct, it may use such conduct to show that the demand requirement should be excused because defendants personal and business relationships prevent them from independently considering plaintiff's suit. Additionally, plaintiff can use pre-merger allegations to show that defendants knew about ABC's illegal conduct.

Plaintiff does allege facts that occurred after August 2001. *See id.* at P 55-57, 59, 62, 63, 67, 69. As a shareholder of ABC, plaintiff has standing to assert claims that arise out [*25] of these facts. Hopefully, its amended complaint will more specifically allege the dates of the complained of acts and base its claims on those acts only rather than intermixing pre-and post-August 29, 2001 acts.

C. Demand

Federal Rule 23.1(2) requires that a derivative complaint "allege with particularity the efforts . . . made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and, . . . the reason for the plaintiff's failure to obtain the action or for not making the effort." Whereas the Supreme Court has yet to determine whether Rule 23.1(1)'s contemporaneous ownership requirement is procedural or substantive, the Court has decided that the demand requirement is purely procedural and "speaks only to the adequacy of the shareholder representative's pleadings." *Kamen*, 500 U.S. at 96. Hence, 23.1(2) imposes a pleading requirement, which dictates when and how facts must be alleged in federal court, to comply with a state's substantive demand requirement. *RCM Sec Fund, Inc. v. Stanton*, 928 F.2d 1318, 1330 (2d Cir. 1991); *In re General Motors Class E Stock Buyout Sec. Litig.*, 790 F. Supp. 77, 80 (D. Del. 1992); [*26] Jonathan R. Macey & Geoffrey P. Miller, *The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation Economic Analysis and Recommendations for Reform*, 58 U. Chi. L. Rev. 1, 34 n.105 (1991). Thus, I must apply state substantive law when considering defendants' Rule 23.1(2) motion. *See Kamen*, 500 U.S. at 97 ("Thus, in order to determine whether the demand requirement may be excused by futility in a derivative action. . ., we must identify the source and content of the substantive law that defines the demand requirement in such a suit."); *Blasband*, 971 F.2d at 1047 ("The substantive requirements of demand are a matter of state law."). Because ABC is a Delaware corporation, Delaware law governs. n17

> n17 Both parties rely on Delaware demand futility law. *See* Pl.'s Opp. Defs.' Mot. Dismiss at 2 n.2; Defs.' Mot. Dismiss at 1.

Delaware's demand requirement, which is nearly identical to 23.1(2), is set forth in Court of Chancery Rule 23.1. n18 This [*27] requirement, "exists as a threshold, first to ensure that a stockholder exhausts his intercorporate remedies, and then to provide a safeguard against strike suits." *Aronson v. Lewis*, 473 A.2d 805, 811-12 (Del. 1983), *overruled in part by Brehm*, 746 A.2d 244. Plaintiff has not made a demand on ABC's board. Instead, it contends that the requirement should be excused because a demand to bring suit would be futile. Pl.'s Compl. at P 81.

> n18 This rule provides that:
>
> > In a derivative action brought by 1 or more shareholders or members to enforce a right of a corporation or of an unincorporated

Case 1:04-cv-01268-***-MPT   Document 38-2   Filed 03/02/2005   Page 9 of 14

Page 8
2005 U.S. Dist. LEXIS 1280, *

association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share of membership thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort.

Del. Ch. Ct. R. 23.1.

[*28]

Under Delaware law, derivative plaintiffs must satisfy one of two tests to establish that demand is excused. n19 When a plaintiff's claims arise from an affirmative business decision made by a corporation's board of directors, courts apply the two-prong test laid out in *Aronson*, 473 A.2d at 814. Under *Aronson*, courts will excuse pre-suit demand if the complaint alleges, with particularity, sufficient facts to create a reasonable doubt that (1) the majority of the directors are disinterested and independent, or (2) the challenged transaction is otherwise the product of the directors' valid exercise of business judgment. *Id.* "If either prong is satisfied, demand is excused." *Brehm*, 746 A.2d at 256.

   n19 Often these tests come to similar results. *See Guttman v. Jen-Hsun Huang*, 823 A.2d 492, 500 (Del. Ch. 2003) ("The differences between the *Rales* and the *Aronson* tests in the circumstances of this case are only subtly different, because the policy justification for each test points the court toward a similar analysis.")

