# EXHIBIT A

Westlaw.

Not Reported in A.2d
1995 WL 694397 (Del.Ch.)
(Cite as: 1995 WL 694397 (Del.Ch.))

Page 1

H
Only the Westlaw citation is currently available

UNPUBLISHED OPINION CHECK COURT RULES BEFORE CITING

Court of Chancery of Delaware, New Castle County
CARLTON INVESTMENTS, derivatively on behalf of TLC Beatrice International Holdings, Inc., Plaintiff,
v.
TLC BEATRICE INTERNATIONAL HOLDINGS, INC., Loida Nicolas Lewis, as Executrix of
the Estate of Reginald F. Lewis, Leslie N. Lewis, Individually and as Executrix
of the Estate of Reginald F. Lewis, TLC Group, L.P., TLC Holdings Corp., TLC
General Corp., TLC Transport, Inc., McCall Pattern Holdings, Inc., Lee A.
Archer, Jr., Robert C. deJongh, James E. Obi, Ricardo J. Olivarez, Samuel P.
Peabody, Jean S. Fugett, Jr., Anthony S. Fugett, Marilda G. Alfonso, Sanford
Cloud, Jr., William S. Mowry, Jr., and Dumas M. Simeus, Defendants.
Civ. A. No. 13950.

Submitted: Aug. 29, 1995
Decided: Nov. 21, 1995.
Rodman Ward, Jr., Cathy L. Reese and Herbert W. Mondros of Skadden, Arps, Slate, Meagher & Flom, Wilmington, for plaintiff Carlton Investments.

Michael D. Goldman and Stephen C. Norman of Potter Anderson & Corroon, Wilmington, Gregory V. Varallo, and Matthew E. Fisher, of Richards, Layton & Finger, Wilmington, Henry E. Gallagher, Jr., of Connolly, Bove, Lodge & Hutz, Wilmington, David J. Margules of Wolf, Block, Schorr and Solis-Cohen, Wilmington, David C. McBride, and William D. Johnston, of Young, Conaway, Stargatt & Taylor, Wilmington, William M. McErlean, Richard S. Huszagh, and John F. Verhey, of Rudnick & Wolfe, Chicago, Illinois; of counsel: Thomas P. Puccio, New York City, for Defendants

MEMORANDUM OPINION

ALLEN, Chancellor

*1 Carlton Investments L.P., has brought this action as a derivative suit on behalf of TLC Beatrice International Holdings, Inc., a publicly held Delaware Corporation, seeking recovery of amounts allegedly paid by TLC Beatrice to or on behalf of the late Reginald Lewis, who is alleged to have been a controlling shareholder of TLC Beatrice. Presently pending is a motion by various defendants to dismiss or stay this action. The motion has sub-parts:
  First, it seeks to dismiss or stay the action on the basis of a prior pending New York suit and on the grounds of *forum non conveniens*.
  Second, it asserts the inadequacy of Carlton Investments as a representative of TLC Beatrice in this suit. Defendants claim that Carlton's attempt to procure a judgment against TLC Beatrice in the New York litigation places Carlton's interests inherently at odds with those of the company and its public shareholders.
  Third, defendants claim that this court lacks personal jurisdiction over named defendants the Lewis Estate, TLC Group, L.P., and Jean S. Fugett, Jr.
  Fourth, defendants claim that Delaware statutes of limitations bars the claims asserted against the Lewis Estate, Marilda Alfonso, Sanford Cloud, and William Mowry.
  Fifth, defendants move to dismiss Anthony Fugett, TLC Holdings, and TLC Transport as defendants for failure to allege facts stating a claim against them.

For the reasons set forth below, these motions will be denied, except that the motion to dismiss TLC Group L.P. for lack of *in personam* jurisdiction will be granted to the extent claims other than those directly relating to the alleged wrongful payment of some $2,000 of franchise fee payments to the

Not Reported in A.2d  
1995 WL 694397 (Del.Ch.)  
**(Cite as: 1995 WL 694397 (Del.Ch.))**

Page 2

Delaware Department of Corporations are alleged.

I. Factual and Procedural Background

On January 4, 1995, Carlton Investments ("Carlton"), a California Limited Partnership that owns approximately 22% of the stock of TLC Beatrice, filed a derivative complaint purporting to allege breaches of fiduciary duties and waste of corporate assets. Named as defendants were (1) the Estate of Reginald Lewis, which is being administered in New York, the domicile of the late Mr. Lewis; (2) various individuals who serve or served as directors of TLC Beatrice; (3) TLC Transport, a wholly owned subsidiary of TLC Beatrice; (4) several companies separately owned by Lewis but alleged to have participated in or benefitted from the misappropriation and waste; and (5) TLC Beatrice, as a nominal defendant.

The complaint particularly alleges that the various defendants have engaged in waste and misappropriation of assets, breach of fiduciary duties of care and loyalty, aiding and abetting, conversion, and civil conspiracy. Plaintiff contends that these wrongs led to a severe depletion of TLC Beatrice's cash and negatively impacted its overall financial condition.

This suit follows Carlton's filing of an individual (non-derivative) action in the state of New York against TLC Beatrice and the Lewis Estate. In that suit, Carlton seeks recovery of approximately $11 million for alleged breaches of a stockholder agreement signed by Mr. Lewis, Carlton, and the Company. Carlton alleges that between 1987 and 1992, TLC Beatrice made certain payments to Reginald Lewis, its founder, former Chairman and CEO in contravention of provisions in the stockholder's agreement strictly limiting transactions between the Company and its affiliates including Mr. Lewis. Carlton particularly challenges the propriety of a $22.1 million compensation package paid to Lewis in 1992. Roughly speaking, as I understand it, the theory of the New York case is that under the stockholders' agreement which Lewis, Carlton and TLC Beatrice signed, the payments to Lewis trigger a right to proportionate payments to Carlton.

*2 The theory of the present derivative action is that the payments in question were a breach of fiduciary duty and should be rescinded. Thus, the complaint in the present action similarly focuses on the allegedly improper payments to Mr. Lewis. A central element of this claim is the compensation package challenged in the separate New York suit. In addition, the complaint here alleges that TLC Beatrice improperly reimbursed Lewis for $2,147,932 in "living expenses" and $600,000 in other, unidentified expenses.

The complaint further catalogues a number of allegedly improper transactions between TLC Beatrice and Lewis or his affiliates: payment of salaries, bonuses, and severances for employees of TLC Group L.P. (an entity separately owned and controlled by Lewis); reimbursement of TLC Group for paying taxes and governmental levies for other Lewis-owned entities; payments to a trust for the benefit of Mr. Lewis' daughters; payments to affiliated law firms on matters for which TLC Beatrice had no liability; payments to McCall Pattern Holdings (an entity owned by Mr. Lewis but otherwise unaffiliated with TLC Beatrice); reimbursement of $2.5 million in legal fees incurred by Lewis in an action unrelated to TLC Beatrice; payment of rent for office facilities for Lewis' affiliates; the lease, purchase and maintenance of a corporate jet for the personal use of Lewis; and excessive employment and severance agreements with certain directors.

