IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| THE IT GROUP, INC., et al, ) | Case No. 02-10118 (MFW) |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | |
| ————————————————) | |
| IT LITIGATION TRUST, ) | |
| ) | |
| Plaintiff, ) | Civ. A. No. 04-CV-1268 (KAJ) |
| ) | |
| v. ) | |
| ) | |
| DANIEL A. D'ANIELLO, FRANCIS J. HARVEY,) | |
| JAMES C. MCGILL, RICHARD W. POGUE, ) | |
| PHILLIP B. DOLAN, E. MARTIN GIBSON, ) | |
| ROBERT F. PUGLIESE, CHARLES W. ) | |
| SCHMIDT, JAMES DAVID WATKINS, ) | |
| ANTHONY J. DeLUCA, HARRY J. SOOSE, ) | |
| THE CARLYLE GROUP, THE CARLYLE ) | |
| GROUP L.L.C., CARLYLE PARTNERS II, L.P., ) | |
| CARLYLE SBC PARTNERS II, L.P., CARLYLE ) | |
| INTERNATIONAL PARTNERS II L.P., ) | |
| CARLYLE INTERNATIONAL PARTNERS III, ) | |
| C/S INTERNATIONAL PARTNERS, CARLYLE ) | |
| INVESTMENT GROUP, L.P., CARLYLE-IT ) | |
| INTERNATIONAL PARTNERS, LP, ) | |
| CARLYLE-IT INTERNATIONAL PARTNERS II, ) | |
| L.P., CARLYLE-IT PARTNERS L.P., ) | |
| and T.C. GROUP, L.L.C., ) | |
| ) | |
| Defendants. ) | |
| ————————————————) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' JOINT MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION**

584492v1

THE BAYARD FIRM

Jeffrey M. Schlerf (I.D. No. 3047)
Thomas H. Kovach (I.D. No. 3964)
Eric M. Sutty (I.D. No. 4007)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000

and

STRAUSS & TROY
Richard S. Wayne
Thomas P. Glass
John M. Levy
The Federal Reserve Building
150 E. Fourth Street
Cincinnati, Ohio 45202-4018
(513) 621-2120
Fax: (513) 629-9426

Co-Counsel to the IT Litigation Trust

Dated:    April 18, 2005

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................ iii

I.  PRELIMINARY STATEMENT ............................................................1

    A.  STATEMENT OF THE NATURE AND STAGE OF PROCEEDING......1

    B.  SUMMARY OF ARGUMENT ..................................................3

    C.  BACKGROUND FACTS ..........................................................5

II.  ARGUMENT ........................................................................7

    A.  THE STANDARD OF REVIEW ...............................................7

    B.  THE COURT HAS SUBJECT MATTER JURISDICTION OVER
        THE STATE LAW CLAIMS WHICH ARISE UNDER TITLE 11,
        OR IN THE ALTERNATIVE, ARE RELATED TO TITLE 11................7

        1.  The Court has Original Jurisdiction over Plaintiff's Federal
            Claims ...................................................................7

        2.  The Court has Original Jurisdiction over the State Claims
            which "Relate To" the Federal Claims ............................8

            a.  The Standard for Determining Subject Matter
                Jurisdiction Over State Law Claims .....................9

            b.  The State Claims have a close nexus to both the
                Bankruptcy Plan and the Federal Claims...........................11

            c.  The cases cited by Defendants are factually
                inapposite and irrelevant ...................................13

        3.  Conclusion .......................................................15

    C.  THE COURT SHOULD EXERCISE SUPPLEMENTAL
        JURISDICTION OVER THE STATE CLAIMS ......................15

        1.  The State Claims are Part of the Same "Case or Controversy"
            as the Federal Claims ................................................15

         2.  The State Claims do not Predominate...........................18

a.  Defendants Can Not Establish That the State Law
Claims Predominate Under Third Circuit Law ..................19

b.  The Cases Defendants Cite To Oppose Supplemental
Jurisdiction Are Inapposite ................................................20

c.  The State Law Claim Should Not Be Relegated to
State Court ........................................................................22

3.  Judicial Economy Weighs In Favor Of This Court Retaining
Supplemental Jurisdiction ............................................................24

4.  Conclusion ...................................................................................24

II.  CONCLUSION........................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Antico Vacca Technologies, Inc. v. Steel Technologies, Inc.* (*In re Gruppo Antico, Inc.*),
   2004 Bankr. Lexis 2162 (Bankr. D. Del. Nov. 10, 2004)............................................14

*Bell v. Hood*, 327 U.S. 678, 682 (1946).........................................................................7, 15

*Binder v. Price Waterhouse & Co., LLP* (*In re Resorts International, Inc.*),
   372 F.3d 154 (3d Cir. 2004)....................................................3, 8, 9, 10, 11, 12, 13, 14

*Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995) ..............18, 19, 24

*Buncher Co. v. Official Comm. Of Unsecured Creditors of GenFarm Ltd. P'ship IV*,
   229 F.3d 245 (3d Cir. 2000)...........................................................................................8

*Carpet Group Int'l v. Oriental Rug Imp. Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000) ...............6

*Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) .........................................................9

*City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997) ....................16

*De Asencio v. Tyson Foods*, 342 F.3d 301 (3d Cir. 2003)..................................................20

*Freer v. Mayer*, 796 F. Supp. 89 (S.D.N.Y. 1992) ......................................................22, 23

*In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004).....................................14

*In re Haws*, 158 B.R. 965 (Bankr. S.D. Tex. 1993).........................................................14

*In re Marcus Hook*, 943 F.2d 261, 264 (3d Cir. 1991) ......................................................9

*In re: Seminole Oil & Gas Corp.*, 963 F.2d 368 (4th Cir. 1992).......................................10

*In re United States Brass Corp.*, 301 F.3d 296 (5th Cir. 2002)..........................................10

*Johnson v. Cullen*, 925 F.Supp. 244 (D. Del. 1996)..........................................................22

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) ..........................7, 15

