# Exhibit 1

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | ) Chapter 11 |
|  | ) |
| THE IT GROUP, INC., | ) Case No. 02-10118 (MFW) |
| *et al.*, | ) |
|  | ) (Jointly Administered) |
| Debtors. | ) |
|  | ) |

---

**FIRST AMENDED JOINT CHAPTER 11 PLAN
FOR THE IT GROUP, INC. AND ITS AFFILIATED DEBTORS
PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Dated: February 9, 2004

SKADDEN, ARPS, SLATE
MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
(302) 651-3000

ATTORNEYS FOR THE DEBTORS.

WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
(305) 371-2700

THE BAYARD FIRM
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000

ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS

Table of Contents

Page

ARTICLE I. DEFINITIONS AND INTERPRETATION ...................................................................2
   1.1   Definitions. .................................................................................................................2
   1.2   Interpretation ...........................................................................................................11
   1.3   Application of Definitions and Rules of Construction Contained in the Bankruptcy Code. .....11
   1.4   Other Terms. ...........................................................................................................11
   1.5   Appendices and Plan Documents .............................................................................12
ARTICLE II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ..............................12
   2.1   Claims and Equity Interests Classified. ...................................................................12
   2.2   Administrative Claims and Tax Claims. ...................................................................12
   2.3   Claims and Equity Interests. ....................................................................................12
   2.4   Consolidated Plan. ...................................................................................................12
   2.5   Separate Classification of Secured Claims. ..............................................................12
ARTICLE III. IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS ..........12
   3.1   Unimpaired Classes of Claims and Equity Interests. ...............................................12
   3.2   Impaired Classes of Claims and Equity Interests. ....................................................13
   3.3   Impairment Controversies. .......................................................................................13
ARTICLE IV. PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE
PLAN ..................................................................................................................................13
   4.1   Treatment of Claims and Equity Interests. ..............................................................13
   4.2   Litigation Trust Alternative. .....................................................................................15
ARTICLE V. PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN ..........15
   5.1   Treatment of Administrative Claims. .......................................................................15
   5.2   Treatment of Tax Claims. ........................................................................................16
ARTICLE VI. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE
CLASSES OF CLAIMS OR EQUITY INTERESTS ...................................................................16
   6.1   Classes Entitled to Vote. .........................................................................................16
   6.2   Class Acceptance Requirement. ...............................................................................16
   6.3   Confirmation Without Acceptance by All Impaired Classes. ....................................16
ARTICLE VII. MEANS FOR IMPLEMENTATION OF THE PLAN. .............................................17
   7.1   Substantive Consolidation of Debtors. .....................................................................17
   7.2   IT Group Subsidiary Guarantees. .............................................................................17
   7.3   Merger and Dissolution of IT Group Corporate Entities. .........................................17
   7.4   The Plan Settlement ................................................................................................17
   7.5   Shaw Stock. .............................................................................................................18
   7.6   Formation of Reorganized IT Group. .......................................................................18
   7.7   Oversight Committee. ..............................................................................................18
   7.8   Plan Administrator. ..................................................................................................20
   7.9   Chief Litigation Officer ...........................................................................................21
   7.10  Trusts. .....................................................................................................................22
   7.11  Vesting of Assets of Debtors. ..................................................................................28
   7.12  Reconstitution of Board of Directors. ......................................................................28
   7.13  The New Charter and the New By-Laws. .................................................................28
   7.14  Cancellation of Instruments and Agreements. ..........................................................28
   7.15  Expenses Incurred and Claims of the Indenture Trustee. ..........................................28
   7.16  Causes of Action ....................................................................................................29
   7.17  Approval of the Plan Settlement ..............................................................................29
   7.18  Employee Matters ...................................................................................................29
   7.19  Special Provisions Regarding Insured Claims. .........................................................29
   7.20  Appointment of the Disbursing Agent. ....................................................................30
   7.21  Sources of Cash for Plan Distributions. ...................................................................30
   7.22  Sources of Cash for Implementation of Plan. ...........................................................30

MIAMI 455833 v2 (2K)

Table of Contents
(continued)

| | | Page |
|---|---|---|
| 7.23 | Investment of Funds Held by the Disbursing Agent; Tax Reporting by the Disbursing Agent | 30 |
| 7.24 | Distributions under the Plan | 30 |
| 7.25 | Timing of Distributions under the Plan | 30 |
| 7.26 | Address for Delivery of Distributions under the Plan | 31 |
| 7.27 | Time Bar to Cash Payments | 31 |
| 7.28 | Manner of Payment under the Plan | 31 |
| 7.29 | Expenses Incurred on or after the Effective Date and Claims of the Disbursing Agent | 31 |
| 7.30 | Fractional Distributions | 31 |
| 7.31 | Corporate Action | 31 |
| 7.32 | Effectuating Documents and Further Transactions | 32 |
| ARTICLE VIII. | PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS | 32 |
| 8.1 | Objection Deadline | 32 |
| 8.2 | Prosecution of Contested Claims | 32 |
| 8.3 | Claims Settlement Guidelines | 32 |
| 8.4 | No Distributions Pending Allowance | 32 |
| 8.5 | Distributions After Allowance | 33 |
| 8.6 | Estimation of Claims | 33 |
| ARTICLE IX. | CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE | 33 |
| 9.1 | Conditions Precedent to Confirmation | 33 |
| 9.2 | Conditions Precedent to the Occurrence of the Effective Date | 34 |
| 9.3 | Waiver of Conditions | 34 |
| 9.4 | Effect of Failure of Conditions to Effective Date | 34 |
| ARTICLE X. | THE DISBURSING AGENT | 34 |
| 10.1 | Powers and Duties | 34 |
| 10.2 | Distributions | 34 |
| 10.3 | Exculpation | 34 |
| ARTICLE XI. | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 35 |
| 11.1 | Assumption of Executory Contracts and Unexpired Leases | 35 |
| 11.2 | Rejection of Executory Contracts and Unexpired Leases | 35 |
| 11.3 | Claims Arising from Rejection or Termination | 36 |
| ARTICLE XII. | RETENTION OF JURISDICTION | 36 |
| ARTICLE XIII. | MISCELLANEOUS PROVISIONS | 37 |
| 13.1 | Payment of Statutory Fees | 37 |
| 13.2 | Discharge of the Debtors | 37 |
| 13.3 | Third Party Agreements; Subordination | 38 |
| 13.4 | Dissolution of Committee | 38 |
| 13.5 | Exculpation | 38 |
| 13.6 | Title to Assets; Discharge of Liabilities | 38 |
| 13.7 | Surrender and Cancellation of Instruments | 39 |
| 13.8 | Notices | 39 |
| 13.9 | Headings | 40 |
| 13.10 | Governing Law | 41 |
| 13.11 | Expedited Determination | 41 |
| 13.12 | Exemption from Transfer Taxes | 41 |
| 13.13 | Notice of Entry of Confirmation Order and Relevant Dates | 41 |
| 13.14 | No Interest or Attorneys' Fees | 41 |
| 13.15 | Modification of the Plan | 41 |
| 13.16 | Revocation of Plan | 41 |
| 13.17 | Setoff Rights | 42 |
| 13.18 | Compliance with Tax Requirements | 42 |

ii

Table of Contents
(continued)

| | | Page |
|---|---|---|
| 13.19 | Injunctions | 42 |
| 13.20 | Term of Injunctions or Stays | 42 |
| 13.21 | Injunction Against Interference With Chapter 11 Plan | 42 |
| 13.22 | Officers and Directors | 43 |
| 13.23 | Binding Effect | 43 |
| 13.24 | Severability | 44 |

iii

MIAMI 453533 v2 (2K)

**A006**

The IT Group, Inc. and its affiliated debtors and debtors in possession in the above-captioned jointly administered chapter 11 cases and the Official Committee of Unsecured Creditors hereby collectively and jointly propose the following first amended joint chapter 11 plan:

## ARTICLE I.
### DEFINITIONS AND INTERPRETATION

1.1    Definitions.

The capitalized terms used herein shall have the respective meanings set forth below:

(a)    "Administrative Bar Date Order" means the Final Order dated November 24, 2003 fixing January 15, 2004 as the last day to file certain administrative expense claims against the Debtors that arose, accrued, or otherwise became due and payable on and between January 16, 2002 and November 15, 2003 in the Chapter 11 Cases.

(b)    "Administrative Claim" means (i) a Claim incurred by a Debtor (or its Estate) on or after the Petition Date and before the Effective Date for a cost or expense of administration in the Chapter 11 Cases entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, Cure Claims, Fee Claims and Statutory Fees, if any, (ii) reasonable pre-Committee fees and expenses of White & Case LLP up to $53,000 and The Bayard Firm up to $11,000 as counsel to the ad hoc committee of holders of the Old 11 ¼% Notes in connection with these Chapter 11 Cases, (iii) reasonable fees and expenses of Raymond Pompe and Charles Brewer up to $60,000 in the aggregate as consultants to the Committee, and (iv) reasonable fees and expenses of counsel to the Agent incurred through the Effective Date.

(c)    "Administrative Reserve" means $1,500,000 of the Cash on hand in the Estates as of the Effective Date to fund all reasonable costs and expenses incurred after the Effective Date associated with implementation and administration of the Plan, including, without limitation, prosecution of Causes of Action of the Debtors and, if applicable, the administrative costs of the Litigation Trust.

(d)    "Administrative Surcharge" means the surcharge, if any, of the Litigation Recoveries to the extent necessary to fund implementation and administration of the Plan after the Effective Date (including, if applicable, the Litigation Trust) in excess of the Administrative Reserve in accordance with Section 7.22 of the Plan.

(e)    "Affiliate" means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person were a debtor in a case under the Bankruptcy Code.

(f)    "Agent" means Citicorp USA, Inc. in its capacity as administrative agent for the Prepetition Lenders under the Prepetition Credit Facility.

(g)    "Allowed" when used

(i)    with respect to any Claim, except for a Claim that is an Administrative Claim, means such Claim (A) to the extent it is not a Contested Claim; (B) to the extent it is allowed pursuant to any stipulation or agreement that has been approved by Final Order; (C) to the extent it is a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (I) as to which the Objection Deadline passed and no objection has been filed, unless the Bankruptcy Court determines that such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court; or (II) as to which an objection was filed by the Objection Deadline, to the extent allowed by a Final Order; or (D) which otherwise becomes an Allowed Claim as provided in the Plan; provided, however, that a Claim which is not listed in the Schedules and which is not the subject of a proof of claim filed timely with the Bankruptcy Court shall not be an Allowed Claim except as otherwise expressly ordered by the Bankruptcy Court; and

**A007**

(ii)    with respect to an Administrative Claim, means an Administrative Claim that has become "Allowed" pursuant to the procedures set forth in Section 5.1(c) of the Plan.

