Trust have any responsibility or liability for such costs and expenses and under no circumstances shall such costs and expenses be paid from the Administrative Reserve or from the Administrative Surcharge.

In addition to all powers enumerated in the IT Environmental Liquidating Trust Agreement, from and after the transfer of the IT Environmental Liquidating Trust Assets into the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trust shall succeed to all of the rights of the Debtors necessary to protect, conserve, preserve, and liquidate all IT Environmental Liquidating Trust Assets, including but not limited to the enforcement of the Debtors' rights under agreements approved by prior orders of the Northern District of California and rights under prior orders of the Northern District of California. In that capacity, the IT Environmental Liquidating Trust shall have the exclusive power to prosecute, defend, compromise, settle and otherwise deal with all IT Environmental Liquidating Trust Assets subject to the terms and conditions of the IT Environmental Liquidating Trust Agreement, the Plan, and the Confirmation Order; provided, however, that the IT Environmental Liquidating Trustee shall file semi-annual status reports with the Northern District of California, with copies to counsel for the DTSC, and the United States Trustee. Such reports shall include actual expenditures from the previous twelve (12) month period and projected expenditures for the future twelve (12) month period.

Neither the IT Environmental Liquidating Trustee, nor any director, officer or employer of the IT Environmental Liquidating Trust or the LLCs shall be personally liable, in connection with the IT Environmental Liquidating Trust, to any Creditor or Beneficiary of the IT Environmental Liquidating Trust, or any other Person, except in the case of fraud, gross negligence or willful conduct. Neither the IT Environmental Liquidating Trustee nor any director, officer or employee of the IT Environmental Liquidating Trust shall be considered an "operator" of the Landfills. Persons who assert claims against the IT Environmental Liquidating Trust, shall look only to the IT Environmental Liquidating Trust Assets to satisfy any liability incurred by the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, or any director, officer or employee of the IT Environmental Liquidating Trust to carry out the terms of the Plan, the Confirmation Order and the IT Environmental Liquidating Trust Agreement. The IT Environmental Liquidating Trustee is entitled to rely upon and shall have no liability in relying upon the advice of professionals retained by the IT Environmental Liquidating Trust. This Section 7.10(11) is not to be construed as a waiver by the DTSC of any and all laws applicable to the activities of the IT Environmental Liquidating Trust, or of its rights, if any, under the Post Closure Insurance Policies.

Except as otherwise set forth in this Plan or in the IT Environmental Liquidating Trust Agreement, the IT Environmental Liquidating Trustee and any director, officer or employee of the IT Environmental Liquidating Trust (collectively, the "Indemnified ELT Parties") shall be defended, held harmless and indemnified from time to time by the IT Environmental Liquidating Trust (and not any other Person) against any and all losses, claims, costs, expenses and liabilities to which such Indemnified ELT Parties maybe subject by reason of such Indemnified ELT Party's execution of duties pursuant to the discretion, power and authority conferred on such Person by the IT Environmental Liquidating Trust Agreement, the Plan or the Confirmation Order; provided, however, that the indemnification obligations arising pursuant to this Section shall not indemnify the Indemnified ELT Parties for any actions taken by such Persons which constitute fraud, gross negligence or intentional breach of the Plan, Confirmation Order, or the IT Environmental Liquidating Trust Agreement. Satisfaction of any obligation of the IT Environmental Liquidating Trust arising pursuant to the terms of this Section shall be payable only from the IT Environmental Liquidating Trust Assets, including, if available, any insurance maintained by the IT Environmental Liquidating Trust. The indemnification provisions of the IT Environmental Liquidating Trust Agreement shall remain available to and be binding upon any future IT Environmental Liquidating Trustee or the estate of any decedent and shall survive termination of the IT Environmental Liquidating Trust.

The LLCs and the IT Environmental Liquidating Trust shall provide DTSC and its authorized officers, employees, representatives, as well as contractors, agents and consultants performing response actions under State of California oversight, right of access to the Landfills as required by the Permits. Notwithstanding any provision of this Plan, the State of California retains all of its access authorities and rights, including enforcement rights related thereto, under the Solid Waste Disposal Act, 42 U.S.C. § 6901 et. seq., and any other applicable State of California statute or regulation, including any amendments thereto. The LLCs and the IT Environmental Liquidating Trust do not waive, but retain all rights, claims, and causes of action against all non-governmental third parties which may gain access to the Landfills pursuant to the Plan or otherwise.

Prior to Termination, as defined in the IT Environmental Liquidating Trust Agreement, of the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee shall provide a final accounting as required by the Northern District of California.

Any conflicts between this Plan and the IT Environmental Liquidating Trust Agreement shall be resolved by reference to the terms of the IT Environmental Liquidating Trust Agreement

**7.11    Vesting of Assets of Debtors.**

Upon the occurrence of the Effective Date and except as otherwise provided in the Plan, title to all of the Assets of the Debtors shall vest in Reorganized IT Group, the respective reorganized Debtor, or the Litigation Trust (if applicable), free and clear of all Claims, Equity Interests, liens, security interests, encumbrances, and other interests  Subject to the Plan and direction by the Oversight Committee, Reorganized IT Group, any other reorganized Debtor, or the Litigation Trust (if applicable) may use, acquire and otherwise dispose of its Assets free of any restrictions of the Bankruptcy Code on and after the occurrence of the Effective Date.

**7.12    Reconstitution of Board of Directors.**

If applicable, the initial board of directors of Reorganized IT Group shall be composed of the individuals identified at or prior to the Confirmation Hearing  Effective as of the Effective Date, the current board of directors of the IT Group shall be dissolved and, if applicable, the board of directors of Reorganized IT Group shall be selected and determined in accordance with the provisions of the New Charter and the New By-Laws for Reorganized IT Group

**7.13    The New Charter and the New By-Laws.**

If applicable, upon the occurrence of the Effective Date, the charter and by-laws of Reorganized IT Group shall be amended and restated in substantially the form of the New Charter and New By-Laws, to, among other things, (a) prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of the New Charter as permitted by applicable law, and (b) otherwise effectuate the provisions of the Plan

**7.14    Cancellation of Instruments and Agreements.**

Upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, share certificates, instruments, indentures, or agreements evidencing, giving rise to, or governing any Claim or Equity Interest shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors under such promissory notes, share certificates, instruments, indentures, or agreements shall be discharged  The Indentures shall survive confirmation of the Plan solely to effectuate Distributions to be made to holders of the Old Notes as provided herein and to enforce the rights, duties and administrative functions of the Indenture Trustee as provided herein and therein with respect to such Distributions. Nothing in the Plan shall be deemed to impair, waive or discharge the Indenture Trustee's charging lien or any other rights or obligations of the Indenture Trustee under the Indentures  Upon final Distribution to the holders of the Old Notes pursuant to the Plan, the Indentures shall be canceled and deemed terminated, and the Indenture Trustee shall be discharged of any further duties, without any further act or action under any applicable agreement, law, regulations, order, or rule and the obligations of the Debtors under such Indentures shall be discharged.

