IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE IT GROUP, INC., et at, | ) | Case No. 02-10118 (MFW) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | |
| IT LITIGATION TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. A. No. 04-CV-1268 (KAJ) |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL A. D'ANIELLO, FRANCIS J. HARVEY, | ) | |
| JAMES C. MCGILL, RICHARD W. POGUE, | ) | |
| PHILLIP B. DOLAN, E. MARTIN GIBSON, | ) | |
| ROBERT F. PUGLIESE, CHARLES W. | ) | |
| SCHMIDT, JAMES DAVID WATKINS, | ) | |
| ANTHONY J. DeLUCA, HARRY J. SOOSE, | ) | |
| THE CARLYLE GROUP, THE CARLYLE | ) | |
| GROUP L.L.C., CARLYLE PARTNERS II, L.P., | ) | |
| CARLYLE SBC PARTNERS II, L.P., CARLYLE | ) | |
| INTERNATIONAL PARTNERS II L.P., | ) | |
| CARLYLE INTERNATIONAL PARTNERS III, | ) | |
| C/S INTERNATIONAL PARTNERS, CARLYLE | ) | |
| INVESTMENT GROUP, L.P., CARLYLE-IT | ) | |
| INTERNATIONAL PARTNERS, LP, | ) | |
| CARLYLE-IT INTERNATIONAL PARTNERS II, | ) | |
| L.P., CARLYLE-IT PARTNERS L.P., | ) | |
| and T.C. GROUP, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' JOINT MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM**

THE BAYARD FIRM
Jeffrey M. Schlerf (I.D. No. 3047)
Thomas H. Kovach (I.D. No. 3964)
Eric M. Sutty (I.D. No. 4007)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000

and

STRAUSS & TROY
Richard S. Wayne
Thomas P. Glass
John M. Levy
The Federal Reserve Building
150 E. Fourth Street
Cincinnati, Ohio 45202-4018
(513) 621-2120
Fax: (513) 629-9426

Co-Counsel to the IT Litigation Trust

Dated:  April 18, 2005

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................ iii

I.  PRELIMINARY STATEMENT ............................................................ 1

    A.  STATEMENT OF THE NATURE AND STAGE OF PROCEEDING ........................................................................ 1

    B.  SUMMARY OF ARGUMENT ................................................ 4

        1.  The Amended Complaint Properly Pleads Claims For Breach Of Fiduciary Duty And Corporate Waste Against The Individual Defendants ...................................... 4

        2.  The Amended Complaint Properly Alleges Breach Of Fiduciary Duty And Aiding And Abetting Claims Against The Carlyle Defendants........................................... 6

        3.  The Amended Complaint Properly Alleges Claims Against The Carlyle Defendants And Several Of The Individual Defendants For Avoidance, Preferential, And Constructively Fraudulent Transfers ............................................................................ 7

    C.  BACKGROUND FACTS.......................................................... 8

II.  ARGUMENT...................................................................................... 11

    A.  STANDARDS APPLICABLE TO A MOTION TO DISMISS............................................................................ 11

    B.  THE AMENDED COMPLAINT PROPERLY PLEADS CLAIMS FOR BREACH OF FIDUCIARY DUTIES AGAINST THE OFFICERS AND DIRECTORS.................................... 12

        1.  The Amended Complaint Adequately Alleges Claims for Breach of the Duty of Loyalty ...................................... 13

        2.  The Amended Compliant Adequately Alleges Claims Against the Individual Defendants for Breach of the Duties of Good Faith and Due Care ........................ 16

    C.  THE INDIVIDUAL DEFENDANTS' CONDUCT IS NOT EXCULPATED BY SECTION 102(B)(7) OR THE BUSINESS JUDGMENT RULE............................................... 20

D.    THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES A CLAIM AGAINST THE OFFICERS AND DIRECTORS FOR CORPORATE WASTE ..............................................22

E.    THE AMENDED COMPLAINT PROPERLY ALLEGES A BREACH OF FIDUCIARY DUTY CLAIM AGAINST THE CARLYLE DEFENDANTS ..............................................23

    1.    The Carlyle Defendants controlled the IT Group and, therefore, owed fiduciary duties to Plaintiff .........................23

    2.    The Carlyle Defendants, through their control of the IT Group, breached their fiduciary duties to Plaintiff....................24

F.    THE AIDING AND ABETTING CLAIM AGAINST THE CARLYLE DEFENDANTS IS PROPERLY PLED..................................24

G.    THE AVOIDANCE CLAIM AGAINST THE CARLYLE DEFENDANTS AND SEVERAL OF THE DIRECTOR DEFENDANTS IS PROPERLY PLED ......................................................25

H.    THE AVOIDANCE AND FRAUDULENT TRANSFER CLAIMS AGAINST THE CARLYLE DEFENDANTS PURSUANT TO SECTIONS 544 AND 548 OF THE BANKRUPTCY CODE ARE PROPERLY PLED AND TIMELY ......................................................................................................26

I.    THE FRAUDULENT CONVEYANCE CLAIM AGAINST THE SEVERAL OF THE INDIVIDUAL DEFENDANTS AND THE CARLYLE DEFENDANTS UNDER 6 DELAWARE CODE § 1303 IS TIMELY..............................27

III.    CONCLUSION.......................................................................................................28

584530v1

# TABLE OF AUTHORITIES

**Cases**

*Alidina v. Internet.com Corp.,*
  2002 WL 31584292 (Del. Ch. Nov. 6, 2002) ............................................................. 17

*In re Allegheny Health, Education and Research Foundation,*
  253 B.R. 157 (Bank.W.D.Pa. 2000) ....................................................................... 11

*Aronson v. Lewis,*
  473 A.2d 805 (Del. 1984) ............................................................................. 13, 22

*Blackmore Partners, L.P. v. Link Energy LLC,*
  864 A.2d 80 (Del. Ch. 2004) ........................................................................... 14, 15

*Brehm v. Eisner,*
  746 A.2d 244, 259 (Del. 2000) ............................................................................ 16

*Continuing Creditors' Committee of Star Telecommunications, Inc.,*
  2004 WL 2980736 (D. Del. 2004) ........................................... 5, 18, 19, 20, 21, 22

*Emerald Partners v. Berlin,*
  787 A.2d 85 (Del. 2001) ................................................................................... 21

*Gould Elecs., Inc. v. United States,*
  220 F.3d 169 (3d Cir. 2000) .............................................................................. 12

*Guth v. Loft, Inc.,*
  5 A.2d 503 (Del. 1939) ................................................................................... 13

*In re Hechinger Inv. Co. of Delaware,*
  280 B.R. 90 (D.Del. 2002) ............................................................................... 23

*In re High Strength Steel, Inc.,*
  269 B.R. 560 (Bank. D. Del. 2001) .............................................................. 6, 23, 24

*Hishon v. King & Spalding,*
  467 U.S. 69 (1984) ......................................................................................... 11

*Kahn v. Lynch Communication Systems, Inc.,*
  638 A.2d 1110 (Del. 1994) ................................................................................ 23

*Kuromiya v. United States,*
  37 F.Supp.2d 717 (E.D.Pa.1999) ........................................................................ 11

