IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE IT GROUP, INC., et al. | ) | Case No. 02-10118 (MFW) |
| Debtors, | ) | Jointly Administered |
| ———————————————— | ) | |
| | ) | |
| IT LITIGATION TRUST, | ) | |
| Plaintiff, | ) | Civ. A. No. 04-CV-1268 (KAJ) |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL A. D'ANIELLO, FRANCIS J. | ) | |
| HARVEY, JAMES C. McGILL, | ) | |
| RICHARD W. POGUE, PHILLIP B. | ) | |
| DOLAN, E. MARTIN GIBSON, ROBERT | ) | |
| F. PUGLIESE, CHARLES W. SCHMIDT, | ) | |
| JAMES DAVID WATKINS, ANTHONY | ) | |
| J. DeLUCA, HARRY J. SOOSE, THE | ) | |
| CARLYLE GROUP, THE CARLYLE | ) | |
| GROUP, L.L.C., CARLYLE PARTNERS | ) | JURY TRIAL DEMANDED |
| II, L.P., CARLYLE SBC PARTNERS, II, | ) | |
| L.P., CARLYLE INTERNATIONAL | ) | |
| PARTNERS II, L.P., CARLYLE | ) | |
| INTERNATIONAL PARTNERS III, C/S | ) | |
| INTERNATIONAL PARTNERS, | ) | |
| CARLYLE INVESTMENT GROUP, L.P., | ) | |
| CARLYLE-IT INTERNATIONAL | ) | |
| PARTNERS, L.P., CARLYLE-IT | ) | |
| INTERNATIONAL PARTNERS II, L.P., | ) | |
| CARLYLE-IT PARTNERS L.P., and T.C. | ) | |
| GROUP, L.L.C., | ) | |
| Defendants. | ) | |

REPLY IN SUPPORT OF
DEFENDANTS' JOINT MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION

Date: June 3, 2005

Mark D. Collins (ID No. 2981)
Marcos A. Ramos (ID No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: ramos@rlf.com

Thomas L. Patten
David A. Becker
LATHAM AND WATKINS, LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Telecopier: (202) 637-2201
E-mail: tom.patten.lw.com

Laurie B. Smilan
LATHAM & WATKINS, LLP
11955 Freedom Drive, Suite 500
Reston, VA 20190
Telephone: (703) 456-1000
Telecopier: (703) 456-1001
Email: laurie.smilan@lw.com

*Attorneys for Defendants Daniel A.*
*D'Aniello, Francis J. Harvey, James C.*
*McGill, Richard W. Pogue, Phillip B. Dolan,*
*E. Martin Gibson, Robert F. Pugliese,*
*Charles W. Schmidt, James David Watkins,*
*The Carlyle Group, The Carlyle Group*
*L.L.C., Carlyle Partners II, L.P., Carlyle*
*SBC Partners II, L.P., Carlyle International*
*Partners II, L.P., Carlyle International*
*Partners III, C/S International Partners,*
*Carlyle Investment Group, L.P., Carlyle-IT*
*International Partners, L.P., Carlyle-IT*
*International Partners II, L.P., Carlyle-IT*
*Partners L.P. and T.C. Group, L.L.C.*

Roger D. Anderson (ID No. 3480)
SMITH, KATZENSTEIN & FURLOW LLP
800 Delaware Avenue, 7th Floor,
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Email: randerson@skfdelaware.com

Charles A. De Monaco
Kimberly L. Haddox
DICKIE MCCAMEY & CHILCOTE, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222
Telephone: (412) 392-5523
Telecopier: (412) 392-5367
Email: demonac@dmclaw.com

*Attorneys for Defendant,*
*Harry J. Soose, Jr.*

Ronald S. Gellert (ID No. 4259)
ECKERT, SEAMANS, CHERIN & MELLOTT,
LLC
The Towne Center
4 East 8th Street, Suite 200
Wilmington, DE 19801
Telephone: (302) 425-0430
Email: rgellert@eckertseamans.com

Mark A. Willard
Paul D. Steinman
F. Timothy Grieco
ECKERT SEAMANS CHERIN & MELLOT,
LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219-2788
Telephone: (412) 566-6000
Telecopier: (412) 566-6099
Email: mark.willard@escm.com

*Attorneys for Defendant, Anthony J.*
*DeLuca*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

II.  ARGUMENT ............................................................................................................ 2

    A.  Plaintiff's State Law Claims do not "relate to" the bankruptcy proceeding, resulting in a lack of subject matter jurisdiction. ............................ 2