[*29]

When a plaintiff does not challenge an affirmative business decision, courts employ the modified test set forth in *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993). Under *Rales*, courts will excuse pre-suit demand if the complaint makes particularized factual allegations that "create a reasonable doubt that, . . . the board of directors could have properly exercised its independent and disinterested business judgment in response to a demand." *Id.* at 934. Delaware courts perform demand futility analysis for each separate claim in a derivative suit. 2 Rodman Ward, Jr., et al., *Folk on the Delaware General Corporation Law* § 327.4 n.154 (4th ed. Supp. 2004).

*1. Demand Futility for the Fiduciary Duty Claim*

After reviewing the complaint, it is difficult to determine which standard to apply to each claim because plaintiff incorporates each allegation into its claims, and fails to clarify which facts give rise to which claims. Nonetheless, plaintiff's breach of fiduciary duty claim apparently arises from plaintiff's allegation that defendants caused ABC to distribute counterfeit drugs and commit Medicare fraud. Pl.'s Compl. at P 84. ABC's [*30] board allegedly approved this conduct, and consequently I will use *Aronson* to analyze this cause of action. *See In re Abbott Laboratories Deriv S'holders Litig.*, 325 F.3d 795, 806-07 (7th Cir. 2001) (applying *Aronson* where plaintiff alleged that defendant directors knew about continuing violations of federal regulations "and decided no action was required.").

*a. Are the Director Defendants Disinterested and Independent?*

Under *Aronson*'s first prong, a plaintiff seeking to excuse demand must use particularized facts to create a reasonable doubt that "the directors are disinterested and independent." *Aronson*, 473 A.2d at 814. To satisfy its burden, a plaintiff must show that at least half of the board was either interested or not independent. *In re Oracle Corp. Deriv. Litig.*, 824 A.2d 917, 944 n 69 (Del Ch. 2003). Directors are interested when they appear on both sides of a challenged transaction or expect to derive a personal financial benefit from a transaction that is not shared by stockholders generally. *Aronson*, 473 A.2d at 812. Here, plaintiff does not claim that ABC's directors received any [*31] individual benefit as a result of ABC's illegal conduct. n20 Instead, plaintiff questions whether the directors are sufficiently independent to make an impartial decision. Pl.'s Compl. at P 81.

   n20 Plaintiff claims that defendants' are interested because they face a substantial likelihood of liability for breach of fiduciary duty. Pl.'s Opp. Defs.' Mot Dismiss at 19. Because this argument reaches the merits of the claim, I will address it under the second prong *See White v Panic*, 793 A.2d 356, 366 n.30 (Del. Ch. 2000) ("Plaintiff states that the 'substantial likelihood that each of the defendants is liable . . .' provides a disqualifying interest for demand purposes. This theory of interest is properly considered in the

context of the second prong . . . .")

Plaintiff argues that ABC's board is incapable of considering a demand because they have "extensive, long-standing personal, professional, and familial relationships" with each other. Pl.'s Compl. at P 81. Plaintiff asserts that ABC's [*32] board is "heavily entrenched" because eight of the ten directors served

473 A.2d at 808. The court rejected the plaintiff's contention and held that the board's approval of a lucrative employment agreement did not establish control. *Id.* at 816. For these reasons, plaintiff's complaint fails to create a reasonable doubt about ABC's directors' independence.

b. *The Board's Business Judgment*

plaintiff has alleged that ABC's board conduct falls outside the exemption because the directors allegedly knowingly approved the company's illegal conduct. Pl.'s Compl. at P 84.

[*36]

Plaintiff relies heavily on *Abbott*, a Seventh Circuit case applying Delaware demand futility law. 325 F.3d 795. In *Abbott*, the court excused the demand requirement because the defendant directors allegedly caused the company to violate FDA rules. *Id.* at 809. The court inferred that the directors knew about and approved of the illegal conduct because violations continued after "six years of noncompliance inspections, . . ., Warning Letters, and notice in the press, all of which . . . resulted in the largest civil fine ever imposed by the FDA . . . ." *Id.* Here, the only facts that suggest that defendants knew about ABC's violations are the November 2001 FDA report and the September 2003 *Wall Street Journal* article. Pl.'s Compl. at P 55, 59. The FDA report came just three months after ABC's creation and plaintiff fails to allege that the report concerned ABC, and not its predecessors. Additionally, plaintiff fails to allege that ABC committed any violations after the *Wall Street Journal* story. Thus, even if I assume that the story put defendants on notice of ABC's misconduct, there is no indication that defendants consciously caused ABC [*37] to break the law. Lastly, in *Abbot*, where the corporation's misconduct led to the highest fine in FDA history, the court reasoned that "'the magnitude and duration of the alleged wrongdoing is relevant in determining whether the failure of the directors to act constitutes a lack of good faith.'" 325 F.3d at 809 (quoting *McCall v. Scott*, 239 F.3d 808, 823 (6th Cir. 2001). Here, ABC's conduct has not resulted in government action or fines. Thus, there is no suggestion that the directors acted with "a lack of good faith." *Id.*

Even if proven, the allegations in plaintiff's complaint fail to establish that defendants breached their fiduciary duties, which would "absolutely disqualify them from passing on a shareholder's demand." *Aronson*, 473 A.2d at 817. Hence, demand is not excused for plaintiff's breach of fiduciary duty claim.