II. Motion to Stay or Dismiss: Prior Pending Action

Coordination of related litigation pending in several states, is of course a cost of our federal system. Generally the grant or denial of motions of this type falls within the sound discretion of each trial court. That discretion is, however, not uninformed by legal principles. On the contrary settled principles govern its exercise. *See Chrysler First Business Credit Corporation v. 1500 Locust Limited Partnership,* Del.Supr., --- A.2d ---- (1995).

Ordinarily a stay of action will be granted where there is a prior action between the same parties, arising out of the same subject matter, pending before a court capable of doing prompt and complete justice. *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.,* Del.Supr., 263 A.2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
1995 WL 694397 (Del Ch.)  
(Cite as: 1995 WL 694397 (Del.Ch.))

Page 3

281, 283 (1970) Unless there is present an unusual circumstance (such as may be present in an action under Section 225 of our corporation law) the presence of these factors will indicate that the fair and efficient result is for the second-filed law suit to be stayed, so long as the first filed suit is proceeding reasonably promptly to an adjudication of claims that will eliminate or substantially reduce the need to pursue the second litigation.

In my opinion, however, this principle of comity has no application to the facts of this case as it is presently pleaded. The present case is fundamentally different from the pending New York litigation because this is a suit brought in the name of TLC Beatrice itself and seeks the recovery of substantial amounts paid-out by the company. The New York suit seeks recovery from Beatrice and Lewis for breach of the shareholders' agreement that allegedly limited the right of signatories to accept disproportionate distributions from Beatrice. But even if Carlton were to win that suit, I do not understand that the New York court would have had to adjudicate the question whether the payments to Lewis, etc., that would have been held to violate the agreement were necessarily a breach of fiduciary duty to the corporation itself and all of its stockholders. Similarly were Carlton to lose that suit I don't understand that a necessary intermediate step in such a determination would be a binding adjudication that the payments that would have been held not to breach the shareholders agreement also did not constitute a waste or breach of fiduciary duty

*3 That is, the New York litigation is structured to adjudicate the rights of the corporation as a contracting party--a signatory to the stockholders agreement--but not in the legal capacity that this suit is designed to address: as the primary beneficiary of the fiduciary duty of the directors and controlling persons who authorized certain self-interested payments. Thus final judgment in the New York action would not preclude this derivative adjudication of TLC Beatrice's rights, nor is it clear that as a practical matter the doctrine of collateral estoppel would render it highly efficient for this court to pause in its process to allow the earlier suit to reach judgment. Thus, even though the principal parties to the New York litigation are also parties to this litigation the different status that they hold in this suit renders the *McWane* principle inapplicable in my opinion.

Defendants also seek a dismissal on *forum non conveniens* ground. The legal standard is well established. *E.g., Monsanto Co. v. Aetna Cas & Sur. Co.*, Del.Supr., 559 A.2d 1301 (1988); *Parvin v Dorfman*, Del.Supr., 236 A 2d 425, 427 (1967). The grant of such a motion is a rarity which may properly occur only where genuine hardship is present *Chrysler First Business Credit Corp. v. 1500 Locust LP, supra; St Joe Mineral Corp v. Horsehead Industries, Inc.*, Del.Ch., C.A. No. 10522, Allen, C. (Apr. 7, 1989) Having considered the record as it presently appears, I conclude that this case, with its witnesses and documents largely in New York, does not present even a colorably correct application of that doctrine. No hardship whatsoever would be occasioned by the litigation of this case in this jurisdiction.

III. Carlton's Standing As A Representative Plaintiff

Defendants assert that Carlton is an inappropriate person to sue them in this derivative action; it might not be a faithful agent of the TLC Beatrice shareholders whom it purports to represent in this derivative suit. The claim is that Carlton's interest in its New York suit *against* TLC Beatrice and the Lewis Estate compromises its pursuit of this derivative suit *on behalf of* the company Moreover, it is said that the concurrent adjudication of the two suits create a situation rife with opportunities for procedural gamesmanship.

I have considered this argument carefully. For the reasons set forth below I conclude that in light of all the circumstances, including the mechanisms that permit judicial supervision of representative litigation under Rule 23.1, that Carlton is an appropriate shareholder to represent the interests of the corporation and its stockholders in the adjudication of these claims

Obviously there are grounds for courts' to view with a certain suspicion motions by defendants grounded on the claim that the plaintiff who has forced them into litigation is an inappropriate representative of a plaintiff class. The same characteristics that might make a faithful champion

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
1995 WL 694397 (Del.Ch.)
(Cite as: 1995 WL 694397 (Del.Ch.))

Page 4

energetic would incline a defendant to like to see that representative replaced. There is reason to believe, for example, that Carlton, as a 22% shareholder of TLC Beatrice has a better incentive structure than any other shareholder energetically to pursue the claims of waste etc., here put forward [FN1] This observation is not intended as a final answer to defendants' motion because it is nevertheless possible for the defendants to raise legitimate issues concerning the identity of a representative plaintiff. The observation simply provides a certain initial orientation. In all events the qualification of a party to represent others is a question addressed to the informed judgment of the court, which in deciding it should consider all of the relevant circumstances, including the presence or absence of alternative parties to carry the suit forward.

> FN1. *See* Robert C. Clark, CORPORATE LAW § 9.5 (1986) (theory of shareholders' collective action problems in public corporations).

*4 Certainly the presence of a substantial conflict of interest would supply a most salient consideration in reaching such a judgment. If "the plaintiff cannot be expected to act in the interest of [the] other [shareholders] because doing so would harm his other interests," it is unlikely that a court would permit the interests of others to be adjudicated by that person. *Youngman v. Tahmoush*, Del.Ch., 457 A.2d 376, 381 (1983).

In *Youngman*, this court made a listing, not intending it to be exhaustive, of factors that may be relevant to a determination of the adequacy of a derivative plaintiff to represent the interests of the corporation. That list included:
  economic antagonism between representatives and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiffs and the defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants and, finally, the degree of support plaintiff was receiving from the shareholders he purported to represent.
*Youngman*, 457 A.2d at 379-80.

Defendants focus on two of these elements in attempting to argue that Carlton is unfit to represent the other shareholders: (1) economic antagonism between representative and class, and (2) vindictiveness toward the defendants. Defendants further argue that Carlton previously acquiesced to the wrongs alleged in this suit and should thus be precluded from presently asserting these rights.

A. Economic Antagonism and Vindictiveness

Defendants argue that the present action is an attempt to gain leverage in the New York litigation. That is, that this suit "raises the ante" in New York and could in effect be traded for consideration to Carlton in the settlement of the New York case. In addition, defendants assert that the New York suit against TLC Beatrice would provide relief inconsistent with that sought in this derivative suit, by which Carlton, as a shareholder and on behalf of the Company itself, seeks the return of allegedly wasted and misappropriated funds to the corporate treasury. Neither of these points appear to have sufficient weight to warrant disabling this large shareholder from suing on behalf of the corporation.