*In re LGI, Inc. 2005* WL 613387 (Bankr.D.N.J. 2005)  ...................................................12

*Martin v. Philadelphia Facilities Management Corp.*,
   2004 WL 1628922 (E.D. Pa. 2004) ..............................................................................21

*NVF Co. v. New Castle County*, 276 B.R. 340 (D. Del. 2002) .........................................10

*Occunomix International, LLC v. North Ocean Ventures, Inc.*,
  2003 WL 22240660, (S.D.N.Y. Sept. 30, 2003).........................................................22

*Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974) .......................7, 15

*Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) .........................................4, 9, 10

*PHP Liquidating LLC v. Robbins*, 291 B.R. 592 (D. Del. 2003) .....................................22

*Rahl v. Band*e, 316 B.R. 127 (S.D. N.Y. 2004) .................................................4, 11, 12, 13

*Shurgue v. Continental Airlines, Inc.*, 977 F. Supp. 280 (S.D. N.Y. 1997)......................14

*Simmons v. Johnson Curney & Fields, P.C.*, 205 B.R. 834 (W.D. Tx. 1997)..................22

*St. Luke's Hosp. of Bethlehem, Inc. v. O'Leary*,
  1994 WL 672629 (E.D. Pa. Nov. 29, 1994) ................................................................17

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966) .......................16, 24

*Youngblood Group v. Lufkin Fed. Savings and Loan Assoc.*,
  932 F. Supp. 859 (E.D. Tx. 1996)................................................................................22

**Other Authorities**

11 U.S.C. §544.............................................................................................................8
11 U.S.C. §547.............................................................................................................8
11 U.S.C. §548.............................................................................................................8
11 U.S.C. §550.............................................................................................................8
11 U.S.C. §551.............................................................................................................8
11 U.S.C. §1142(b).....................................................................................................10
28 U.S.C. §157.............................................................................................................8
28 U.S.C. §1334..................................................................................................8, 11, 15
28 U.S.C. §1367.................................................................................4, 15, 18, 19, 23, 24
Del. Code §1303 ...........................................................................................................8
Fed. R. Bankr. P. 3020(d) ..........................................................................................10
Federal Rule of Civil Procedure 12(b)(1) .............................................................7, 15

Plaintiff IT Litigation Trust (the "Trust" or "Plaintiff"), in its capacity as the representative of the IT Group, Inc. ("the Debtors" or "Company") and their estates and for the benefit of the estates' creditors,[1] submit this Memorandum in Opposition to Defendants' Joint Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by Daniel A. D'Aniello, Francis J. Harvey, James C. McGill, Richard W. Pogue, Philip B. Dolan, B. Martin Gibson, Robert F, Pugliese, Charles W. Schmidt, James David Watkins, Anthony J. DeLuca, Harry J. Soose (collectively the "Individual Defendants"), The Carlyle Group, The Carlyle Group L.L.C., Carlyle Partners II, L.P., Carlyle SBC Partners II, L.P., Carlyle International Partners II, Carlyle International Partners III, C/S International Partners, Carlyle Investment Group, L.P., Carlyle-IT International Partners, Carlyle-IT International Partners II, L.P., Carlyle-IT Partners, L.P., and T.C. Group, L.L.C. (the "Carlyle Defendants") (collectively the "Defendants").

## I.    PRELIMINARY STATEMENT

### A.    STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

#### 1.    Nature of Proceedings

The claims alleged in the First Amended Complaint (the "Amended Complaint") arise out of the Individual Defendants' abdication of their fiduciary duties of loyalty and breaches of their duty of good faith by allowing the Carlyle Defendants to seize control of the Company and thereafter allowing the Carlyle Defendants to operate and manage

---

[1] The Trust initiated this action pursuant to the authority granted to it under law and the Court's (i) Order Granting Leave, Standing, and Authority to the Committee to Prosecute Avoidance Actions on Behalf of the Debtors' Estates, dated November 6, 2003; (ii) Order Amending Prior Order Granting Leave, Standing, and Authority to the Committee to Prosecute Avoidance Actions On Behalf of the Debtors' Estates, dated December 22, 2003; (iii) Order Granting Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to the Committee to Prosecute Avoidance Actions on Behalf of the Debtors' Estates, dated November 6, 2003; and, (iv) Stipulation and Order substituting the Trust as the Plaintiff in this action dated September 1, 2004.

584492v1

the Company for their sole benefit. The Carlyle Defendants were the only preferred shareholders of the Company. The Amended Complaint also alleges that the Carlyle Defendants and Individual Defendants breached their respective duties of loyalty and good faith by failing to conduct the appropriate due diligence with regard to the eleven acquisitions undertaken by the Company between 1998 and 2000 at the direction of the Carlyle Defendants. The Company paid amounts well in excess of the assets purchased for several of the companies it acquired.  As a result, the Company booked goodwill in excess of the consideration paid for these assets in the amount of $539 million, all of which eventually had to be written off. The Amended Complaint also alleges that throughout this time-frame the Company's directors, under the control of the Carlyle Defendants, continued to declare dividends totaling $8.9 million on the preferred stock held exclusively by the Carlyle Defendants, and paid the Carlyle Defendants consulting fees totaling $890,000 for which the Company received no benefit. As a result of these breaches of fiduciary duty the Company was forced to file for protection under the Bankruptcy Code in January 2002.

### 2.    Stage of Proceedings

The Trust filed its original Complaint as an adversary proceeding in the Bankruptcy Court on January 15, 2004.  The District Court *sua sponte* withdrew the reference to this case on September 8, 2004. (Doc. 1)  On October 29, 2004, all Defendants filed motions to dismiss.  Specifically, Carlyle International Partners II, LP, Carlyle International Partners III, LP, C/S International Partners, Carlyle-IT International Partners, LP, Carlyle IT-International Partners II, LP, ("the Carlyle Cayman Entities") and Defendant Pogue filed motions to dismiss based upon the lack of personal

jurisdiction. (Doc. #'s 13-20)  All Defendants filed motions to dismiss based upon the lack of subject matter jurisdiction and Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)").  On January 28, 2005, the Trust filed an Amended Complaint to address the issues raised by Defendants in their pending motions.