(h)    "Assets" means all of the Debtors' right, title and interest of any nature in property, wherever located, as specified in section 541 of the Bankruptcy Code.

(i)    "Available Proceeds" means, at any time, the amount of Cash on hand in the Estates, Reorganized IT Group and, if applicable, the Litigation Trust, on and after the Effective Date, including, without limitation, any recovery from the Sevenson request for equitable adjustment to the U.S. Army Corps of Engineers, excluding (i) the Administrative Reserve (but only to the extent used to fund all reasonable costs and expenses incurred after the Effective Date associated with implementation and administration of the Plan), (ii) the Administrative Surcharge, if any, (iii) the IT Environmental Liquidating Trust Funding, (iv) the Environmental Liquidating Trust Assets, (v) Litigation Recoveries, (vi) the monies maintained in a segregated interest-bearing account on behalf of Rochelle Bookspan (approximately $500,000) pursuant to the Final Order of the Bankruptcy Court approving the Shaw Sale, but only so long as an order of the Bankruptcy Court or other court of competent jurisdiction requires that the monies in such account be segregated for the benefit of Ms. Bookspan, it being understood that thereafter such monies shall constitute Available Proceeds, and (vii) an amount sufficient to pay in Cash in full all Allowed Non-Lender Secured Claims, Allowed Administrative Claims, Allowed Tax Claims and Allowed Priority Claims,

(j)    "Avoidance Actions" means all Causes of Action of the Debtors and/or their Estates that arise under chapter 5 of the Bankruptcy Code.

(k)    "Avoidance Action Recoveries" means, at any time, the amount of Cash or other consideration obtained by or paid to the Estates, Reorganized IT Group and, if applicable, the Litigation Trust, associated with any judgment, settlement or other disposition of Avoidance Actions, less (i) reimbursement to the Estates from the first proceeds of the Avoidance Action Recoveries of the filing fees associated with such Avoidance Actions, which moneys shall constitute and be distributed as Available Proceeds, and (ii) the Administrative Surcharge, if any.

(l)    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code and as applicable to the Chapter 11 Cases.

(m)    "Bankruptcy Court" means the Bankruptcy Court unit of the United States District Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Cases.

(n)    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and as applicable to the Chapter 11 Cases.

(o)    "Bar Date Order" means the Final Order dated May 24, 2002 fixing July 15, 2002 as the last day to file proofs of claim against the Debtors in the Chapter 11 Cases.

(p)    "Business Day" means any day on which commercial banks are open for business in New York, New York.

(q)    "Cash" means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America.

(r)    "Cash Collateral Orders" means, collectively, the orders of the Bankruptcy Court in the Chapter 11 Cases authorizing and approving the Debtors' use of cash collateral under the Prepetition Credit Facility.

(s)    "Causes of Action" means all claims, rights, actions, causes of action, including Avoidance Actions, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings,

**A008**

bonds. bills. specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments. whether known or unknown and whether asserted or unasserted

(t)    "Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code pending before the Bankruptcy Court with respect to each of the Debtors

(u)    "Chief Litigation Officer" means AlixPartners LLC or such other Person identified at or prior to the Confirmation Hearing and selected by the Committee (in consultation with the Agent).

(v)    "Claim" means (i) any right to payment from a Debtor, whether or not such right is known or unknown, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from a Debtor, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or (iii) any right under section 502(h) of the Bankruptcy Code.

(w)    "Committee" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the Office of the United States Trustee in accordance with section 1102(a) of the Bankruptcy Code

(x)    "Committee Designees" means two individuals selected by the Committee to serve as members of the Oversight Committee from and after the Effective Date.

(y)    "Committee Lawsuit" means the adversary proceeding pending before the Bankruptcy Court in the Chapter 11 Cases, which was commenced by the Committee against certain of the Prepetition Lenders and styled <u>Official Committee of Unsecured Creditors vs. Citicorp USA, Inc.</u>, Adv. No. 02-04761 (MFW), as it may be amended from time to time.

(z)    "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

(aa)    "Confirmation Hearing" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, on confirmation of the Plan.

(bb)    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

(cc)    "Consent Order" means that certain consent order between IT Corporation and the State of California in <u>California v. International Technology Corp., No. 509105 (Super. Ct., June 27, 1989)</u>, as amended by stipulation, Sept. 30, 1999), pursuant to which the Debtors consent to certain terms under the California Hazardous Waste Control Act, which require, *inter alia*, closure and post-closure care of the Landfills as well as financial assurance with respect to those obligations.

(dd)    "Contested Claim" means a Claim (i) to the extent it is listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part; (ii) that is listed in the Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent the proof of claim amount exceeds the scheduled amount; (iii) that is not listed in the Schedules, but as to which a proof of claim has been filed with the Bankruptcy Court; or (iv) as to which an objection has been filed on or before the Objection Deadline, <u>provided</u>, that a Claim that is Allowed by Final Order or pursuant to the Plan on or before the Effective Date shall not be a Contested Claim.

(ee)    "Contested Unsecured Claim" means an Unsecured Claim that is a Contested Claim.

(ff)    "Contested Unsecured Claims Reserve" means any Distribution retained on account of a Contested Unsecured Claim.

A009

(gg)    "Cure Claims" means all amounts required to be paid by any Debtor pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code as a consequence of the assumption pursuant to Article XI of the Plan of any executory contract or unexpired lease of any Debtor, excluding any amounts to be paid by Shaw in accordance with the Shaw Sale.

(hh)    "Debtors" means, collectively, the IT Group and each of its affiliates listed on Exhibit E to the Disclosure Statement, each in its respective capacity as a debtor and a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code in the Chapter 11 Cases.

(ii)    "Disallowed" when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order.

(jj)    "Disbursing Agent" means Reorganized IT Group, the Litigation Trust Trustee or such other Person identified at or prior to the Confirmation Hearing and selected by the Committee and the Agent, in which capacity, it shall (i) make the Distributions contemplated under the Plan, the Confirmation Order, or any other relevant Final Order; (ii) perform any other act or task that is or may be delegated to the Disbursing Agent under the Plan; and (iii) perform any other act or task necessary or appropriate to implement and administer the Plan on behalf of the Estates.

(kk)    "Disclosure Statement" means the disclosure statement respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

(ll)    "Distribution" means the payment or distribution under the Plan of property or interests in property to any holder of an Allowed Claim. Unless otherwise agreed by the holder of an Allowed Claim, any payment in Cash to be made by the Disbursing Agent shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank.

(mm)    "Distribution Date" means, with respect to any Claim, (i) the Effective Date, if such Claim is then an Allowed Claim, (ii) the first Business Day occurring three (3) full months after the immediately preceding Distribution Date after the date such Claim becomes Allowed, if not Allowed on the Effective Date and (iii) such other dates that the Oversight Committee determines in its reasonable discretion that Distribution to the holders of Allowed Claims should be made in accordance with the Plan.

(nn)    "DTSC" means the California Department of Toxic Substances Control.

(oo)    "Effective Date" means the date selected by the Plan Proponents (in consultation with the Agent) which is no later than thirty (30) days after all of the conditions specified in Section 9.2 of the Plan have been satisfied or waived.

(pp)    "Environmental Unsecured Claim" means an Unsecured Claim against any Debtor arising under, related to or in connection with alleged contamination under the federal or state environmental laws or regulations.

(qq)    "Equity Interest" means any ownership or equity interest in any of the Debtors, including without limitation, interests evidenced by common or preferred stock, warrants, options, limited liability company membership interests or other rights to purchase any ownership or equity interest in any of the Debtors.

(rr)    "Estate" means the estate of any Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

(ss)    "Estate Causes of Action" means Causes of Action of the Debtors and/or their Estates (other than the Avoidance Actions).

A010

(tt)     "Estate Cause of Action Recoveries" means, at any time, the amount of Cash or other consideration obtained by or paid to the Estates, Reorganized IT Group and, if applicable the Litigation Trust, associated with any judgment, settlement or other disposition of Estate Causes of Action, less the Administrative Surcharge, if any.

(uu)     "Estimated Claims Order" means any order of the Bankruptcy Court estimating any Claim or the aggregate amount of all Claims in any class created under the Plan to aid in the confirmation of the Plan, or the calculation of Distributions under the Plan.

(vv)     "Fee Application" means an application for allowance and payment of a Fee Claim.

(ww)     "Fee Claim" means a Claim of a Professional Person under sections 330 or 503 of the Bankruptcy Code for final allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Cases from the Petition Date to the Effective Date.

(xx)     "Final Decree" means the final decree of the Bankruptcy Court entered in the Chapter 11 Cases pursuant to Bankruptcy Rule 3022.

(yy)     "Final Order" means (i) an order or judgment of the Bankruptcy Court or any other court or adjudicative body having jurisdiction over a proceeding or matter as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or (ii) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

(zz)     "General Unsecured Claim" means an Unsecured Claim other than a Litigation Unsecured Claim, a Securities Litigation Claim and a Subordinated Claim.

(aaa)     "Indenture Trustee" means the Bank of New York, as indenture trustee under the Old Notes.

(bbb)     "Indemnified CLO Parties" means those parties identified in Section 7.9 of the Plan.

(ccc)     "Indemnified ELT Parties" means those parties identified in Section 7.10(II) of the Plan.

(ddd)     "Indemnified OC Parties" means those parties identified in Section 7.7 of the Plan.

(eee)     "Indemnified PA Parties" means those parties identified in Section 7.8 of the Plan.

(fff)     "Insurance Company" means any insurance company that provides any insurance, indemnification, reimbursement, contribution or other payment or similar coverage to any of the Debtors, Reorganized IT Group or, if applicable, the Litigation Trust, pursuant to an Insurance Policy.

(ggg)     "Insurance Policy" means the relevant policy of insurance issued by the applicable Insurance Company under which the Debtors, Reorganized IT Group, or, if applicable, the Litigation Trust, are insureds or beneficiaries of the coverage of any of the Debtors.

(hhh)     "Insured Claim" means any Claim against a Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution or other payment under a policy of insurance wherein a Debtor is an insured or beneficiary of the coverage of any of the Debtors.