**7.15    Expenses Incurred and Claims of the Indenture Trustee.**

The reasonable unpaid fees and expenses of the Indenture Trustee incurred in the performance of the Indenture Trustee's duties under the Indentures through the Effective Date shall be treated as an Allowed Administrative Claim to be paid in accordance with Article V of the Plan  From and after the Effective Date and subject to the approval of the Oversight Committee, Reorganized IT Group or, if applicable, the Litigation Trust,

shall, in the ordinary course of business and without the necessity of approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Indenture Trustee related to implementation and consummation of the Plan

7.16    Causes of Action.

Except as otherwise expressly provided in the Plan, all Causes of Action assertable by any of the Debtors or their Estates, successors or assigns, including but not limited to (i) the Causes of Action listed on Exhibit I annexed to the Plan, (ii) Avoidance Actions and Estate Causes of Action, and (iii) those Causes of Action hereinafter arising or discovered, regardless of when the facts giving rise to such Causes of Action arose or existed, shall be retained by, and vested in, Reorganized IT Group or, if applicable, the Litigation Trust, upon the occurrence of the Effective Date. Exhibit I to the Plan is a non-exhaustive list of the Causes of Action to be retained in connection with the Plan and the Plan Proponents reserve the right to amend that list up to the deadline for filing objections to the Plan  Except as otherwise provided in the Plan, the right of the Debtors, Reorganized IT Group, or the Litigation Trust to commence and prosecute such Causes of Action (including Avoidance Actions and Estate Causes of Action) shall be preserved notwithstanding consummation of the Plan  Any recovery realized by Reorganized IT Group or the Litigation Trust on account of such Causes of Action shall be the property of Reorganized IT Group or, if applicable, the Litigation Trust, and, except as otherwise provided in the Plan, distributed to holders of Allowed Claims or the holders of the beneficial interests in the Litigation Trust in accordance with the Plan. Failure to list any claim, right of action, suit or proceeding on Exhibit I to the Plan shall not constitute a waiver or release by the Committee, the Debtors, their Estates, Reorganized IT Group or the Litigation Trust of any such claim, right of action, suit or proceeding, and all such claims, rights of action suits or proceedings are hereby expressly reserved.

7.17    Approval of the Plan Settlement.

The Confirmation Order shall approve the Plan Settlement and authorize the parties to take all actions that are necessary or appropriate to implement and give effect to the Plan Settlement, subject to the occurrence of the Effective Date.

7.18    Employee Matters.

(a)     Upon the occurrence of the Effective Date, the Debtors shall remit any payments outstanding as of the Effective Date that are due and payable pursuant to the terms of that certain Severance/Retention Program approved by the Bankruptcy Court by order dated August 29, 2002.

(b)     Upon the occurrence of the Effective Date, the Soose Loans and accrued interest thereon shall be deemed to be forgiven. Within three (3) business days of the Effective Date, the Debtors shall remit all federal, state and local withholding taxes and all related interest associated with the loan forgiveness and the corresponding salary gross-up so that Harry J. Soose, Jr., incurs no personal out-of-pocket expenses

7.19    Special Provisions Regarding Insured Claims.

Distributions under the Plan to each holder of an Allowed Insured Claim against any Debtor shall be in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified, provided, however, that any Distribution under the Plan on account of an Allowed Insured Claim shall, for purposes of calculating the Allowed amount of such Claim, deduct the amount of any insurance proceeds actually received by such holder in respect of such Allowed Insured Claim  Nothing in this Section 7.19 shall constitute a waiver of any claim, right or Cause of Action the Debtors or their Estates may hold against any Person, including any Insurance Companies or other insurers. Pursuant to section 524(e) of the Bankruptcy Code, nothing in the Plan shall release or discharge any Insurance Company or other insurer from any obligations to any Person under applicable law or any policy of insurance under which a Debtor is an insured or beneficiary.

7.20    <u>Appointment of the Disbursing Agent.</u>

           Upon the occurrence of the Effective Date, Reorganized IT Group or, if applicable, the Litigation Trust, shall be appointed to serve as the Disbursing Agent with respect to all of the Debtors

7.21    <u>Sources of Cash for Plan Distributions.</u>

           All Cash necessary for the Disbursing Agent to make payments and Distributions pursuant to the Plan shall be obtained from existing Cash balances and the disposition of the Assets pursuant to the Plan

7.22    <u>Sources of Cash for Implementation of Plan.</u>

           Pursuant to the Plan Settlement, the Administrative Reserve shall be held in an account maintained by Reorganized IT Group or, if applicable, the Litigation Trust, to fund post-Effective Date administrative and related costs associated with administration of the Chapter 11 Cases and implementation of the Plan including, without limitation, the fees and costs of the Disbursing Agent, Reorganized IT Group, the Litigation Trust, the Plan Administrator, the Chief Litigation Officer and the Oversight Committee pursuant to the Plan. Notwithstanding the foregoing, under no circumstances shall the Administrative Reserve be used to fund any costs or expenses of, or relating to, the IT Environmental Liquidating Trust To the extent the Administrative Reserve is insufficient to fund administration of the Chapter 11 Cases and implementation of the Plan, an Administrative Surcharge against the Litigation Recoveries may be approved and authorized by (a) the Oversight Committee, or (b) the Bankruptcy Court upon application by the Plan Administrator, the Chief Litigation Officer, the Committee Designees, the Agent, the Lender Designees and/or the Oversight Committee, upon notice to Reorganized IT Group or the Litigation Trust (if applicable), the Plan Administrator, the Chief Litigation Officer, the Oversight Committee, the Agent and any other party in interest as directed by the Bankruptcy Court. Under no circumstances shall the Administrative Surcharge be used to fund any costs or expenses of, or relating to, the IT Environmental Liquidating Trust. In the event any moneys remain in the Administrative Reserve (including any moneys obtained as a result of any Administrative Surcharge) at the time of the final Distribution to be made pursuant to the Plan, such remaining moneys shall constitute Available Proceeds and shall be distributed as provided in Sections 4.1(c) and 4.1(d) of the Plan.

7.23    <u>Investment of Funds Held by the Disbursing Agent; Tax</u>
        <u>Reporting by the Disbursing Agent.</u>

           Subject to section 7.10(I)(f) of the Plan, the Disbursing Agent may, but shall not be required to, invest any funds held by the Disbursing Agent pending the distribution of such funds pursuant to the Plan in investments that are exempt from federal, state, and local taxes.

7.24    <u>Distributions under the Plan.</u>

           The Disbursing Agent shall make all Distributions required under the Plan. Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due. A Distribution shall be allocated to the principal amount of a Claim (as determined for federal income tax purposes) first and then, to the extent the Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

7.25    <u>Timing of Distributions under the Plan.</u>

           Except for the initial Distribution to holders of Allowed Lender Claims (which shall be made on the Effective Date), any Distribution to be made pursuant to the Plan other than Section 7.10(I) of the Plan shall be deemed to have been timely made if made within the ten (10) Business Days immediately following the applicable Distribution Date.

**A035**

7.26    Address for Delivery of Distributions under the Plan.

Subject to Bankruptcy Rule 9010, any Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth on the proof of Claim filed by such holder (or at the last known address of such holder if no proof of claim is filed or if the Disbursing Agent, the Debtors. Reorganized IT Group or the Litigation Trust Trustee, as the case may be, have been notified of a change of address), provided, that all Distributions under the Plan to the holders of Allowed General Unsecured Claims based on the Old Notes shall be made to the Indenture Trustee with respect thereto. All Distributions under the Plan to the holders of the Lender Claims shall be made to the Agent for Distribution to such holders. If any holder's Distribution or payment is returned to the Disbursing Agent as undeliverable, no further Distributions or payments to such holder shall be made unless and until the Disbursing Agent is notified of such holder's then current address within three months after such Distribution or payment was returned, at which time any missed Distribution or payment shall be made to such holder without interest.