*Malone v. Brincat,*
  722 A.2d 5 (Del. Supr. 1998) ............................................................................... 4

584530v1

*Markowitz v. Northeast Land Co.,*
    906 F.2d 100 (3d Cir. 1990)......................................................................... 11

*Melo-Sonics Corp. v. Cropp,*
    342 F.2d 856 (3d Cir. 1965)......................................................................... 11

*Neilson v. Southern (In re Webvan Group, Inc.),*
    2004 WL 483580 (Bank. D. Del. 2004)................................... 7, 12, 25, 26, 27

*In re Oracle Corp. Derivative Litigation,*
    824 A.2d 917 (Del. Ch. 2003)....................................................................... 24

*Parnes v. Bally Entertainment Corp.,*
    722 A.2d 1243 (Del. Ch. 1988)..................................................................... 17

*Pogostin v. Rice,*
    480 A.2d 619 (Del. 1984) ............................................................................. 13

*Production Resources Group, LLC v. NCT Group, Inc.,*
    863 A.2d 772 (Del. Ch. 2004).................................................................. 14, 15

*Ransom v. Marrazzo,*
    848 F.2d 398 (3d Cir. 1988 .......................................................................... 11

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,*
    742 F.2d 786 (3d Cir. 1984).......................................................................... 12

*SIPCA Holdings S.A. v. Optical Coating Laboratory, Inc.,*
    1997 WL 10263 (Del. Ch. 1997) .................................................................. 23

*Stanziale v. Nachtomi,*
    2004 WL 878469 (D. Del. 2004) .............................................................. 18, 20

*The Litigation Trust of MDIP, Inc. v. Rapoport,*
    2004 WL 3101575 (D. Del. 2004) ........................................................ 16, 18, 19, 21

*In re The IT Group, Inc.,*
    313 B.R. 370 (Bank. D. Del. 2004) ........................................................ 7, 12, 26, 27

*In re The Walt Disney Co. Dervative Litig.,*
    825 A.2d 275 (Del. Ch. May 28, 2003) ........................................................ 18

*TWA, Inc. v. Marsh USA Inc.,*
    305 B.R. 228 (Bank. D. Del. 2004) ...................................................... 7, 8, 12, 25, 26

*In re USACafes, L.P. Litigation,*
    600 A.2d 43 (Del. Ch. 1991)..................................................................... 7, 25

**Other Authorities**

6 *Del. C.* § 1303 ...............................................................................................27, 28

6 *Del. C.* § 1304 ...................................................................................................28

6 *Del. C.* § 1309 ...................................................................................................28

8 *Del. C.* § 102(b)(7) ................................................................................6, 20, 21, 22

11 U.S.C. § 544 ...................................................................................................26, 27

11 U.S.C. § 544(b) ...................................................................................................27

11 U.S.C. § 547 .........................................................................................................8

11 U.S.C. § 547(b) ...................................................................................................26

11 U.S.C. § 548 ...................................................................................................26, 27

11 U.S.C. § 550 ...................................................................................................13, 30

Fed. R. Civ. P. 8(a)(2) ...........................................................................................11, 12

Fed. R. Civ. P. 12(b)(6) .......................................................................................3, 11, 12

Fed. R. Civ. P. 15(c)(2) ...............................................................................................27

Fed. R. Civ. P. 23.1 .............................................................................................3, 18

584530v1

I.    **PRELIMINARY STATEMENT**

Plaintiff, the IT Litigation Trust (the "Trust" or "Plaintiff") submits this Memorandum in opposition to the Joint Motions to Dismiss for Failure to State a Claim filed by Defendants Daniel A. D'Aniello, Francis J. Harvey, James C. McGill, Richard W. Pogue, Philip B. Dolan, B. Martin Gibson, Robert F, Pugliese, Charles W. Schmidt, James David Watkins, Anthony J. DeLuca (the "Director Defendants"), Harry J. Soose (collectively, the "Individual Defendants" or the "Officers and Directors"), The Carlyle Group, The Carlyle Group L.L.C., Carlyle Partners II, L.P., Carlyle SBC Partners II, L.P., Carlyle International Partners II, Carlyle International Partners III, C/S International Partners, Carlyle Investment Group, L.P., Carlyle-IT International Partners, Carlyle-IT International Partners II, L.P., Carlyle-IT Partners, L.P., and T.C. Group, L.L.C. (the "Carlyle Defendants") (collectively, the "Defendants") for breach of fiduciary duties, waste of corporate assets, avoidance of preference, fraudulent transfers and the payment of unlawful dividends.

A.    **STATEMENT OF THE NATURE AND STAGE OF PROCEEDING**

The Trust brings this action in its capacity as the representative of the Debtors and their estates and for the benefit of the estates' creditors. The Trust initiated this action pursuant to the authority granted to it under law and the Court's (i) Order Granting Leave, Standing, and Authority to the Committee to Prosecute Avoidance Actions On Behalf of the Debtors' Estates, dated November 6, 2003; (ii) Order Amending Prior Order Granting Leave, Standing, and Authority to the Committee to Prosecute Avoidance Actions On Behalf of the Debtors' Estates, dated December 22, 2003; (iii) Order Granting Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to the Committee to Prosecute Avoidance

Actions on Behalf of the Debtors' Estates, dated November 6, 2003; and (iv) Stipulation and Order substituting the Trust as the Plaintiff in this action dated September 1, 2004.

The Carlyle Defendants seized control of the IT Group, Inc. (the "Company") in 1996, and shortly thereafter, caused the Company to embark upon an acquisition strategy that ignored the financial obligations of the Company. Between 1998 and 2000, the Director Defendants undertook eleven acquisitions in carrying-out the Carlyle Defendants' acquisition plan that directly led to the Company seeking bankruptcy protection in January 2002. The Director Defendants failed to undertake adequate due diligence to ascertain the fair market value of at least six of the acquisitions and in each of the transactions the Company paid consideration that was well in excess of the fair market value of the acquired companies. Further, the Director Defendants financed the acquisitions initiated by the Carlyle Defendants by incurring substantial debt that the Company had no ability to service or repay. This led to the Company booking $539,000,000 in goodwill that vastly overstated the book value of the Company's assets, which eventually had to be written-off.

During the time that the Director Defendants were plunging the Company into insurmountable indebtedness, the Director Defendants continued to declare dividends on the preferred stock previously issued to the Carlyle Defendants. These payments were made at the discretion of the Board and during the time-frame when the Company was insolvent, or within the zone of insolvency. The Company's ultimate failure is directly attributable to the Carlyle Defendants' complete control over the Director Defendants and the Director Defendants' complete abdication of their fiduciary duties to the Company, its minority shareholders and its creditors.

The Trust filed its original Complaint as an adversary proceeding in the Bankruptcy Court on January 15, 2004. The District Court *sua sponte* withdrew the reference to this case on September 8, 2004. (Doc. 1)  On October 29, 2004, all Defendants filed motions to dismiss. Specifically, Carlyle International Partners II, LP, Carlyle International Partners III, LP, C/S International Partners, Carlyle-IT International Partners, LP, Carlyle IT-International Partners II, LP, ("the Carlyle Cayman Entities") and Defendant Pogue filed motions to dismiss based upon the lack of personal jurisdiction. (Doc. #'s 13-20)  Defendants also filed separate joint motions arguing the Court lacks subject matter jurisdiction, and under Rule 12(b)(6) for failure to state a claim.  On January 28, 2005, the Trust filed an Amended Complaint to specifically address the issues raised by the Defendants in their motions.