    B.  The exercise of supplemental jurisdiction over Plaintiff's State Law Claims is not appropriate. ........................................................................... 9

        1.  The lack of a common nucleus of operative fact here precludes the exercise of supplemental jurisdiction .......................... 10

        2.  State Law Claims Predominate Plaintiff's action .............................. 11

III.  CONCLUSION ..................................................................................................... 13

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bergstrom v. Dalkon Shield Claimants Trust (In re. A.H. Robins Co.)*, 86 F.3d 364 (4th Cir. 1996)........................................................................................................ 4

*Binder v. Price Waterhouse & Co., LLP (In re: Resorts International, Inc.)*, 372 F.3d 154 (3d Cir 2004) ......................................................................................... passim

*Borough of West Mifflin v. Lancaster*, 45 F.3d 780 (3d Cir. 1995) ............................. 13

*David Michaels, Distribution for LGI, Inc. v. World Color Press, Inc. et al. (In re: LGI, Inc.)*, 322 B.R. 95 (D.N.J. 2005) ............................................................ 4, 5, 6, 7

*De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003) ........................... 10, 11

*Donaldson v. Bernstein*, 104 F.3d 547 (3d Cir. 1997) .................................................. 3

*Falise v. Am Tobacco Co.*, 241 B.R. 48 (E.D.N.Y. 1999) ............................................. 3

*Grimes v. Graue (In re: Haws)*, 158 B.R. 965 (S.D.Tex. 1999) ................................ 3, 5

*Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999) ........................................................... 2

*In re Integrated Health Services, Inc.*, 291 B.R. 615 (Bankr. D. Del. 2003) ................ 2

*Lyon v. Whisman*, 45 F.3d 758 (3d Cir. 1995) ........................................................ 9, 10

*MarchFirst, Inc. v. LeaveLaw.com, Inc.*, 2004 WL 756605 (N.D. Ill. Feb. 27, 2004) ....................................................................................................................... 10

*Rahl v. Bande*, 316 B.R. 127 (S.D.N.Y. 2004) .................................................... 4, 6, 7

*Schoener v. Mendel*, 1996 WL 284996 (E.D.Pa. May 24, 1996).................... 9, 10, 11

*Stadler v. McCulloch*, 949 F. Supp. 311 (E.D.Pa. 1996) ........................................ 9, 10

*United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552 (3d Cir. 1999)........................................................................................................... 3

**Other Authorities**

11 U.S.C. § 548 .......................................................................................................... 13

28 U.S.C. § 1334(c)(1)................................................................................................. 1

28 U.S.C. § 1367 ........................................................................................................ 13

28 U.S.C. § 1367(c) .............................................................................................. 11, 13

28 U.S.C. § 1441(c) .................................................................................................... 13

Federal Rule of Civil Procedure 12(b)(1) ..................................................................... 1

RLF1-2883661-1

**REPLY IN SUPPORT OF**
**DEFENDANTS' JOINT MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

On March 2, 2005 Defendants moved, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 1334(c)(1), to dismiss Counts I through V and Count IX of Plaintiff's First Amended Complaint (D.I. 30, "FAC" or the "Amended Complaint") by filing a Joint Motion to Dismiss for Lack of Subject Matter Jurisdiction. On April 18, 2005, Plaintiff responded by filing its Memorandum in Opposition (D.I. 52, "Opp.") to the same. Defendants now file this Reply Brief in further support of their Motion to Dismiss.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

In their Opening Brief in Support Of Defendants' Joint Motion To Dismiss For Lack Of Subject Matter Jurisdiction (D.I. 36, the "Opening Brief" or "Open. Br."), Defendants demonstrated that this Court lacks subject matter jurisdiction over Plaintiff's state law claims for breach of fiduciary duty, corporate waste, aiding and abetting breach of fiduciary duty, and unlawful payment of dividends (the "State Law Claims"). Defendants established that under recent, controlling Third Circuit authority, the State Law claims do not arise under, arise in, or relate to the IT Group bankruptcy proceeding, and therefore fall outside of this Court's statutorily-defined jurisdiction. Defendants also demonstrated that because the State Law Claims are not part of the same "case or controversy" as the bankruptcy claims, and predominate over the bankruptcy claims, this Court should not exercise supplemental jurisdiction over the State Law claims.