2. *The Abuse of Control and Waste Claims*

Plaintiff's abuse of control and waste claims apparently arise from its allegations that defendants' paid themselves excessive compensation. n22, n23 Pl.'s Compl. at P 88; Pl.'s Opp. Defs.' Mot Dismiss at 29. Because the board approved these transactions, I will [*38] use *Aronson*. See *Brehm*, 746 A.2d at 256 (applying *Aronson* where derivative plaintiffs challenged a board's approval of an allegedly wasteful and extravagant employment contract).

n22 Plaintiff also claims that defendants' insider trading constitutes an abuse of control. Because insider trading was not approved by the board, I will analyze these allegations under *Rales* in my discussion of the unjust enrichment and usurpation of a corporate opportunity claims. See Part II.B.4.

n23 Initially, plaintiff alleges that defendants "wasted valuable corporate assets" by "failing to conduct proper supervision." Pl.'s Compl. at P 95. This allegations more closely resembles a gross mismanagement claim than a waste claim. In its Opposition Memorandum, plaintiff revises its contention and claims that Defendants wasted "valuable assets by approving compensation and benefits" for Martini and Yost. Pl.s' Opp. Defs.' Mot. Dismiss at 32. I will assume that plaintiff intends its waste claim to arise out these allegations.

[*39]

a. *Are the Directors Disinterested and Independent?*

As I concluded above, plaintiff has failed to allege facts showing that ABC's board members were disabled from considering a demand due to their not being disinterested or their lack of independence. See Part IV.B.1.a.

b. *The Board's Business Judgment*

Plaintiff claims that because the director defendants illegally approved excessive compensation, they are disqualified from considering plaintiff's demand. Delaware courts "have defined 'waste' to mean 'an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade.'" *White v. Panic*, 783 A.2d 543, 554 (Del. 2001) (quoting *Brehm*, 746 A.2d at 263). "If . . . there is *any substantial* consideration received by the corporation, and if there is a *good faith judgment* that in the circumstances the transaction is worthwhile, there should be no finding of waste . . . ." *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997) (emphasis in original). Plaintiff asserts that defendant Yost received over $ 1 million per year in salaries [*40] and incentives and defendant Martini received over $ 500,000 per year. Pl.'s Compl. at P 15, 16. The complaint also alleges that the board forgave $ 1.4 million in loans to Martini and his son in connection with the AmericaSourceBergen merger. *Id.* at P 40.

These allegations alone do not establish that defendants face liability for waste because nothing suggests that Yost and Martini failed to render "any substantial consideration," or that these payments were not made in "good faith." *Vogelstein*, 699 A.2d at 336.

Plaintiff also fails to provide facts showing that Yost and Martini's compensation was excessive. For instance, plaintiff does not compare Yost and Martini's compensation to compensation at comparable organizations, and fails to allege that their compensation was disproportionate to services rendered. Plaintiff also does not claim that the board failed to obtain legal advice or guidance before making these payments. *See Litt*, 2003 Del. Ch. LEXIS 23, at *23, *39 (dismissing a plaintiff's fiduciary duty claim for excessive bonus payments, where the complaint failed to allege that the board did not obtain "appropriate legal advice", or that [*41] the compensation was "disproportionate to the services rendered").

Plaintiff also argues that defendant directors are liable for paying "[ABC's] directors excessive and unjustified stipends." Pl.'s Opp. Defs.' Mot. Dismiss at 32. This argument also fails because naked allegations that "directors are paid for their services, . . . without more, do not establish any financial interest." *Grobow*, 539 A.2d at 188.

### 3. The Unjust Enrichment and Usurpation of Corporate Opportunity Claims

Plaintiff's unjust enrichment and corporate opportunity claims stem from defendants' alleged insider trading. n24 Pl.'s Compl. at P 98, 102. I will apply *Rales* to these claims because the board did not approve defendants' individual stock trades *See Guttman v. Jen-Hsun Huang*, 823 A.2d 492, 499-500 (applying *Rales* to the plaintiff's allegations that "the defendant-directors individually breached their fiduciary duties by . . . purposely trading in their individual capacities while possessing material, non-public information . . . .").

  n24 Although plaintiff also appears to base its unjust enrichment claim on the alleged excessive compensation, I previously analyzed this allegation as a part of the abuse claim.