Defendants hope to construct a conflict of interest argument out of the difference in Carlton's positions in the respective litigations, (*i.e.*, seeking judgment against TLC Beatrice in New York, but seeking a judgment in favor of TLC Beatrice in Delaware) has been effectively thwarted by Carlton's offer voluntarily to stay the New York case, if all relevant parties will consent to the jurisdiction of this court, or in the alternative, to hold any recovery awarded in New York in escrow pending this court's adjudication of the rights of the corporation and all of its public shareholders.

*5 Moreover, even assuming that neither of these steps could be taken, I am not impressed that litigation of this claim by Carlton in this jurisdiction would sufficiently involve threats to the interests of other shareholders as to warrant disabling this plaintiff from carrying on this suit. Certainly the court's powers are substantial in such a case to assure that active good faith prosecution of the suit occurs. Primarily this means that the court can

Not Reported in A.2d  
1995 WL 694397 (Del.Ch.)  
**(Cite as: 1995 WL 694397 (Del.Ch.))**

Page 5

assure that any consideration paid for release of the claims is distributed to the corporation (and its shareholders *pro rata* ); because the court has *in personam* jurisdiction over the representative plaintiff, the court has the means to assure that Carlton acts only as directed with respect to any settlement that might be reached in the New York litigation. Thus the opportunity for Carlton to "sell out" the other shareholders in exchange for consideration paid through the New York action is quite limited, if it exists. [FN2]

> FN2. Defendants alternatively and additionally argue that Carlton's vindictiveness should disqualify it as an adequate shareholder representative. Defendants allege that this derivative suit serves only as another action in a larger pattern of harassment that includes allegedly unjustified demands that TLC Beatrice seek registration of its stock and the initiation of contempt proceeding against TLC Beatrice for asserting affirmative defenses in the New York suit purportedly in violation of a previous court order. However, the record falls far short of establishing facts that would disqualify Carlton as a representative of the shareholder class based on its alleged "vindictiveness" or any other such motive.

B. Acquiescence

Defendants assert that Carlton is an inappropriate plaintiff because it acquiesced in the acts of which it now complains, since (it is claimed) it had a representative on the TLC Beatrice board at all relevant times. This aspect of the matter raises fact issues that preclude a legal judgment at this time.

Critical to this acquiescence claim is proof that Carlton had knowledge of the acts to which it purportedly acquiesced. 3 SPENCER W. SYMONS, POMEROY'S EQUITY JURISPRUDENCE, § 817 at 246 (5th ed. 1941) [FN3] Defendants assert that Carlton had knowledge of the various instances of waste and misappropriation of which it now complains because it had appointed a representative to serve on the TLC Beatrice board prior to these acts. Specifically, defendants argue that Carlton had effectively appointed Dean Kehler as its representative to the Board by virtue of the right of the institutional investors--which group is said to include Carlton--to elect a director representative. The second affidavit of W. Kevin Wright similarly indicates that Dean Kehler "was appointed by Carlton as its director on TLC Beatrice's Board of Directors and served as a director from 1988 through late 1990,.." Wright 2d Aff. ¶ 14

> FN3. "[A]cquiescence must be with knowledge of the wrongful acts themselves, and of their injurious consequences; it must be voluntary, not the result of accident, nor of causes rendering it a physical, legal, or moral necessity, and it must last for an unreasonable length of time, so that it will be inequitable even to the wrong-doer to enforce the peculiar remedies of equity against him, after he has been suffered to go on unmolested, and his conduct apparently acquiesced in." 3 SPENCER W. SYMONS, POMEROY'S EQUITY JURISPRUDENCE, § 817 at 246 (5th ed 1941).

Plaintiff points to contrary language in a Form 10-K and an S-1 Registration statement: "Mr. Dean C. Kehler is the director designated by the stockholder *other than Carlton Investments* and Mr. Lewis and his affiliates. *No director has been designated by Carlton Investments.*" Form 10-K, TLC Beatrice International Holdings, Inc. December 31, 1989; Form S-1 Registration Statement, January 19, 1990 (emphasis added).

As the claim that Kehler served as Carlton's representative on the TLC Beatrice board is presently subject to dispute, I cannot now conclude that Carlton is subject to a special defense that would somehow disable it from effectively representing the interests of the corporation in this litigation.

IV. Personal Jurisdiction Over The Lewis Estate, TLC Group L.P., And Anthony Fugett

*6 I turn next to the motion of various defendants for dismissal predicated upon a lack of personal jurisdiction over them. Those defendants are the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
1995 WL 694397 (Del.Ch.)  
**(Cite as: 1995 WL 694397 (Del.Ch.))**

Page 6

Lewis Estate, TLC Group, L.P. (a New York limited partnership), and Anthony Fugett.

When a motion to dismiss on grounds of lack of personal jurisdiction is decided without an evidentiary hearing, plaintiff has the burden to adduce from the record (*i.e.*, depositions, affidavits, admissions etc.) sufficient evidence to support a *prima facie* determination as to the existence of jurisdictional facts. *Hart Holding Company v. Drexel Burnham Lambert, Inc.*, Del.Ch., 593 A.2d 535, 539 (1991).

The assertion that there is no *in personam* jurisdiction over the listed defendants raises two major sub-issues. The first relates to the constitutionality of the exercise of *in personam* jurisdiction over each of the defendants. This sub-issue involves the factual and legal question whether there exists such contacts between each defendant, the disputes to be adjudicated, and the forum jurisdiction as to render it fundamentally fair for this court to insist that those defendants answer and defend these claims in this jurisdiction. This is the constitutional inquiry dictated first by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). The second sub-issue required to be answered is whether under the statutes of Delaware the processes of this court have been duly issued and served so that the court is authorized by the law of Delaware to adjudicate claims against these defendants. *See LaNuova D & B Sp.A. v. Bowe Co., Inc.*, Del.Supr., 513 A.2d 764, 768 (1986). I address these issues separately with respect to each of the defendants below.

A. Personal Jurisdiction Over the Lewis Estate

The Lewis Estate is being administered in and under the laws of the State of New York; no Delaware ancillary administrator has been appointed. Furthermore, so far as the record shows, the Lewis Estate itself has not undertaken any action subjecting it directly to the jurisdiction of this court under 10 *Del.C.* § 3104 (Personal jurisdiction by acts of nonresidents) or 12 *Del.C.* § 1569 (Jurisdiction by act of foreign personal representative). Obtaining jurisdiction over the Lewis Estate therefore turns on whether the decedent would have been amenable to suit in this jurisdiction on the claims now asserted. 12 *Del.C.* § 1570 (1987).

Whether a person is subject to the jurisdiction of this court turns on the dual inquiry: whether Delaware law provides a means effectively to serve the defendant with legal process and, secondly, whether the exercise of such coercive power does, in the circumstances, satisfy the constitutional requirement of due process of law.