In response to the Amended Complaint, the Carlyle Cayman Entities and Pogue again moved for dismissal on the basis of the lack of personal jurisdiction.[2]  All Defendants once again moved to dismiss on the basis of a lack of subject matter jurisdiction and pursuant to Rule 12(b)(6).[3]  In this memorandum, Plaintiff will demonstrate that Defendants' joint motions to dismiss based upon a lack of subject matter jurisdiction should be denied.

### B.     SUMMARY OF ARGUMENT

#### 1.     The Court has Exclusive Jurisdiction Over the Trust's Claims

Defendants concede, as they must, that Counts VI, VII and VIII of the Amended Complaint which allege federal claims fall within this Court's exclusive jurisdiction.  As a result, jurisdiction exists over the remaining state law claims alleged in the Amended Complaint which have a close nexus to both the bankruptcy plan and the federal claims. The Third Circuit made clear in *Binder v. Price Waterhouse & Co., LLP*, 372 F.3d 154 (3d Cir. 2004), that federal subject matter jurisdiction exists over state law claims if "the outcome of that proceeding could conceivably have any effect on the estate being

---

[2] By agreement of the parties and the approval of the Court, the issue of personal jurisdiction is being deferred pending the resolution of the subject matter and Rule 12(b)(6) issues, which could impact the necessity to conduct discovery on the issue of personal jurisdiction and further brief the issue.

[3] Defendants raise new grounds for dismissal under Rule 12(b)(6) that were not raised in the previously filed motion to dismiss.  Specifically, Defendants now argue that the Amended Complaint fails to state a claim for breach of fiduciary duty because it does not satisfy the pleading requirements required of a shareholder derivative complaint filed pursuant to Rule 23.1. This is not a derivative claim but, rather, a direct claim for breach of fiduciary duties.

administered in bankruptcy." *Id.* at 164 (*quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). The present proceeding could "conceivably" impact the Debtors' estates as any recovery will go to satisfy, in full or part, the claims of the Debtors' unsecured creditors. The Trust obtained standing to pursue these claims from the Plan approved by the Bankruptcy Court; and therefore, this action constitutes implementation of the Plan. *See Rahl v. Bande*, 316 B.R. 127 (S.D.N.Y. 2004).

### 2. Judicial Efficiency Dictates that the Court Exercise Supplemental Jurisdiction Over the Trust's State Law Claims

Congress vested federal courts with supplemental jurisdiction over state law claims that form part of the same case or controversy as the federal claims. *See* 28 U.S.C. §1367(a). The state law claims alleged in this case arise from the same set of operative facts as the federal claims and are, therefore, part of the same case or controversy and provide the basis for the Court to exercise supplemental jurisdiction over all of the claims. The factual premise of the fraudulent transfer and avoidance actions—the payment to the Carlyle Defendants of $8,900,000 in preferred stock dividends—also serves as a predicate for the breach of fiduciary duty claims. The payment of the dividends to the Carlyle Defendants constituted breaches of the directors' fiduciary duties because these discretionary payments were: (i) paid by a board that was dominated and controlled by the Carlyle Defendants; (ii) benefits that were not shared by all shareholders; (iii) were not in the best interest of the Company or the minority shareholders; and (iv) were made when the Company was insolvent, or in the zone of insolvency.

The nature and quantity of evidence required to prove the federal and state claims substantially overlaps - especially on issues such as the date the Company was insolvent

and the payment of the preferred stock dividends. Severing the state law claims from the federal claims would result in significant duplication of discovery and expense associated with proving these claims in separate forums and would be prejudicial to the Trust.

### C.    BACKGROUND FACTS

On or about November 20, 1996, the Carlyle Defendants took control of the IT Group. The Carlyle Defendants invested $45 million in the Company. In return, the Carlyle Defendants received 45,000 shares of 6% Cumulative Convertible Participating Preferred Stock, par value of $100 per share and detachable warrants to purchase 1,250,000 shares of IT common stock. (Amended Complaint, ¶31) (hereinafter "Comp. ¶___"). At that time the Carlyle Defendants also received approximately 25% of the IT Group's voting power and obtained the right to elect a majority of IT Group's board of directors through Defendant the T.C. Group and specifically, Carlyle employees D'Aniello and Dolan. *Id.* The Carlyle Defendants also procured a consulting agreement, despite the fact that they already controlled the Company, pursuant to which they were paid $100,000.00 per year and an additional $10,000.00 per month. *Id.*

After seizing control of the Company, the Carlyle Defendants embarked upon "roll-up" strategy to purchase several companies. *Id.* at ¶32. Between 1998 and 2000, the Carlyle Defendants had caused the Company to purchase at least 11 other companies for which the Company grossly overpaid. *Id.* at ¶¶33-41. During this time-frame the Company booked $539,000,000 in goodwill, which was the amount of consideration the Company paid in excess of the fair value of the assets the Company acquired. *Id.* at ¶39. This is a staggering amount of overpayment for these assets. Prior to these acquisitions, Defendants failed to apprise themselves of the fair value of the target for each acquisition and the subsequent impact the overpayments would have on the Company's financial

statements (i.e. the overstated goodwill, which accounted for 41% of the Company's reported assets). *Id.* at ¶59.

Complicating matters for the Company was the fact that the Company was not generating adequate cash to finance these acquisitions. As a result, the Carlyle Defendants, through its control of the Board, caused the Company to finance the acquisitions with debt. *Id.* at ¶43.  At the same time that Defendants were increasing the Company's debt, over-paying for acquisitions and booking excess goodwill, Defendants were also routinely paying discretionary dividends on the Carlyle Defendants preferred stock and paying the Carlyle Defendants consulting fees, *id.* at ¶¶99-103. During this time the Company made no effort to consolidate, streamline or cut its costs.  Specifically, the Carlyle Defendants, through their control of the Board, ensured that they were paid over $8,900,000 in dividends during the time that the Company was in its death spiral. *Id.*    These and other factors ultimately led to the Company's filing for bankruptcy protection on January 16, 2002.