**A011**

(iii)    "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS

(jjj)    "IRS" means the United States Internal Revenue Service.

(kkk)    "IT Group" means The IT Group, Inc., a Delaware corporation, as a debtor and debtor in possession in jointly administered Case No. 02-10118 (MFW)

(lll)    "IT Environmental Liquidating Trust" means the trust to be established on the Effective Date pursuant to the Plan and the IT Environmental Liquidating Trust Agreement.

(mmm)    "IT Environmental Liquidating Trust Agreement" means the trust agreement to be entered into pursuant to the Plan to be filed as a Plan Document, under which the powers, duties and responsibilities of the IT Environmental Liquidating Trust shall be set forth.

(nnn)    "IT Environmental Liquidating Trust Assets" means the Assets of the Debtors which shall be transferred to the IT Environmental Liquidating Trust in accordance with the IT Environmental Liquidating Trust Agreement and Section 7 10(11) of the Plan.

(ooo)    "IT Environmental Liquidating Trust Funding" means $1,000,000 of the Cash on hand in the Estates as of the Effective Date to be transferred to the IT Environmental Liquidating Trust in accordance with the IT Environmental Liquidating Trust Agreement and Section 7.10(11) of the Plan.

(ppp)    "IT Environmental Liquidating Trustee" means Brian Fournier or such other Person identified at or prior to the Confirmation Hearing and selected by the Committee and the Debtors, provided that the DTSC does not object.

(qqq)    "Landfills" means those certain four landfills in Northern California known as Montezuma Hills, Benson Ridge, Vine Hill Complex, and Panoche owned and maintained by the Debtors IT Corporation, IT Lake Herman Road, LLC, and IT Vine Hill, LLC, which are the subject of the Consent Order.

(rrr)    "Lender Claim" means a Claim of the Agent and the Prepetition Lenders under the Prepetition Credit Facility and Cash Collateral Orders.

(sss)    "Lender Designees" means two individuals selected by the Agent and/or the Prepetition Lenders to serve as members of the Oversight Committee from and after the Effective Date.

(ttt)    "Litigation Recoveries" means, collectively, the Avoidance Action Recoveries and the Estate Cause of Action Recoveries.

(uuu)    "Litigation Trust" means the litigation trust described in Section 7.10(1) of the Plan, to be formed at the election of the Agent (on behalf of the Prepetition Lenders) and the Committee.

(vvv)    "Litigation Trust Agreement" means the agreement governing the Litigation Trust, dated as of the Effective Date, to be filed as a Plan Document.

(www)    "Litigation Trust Alternative" shall have the meaning ascribed to such term in Section 4.2 of the Plan.

(xxx)    "Litigation Trust Assets" means the Avoidance Actions, Estate Causes of Action, an amount of cash reasonably sufficient to administer the Litigation Trust and such other rights and/or assets as the Agent (on behalf of the Prepetition Lenders) and the Committee designate (including, without limitation, the Administrative Reserve, subject to the obligation of the Litigation Trust to utilize such reserve to satisfy the claims and expenses for which such reserve was established, and any assets the sale, disposition or collection of which,

A012

after the Effective Date, would give rise to Available Proceeds), and the earnings and proceeds therefrom Litigation Trust Assets shall not include any IT Environmental Liquidating Trust Assets

(yyy)    "Litigation Trust Trustee" means the Plan Administrator and the Chief Litigation Officer, as co-trustees, each having substantially the same responsibilities vis-à-vis the Litigation Trust as they have, or would have had, vis-à-vis Reorganized IT Group. The designation of the Litigation Trust Trustee shall be effective on the Effective Date without the need for a further order of the Bankruptcy Court.

(zzz)    "Litigation Unsecured Claim" means (i) an Environmental Unsecured Claim; (ii) a Tort Unsecured Claim, and (iii) any other Unsecured Claim, except a Securities Litigation Claim and a Subordinated Claim, against any Debtor that was asserted in any court, tribunal or proceeding prior to the Petition Date.

(aaaa)    "LLCs" means IT Vine Hill, LLC and the IT Lake Herman Road, LLC, which own the real property containing two of the Landfills.

(bbbb)    "New By-Laws" means the by-laws of Reorganized IT Group, as amended and restated in accordance with Section 7.13 of the Plan. The New By-Laws shall be in substantially the form filed with the Bankruptcy Court as a Plan Document

(cccc)    "New Charter" means the certificate of incorporation of Reorganized IT Group, as amended and restated in accordance with Section 7.13 of the Plan. The New Charter shall be in substantially the form filed with the Bankruptcy Court as a Plan Document.

(dddd)    "New Common Stock" means the share of common stock of Reorganized IT Group to be authorized for issuance pursuant to the Plan, which share (upon issuance) shall evidence a 100% common ownership interest in Reorganized IT Group

(eeee)    "Non-Lender Secured Claim" means, excluding Lender Claims, (i) a Claim secured by a Lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the holder's interest in the collateral that secures payment of the Claim; (ii) a Claim that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (iii) a Claim allowed under the Plan as a Non-Lender Secured Claim.

(ffff)    "Northern District of California" means the United States District Court for the Northern District of California.

(gggg)    "Objection Deadline" means the deadline for filing objections to Claims as set forth in Section 8.1 of the Plan.

(hhhh)    "Old 11 ¼% Notes" means, collectively, the 11 ¼% Senior Subordinated Notes of the IT Group due 2009 in the aggregate principal amount of $225,000,000.

(iiii)    "Old 8% Notes" means, collectively, the 8% Subordinated Notes of the OHM Corporation due 2005 in the aggregate principal amount of $31,622,000.

(jjjj)    "Old Notes" means, collectively, the Old 11 ¼% Notes and the Old 8% Notes.

(kkkk)    "Oversight Committee" means the committee consisting of four members (which number may not be increased), two selected by the Committee and two selected by the Agent on behalf of the Prepetition Lenders, which shall oversee the administration and implementation of the Plan and the liquidation of the Debtors' Assets in accordance with the Plan.

**A013**

(llll)    "Oversight Committee Compensation" means the compensation disclosed at or prior to the Confirmation Hearing and agreed to by the Committee and the Agent to be paid to Oversight Committee members in accordance with Section 7.7 of the Plan

(mmmm)    "Person" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity that would fall within the definition assigned to such term in section 101(41) of the Bankruptcy Code.

(nnnn)    "Petition Date" means the date on which the Chapter 11 Cases were commenced, January 16, 2002.

(oooo)    "Plan" means this chapter 11 plan, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules to the foregoing, as the same may be in effect at the time such reference becomes operative.

(pppp)    "Plan ADR" means the alternative dispute resolution procedures to be filed with the Bankruptcy Court as a Plan Document, pursuant to which all Litigation Unsecured Claims shall be liquidated, unless the holder of a Litigation Unsecured Claim has obtained or seeks and obtains relief from the automatic stay or from the ADR Injunction (as defined in the Plan ADR) to prosecute its claim in a non-bankruptcy forum and does not consent to participate in the Plan ADR.

(qqqq)    "Plan Administrator" means AlixPartners LLC or such other Person identified at or prior to the Confirmation Hearing and selected by the Committee and the Agent.

(rrrr)    "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.5 of the Plan.

(ssss)    "Plan Proponents" means, collectively, the Debtors and the Committee.

(tttt)    "Plan Settlement" means the compromise and settlement between the Agent, the Prepetition Lenders, the Debtors, the Subsidiaries that are not Debtors, and the Committee (and its respective members) as set forth in Section 7.4 of the Plan.

(uuuu)    "Post Closure Insurance Policies" means the Debtors' interest in AIG Post Closure Policy 4762403 and AIG Post Closure Excess Policy 4760892, and any other insurance policies belonging to the Debtors at any time which provide coverage for post-closure costs at the Landfills.

(vvvv)    "Post-Confirmation Interest" means simple interest at the rate of 1.0% per annum or such other rate as the Bankruptcy Court may determine at the Confirmation Hearing is appropriate, such interest to accrue from the Distribution Date with respect to any Allowed Tax Claim.

(wwww)"Prepetition Credit Facility" means that certain Second Amended and Restated Credit Agreement dated as of March 7, 2000 between the Prepetition Lenders with Citicorp USA, Inc., as administrative agent and Fleet National Bank, N.A. as documentation agent and the institutions listed therein as co-agents, and certain of the Debtors, together with all documents, instruments, and agreements executed or entered into in connection therewith, and any amendments thereto

(xxxx)    "Prepetition Lenders" means those lenders who are parties to the Prepetition Credit Facility.

(yyyy)    "Priority Claim" means any Claim to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than the Lender Claims, Non-Lender Secured Claims, Administrative Claims, and Tax Claims.

(zzzz) "Professional Person" means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 330, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Cases

(aaaaa) "Pro Rata Share" means the proportion that the amount an Allowed Claim bears to the aggregate amount of all Claims in a particular class, including Contested Claims, but not including Disallowed Claims, (i) as calculated by the Disbursing Agent on or before any Distribution Date; or (ii) as determined by the Bankruptcy Court in an Estimated Claims Order, if such an order is sought and obtained

(bbbbb) "Reorganized IT Group" means, collectively, the Debtors as reorganized from and after the Effective Date pursuant to Article VII of the Plan

(ccccc) "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009.

(ddddd) "SEC" means the United States Securities and Exchange Commission

(eeeee) "Securities Litigation" means the following actions: (i) Civil Action No. 02-1927 pending in the United States District Court for The Western District of Pennsylvania, styled Thomas L. Payne, et al., v. Anthony J. Deluca, et al., (ii) Civil Action No. 03-0288 pending in the United States District Court for The Western District of Pennsylvania, styled Howard G. Clair, et al., v. Anthony J. DeLuca, et al.; and (iii) Civil Action No. 02-0886 pending in the District Court for the Western District of Pennsylvania, styled Staro Asset Management, LLC. v. Anthony J. DeLuca, et al.

(fffff) "Securities Litigation Claims" means any claim or Cause of Action against the Debtors, their predecessors or successors arising from rescission of a purchase or sale of the Old Notes or Equity Interests of any Debtor, or for damages arising from the purchase or sale of the Old Notes or Equity Interests of any Debtor, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a claim.

(ggggg) "Shaw" means The Shaw Group, Inc., or its designee.

(hhhhh) "Shaw Sale" means the sale of substantially all of the Assets of the Debtors to Shaw approved by order of the Bankruptcy Court dated April 25, 2002.