7.27    Time Bar to Cash Payments.

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such check originally was issued. All Claims in respect of void checks as provided herein shall be discharged and forever barred and such unclaimed Distributions or payments shall revert to Reorganized IT Group or the Litigation Trust (if applicable)

7.28    Manner of Payment under the Plan.

Unless the Person receiving a Distribution agrees otherwise, any Distribution to be made in Cash under the Plan shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank.

7.29    Expenses Incurred on or after the Effective Date and
Claims of the Disbursing Agent.

Professional fees and expenses incurred by the Disbursing Agent from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of business by Reorganized IT Group or the Litigation Trust (if applicable)  Any dispute regarding compensation shall be resolved by agreement of the parties or if the parties are unable to agree, as determined by the Bankruptcy Court.

7.30    Fractional Distributions.

Notwithstanding anything to the contrary contained herein, no Cash payments of fractions of cents and no fractional distributions of shares of the Shaw Stock shall be made. Fractional cents shall be rounded down to the nearest whole cent. Fractional shares shall be rounded down to the next-lower whole number of shares.

7.31    Corporate Action.

On the Effective Date, if applicable, the adoption of the New Charter, the filing by Reorganized IT Group of the New Charter and the adoption of the New By-Laws and the other corporate actions, as contemplated by Article VII of the Plan, shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order, or rule, including, without express or implied limitation, any action by the stockholders or directors of the Debtors. On the Effective Date or as soon thereafter as is practicable, Reorganized IT Group shall file with the Secretary of State of the State of Delaware its New Charter (if applicable). On the Effective Date, any other matters provided under the Plan involving the corporate structure of the Debtors or corporate action by the Debtors shall be deemed to have occurred, be authorized, and shall be in effect from and after the Effective Date without requiring further action under applicable law, regulation, order, or rule, including, without express or implied limitation, any action by the stockholders or directors of the Debtors.

7.32    Effectuating Documents and Further Transactions.

Each of the officers of the Debtors and/or Reorganized IT Group or the Litigation Trust Trustee (if applicable) is authorized, in accordance with his or her authority under the resolutions of the boards of directors, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and provisions of the Plan.

ARTICLE VIII.
PROCEDURES FOR RESOLVING
AND TREATING CONTESTED CLAIMS

8.1    Objection Deadline.

As soon as practicable, but in no event later than one hundred and eighty (180) days after the Effective Date (subject to being extended by the Bankruptcy Court upon motion of the Disbursing Agent without notice or a hearing), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

8.2    Prosecution of Contested Claims.

The Disbursing Agent may object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 8.3 of the Plan.

8.3    Claims Settlement Guidelines.

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date all Claims may be compromised and settled by the Disbursing Agent according to the following procedures:

(a)    Subject to Subsection 8.3(b) of the Plan, the following settlements or compromises do not require the review or approval of the Bankruptcy Court or any other party in interest:

(i)    The settlement or compromise of a Claim pursuant to which such Claim is Allowed in an amount of $250,000 or less; and

(ii)    The settlement or compromise of a Claim where the difference between the amount of the Claim listed on the Debtors' Schedules and the amount of the Claim proposed to be Allowed under the settlement is $250,000 or less; and

(b)    The following settlements or compromises shall be submitted to the Bankruptcy Court for approval:

(i)    Any settlement or compromise not described in subsection 8.3(a) of the Plan; and

(ii)    Any settlement or compromise of a Claim that involves an "insider," as defined in section 101(31) of the Bankruptcy Code.

8.4    No Distributions Pending Allowance.

Notwithstanding any other provision of the Plan, no payment or Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim, subject to the Debtors' setoff rights as provided in Section 13.17 of the Plan. All cash or other

**A037**

property that would have otherwise have been distributed with respect to a Contested Unsecured Claim shall be transferred to the Contested Unsecured Claims Reserve and maintained by the Disbursing Agent in accordance with the principles of this Article VIII.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Disbursing Agent of a private letter ruling if the Disbursing Agent so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Disbursing Agent), the Disbursing Agent shall (i) treat the Contested Unsecured Claims Reserve as a discrete trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Contested Unsecured Claim, in accordance with the trust provisions of the Internal Revenue Code (sections 641 et seq.) and (ii) to the extent permitted by applicable law, report consistently for state and local income tax purposes. In addition, pursuant to the Plan, all parties (including holders of Contested Unsecured Claims) shall report, for tax purposes, consistently with such treatment. The Disbursing Agent may request an expedited determination of taxes of the Contested Unsecured Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of the Contested Unsecured Claims Reserve for all taxable periods through the dissolution of the Contested Unsecured Claims Reserve.

8.5    **Distributions After Allowance.**

Payments and Distributions to each holder of a Contested Claim, to the extent that such Claim ultimately becomes Allowed, shall be made in accordance with the provision of the Plan governing the class of Claims to which the Allowed Claim belongs. No interest shall be paid on account of a Contested Claim which later becomes an Allowed Claim.

8.6    **Estimation of Claims.**

The Disbursing Agent may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated or Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Disbursing Agent has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contested Claim, that estimated amount shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Disbursing Agent may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

ARTICLE IX.
CONDITIONS PRECEDENT TO
CONFIRMATION OF THE PLAN AND
THE OCCURRENCE OF THE EFFECTIVE DATE

9.1    Conditions Precedent to Confirmation.

The following are conditions precedent to confirmation of the Plan.

(a)    The Clerk of the Bankruptcy Court shall have entered an order or orders, which may be the Confirmation Order, approving the Plan Documents, authorizing the Debtors to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to, the transactions contemplated by the Plan and the Plan Documents.

(b)    The Confirmation Order shall be, in form and substance, acceptable to the Plan Proponents and the Agent.

9.2    <u>Conditions Precedent to the Occurrence of the Effective Date</u>.

The following are conditions precedent to the occurrence of the Effective Date:

(a)    The Confirmation Order shall have been entered by the Clerk of the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction.

(b)    All necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan, including, without limitation, satisfaction or waiver of all conditions to the obligations of the Debtors under the Plan and the Plan Documents.

9.3    <u>Waiver of Conditions</u>.

The Committee and the Agent may waive any of the conditions set forth in Sections 9.1 and 9.2 of the Plan in writing.

9.4    <u>Effect of Failure of Conditions to Effective Date</u>

In the event the conditions specified in Section 9.2 of the Plan have not been satisfied or waived, and upon written notification submitted by the Plan Proponents or the Agent to the Bankruptcy Court, (a) the Confirmation Order shall be vacated; (b) no Distributions under the Plan shall be made; (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (d) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors, the Committee, the Prepetition Lenders or any other entity in any further proceedings involving the Debtors.

ARTICLE X.
<u>THE DISBURSING AGENT</u>

10.1    <u>Powers and Duties</u>.

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall be empowered and directed to (a) take all steps and execute all instruments and documents necessary to make Distributions to holders of Allowed Claims; (b) make Distributions contemplated by the Plan; (c) comply with the Plan and the obligations thereunder; (d) employ, retain, or replace professionals to represent it with respect to its responsibilities; (e) object to Claims as specified in Article VIII of the Plan, and prosecute such objections; (f) make such periodic reports as requested by the Oversight Committee with respect to the status of Distributions under the Plan; and (h) exercise such other powers as set forth in the Plan or as requested by the Oversight Committee.