In response to the Amended Complaint, the Carlyle Cayman Entities and Pogue again moved for dismissal on the basis of the lack of personal jurisdiction.[1]  Also, Defendants filed a joint motion to dismiss arguing that the Court lacks subject matter jurisdiction and a separate joint motion arguing that the Amended Complaint fails to state a claim pursuant to Rule 12(b)(6).[2]  The Trust now opposes the motions to dismiss based upon a lack of subject matter jurisdiction and for failure to state a claim.

---

[1]  By agreement of the parties, and with the approval of the Court, the issue of personal jurisdiction is being deferred pending the resolution of the subject matter and Rule 12(b)(6) motions, which could impact the necessity to conduct discovery on the issue of personal jurisdiction and further brief the issue.

[2]  Defendants raise new grounds for dismissal under Rule 12(b)(6) that were not raised in the previously filed motion to dismiss.  Specifically, Defendants now argue that the Amended Complaint fails to state a claim for breach of fiduciary duty because it does not satisfy the pleading requirements required of a shareholder derivative complaint filed pursuant to Rule 23.1. Plaintiff intends to file a motion for leave to file a Second Amended Complaint to address the newly raised issues, which includes, among other things, deposition testimony that counsel for Plaintiff recently obtained from Defendant Harvey in a related case in which he testified that the Carlyle Defendants indeed controlled the Board.

B.    **SUMMARY OF ARGUMENT**

1.    **The Amended Complaint Properly Pleads Claims For Breach Of Fiduciary Duty And Corporate Waste Against The Individual Defendants**

Under Delaware law, officers and directors of a corporation owe duties of loyalty, good faith, and due care to the company, its shareholders, and its creditors. *See Malone v. Brincat*, 722 A.2d 5, 10 (Del. Supr. 1998). The Amended Complaint contains numerous factual allegations that the Carlyle Defendants dominated and controlled the Individual Defendants (Amended Complaint, ¶¶ 31 & 98).   At the behest of the Carlyle Defendants, the Director Defendants, instead of acting in the best interest of the Company to reduce debt and increase cash flow, engaged in a "roll-up strategy" in which the Company incurred substantial debt to finance acquisitions for which they grossly overpaid. (Amended Complaint, ¶¶ 40, 43, 44, 51 and 52)   At the same time, the Director Defendants continued to pay discretionary dividends on the preferred stock held by the Carlyle Defendants. (Amended Complaint, ¶¶ 99-103)   In addition, even though the Carlyle Defendants controlled the operation and management of the Company through their domination of the Board, the Company still paid the Carlyle Defendants substantial monthly and annual consulting fees. (Amended Complaint, ¶ 1). These allegations, at the very least, raise an inference that the Director Defendants breached their duty of loyalty, as they were acting for the benefit of the Carlyle Defendants and not for the exclusive benefit, or in the best interest, of the Company, its shareholders or its creditors.

Additionally, the Amended Complaint alleges that the Individual Defendants, in executing the "roll-up" strategy, consciously disregarded material information necessary to make sound business decisions. The failure of Individual Defendants to avail themselves of all material information directly led to the Company making these

584530v1

4

acquisitions for well in excess of the fair market value of these companies. (Amended Complaint, ¶¶ 39 & 40) As a result, the Company booked $539 million of goodwill, which accounted for 41% of its book value assets, that was totally worthless. (Amended Complaint, ¶ 41) The Company, which had a book value of over $1 billion, was finally sold for only $105 million. These allegations, at a minimum, raise a reasonable inference that the Officers and Directors consciously disregarded material information necessary to make sound business decisions and breached the duties of good faith and due care that they owed to Plaintiff.

Corporate waste is sufficiently pled where "an exchange is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Continuing Creditors' Committee of Star Telecommunications, Inc.* ("Star"), 2004 WL 2980736, *40 (D. Del. 2004). The Amended Complaint specifically alleges that the Director Defendants paid the Carlyle Defendants preferred stock dividends totaling $8,967,929 and monthly and annual consulting fees totaling $890,000 during a time that the Carlyle Defendants controlled the Company, the Company was insolvent, or within the zone of insolvency, and incurred debt that it could not service to finance acquisitions for which the Company overpaid. The Company could not afford to pay these dividends and consulting fees, and received nothing in return for these payments. The Company was not obligated to make the discretionary dividend payments and should not have paid the Carlyle Defendants consulting fees since they controlled the Board. Accordingly, the Amended Complaint sufficiently states a claim for corporate waste.

Finally, because the Amended Complaint adequately states claims against the Individual Defendants for breaches of the duties of loyalty and good faith, they are not protected by either 8 Delaware Code § 102(b)(7) or the business judgment rule.

### 2. The Amended Complaint Properly Alleges Breach Of Fiduciary Duty And Aiding And Abetting Claims Against The Carlyle Defendants

Under Delaware law, a controlling shareholder owes fiduciary duties to the company's creditors when the company is in the zone of insolvency. *In re High Strength Steel, Inc.*, 269 B.R. 560, 569 (Bank. D. Del. 2001). The Amended Complaint alleges that the Carlyle Defendants obtained the right to select a majority of the board of directors. The Carlyle Defendants exercised this right and elected Defendants D'Aniello, Dolan, Gibson, Pugliese, and Watkins, who comprised a majority of the nine member board of directors. These directors were beholden to the Carlyle Group, as demonstrated by the fact that they approved a string of fraudulent and preferential transfers of which the Carlyle Defendants were beneficiaries, and for which the Company received little or no consideration. Therefore, the Amended Complaint alleges that the Carlyle Defendants controlled the Company.

Since the Carlyle Defendants controlled the Company, they owed fiduciary duties to the Company's class of common shareholders, and upon insolvency, its creditors, to, among other things: preserve and maximize the value of the Company's assets, and act in a manner that would not injure the Company and its creditors. *In re High Strength Steel, Inc.*, 269 B.R. at 569; Amended Complaint ¶ 73. The Amended Complaint details the various ways in which the Carlyle Defendants breached their fiduciary duties to the Company's creditors by, among other things, orchestrating a series of fraudulent and preferential transfers in which they were the beneficiaries, and for which the Company

584530v1

received little or no consideration. Consequently, the Amended Complaint sufficiently alleges a cause of action against the Carlyle Defendants for breach of fiduciary duty.

To state a cause of action for aiding and abetting against the Carlyle Defendants, Plaintiff must plead: (1) a fiduciary relationship exists between the Officers and Directors and Plaintiff; (2) a breach of that relationship; and (3) knowing participation by the Carlyle Group in the Officers' and Directors' breach. *In re USACafes, L.P. Litigation*, 600 A.2d 43, 55-56 (Del. Ch. 1991).