The arguments set forth in Plaintiff's Memorandum in Opposition ("Opp.") fail to controvert Defendants' arguments. Third Circuit law makes clear that the State law causes of action regarding Defendants' alleged pre-petition conduct do not "conceivably affect" the IT Group bankruptcy estate within meaning of the bankruptcy laws, and that these claims do not

have the requisite nexus to the IT Group bankruptcy proceeding to permit this Court to retain post-confirmation jurisdiction: Simply put, these quintessential state-law claims do not affect the interpretation, implementation, consummation, execution or administration of the IT Group Chapter 11 Plan, or the Litigation Trust Agreement, in a manner that would provide this Court with subject matter jurisdiction over those claims.

In addition, Plaintiff's Opposition fails to establish that this Court has supplemental jurisdiction over Plaintiff's State Law Claims asserted in the Amended Complaint. Contrary to Plaintiff's suggestion, the simple inclusion of federal claims in his complaint and his assertion that those claims are "interdependent" with the State Law Claims cannot counter the fact that the State Law Claims do not derive from the common nucleus of operative fact upon which the Federal Claims are based. Further, Plaintiff's State Law Claims predominate over the bankruptcy claims asserted by Plaintiff, and Plaintiff's argument that predominance is only shown here by "a numerical count" of the causes of action (Opp. at 18), is incorrect apart from the fact that the State Law Claims overshadow the federal claims both numerically and in terms of the dollar-values assigned to those claims by Plaintiff, they predominate because they form the core allegations of Plaintiff's action.

## II.    ARGUMENT

### A.    Plaintiff's State Law Claims do not "relate to" the bankruptcy proceeding, resulting in a lack of subject matter jurisdiction.

Defendants demonstrated in the Opening Brief that the Court lacks original subject matter jurisdiction over Plaintiff's State Law Claims[1] because they do not arise under, arise

---

[1]    State Law causes of action have repeatedly been determined to be non-core matters. *See Halper v. Halper,* 164 F.3d 830, 836-837 (3d Cir. 1999). In addition, Delaware's federal courts have similarly held that actions for breach of fiduciary duty and waste of corporate assets to be non-core. *See In re Integrated Health Services, Inc.,* 291 B.R. 615, 618 (Bankr. D. Del. 2003). Furthermore, Plaintiff does not allege in the Amended Complaint or in its Opposition that the
*(Footnote continued on next page)*

2

in, or relate to the IT Group bankruptcy proceeding. Open. Br. at 6-13. Special inquiry is required to determine whether subject matter jurisdiction exists following confirmation of a bankruptcy plan. The parties agree on the Third Circuit test to be applied by this Court to determine whether Plaintiff's State Law Claims fall within this Court's "related to" subject matter jurisdiction in such a context. In the leading case, *Binder,* the Third Circuit held that the test to determine "related to" subject matter jurisdiction over state law claims is whether "there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate." *Binder v. Price Waterhouse & Co., LLP (In re Resorts International, Inc.),* 372 F.3d 154, 168-69 (3d Cir 2004) (*"Binder"*). As *Binder* explained, claims that do <u>not</u> require interpretation of the Bankruptcy Code or of the Chapter 11 plan of reorganization in a bankruptcy proceeding are not sufficiently related to a bankruptcy case to vest a bankruptcy court with jurisdiction over those claims.[2] 372 F.3d at 168-71. Furthermore, courts have jurisdiction to hear a proceeding only if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Binder,* 372 F.3d 164.[3] Plaintiff acknowledges this standard and relies heavily

---

State Law Claims are "core." Opp. At 7-13; Open. Br. at 8-9. Thus, Plaintiff concedes that these claims are non-core.

[2]    *See also Falise v. Am Tobacco Co.,* 241 B.R. 48 (E.D.N.Y. 1999) (resolution of dispute between tobacco manufactures and bankruptcy trust seeking to recover from tobacco companies for role in contributing to asbestos related illness has no impact on integral aspect of bankruptcy plan or proceeding); *Grimes v. Graue (In re: Haws),* 158 B.R. 965 (S.D.Tex. 1999) (court not being asked to construe or interpret confirmed plan).