[*42]

Under *Rales*, a court must determine whether the complaint creates "a reasonable doubt that, . . . the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." 634 A.2d at 934. Plaintiff contends that the five directors who allegedly traded on inside information are disabled from considering a demand because of their risk of liability. n25 It is well established that "the mere threat of personal liability . . . is insufficient to challenge . . . the independence or disinterestedness of directors . . . ." *Aronson*, 473 A.2d 805, 815. Rather, plaintiff must show that directors "face a sufficiently substantial threat of personal liability to compromise their ability to act impartially on a demand." *Guttman*, 823 A.2d at 503.

  n25 Plaintiff also argues that defendants are "interested per se" because of their alleged insider trades. However, mere allegations of insider trading do not make a director "interested." *See Guttman*, 823 A.2d at 502 ("It is unwise to formulate a common law rule that makes a director 'interested' whenever a derivative plaintiff cursorily alleges that he made sales of company stock in the market at a time when he possessed material, non-public information.")

[*43]

In *Guttman*, the court held that a derivative plaintiff failed to prove that directors faced a substantial threat of liability for insider trading because the complaint did not show that defendants acted "with scienter," which is required under Delaware insider trading law. *Id.* at 505. The court explained that the timing of the trades was "quite disparate," and three of the five defendants sold an insubstantial percentage of their holdings. *Id.* at 503-04. Here, plaintiff also fails to establish that defendants traded with scienter and face a substantial likelihood of liability. Plaintiff repeatedly asserts that defendants knew about the FBI investigation, which is the alleged inside information. However, Plaintiff offers few facts to support this claim. Plaintiff alleges that the FBI notified defendants in February 2001, six months before the Americasource-Bergen merger. Pl.'s Compl. at P at 67. This arguably suggests that the former directors of Americasource had knowledge of the investigation. But, the complaint alleges no facts that indicate that defendants Martini, Brady, or Rodgers, who were affiliated with Bergen before the merger, had knowledge [*44] of the investigation. The complaint also asserts that defendants Martini and Yost were members of ABC's Executive Committee and defendant Hagenlocker was Chairman of the company's Audit and Corporate Responsibility Committee. *Id.* at P 15, 16, 20, 39. These allegations are insufficient to support an inference that defendants knew about an FBI investigation that began before ABC was even created.

Case 1:04-cv-01268-***-MPT   Document 38-2   Filed 03/02/2005   Page 13 of 14

Page 12
2005 U.S. Dist. LEXIS 1280, *

Additionally, there is no suspicious pattern in defendants' stock sales to suggest that they traded with scienter. Five members of the board sold company stock between the FBI notification in February 2001 and the public disclosure in September 2003. This period extends more than two years and none of the sales were made within two months of the notification or the disclosure. *Id.* at 67. Moreover, like *Guttman*, the complaint fails to show that defendants' trades were "inconsistent with trading practices in prior years." 823 A.2d at 504. In its Opposition Memorandum, plaintiff submits a chart comparing defendants' sales during the trading period with defendants' sales in the following eight months. Pl.'s Opp. Defs.' Mot. Dismiss at 18. Although the director defendants [*45] sold roughly two-and-half times more stock during the trading period, n26 this is unsurprising because the trading period spanned thirty-two months, more than four times as long as the subsequent time span.

> n26 According to plaintiff's Opposition Memorandum, the defendant directors sold 209,279 shares of ABC in the thirty-two months between the FBI notification and the public disclosure and 82,763 shares in the following eight months. Pl.'s Mem. Opp. Defs.' Mot. Dismiss at 18.

Finally, plaintiff fails to show that defendants face a substantial risk of liability because four of the five defendants sold only a modest portion of their holdings. Only one of the director defendants, Hagenlocker, sold more than 50% of his ABC stock during the trading period. Pl.'s Opp. Defs.' Mot. Dismiss at 17. In *Guttman*, the court held that "the mere fact that two of the directors sold large portions of their stock does not . . . support the conclusion that those two directors face a real threat to liability." 823 A.2d at 504. [*46] Defendants Brady, Rodgers, Yost, and Martini sold 32.7%, 21.1%, 14.4%, and 6.9% of their shares. Without more particularized allegations showing scienter, these trades do not indicate that defendants "face a sufficiently substantial threat of personal liability to compromise their ability to act impartially on a demand." *Guttman*, 823 A.2d at 503. Moreover, the defendants' decision to maintain substantial holdings in ABC "suggests that they had every incentive to keep [the company] profitable." *In re Advanta Corp Sec Litig.*, 180 F.3d 525, 540-41 (3d Cir. 1999) (dismissing plaintiff's claims under SEC insider trading regulations where the defendants sold 5% and 7% of their total holdings).