1. Lewis Estate: Statutory Service of Process

The parties have focused their arguments concerning the amenability of Mr. Lewis, and therefore the Lewis estate, to service of process on the scope and applicability of the Delaware long-arm statute, 10 *Del.C.* § 3104(c) (Supp.1994). Reliance on section 3104, however, forces the parties into a metaphysical assessment of whether various acts outside of this jurisdiction, of Mr. Lewis or persons acting for one of a large number of legal entities formed under Delaware law, qualify as "contacts" with this state and if they do, whose contacts are they.

*7 Plaintiff's brief lists the alleged contacts between Lewis and Delaware upon which it seeks to premise jurisdiction over the Lewis Estate: (1) diverting TLC Beatrice funds (held elsewhere) through Group L.P. to make at least 20 franchise tax payments (about $2,000 worth) to the Delaware Secretary of State (in Delaware) on behalf of companies unrelated to TLC Beatrice but in which Lewis held some interest; (2) incorporating at least 21 Delaware entities; (3) causing or directing a series of transactions involving the rental, delivery, later purchase, and subsequent sale of a corporate jet in Delaware (including the alleged incorporation of TLC Transport, Inc and TLC Transport International, Inc to facilitate the rental and purchase of the jet); and (4) selecting TLC General Corp., a Delaware Corporation, as the sole general partner of TLC Group L.P.

All of these acts appear to have been the acts of several distinct legal actors. But even if all of these acts were attributable to a single non-resident, there is room to doubt whether those contacts with Delaware would provide either a statutory or a constitutionally sufficient basis to require that person to adjudicate these claims in this

Not Reported in A.2d  
1995 WL 694397 (Del.Ch.)  
**(Cite as: 1995 WL 694397 (Del.Ch.))**

Page 7

jurisdiction. One is entitled to doubt it. *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980).

Plaintiff's reliance on Section 3104 for authority to serve process on the Lewis Estate eschews the seemingly logical alternative of basing jurisdiction on Mr. Lewis' status as a director of a Delaware corporation. Under the director consent statute, 10 *Del.C.* § 3114 (Supp.1994) [FN4] this court may exercise jurisdiction over a director or former director of a Delaware corporation for claims of breach of directors' duties, based upon her implied consent to substituted service of process.

> FN4 "Every nonresident of this State who after September 1, 1977 accepts election or appointment as a director, trustee or member of the governing body of a corporation organized under the laws of this State or who after June 30, 1978, serves in such capacity and every resident of this State who so accepts election or appointment or serves in such capacity and thereafter removes his residence from this State shall, by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as his agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such director, trustee or member is a necessary or proper party, or in any action or proceeding against such director, trustee or member for violation of his duty in such capacity, whether or not he continues to serve as such director, trustee or member at the time suit is commenced. Such acceptance or service as such director, trustee or member shall be a signification of the consent of such director, trustee or member that any process when so served shall be of the same legal force and validity as if served upon such director, trustee or member within this State and such appointment of the registered agent (or, if there is none, the Secretary of State) shall be irrevocable." 10 *Del.C.* § 3114(a).

Plaintiff has doubtless invoked Section 3104 and not Section 3114 because the holding in *Tabas v. Crosby*, Del.Ch., 444 A.2d 250 (1982) may be thought to preclude application of Section 3114 to the instant case. *See id.* at 252-53. *Tabas* noted that, although the implied consent provisions of Section 3114 plainly do subject a director to substituted service of process in suits premised upon breach of a legal or equitable duty as a director, even if she no longer serves as a director at the time suit is commenced, Section 3114 does *not* itself provide a means to effectuate substituted process upon the personal representative of a *deceased* director. *Id.* In *Tabas* this court interpreted the absence of any language in Section 3114 providing for substituted service upon the personal representative of a deceased director as requiring the conclusion that this section could not be applied to nonresident directors who die before suit or service of process is commenced. *Id.*

In *Tabas* the parties apparently did not argue, or in all events the court did not consider the effect 12 *Del.C.* § 1570 and 12 *Del.C.* § 1571, which provides as follows:

*8 § 1570 Jurisdiction by act of decedent. In addition to jurisdiction conferred by § 1569 of this title, a foreign personal representative is subject to the jurisdiction of the courts of this State to the same extent that his decedent was subject to jurisdiction immediately prior to death. (59 Del.Laws, c. 384, § 1.)

§ 1571 Service on foreign personal representative. (a) Service of process may be made upon the foreign personal representative by certified mail, addressed to his last reasonably ascertainable address, requesting a return receipt signed by the addressee only. Notice by ordinary first-class mail is sufficient if certified mail service to the addressee is unavailable. Service may be made upon a foreign personal representative in the manner in which service could have been made under other laws of this State on either the foreign personal representative or his decedent immediately prior to death.

In my opinion because Mr. Lewis was at the time of his death "subject to the jurisdiction of the courts of this state" with respect to claims asserting a breach of his fiduciary duty as a director (Section 3114), this court is authorized by Section 1570 to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                      Page 8
1995 WL 694397 (Del. Ch.)
(Cite as: 1995 WL 694397 (Del.Ch.))

exercise jurisdiction over Mr. Lewis' estate and Section 1571 authorizes service of process for that purpose. I believe that the substances of Section 1571 was complied with in this instance.

The record contains sufficient evidence to satisfy the court for the limited jurisdictional purposes of this motion, that Mr. Lewis violated his duties as a director of TLC Beatrice so as to subject him to substituted service under Section 3114. [FN5] Mr. Lewis served as a director from the acquisition of TLC Beatrice through his death in 1992. Plaintiff has alleged that Lewis authorized or acquiesced in waste, misappropriation, and conversion of TLC Beatrice assets, and that he has breached his directoral duties to TLC Beatrice and its stockholders. These claims all arise from actions by him as a director of a Delaware corporation and fundamentally relate to internal affairs and corporate governance issues of particular concern to the state in which TLC Beatrice has been formed. The allegations and record clearly would place Mr. Lewis himself within the jurisdiction of this court under the provisions of Section 3114.

> FN5. That is to say sufficient allegations have been made and the record is sufficient to allow Section 3114 to be invoked. I mean to suggest no more with respect to the merits.

Since Section 1571 permits service of process on a foreign personal representative "in the manner in which service could have been made under other laws of this State on ... his decedent immediately prior to death," 12 Del.C. § 1571 (1987), plaintiff may properly serve the Lewis Estate under Section 1571 *via* the Section 3114 provisions that would have permitted substituted service of process on Lewis himself prior to his death. Thus, 12 Del.C. § 1571 cures the service of process defect that this court recognized in *Tabas*, so that under it an estate of a director may be served with process as effectively as the director himself during his life.

   2. Lewis Estate: Constitutional Requirements
*9 It is of course elementary that for any court to exercise coercive jurisdiction over a nonresident defendant, it is necessary that some minimum level of contacts exist between the defendant and this jurisdiction, such that the exercise of personal jurisdiction over that defendant comports with traditional notions of fair play and substantial justice. *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980). The touchstone of this fundamental fairness requirement is foreseeability: whether a person should have reasonably anticipated that her actions might result in the forum state asserting personal jurisdiction over her to adjudicate disputes arising from these actions. *Id.* at 297.