The First Amended Joint Chapter 11 Plan for the IT Group, Inc. and its Affiliated Debtors Proposed by the Debtors and the Official Committee of Unsecured Creditors ("the Plan") was submitted for approval on February 9, 2004. (*See* Declaration of Richard S. Wayne at A001 through A002) (hereinafter "Wayne Dec.").   The Court confirmed the Plan on April 5, 2004. (Wayne Dec. at A003 through A062). Pursuant to Section 7.10(I)(b) of the Plan, the Trust was established "for the sole purpose of liquidating and distributing its assets ..." (Wayne Dec. at A027). The Trust's assets "consist of … [a]ny cash or other property received from third parties from the prosecution, settlement, or compromise of the Avoidance Actions and/or the Estate

Causes of Action." (Wayne Dec. at A012 through A027). The present case involves Avoidance Actions (Counts VI, VII, VIII) and Estate Causes of Action (Counts I, II, III, IV and IV) (Wayne Dec. at A008 through A010).

## II.    ARGUMENT

### A.    THE STANDARD OF REVIEW

Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1) (Defendants' "Motion") is a facial challenge to the Amended Complaint. As such, the Court must consider the allegations contained in the Amended Complaint as true for purposes of determining Defendants' Motion. *Carpet Group Int'l v. Oriental Rug Imp. Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000). Dismissal pursuant to Rule 12(b)(1) is proper only when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or…is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682 (1946). The claim must be "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy" *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974); *See also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting *Bell* and County of *Oneidea* with approval). Consequently, Defendants have an extremely high threshold to satisfy to prevail on their Motion.

### B.    THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE STATE LAW CLAIMS WHICH ARISE UNDER TITLE 11, OR IN THE ALTERNATIVE, ARE RELATED TO TITLE 11

#### 1.    The Court has Original Jurisdiction Over Plaintiff's Federal Claims

The claims alleged in the Amended Complaint include: (Count VI) Avoidance and Recovery of Transfers made to Defendants Gibson, Harvey, Pogue, Pugliese,

Schmidt, Watkins, and the Carlyle Defendants, pursuant to Sections 547 and 550 of the Bankruptcy Code; (Count VII) Avoidance and Recovery of Constructively Fraudulent Transfers made to the Carlyle Defendants, pursuant to Sections 544, 548, 550 and 551 of the Bankruptcy Code; and (Count VIII) Fraudulent Conveyances made to the Preference Defendants and Carlyle Defendants Under Del. Code §1303 (collectively the "Federal Claims").

Counts VI and VII are core claims under Title 11, 28 U.S.C. §157(b)(2), which provides that "Core proceedings include, but are not limited to…(H) proceedings to determine, avoid, or recover fraudulent conveyances…". Count VIII is also a core claim under Title 11 because 11 U.S.C. §544(b)(1) permits a trustee to assert the rights of any individual creditor under state law to avoid fraudulent transfers that occurred before the filing of the bankruptcy petition, for the benefit of all creditors. *Buncher Co. v. Official Comm. Of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245 (3d Cir. 2000). Accordingly, Counts VI-VIII are core claims which arise under Title 11 and, therefore, vest this Court with subject matter jurisdiction.[4]

### 2.   The Court has Original Jurisdiction over the State Claims which "Relate To" the Federal Claims

Defendants argue that *Binder v. Price Waterhouse & Co., LLP* (*In re Resorts International, Inc.*), 372 F.3d 154 (3d Cir. 2004) (referred to hereinafter as "*Binder*") is "dispositive" of the issue of whether Plaintiff's State Law Claims are "related to" a case under Title 11, and, therefore, vest this Court with subject matter jurisdiction pursuant to 28 U.S.C. §1334(b). While *Binder* does provide the relevant standards for determining this issue, it is factually inapposite to the present case.

---

[4] Defendants concede this point in their Motion.

In *Binder*, the court addressed whether a claim brought by a litigation trust against outside auditors hired post-confirmation by the trustee, was "related to" the original bankruptcy proceeding. Neither the Court in *Binder* nor any other decision Defendants cite in support of their argument challenging the subject matter jurisdiction of this Court involved a litigation trust asserting claims which arise under both Title 11 (the "Federal Claims"), and under state law (the "State Claims").

**a.**    **The Standard for Determining Subject Matter Jurisdiction Over State Law Claims.**

In *Binder*, 372 F.3d at 162-65, the court identified the applicable standards for determining whether the Court has subject matter jurisdiction over state law claims. The court initially recognized that, with "related to" jurisdiction, Congress intended to grant bankruptcy courts "comprehensive jurisdiction" so that they could "deal efficiently and expeditiously" with matters connected with the bankruptcy estate. *Id.* at 163-64 (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995)). While Courts retain great flexibility in determining whether State Claims are "related to" the Federal Claims, particular attention needs be paid to matters of efficiency and expediency.

The Third Circuit has consistently held that subject matter jurisdiction exists over a claim if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 164 (*quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). In *In re Marcus Hook*, 943 F.2d 261, 264 (3d Cir. 1991), the court emphasized that the key word in this test was "**conceivable**" and that "[c]ertainty, or even likelihood, is not a requirement." In *Pacor*, 743 F.2d at 994, the court pointed out that "the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could

alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Therefore, Plaintiff's State Claims need only satisfy a very low threshold for this Court to find that they "relate to" a case under Title 11.