(iiiii) "Shaw Stock" means the common stock of Shaw received by the Debtors pursuant to the Shaw Sale.

(jjjjj) "Soose Loans" means, collectively, the loans made pursuant to certain loan agreements between IT Group and Harry Soose, Jr., dated July 1999 and May 2000.

(kkkkk) "Statutory Fees" means all fees payable by the Debtors pursuant to section 1930 of title 28 of the United States Code, that accrued prior to, on or after the Effective Date.

(lllll) "Subordinated Claims" means any Claim subordinated pursuant to a Final Order under section 510(c) of the Bankruptcy Code

(mmmmm) "Subsidiary" means any entity of which IT Group owns directly or indirectly all of the outstanding capital stock or limited liability company membership interests.

(nnnnn) "Tax Claim" means a Claim against any of the Debtors that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.

**A015**

(ooooo) "Tort Unsecured Claim" means an Unsecured Claim (other than an Environmental Unsecured Claim) against any Debtor for personal injury or property damage allegedly arising from the tortious actions or inactions of any of the Debtors, their agents or any other person.

(ppppp) "Unsecured Claim" means any Claim other than a Lender Claim, a Non-Lender Secured Claim, an Administrative Claim, a Priority Claim, or a Tax Claim

(qqqqq) "Voting Procedures Order" means the Final Order of the Bankruptcy Court approving procedures relating to the solicitation and tabulation of votes with respect to the Plan.

1.2    **Interpretation.**

Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

1.3    **Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.**

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

1.4    **Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

1.5    **Appendices and Plan Documents.**

All appendices to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. All Plan Documents shall be in a form reasonably acceptable to the Plan Proponents and the Agent. The Plan Documents (in substantially final form) shall be filed with the Clerk of the Bankruptcy Court not less than ten (10) days prior to the commencement of the Confirmation Hearing Holders of Claims and Equity Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address:

White & Case LLP<br>
200 South Biscayne Boulevard<br>
Miami, Florida 33131<br>
Attention: Mark B. Fuhr<br>
Telephone: (305) 371-2700<br>
Facsimile: (305) 358-5744

ARTICLE II.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1     Claims and Equity Interests Classified.

For purposes of organization, voting and all confirmation matters, except as otherwise provided herein, all Claims (except for Administrative Claims and Tax Claims) and all Equity Interests shall be classified as set forth in this Article II of the Plan.

2.2     Administrative Claims and Tax Claims.

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Claims are not classified for purposes of voting or receiving distributions under the Plan. All such Claims shall be treated separately as unclassified Claims on the terms set forth in Article V of the Plan.

2.3     Claims and Equity Interests.

The Plan classifies the Claims against and Equity Interests in the each of the Debtors as follows:

|     |          |                              |
|-----|----------|------------------------------|
| (a) | Class 1  | Priority Claims              |
| (b) | Class 2: | Non-Lender Secured Claims    |
| (c) | Class 3: | Lender Claims                |
| (d) | Class 4A: | General Unsecured Claims     |
| (e) | Class 4B: | Litigation Unsecured Claims  |
| (f) | Class 4C: | Securities Litigation Claims |
| (g) | Class 4D: | Subordinated Claims          |
| (h) | Class 5: | Equity Interests             |

2.4     Consolidated Plan.

Although the Plan has been filed as a joint Plan for all of the Debtors for purposes of administrative convenience and efficiency, the Plan provides for the substantive consolidation of the Debtors for all purposes under the Plan. Voting on the Plan, confirmation of the Plan, and Distributions under the Plan shall be considered and accomplished on a consolidated basis.

2.5     Separate Classification of Secured Claims.

Although Non-Lender Secured Claims against each Debtor have been placed in one class for purposes of convenience, each Non-Lender Secured Claim shall be treated as though in a separate class for purposes of voting and receiving Distributions under the Plan.

ARTICLE III.
## IDENTIFICATION OF IMPAIRED
## CLASSES OF CLAIMS AND EQUITY INTERESTS

3.1     Unimpaired Classes of Claims and Equity Interests.

Class 1 (Priority Claims) against each of the Debtors is not impaired under the Plan.

3.2    <u>Impaired Classes of Claims and Equity Interests.</u>

   With the exception of Class 1 (Priority Claims) against each of the Debtors, all classes of Claims against and Equity Interests in each of the Debtors are impaired under the Plan.

3.3    <u>Impairment Controversies.</u>

   If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or Equity Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

ARTICLE IV.
PROVISIONS FOR TREATMENT OF CLAIMS
<u>AND EQUITY INTERESTS UNDER THE PLAN</u>

4.1    <u>Treatment of Claims and Equity Interests.</u>

   The classes of Claims against and Equity Interests in each of the Debtors shall be treated under the Plan as follows:

   (a) <u>Class 1 – Priority Claims.</u>  Each holder of an Allowed Priority Claim shall be unimpaired under the Plan and such Allowed Priority Claims shall either be paid in full in Cash on the Effective Date or, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights of each holder of an Allowed Priority Claim in respect of such Claim shall be fully reinstated and retained, except as provided in section 1124(2)(A)-(C) of the Bankruptcy Code, and the holders of such Allowed Priority Claims shall be paid in full in accordance with such reinstated rights, provided that payment may be made by the Litigation Trust rather than Reorganized IT Group, to the extent the Litigation Trust succeeds to the Debtors' Assets in lieu of Reorganized IT Group.

   (b) <u>Class 2 – Non-Lender Secured Claims.</u>  Each holder of an Allowed Non-Lender Secured Claim shall be impaired under the Plan and, pursuant to section 1129(b) of the Bankruptcy Code, shall, at the election of the Plan Proponents, Reorganized IT Group or the Litigation Trust Trustee (as applicable) in consultation with the Agent, receive one of the following treatment options: (i) each holder of an Allowed Non-Lender Secured Claim shall retain its liens securing its Allowed Non-Lender Secured Claim and receive on account of its Allowed Non-Lender Secured Claim deferred cash payments having a present value on the Effective Date equal to the amount of its Allowed Non-Lender Secured Claim, (ii) each holder of an Allowed Non-Lender Secured Claim shall realize the "indubitable equivalent" of its Allowed Non-Lender Secured Claim, (iii) the property securing the Allowed Non-Lender Secured Claim shall be sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds as provided in clause (i) or (ii) of this subparagraph or (iv) if such Allowed Non-Lender Secured Claim is subject to a valid right of recoupment or setoff, such Claim shall be setoff to the extent of the amount subject to setoff in accordance with sections 506(a) and 553 of the Bankruptcy Code.

   (c) <u>Class 3 – Lender Claims</u>  Subject to Section 4.2 of the Plan and in accordance with the Plan Settlement, the Lender Claims shall be Allowed in full under the Plan and each holder of an Allowed Lender Claim shall receive on the Effective Date and on any applicable Distribution Date thereafter, in full and complete satisfaction of such Claim, its Pro Rata Share of (i) 87.5% of the Available Proceeds, (ii) 90% of the Shaw Stock, (iii) 20% of Avoidance Action Recoveries, and (iv) 75% of the first $10,000,000 of Estate Cause of Action Recoveries and 50% of Estate Cause of Action Recoveries thereafter  In the event that holders of Allowed Lender Claims receive distributions from Reorganized IT Group after the Effective Date, the cumulative distributions from IT Group and Reorganized IT Group under this provision to a holder of an Allowed Lender Claim shall not exceed the amount of such holder's Allowed Lender Claim.

   (d) <u>Class 4A – General Unsecured Claims.</u>  Subject to Section 4.2 of the Plan and in accordance with the Plan Settlement, each holder of an Allowed General Unsecured Claim shall receive on the

A018

applicable Distribution Date on account of its Allowed General Unsecured Claim, its Pro Rata Share of (i) 12.5% of the Available Proceeds, (ii) the net proceeds from the sale or other disposition of 10% of the Shaw Stock in accordance with the Plan (iii) 80% of Avoidance Action Recoveries, and (iv) 25% of the first $10,000,000 of Estate Cause of Action Recoveries and 50% of Estate Cause of Action Recoveries thereafter. In the event that holders of Allowed General Unsecured Claims receive distributions from Reorganized IT Group after the Effective Date, the cumulative distributions from IT Group and Reorganized IT Group under this provision to a holder of an Allowed General Unsecured Claim shall not exceed the amount of such holder's Allowed General Unsecured Claim.

     (e)    Class 4B – Litigation Unsecured Claims. Each Litigation Unsecured Claim shall be liquidated pursuant to the Plan ADR. To the extent any such Claim becomes an Allowed Litigation Unsecured Claim as provided in the Plan ADR, the holder of such Claim shall receive on any applicable Distribution Date on account of its Allowed Litigation Unsecured Claim, its Pro Rata Share of the Distributions to holders of Allowed General Unsecured Claims as provided in Section 4.1(d) of the Plan. To the extent any Allowed Litigation Unsecured Claim is an Insured Claim, the amount of its Allowed Litigation Unsecured Claim shall be reduced by the amount of insurance proceeds, if any, to pay such Claim, and the Pro Rata Share with respect to such Allowed Litigation Unsecured Claim shall be determined based upon such reduced amount. In the event that holders of Allowed Litigation Unsecured Claims receive distributions from Reorganized IT Group after the Effective Date, the cumulative distributions from IT Group and Reorganized IT Group under this provision to a holder of an Allowed Litigation Unsecured Claim shall not exceed the amount of such holder's Allowed Litigation Unsecured Claim.

     (f)    Class 4C – Securities Litigation Claims. In accordance with section 510(b) of the Bankruptcy Code, an Allowed Securities Litigation Claim shall be subordinated to all senior classes. In the event that holders of Allowed Lender Claims, Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims receive distributions under the Plan from Reorganized IT Group after the Effective Date and the cumulative distributions received by all such holders from IT Group and Reorganized IT Group equal the aggregate amount of the Allowed Claims of all such holders and all of such Allowed Claims have been paid in full, then each holder of an Allowed Securities Litigation Claim shall receive its Pro Rata Share of the distributions, if any, by Reorganized IT Group under the Plan in excess of such aggregate amount; provided, however, that under no circumstances shall the distributions under this provision to the holder of an Allowed Securities Litigation Claim exceed the amount of such holder's Allowed Securities Litigation Claim. Other than the potential to receive the foregoing distribution, each holder of an Allowed Securities Litigation Claim shall not receive or retain any Distribution or consideration on account of such Allowed Securities Litigation Claim.