10.2    <u>Distributions</u>.

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall on the applicable Distribution Date, make the required Distributions specified under the Plan. Notwithstanding the foregoing, the Disbursing Agent may make Distributions under the Plan to holders of Allowed General Unsecured Claims at such times as the Disbursing Agent (in consultation with the Committee Designees) reasonably determines the making of such Distributions are practicable in light of any Estimated Claims Order or other unresolved issues affecting Distributions to such holders.

10.3    <u>Exculpation</u>.

Except as otherwise provided in this Section 10.3 and in addition to Section 13.5 of the Plan, the Disbursing Agent, together with its officers, directors, employees, agents, and representatives, are hereby exculpated by all Persons, holders of Claims and Equity Interests, and all other parties in interest, from any and all Causes of

Action. and other assertions of liability (including breach of fiduciary duty) arising out of the discharge of the powers and duties conferred upon the Disbursing Agent by the Plan. any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law. except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence  No holder of a Claim or an Equity Interest, or representative thereof. shall have or pursue any claim or cause of action against the Disbursing Agent or its officers, directors, employees, agents. and representatives for making payments or Distributions in accordance with the Plan  Nothing contained in this Section 10.3 shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court to compel the making of Distributions contemplated by the Plan on account of such Allowed Claim

## ARTICLE XI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1    Assumption of Executory Contracts and Unexpired Leases.

Pursuant to section 365 of the Bankruptcy Code. Exhibit 2 to the Plan sets forth a list of executory contracts and unexpired leases, together with the amount, if any, required to cure any defaults, to be assumed under the Plan by the Debtors  Subject to the occurrence of the Effective Date, any executory contracts or unexpired leases listed on Exhibit 2 to the Plan, as such may be amended prior to the Confirmation Hearing, shall be deemed to have been assumed by the Debtors on the Effective Date. The Plan shall constitute a motion to assume such executory contracts and unexpired leases. Subject to the occurrence of the Effective Date, the Confirmation Order shall constitute approval of such assumptions pursuant to section 365 of the Bankruptcy Code and findings by the Bankruptcy Court that the amounts listed on Exhibit 2 are sufficient to cure any defaults that may exist, that each assumption is in the best interest of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases and that the requirements for assumption of such executory contracts or unexpired leases under section 365 of the Bankruptcy Code have been satisfied. Except as otherwise provided in the following sentence, all cure payments which may be required by section 365(b)(1) of the Bankruptcy Code under any executory contract or unexpired lease which is assumed under the Plan shall be made by the Debtors on the Effective Date or as soon as practicable thereafter. In the event of a dispute, cure payments required by section 365(b)(1) of the Bankruptcy Code shall be paid upon entry of a Final Order resolving such dispute. At this time, no executory contracts or unexpired leases have been identified in Exhibit 2, but the Plan Proponents reserve the right to identify any such contracts or leases prior to the Confirmation Hearing

Pursuant to section 365 of the Bankruptcy Code, Exhibit 3 to the Plan sets forth a list of executory contracts and unexpired leases, together with the amount, if any, required to cure any defaults, to be assumed under the Plan by the Debtors and assigned to the IT Environmental Liquidating Trust. Any executory contracts or unexpired leases listed on Exhibit 3 to the Plan, as such may be amended prior to the Confirmation Hearing, shall be deemed to have been assumed by the Debtors and assigned to the IT Environmental Liquidating Trust on and subject to the occurrence of the Effective Date. The Debtors are relieved of any liability with respect to the executory contracts and unexpired leases listed on Exhibit 3 to the Plan pursuant to section 365(k) of the Bankruptcy Code. In addition, the IT Environmental Liquidating Trust shall satisfy all of the Debtors' obligations to cure defaults and compensate for damages with respect to any of the executory contracts and unexpired leases listed on Exhibit 3 to the Plan pursuant to section 365(b) of the Bankruptcy Code.

11.2    Rejection of Executory Contracts and Unexpired Leases.

Any executory contracts or unexpired leases of any of the Debtors that (a) are not listed on Exhibits 2 or 3 to the Plan, (b) have not been approved by the Bankruptcy Court prior to the Confirmation Date for assumption and assignment by any of the Debtors or rejection by any of the Debtors, and (c) are not the subject of pending motions to assume on the Confirmation Date shall be deemed to have been rejected by the Debtors effective as of the Effective Date. Notwithstanding the forgoing, the assumption and assignment of the operating agreement of Space Gateway Support LLC shall be completed pursuant to the Bankruptcy Court's order dated June 20, 2002 (docket number 1733)  The Plan shall constitute a motion to reject all such executory contracts and unexpired leases, and the Debtors shall have no liability thereunder except as is specifically provided in the Plan. The Confirmation Order shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected executory contract or unexpired lease is burdensome

A040

and that the rejection thereof is in the best interest of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases

11.3   Claims Arising from Rejection or Termination.

   Claims created by the rejection of executory contracts or unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtors (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the later of the Bar Date Order or thirty (30) days after the date of the order of the Bankruptcy Court authorizing and approving such rejection, or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date, or (ii) is deemed rejected pursuant to Section 11.2 of the Plan, no later than thirty (30) days after the Confirmation Date, or (c) in the case of an executory contract or unexpired lease that is rejected by the Debtors after the Confirmation Date, within thirty (30) days after the date of the order of the Bankruptcy Court authorizing and approving such rejection. Any Claims for which a proof of claim is not filed and served within such time shall be forever barred from assertion and shall not be enforceable against the Debtors, Reorganized IT Group, the Litigation Trust, or their respective estates, assets, properties, or interests in property. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan subject to objection as provided in the Plan.

**ARTICLE XII.**
**RETENTION OF JURISDICTION.**

   Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases, the Plan or the Litigation Trust, or (c) that relates to any of the following:

   (i) To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XI of the Plan for the assumption and/or assignment or rejection of executory contracts or unexpired leases to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, and to hear and determine any and all Claims resulting therefrom or from the expiration or termination of any executory contract or unexpired lease;

   (ii) To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted after the Effective Date, including, without express or implied limitation, any Avoidance Actions or Estate Causes of Action;

   (iii) To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

   (iv) To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

   (v) To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

   (vi) To hear and determine all applications for allowances of compensation and reimbursement of expenses of Professional Persons under sections 330 and 331 of the Bankruptcy Code and any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

**A041**

(vii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan, including the exhibits to the Plan, or the Plan Documents or their interpretation, implementation, enforcement, or consummation;

(viii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

(ix)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan Settlement or its interpretation, implementation, enforcement, or consummation;

(x)    To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or cause of action by or against the Debtors' estates;

(xi)    To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order;

(xii)    To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors, Reorganized IT Group, the Litigation Trust or the Disbursing Agent may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xiii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtors or any Person;

(xiv)    To hear and determine all Causes of Action and all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with Causes of Action;

(xv)    To enter an order or final decree closing the Chapter 11 Cases;

(xvi)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xvii)    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xviii)    To hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

13.1    Payment of Statutory Fees.

All Statutory Fees accrued through and including the Effective Date shall be paid by the Debtors on or before the Effective Date, and after the Effective Date, Reorganized IT Group or the Litigation Trust (if applicable) shall pay all required Statutory Fees in the ordinary course of business.