As demonstrated above, Plaintiff has sufficiently alleged that the Individual Defendants (1) owed fiduciary duties to Plaintiff, and (2) breached those fiduciary duties. Furthermore, the Amended Complaint contains sufficient detail concerning the role that the Carlyle Defendants played by aiding in the perpetration of the Individual Defendants breach of their fiduciary duties. Therefore, the Amended Complaint sufficiently alleges that the Carlyle Defendants aided and abetted the Officer and Director Defendants in their breaches of their fiduciary duties.

3.    **The Amended Complaint Properly Alleges Claims Against The Carlyle Defendants And Several Of The Individual Defendants For Avoidance, Preferential, And Constructively Fraudulent Transfers**

In their Memorandum, Defendants claim that the standard utilized in *TWA, Inc. v. Marsh USA Inc.*, 305 B.R. 228, 232 (Bank. D. Del. 2004), is the appropriate standard for analyzing Plaintiff's avoidance claim. However, in *Neilson v. Southern (In re Webvan Group, Inc.)* 2004 WL 483580 *2 (Bank. D. Del. 2004), the court explicitly rejected the heightened pleading standard enunciated in *TWA, Inc.* Similarly, in *In re The IT Group, Inc.*, 313 B.R. 370, 372-74 (Bank. D. Del. 2004), the court explicitly rejected the standard in *TWA, Inc.* because (1) "the Federal Rules of Bankruptcy Procedure do not impose a

584530v1

heightened pleading standard on preference claims, and a preference complaint may provide a defendant with fair notice of the claim despite the lack of information required by [*TWA, Inc.*];" and (2) "a heightened pleading standard may have the unintended effect of cutting off valid claims prematurely." In light of the fact that the standard announced in *TWA, Inc.* has been rejected, the liberal pleading standards annunciated by the United States Supreme Court, and adopted by the courts in the above-cited cases applies. As such, the Amended Complaint, which details the timing and amount of each transfer for every respective Defendant, states a cause of action for avoidance pursuant to Sections 547 and 550 of the Bankruptcy Code. Amended Complaint, ¶¶ 80-96.

## C.    BACKGROUND FACTS

The Carlyle Defendants seized control of the Company on or about November 20, 1996. (Amended Complaint, ¶ 31).  At that time, the Carlyle Defendants invested $45 million in the Company, and in return, received 45,000 shares of 6% Cumulative Convertible Participating Preferred Stock, par value of $100 per share and detachable warrants to purchase 1,250,000 shares of IT common stock. *Id.* The Carlyle Defendants also received approximately 25% of the Company's voting power and obtained the right to elect a majority of IT Group's board of directors through Defendant the T.C. Group. *Id.* Additionally, the Carlyle Defendants obtained the right to place Carlyle employees D'Aniello and Dolan on the Board. Finally, the Carlyle Defendants procured a consulting agreement, despite the fact that they already controlled the Company, pursuant to which they were paid $100,000.00 per year and $10,000.00 per month. *Id.*

After seizing control of the Company, the Carlyle Defendants, with unanimous approval of the Board, embarked upon the acquisition of eleven companies. (Amended Complaint, ¶ 32)  At the time the Company began this acquisition program it was already

584530v1

insolvent or within the zone of insolvency. (Amended Complaint, ¶ 47)  The Company lacked the cash flow to finance these acquisitions and thus, financed each acquisition by incurring substantial debt. (Amended Complaint, ¶ 43).  The Individual Defendants, before completing these acquisitions, failed to undertake the necessary due diligence to ascertain the fair market value of the acquisitions that followed in 1998 through 2000. (Amended Complaint, ¶¶ 50 & 61(a))

Between February 1998 and May 2000, the Company made the following acquisitions. In 1998, the Company acquired OHM Corporation ("OHM") for approximately $303 million. (Amended Complaint, ¶ 33) The Company booked goodwill of approximately $346 million in connection with the acquisition of OHM. *Id.* In or about December 1998, the Company acquired Groundwater Technology, Inc. ("GTI") for approximately $69 million. (Amended Complaint, ¶ 34)  The Company booked goodwill of approximately $29 million in connection with its acquisition of GTI. *Id.* In or about March 1999, the Company acquired Roche Limited Consulting Services ("Roche") for approximately $10 million. (Amended Complaint, ¶ 35) The Company booked goodwill of approximately $5 million in connection with its acquisition of Roche. *Id.*  In or about April 1999, the Company acquired EFM Group ("EFM") for approximately $82 million. (Amended Complaint, ¶  36) The Company recorded goodwill of approximately $92 million in connection with its acquisition of EFM. *Id.*  In or about June 1999, the Company acquired EMCON, Inc. ("EMCON") for approximately $62 million. (Amended Complaint, ¶ 37)  The Company recorded goodwill of approximately $43.5 million in connection with its purchase of EMCON. *Id.*  In or about May 2000, the Company acquired W&H Pacific, Inc. ("W&H") for approximately $1 million, and contingent

consideration of up to $8 million. (Amended Complaint, ¶ 38) The Company recorded goodwill of approximately $5.5 million in connection with its acquisition of W&H. *Id.*

In total the Company booked $539 million in goodwill from its acquisitions. (Amended Complaint, ¶ 39) The $539 million of goodwill the Company booked was a result of the above-identified acquisitions for which Company over-paid. *Id.* The goodwill the Company booked from these acquisitions accounted for 41% of the Company's overall reported assets. (Amended Complaint, ¶ 39)

In order to complete these acquisitions, the Company obtained $500 million in secured loans and approximately $255 million in subordinated bond debt. (Amended Complaint, ¶ 43) In three years, from 1997 to 2000, the Company's liabilities increased dramatically from approximately $172 million to approximately $1 billion. (Amended Complaint, ¶ 44) During this same time-frame, the Company's net worth plummeted from approximately $172,000,000 to a net worth of negative $277,000,000. (Amended Complaint, ¶ 45) As a result, the Company became insolvent, or was in the zone of insolvency as early as March 1998. (Amended Complaint, ¶ 47)

Despite the increasing indebtedness of the Company, and the spurious nature of the book value of its assets, the Director Defendants continued to make substantial dividend payments to the Carlyle Defendants. (Amended Complaint, ¶¶ 99-103) In 1998, the Director Defendants made preferred stock dividend payments to the Carlyle Defendants totaling at least $1,362,254. (Amended Complaint, ¶ 99). In 1999, the Director Defendants made preferred stock dividend payments to the Carlyle Defendants totaling at least $2,765,700. (Amended Complaint, ¶ 101) In 2000, the Director Defendants made preferred stock dividend payments to the Carlyle Defendants totaling at

least $2,765,700. (Amended Complaint, ¶ 102) In 2001, the Director Defendants made preferred stock dividend payments to the Carlyle Defendants totaling at least $2,074,275. (Amended Complaint, ¶ 103) Finally, during the same time-period, the Company paid the Carlyle Defendants approximately $850,000 for consulting services even though the Carlyle Defendants controlled the operation and management of the Company through its control of the Board. (Amended Complaint, ¶ 1)

By January 2002, the Company could no longer meet its debt obligations and filed for bankruptcy protection. (Amended Complaint, ¶ 57)

## II.    ARGUMENT

### A.    STANDARDS APPLICABLE TO A MOTION TO DISMISS

When deciding a motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6), a court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them. Dismissal under Rule 12(b)(6) ... is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (citing *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988)).  District courts strongly disfavor Rule 12(b)(6) motions. *Melo-Sonics Corp. v. Cropp*, 342 F.2d 856 (3d Cir. 1965); *Kuromiya v. United States*, 37 F.Supp.2d 717, 722 (E.D.Pa.1999). A court should dismiss a complaint only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, (1984).