[3]    Other cases where subject matter jurisdiction was found to exist post-confirmation of a bankruptcy plan, *see United States Trustee v. Gryphon at the Stone Mansion, Inc.,* 166 F.3d 552 (3d Cir. 1999) (action to enforce fee provision that created liability for debtor had close nexus to establish jurisdiction); *Donaldson v. Bernstein,* 104 F.3d 547 (3d Cir. 1997) (post bankruptcy court jurisdiction exists when debtors failed to fund plan and failed to pay unsecured creditors required by plan because integrity of plan is at issue); *Bergstrom v. Dalkon Shield Claimants*
*(Footnote continued on next page)*

on *David Michaels, Distribution for LGI, Inc. v. World Color Press, Inc. et al. (In re: LGI, Inc.)*, 322 B.R. 95, 100 (D.N.J. 2005) ("*LGI*") and *Rahl v. Bande*, 316 B.R. 127 (S.D.N.Y. 2004), which utilize and cite with approval the test and analysis in the *Binder* case. In short, for post-confirmation subject matter jurisdiction to exist, the claim at issue must affect an integral aspect of the bankruptcy process. *Binder*, 372 F.3d 154, 167.

Defendants showed in the Opening Brief that, as in *Binder,* the claims at issue here do not require interpretation of or reference to either the Code or the IT Group Chapter 11 Plan, thus, precluding the exercise of jurisdiction over these claims by this Court. This is particularly true because the claims at issue are being pursued after the confirmation of the Chapter 11 Plan, when the existence of the IT Group bankruptcy estate has terminated and the bankruptcy process ended. Open. Br. at 11-12. Furthermore, Plaintiff has not and cannot meet its burden of establishing the requisite "close nexus." The State Law Claims are unrelated to the distribution of any assets under the Plan, do not arise "in connection" with the Plan and require no construction or interpretation of the Plan for their resolution. Op. Br. at 10-11. In *Binder*, the Litigation Trust's assets, including the proceeds recovered from litigation, were considered to be assets of the estate generally. However, the Third Circuit explicitly held that such a potential increase in assets from general litigation proceedings does <u>not</u> create a sufficiently close nexus to the bankruptcy proceeding to create "related to" jurisdiction. 372 F.3d at 169-170.

In the Opposition, Plaintiff contends that this case is analogous to *LGI,* in which the court held that a pre-petition claim that was being pursued by a litigation trust and was defined as an "asset" by the plan to be distributed to certain creditors, and thus the claim had

---

*Trust (In re: A.H. Robins Co.)*, 86 F.3d 364 (4th Cir. 1996) ("related to" jurisdiction existed when it was necessary to interpret bankruptcy plan's documents to determine reasonableness to charge attorneys' fees out of pro rata distribution because dispute integrally affected plan).

4

a "close nexus" to the debtor's bankruptcy proceeding so as to provide the court with jurisdiction. *LGI,* 322 B.R. at 100.[4] This argument is unavailing for a variety of the following reasons.

First, whether a claim arises pre-petition or post-confirmation is not determinative of whether a "close nexus" has been established to confer jurisdiction. The *LGI* court recognized that even though the claim in *Binder* arose after confirmation of the bankruptcy plan and the claim in *LGI* arose pre-petition, this alone is not dispositive for determining the existence of "related to" subject matter jurisdiction. *LGI,* 322 B.R. at 101. The *LGI* court, contrasted *Grimes v. Graue (In re: Haws),* 158 B.R. 965 (S.D.Tex. 1999), recognizing that the cause of action in *Grimes* also arose pre-petition, but was never made part of the plan, thereby <u>prohibiting</u> subject matter jurisdiction in that case – as opposed to the facts before the *LGI* court. *LGI,* 322 B.R. 95, 105-106. The *LGI* court noted that the trustee's claims in that case were "sufficiently identified" in the plan documents. *Id.* In the instant case, Plaintiff 's State Law Claims are not specifically identified in the Bankruptcy Plan, they have no conceivable effect on the IT Group bankruptcy estate and there is no need to interpret or implement the IT Group Plan in order to resolve these claims. Therefore, whether a claim arises pre-petition is not dispositive, rather, specifically naming and identifying a particular claim in the Plan for the benefit of certain creditors is the critical factor in the analysis.

Second, in *LGI,* the court reiterated the *Binder's* opinion acknowledgment of the Third Circuit precedent holding that "allowing any and all proceedings which have the potential for increasing the assets of a post-confirmation trust to claim the "related to"

---

[4] The *World Color* action consists of "basic state-law contract and negligence claims," are not "premised on any bankruptcy law." *LGI,* 322 B.R. at 104.

jurisdiction of the bankruptcy court would simply explode bankruptcy court jurisdiction beyond acceptable Constitutional and statutory limits":

> If the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the "related to" grant. Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended for non-Article III bankruptcy courts.