Plaintiff's other arguments alleging lack of independence fail for the reasons explained above. See Part IV.B.1.a. Thus, demand is not excused for plaintiff's unjust enrichment and usurpation of a corporation opportunity claims.

### 4. The Gross Mismanagement Claim

To support its final claim for gross mismanagement, Plaintiff alleges that defendants "abandoned and abdicated their responsibilities" to the corporation. Pl.'s Compl. at P 91. This claim does [*47] not involve an affirmative decision by ABC's board and thus I will use the *Rales* test. *See In re Baxter*, 654 A.2d at 1269 (applying *Rales* where the defendant directors allegedly failed to oversee and supervise the corporation). Like the breach of fiduciary duty claim, plaintiff relies on its allegations that ABC distributed counterfeit drugs and participated in Medicare fraud. However, instead of arguing that defendants knowingly caused the company to engage in illegal conduct, plaintiff contends that defendants' failure to oversee the company exposed it to liability.

Plaintiff argues that the board is disabled from considering a demand because its members face a "substantial likelihood of liability." *In re Baxter*, 654 A.2d at 1269. A failure to oversee theory "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). To establish liability for oversight, a plaintiff must prove "a sustained or systematic failure of the board to exercise oversight . . . ." n27 *Id.* at 971. Often, this [*48] necessitates that plaintiffs plead "with particularity that the directors ignored obvious danger signs of employee wrongdoing." *In re Baxter*, 654 A.2d at 1270-71 (citing *Graham v. Allis-Chalmers Mfg. Co.*, 41 Del. Ch. 78, 188 A.2d 125, 130 (Del. 1963)). Again, plaintiff provides few facts to show that defendants had any knowledge of ABC's misconduct. Plaintiff alleges that ABC engaged in isolated incidents of misconduct, many of which probably occurred before ABC was created. See Pl.'s Compl. at P 54-56, 59. There are no specific allegations that suggest that ABC's directors should have known about the company's illegal conduct. Plaintiff argues that the September 2003 *Wall Street Journal* article indicates that defendants had knowledge of misconduct and ignored warning signs. However, plaintiff fails to allege that ABC continued to violate the law after this article, and thus there is no indication that defendants consciously permitted the company to break the law. The complaint fails to allege facts that show that defendants are disabled by their risk of liability for oversight. Consequently, plaintiff is not excused from making a demand on the [*49] board.

Case 1:04-cv-01268-***-MPT   Document 38-2   Filed 03/02/2005   Page 14 of 14

Page 13
2005 U.S. Dist. LEXIS 1280, *

n27 Again, because ABC's Certificate of Incorporation insulates defendants from liability for certain breaches of fiduciary duty, plaintiff has a heightened burden. However, the liability standard for oversight claims usually requires a showing of bad faith, which is not covered by ABC's Certificate. *See Caremark*, 698 A.2d at 971 (holding that "lack of good faith . . . is a necessary condition to liability [for an oversight claim]").

## V. CONCLUSION

Plaintiff's complaint fails to meet the stringent pleading requirements for derivative suits set forth in Federal Rule of Civil Procedure 23.1 and Delaware law. I grant defendants' motion to dismiss because plaintiff failed to make a demand on ABC's board and does not plead with particularity facts showing that the board is incapable of considering a demand. I will grant plaintiff's request for leave to amend to give plaintiff an opportunity to allege, with greater particularity, facts showing [*50] that demand should be excused. n28 An appropriate order follows.

n28 Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires."

## ORDER

And now, this _____ day of January, 2005, upon consideration of plaintiff's motion to strike (Document No. 14) and defendants' motion to dismiss (Document No. 10), IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion to strike is GRANTED IN PART and DENIED IN PART as follows:

   a. Exhibits D, E, F, and G are STRICKEN.

   b. The 5alance of the motion is DENIED.

2. Defendants' motion to dismiss is GRANTED and plaintiff's complaint is DISMISSED without prejudice to the right of the plaintiff to file an amended complaint, if it can do so within the strictures of Rule 11, within sixty days of the date hereof.

William H. Yohn, Jr., J.