By accepting appointment or election to the board of TLC Beatrice, Reginald Lewis impliedly consented to jurisdiction for cases in which he is a necessary or proper party, or actions for breach of directoral duties. Since plaintiff's claims all relate to alleged breaches in fiduciary duties, they fall squarely within Lewis' implied consent to jurisdiction. Thus, Mr. Lewis could clearly have expected to be hailed into Delaware courts to answer the type of claims asserted by plaintiff against him. Lewis' implied consent to service of process under the terms of Section 3114 would relieve any constitutional concerns over unfairness or injustice in requiring him to defend suit in Delaware.

The constitutionality of exercising jurisdiction over the Lewis Estate similarly follows from Lewis' implied consent to jurisdiction. Plaintiff here sues the co-executrices of the Lewis Estate--Loida Nicolas Lewis and Leslie N. Lewis--not personally but as the personal representatives of Lewis [FN6] for claims relating to Lewis' acts as a director. Sued in this capacity, the Lewis Estate is fairly bound by Lewis' consent to jurisdiction and the exercise of personal jurisdiction over the Lewis Estate passes constitutional scrutiny. It can hardly fail to satisfy fundamental fairness to require an estate to answer charges of delict or breach of duty of the decedent in a forum to which the decedent consented to such adjudication.

> FN6. Plaintiff also sues defendant Leslie N. Lewis in her individual capacity as a director of TLC Beatrice.

B. Personal Jurisdiction Over TLC Group L.P.

Defendant TLC Group L.P. ("Group") is a New York limited partnership with a Delaware

Not Reported in A.2d
1995 WL 694397 (Del.Ch.)
**(Cite as: 1995 WL 694397 (Del.Ch.))**

Page 9

corporation--TLC General Corp.--serving as its general partner. While the general partner can be personally served in this State, plaintiff relied on the general long-arm statute, 10 *Del.C.* § 3104 to serve Group. Group has now moved to be dismissed on the ground that it is not amenable to suit on the claims asserted in this jurisdiction.

As with the Lewis Estate, in order to justify the employment of Section 3104, plaintiff attributes various contacts to Group that in the first instance are acts of others. The only direct contacts between Group and Delaware that are alleged are (1) the payment of franchise taxes to the Delaware Secretary of State, and (2) the selection of a Delaware corporation as its general partner (which of course is not an act of limited partnership's both of its partners). In addition, plaintiff argues that this court should attribute to Group the contacts of its alleged co-conspirators.

1. Group: Jurisdiction Under 10 *Del.C.* § 3104(c)

*10 Three subsections of the Delaware long-arm statute, (§ 3104(c)) are relied upon. It is contended that TLC Group (1) transacted business in Delaware [§ 3104(c)(1)]; (2) caused tortious injury in Delaware by an act or omission in Delaware [§ 3104(c)(3)]; and (3) caused tortious injury inside or outside of Delaware by an act or omission outside of Delaware and was doing business in Delaware [§ 3104(c)(4)] [FN7] I conclude that none of the provisions have been shown, *prima facie*, to be applicable.

FN7. "As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

* * *

(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he *regularly does or solicits business, engages in any other*

*persistent course of conduct in the State* or derives substantial revenue from services, or things used or consumed in the State;

* * *

10 *Del.C.* § 3104(c).

* * *

Section 3104 is, in most of its aspects, a "single act" statute that establishes jurisdiction over nonresidents on the basis of a single act or transaction engaged in by the nonresident within the state. *Eudaily v. Harmon,* Del.Supr., 420 A.2d 1175, 1180 (1980); *Tabas v. Crosby,* Del.Ch., 444 A.2d 250, 254 (1982). Thus, this section permits the exercise of *specific* personal jurisdiction over the claims arising from the jurisdictional contacts listed in the relevant subsections. Subsection (c)(4) contemplates a general affiliating circumstance and thus permits the exercise of *general* personal jurisdiction over parties that qualify under its terms. *See, e.g., LaNuova D & B, S.p.A. v. Bowe Co., Inc.,* Del.Supr., 513 A.2d 764, 768 (1986); *Colonial Mtg. Serv. Co. v. Aerenson,* 603 F.Supp. 323, 327 (D.Del.1981).

*Subsection (c)(4).*

To prevail on plaintiff's assertion that Group's contacts with this State are such as to warrant the exercise of jurisdiction under subsection (c)(4), plaintiff must present evidence that Group "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State."

First, the service of a Delaware corporation as a general partner does itself constitute "doing business" or "a persistent course of conduct" in the state. Plainly the law of its incorporation is an important body of law for the general partner, but the fact of Delaware incorporation alone surely does not establish that the foreign limited partnership is "doing business" in this jurisdiction.

Second, plaintiff asserts that Group was a link in a practice that violated TLC Beatrice's rights and had a Delaware connection in the following way. It allegedly made payments (and was reimbursed by TLC Beatrice) to the Delaware Secretary of State

Not Reported in A.2d
1995 WL 694397 (Del.Ch.)
(Cite as: 1995 WL 694397 (Del.Ch.))

Page 10

for annual franchise fee obligations of various Reginald Lewis-affiliated enterprises. Together these payments amount to about $2,000. While these payments do, in my opinion, afford a basis for the exercise of specific jurisdiction over Group (addressed below) they do not meet the statutory test for general jurisdiction of subsection (c)(4). The contact itself--the repeated delivery of a $50 fee--is too insignificant to serve as a predicate for "presence" or "doing business." Moreover, to construe the statute as conferring generally affiliated status on Group on these facts would give rise to a constituted problem. [FN8] The exercise of judicial power must satisfy "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The franchise tax payments fail, in my opinion, to satisfy the constitutional standards. *See Afros SpA v. Kraus-Muffei Corp.*, 624 F.Supp. 464, 468 (D.Del.1985).

> FN8. "[A] limited partnership that is accorded the right to sue or be sued in its own name, is a 'person' under the due process clause of the Fourteenth Amendment for the purpose of determining whether it possesses a constitutional privilege against suit in the forum jurisdiction." *Hart Holding Company Incorp. v. Drexel Burnham Lambert Incorp.*, Del.Ch., C.A. No. 11514, Allen, C. (May 28, 1992), Mem.Op. at 10. As previously noted, Group L.P. is a New York limited partnership and, under New York law, a limited partnership may be sued in its own name. *See* N.Y.Civ.Prac.L. & R. § 1025 (McKinney 1976) ("Two or more persons conducting a business as a partnership may sue or be sued in the partnership name, and actions may be brought by or against the president or treasurer of an unincorporated association on behalf of the association in accordance with the provisions of the general associations law." *Id.*)

*Subsection (c)(1) and (c)(3).*

*11 These subsections authorize this court to exercise jurisdiction over a nonresident, or his personal representative, who directly or through an agent "transacts any business or performs any character of work or service in the State[,]" or "causes tortious injury in the State by an act or omission in this State[.]"