Although the instant proceeding is being prosecuted post-confirmation of the bankruptcy plan, this does not preclude a finding that the State Claims "relate to" the Title 11 Federal Claims. In fact, "[p]ost-confirmation jurisdiction is assumed by statute and rule: 11 U.S.C. §1142(b) authorizes the bankruptcy court to 'direct the debtor and any other necessary party ... to perform any other act ... that is necessary for the consummation of the plan,' and Fed. R. Bankr. P. 3020(d) provides that '[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate.'" *Binder*, 372 F.3d at 165. Thus, "while the estate of the debtor may no longer exist following plan confirmation, the debtor remains a debtor until the Title 11 case has been closed pursuant to 11 U.S.C. §350(a). This court, therefore, has jurisdiction to resolve pre-petition Proofs of Claim and set-offs because the action 'could alter the debtor's right, liabilities, options, or freedom of action.'" *NVF Co. v. New Castle County*, 276 B.R. 340, 348 (D. Del. 2002) (quoting *Pacor*, 743 F.2d at 994). Furthermore, "[p]ost-confirmation jurisdiction exists over an issue for which the bankruptcy court has specifically reserved in the order confirming the plan or the plan itself." *In re: Seminole Oil & Gas Corp.*, 963 F.2d 368, *3 (4th Cir. 1992).

While 11 U.S.C. §1142(b) assumes that jurisdiction exists for post-confirmation disputes, 28 U.S.C. §1334 remains the basis of this jurisdiction. *In re United States Brass Corp.*, 301 F.3d 296, 306 (5th Cir. 2002). To determine whether a cause of action brought

post-confirmation "relates to" a claim under Title 11, courts analyze "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." Accordingly, to retain subject matter jurisdiction over the State Claims pursuant to 28 U.S.C. §1334, this Court must find that the State Claims have a close nexus to the bankruptcy plan or proceeding.

**b.**    **The State Claims Have a Close Nexus to Both the Bankruptcy Plan and the Federal Claims**

Both Plaintiff's State and Federal Claims are based upon the same facts. The Amended Complaint alleges that the fraudulent conveyances in the Federal Claims are also the basis for the State Claims that Defendants' breached their fiduciary duties, wasted corporate assets, and aided and abetted breaches of fiduciary duties. Consequently, the State Claims "relate to" the Federal Claims. Moreover, as the court recognized in *Binder*, "with 'related to' jurisdiction, Congress intended to grant bankruptcy courts 'comprehensive jurisdiction' so that they could 'deal efficiently and expeditiously' with matters connected with the bankruptcy estate. 372 F.3d at 163-64 (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995)). Efficiency dictates that this Court retain subject matter jurisdiction over the State Claims. Otherwise, Plaintiff will be forced to litigate two separate cases in two separate court systems against the same Defendants and based upon the same misconduct. This is not the result intended by the Bankruptcy Code.

In *Rahl v. Band*e, 316 B.R. 127 (S.D. N.Y. 2004), the court addressed whether a federal court hearing a post-confirmation claim for fraudulent conveyance under Title 11 has subject matter jurisdiction over state law claims for breaches of fiduciary duty against officers and directors of an insolvent company for their role in contributing to the

insolvency. In *Rahl*, as in the present case, a litigation trust was created for the purpose of pursuing claims on behalf of the debtor. Applying the same standards which courts in the Third Circuit apply when analyzing "related to" jurisdiction,[5] the court found that the state claims were "related to" the debtor's bankruptcy case, in that their resolution involved the interpretation and implementation of the bankruptcy plan. In fact, the Court concluded that "[a]lthough this inquiry may not require an exhaustive parsing of the [bankruptcy] Plan, there is a sufficient nexus between [the debtor's] bankruptcy case and this proceeding to support post-confirmation 'related to' jurisdiction." Likewise, in this case, Plaintiff's State Claims are "related to" the Federal Claims since they arise out of and require the interpretation of the IT Group's Bankruptcy Plan.

This precise matter was recently addressed in *In re LGI, Inc.*, 2005 WL 613387 (Bankr. D.N.J. 2005). In *In re LGI, Inc.*, the question arose as to whether a claim that arose pre-petition and subsequently transferred to a litigation trust pursuant to a plan of reorganization for prosecution had a close nexus to the debtor's bankruptcy proceeding so as to provide the court with jurisdiction. The bankruptcy court held that the pre-petition claim being pursued by the trust was defined as an asset by the plan to be distributed to certain creditors as part of the plan. "These facts, without more, could well establish the 'close nexus to the bankruptcy plan or proceeding' which the Third Circuit requires to subject matter jurisdiction. Though not involving matters of 'interpretation' or 'administration' of a confirmed plan, this adversary proceeding plainly serves the plan through the 'implementation, consummation [and] execution' which typify many post-confirmation matters." *Id.* at *5.

---

[5] The court actually cited to *Binder* for the post-confirmation standard. *Rahl*, 316 B.R. at 133.

Section 7.10(I) of the First Amended Joint Chapter 11 Plan for the IT Group, Inc. and its Affiliated Debtors Proposed by the Debtors and the Official Committee of Unsecured Creditors (the "Bankruptcy Plan"), which was confirmed by the Bankruptcy Court on April 5, 2004 governs the rights and duties of the Litigation Trust, the Plaintiff in this action. Section 7.10(I)(a) of the Bankruptcy Plan provided for the creation of a Litigation Trust. Thus, Plaintiff was created pursuant to the provisions of the Bankruptcy Plan, and its authority to pursue the Federal Claims derived directly from the Bankruptcy Plan. Therefore, as in *Rahl*, 316 B.R. 127, Plaintiff's State Claims "relate to" the Bankruptcy Plan and this Court has subject matter jurisdiction over those claims.

**c.    The cases cited by Defendants are Factually Inapposite and Irrelevant**

Defendants relying on *Binder*, 372 F.3d 154, argue that Plaintiff's State Claims lack subject matter jurisdiction. However, *Binder* is factually inapposite to the present case.

In *Binder*, the court addressed whether a state law cause of action which arose post-confirmation and was brought by a litigation trust against outside auditors hired by the litigation trust, "arose under" or "related to" the bankruptcy case. The court was faced with a single state law claim against a third party for conduct which occurred post-confirmation. By contrast, in the present case, Plaintiff has brought three causes of action which "arise under" Title 11 (the Federal Claims), and six causes of action arising under state law (the State Claims) which relate to the Federal Claims. The alleged conduct occurred while Defendants were officers and directors of the debtor, and which contributed significantly to the downward spiral of the Company which resulted in insolvency. Moreover, these causes of action, which arose pre-confirmation, are brought

pursuant to the explicit terms of the Bankruptcy Plan. Consequently, *Binder* provides no support for Defendants' argument.