     (g)    Class 4D – Subordinated Claims. In the event that holders of Allowed Lender Claims, Allowed General Unsecured Claims, Allowed Litigation Unsecured Claims and Allowed Securities Litigation Claims receive distributions under the Plan from Reorganized IT Group after the Effective Date and the cumulative distributions received by all such holders from IT Group and Reorganized IT Group equal the aggregate amount of the Allowed Claims of all such holders and all of such Allowed Claims have been paid in full, then each holder of an Allowed Subordinated Claim shall receive its Pro Rata Share of the distributions, if any, by Reorganized IT Group under the Plan in excess of such aggregate amount; provided, however, that under no circumstances shall the distributions under this provision to the holder of an Allowed Subordinated Claim exceed the amount of such holder's Allowed Subordinated Claim. Other than the potential to receive the foregoing distribution, each holder of an Allowed Subordinated Claim shall not receive or retain any Distribution or consideration on account of such Allowed Subordinated Claim.

     (h)    Class 5 – Equity Interests. On the Effective Date, all Equity Interests in IT Group shall be canceled, annulled and extinguished and one share of New Common Stock shall be issued to the Plan Administrator, who shall hold such share for the benefit of the holders of such former Equity Interests consistent with their former economic entitlements; provided, however, that no such share of New Common Stock shall be issued if IT Group is dissolved effective as of the Effective Date. Other than such beneficial interest (which shall be non-transferable), each holder of an Equity Interest in IT Group shall neither receive nor retain any property or interest in property under the Plan on account of such Equity Interest. All Equity Interests in all of the other Debtors shall be canceled, annulled and extinguished when such Debtors are dissolved or merged out of existence in accordance with Section 7 3 of the Plan, and no distribution of any property shall be made with respect to such Equity Interests. On or promptly after the Effective Date, Reorganized IT Group shall file with the SEC a Form 15 for the purpose of terminating the registration of any of its publicly traded securities. In the event Reorganized IT

A019

Group is dissolved after the Effective Date in accordance with Section 7.3 of the Plan, the New Common Stock outstanding after the Effective Date shall be canceled on the date Reorganized IT Group is so dissolved.

4.2    **Litigation Trust Alternative.**

At the election of the Agent (on behalf of the Prepetition Lenders) and the Committee, which election shall be made on or prior to the Effective Date, the Debtors shall transfer the Litigation Trust Assets (which may include, without limitation, the Avoidance Actions, the Avoidance Action Recoveries, the Estate Causes of Action, the Estate Cause of Action Recoveries, and any assets the sale, disposition or collection of which, after the Effective Date, would give rise to Available Proceeds) to the Litigation Trust for the benefit of the holders of Allowed Lender Claims, Allowed General Unsecured Claims, and Allowed Litigation Unsecured Claims in accordance with Section 7.10(l) (the "Litigation Trust Alternative"). In such event, in lieu of having a continuing right under the Plan against Reorganized IT Group to receive a portion of any proceeds from the assets transferred to the Litigation Trust, the holders of Allowed Lender Claims, Allowed General Unsecured Claims, and Allowed Litigation Unsecured Claims shall receive beneficial interests in the Litigation Trust entitling them to share in the proceeds of such assets on the same relative basis as provided in Sections 4.1(c), 4.1(d) and 4.1(e) of the Plan.

ARTICLE V.
PROVISIONS FOR TREATMENT
OF UNCLASSIFIED CLAIMS UNDER THE PLAN

5.1    **Treatment of Administrative Claims.**

All Administrative Claims shall be treated as follows:

(a)    **Time for Filing Administrative Claims.** Except as otherwise provided in the Administrative Bar Date Order, the holder of an Administrative Claim, including a Claim under section 503(b) of the Bankruptcy Code, but excluding (i) the Lender Claims, (ii) a Fee Claim, (iii) a liability incurred and payable in the ordinary course of business by a Debtor (and not past due), or (iv) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtors and the Office of the United States Trustee, notice of such Administrative Claim within thirty (30) days after service of notice of entry of the Confirmation Order. Such notice must include at a minimum (A) the name of the holder of the Claim, (B) the amount of the Claim, and (C) the basis of the Claim. **Failure to file and serve such notice timely and properly shall result in the Administrative Claim being forever barred and discharged.**

(b)    **Time for Filing Fee Claims.** Each Professional Person shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a final Fee Application within sixty (60) days after the Effective Date. As soon as practicable, but in no event later than thirty (30) days after the filing of a final Fee Application, objections to final Fee Applications shall be filed with the Bankruptcy Court and served upon the Professional Person who filed the final Fee Application. **The failure to file timely and serve such final Fee Application shall result in the Fee Claim being forever barred and discharged.**

(c)    **Allowance of Administrative Claims.** An Administrative Claim with respect to which notice has been properly filed and served pursuant to Section 5.1(a) of the Plan shall become an Allowed Administrative Claim if no objection is filed within ninety (90) days after the deadline for filing and serving the notice of such Administrative Claim specified in Section 5.1(a) of the Plan, or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed within such ninety-day period (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. An Administrative Claim with respect to which a Fee Application has been properly filed pursuant to Section 5.1(b) of the Plan shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

(d)    **Payment of Allowed Administrative Claims.** On the applicable Distribution Date, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by Reorganized IT Group or, if applicable,

the Litigation Trust Trustee, and such holder, <u>provided,</u> that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at Reorganized IT Group's or, if applicable, the Litigation Trust Trustee's, election in the ordinary course of business.

5.2    <u>Treatment of Tax Claims.</u>

At the election of the Debtors or, on or after the Effective Date, Reorganized IT Group or, if applicable, the Litigation Trust Trustee, each holder of an Allowed Tax Claim shall receive in full satisfaction of such holder's Allowed Tax Claim, (a) the amount of such holder's Allowed Tax Claim, with Post-Confirmation Interest thereon, in equal annual Cash payments on each anniversary of the Effective Date, until the sixth anniversary of the date of assessment of such Tax Claim (provided that the Disbursing Agent may prepay the balance of any such Allowed Tax Claim at any time without penalty), (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder and Reorganized IT Group or, if applicable, the Litigation Trust Trustee; or (c) such other treatment as may be agreed upon in writing by such holder and Reorganized IT Group or, if applicable, the Litigation Trust Trustee. The Confirmation Order shall enjoin any holder of a Tax Claim from commencing or continuing any action or proceeding against any responsible person or officer or director of the Debtors that otherwise would be liable to such holder for payment of a Tax Claim so long as no default has occurred with respect to such Tax Claim under this Section 5.2 of the Plan.

The Tax Collector of Palm Beach County has asserted an alleged Tax Claim of approximately $7,900.02. To the extent such Claim becomes an Allowed Tax Claim under the Plan, such Allowed Tax Claim shall be paid in full in Cash on the later of the Effective Date or entry of a Final Order allowing such Tax Claim. The State of Washington, Department of Revenue has also asserted an alleged Tax Claim. To the extent such Claim becomes an Allowed Tax Claim under the Plan, such Allowed Tax Claim shall be paid in full in Cash on the later of the Effective Date or entry of a Final Order allowing such Tax Claim.

ARTICLE VI.
ACCEPTANCE OR REJECTION OF THE PLAN;
EFFECT OF REJECTION BY ONE OR MORE
CLASSES OF CLAIMS OR EQUITY INTERESTS

6.1    <u>Classes Entitled to Vote.</u>

Class 2 (Non-Lender Secured Claims), Class 3 (Lender Claims), Class 4A (General Unsecured Claims), and Class 4B (Litigation Unsecured Claims) are impaired under the Plan, and the holders of such Claims shall be entitled to vote to accept or reject the Plan. Class 1 (Priority Claims) is unimpaired under the Plan, and the holders of such Claims are conclusively presumed to have accepted the Plan. Class 4C (Securities Litigation Claims), Class 4D (Subordinated Claims) and Class 5 (Equity Interests) are impaired under the Plan, and the holders of such Claims and Equity Interests shall not receive a Distribution or retain any property under the Plan and are deemed not to have accepted the Plan.

6.2    <u>Class Acceptance Requirement.</u>

Absent an order of the Court, only holders of Claims that are of record and as to which an objection is not pending as set forth in the Voting Procedures Order shall be entitled to accept or reject the Plan. A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (½) in number of the Allowed Claims in such class that have voted on the Plan.

6.3    <u>Confirmation Without Acceptance by All Impaired Classes.</u>

The Plan shall constitute a request that the Bankruptcy Court confirm the Plan over the rejection of any Class in accordance with section 1129(b) of the Bankruptcy Code.

*A021*

ARTICLE VII.
MEANS FOR IMPLEMENTATION OF THE PLAN

7.1    Substantive Consolidation of Debtors.

Except as otherwise provided in the Plan, and on and subject to the occurrence of the Effective Date, all Assets and liabilities of the Debtors shall be substantively consolidated. On the Effective Date (i) all intercompany claims by and among the Debtors shall be eliminated; (ii) all Assets and liabilities of the Debtors other than IT Group shall be merged or treated as though they were merged into and with the Assets and liabilities of IT Group; (iii) all guarantees of the Debtors of the obligations of any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors; (iv) all Equity Interests owned by any of the Debtors in any other Debtor shall be treated as though they were eliminated; and (v) each and every Claim filed or to be filed in the Chapter 11 Cases against any of the Debtors shall be deemed filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors.

7.2    IT Group Subsidiary Guarantees.

All claims based upon guarantees of collection, payment or performance of any obligation of the Debtors made by any Subsidiary which is not a Debtor and all claims against any such Subsidiary for which any of the Debtors are jointly and severally liable, in each case which arise prior to the Effective Date, shall be discharged, released, extinguished and of no further force and effect.

7.3    Merger and Dissolution of IT Group Corporate Entities.

On or as of the Effective Date or as soon as reasonably practicable thereafter, any or all of the Debtors (other than IT Group) and Subsidiaries of the Debtors may, at the sole option of the Plan Proponents (with the consent of the Agent), be (a) merged into one or more of the Debtors or (b) dissolved; *provided, however,* that if the Litigation Trust succeeds to all of the Debtors' Assets in lieu of Reorganized IT Group, all of the Debtors (other than IT Group) shall merge into IT Group on or as soon as practicable after the Effective Date and IT Group shall be immediately dissolved. Upon the occurrence of any such merger, all assets of the merged entities shall be transferred to and become the assets of the surviving entity, and all liabilities of the merged entities, except to the extent discharged, released or extinguished pursuant to the Plan and the Confirmation Order, shall be assumed by and shall become the liabilities of the surviving entity, with such liabilities of the surviving entity to be treated as provided in the Plan. All mergers and dissolutions shall be effective as of the Effective Date[1] pursuant to the Confirmation Order without any further action by the stockholders or directors of any of the Debtors, unless applicable law requires otherwise. Following the Effective Date and upon the occurrence of such mergers and dissolutions, Reorganized IT Group or the Litigation Trust Trustee (if applicable) shall move for a final decree to close the chapter 11 case relating to each merged and/or dissolved entity. Reorganized IT Group shall be dissolved when it has made the Distributions, if any, required to be made by it under the Plan.