13.2    Discharge of the Debtors.

The rights afforded in the Plan and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued thereon from and after the Petition Date, against the Debtors and the

debtors in possession. or any of their Estates, Assets. properties, or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims against and Equity Interests in the Debtors shall be satisfied, discharged, and released in full. The Debtors shall not be responsible for any obligations of the Debtors, except those expressly provided by any of the Debtors in the Plan. Except as otherwise provided herein, all Persons shall be precluded and forever barred from asserting against the Debtors, Reorganized IT Group, the Litigation Trust, their respective successors or assigns, or their respective Assets, properties, or interests in property any other or further Claims or Equity Interests based upon any act or omission. transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date

13.3    **Third Party Agreements: Subordination.**

The Distributions to the various classes of Claims hereunder shall be in full satisfaction of the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such Distributions by reason of any claimed subordination rights or otherwise. On and subject to the occurrence of the Effective Date, all of such rights and any agreements relating thereto shall be canceled and annulled and of no further force or effect. In accordance with section 510(b) of the Bankruptcy Code, a Claim arising from rescission of a purchase or sale of a security of the Debtors or of an Affiliate of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim, shall be subordinated to all Claims that are senior to or equal the Claim or Equity Interest represented by such security, except that if such security is common stock, such Claim has the same priority and treatment as Class 5 - Equity Interests.

13.4    **Dissolution of Committee.**

The appointment of the Committee shall terminate on the later of (a) the Effective Date, and (b) the date the last order of the Bankruptcy Court allowing or disallowing a Fee Claim becomes a Final Order. Upon such termination, the members of the Committee shall thereupon be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Chapter 11 Cases, and the Committee shall be deemed dissolved, unless prior thereto the Bankruptcy Court shall have entered an order extending the existence of the Committee.

13.5    **Exculpation.**

None of the Plan Proponents, the Agent, the Prepetition Lenders, the Disbursing Agent or any of their respective members, officers, directors, employees, attorneys, advisors, professionals, consultants or agents shall have or incur any liability to any Person for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, including, without limitation, the commencement of the Chapter 11 Cases, the negotiation of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as determined by Final Order of the Bankruptcy Court, and in all respects shall be entitled to rely upon the advice of counsel and all information provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under, or in connection with, the Plan.

13.6    **Title to Assets: Discharge of Liabilities.**

Except as otherwise provided in the Plan. on the Effective Date. title to all Assets shall vest in Reorganized IT Group or Litigation Trust, if applicable, free and clear of all Claims, Equity Interests, liens, security interests, encumbrances, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors, except as provided in the Plan. Except as otherwise provided in the Plan, all holders of Claims and Equity Interests shall be precluded from asserting against the Debtors, Reorganized IT Group, the Litigation Trust, the Assets, or any property dealt with under the Plan, any or other further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

13.7    Surrender and Cancellation of Instruments.

On the Effective Date, except as otherwise provided in the Plan, all promissory notes, instruments, securities and agreements evidencing a Claim or Equity Interest shall be canceled. At the option of the Disbursing Agent, no Distribution hereunder shall be made to or on behalf of any holder of any Claim (other than a Lender Claim), unless and until such promissory note, instrument, security or agreement is surrendered or the unavailability thereof is reasonably established to the satisfaction of the Disbursing Agent and such holder of a Claim or Equity Interest executes and delivers any documents necessary to release all encumbrances arising under any applicable security agreement or nonbankruptcy law and such other documents as the Disbursing Agent may reasonably request. In accordance with section 1143 of the Bankruptcy Code, any such holder of a Claim (other than a Lender Claim) that fails to surrender or cause to be surrendered such promissory note, instrument, security or agreement or to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Disbursing Agent and, in the event that the Disbursing Agent requests, furnish a bond in form and substance reasonably satisfactory to the Disbursing Agent (including, without limitation, amount), shall be deemed to have forfeited all rights, claims, and interests and shall not participate in any Distribution hereunder (to the extent otherwise entitled).

13.8    Notices.

Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to:    The IT Group, Inc , et al. (including, if applicable the Litigation Trust)
Attention  Plan Administrator
2790 Mosside Boulevard
Monroeville, PA  15146-2792
Telephone:  (412) 858-3345
Telecopier:  (412) 858-3311

*With a copy to*

Skadden, Arps, Slate, Meagher & Flom LLP
Attention: Gregg M. Galardi, Esq.
One Rodney Square
PO Box 636
Wilmington, DE 19899
Telephone: (302) 651-3000
Telecopier: (302) 651-3001

*and*

White & Case LLP
Attention. John K. Cunningham, Esq.
200 South Biscayne Boulevard
Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Telecopier: (305) 358-5744

*and*

The Bayard Firm
Attention: Jeffrey M. Schlerf, Esq.
222 Delaware Ave., 9th Floor
Wilmington, DE  19899
Telephone: (302) 655-5000
Telecopier: (302) 658-6395

A044

*and*

Weil, Gotshal & Manges LLP
Attention  Stephen Karotkin, Esq.
767 Fifth Avenue
New York, NY 10153
Telephone  (212) 310-8000
Telecopier: (212) 310-8007

If to.     Committee and/or Committee Designees

Attention:  Murray Hutchison, Co-Chairperson
P.O. Box 2231
Rancho Santa Fe, CA 92067
Telephone: (858) 756-9777
Telecopier: (858) 756-9245

Attention   Daniel Arbess, Co-Chairperson
110 East 59th Street
34th Floor
New York, NY 10017
Telephone. (212) 829-2540
Telecopier: (212) 829-2599

*With a copy to*

White & Case LLP
Attention:  John K. Cunningham, Esq.
200 South Biscayne Boulevard
Suite 4900
Miami, FL  33131
Telephone: (305) 371-2700
Telecopier: (305) 358-5744

If to:     Agent, Prepetition Lenders and/or Lender Designees
Attention: Marni McManus
Citigroup
250 West Street
8th Floor
New York, NY 10013
Telephone:  (212) 816-7461
Telecopier:  (212) 816-7736

*With a copy to*

Weil, Gotshal & Manges LLP
Attention: Stephen Karotkin, Esq.
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Telecopier: (212) 310-8007

13.9     <u>Headings</u>.

  The headings used in the Plan are inserted for convenience only, and neither constitute a portion of
the Plan nor in any manner affect the construction of the provisions of the Plan.

**A045**

13.10   <u>Governing Law</u>.

        Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

13.11   <u>Expedited Determination</u>.

        The Disbursing Agent is hereby authorized to file a request for expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtors through and including the dissolution of the Debtors.

13.12   <u>Exemption from Transfer Taxes</u>.

        Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

13.13   <u>Notice of Entry of Confirmation Order and Relevant Dates</u>.

        Promptly upon entry of the Confirmation Order, the Committee shall publish on behalf of the Plan Proponents as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and Equity Interests in accordance with Bankruptcy Rule 3020(c)(2), notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, including, but not limited to, the deadline for filing notice of Administrative Claims (Section 5.1 of the Plan), and the deadline for filing rejection damage claims (Section 11.3 of the Plan).

13.14   <u>No Interest or Attorneys' Fees</u>.

        Except as expressly stated in the Plan, or as allowed by the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date, and no award or reimbursement of attorneys fees or related expenses or disbursements, shall be allowed on, or in connection with, any Claim.

13.15   <u>Modification of the Plan</u>.