The claims alleged in the Amended Complaint are subject to the liberal notice pleading standard contained in Rule 8(a)(2), *In re Allegheny Health, Education and Research Foundation*, 253 B.R. 157, 162 n.2 (Bank. W.D. Pa. 2000), and not the

584530v1

heightened pleading standard suggested by Defendants. *Neilson v. Southern (In re Webvan Group, Inc.*) 2004 WL 483580 (Bank. D. Del. 2004) (explicitly rejecting the heightened pleading standard enunciated in *TWA Inc.*, 30 B.R. at 232, in favor of notice pleading); *In re the IT Group*, 313 B.R. 370, 372-74 (Bank. D. Del. 2004). The Federal Rules of Civil Procedure only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Under the modern federal rules [of civil procedure], it is enough that a complaint put the defendant on notice of the claims against him. It is the function of discovery to fill in the details, and of trial to establish fully each element of the cause of action." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 790 (3d Cir. 1984). Furthermore, the defendant bears the burden of persuading the Court that no claim has been stated. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

**B.   THE AMENDED COMPLAINT PROPERLY PLEADS CLAIMS FOR BREACH OF FIDUCIARY DUTIES AGAINST THE OFFICERS AND DIRECTORS**

Defendants recast the allegations contained in the Amended Complaint in a manner to allege the claims that they want Plaintiff to allege and not the claims Plaintiff actually alleges.   In arguing for dismissal, Defendants ignore the totality of the allegations contained in the Amended Complaint and construe the inferences raised by such allegations in *their* favor—which is contrary to law.   When the well-plead allegations of the Amended Complaint and all inferences derived therefrom are construed in favor of the Trust, dismissal pursuant to Rule 12(b)(6) is improper.

### 1. The Amended Complaint Adequately Alleges Claims for Breach of the Duty of Loyalty

It is well established in the Delaware courts that "[a] public policy, existing through the years, and derived from a profound knowledge of human characteristics and motives, has established a rule that demands of a corporate officer or director, peremptorily and inexorably, the most scrupulous observance of his duty, not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his skill and ability might properly bring to it, or to enable it to make in the reasonable and lawful exercise of its powers. The rule that requires an undivided and unselfish loyalty to the corporation demands that there be no conflict between duty and self-interest." *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939).

Generally, "a director [is] independent only when the director's decision is based entirely on the corporate merits of the transaction and is not influenced by personal or extraneous considerations." *See Aronson v. Lewis*, 473 A.2d 805, 816 (Del. 1984); *see also Pogostin v. Rice*, 480 A.2d 619, 624 (Del. 1984). The Amended Complaint contains numerous factual allegations that the Carlyle Defendants dominated and controlled the Director Defendants (Amended Complaint, ¶¶ 31 & 98). At the time the Company initiated the Carlyle Defendants' Roll-up strategy, the Company was insolvent, or near the zone of insolvency. (Amended Complaint, ¶¶ 32 & 47) The Director Defendants, instead of acting in the best interest of the Company to reduce debt and increase cash flow, incurred additional debt to finance acquisitions for which they grossly overpaid. (Amended Complaint, ¶¶ 40, 43, 44, 51 and 52) At the same time, the Director Defendants continued to pay discretionary dividends on the preferred stock held by the

584530v1

13

Carlyle Defendants. (Amended Complaint, ¶¶ 99-103)  In addition, even though the Carlyle Defendants controlled the operation and management of the Company through their domination of the Board, the Company still paid the Carlyle Defendants substantial monthly and annual consulting fees. (Amended Complaint, ¶ 1)

These allegations, at a minimum, raise an inference that the Director Defendants were acting for the benefit of the Carlyle Defendants and not exclusively in the best interest of the Company, its shareholders or its creditors.  A complaint sufficiently pleads a claim for the breach of the duty of loyalty if it alleges that the directors approved transactions that raise an inference of disloyalty or intentional misconduct. *Blackmore Partners, L.P. v. Link Energy LLC*, 864 A.2d 80, 85-86 (Del. Ch. 2004). The Amended Complaint satisfies this standard.

The Director Defendants approved several transactions during the Carlyle Defendants' Roll-up strategy that were financed by incurring substantial debt at a time when the Company was insolvent.  These transactions were designed to inflate the Company's book value of assets to prolong the life of the Company so that the Carlyle Defendants could continue to recoup their earlier investment.  This is evidenced by the fact that during the time that the Company was insolvent, it was incurring an alarming amount of debt and booking excess goodwill to inflate its financial statements, and the Director Defendants were also routinely paying discretionary dividends to the Carlyle Defendants and paying the Carlyle Defendants consulting fees.

In *Production Resources Group, LLC v. NCT Group, Inc.*, 863 A.2d 772 (Del. Ch. 2004), the Delaware Chancery Court held that allegations made by a creditor against an insolvent corporation adequately stated claims for breach of fiduciary duty where the

creditor alleged, *inter alia,* that a controlling shareholder made payments for consulting services to a family controlled business and payments of hefty salaries to insiders, during a time when the Company was insolvent. The present case is factually similar. The Carlyle Defendants controlled the Board and used their control to cause the Company to pay itself monthly and annual consulting fees and discretionary dividends during the time that Company was incurring substantial debt, overpaying for acquisitions, booking excess goodwill—and was insolvent.

Defendants argue that the duty of loyalty claim is inadequately plead because there are no allegations that their interests conflicted with the interests of shareholders generally. Contrary to Defendants' assertions, the payment of millions of dollars in dividends to a distinct group of shareholders during a time when the Company was insolvent and its financial condition was rapidly deteriorating due to the conduct of those controlling shareholders is directly in conflict with the interests of the Company's non-preferred class of shareholders as well as the Company's unsecured creditors. These factual allegations raise a "permissible … inference that rational persons acting in good faith as the directors of an insolvent firm would not proceed in this manner." *Id.* at 800.[3] Regardless, Delaware Courts do not require specific allegations of self-interest or lack of independence in order to state a claim for breach of the duty of loyalty. *Blackmore Partners, LP* 864 A.2d at 85 (A complaint sufficiently states a claim for breach of the duty of loyalty where it alleges that the directors approved transactions that disadvantaged certain shareholders)

---

[3] The Delaware Chancery Court also held that these allegations stated a cognizable claim for breach of fiduciary duty even if a particularized pleading standard is utilized. *Production Resources Group, LLC*, 863 A.2d at 800.