*LGI,* 322 B.R. at 102, citing, *Binder*, 372 F.3d at 170-171.    Furthermore, the court in *LGI*, recognized that the Third Circuit admonished that the "limitations embodied in 'interpretation, implementation, consummation, execution, or administration of the confirmed plan" preclude the "<u>unending jurisdiction</u>" in bankruptcy over such trusts." *Id.* at 101.[5]

In *LGI*, the court held that a sufficiently close nexus existed to permit "related to" subject matter jurisdiction because the claim at issue was <u>specifically named and identified</u> in an Asset Purchase Agreement (as Excluded Assets) that was <u>incorporated by reference</u> into the Plan of Reorganization.    The Plan also specifically transferred the "Excluded Assets" to the Distribution Trust for prosecution and designated for the benefit of certain creditors.    322 B.R. at 102-103.    *LGI* is distinguishable from the instant matter for the following reasons.    In the case *sub judice*, by contrast, the centerpiece of Plaintiff's argument for the existence of "related to" subject matter jurisdiction is the fact that the Litigation Trust was created in accordance with provisions of the Bankruptcy Plan.    Opp. at 13.    Therefore, Plaintiff argues, the Trust's authority to pursue federal claims derived from the Bankruptcy Plan. *Id*[6]

---

[5]    Plaintiff's arguments in favor of "judicial economy" are not sufficient to counter the problematic effect of "exploding" bankruptcy court jurisdiction beyond acceptable Constitutional and statutory limits or creating "endless" jurisdiction.

[6]    In support of their arguments, Plaintiff relies on a lower court opinion in the Second Circuit for the proposition that "the court found that the states claims were "related to" the debtor's bankruptcy case, in that their resolution involved the interpretation and implementation of the bankruptcy plan." Opp. at 12 (referring to *Rahl v. Bande,* 316 B.R. 127 (S.D. N.Y. 2004)("related
*(Footnote continued on next page)*

However, the mere fact that a Trust is created by a Bankruptcy Plan is not determinative for the existence of subject matter jurisdiction pertaining to claims asserted by that Trust. Otherwise, in every circumstance where a Plan Trust is created, the District Court would be required to retain subject matter jurisdiction for any claim brought by that Trust. That plainly is not the law; the Third Circuit in *Binder* held that the state law claims in question were not "related to" the bankruptcy proceeding, notwithstanding the creation of the litigation trust pursuing those claims. 372 F.3d at 169.

Furthermore, Plaintiff's Opposition, simply fails to acknowledge that while the Plan of Reorganization in *LGI* specifically called out the state law claims in question, here the IT Group Bankruptcy Plan failed to identify with any specificity the claims that the Trust is permitted to pursue. Rather, in the case before this Court the First Amended Joint Chapter 11 Plan for the IT Group, Inc. and its Affiliated Debtors dated February 9, 2004 (the "Bankruptcy Plan") and the Order of Court (the "Confirmation Order) confirming the Plan, dated April 5, 2004, reveal that Plaintiff's State Law Claims are not specifically named, nor identified, in the Bankruptcy Plan or Confirmation Order. In fact, most of the claims that <u>are</u> permitted to be brought by the Litigation Trust are not identified with any specificity. Section 7.16 of the Bankruptcy Plan only generally describes the claims that are vested in the Litigation Trust upon the date of confirmation of the Plan and those that the Litigation Trust can pursue. As such, Plaintiff's State Law Claims do <u>not</u> invoke the implementation, consummation and execution of the Bankruptcy Plan, nor are they necessary to effectuate the terms of the Bankruptcy Plan, to establish the required nexus to confer subject matter jurisdiction upon this Court.

---

to" jurisdiction found where court was required to determine which claims were transferred to litigation trust created under the plan)). *Rahl* is <u>not</u> controlling authority over the instant matter-- the Third Circuit clearly set forth the requisite standard for "related to" jurisdiction in *Binder*, as discussed at length herein and in Defendants' Opening Brief.