As noted the franchise fee payments do represent contacts sufficient to confer specific jurisdiction over the waste, misappropriation, and breach of fiduciary duty claims against Lewis arising from those payments. So limited jurisdiction here of such a claim would in my opinion be consistent with the constitutional test of minimum contacts.

Specific personal jurisdiction over one claim, however, does not confer specific jurisdiction over plaintiff's other claims. *See Sears, Roebuck & Co. v. Sears plc*, 774 F.Supp. 1297, 1302 (D.Del.1990); CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1588 (1969). "Indeed, where general jurisdiction over a defendant is lacking, the constitutional analysis distinguishing between general and specific jurisdiction would become meaningless if the finding of specific jurisdiction over one claim provided the basis for extending jurisdiction over all other alleged claims." *Sears, Roebuck*, 774 F.Supp. at 1302.

\* \* \*

2. Group: Section 17-911 of Limited Partnership Statute

Plaintiff also claims that this court has jurisdiction over Group because (1) a Delaware corporation, serves as Group's sole general partner and (2) Section 17-911, of our Limited Partnership Act, [FN9] provides for such jurisdiction. Plaintiff relies on *Macklowe v. Planet Hollywood, Inc.*, Del.Ch., C.A. No. 13689, Steele, V.C. (Oct. 4, 1994), contending it holds generally that a Delaware court may always exercise jurisdiction over an unregistered foreign limited partnership if a Delaware corporation serves as its general partner.

I cannot read that precedent so broadly. Whether the "presence" of a "general partner" in the forum jurisdiction will, without more, subject the limited partnership to *in personam* jurisdiction is a question that turns on the further question whether the law of the creation of the limited partnership treats it as a jural entity. New York law, which forms and creates Group, does treat Group as a legal entity, *i.e.*, having a distinct legal existence from its

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
1995 WL 694397 (Del.Ch.)  
**(Cite as: 1995 WL 694397 (Del.Ch.))**

Page 11

general or limited partners (*see* fn 8) Therefore, like a corporation or other legal entity, the simple presence in this jurisdiction of a person with management authority with respect to the entity will not itself subject the entity to jurisdiction, unless that presence is in connection with the affairs of the entity

> FN9. 6 *Del.C.* § 17-911 states:
> Any foreign limited partnership which shall do business in the State without having registered under § 17-902 of this title shall be deemed to have thereby appointed and constituted the Secretary of State of the State as its agent for the acceptance of legal process in any civil action, suit or proceeding against it in any state or federal court in the State arising or growing out of any business done by it within the State
> *Id.*

3. Group: Conspiracy Theory of Jurisdiction

Plaintiff also attempts to attribute other contacts to Group (*i.e.*, transactions relating to the purchase of a corporate jet and the incorporation of Delaware subsidiaries), but fails to present evidence that Group itself performed these acts or even that it "caused" or "directed" these actions. Instead, plaintiff alleges broadly that this court may exercise jurisdiction over Group based upon an *agency* among its alleged co-conspirators. By casting Group as a member of a conspiracy to defraud TLC Beatrice, plaintiff hopes to attribute the jurisdictional contacts of the alleged co-conspirators to Group.

*12 If the plaintiff can show *prima facie* the existence of a conspiracy in which Group participated, "a basis will have been shown to employ the Delaware long-arm Statute [10 *Del.C.* § 3104(c)] on the view that one member of a conspiracy acts as the agent of others with respect to the aim of the conspiracy." *Hart Holding*, 593 A.2d at 542; *see also Hercules Inc. v. Leu Trust and Banking*, Del.Supr., 611 A.2d 476, 481 (1992) This court could then exercise personal jurisdiction over the nonresident based on the forum contacts of the co-conspirators. See *Mobile Oil Corp. v. Advanced Envtl Recycling Technologies, Inc.*, 833 F.Supp. 437, 446 (D.Del. 1993)

The Supreme Court has defined the conspiracy theory of jurisdiction in *Istituto Bancario Italiano v. Hunter Eng. Co.*, Del.Supr., 449 A.2d 210, 225 (1982) Under the conspiracy theory:

> [a] conspirator who is absent from the forum state is subject to the jurisdiction of the court, ..., if the plaintiff can make a factual showing that: (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

*Id.* This court has narrowly construed the conspiracy theory of jurisdiction, seeing in it an easy technique to evade the thrust of the *International Shoe* holding. Proper invocation of this basis of jurisdiction requires factual proof of each enumerated element. See *Newspan, Inc. v. Hearthstone Funding Corp.*, Del.Ch., C.A. No. 13304, Allen, C. (May 10, 1994), Mem.Op at 18-19 ("all of [the five elements of a conspiracy] must be satisfied before a Delaware court may exercise personal jurisdiction." *Id.*). *Istituto Bancario*, 449 A.2d at 225 (requiring that plaintiff make a "factual showing" of required elements).

Lewis' dominant ownership position in the limited partnership and his complete ownership and control over the corporate general partner of Group indicates a strong solidarity between Lewis and Group. However, even assuming elements (1) and (2) of conspiracy enumerated in *Istituto Bancario*, are satisfied, plaintiff must offer evidence that the contacts of the conspiratorial agents would themselves satisfy the Delaware long-arm statute elements (3 & 4) such that, if they were attributed to Group, this court could exercise jurisdiction over Group based on those contacts (element 5) See *Mobile Oil*, 833 F.Supp. at 446

First, as to whose acts are considered as acts of Group for *in personam* jurisdiction, it is plaintiff's burden to show *prima facie* evidence that a conspiracy with another person existed and that the others act touching upon Delaware was in furtherance. In my view, the record does

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1995 WL 694397 (Del.Ch.)
(Cite as: 1995 WL 694397 (Del.Ch.))

Page 12

sufficiently establish an agreement between Lewis and Group with respect to franchise payments made through Group for the benefit of Lewis and Lewis affiliates. There is no evidence linking those payments by Group to the more substantial contact established by the receipt of an airplane in this State.

\*13 Similarly, the incorporation of various Delaware entities, particularly the entities involved in the rental, purchase, delivery, and sale of the jet, have not been shown to fall within a "conspiracy" between Lewis and Group.

Plaintiff's attempt to define a broad plan "to defraud TLC Beatrice" fails because of its absence of specificity and evidence. Plaintiff neglects to trace the enumerated elements of conspiracy with respect to other alleged co-conspirators. Thus, left unanswered are questions such as (1) who the members of the conspiracy were and whether, in fact, the members of the alleged conspiracy "voluntarily participated in [the] conspiracy with knowledge of its acts in or effects on the forum state ..." *Istituto Bancario*, 449 A.2d at 225; and (2) are any acts on effects in Delaware a part of a conspiracy and what is the scope of it.

I conclude that the conspiracy theory of jurisdiction is not sufficiently proven to require Group to appear and defend the panoply of claims asserted in this suit.

C. Personal Jurisdiction Over Anthony Fugett

1. Fugett: Statutory Basis: 10 *Del.C.* § 3114
Plaintiff asserts jurisdiction over Anthony Fugett ("Fugett") under 10 *Del.C.* § 3114, the directors consent statute.