The remaining cases which Defendants' rely on are inapposite and irrelevant. Defendants argue that *In re Haws*, 158 B.R. 965 (Bankr. S.D. Tex. 1993), presents a "close parallel to Plaintiff's allegations in this case." Motion, p. 12. However, even a superficial reading of *In re Haws* reveals that it is distinguishable. In *In re Haws*, the court examined whether "related to" subject matter jurisdiction existed over state law claims brought by a trustee against various third parties. The court, in concluding that it lacked subject matter jurisdiction, emphasized that "[n]o cause of action involving federal bankruptcy law is raised." By contrast, the present case asserts three causes of action which "arise under" Title 11 (the Federal Claims), and six causes of action which arise under state law (the State Claims) and relate to the Federal Claims, against Defendants for conduct which occurred while they were officers and directors of the debtor. Thus, unlike *In re Haws*, this Court is being asked to determine compliance with federal bankruptcy law.

The remaining cases include *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004) (examined whether "related to" bankruptcy jurisdiction existed over independent, non-derivative asbestos-related claims against non-debtors that were merely affiliated with debtor that filed for Chapter 11 protection); *Antico Vacca Technologies, Inc. v. Steel Technologies, Inc. (In re Gruppo Antico, Inc.)*, 2004 Bankr. Lexis 2162 (Bankr. D. Del Nov. 10, 2004) (examined whether third party indemnification complaint, which had no connection to bankruptcy, was "related to" bankruptcy case); *Shurgue v. Continental Airlines, Inc.*, 977 F. Supp. 280 (S.D. N.Y. 1997) (counterclaims, none of

which arose under Title 11, do not "relate to" bankruptcy proceeding). None of these cases remotely address the situation before this Court.

### 3.    Conclusion

A "dismissal [pursuant to Rule 12(b)(1)] is proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or…is wholly insubstantial and frivolous.' *Bell v. Hood*, 327 U.S. 678, 682 (1946)." The claim must be "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy" *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974); *See also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting *Bell* and County of *Oneidea* with approval). In their Motion, Plaintiff's have failed to meet this substantial burden.

Plaintiff has demonstrated that the Federal Claims arise under Title 11, which vests this Court with original jurisdiction. The State Claims share a close nexus to both the Bankruptcy Plan and the Federal Claims, and "relate to" a case under Title 11. Thus, pursuant to Title 28 U.S.C. § 1334(b), this Court has original jurisdiction over the State Claims.

### C.    THE COURT SHOULD RETAIN SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS

#### 1.    The State Claims Arise Out of the Same "Case or Controversy" as the Federal Claims

Even if this Court determines that it lacks original jurisdiction over the State Claims, the Court should retain supplemental jurisdiction over the State Claims. Pursuant to 28 U.S.C. §1367(a), "in any action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims

that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution." To exercise supplemental jurisdiction, a district court need only find that (1) the "claims for review…are legal "claims," in the sense that that term is generally used in this context to denote a judicially cognizable cause of action;" and (2) the state and federal claims "derive from a common nucleus of operative fact…" *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). "That is all the statute requires to establish supplemental jurisdiction." *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 165-66 (1997).

In the present case, the Amended Complaint alleges a fraudulent conveyance claim which also supports Plaintiff's claim for breach of their fiduciary duty, waste of corporate assets, and aiding and abetting. For example, Plaintiff's First Claim for Relief for Breach of Fiduciary Duties against the Directors and Officers alleges breaches by the Directors and Officers by, "among other things…(d) failing to preserve, maximize, and not dissipate the assets for the benefit of the Company and its creditors,…(g) making transfers for the benefits of insiders,…and (j) wasting corporate assets." Similarly, Plaintiff's Second Claim for Relief for Breach of Fiduciary Duties under the "Trust Fund Doctrine against the Directors and Officers alleges breaches by the Directors and Officers by, "among other things……(d) failing to preserve, maximize, and not dissipate the assets for the benefit of the Company and its creditors,…(g) making transfers for the benefits of insiders,…and (j) wasting corporate assets." Counts III through V contain identical allegations.

The State Claims and the Federal Claims share a common nucleus of operative facts. The evidence which will be introduced to establish that Defendants coordinated the fraudulent conveyances will be the same evidence that will establish that Defendants breached their fiduciary duties and wasted corporate assets. *See e.g. St. Luke's Hosp. of Bethlehem, Inc. v. O'Leary*, 1994 WL 672629 (E.D. Pa. Nov. 29, 1994) (the "federal claim arises under the trademark laws of the United States. The evidence needed to resolve this claim substantially overlaps with the evidence relevant to many of St. Luke's other claims. Therefore, the court will exercise supplemental jurisdiction over all of the claims in this case.") Defendants expressly recognize this in their Motion.

According to Defendants, "Plaintiff's proof of the State Law Claims will (at least presumably) entail proof of...individual actions that breached fiduciary duties, were conspiratorial, or were wasteful..." Motion, pp.14-15. The conveyances which Defendants received fraudulently when they were acting as officers and directors of the Debtor are direct evidence of Defendants' individual actions that breached fiduciary duties, were conspiratorial, and were wasteful. For example, Plaintiff's First Claim for Relief for Breach of Fiduciary Duties against the Directors and Officers alleges breaches by the Directors and Officers by, "among other things...(d) failing to preserve, maximize, and not dissipate the assets for the benefit of the Company and its creditors,...(g) making transfers for the benefits of insiders,...and (j) wasting corporate assets." Consequently, by Defendants' own logic, Plaintiff's State Claims are part of the same "case or controversy" as Plaintiff's Federal Claims. Therefore, this Court "should exercise" supplemental jurisdiction over Plaintiff's State Claims.