7.4    The Plan Settlement.

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of a compromise and settlement of all Causes of Action as of the Effective Date by and between the Agent and the Prepetition Lenders, on the one hand, and the Debtors, the Subsidiaries that are not Debtors, and the Committee (and all of its members), on the other hand, pursuant to which, and upon the occurrence of the Effective Date, (a) the Lender Claims shall be deemed Allowed in full as provided in Section 4.1(c) of the Plan, (b) the Committee Lawsuit shall be dismissed with prejudice, (c) any and all claims and Causes of Action of the Debtors (and their Estates), the Subsidiaries that are not Debtors, and the Committee (and all of its members) against the Agent and/or the Prepetition Lenders as of the

---

[1]    Because the Debtor entity Wehran New York, Inc. ("Wehran"), may be subject to purchase by an interested party after the Effective Date, any merger or dissolution of Wehran shall occur, if at all, sixty (60) days after the Effective Date provided that consummation of any sale of Wehran is not pending as of such date.

A022

Effective Date shall be forever waived, discharged, released and enjoined. (d) the holders of Allowed Lender Claims shall receive the treatment accorded such Claims pursuant to the Plan in complete satisfaction thereof, including, without limitation, any subordination or other provisions in respect of the Old Notes, the holders thereof or the Indenture Trustee, and (e) any right to a Distribution on account of any deficiency Claim, Unsecured Claim or Administrative Claim (other than any claims under the Plan or for the reimbursement of all reasonable fees and expenses of the Agent incurred through the date on which the Committee is dissolved in accordance with Section 13.4 of the Plan, which claims shall remain in effect and shall be treated and paid as Administrative Claims in accordance with the Plan without the need to file any Administrative Claim pursuant to the Administrative Bar Date or otherwise comply with Section 5.1 of the Plan) by the holders of the Lender Claims shall be forever waived, discharged, released and enjoined, which Claims shall be deemed satisfied in full by the treatment accorded the Lender Claims in Section 4.1(c) of the Plan. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of the Plan Settlement and authorize the parties to take all actions that are necessary or appropriate to implement and give effect to the Plan Settlement.

7.5     Shaw Stock.

      Upon the occurrence of the Effective Date in accordance with the Plan Settlement, title to 10% of the Shaw Stock shall vest in Reorganized IT Group or, if applicable, the Litigation Trust, free and clear of all Claims, Equity Interests, liens, security interests, encumbrances, and other interests, except as expressly provided in the Plan, which stock may be sold or otherwise disposed of (as directed by the Plan Administrator with the consent of the Committee Designees) for the benefit of holders of Allowed General Unsecured Claims to effectuate Distributions to such holders in accordance with Section 4.1(d) of the Plan. Upon the occurrence of the Effective Date in accordance with the Plan Settlement, 90% of the Shaw Stock shall be distributed to the Agent on behalf of the holders of Allowed Lender Claims in accordance with Section 4.1(c) of the Plan, free and clear of all Claims, Equity Interests, liens, security interests, encumbrances, and other interests, except as otherwise expressly provided in the Plan.

7.6     Formation of Reorganized IT Group.

      On or before the Effective Date and conditioned on the occurrence of the Effective Date, the following actions shall be taken with respect to Reorganized IT Group (unless the Litigation Trust Alternative is implemented and the Litigation Trust succeeds to all of the Debtors' Assets in lieu of Reorganized IT Group):

      (a)    the New Charter and the New By-Laws shall be duly adopted; and

      (b)    the issuance of the New Common Stock shall be authorized.

      Except as otherwise provided in the Plan, the post-Effective Date management of Reorganized IT Group shall be the general responsibility of the Plan Administrator, subject to the direction and supervision by the Oversight Committee as provided in the Plan.

7.7     Oversight Committee.

      On the Effective Date, the Oversight Committee shall be formed, which committee shall consist of four (4) members, two selected by the Committee and two selected by the Agent on behalf of the Prepetition Lenders. The Oversight Committee shall oversee the administration and implementation of the Plan and the liquidation and distribution of the Debtors' Assets in accordance with the Plan. Oversight Committee decisions shall be made with the approval of at least three (3) members. The Oversight Committee shall have the following rights, obligations and duties:

      (a)    Approve the Plan Administrator's selection of, as well as the terms governing the engagement of, professionals to be engaged by the Plan Administrator on behalf of Reorganized IT Group or, if applicable, the Litigation Trust, who may have been previously engaged by the Debtors, the Committee and/or the Agent, and establish retainer terms, conditions and budgets;

A023

    (b)    Decide whether, when, and in what amounts Distributions should be made, and to direct Reorganized IT Group or, if applicable, the Litigation Trust (subject to the provisions of the Litigation Trust Agreement), to make a Distribution.

    (c)    Oversee the Plan Administrator's administration and implementation of the Plan and the liquidation of the Assets in accordance with the Plan.

    (d)    Oversee, review and guide the Plan Administrator on performance of its duties, and its activities proposed and underway, as often as is necessary and appropriate to implement the Plan;

    (e)    Appear in Bankruptcy Court;

    (f)    Seek an order terminating an Oversight Committee member and approving a replacement selected in a manner consistent with the original selection of such Oversight Committee Member in the event the other members of the Oversight Committee determine there is cause to do so;

    (g)    Articulate the Oversight Committee's position in the event the Plan Administrator, the Disbursing Agent or the Chief Litigation Officer brings a dispute with the Oversight Committee to the Bankruptcy Court for resolution, or the Oversight Committee concludes it should bring a dispute with the Plan Administrator, Disbursing Agent or the Chief Litigation Officer to the Bankruptcy Court for resolution; and

    (h)    Direct the pursuit and settlement of Estate Causes of Action.

Each Oversight Committee member shall be paid in accordance with the Oversight Committee Compensation, as disclosed at or prior to the Confirmation Hearing and agreed to by the Committee and the Agent. Any disputes between and among the Oversight Committee, its members, Reorganized IT Group or, if applicable, the Litigation Trust, the Plan Administrator, and/or the Chief Litigation Officer shall be resolved by the Bankruptcy Court, and the Plan Administrator shall bring any such dispute to the Bankruptcy Court for resolution if so requested in writing by any of such parties.

Subject to any applicable law, the members of the Oversight Committee shall not be liable for any act done or omitted by any member in such capacity, while acting in good faith and in the exercise of business judgment. Members of the Oversight Committee shall not be liable in any event except for gross negligence or willful misconduct in the performance of their duties hereunder.

Except as otherwise set forth in this Plan and to the extent permitted by applicable law, the members of the Oversight Committee in the performance of their duties hereunder (the "Indemnified OC Parties") shall be defended, held harmless and indemnified from time to time by Reorganized IT Group or, to the extent such duties relate to the Litigation Trust, the Litigation Trust (and not any other Person) against any and all losses, claims, costs, expenses and liabilities to which such Indemnified OC Parties may be subject by reason of such Indemnified OC Party's execution of duties pursuant to the discretion, power and authority conferred on such Indemnified OC Party by the Plan or the Confirmation Order; provided, however, that the indemnification obligations arising pursuant to this Section shall not indemnify the Indemnified OC Parties for any actions taken by such Indemnified OC Parties which constitute fraud, gross negligence or intentional breach of the Plan, or the Confirmation Order. Satisfaction of any obligation of Reorganized IT Group or, if applicable, the Litigation Trust, arising pursuant to the terms of this Section shall be payable only from the assets of Reorganized IT Group or, if applicable, the Litigation Trust, including, if available, any insurance maintained by Reorganized IT Group or, if applicable, the Litigation Trust. The indemnification provisions contained herein shall remain available to and be binding upon any future members of the Oversight Committee or the estate of any decedent and shall survive dissolution of Reorganized IT Group.

A024

7.8    Plan Administrator.

Upon the occurrence of the Effective Date, the management, control, and operation of Reorganized IT Group shall be the general responsibility of the Plan Administrator, subject to the supervision and direction of the Oversight Committee as provided herein.

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date all Avoidance Actions may be compromised and settled by the Plan Administrator according to the following procedures:

(a)    Subject to subsection (b) of Section 7.8 of the Plan, the following settlements or compromises of Estate Causes of Action do not require the review or approval of the Bankruptcy Court.

(i)    The settlement or compromise of an Estate Cause of Action where the amount of recovery sought in any demand or adversary proceeding is $250,000 or less; and

(ii)    The settlement or compromise of an Estate Cause of Action where the difference between the amount of the recovery sought in any demand or adversary proceeding and the amount of the proposed settlement is $250,000 or less, and

(b)    The following settlements or compromises shall be submitted to the Bankruptcy Court for approval:

(i)    Any settlement or compromise not described in subsection 7.8(a) of the Plan; and

(ii)    Any settlement or compromise of an Estate Cause of Action that involves an "insider," as defined in section 101(31) of the Bankruptcy Code.

With the consent of the Oversight Committee, the Plan Administrator may prosecute or decline to prosecute any Estate Causes of Action, in the exercise of the Plan Administrator's business judgment, subject to the provisions of the Plan. With the consent of the Oversight Committee, the Plan Administrator may settle, release, sell, assign, or otherwise transfer or compromise any Estate Causes of Action, in the exercise of the Plan Administrator's business judgment, subject to the provisions of the Plan, including subsection (a) of this Section 7.8.

With the consent of the Oversight Committee, the Plan Administrator may retain the services of attorneys, accountants, consultants, and other agents, in the business judgment of the Plan Administrator, to assist and advise the Plan Administrator in the performance of its duties hereunder.

The Plan Administrator may bring any dispute concerning the performance of its duties for resolution by the Bankruptcy Court and its reasonable fees and expenses (including attorneys' fees) in connection therewith shall be paid by Reorganized IT Group or, to the extent such dispute involves its duties as co-trustee of the Litigation Trust, the Litigation Trust. The compensation for the Plan Administrator shall be agreed to by the Committee and the Agent and disclosed at or prior to the Confirmation Hearing, and is subject to approval by the Bankruptcy Court.