        The Plan Proponents may alter, amend, or modify the Plan or any exhibits under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date, provided all Plan Proponents and the Agent have agreed to such alteration, amendment or modification. The Plan Proponents (with the consent of the Agent) may modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications. A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

13.16   <u>Revocation of Plan</u>.

        The Plan Proponents (with the consent of the Agent) reserve the right to revoke and withdraw the Plan as to any Debtor prior to the occurrence of the Effective Date. If the Plan Proponents (with the consent of the Agent) revoke or withdraw the Plan as to any Debtor, or if the Effective Date does not occur as to any Debtor, then, as to such Debtor the Plan and all settlements set forth in the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims against or Equity Interests in such

Debtor or to prejudice in any manner the rights of the Debtors or any Person in any other further proceedings involving such Debtor

**13.17    Setoff Rights.**

Except as provided elsewhere herein, in the event that the Debtors have a claim of any nature whatsoever against the holder of a Claim, the Debtors, Reorganized IT Group or, if applicable, the Litigation Trust, may, but are not required to, setoff against the Claim (and any payments or other Distributions to be made in respect of such Claim hereunder) any claims the Debtors' may have against the holder   Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release of any claims that the Debtors have against the holder of a Claim.

**13.18    Compliance with Tax Requirements.**

In connection with the Plan, the Debtors, Reorganized IT Group, the Litigation Trust and the Disbursing Agent, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such Distribution. The Disbursing Agent has the right, but not the obligation, to not make a Distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations

**13.19    Injunctions.**

Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold, or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust or the Assets, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust or the Assets, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group or the Litigation Trust, and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Debtor or against the property or interests in property of any Debtor, with respect to any such Claims or Equity Interests; provided, however, that the foregoing shall not affect the rights of a party that were obtained pursuant to a Final Order of the Bankruptcy Court granting limited relief from the automatic stay under section 362(d) of the Bankruptcy Code.

**13.20    Term of Injunctions or Stays**

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**13.21    Injunction Against Interference With Chapter 11 Plan.**

Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

13.22    Officers and Directors

Notwithstanding anything contained in the Plan to the contrary, nothing in the Plan or Confirmation Order (except as expressly set forth in Section 13 5 of the Plan with respect to post-Petition Date conduct or the decision to commence the Chapter 11 Cases) shall, or shall be deemed to, release, waive or relinquish any rights, claims or Causes of Action that the Debtors, their Estates, Reorganized IT Group, the Litigation Trust or any other Person may have against any current or former officer, director or insider of any of the Debtors (other than Harry J. Soose, Jr , except to the extent of available director and officer insurance coverage). All of such rights, claims and Causes of Action are reserved and preserved.

13.23    Binding Effect.

The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of all Claims and Equity Interests, and their respective successors and assigns. To the extent any provision of the Disclosure Statement may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

13.24   Severability.

SHOULD THE BANKRUPTCY COURT DETERMINE THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, THE PLAN PROPONENTS MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 13.15 TO REMEDY SUCH UNENFORCEABILITY. SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

Dated:   February __9__, 2004

Respectfully submitted,

Official Committee of Unsecured Creditors
of The IT Group, Inc.

By: _____
        Daniel Arbess
Title:    Co-Chairperson


By: _____
        Murray Hutchison
Title:    Co-Chairperson


The IT Group, Inc.,
as Debtors and debtors-in-possession


By: _____
        Harry J. Soose, Jr.
Title:    Chief Operating Officer

MIAMI 447264 v7 (2K)

**A049**

13.24   Severability.

SHOULD THE BANKRUPTCY COURT DETERMINE THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, THE PLAN PROPONENTS MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 13.15 TO REMEDY SUCH UNENFORCEABILITY.  SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

Dated:   February _9_ , 2004

Respectfully submitted,

Official Committee of Unsecured Creditors
of The IT Group, Inc.

By:_____
        Daniel Arbess
Title:   Co-Chairperson

By:_____
        Murray Hutchison
Title:   Co-Chairperson

The IT Group, Inc.,
as Debtors and debtors-in-possession

By:_____
        Harry J. Soose, Jr.
Title:   Chief Operating Officer

MIAMI 447264 v7 (2K)

TOTAL P.03

**A050**

13.24   Severability.

SHOULD THE BANKRUPTCY COURT DETERMINE THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION. THE PLAN PROPONENTS MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 13.15 TO REMEDY SUCH UNENFORCEABILITY. SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

Dated:  February  9   , 2004

Respectfully submitted,

Official Committee of Unsecured Creditors
of The IT Group, Inc.

By _____
       Daniel Arbess
Title:    Co-Chairperson


By: _____
       Murray Hutchison
Title:    Co-Chairperson


The IT Group, Inc.,
as Debtors and debtors-in-possession

By: _____
       Harry J. Soose, Jr.
Title:    Chief Operating Officer

## EXHIBIT 1

1.  Any claims, rights and causes of action already initiated by the Debtors (including by way of counterclaim or cross-claim) prior to the Effective Date through which the Debtors seek affirmative relief.

2.  Any claims against any person, company or entity that provided or provides insurance to the Debtors for any failure to provide contractual coverage.

3.  Any and all claims under the Debtors' excess coverage insurance policies.

4.  Any and all claims, including claims for contribution, reimbursement or indemnification under any of the Debtors' directors and officers liability policies.

5.  Any and all claims, including claims for contribution, reimbursement or indemnification, under any other policy of insurance, including the Debtors' general liability insurance policies.

6.  Any claims for acts or omissions of the Debtors' (i) present and former officers, directors, insiders and accountants and (ii) prepetition advisors, agents and other professional persons.

7.  Any claims under 11 U.S.C. §§ 510, 542-45, 547-551 and 553, whether such actions are already initiated, to be initiated or initiated subsequent to the Effective Date.

8.  Any other litigation or Causes of Action, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtors businesses, assets or operations or otherwise affecting the Debtors, including, without limitation, possible claims against the following types of parties for the following types of claims:

    a.  Possible claims against vendors, customers or suppliers for warranty, indemnity, back charge/setoff issues, overpayment or duplicate payment issues and collections/accounts receivables matters;

    b.  Failure of any persons or parties to fully perform under contracts with the Debtors before the assumption or rejection of the subject contracts;

    c.  Mechanic's lien claims of the Debtors;

    d.  Possible claims for deposits or other amounts owed by any creditor, lessor, utility, supplier, vendor, factor or other person;

    e.  Possible claims for damages or other relief against any party arising out of employee, management or operational matters;

    f.  Possible claims for damages or other relief against any party arising out of financial reporting;

    g.  Possible claims for damages or other relief against any party arising out of environmental and product liability matters; and

h.    Possible claims against local, state and federal taxing authorities (including, without limitation, any claims for refunds of overpayments)

9     Any other Causes of Action

THE PLAN PROPONENTS RESERVE THE RIGHT TO AMEND THIS EXHIBIT TO INCLUDE ADDITIONAL CLAIMS AND CAUSES OF ACTION.  THIS EXHIBIT IS NOT INTENDED TO BE AN EXHAUSTIVE LIST OF THE CLAIMS, CAUSES OF ACTION, SUITS OR PROCEEDINGS, WHETHER IN LAW OR EQUITY, WHETHER KNOW OR UNKNOWN, THAT THE DEBTORS, THEIR ESTATES, SUCCESSORS OR ASSIGNS MAY HOLD AGAINST ANY PERSON, WHICH ARE RETAINED PURSUANT TO THE PLAN

CLAIMS RELEASED PURSUANT TO THE PLAN SETTLEMENT SHALL NOT BE RETAINED.