584530v1

15

## 2. The Amended Compliant Adequately Alleges Claims Against the Individual Defendants for Breach of the Duties of Good Faith and Due Care

Under Delaware law, officers and directors of a corporation owe a duty of care to the corporation to "avail themselves of all material information reasonably available," prior to making any business decision. *Brehm v. Eisner*, 746 A.2d 244, 259 (Del. 2000). Furthermore, "where a director consciously ignores his or her duties to the corporation, thereby causing economic injury to its stockholders, the director's actions are either 'not in good faith' or involve 'intentional misconduct' [of the type contemplated by §102(b)(7)]." *The Litigation Trust of MDIP, Inc. v. Rapoport*, 2004 WL 3101575 at (D. Del. 2004). The Amended Complaint alleges that the Officers and Directors consciously disregarded material information necessary to make sound business decisions. (Amended Complaint, ¶¶ 59 & 61) Specifically, the Officers and Directors failed to make considered business decisions with regard to the acquisitions referenced in Paragraphs 33-38 of the Amended Complaint. The failure of the Individual Defendants to avail themselves of all material information directly led to the Company making these acquisitions for well in excess of the fair market value of these companies. (Amended Complaint, ¶¶ 39 & 40) As a result, the Company booked $539 million of goodwill, which accounted for 41% of its book value assets, that was totally worthless. (Amended Complaint, ¶ 41)

Despite the fact that the Company was insolvent, or within the zone of insolvency as early as March 1998, the Officers and Directors ignored the Company's dire financial condition and continued to incur substantial debt to finance eleven acquisitions that it could not reasonably service. Further, the Officers and Directors failed to retain financial asset divestiture consultants, financial consultants, turnaround and restructuring

584530v1

16

consultants or bankruptcy and legal counsel. (Amended Complaint, ¶ 51)  In fact, the Officers and Directors did not address the Company's financial problems until late November or early December 2001, and only did so once the Company's lenders learned how bad the Company's financial condition truly was. (Amended Complaint, ¶ 53)  By this point, however, it was too late. Amended Complaint, ¶¶ 54-56.  The Company's only option at the time the lenders forced the Officers and Directors to finally address the financial problems was liquidation. (Amended Complaint, ¶ 56)  As a result, the Company, which had a book value of over $1 billion, was sold for $105 million. (Amended Complaint, ¶ 56)

These allegations, at a minimum, raise a reasonable inference that the Officers and Directors consciously disregarded material information necessary to make sound business decisions and breached the duties of good faith and due care. *Parnes v. Bally Entertainment Corp.*, 722 A.2d 1243, 1246 (Del. Ch. 1988) (officers' and directors' breach the duty of good faith where facts infer that their actions were so far beyond the bounds of reasonable judgment that it is inexplicable on any ground other than bad faith); *see also Alidina v. Internet.com Corp.*, 2002 WL 31584292 (Del. Ch. Nov. 6, 2002) (denying motion to dismiss claim for breach of duty of loyalty as the plaintiff alleged sufficient facts that, although conclusory, stated a claim that directors business decisions were made in bad faith).

The Amended Complaint alleges well-pled facts that support a claim that the Officers and Directors breached their duties of good faith and due care.  "Knowing or deliberate indifference by a director to his or her duty to act faithfully *and with appropriate care* is conduct ... that may not have been taken honestly and in good faith

584530v1

17

to advance the best interests of the company." *The Litigation Trust of MDIP, Inc.*, 2004 WL 3101575 at *8, (quoting *In re The Walt Disney Co. Dervative Litig.,* 825 A.2d 275, 289 (Del. Ch. May 28, 2003)). "Where a director consciously ignores his or her duties to the corporation, thereby causing economic injury to its stockholders, the director's actions are either 'not in good faith' or involve 'substantial misconduct', which constitutes an actionable breach of duty. *Id.*    In the present case, the Officers and Directors breached their duties of good faith and due care to the Company and its creditors, consciously disregarding their duties by: (i) failing to conduct proper due diligence as to the fair market value of the acquisitions, (ii) taking on debt the Company could not service, (iii) failing to secure the services of outside consultants to turn around the Company's financial condition, (iv) leading the Company directly into bankruptcy; and, (v) paying the Carlyle Defendants dividends and consulting fees—all occurring when the Company was insolvent, or within the zone of insolvency.

In their Memorandum, Defendants rely heavily upon the decisions in *Star*, 2004 WL 2980736 (D. Del. 2004) and *Stanziale v. Nachtomi*, 2004 WL 878469 (D. Del. 2004) for the proposition that the Amended Complaint fails to state a claim. However, *Star* and *Stanziale* are inapposite.

In *Star*, the parties agreed that the analysis "must be informed by precedents arising from derivative actions where the plaintiff alleges that demand should be excused as futile." Here, Plaintiff does not concede application of the heightened standards under Civil Rule 23.1. *See   The Litigation Trust of MDIP, Inc.*, 2004 WL 3101575 (D.Del. 2004) (wherein the Court did not apply the heightened pleading standard to breach of

fiduciary duty claim brought by committee of unsecured creditors against company's former officers and directors).

The court in *Star* utilized the "demand excused" cases as a means to analyze the impact of the business judgment rule on the plaintiff's claims. However, as demonstrated below, because the Amended Complaint sufficiently alleges direct claims that the Officers and Directors breached their duties of good faith and loyalty, the business judgment rule is inapplicable. Consequently, the "demand excused" cases provide no guidance in this Court's determination. In *The Litigation Trust of MDIP, Inc.*, the Court held that it is improper to dismiss breach of fiduciary duty claims against officers and directors on the basis of the business judgment rule prior to "adequate discovery" taking place. *The Litigation Trust of MDIP, Inc.*, 2004 WL 3101575 at *9. Further, the Court held that dismissal is inappropriate where a complaint alleges facts, which if proven, show that the defendants "'*knew* that they were making material decisions without adequate information and without adequate deliberation, and that they simply did not care if the decisions caused the corporation and its stockholders to suffer injury or loss' then those decisions surely could not be attributable to any rational business purpose." *Id.*

*Star* is also distinguishable from the present case because, in *Star*, the plaintiff did not bring any claims for preferences or fraudulent conveyances, whereas here, Plaintiff has brought claims against Defendants for preferential transfers and fraudulent conveyances. These preferential and fraudulent transfers, while being independent claims, also serve as evidence that Defendants breached their duties of loyalty and good faith to the Company. Furthermore, the plaintiff in *Star* attempted to show that a director was interested merely by their ownership of and sale of stock in the company. By

584530v1

19

contrast, in the present case, the Amended Complaint alleges far more—it alleges: (i) the failure of considered well-informed decisions by the Company's Board; (ii) the payment by the Company of $539 million more consideration than the assets it acquired; and (iii) the financing of all these acquisitions with additional debt during a time that the Company was insolvent or within the zone of insolvency.   Further, the Amended Complaint alleges that during the time that the Company was insolvent the Officers and Directors utterly failed to avail themselves of any outside consultation to reverse the Company's downward spiral or any efforts to consolidate or cut the costs of its operations to protect the assets it acquired.   Meanwhile, during this time, Defendants continued to pay millions of dollars to the Carlyle Defendants as consulting fees and dividends on their preferred stock. Consequently, *Star* is inapposite and inapplicable.