7

In addition, like the claims at issue in *Binder*, this proceeding "lacks a close nexus to bankruptcy plan or proceeding and affects only matters collateral to the bankruptcy process." 372 F.3d at 169. Resolution of this claim will not affect the estate and will not interfere with the implementation of the Bankruptcy Plan. *Id* Finally, the former creditors, now the beneficiaries of the Litigation Trust, "no longer have a close nexus to bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims." *Id.* Here, the Bankruptcy Court's Confirmation Order, p. 13, Finding of Fact, ¶ LL., confirms that the Litigation Trust was created  pursuant to Section 4.2 of the Bankruptcy Plan. As a result, assets of the estate were transferred to the Litigation Trust for the benefit of, including but not limited to, Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims. The holders of these claims receive beneficial interest in the Litigation Trust to share in the proceeds of the Litigation Trust's claims, in lieu of having any continuing right under the Bankruptcy Plan against the Reorganized IT Group to receive a portion of any proceeds from the assets transferred to the Litigation Trust. (Bankruptcy Plan, § 4.2.) Any recovery realized by the Litigation Trust on any cause of action shall be the property of the Litigation Trust to be distributed to its beneficiaries. (Bankruptcy Plan, § 7.16.) Moreover, pursuant to the Litigation Trust Agreement, the IT Group, Inc., its debtors and debtors in possession assigned Trust Assets, including Estate Causes of Action, to the Litigation Trust Trustee to be held for the benefit of Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims under the Bankruptcy Plan. (Litigation Trust Agreement, ¶ 2.2.)

By electing to utilize the Litigation Trust, the Plaintiff's State Law Claims were separated from the bankruptcy estate, thereby weakening the jurisdictional nexus for those claims. In addition, the separation of litigation beneficiaries from the Reorganized IT Group, by not permitting the beneficiaries to have an interest in the Reorganized IT Group,

8

establishes that Plaintiff's State Law Claims will not have an effect of the debtor. *Binder*, 372 F.3d 154, 169-170.

In sum, Plaintiff's State Law Claims are unrelated to the distribution of assets under the Plan, do not require interpretation of the Plan for resolution, do not affect an integral aspect of the bankruptcy process and Plaintiff has failed to establish their burden of the requisite "close nexus." Therefore, under the teachings of the Third Circuit, "related to" jurisdiction does not exist in this case.

**B.    The exercise of supplemental jurisdiction over Plaintiff's State Law Claims is not appropriate.**

Defendants demonstrated in the Opening Brief that the State Law Claims do not form part of the same case or controversy as Plaintiff's bankruptcy claims, and that the State Law Claims predominate over the bankruptcy claims, thus making any exercise of supplemental jurisdiction by this Court over the State Law Claims inappropriate. Op. Br. at 13-19. Plaintiff's response -- that his bankruptcy claims are so "intertwined" with the state law claims as to be "inseparable" Opp. at 15-17, and the State Law Claims do not predominate because judicial economy is best-served by litigating these "inseparable" claims together-- lacks merit.

Not one case cited by the Plaintiff controverts the principles that Defendants established in then Opening Brief, namely: that state and federal claims must derive from a common nucleus of operative fact[7], that the connection between the state claims and the federal claims cannot be tangential[8], that the exercise of supplemental jurisdiction is inappropriate where there is only a "loose nexus" between the state and federal claims[9], that

---

[7]  *Lyon v. Whisman*, 45 F.3d 758 (3d Cir. 1995).

[8]  *Schoener v. Mendel*, 1996 WL 284996 (E.D. Pa. May 24, 1996).

[9]  *Stadler v. McCulloch*, 949 F. Supp. 311 (E.D. Pa. 1996).

the state law claims here do not predominate over the remaining counts[10], and that where, as here, the disparate state and federal causes of action are not sufficiently connected to meet the same case or controversy requirement for supplemental jurisdiction, there should be no exercise of supplemental jurisdiction.[11]

1.    The lack of a common nucleus of operative fact here precludes the exercise of supplemental jurisdiction

For a district court adjudicating federal claims to exercise supplemental jurisdiction to hear state claims, "[t]he state and federal claims must derive from a common nucleus of operative fact," and the plaintiff's claims must be such that "he would ordinarily be expected to try them all in one judicial proceeding." *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995). Exercise of supplemental jurisdiction is not appropriate when there is only a "loose nexus" between the state and federal claims. *See, e.g., Stadler v. McCulloch*, 949 F. Supp. 311, 313-314 (E.D.Pa. 1996); *see also Schoener v. Mendel*, 1996 WL 284996 (E.D.Pa. May 24, 1996) (connection between state claims and federal claims cannot be tangential).

Plaintiff argues that its State Law Claims and Federal Claims share a common nucleus of operative fact because it has re-alleged several allegations in its State Law Claims found in Counts I through V of the Amended Complaint.[12] Opp. at 16-17. This argument is without merit. A reading of the Amended Complaint shows that Plaintiff's State Law Claims are only tangentially related to the statutory avoidance and fraudulent conveyance claims. As more fully described in Defendants' Opening Brief, the theories of liability, underlying conduct and necessary proof for Plaintiff's State Law Claims and Federal Claims are

---

[10] *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003).