Carlton argues that Fugett's actions as a director to approve, ratify, and adopt resolutions previously considered by the TLC Beatrice board render him subject to the court's jurisdiction for adjudication of claims allegedly arising from those acts. These resolutions included (1) a $22.1 million payment to Lewis, (2) the award of stock appreciation rights to each director, and (3) a generous compensation agreement for his brother, Jean Fugett.

Mr. Fugett contends that ratification was not necessary for the resolutions to take effect.

Therefore, he says, his action in ratifying them cannot form the basis of jurisdiction under Section 3114. He asserts that the holding in *Istituto Bancario*, 449 A.2d at 227-28, supports this position. There the Delaware Supreme Court held that a director's approval of the ministerial act of exchanging old share certificates for newly issued certificates, after the other parties to the conspiracy had already acted to issue and distribute the new shares, did not by itself constitute a wrongful action so as to subject the director to the personal jurisdiction under Section 3114. The Court specifically noted that this share exchange occurred after "all acts pursuant to, and necessary for completion of the conspiracy had been completed." The court additionally noted that, as regarding the share exchange, "board approval was not necessary and ... in fact, no action was taken." *Id.* at 228.

The *Bancario* holding is not dispositive on these facts since it is not clear that all acts to complete the wrong had been accomplished by the time of the ratification. More basically this point involves the distinction between jurisdiction to consider a claim and the validity of the claim itself. The ability of a shareholder to invoke Section 3114 cannot turn upon whether the facts allege constitute a valid claim. If they do not, the director may have the case dismissed on its merits under Rule 12(b)(6), not under 12(b)(2) or (4). Although the efficacy or necessity of Mr. Fugett's ratification is not certain, his potential liability for effecting such ratification, supported by evidence sufficient to create a *prima facie* case of jurisdictional status, suffices to permit this court to take personal jurisdiction over him. "Jurisdiction, ..., is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover ... Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy." *Bell v. Hood*, 327 U.S. 678, 682 (1946).

V. Statute Of Limitations

A. Limitations: The Lewis Estate

\*14 Defendants claim that this suit is barred against the Lewis Estate because the applicable statute of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1995 WL 694397 (Del.Ch.)
(Cite as: 1995 WL 694397 (Del.Ch.))

Page 13

limitations has run. Mr. Lewis died in 1993; this suit was not instituted until 1995. The Lewis Estate argues that, under 10 *Del.C.* § 8121 (the "borrowing statute"), [FN10] an eight month limitations period of 12 *Del.C.* § 2102 applies to the instant case and bars the present claim.

> FN10. Section 8121 holds in relevant part: "Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of *whichever is shorter*, the time limited by the law of this State, *or* the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action."
> 10 *Del.C.* § 8121 (1975) (emphasis added).

Section 2102, however, has no bearing on the amenability of a suit in Delaware for breach of fiduciary duties against an estate administered in New York. If indeed Chapter 21 and its purpose fail to illustrate this principle, the language of Section 2102 with reference to Section 2104 should. Chapter 21 is part of the comprehensive regulation of the administration of Delaware estates. It does not apply to claims against foreign estates.

Under Section 2104 the presentation of claims requires mailing the proper documents to the personal representative or filing such claim with the Register of Wills. A foreign estate has no personal representative in Delaware and must open an ancillary proceeding in Delaware to establish a personal representative in Delaware. Furthermore, filing with the Register of Wills has no application to estates established and administered in foreign jurisdictions.

Consistent with this analysis, this court stated in *Wimpfheimer v. Goldsmith*, Del.Ch., 298 A.2d 778 (1972), that, "under well-established law, . . . the domiciliary state, has the right to determine the validity and the timeliness of claims against the estate." *Id.* at 780. Because Lewis was a domiciliary of New York and his estate is being administered in New York, this general rule dictates that New York law, and not Delaware law, defines the period in which claims against the estate must be asserted. Insofar as this court is concerned in this suit claiming breach of fiduciary duty, the appropriate concept is *laches* not limitations. *Kahn v. Seaboard Corp.*, Del.Ch., 625 A.2d 209 (1993).

B. Limitations: Alfonso, Cloud, and Mowry

Defendants Alfonso, Cloud and Mowry contend that they should be dismissed as defendants since, they say, an applicable statute of limitations had expired with respect to any claims against them. In asserting this statute of limitations bar, defendants rely on 10 *Del.C.* § 8106, which, if it applies, bars claims seeking damages or other legal relief after three years. Alfonso, Cloud, and Mowry all left the TLC Beatrice board in 1989, almost five years before plaintiff brought this action.

Plaintiff responds that where a complaint alleges self-dealing by corporate fiduciaries, the three-year limitations period will not be employed by the Court of Chancery, until a reasonably diligent shareholder knew or had reason to know the facts giving rise to the alleged wrong. *See Kahn v. Seaboard Corp.*, Del.Ch., 625 A.2d 269, 276 (1993).

Plaintiff has the burden of pleading facts that will qualify the case for the tolling principle. *See Litman v. Prudential-Bache Properties, Inc.*, Del.Ch., C.A. No. 12137, Chandler, V.C. (Jan. 14, 1994), Mem.Op. at 8. Certainly proof of some affirmative act of concealment by the directors would entitle the court to not invoke statute of limitations. *Id.* at 5. Likewise, under the doctrine of equitable tolling, plaintiff may also qualify for tolling even absent an affirmative act of concealment, if it alleges (1) that defendants had a fiduciary relation with plaintiff, (2) self-dealing by the defendants, and (3) that plaintiff did not know or have reason to know of the facts giving rise to the alleged wrong. *E.g., Kahn*, 625 A.2d at 276. This principle of justifiable reliance by the beneficiary of a fiduciary duty on the integrity of the holder of the power subject to the duty, that plaintiff relies upon here.

*15 Defendants attempt to dispose of the tolling claim by asserting that plaintiff had a representative on the board and thereby knew, or should have known the facts now claimed to constitute a breach of fiduciary duty.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1995 WL 694397 (Del.Ch.)
(Cite as: 1995 WL 694397 (Del.Ch.))

Page 14

The critical fact--whether Carlton knew relevant facts in circumstances in which it could not reasonably rely any longer on the board's integrity--are subject to dispute in the record and not resolvable on this motion. Carlton asserts that it did not have a representative on the board. Carlton also claims that Lewis, in fact, failed to disclose information regarding the self-dealing transactions to the board of TLC Beatrice. Thus, even if Carlton had a representative on the board, that representative would not have had information sufficient to precipitate suit.

Does this fact question concerning what Carlton knew or should have known extend to the time at which defendants Alfonso, Cloud and Mowry served on the Beatrice board? If plaintiff was blamelessly unaware in 1989 of the facts and circumstances that it claimed when constituted a wrong when it filed this suit, then I believe that the directors must answer the claim, whether or not they as individuals concealed any action or misled anyone. When the issue is a time-bar in an action against a fiduciary. The emphasis in equity is upon the protection of the beneficiary of a fiduciary duty, so long as she is reasonably attentive to her interests, albeit trusting. *See Kahn v. Seaboard, supra.*

Thus, the unresolved state of the record leads me to decline to grant this motion at this time.