## 2.    The State Claims do not Predominate

Contrary to Defendants contention, the State Claims, which arise out of the same "case or controversy" as the Federal Claims, do not predominate over the Federal Claims, and provide further support for the Court to exercise supplemental jurisdiction over these claims. "As we have noted, the 'substantially predominates' standard of [28 U.S.C.] §1367(c)(2) comes from [*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966)]. It is important to recognize that this standard was fashioned as a **limited exception** to the operation of the doctrine of [supplemental] jurisdiction—a doctrine that seeks to promote judicial economy, convenience, and fairness to litigants by litigating in one case all claims that arise out of the same nucleus of operative fact. When a district court exercises its discretion not to hear state claims under §1367(c)(2), the advantages of a single suit are lost. For that reason, §1367(c)(2)'s authority should be invoked only where there is an important countervailing interest to be served by relegating state claims to the state court." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995) (emphasis added).

Defendants also argue that the State Claims predominate over the Federal Claims in sheer number and this "provides a powerful reason for the Court not to exercise supplemental jurisdiction over them…" Motion, p.17. This argument has been rejected by the Third Circuit: "[t]he 'substantially predominate' standard, however, is not satisfied simply by a numerical count of the state and federal claims the plaintiff has chosen to assert on the basis of the same set of facts. An analysis more sensitive to the relevant interests is required." *Borough of West Mifflin*, 45 F.3d at 789.   This Court should likewise reject this argument.

a.    **Defendants Can Not Establish That the State Law Claims Predominate Under Third Circuit Law**

According to the Third Circuit, for purposes of Title 28 U.S.C. §1367(c)(2), there are only three ways in which state law claims can be found to predominate: (1) when the quantity of evidence supporting the state claims is substantially greater than and irrelevant to the evidence supporting the federal claims; (2) when the scope of the issues raised by the state law claims are more important, more complex, more time consuming, or, in any other way, more significant than the federal claims; or (3) when the remedy sought on the state claims is more comprehensive than the remedy sought on the federal claims. *Borough of West Mifflin*, 45 F.3d at 789-90.

In this case, there is an inseparable relationship between the State Claims and the Federal Claims. The Amended Complaint alleges an interdependent relationship between claims. For example, Plaintiff's Second Claim for Relief for Breach of Fiduciary Duties under the "Trust Fund Doctrine against the Directors and Officers alleges breaches by the Directors and Officers by, "among other things……(d) failing to preserve, maximize, and not dissipate the assets for the benefit of the Company and its creditors,…(g) making transfers for the benefits of insiders,…and (j) wasting corporate assets." Counts I, and II through V, the State Claims, contain identical allegations. Again, the same evidence that will be introduced to establish the Federal Claims will also be introduced to establish Plaintiff's State Claims. Therefore, the quantity of evidence supporting the Federal Claims is substantial and is relevant and necessary to support Plaintiff's State Claims. In fact, it is a significant part of the evidence supporting the State Claims. Accordingly, Defendants cannot satisfy the first predomination test.

Second, there is nothing in the Amended Complaint suggesting that the issues presented by the State Claims are more complex or significant than the Federal Claims. There is a significant overlap between the issues raised in the State Claims and the issues raised in the Federal Claims and a separation of these issues would be both difficult and improper. Moreover, the State Claims do not present novel causes of action. Rather, they are well-established causes of action for which Delaware has a clear, highly developed case law. Accordingly, Defendants cannot satisfy the second predomination test. Finally, the remedy sought on the State Claims is identical to the remedy sought on the Federal Claims. Thus, Defendants cannot satisfy the third predomination test.

> **b.    The Cases Defendants Cite To Oppose Supplemental Jurisdiction Are Inapposite**

The cases Defendants cite in support of their argument that the Court should not exercise supplemental jurisdiction over the State Claims are inapposite.[6] For example, in *De Asencio v. Tyson Foods*, 342 F.3d 301 (3d Cir. 2003), the court declined to exercise supplemental jurisdiction based on a technicality which is not present in the instant case. The *De Asencio* court was concerned that the plaintiffs, who had brought class action claims under the federal Fair Labor Standards Act and the state Wage Payment and Collection Law, were utilizing the state claim, which allowed for an opt-out class, to avoid the strictures of the federal claim, which required an opt-in class. Since the state opt-out class was going to be significantly larger than the federal opt-in class, and the state claim also raised a novel issue which had never been addressed by the state courts, the court declined to exercise supplemental jurisdiction over the state claims. By contrast,

---

[6] It appears that Defendants cite cases from across the country where the court declined to exercise supplemental jurisdiction because the state claims predominated over federal claims, without any regard for how those cases related to the allegations contained in the Amended Complaint.

the present case raises none of the concerns raised in *De Asencio* and is, therefore, factually irrelevant to this Court's determination.

In *Martin v. Philadelphia Facilities Management Corp.*, 2004 WL 1628922 (E.D. Pa. 2004), the court found that three state law claims for wrongful termination, breach of contract, and defamation, predominated over a single federal claim for violation of due process because: (1) evidence relating to the due process claim would be minimal, consisting only of testimony concerning the formal process accorded to the plaintiff prior to termination, versus the evidence regarding the other claims, which would require testimony on such issues as corporate governance, employment contracts, and third-party payments; (2) the scope of the state law issues far exceeded that of the due process claim because the former involved application of state tort and contract doctrines, while the federal claim turned on application of the well-defined technical requirements imposed on government employers by the Due Process Clause; and (3) the plaintiff's remedy for his due process claim would be limited to either a hearing or nominal compensation for being deprived of such a hearing, versus the potentially significant damages the plaintiff could have received if he were to prevail on his wrongful termination, breach-of-contract, or defamation claims. By contrast, in the present case in which: (1) there are three significant federal causes of action alleged, and there is considerable overlap in the evidence necessary to prove the Federal Claims and the State Claims; (2) the scope of the State Claims significantly overlaps with the scope of the Federal Claims, as demonstrated above, while the State Claims concern well defined issues of Delaware state law; and (3) the remedies sought for both the Federal Claims and the State Claims are the same.