Subject to any applicable law, the Plan Administrator shall not be liable for any act done or omitted by the Plan Administrator in the performance of its duties hereunder, while acting in good faith and in the exercise of business judgment. The Plan Administrator shall not be liable in any event except for gross negligence or willful misconduct in the performance of its duties hereunder.

Except as otherwise set forth in this Plan and to the extent permitted by applicable law, the Plan Administrator and any attorneys, accountants, consultants, and other agents retained by the Plan Administrator in the performance of its duties hereunder (the "Indemnified PA Parties") shall be defended, held harmless and indemnified from time to time by Reorganized IT Group or, to the extent performed in furtherance of the Plan

**A025**

Administrator's duties as co-trustee of the Litigation Trust. the Litigation Trust (and not any other Person) against any and all losses, claims, costs, expenses and liabilities to which such Indemnified PA Parties may be subject by reason of such Indemnified PA Party's execution of duties pursuant to the discretion, power and authority conferred on such Indemnified PA Party by the Plan or the Confirmation Order; provided. however. that the indemnification obligations arising pursuant to this Section shall not indemnify the Indemnified PA Parties for any actions taken by such Indemnified PA Parties which constitute fraud, gross negligence or intentional breach of the Plan, or the Confirmation Order. Satisfaction of any obligation of Reorganized IT Group or, if applicable, the Litigation Trust, arising pursuant to the terms of this Section shall be payable only from the assets of Reorganized IT Group or, if applicable, the Litigation Trust. including, if available, any insurance maintained by Reorganized IT Group or, if applicable, the Litigation Trust. The indemnification provisions contained herein shall remain available to and be binding upon any future Plan Administrator or the estate of any decedent and shall survive dissolution of Reorganized IT Group.

7.9    Chief Litigation Officer.

As of the Effective Date, the Chief Litigation Officer shall be appointed to prosecute the Avoidance Actions. With the consent of the Committee Designees, the Chief Litigation Officer may prosecute or decline to prosecute the Avoidance Actions, in the exercise of the Chief Litigation Officer's business judgment, subject to the provisions of the Plan. With the consent of the Committee Designees. the Chief Litigation Officer may settle, release, sell, assign, or otherwise transfer or compromise the Avoidance Actions, in the exercise of the Chief Litigation Officer's business judgment, subject to the provisions of the Plan, including subsection (a) of this Section 7.9

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date all Avoidance Actions may be compromised and settled by the Chief Litigation Officer according to the following procedures:

(a)    Subject to subsection (b) of Section 7.9 of the Plan, the following settlements or compromises of Avoidance Actions do not require the review or approval of the Bankruptcy Court:

(i)    The settlement or compromise of an Avoidance Action where the amount of recovery sought in any demand or adversary proceeding is $250,000 or less; and

(ii)    The settlement or compromise of an Avoidance Action where the difference between the amount of the recovery sought in any demand or adversary proceeding and the amount of the proposed settlement is $250,000 or less; and

(b)    The following settlements or compromises shall be submitted to the Bankruptcy Court for approval:

(i)    Any settlement or compromise not described in subsection 7.9(a) of the Plan, and

(ii)    Any settlement or compromise of an Avoidance Action that involves an "insider," as defined in section 101(31) of the Bankruptcy Code.

With the consent of the Committee Designees, and in consultation with the Agent, the Chief Litigation Officer may retain the services of attorneys, accountants, consultants, and other agents, in the business judgment of the Chief Litigation Officer, to assist and advise the Chief Litigation Officer in the performance of its duties hereunder.

The Chief Litigation Officer may bring any dispute concerning the performance of its duties for resolution by the Bankruptcy Court and its reasonable fees and expenses (including attorneys' fees) in connection therewith shall be paid by Reorganized IT Group or, to the extent such dispute involves its duties as co-trustee of the Litigation Trust, the Litigation Trust. The compensation for the Chief Litigation Officer shall be agreed to by the

Committee (in consultation with the Agent) and disclosed at or prior to the Confirmation Hearing, and is subject to approval by the Bankruptcy Court

Subject to any applicable law, the Chief Litigation Officer shall not be liable for any act done or omitted by the Chief Litigation Officer in the performance of its duties hereunder, while acting in good faith and in the exercise of business judgment  The Chief Litigation Officer shall not be liable in any event except for gross negligence or willful misconduct in the performance of its duties hereunder.

Except as otherwise set forth in this Plan and to the extent permitted by applicable law, the Chief Litigation Officer and any attorneys, accountants, consultants, and other agents retained by the Chief Litigation Officer in the performance of its duties hereunder (the "Indemnified CLO Parties") shall be defended, held harmless and indemnified from time to time by Reorganized IT Group or, to the extent performed in furtherance of the Chief Litigation Officer's duties as co-trustee of the Litigation Trust, the Litigation Trust (and not any other Person) against any and all losses, claims, costs, expenses and liabilities to which such Indemnified CLO Parties may be subject by reason of such Indemnified CLO Party's execution of duties pursuant to the discretion, power and authority conferred on such Indemnified CLO Party by the Plan or the Confirmation Order; provided, however, that the indemnification obligations arising pursuant to this Section shall not indemnify the Indemnified CLO Parties for any actions taken by such Indemnified CLO Parties which constitute fraud, gross negligence or intentional breach of the Plan, or the Confirmation Order  Satisfaction of any obligation of Reorganized IT Group or, if applicable, the Litigation Trust, arising pursuant to the terms of this Section shall be payable only from the assets of Reorganized IT Group or, if applicable, the Litigation Trust, including, if available, any insurance maintained by Reorganized IT Group or, if applicable, the Litigation Trust  The indemnification provisions contained herein shall remain available to and be binding upon any future Chief Litigation Officer or the estate of any decedent and shall survive dissolution of Reorganized IT Group.

7.10    **Trusts.**

(I)    **The Litigation Trust**.

(a)    Execution of Litigation Trust Agreement.  In the event the Agent (on behalf of the Prepetition Lenders) and the Committee elect to pursue the Litigation Trust Alternative, the Litigation Trust Agreement, in a form reasonably acceptable to the Agent (on behalf of the Prepetition Lenders) and the Committee, shall be executed on or before the Effective Date, and all other necessary steps shall be taken to establish the Litigation Trust and the beneficial interests therein, which shall be for the benefit of the holders of Allowed Lender Claims, Allowed General  Unsecured Claims and Allowed Litigation Unsecured Claims.  This Section 7.10(I) sets forth certain of the rights, duties, and obligations of the Litigation Trust Trustee, in the event such an election is made.  In the event that no such election is made, the remainder of this Section 7.10(I) shall be of no further force or effect.  In the event of any conflict between the terms of this Section and the terms of the Litigation Trust Agreement, the terms of the Litigation Trust Agreement shall govern

(b)    Purpose of Litigation Trust.  The Litigation Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

(c)    Litigation Trust Assets.  The Litigation Trust shall consist of the Litigation Trust Assets. Any Cash or other property received from third parties from the prosecution, settlement, or compromise of the Avoidance Actions and/or the Estate Causes of Action shall constitute Litigation Trust Assets for purposes of distributions under the Litigation Trust.  On the Effective Date, the Debtors shall transfer all of the Litigation Trust Assets to the Litigation Trust free and clear of all liens, claims, and encumbrances, except to the extent otherwise provided herein or in the Litigation Trust Agreement.

(d)    Governance of Litigation Trust.  The Litigation Trust shall be governed and administered by the Litigation Trust Trustee, subject to the supervision of the Oversight Committee (or, in the case of the prosecution, settlement or other disposition of Avoidance Actions, the supervision of the Committee Designees), in each case, as provided under the Plan and the Litigation Trust Agreement.  Notwithstanding anything to the contrary herein, the Oversight Committee (and the Committee Designees, as applicable) shall act in furtherance of, and

A027

consistent with, the purpose of the Litigation Trust and shall act in the best interests of the beneficiaries of the Litigation Trust

(e)    Role of the Litigation Trust Trustee.

(i)    In furtherance of and consistent with the purpose of the Litigation Trust and the Plan, the Litigation Trust Trustee shall (A) have the power and authority to hold, manage, sell, and distribute the Litigation Trust Assets to the holders of Allowed Lender Claims, Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims, (B) hold the Litigation Trust Assets for the benefit of the holders of Allowed Lender Claims, Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims, (C) have the power and authority to hold, manage, sell, and distribute Cash or non-Cash Litigation Trust Assets obtained through the exercise of its power and authority, (D) have the power and authority to prosecute and resolve, in the names of the Debtors and/or the name of the Litigation Trust Trustee, the Avoidance Actions and the Estate Causes of Action, (E) have the power and authority to perform such other functions as are provided in the Plan, and (F) have the power and authority to administer the closure of the Chapter 11 Cases. The Litigation Trust Trustee shall be responsible for all decisions and duties with respect to the Litigation Trust and the Litigation Trust Assets. In all circumstances, the Litigation Trust Trustee shall act in the best interests of all beneficiaries of the Litigation Trust and in furtherance of the purpose of the Litigation Trust

(ii)    If and to the extent the Litigation Trust Agreement so provides, the Litigation Trust Trustee shall (A) be authorized to exercise all powers regarding the Debtors' tax matters, including filing tax returns, to the same extent as if the Litigation Trust Trustee were the debtor in possession, (B) complete and file the Debtors' federal, state, and local tax returns, (C) request an expedited determination of any unpaid tax liability of the Debtors under section 505(b) of the Bankruptcy Code for all tax periods of the Debtors ending after the Commencement Date through the liquidation of the Debtors as determined under applicable tax laws, to the extent not previously requested, and (D) represent the interest and account of the Debtors before any taxing authority in all matters, including, but not limited to, any action, suit, proceeding, or audit.

(f)    Cash. The Litigation Trust Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; *provided, however,* that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(g)    Compensation of the Litigation Trust Trustee. The Litigation Trust Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy proceedings.

(h)    Distribution of Litigation Trust Assets. The Litigation Trust Trustee shall distribute at least annually and in accordance with the Litigation Trust Agreement, beginning on the Effective Date or as soon thereafter as is practicable, the Litigation Trust Assets on hand (including any Cash received from the Debtors on the Effective Date, and treating as Cash for purposes of this Section 7.10(I)(h) any permitted investments under Section 7.10(I)(f) of the Plan), except such amounts (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Litigation Trust Assets during liquidation, (ii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Litigation Trust or in respect of the Litigation Trust Assets), and (iii) to satisfy other liabilities incurred by the Litigation Trust in accordance with this Plan or the Litigation Trust Agreement.