**A053**

## EXHIBIT 2

### Executory Contracts and Unexpired Leases
### to be Assumed by the Debtors

At this time, no executory contracts or unexpired leases have been identified in Exhibit 2, but the Plan Proponents reserve the right to identify any such contracts or leases prior to the Confirmation Hearing.

**A054**

EXHIBIT 3

Executory Contracts to be Assumed and
Assigned to the IT Environmental Liquidating Trust

## EXHIBIT 3

### Executory Contracts to be Assumed and Assigned
### to the IT Environmental Liquidating Trust[1]

A.    IT Corporation

1.    *California Environmental Protection Agency*
Department of Toxic Substances Control
8800 Cal Center Drive
Sacramento, CA 95826-3200
*Consent Order No. 509105*
*Stipulation and Order Amending No. 509105*
Set compliance schedule/corrective actions for all NCS facilities
*Consent Agreement and Order No. 299190*
*Stipulation for Entry of Modifications to Consent Agreement and Order No. 299190*
Set compliance schedule/corrective actions for all NCS facilities
*Order Specifying Schedule for Compliance or*
*Correction Docket No. HWCA 85/86-026*
Set compliance schedule/corrective actions for all NCS facilities

2.    *Contractors State License Board*
P.O. Box 26999
Sacramento, CA 95826
*Contractors License No. 137422*
Contractors license for construction work at IT Corporation's facilities
-Annual renewal fees

3.    *Bank of America*
70 Solano Square
Benicia, CA 94510
*Account #010-51-099-62*
Petty cash imprest balance $8,000.00

4.    *Employees*

a)    Eric C. Diethelm
867 Hanlon Way
Benicia, CA 94510

b)    Timothy A. Lebel
164 Mt. View
Vallejo, CA 94590

---

[1] Nothing contained herein shall be deemed an admission by the Debtors that any contract, lease or other agreement listed on this Exhibit is, in fact, an executory contract or an unexpired lease. The Debtors specifically reserve their right to argue that (i) any such contract, lease or other agreement is not an executory contract or an unexpired lease and (ii) any such contract, lease or other agreement is severable.

c)    Miguel Martinez
      307 E. Tennessee Street
      Fairfield, CA  94533

d)    Miguel R. Martinez
      1433 Hawaii Street
      Fairfield, CA  94533

e)    Pedro Martinez
      4180 Cadenasso Lane
      Suisun, CA  94585

f)    Barry B. Morris
      89 Breaker Drive
      Pittsburg, CA  94565

g)    Richard R. Swanson
      925 Mulberry Court
      Antioch, CA  94509

h)    Jose Valle
      2376 Fairfield Ave., No. 29
      Fairfield, CA  94533

**B.    Panoche Site**

1.    *Bay Area Air Quality Management District*
      939 Ellis Street
      San Francisco, CA  94109
      *Permit to Operate – Plant 186*
      Permit to operate all sources of air emissions at the facility -Annual renewal fees
      *Authority to Construct 7487*
      Authority to construct and start-up Soil Vapor Extraction System for DBA-V remediation

2.    *California Environmental Protection Agency*
      Department of Toxic Substances Control
      8800 Cal Center Drive
      Sacramento, CA  95826-3200
      *Corrective Action Consent Agreement – Docket No. HWCA 96/97-2005*
      *Corrective Action Consent Agreement Addendum – Docket No. HWCA 96/97-2005A*
      *First Amendment to Corrective Action Consent Agreement – Docket No. HWCA 96/97-2005*
      Remediation of Drum Burial Area V
      *Consent Agreement HWCA 94/95-046*
      *Attachment A Modification of Consent Agreement HWCA 94/95-046*
      Management of onsite generated groundwater
      *Consent Order HWCA P2-97/98-010*
      Establishment of a Corrective Action Management Unit (CAMU)
      *Revised Part A Permit CAD000060012*
      Permit for operation of a Hazardous Waste Treatment and Disposal Facility (TSDF)
      *Post-Closure Permit CAD000060012*
      Permit for post-closure care, groundwater monitoring and corrective action for groundwater contamination

**A057**

3.    *Solano County Department of Environmental Management*
      Environmental Health Division
      270 Chadbourne Rd., Suite 200
      Fairfield, CA  94534
      *Solid Waste Permit 38534*
      Annual permit for closed Class I Landfill  – Annual renewal fees
      *Land Use Permit R-708*
      Permit authorizing use of land for Class I Disposal and Recycling of Industrial Waste
      *Land Use Permit U-90-30*
      Permit authorizing establishment of borrow area for surface mining for solidifying ponds.
      Also allowed construction/placement of Visitor's Center trailer at the facility
      *Land Use Permit U-91-42, Marsh Development Permit MD-91-06, Reclamation Plan
      Permit RP-091-03*
      Permits authorizing closure construction activities in the soil borrow areas
      *Grading Permit G2001-076*
      Permit authorizing grading activities for the DBA-V SACS Trench

4.    *State of California Department of Conservation*
      Office of Mine Reclamation
      801 K Street, MS 09-06
      Sacramento, CA  95814-3529
      *Mining Operation Annual Report – CA Mine ID#91-48-0008*
      Mining operation annual report for borrow area at the facility – Annual recording fees

5.    *State of California Department of Water Resources*
      Division of Safety of Dams
      P.O. Box 942836
      Sacramento, CA  94236-0001
      *Certificate of Approval – Dam No. 449*
      Inspection and maintenance of Pond 2B dam – Annual dam fee

6.    *State of California Department of Industrial Relations*
      Division of Occupational Safety and Health
      Pressure Vessel Unit
      P.O. Box 420603
      San Francisco, CA 94142-0603
      *Permit to Operate Air Pressure Tank – State Serial Nos. A001992-96 & A002136-03*
      Permit to operate air pressure tank – Renewal and fees every five (5) years

7.    *State Water Resources Control Board*
      1001 I Street
      Sacramento, CA  95814
      *Construction Storm Water General Permit (CSWGP) WDID 248S302593*
      Permit authorizing management of storm water for construction activities associated with
      the final DBA-V remediation work and borrow reclamation.
      *Industrial Storm Water General Permit (ISWGP) WDID 248S017728*
      Permit authorizing management of storm water for industrial activities associated with
      the closed landfill.