Similarly, in *Stanziale*, the plaintiff did not bring any claims for preferences or fraudulent conveyances. Rather, the plaintiff's claims were based solely on good faith actions by the board which resulted in adverse consequences, but were, nonetheless, protected by the business judgment rule. Here, Plaintiff has sufficiently alleged claims that Defendants breached their duties of loyalty and good faith to the Company, its common stockholders and its creditors. Thus, the actions taken by the Officers and Directors should not be afforded any protection by the business judgment rule. Accordingly, *Stanziale* is inapplicable.

## C.    THE    INDIVIDUAL    DEFENDANTS'    CONDUCT    IS    NOT EXCULPATED  BY  SECTION  102(B)(7)  OR  THE  BUSINESS JUDGMENT RULE

As demonstrated above, the allegations contained in the Amended Complaint state claims that the Officers and Directors breached their fiduciary duties of loyalty and good faith. 8 Delaware Code § 102(b)(7) provides in relevant part:

584530v1

> In addition to the matters required to be set forth in the certificate of incorporation by subsection (a) of this section, the certificate of incorporation may also contain any or all of the following matters:…(7) A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, **provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith** or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit.

(emphasis added). As an initial matter, this provision provides no protection to corporate officers. Accordingly, the exculpation clause contained in the Company's Certificate of Incorporation is inapplicable to the Defendants Deluca and Soose, who are liable to Plaintiff for their corporate waste and breach of the duties of loyalty and good faith.

An exculpation clause in a certificate of incorporation is only effective if there are no allegations of bad faith or disloyalty. 8 Delaware Code § 102(b)(7); *Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del. 2001); *Star*, 2004 WL 2980736 *11-14 (D. Del.); *The Litigation Trust of MDIP*, 2004 WL 3101575 at *5. As demonstrated above, the breach of the duty of loyalty and the duty good faith claims against the Directors and Officers are properly pled. Consequently, the exculpation clause contained in the Company's Certificate of Incorporation provides no protection to the Director Defendants.

Likewise, the business judgment rule affords no protection to an officer or director who has breached his duty of loyalty and/or good faith. *Star*, 2004 WL 2980736 at *11 ("If a defendant does not breach his duty of loyalty to the company, he is permitted to rely on the business judgment rule…to shield him from liability for a breach of the duty of care."). Since the breach of the duty of loyalty and the duty of good faith claims against the Directors and Officers are properly pled, the business judgment rule affords

no protection to the Officers and Directors. Consequently, the claims against the Officers and Directors for breach of the duties of loyalty, good faith and corporate waste are sufficient.

Furthermore, even if the business judgment rule was applicable, which it is not, the Amended Complaint contains sufficient allegations to overcome its presumption. The business judgment rule authorizes a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company [and its shareholders and creditors]." *Aronson*, 473 A.2d at 812. The application of the business judgment rule assumes some deliberate, thoughtful judgment was actually made. Here, the Amended Complaint alleges that Defendants made no deliberations whatsoever.

### D.    THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES A CLAIM AGAINST THE OFFICERS AND DIRECTORS FOR CORPORATE WASTE

Since the Amended Complaint sufficiently states a claim against the Officers and Directors for a breach of the duty of loyalty, § 102(b)(7) does not provide protection from the Trust's claim for corporate waste. Corporate waste is sufficiently pled where "an exchange is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Star*, 2004 WL 2980736 at *40. The Amended Complaint specifically alleges that the Director Defendants paid the Carlyle Defendants preferred stock dividends totaling $8,967,929 and monthly and annual consulting fees totaling $890,000 during a time that the Carlyle Defendants controlled the Company, the Company was insolvent, or within the zone of insolvency, and incurred debt that it could not service to finance acquisitions for which the Company overpaid. The Company could not afford to pay these dividends and

584530v1

consulting fees, and received nothing in return for these payments. The Company was not obligated to make the discretionary dividend payments and should not have paid the Carlyle Defendants consulting fees since they controlled the Board. Accordingly, the Amended Complaint sufficiently states a claim for corporate waste.

**E.    THE AMENDED COMPLAINT PROPERLY ALLEGES A BREACH OF FIDUCIARY DUTY CLAIM AGAINST THE CARLYLE DEFENDANTS**

**1.    The Carlyle Defendants controlled the IT Group and, therefore, owed fiduciary duties to Plaintiff**

Under Delaware law, a controlling shareholder owes fiduciary duties to the company's creditors when the company is in the zone of insolvency. *In re High Strength Steel, Inc.*, 269 B.R. 560, 569 (Bank. D. Del. 2001); *In re Hechinger Inv. Co. of Delaware*, 280 B.R. 90 (D.Del. 2002); *Kahn v. Lynch Communication Systems, Inc.*, 638 A.2d 1110 (Del.1994). Defendants challenge the Trust's allegations that the Carlyle Defendants controlled the Company. However, Paragraphs 30 and 31 of the Amended Complaint allege sufficient facts to demonstrate that the Carlyle Defendants controlled the Company and, therefore, owed a duty to its creditors. Specifically, Plaintiff alleges that the Carlyle Defendants obtained the right to select a majority of the board of directors. The Carlyle Defendants exercised this right and elected Defendants D'Aniello, Dolan, Gibson, Pugliese, and Watkins, who comprised a majority of the nine member board of directors. These directors were beholden to the Carlyle Group. Therefore, the Carlyle Defendants controlled the Company. *See, e.g., SIPCA Holdings S.A. v. Optical Coating Laboratory, Inc.*, 1997 WL 10263 *4 (Del. Ch. 1997).

Furthermore, Paragraphs 80 through 115 of the Amended Complaint detail a string of fraudulent and preferential transfers of which the Carlyle Defendants were

beneficiaries, and for which the Company received little or no consideration. These one-sided transfers further underscore the Carlyle Defendants control of the Company. The only justification for these transfers is that the Board of Directors was "beholden" to and controlled by the Carlyle Defendants, its largest shareholder. *In re Oracle Corp. Derivative Litigation*, 824 A.2d 917, 937-39 (Del. Ch. 2003).

> 2.    **The Carlyle Defendants, through their control of the IT Group, breached their fiduciary duties to Plaintiff**

Since the Carlyle Defendants controlled the Company, they owed fiduciary duties to the Company's class of common shareholders, and upon insolvency, its creditors, to, among other things: preserve and maximize the value of the Company's assets, and act in a manner that would not injure the Company and its creditors. *In re High Strength Steel, Inc.*, 269 B.R. at 569. The Amended Complaint details the various ways in which the Carlyle Defendants breached their fiduciary duties to the Company's creditors. Amended Complaint, ¶¶ 72-74. The Amended Complaint sufficiently alleges that the Carlyle Defendants controlled the Board of Directors. Therefore, through their control, the breaches of duty discussed herein are breaches of duty committed by the Carlyle Defendants. Additionally, through their control of the Board of Directors, the Carlyle Defendants orchestrated a series of fraudulent and preferential transfers in which they were the beneficiaries, and for which the Company received little or no consideration. Amended Complaint, ¶¶ 80-115. These allegations provide sufficient facts to satisfy the pleading requirements.