[11] *MarchFirst, Inc. v. LeaveLaw.com, Inc*, 2004 WL 756605, *2 (N.D. Ill. Feb. 27, 2004).

[12] In its Memorandum in Opposition, Plaintiff identified the critical facts for purposes of proving its State Law Claims: "among other things . . . (d) failing to preserve, maximize, and not dissipate the assets for the benefit of the Company and its creditors, . . . (g) making transfers for the benefit of insiders, . . . and (j) wasting corporate assets."

10

significantly different. Open. Br. at 14-16. Plaintiff's proof of the State Law Claims (Counts I-V, IX) will presumably entail proof of the following: each Defendant's state of mind; of individual actions that breached fiduciary duties, were conspiratorial, or were wasteful; and of the details of this conduct over the prolonged period of time in which it allegedly occurred. Open. Br. at 15. Conversely, Plaintiff's avoidance and fraudulent transfer claims (Counts VI-VIII)[13] are mechanical and fixed to dates and financial determinations as outlined in detail in Defendant's Opening Brief. Open. Br. at 15. Simply, Plaintiff has not alleged any of the critical State Law Claim facts in its Federal Claims. The case law is clear that tangential connections are <u>wholly insufficient</u> to give rise to pendent jurisdiction.[14] This is basically an attempt to lever the State Law Claims into federal court, but as discussed herein, the case law is against the Trust in making this connection and seeking federal jurisdiction.

      2.    <u>State Law Claims Predominate Plaintiff's action</u>

Defendants' Opening Brief demonstrates that even if the Court finds that the State Law Claims arose from the same nucleus of facts as the bankruptcy claims, the exercise of supplemental jurisdiction is inappropriate because the State Law Claims predominate over the bankruptcy claims. Op. Br. at 16-19. A district court may decline to exercise supplemental jurisdiction over a state law claim if the state law claim substantially predominates over the claims over which the district court has original jurisdiction. 28 U.S.C. § 1367(c); *De Asencio*, 342 F.3d 301.

---

[13]    Even Count VIII, alleging a fraudulent transfer, is at most tangential since it only is seeking relief from Carlyle and was added after the Defendants filed their Motion to Dismiss the initial complaint, apparently out of recognition that the Trust's bankruptcy claims were really not related to the State Law Claims.

[14]    *Schoener v. Mendel*, 1996 WL 284996 (E.D.Pa. May 24, 1996)(dismissing state corporate waste and accounting claims for lack of a sufficient connection to federal ERISA claims).

11

Plaintiff argues that its State Law Claims do not predominate over its Federal Claims to permit this Court to exercise supplemental jurisdiction because, according to Plaintiff, the State Law Claims and Federal Claims are interdependent. Opp. at 19-20. Plaintiff asserts that there is an "inseparable relationship between the State Claims and the Federal Claims" because (1) several allegations in its State Law Claims found within Counts I through V of the Amended Complaint are identical (see footnote 2 herein); (2) there is an overlap between the issues in the State Law Claims and Federal Claims; and (3) the same evidence will be introduced to establish both Plaintiff's State Law Claims and Federal Claims. *Id.*

These arguments lack merit. As Defendants showed in the Opening Brief, the evidence required to prove the State Law Claims is significantly different than what is relevant to prove the Federal Claims. Plaintiff's proof of the State Law Claims must focus on facts that demonstrate that the officer and director defendants breached their fiduciary duties over an extended period of time. Discovery will be extensive, time-consuming and complex.[15] On the other hand, the federal claims for avoidance and fraudulent transfer are primarily mechanical and fixed to certain dates and financial determinations and are not as complex as the State Law Claims. The preference claims are centered upon establishing specific payments made within a statutory time period. The fraudulent transfer claims, among other things, involve whether (a) the debtor did not receive reasonably equivalent value for its transfer, and (b) either (i) that the debtor was insolvent at the time of the transfer or became insolvent as a result of it, (ii) that at the time of the transfer, the debtor engaged in a business or transaction (or was about to) for which any property remaining with the debtor

---

[15] The initial Complaint sought damages in the amount of $150 million for each count that alleged a breach of fiduciary duty. The bankruptcy counts claim a recovery of about $14 million. In addition to the Business Judgment Rule defenses that will be asserted against the allegations of breaches of fiduciary duty, this is yet another reason why the State Law Claims predominate over the remaining claims.