VI. Dismissal Of Conversion And Aiding And Abetting/Conspiracy Claims

Defendants have moved to dismiss the conversion and aiding and abetting/civil conspiracy claims for failure to state valid claims for relief. In a motion to dismiss for failure to state a claim, the court will consider all well pleaded allegations as true, *see Del. State Troopers Lodge No. 6 v. O'Rourke,* Del.Ch., 403 A.2d 1109, 1110 (1979), and will construe the complaint and all inferences contained therein in the light most favorable to the plaintiff. *See id.* The moving party has the burden to show that the plaintiff could not prevail under any state of facts which could be proven to support his claim. *See Summers v. Beneficial Corp.,* Del.Ch., C.A. No. 8788, Hartnett, V.C. (March 9, 1988).

A. Civil Conspiracy/Aiding and Abetting

To establish this civil conspiracy or aiding and abetting claim, plaintiff must plead facts tending to show (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, and (3) a knowing participation in the breach by the non-fiduciary defendant. *Weinberger v. Rio Grande Industries, Inc.,* Del.Ch., 519 A.2d 116, 131 (1986); *Gilbert v. El Paso Co.,* Del.Ch., 490 A.2d 1050, 1057 (1984). Such causes largely come down to what constitutes "knowing participation." [FN11]

> FN11. In some occasions this court has dilated upon the "knowing participation" element by employing the following test of a civil conspiracy (1) the participation of two or more persons, (2) some object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more overt acts, and (5) damages as a proximate result thereof. *See Tuckeran v. AeroSonic Corp.,* Del.Ch., C.A. No. 8094, Hartnett, V.C. (June 29, 1981), Mem.Op. at 2; *Weinberger v. UOP, Inc.,* Del.Ch., 426 A.2d 1333, 1348 (1981), *rev'd on other grounds,* Del.Supr., 457 A.2d 701 (1983). For the purposes of the instant case, however, analysis under the civil conspiracy test mirrors the analysis under the civil conspiracy/aiding and abetting standard. Both primarily focus on the understanding of the parties with respect to their complicity in any scheme to defraud or in any breach of fiduciary duties.

The actions of Group and its general partner TLC Group Corp., as set forth in the complaint, clearly reveal a knowing participation in the alleged acts that are said to constitute breaches of fiduciary duties. The complaint sets forth a melange of payments made by Group to Lewis, his friends and family, his companies, and its own employees which were later reimbursed by TLC Beatrice. This participation as middleman for and beneficiary of improper disbursements by TLC Beatrice inextricably intertwines TLC Group L.P. and TLC Group Corp. with the defendant directors in this action for breach of fiduciary duties.

*16 As for the remaining entities, plaintiff has alleged sufficient facts to indicate their participation

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1995 WL 694397 (Del Ch.)
(Cite as: 1995 WL 694397 (Del.Ch.))

Page 15

in a range of acts claimed to constitute waste and misappropriation Specifically, they "participated" in receiving an improper benefit, directly or indirectly, from Beatrice: TLC Holdings allegedly obtained office space free of rent, and McCall Pattern Holdings allegedly had its legal expenses paid Regardless of the possibly *de minimus* nature of the benefit conferred, the receipt of improper benefits suffices to prove their participation in the alleged breaches of fiduciary duties Furthermore if one accepts the pleadings, TLC Transport participated in the breach of fiduciary duties in facilitating the lease of the corporate jet for TLC Beatrice and Lewis For the purpose of assessing this motion to dismiss, this court infers their "knowing" participation from the factual allegations in the complaint as to the overarching control of Lewis over these entities Any claims that the defendant companies unknowingly participated in the alleged breaches of fiduciary duties might be proven to be true later but for these purposes I conclude enough is alleged to state a claim

B Conversion

Defendants have moved to dismiss the conversion claim, arguing that conversion applies only to tangible property and not to the wrongful taking of money ("The rule therefore is that an action for conversion of money will lie only where there is an obligation to return the *identical* money delivered by the plaintiff to the defendant." This is a traditional limitation of this ancient form of recovery. Plaintiff concedes that defendants could not have converted TLC Beatrice funds, but it argues that the "wrongful exercise of dominion over" (1) the services of the corporate jet, and (2) the leased office space, support its conversion claim

Conversion is the "wrongful exercise of dominion over the property of another, in denial of his right, or inconsistent with it" *Drug, Inc v Hunt*, Del Supr, 168 A 87, 93 (1933) An action for conversion has traditionally applied to the wrongful exercise of dominion over tangible goods See RESTATEMENT (SECOND) OF TORTS § 222A, cmt a Following a modern trend, Delaware courts have tentatively expanded the doctrine to encompass some intangible goods where the intangible property relations are merged into a document See *Drug, Inc v Hunt*, Del Supr, 168

A 87, 93 (1933) (specific stock certificates); *see generally*, *Mastellone v Argo Oil Corp*, 82 A 2d 379, 382-83 (1951) (stock certificates) Plaintiff here argues for an expansion of conversion to encompass wrongful taking of the right to occupy space and the right to the services of the jet plane We do not, however, have a shortage of available legal theories of recovery should plaintiff prove the factual elements of this case There is no need to attempt to craft new theories of recovery of this type Therefore I conclude that conversion is not an available theory of recovery to plaintiff insofar as it complains of the payment of money by TLC Beatrice or the intangibles not represented in an instrument

VII Motion To Dismiss Claims Against Anthony Fugett, TLC Holdings And TLC Transport

*17 Defendants have moved to dismiss Anthony Fugett, TLC Holdings, and TLC Transport, claiming that the complaint fails to allege any wrongdoing on their part In this context, the moving party must show that plaintiff could not prevail under any state of facts which could be proven to support her claim. *Rabkin v Philip A Hunt Chemical Corp*, Del Supr, 498 A 2d 1099, 1004 (1985) Here, defendants contend that Fugett should be dismissed because the complaint fails to allege that he did anything wrong and because all the payments challenged by Carlton were authorized prior to his becoming a director I addressed this above; questions remain as to whether Fugett's *post hoc* ratification of certain resolutions regarding the challenged payments had any legal significance The potential liability of Fugett remains an unsettled question of fact and law

Defendants similarly move to dismiss TLC Holdings Corp The complaint alleges that TLC Holdings Corp occupied space in TLC Beatrice offices and had its taxes and other governmental levies paid by TLC Beatrice As discussed above, this receipt of benefits from TLC Beatrice may subject it to liability under the aiding and abetting/civil conspiracy claim alleged by plaintiff

* * *

Plaintiffs shall submit a form or order on notice

1995 WL 694397 (Del Ch )

© 2005 Thomson/West No Claim to Orig U S Govt Works

Not Reported in A.2d  
1995 WL 694397 (Del. Ch.)  
(Cite as: **1995 WL 694397 (Del.Ch.)**)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.