The remaining cases cited by Defendants are also inapposite. *See e.g. Simmons v. Johnson Curney & Fields, P.C.*, 205 B.R. 834, 846 (W.D. Tx. 1997) (conclusory finding of predomination of state law legal malpractice claims over bankruptcy- related legal malpractice claims with no analysis whatsoever); *Youngblood Group v. Lufkin Fed. Savings and Loan Assoc.*, 932 F. Supp. 859, 870-71 (E.D. Tx. 1996) (declining to exercise supplemental jurisdiction over state claim because lone federal claim was dismissed); *Occunomix International, LLC v. North Ocean Ventures, Inc.*, 2003 WL 22240660, *1 (S.D.N.Y. Sept. 30, 2003) finding predomination, on the plaintiff's motion to dismiss its own claims, of 12 state law claims describing a multitude of complex business torts as well as a religious discrimination claim over a single federal claim, which was described in four paragraphs (less than one page) of a 115-paragraph (50-page) complaint, and regards allegations that defendants deleted some e-mails from a database.); *Freer v. Mayer*, 796 F. Supp. 89, 94 (S.D.N.Y. 1992) (declining to exercise supplemental jurisdiction over state claim because lone federal claim was dismissed, pursuant to Title 28 U.S.C. §1367(c)(3));[7] *PHP Liquidating LLC v. Robbins*, 291 B.R. 592 (D. Del. 2003) (court does not even address the issue of supplemental jurisdiction); *Johnson v. Cullen*, 925 F.Supp. 244 (D. Del. 1996) (cited by Defendants for the proposition that the State Claims are state law issues, despite the fact that this decision does not even discuss that issue, nor does it address the issue of predomination).

      c.      **The State Law Claim Should Not Be Relegated to State Court**

Defendants also argue that, since the State Claims present fundamental issues of state law, they should be addressed in state court. Motion, p.19. However, this argument

---

[7] In their Motion, Defendants claim that supplemental jurisdiction was not exercised because the state claims predominated over the federal claim.

ignores the basis for the supplemental jurisdiction statute. If a party is able to avoid supplemental jurisdiction because the state claims present fundamental issues of state law, Title 28 U.S.C. §1367 would be rendered a nullity. The cases Defendants cite in support of this argument have nothing to do with this issue. For example, while the court in *Freer*, 796 F. Supp. at 94, stated that "the content and extent fiduciary duties, corporate waste, and the business judgment rule are fundamental issues of state law," the very next sentence states that, "[i]n addition, there is no overlap with the content of the alleged [federal claims]." By contrast, in the present case there is significant overlap between the State Claims and the Federal Claims. Defendants argue that *Freer* applies to this Court's determination of Title 28 U.S.C. §1367(c)(2). However, in *Freer*, the court's decision to decline to exercise supplemental jurisdiction over the state claims was made pursuant to Title 28 U.S.C. §1367(c)(3). Furthermore, the basis for *Freer* court's decision was that the federal claim had been dismissed, whereas, in the present case, there are three active federal claims. Thus, any discussion in *Freer* concerning the nature of the state claims was irrelevant and inapplicable to this Court's determination.

Defendants' final argument is that since they have contemporaneously filed a Motion to Dismiss the Federal Claims, which they presume the Court will grant, they argue that they are entitled to have the Court decline to exercise its discretionary power of supplemental jurisdiction. Motion, pp.19-20. Since the Court has not addressed the Motion to Dismiss the Federal Claims, this issue is premature and should not be entertained at this juncture.

Since Defendants have not demonstrated that the State Claims predominate over the Federal Claims, this Court should exercise its discretion to retain supplemental jurisdiction over the State Claims pursuant to Title 28 U.S.C. §1367(a).

### 3. Judicial Economy Weighs in Favor of this Court Retaining Supplemental Jurisdiction

"It has been consistently recognized that [supplemental jurisdiction] is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of juridical economy, convenience and fairness to litigants." *Gibbs*, 383 U.S. at 726. Therefore, in determining whether to exercise supplemental jurisdiction over the State Claims, this Court should consider the issues of judicial economy, convenience, and fairness. Here, the Federal Claims are within the original jurisdiction of this Court and, therefore, must be adjudicated by the Court. The alternative to exercising supplemental jurisdiction over the State Claims would result in two proceedings, one in state court and one in federal court, involving the same Plaintiff and Defendants, concerning Federal and State Claims that overlap significantly with one another and which require similar evidence to prove. Such an unjust and inefficient result should be rejected by this Court. As the court observed in *Borough of West Mifflin*, 45 F.3d at 787, "the result of an exercise of discretion under §1367(c) in circumstances like those before the district court would have been two parallel proceedings, one in federal court and one in the state system, and a district court cannot properly exercise its discretion under § 1367(c) without taking that fact into account."

### 4. Conclusion

Plaintiff's State Claims are part of the same "case or controversy" as Plaintiff's Federal Claims, and do not predominate over the Federal Claims. Furthermore, judicial

economy, efficiency, convenience and fairness support this Court exercising supplemental jurisdiction over the State Claims.

**III.**    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Joint Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Dated:    April 18, 2005                    THE BAYARD FIRM

                                    By:    _____
                                           Jeffrey M. Schlerf (No. 3047)
                                           Thomas H. Kovach (No. 3964)
                                           Eric M. Sutty (No. 4007)
                                           222 Delaware Avenue, Suite 900
                                           Wilmington, Delaware 19801
                                           (302) 655-5000

                                                  and

                                           STRAUSS & TROY
                                           Richard S. Wayne
                                           Thomas P. Glass
                                           John M. Levy
                                           The Federal Reserve Building
                                           150 E. Fourth Street
                                           Cincinnati, Ohio 45202-4018
                                           (513) 621-2120
                                           Fax: (513) 629-9426

                                           Co-Counsel to the IT Litigation Trust