(i)    Retention of Professionals by the Litigation Trust Trustee The Litigation Trust Trustee may retain and reasonably compensate counsel and other professionals to assist in its duties as Litigation Trust Trustee on such terms as the Litigation Trust Trustee deems appropriate without Bankruptcy Court approval. The Litigation Trust Trustee may retain any professional who represented parties in interest in the Chapter 11 Cases.

**A028**

       (j)    Federal Income Tax Treatment of Litigation Trust

          (i)    Litigation Trust Assets Treated as Owned by certain Creditors  For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Litigation Trust Trustee, the holders of Lender Claims, the holders of General Unsecured Claims and the holders of Litigation Unsecured Claims) shall treat the transfer of the Litigation Trust Assets to the Litigation Trust for the benefit of the holders of Allowed Lender Claims, Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims, whether Allowed on or after the Effective Date, as (A) a transfer of the Litigation Trust Assets directly to the holders of Allowed Lender Claims, Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims in satisfaction of such Claims (and in the case of Contested Unsecured Claims, the Contested Unsecured Claims Reserve) followed by (B) the transfer by such holders to the Litigation Trust of the Litigation Trust Assets in exchange for beneficial interests in the Litigation Trust. Accordingly, the holders of such Claims shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Litigation Trust Assets

          (ii)    Tax Reporting

          (A)    The Litigation Trust Trustee shall file returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 7.10(l). The Litigation Trust Trustee shall also annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and shall instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns. The Litigation Trust Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Litigation Trust that are required by any governmental unit.

          (B)    Allocations of Litigation Trust taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the holders of the Litigation Trust interests (including the Contested Unsecured Claims Reserve), taking into account all prior and concurrent distributions from the Litigation Trust. Similarly, taxable loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Litigation Trust Assets. The tax book value of the Litigation Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code, the regulations and another applicable administrative and judicial authorities and pronouncements.

          (C)    As soon as possible after the Effective Date, the Litigation Trust Trustee shall make a good faith valuation of the Litigation Trust Assets. Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties (including, without limitation, the Debtors, the Litigation Trust Trustee, and the holders of Allowed Lender Claims, Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims) for all federal income tax purposes

          (D)    The Litigation Trust Trustee may request an expedited determination of taxes of the Litigation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Liquidating Trust

       (k)    Noncertificated Litigation Trust Interests. The beneficial interests in the Litigation Trust shall not be certificated, except as otherwise provided in the Litigation Trust Agreement.

       (l)    Dissolution. The Litigation Trust Trustee and the Litigation Trust shall be discharged or dissolved, as the case may be, at such time as (i) all Litigation Trust Assets have been liquidated, and (ii) all distributions required to be made by the Litigation Trust Trustee under the Plan have been made, but in no event shall the Litigation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (and, in the case of any extension, within six (6) months prior to the end of such extension), determines that a fixed period extension (not to exceed

three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Litigation Trust Assets or the dissolution of the Debtors.

        (m)   <u>Securities Exempt</u>.  The issuance of the beneficial interests in the Litigation Trust satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

        (11)   <u>IT Environmental Liquidating Trust</u>.

        Pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, entry of the Confirmation Order shall constitute approval of that certain IT Environmental Liquidating Trust Agreement reached with the DTSC in connection with the Consent Order and the Landfills, pursuant to which, on or after the occurrence of the Effective Date, the Debtors shall (a) establish the IT Environmental Liquidating Trust for the purpose of operating and providing for the closure and post closure management of the Landfills and liquidating, and distributing the proceeds from the IT Environmental Liquidating Trust Assets; (b) transfer the IT Environmental liquidating Trust Funding to the IT Environmental Liquidating Trust; and (c) transfer the IT Environmental Liquidating Trust Assets to settle the IT Environmental Liquidating Trust which IT Environmental Liquidating Trust Assets shall consist of the following Assets:

        (a)   The Post Closure Insurance Policy Assets:  (i) the Post Closure Insurance Policies; (ii) the proceeds from claims paid by the Post Closure Insurance Policies; and  (iii) any interest earned on the proceeds from claims paid by the Post Closure Insurance Policies, all subject to DTSC's rights under the policies;

        (n)   The Properties:  (i) the real property containing the Vine Hill and Panoche sites which are each owned by the LLCs; and (ii) the real property containing the Benson Ridge and Montezuma Hills Landfills which are owned by IT Corporation; and

        (o)   The Landfill Assets:  (i) all of Debtors' membership interests in the LLCs; (ii) all real property, personal property, equipment, bank accounts, and employees associated with operations of the Landfills; (iii) all other funds obtained by the Debtors from other parties in settlement or resolution of contribution or cost recovery claims of the Debtors with respect to the Landfills; and (iv) all insurance polices held by the LLCs or the IT Environmental Liquidating Trust, all insurance policies held by the Debtors that are associated with the operations of the Landfills, and all proceeds and interest therefrom other than the Post Closure Insurance Policies; (v) all licenses, permits (subject to the Permit Transfer provision set forth in this Section 7.10(11)) and contracts relating to the Landfills; and (vi) revenues from the operations of the Landfills or development thereon.

        (p)   The Landfill Liabilities:  (i) all accounts payable arising prior to and after the Effective Date associated with the operations of the Landfills and (ii) all cure obligations associated with the executory contracts and unexpired leases that are assumed by the Debtors and assigned to the IT Environmental Liquidating Trust in accordance with Section 11.1 of the Plan.

        Nothing in the Plan or the IT Environmental Liquidating Trust Agreement creates any interest in, or claim against, the Post Closure Insurance Policies beyond the Debtors' interest in the policies as set forth in the Post Closure Insurance Policies themselves.

        On or before the Effective Date and subject to the occurrence of the Effective Date, the LLCs and, where appropriate, the Debtors shall (i) execute the IT Environmental Liquidating Trust Agreement; (ii) take all other steps necessary or appropriate to establish the IT Environmental Liquidating Trust; and (iii) to the extent necessary, transfer, deliver and assign to the IT Environmental Liquidating Trust all IT Environmental Liquidating Trust Assets.  At the termination of the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee is authorized and directed to designate one or more charitable organizations which are qualified under Section 501(c)(3) of the Internal Revenue Code, and unrelated to the IT Environmental Liquidating Trustee, as the remainder beneficiaries of the IT Environmental Liquidating Trust.  During the term of the IT Environmental

A030

Liquidating Trust, the IT Environmental Liquidating Trust will be a reporting entity for federal income tax purposes under Subpart A of Subchapter J of the Internal Revenue Code.

Permit Transfer  Ownership of the Permits shall be transferred to the IT Environmental Liquidating Trust (or, if appropriate, to the LLCs) upon DTSC approval of Class 1 Permit Modifications to recognize the transfer of ownership, or if no such approval is required, upon the establishment of the IT Environmental Liquidating Trust.

The IT Environmental Liquidating Trust shall be established and administered pursuant to the law of California and subject to the jurisdiction of the Northern District of California. Nothing in the Plan or IT Environmental Liquidating Trust Agreement, or in negotiations leading to the formation of these instruments, shall be construed as a waiver by the State of California, DTSC, or by any other California state agency, departments, board, or commission ("State of California") of Eleventh Amendment immunity, or as consent to be sued or otherwise compelled to appear in any Federal Court, including the Northern District of California and the Bankruptcy Court.

Nothing in this Plan is intended to be nor shall it be construed as a deprivation or waiver by the State of California of any rights and duties as a regulator under the laws of California or the United States, including, without limitation, the Permits, nor affect the State of California's interest, if any, in the Post Closure Insurance Policies.

The Consent Order and the Permits shall be assigned to and accepted by the IT Environmental Liquidating Trust and as such shall survive confirmation of the Plan and continue in full force and effect, subject to, if necessary, Class I Permit Modifications to recognize the transfer of the Permits.

On or before the Effective Date and subject to the occurrence of the Effective Date, all books and records of the Debtors requested by the IT Environmental Liquidating Trustee pertaining to the Landfills and the Post Closure Insurance Policies (the "Landfill Books and Records"), shall be transferred to the IT Environmental Liquidating Trust; provided, however, that to the extent the Debtors, Reorganized IT Group and/or the Litigation Trust Trustee request a copy of the Landfill Books and Records to defend and resolve Claims, the IT Environmental Liquidating Trustee shall provide a copy at the Debtors' expense for reasonable copy charges. Reorganized IT Group and its agents and representatives, including former counsel for the Debtors, shall take all steps, and execute all documents, necessary to cause the transfer of all of the Landfill Books and Records of the Debtors in accordance with this Plan.

Any attorney client privilege, work product privilege or other privilege or immunity attaching to the Landfill Books and Records or communications (whether written or oral) (the "Communications") transferred to the IT Environmental Liquidating Trust shall not be deemed waived and shall automatically vest in the IT Environmental Liquidating Trustee and his representatives. After all Distributions and after implementation of the Plan and the establishment of the IT Environmental Liquidating Trust, no Person other than the IT Environmental Liquidating Trustee shall have the right to assert or waive any such privilege of the Debtors regarding the Landfill Books and Records and/or the Communications.

The IT Environmental Liquidating Trustee shall administer the IT Environmental Liquidating Trust in accordance with the terms and conditions of the IT Environmental Liquidating Trust Agreement, the Plan, and the Confirmation Order, and shall have those duties and powers set forth in the IT Environmental Liquidating Trust Agreement. The IT Environmental Liquidating Trustee may retain the services of attorneys, accountants, consultants, and other agents, in the business judgment of the IT Environmental Liquidating Trustee, to assist and advise the IT Environmental Liquidating Trustee in the performance of its duties hereunder. In addition to reimbursement of reasonable, actual and necessary expenses incurred, the IT Environmental Liquidating Trustee shall be entitled to reasonable compensation and benefits that shall be payable by the IT Environmental Liquidating Trust in the ordinary course of business and not subject the approval by the Northern District of California, as set forth in the IT Environmental Liquidating Trust Agreement.

All costs and expenses related to the IT Environmental Liquidating Trust shall be paid from the IT Environmental Liquidating Trust Assets. Under no circumstances shall Reorganized IT Group or the Litigation