8.    *Army Corp of Engineers*
      211 Main Street
      San Francisco, CA  94105-1905
      *Nationwide Permit – File 20077E95*
      Permit to construct sedimentation basin/equipment access crossing downgradient of Pond
      2B

**A058**

9.   *California Regional Water Quality Control Board*
     San Francisco Bay Region
     1515 Clay Street, 14th Floor
     Oakland, CA  94612
     *Waste Discharge Requirements (WDRs) 98-091*
     Permit authorizes discharge into and management of impacted groundwater in facility's
     water management system – Annual Renewal fees

C.   **Vine Hill Complex**

1.   *Acme Fill Corporation*
     737 Arnold Drive
     Martinez, CA 94553
     *Joint Slurry Wall and Security Fence Agreement*
     Agreement for access, inspections, repairs and maintenance of joint slurry wall and
     security fence – Term of agreement ten (10) years

2.   *Bay Area Air Quality Management District*
     939 Ellis Street
     San Francisco, CA  94109
     *Permit to Operate – Plant 209*
     Permit to operate all sources of air emissions at the facility -Annual renewal fees

3.   *California Environmental Protection Agency*
     Department of Toxic Substances Control
     8800 Cal Center Drive
     Sacramento, CA  95826-3200
     *Corrective Action Consent Agreement – Docket No. HWCA 95/96-035*
     Set compliance schedule/corrective actions
     *Consent Order Specifying Schedule for Compliance – Docket No. HWCA 85/86-027*
     Operation and monitoring of landfill
     *Revised Part A CAD982521460*
     Permit for operation of a Hazardous Waste Treatment and Disposal Facility (TSDF)
     *Post-Closure Permit CAD982521460*
     Permit for post-closure care, groundwater monitoring and corrective action for
     groundwater contamination

4.   *California State Lands Commission*
     100 Howe Ave., Suite 100-South
     Sacramento, CA  95825-8202
     *Right-of-Way Lease P4605.1*
     Annual rental fee payment for right-of-way lease for 0.036 acre parcel of land for effluent
     pipeline bridge – Annual renewal fees

5.   *Central Contra Costa Sanitary District*
     5019 Imhoff Place
     Martinez, CA  94553
     *License Agreement*
     License agreement for IT's 5- and 8-inch pipeline across the District's property east of
     Vine Hill Site– Annual renewal fees
     *Share Right-of-Way*
     Shared right-of-way for annual maintenance at the Maltby Railroad crossing –
     Annual renewal fees

A059

6.    *Contra Costa County Health Services -Hazardous Materials Programs*
       4333 Pacheco Blvd
       Martinez, CA 94553
       *Annual Business Authorization/Permit No. 71-9604*
       Permit for hazardous material business plan and hazardous waste generator –
       Annual renewal fees

7.    *Sonitrol*
       P.O. Box 9189
       Fresno, CA 93791
       *System Nos. C2111, C4125*
       Security service for VHC

8.    *State of California Department of Industrial Relations*
       Division of Occupational Safety and Health
       Pressure Vessel Unit
       P.O. Box 420603
       San Francisco, CA 94142-0603
       *Permit to Operate Air Pressure Tank – State Serial Nos. A002129-03*
       Permit to operate air pressure tank – Renewal and fees every five (5) years

9.    *State Water Resources Control Board*
       1001 I Street
       Sacramento, CA 95814
       *Industrial Storm Water General Permit (ISWGP) WDID 207S010441*
       Permit authorizing management of storm water for industrial activities associated with
       the closed Landfill

10.   *California Regional Water Quality Control Board*
       San Francisco Bay Region
       1515 Clay Street, 14th Floor
       Oakland, CA 94612
       *Waste Discharge Requirements (WDRs) 78-76*
       Permit authorizes discharge of hazardous wastes into surface impoundments – Annual
       Renewal fees
       *Waste Discharge Requirements (WDRs) DRAFT*
       Permit will supersede existing WDRs to authorize discharge into and management of
       impacted groundwater in the facility's water management system – Annual Renewal fees

11.   *Contra Costa County -Community Development Department*
       651 Pine Street
       Martinez, CA 94553
       *Land Use Permit (issued in 1958)*
       Permit authorizing use of land to deposit refuse at the Vine Hill Site
       *Land Use Permit 120-71*
       Permit authorizing use of land to deposit refuse at the Baker Site.

12.   *Martinez Gun Club*
       900 Waterbird Way
       Martinez, CA 94553
       *License Agreement*
       License agreement between the Martinez Gun Club (adjacent landowner) and IT
       authorizing sampling and maintenance of IT's wells on the Gun Club property

**A060**

D.    Montezuma Site

1.    *Bay Area Air Quality Management District*
      939 Ellis Street
      San Francisco, CA 94109
      *Permit to Operate – Plant 2484*
      Permit to operate all sources of air emissions at the facility
      Annual renewal and fees

2.    *Mayhood, E. Dexter*
      P.O Box 155
      Rio Vista, CA 94571
      *License Agreement – Expires December 23, 2004*
      Agreement to maintain and operate five (5) existing monitoring wells located on Mr.
      Mayhood's property – Annual fees

3.    *McCosker, Daryl O.*
      1064 Via Baja
      Lafayette, CA 94549
      *Ground Lease and Option to Purchase Real Property, Dated 6/19/01*
      Ground lease with option to purchase real property in vicinity of facility

4.    *Solano County Department of Environmental Management*
      Environmental Health Division
      601 Texas Street
      Fairfield, CA 94533
      *Land Use Permit U-78-21*
      Permit to establish and operate a Class II-I Rotary Drilling disposal site and to include
      other Class II-I waste disposal
      *Encroachment Permit E-91-121*
      Permit authorizes installation and long-term use/monitoring of three wells on the east side
      of the facility boundary
      *Solid Waste Permit 34093*
      Permit authorizing management of hazardous materials at the closed landfill – Annual
      renewal fees

5.    *State Water Resources Control Board*
      1001 I Street
      Sacramento, CA 95814
      *Industrial Storm Water General Permit (ISWGP) WDID 248S002418*
      Permit authorizing management of storm water for industrial activities associated with
      the closed landfill – Annual renewal fees

6.    *California Environmental Protection Agency*
      Department of Toxic Substances Control
      8800 Cal Center Drive
      Sacramento, CA 95826-3200
      *Revised Part A Permit CAD079089512*
      Permit revised to reflect facility conditions following completion of closure and change
      in facility's mailing address/contact
      *Post-Closure Permit CAD079089512*
      Permit for post-closure care, groundwater monitoring and corrective action for
      groundwater contamination

**A061**

7.  *California Regional Water Quality Control Board*
    San Francisco Bay Region
    1515 Clay Street, 14th Floor
    Oakland, CA  94612
    *Waste Discharge Requirements (WDRs) 98-208*
    Permit authorizes discharge of impacted groundwater into surface impoundments and
    long-term monitoring program for closed landfill – Annual fees

E.  Benson Ridge Site

1.  *Lake County Air Quality Management District*
    885 Lakeport Blvd.
    Lakeport, CA  95453
    *Permit to Operate (P/O) 2003-18*
    Permit to operate all sources of air emissions at the facility - Annual renewal fees

2.  *State Water Resources Control Board*
    1001 I Street
    Sacramento, CA  95814
    *Industrial Storm Water General Permit (ISWGP)– WDID 5A17S000825*
    Permit authorizing management of storm water for industrial activities associated with
    the closed landfill – Annual renewal fees

3.  *California Environmental Protection Agency*
    Department of Toxic Substances Control
    8800 Cal Center Drive
    Sacramento, CA  95826-3200
    *Revised Part A Permit CAD000633289*
    Permit revised to reflect facility conditions following completion of closure and change
    in facility's mailing address/contact
    *Post-Closure Permit CAD000633289*
    Permit for post-closure care, groundwater monitoring and corrective action for
    groundwater contamination

4.  *California Regional Water Quality Control Board*
    San Francisco Bay Region
    1515 Clay Street, 14th Floor
    Oakland, CA  94612
    *Waste Discharge Requirements (WDRs) 98-047*
    Permit authorizes discharge of impacted groundwater into surface impoundments and
    long-term monitoring program for closed landfill – Annual fees

5.  *Lake County Planning Commission*
    255 N. Forbes Street
    Lakeport, CA  95453
    *Land Use Permit Resolution No. 76-65*
    Permit allowing land use for a Class 2-1 Geothermal Waste Disposal Site

A062