> F.    **THE AIDING AND ABETTING CLAIM AGAINST THE CARLYLE DEFENDANTS IS PROPERLY PLED**

To state a cause of action for aiding and abetting against the Carlyle Defendants, Plaintiff must plead: (1) a fiduciary relationship exists between the Officers and Directors

584530v1

24

and Plaintiff; (2) a breach of that relationship; and (3) knowing participation by the Carlyle Group in the Officers' and Directors' breach. *In re USACafes, L.P. Litigation*, 600 A.2d 43, 55-56 (Del. Ch. 1991).

As demonstrated above, Plaintiff has sufficiently alleged that the Officers and Directors (1) owed fiduciary duties to Plaintiff, and (2) breached those fiduciary duties. Furthermore, the Amended Complaint contains sufficient detail concerning the role that the Carlyle Defendants played by aiding in the perpetration of the Officers and Directors breach of their fiduciary duties. For example, the Amended Complaint specifically lists a litany of fraudulent and preferential transfers which the Carlyle Defendants orchestrated and received, and for which the Company received little or no consideration. Amended Complaint, ¶¶80-118. The Carlyle Defendants cannot seriously dispute their knowledge of these transfers, since they undoubtedly knew that (1) they received them, and (2) they provided no consideration in exchange for them. Therefore, the Amended Complaint sufficiently alleges that the Carlyle Defendants aided and abetted the Officer and Director Defendants in their breaches of their fiduciary duties.

## G. THE AVOIDANCE CLAIM AGAINST THE CARLYLE DEFENDANTS AND SEVERAL OF THE DIRECTOR DEFENDANTS IS PROPERLY PLED

The Sixth Claim for relief alleges detailed avoidable transfers that were made to the Carlyle Defendants, and to Defendants Gibson, Pogue, Pugliese, Schmidt and Watkins. In their Memorandum, Defendants claim that the standard utilized in *TWA, Inc.*, 305 B.R. at 232, is the appropriate standard for analyzing Plaintiff's avoidance claim. However, in *Neilson v. Southern (In re Webvan Group, Inc.)* 2004 WL 483580 *2, the court explicitly rejected the heightened pleading standard enunciated in *TWA, Inc.* The court specifically stated:

584530v1

25

> This Court must take the facts alleged in the Complaint as true, that the transfers made to the Defendant, an insider, are transfers to a creditor, on account of an antecedent debt (the Merger Agreement), while the company was insolvent, within one year prior to the petition date, and received more than it would have under chapter 7, if the transfer was never made, and received payment of its debt to the extent provided under the Bankruptcy Code. Thus pursuant to § 547(b) of the Bankruptcy Code, the Plaintiff has set forth a claim upon which relief may be granted.

*Neilson*, 2004 WL 483580 at *2. Similarly, in *In re The IT Group, Inc.*, 313 B.R. at 372-74, the court explicitly rejected the standard in *TWA, Inc.* because (1) "the Federal Rules of Bankruptcy Procedure do not impose a heightened pleading standard on preference claims, and a preference complaint may provide a defendant with fair notice of the claim despite the lack of information required by [*TWA, Inc.*];" and (2) "a heightened pleading standard may have the unintended effect of cutting off valid claims prematurely." In light of the fact that the standard announced in *TWA, Inc.* has been rejected, the liberal pleading standards annunciated by the United States Supreme Court, and adopted by the courts in the above-cited Delaware cases applies. As such, the Amended Complaint, which details the timing and amount of each transfer for every respective Defendant, states a cause of action for avoidance pursuant to Sections 547 and 550 of the Bankruptcy Code. Amended Complaint, ¶¶ 80-96.

**H.    THE AVOIDANCE AND FRAUDULENT TRANSFER CLAIMS AGAINST THE CARLYLE DEFENDANTS PURSUANT TO SECTIONS 544 AND 548 OF THE BANKRUPTCY CODE ARE PROPERLY PLED AND TIMELY**

Paragraphs 99 and 101 of the Amended Complaint detail specific transfers to the Carlyle Defendants which are delineated by date and amount. Defendants argue these allegations are insufficient because Plaintiff (1) does not distinguish among the individual Carlyle Defendants, (2) does not specify the relevant state law, and (3) does not specify

any "actual creditor" of the Debtors as required by Section 544(b) of the Bankruptcy Code.

First, the main thrust of the Amended Complaint is that the Carlyle Defendants did not act as separate entities. Rather, they combined to form one entity which dominated and controlled the Company. Therefore, it would be counterproductive for Plaintiff to delineate each transfer among the separate Carlyle Defendants. And while Section 544 may require a plaintiff to specify an applicable state law in addition to an "actual creditor," Section 548 has no similar prerequisites. Thus, applying the same standards utilized by the Supreme Court, and discussed above, Plaintiff has sufficiently stated a cause of action under Section 548. *See Neilson*, 2004 WL 483580 at *2; *In re The IT Group, Inc.*, 313 B.R. at 372-74.

Second, the Amended Complaint does specify the applicable state law. The Eighth Claim for Relief alleges that the Carlyle Defendants received transfers in violation of the Delaware Uniform Fraudulent Transfer Act. Finally, since Plaintiff represents the Committee of Unsecured Creditors, the Amended Complaint does specify an "actual creditor." As a matter of law, Plaintiff represents a number of "actual creditors" and is not required to identify each creditor it represents. Consequently, Plaintiff has sufficiently stated a cause of action under Section 544.

## I.    THE FRAUDULENT CONVEYANCE CLAIM AGAINST THE SEVERAL OF THE INDIVIDUAL DEFENDANTS AND THE CARLYLE DEFENDANTS UNDER 6 DELAWARE CODE § 1303 IS TIMELY

The Amended Complaint was filed on January 28, 2005. However, the original Complaint was filed on January 15, 2004. Pursuant to Rule 15(c)(2), the Amended Complaint relates back to the date of the initial filing. Therefore, the claims against the

several of the Individual Defendants and the Carlyle Defendants pursuant to 6 Delaware Code § 1303 should be treated as having been filed on January 15, 2004.

Furthermore, while Defendants are correct in their application of 6 Del. Code § 1309 to these claims, they glance over the fact that this statute contains a discovery rule which states in relevant part: "[a] cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought: (1) Under § 1304(a)(1) of this title, within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." Consequently, Plaintiff's claims are not barred by the four year statute of limitations, as Defendants allege. Defendants' Memorandum, p. 25. Rather, Plaintiff is permitted to bring any claims within 1 year after the constructively fraudulent transfers were or could reasonably have been discovered. There is no evidence before the Court that Plaintiff could reasonably have discovered these fraudulent transfers sooner than when the original Complaint was filed. Therefore, these claims are timely.

## III.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Joint Motion to Dismiss for Failure to State a Claim.

Dated:    April 18, 2005

THE BAYARD FIRM

By:    _____
Jeffrey M. Schlerf (No. 3047)
Thomas H. Kovach (No) 3964)
Eric M. Sutty (No. 4007)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 655-5000

and

584530v1

28

STRAUSS & TROY
Richard S. Wayne
Thomas P. Glass
John M. Levy
The Federal Reserve Building
150 E. Fourth Street
Cincinnati, Ohio 45202-4018
(513) 621-2120
Fax: (513) 629-9426

Co-Counsel to the IT Litigation Trust

584530v1