12

was "unreasonably small capital," or (iii) that at the time of the transfer, the debtor intended to incur or believed it would incur debts beyond to ability to pay. 11 U.S.C. § 548. *See* Open. Br. at 15. One area of overlap in the federal and state law claims is the issue of solvency, but that fact alone should not subject what otherwise would be a state cause of action to federal jurisdiction.[16]

In sum, the State Law Claims will substantially predominate over the Federal Claims because of the complexity of the proof required to sustain those claims and the availability of business judgment defenses pursuant to Delaware General Corporation Law. This Court should therefore decline to exercise supplemental jurisdiction, to the extent it determines that such jurisdiction even exists in this case.

## III.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' Joint Motion to Dismiss for Lack of Subject Matter Jurisdiction, this Honorable Court should dismiss Counts I through V and IX of Plaintiff's Amended Complaint.

---

[16]    It should be noted that *Borough of West Mifflin v. Lancaster*, 45 F.3d 780 (3d Cir. 1995), the case upon which Plaintiff most heavily relies to support its argument that its State Law Claims do not predominate in the litigation before this Court, does not address supplemental jurisdiction under 28 U.S.C. § 1367, which is the controlling statute for supplemental jurisdiction in the case before this Court. In fact, the issue in *Borough of West Mifflin* focused upon the authority of a district court to remand a case under 28 U.S.C. § 1441(c). The district court's ruling, subsequently addressed on appeal in the Third Circuit, did not consider 28 U.S.C. § 1367(c) in its analysis. The Third Circuit, likewise, only addressed the district court's ruling on 28 U.S.C. § 1441(c) and any comments regarding 28 U.S.C. § 1367(c) are merely dicta. 45 F.3d at 787.

Dated:  June 3, 2005                              Respectfully submitted,


/s/ Ronald S. Gellert                             /s/ Roger D. Anderson
Ronald S. Gellert (ID No. 4259)                   Roger D. Anderson (ID No. 3480)
ECKERT, SEAMANS, CHERIN & MELLOTT, LLC            SMITH, KATZENSTEIN & FURLOW LLP
The Towne Center                                  800 Delaware Avenue, 7th Floor,
4 East 8th Street, Suite 200                      P.O. Box 410
Wilmington, DE  19801                             Wilmington, DE 19899
Telephone:  (302) 425-0430                        Telephone:  (302) 652-8400
Email:  rgellert@eckertseamans.com                Email:  randerson@skfdelaware.com

Mark A. Willard                                   Charles A. De Monaco
Paul D. Steinman                                  Kimberly L. Haddox
F. Timothy Grieco                                 DICKIE MCCAMEY & CHILCOTE, P.C.
ECKERT SEAMANS CHERIN & MELLOT, LLC               Two PPG Place, Suite 400
U.S. Steel Tower                                  Pittsburgh, PA  15222
600 Grant Street, 44th Floor                      Telephone:  (412) 392-5523
Pittsburgh, PA  15219-2788                        Telecopier:  (412) 392-5367
Telephone:  (412) 566-6000                        Email:  demonac@dmclaw.com
Telecopier:  (412) 566-6099
Email:  mark.willard@escm.com

*Attorneys for Defendant, Anthony J. DeLuca*      *Attorneys for Defendant, Harry J. Soose, Jr.*

14

/s/ Marcos A. Ramos
Mark D. Collins (ID No. 2981)
Marcos A. Ramos (ID No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: ramos@rlf.com

Thomas L. Patten
David A. Becker
LATHAM AND WATKINS, LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Telecopier: (202) 637-2201
E-mail: tom.patten@lw.com

Laurie B. Smilan
LATHAM & WATKINS, LLP
11955 Freedom Drive, Suite 500
Reston, VA 20190
Telephone: (703) 456-1000
Telecopier: (703) 456-1001
Email: laurie.smilan@lw.com

*Attorneys for Defendants Daniel A.
D'Aniello, Francis J. Harvey, James C.
McGill, Richard W. Pogue, Phillip B. Dolan,
E. Martin Gibson, Robert F. Pugliese,
Charles W. Schmidt, James David Watkins,
The Carlyle Group, The Carlyle Group
L.L.C., Carlyle Partners II, L.P., Carlyle
SBC Partners II, L.P., Carlyle International
Partners II, L.P., Carlyle International
Partners III, C/S International Partners,
Carlyle Investment Group, L.P., Carlyle-IT
International Partners, L.P., Carlyle-IT
International Partners II, L.P., Carlyle-IT
Partners L.P. and T.C. Group, L.L.C.*

15