# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d
2004 WL 756605 (N.D.Ill.)
(Cite as: 2004 WL 756605 (N.D.Ill.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
In re: MARCHFIRST, INC., et al., Debtors.
Andrew J. MAXWELL, Trustee, Plaintiff,
v.
LEAVELAW.COM, INC., Defendant.
No. 03 C 4043.

Feb. 27, 2004.

Steven Shaw Potts, Law Offices of Andrew J. Maxwell, Chicago, IL, David Henry McCarthy, III, Law Offices of David H. McCarthy, III, Naperville, IL, for Plaintiff.

Jeff P. Thomas, Law Office of Jeff Thomas, Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

MORAN, Senior J.

*1 Andrew J. Maxwell, the bankruptcy trustee, filed an adversary complaint against defendant Leavelaw.com, Inc. (LL) in the Bankruptcy Court for the Northern District of Illinois, seeking the return of an alleged preference payment made to the defendant. Defendant then filed a three-count counter-complaint against the trustee and withdrew reference to the bankruptcy court. The trustee now seeks to dismiss the counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and to amend the order granting defendant's motion to withdraw reference. For the following reasons, the trustee's motion to dismiss is granted and his motion to alter or amend the order is denied as moot.

*BACKGROUND*

The debtor, marchFIRST Inc. allegedly made a payment in the amount of $15,000 to the defendant in January 2001, less than 90 days prior to filing a bankruptcy petition on April 21, 2001. Maxwell, as trustee of the bankruptcy estate, filed an adversary suit against defendant in an effort to recover the $15,000, arguing that the payment was a preference and therefore voidable under bankruptcy law.

Defendant, in its counter-complaint, alleges that prior to filing the adversary complaint Maxwell, and an organization known as Receivable Control Corporation (RCC), developed a scheme whereby they would have an organization called Preference Recoveries (PR) seek to collect claims of the bankrupt from the defendant and other parties. In furtherance of this scheme, defendant claims that someone from PR sent two letters claiming that the estate was entitled to the money and that an agent of PR made a series of misleading representations to LL's chief executive officer. Specifically, defendant claims that the PR agent assured LL that PR would protect LL's interests relating to the return of the preference payment; that PR would provide LL with unbiased bankruptcy law interpretations; and that PR would work with LL to determine the validity of any challenges by LL to collection.

Defendant further alleges that the trustee misrepresented LL's legal obligations and rights and that he made material misrepresentations of fact. As a result of these "deceptive acts," defendant claims that it felt "bullied, intimidated, threatened, confused, frustrated, worn out, defenseless and bleak." LL claims that this caused it to shut down its website and forego numerous valuable business opportunities, and that it suffered severe economic damages as a result.

*DISCUSSION*

We do not have subject matter jurisdiction over defendant's counterclaims. Defendant does not argue that we have original jurisdiction under 28 U.S.C. § 1331 or § 1332. No federal question is implicated by defendant and it does not argue that there is complete diversity or that the amount in controversy is greater than $75,000.

Defendant also fails to demonstrate that we have jurisdiction from some other source. In the counter-complaint, defendant stated that we have jurisdiction pursuant to 28 U.S.C. §§ 1334 and 1367. Section 1334 provides that district courts have jurisdiction over bankruptcy proceedings and states in relevant part:

*2 Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 756605 (N.D.Ill.)
(Cite as: 2004 WL 756605 (N.D.Ill.))

Page 2

shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). We must determine whether this suit "arises under" or is "related to" the bankruptcy dispute.

The counterclaims clearly do not arise under Title 11. In order for such jurisdiction to apply, the cause of action must be created by bankruptcy law. In re Spaulding & Co., 131 B.R. 84, 88 (N.D.Ill.1990). On their face, defendant's claims rely on causes of action created by Illinois statutory and common law.

Likewise, defendant fails to establish that the counterclaims are related to the bankruptcy proceedings. Such jurisdiction applies only to disputes that affect the payments to the bankrupt's other creditors or the administration of the estate. Matter of Kubly, 818 F.2d 643, 645 (7th Cir.1987). Mere overlap between the bankrupt's affairs and a dispute is insufficient to establish jurisdiction. Homes Insurance Co. v. Cooper & Cooper, Ltd., 889 F.2d 746, 749 (7th Cir.1989). Defendant's counterclaims do not implicate the bankruptcy estate in any way. Defendant admitted as much in arguing in support of the motion to withdraw reference. At best, both disputes involve the $15,000 paid by march FIRST to defendant, but the claims at issue here involve only alleged wrongdoing by Maxwell, the trustee. If defendant prevailed on the counterclaims, it would be able to recover only from the trustee, rather than from the estate--other debtors and creditors would not be affected.

Section 1367 gives us no jurisdiction over this dispute. It provides supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." See Rothman v. Emory University, 123 F.3d 446, 454 (7th Cir.1997). Here the original action was by the estate to recover an alleged preference for the benefit of the estate and its creditors. Defendant's claims have very little to do with the bankruptcy of marchFIRST. Instead, they involve alleged actions by the trustee in late 2002 and early 2003, well over a year after the $15,000 payment and the bankruptcy declaration. They are not part of the same controversy, which is a simple preference claim. Defendant's claims have no bearing on whether or not the $15,000 payment was a preference. And even if we were in error about that, we would decline to exercise supplemental jurisdiction pursuant to section 1367(c), because defendant's state law claims substantially predominate over the claim over which the court has jurisdiction.

Even if we did have jurisdiction to resolve this dispute, plaintiff fails to state a cognizable claim for relief. In deciding a Rule 12(b)(6) motion to dismiss we must assume the truth of all well-pleaded allegations, making all inferences in the plaintiff's favor. Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 420 (7th Cir.1994). The court should dismiss a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While the complaint does not need to provide the correct legal theory to withstand a Rule 12(b)(6) motion, it must allege all of the elements necessary to recover. Ellsworth v. City of Racine, 774 F.2d 182, 184 (7th Cir.1985), cert. denied, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986).

*3 Defendant alleges violation of the Illinois Collection Agency Act (ICAA), 225 ILCS 425/1 et seq., the Illinois Consumer Fraud and Deceptive Trade Practices Act (IFDTPA), 815 ILCS 505/1 et seq and common law fraud. Defendant fails to allege any connection between the trustee's actions and the alleged damages. It admits that the $15,000 was never paid to the estate, but claims that the alleged damages occurred when defendant shut down its website, became distracted and passed up numerous business opportunities. There is no apparent connection between these losses and any of the misrepresentations or deceptive acts alleged by the defendant. Even taking all of defendant's allegations as true, the trustee's contact with the defendant involved two letters and a few phone calls, during which the trustee demanded payment of the $15,000, promised to protected defendant's interests and yet failed to do so, essentially misleading defendant as to its financial obligations. There is no indication that these statements actually induced any reliance (or how they *could* have done so), or otherwise caused any damage to defendant. In fact, defendant's assertions show that the trustee failed in his only stated goal: recovering the money. All of the actions taken by defendant that ultimately led to the loss of business opportunities, appear to have been entirely voluntary.

Defendant is a commercial enterprise, not some aged and vulnerable consumer. It was asked to refund some money, thus placing it in an adversarial

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 756605 (N.D.Ill.)
(Cite as: 2004 WL 756605 (N.D.Ill.))

Page 3

relationship with those requesting the funds. How, in those circumstances, it could become an emotional basket case or could think the requestor became its agent and personal advisor is not explained, nor can any explanation be conjectured.

The trustee also seeks to amend the September 19, 2003, Memorandum Opinion and Order granting defendant's motion to withdraw reference to the bankruptcy court. Specifically, he seeks to delete the word "personally" from the order. When using the word "personally" in the order, we simply wanted to make clear that the counterclaims were not brought against the bankruptcy estate, but rather against Maxwell, the trustee. We did not intend to indicate that Maxwell would be subject to personal liability, separate from his duties as trustee. In any case, as the counterclaims are dismissed, that motion is moot. [FN1]

> FN1. In the Memorandum and Order of September 19, 2003, withdrawing the reference, we inadvertently omitted the word "not" after the word "has" in the first line of the second full paragraph on page 2. It is amended to include it.

### CONCLUSION

For the foregoing reasons, the trustee's motion to dismiss is granted and his motion to alter or amend the order is denied as moot.

2004 WL 756605 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 2003 WL 23799811 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Motion to Dismiss Amended Counterclaims (Oct. 16, 2003)

• 1:03CV04043 (Docket) (Jun. 13, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in F.Supp.
1996 WL 284996 (E.D.Pa.)
(Cite as: 1996 WL 284996 (E.D.Pa.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
George F. SCHOENER, Jr., et al.
v.
M. MARK MENDEL, LTD, et al.
Civ. A. No. 95-6002.

May 24, 1996.

James A. Young, Christie, Pabarue, Mortensen and Young, Diana L. Moro-Bishop, Christie, Parabue, Mortensen and Young, Philadelphia, PA, for George F. Schoener, Jr., George Schoener, Jr., P.C.

Walter Weir, Jr., Weir & Partners, Philadelphia, PA, for, M. Mark Mendel, Ltd., M. Mark Mendel, Ltd., Employee Money Purchase Plan and Trust, M. Mark Mendel, Grace B. Mendel, Daniel E. Murray, Theodore A. Schwartz, Linda F. Rosen.

Francis J. Hartman, Hartman, Marks & Nugent, Moorestown, NJ, for Beverly K. Thompson.

MEMORANDUM

LUDWIG, District Judge.

*1 This is an ERISA action. Plaintiff George F. Schoener, Jr. is a former member of the M. Mark Mendel law firm. Defendants, who are M. Mark Mendel, Ltd., M. Mark Mendel, Ltd., Employee Money Purchase Plan and Trust, M. Mark Mendel, Grace B. Mendel, Daniel E. Murray, Theodore A. Schwartz, and Linda F. Rosen, move for summary judgment on the ERISA claims and to dismiss the two supplemental state law claims for lack of subject matter jurisdiction. Fed.R.Civ.P. 56; 12(b)(1). Individual plaintiff and his corporation, plaintiff George F. Schoener, Jr., P.C., cross-move for summary judgment on the ERISA claims and also move for a preliminary injunction. Fed.R.Civ.P. 56; 65.

Of the 10 ERISA claims involving the administration of the M. Mark Mendel, Ltd., Employee Money Purchase Plan and Trust, seven contain, at least in part, triable issues. They will therefore survive defendants' summary judgment motion. As to the other three, defendants' motion for summary judgment will be granted as to two; and plaintiffs' cross-motion for summary judgment will be granted as to one.

Defendants' motion to dismiss the supplemental state claims will be granted. Plaintiffs' motion for injunctive relief will be denied. [FN1]

I. The ERISA Claims

Under ERISA, individual plaintiff, a participant in the Plan, has standing to sue to enforce the Plan fiduciaries' obligations. *Varity Corp. v. Howe,* 516 U.S. 489, ----, 116 S.Ct. 1065, 1076, 134 L.Ed.2d 130 (1996) (29 U.S.C. § 1132(a)(3) is "broad enough to cover individual relief for breach of a fiduciary obligation."). Defendants' argument to the contrary is rejected.

A. *Claims Involving Triable Issues.* [FN2]

The following ERISA claims have been shown to involve genuine issues of material fact and, as such, cannot be decided on summary judgment: A loan by the Plan to defendant Mr. Mendel of $220,000; the propriety of the Plan's 1994 investments; the status as fiduciaries of defendants Theodore A. Schwartz and Daniel E. Murray; the alleged inadequacy of Plan information supplied to Mr. Schoener; and the Plan's dealings with premises 113 Dalton Terrace.

In addition, issues involving the originations of two loans made by the Plan, one for $20,000 to Campbell, the other for $250,000 to the Auspitzes, are barred by the statute of limitations. [FN3] However, these loans are alleged not to have been fully repaid. The ongoing non-collection of them, assertedly amounting to fiduciary breaches, contains triable issues that must be submitted to the fact finder. See *Katsaros v. Cody,* 744 F.2d 270, 280 (2nd Cir. 1984) (trustee's failure to recover loan may constitute a violation).

B. *Summary Judgment for Defendants*

From 1990, the amount of the bond covering the Plan appears to have been sufficient. Under 29 U.S.C. § 1112, the fiduciary's bond "... shall not be less than 10 per centum of the amount of the funds

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1996 WL 284996 (E.D.Pa.)
(Cite as: 1996 WL 284996 (E.D.Pa.))

Page 2

handled." That amount is "determined by the funds handled ... during the preceding reporting year...." *Id.* So calculated, the bonding levels from 1990 to 1994 were not inadequate. [FN4]

*2 As to the $8,611.98 that was distributed to three of the Plan participants' children, the claim that these payments constituted ERISA violations was asserted for the first time in plaintiffs' cross-motion for summary judgment. It is not set out either in the complaint or in plaintiffs' ERISA case statement. As such, it is deemed to have been waived for the purpose of these motions. *McNeil v. Aguilos*, 831 F.Supp. 1079, 1087 (S.D.N.Y. 1993).

C. *Summary Judgment for Plaintiffs*

The loan of $75,000 made in 1994 to a Plan participant, R. Szostak, violated the Plan's $50,000 limitation. While this loan was reduced by partial payment to $38,000, the Plan's lack of any pecuniary loss is not dispositive. "[U]nder 29 U.S.C. § 1106(a)(1)(D) ... an ERISA plaintiff may prosecute for a fiduciary's transfer of plan assets to a party-in-interest regardless of cost or loss to the plan." *Ziegler v. Connecticut Gen. Life Ins. Co.*, 916 F.2d 548, 551 (9th Cir. 1990). However, absent a showing of loss, relief may be granted only if the fiduciary's conduct was "dishonest" - and not simply "imprudent." See *Brock v. Robbins*, 830 F.2d 640, 647 (7th Cir. 1987). A triable issue therefore remains as to the degree of fiduciary culpability. As to the nature of affordable relief, there may also be a standing problem given that this claim is not brought on behalf of the Plan.

II. The Supplemental State Claims - Defendants' Motion to Dismiss. Fed.R.Civ.P. 12(b)(1). [FN5]

Count II claims damages for alleged waste of defendant law firm's corporate assets; Count III is in the nature of an accounting claim involving 30-some plaintiff personal injury actions that Mr. Schoener has continued to handle since he left the firm in February, 1995. [FN6]

Where there is original jurisdiction over claims set forth in a complaint: "The district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Our Circuit this year delineated the following:

First, '[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court' [citations omitted] .... The other two requirements before federal courts may exercise supplemental jurisdiction to hear state law claims are: [1] The state and federal claims must derive from a common nucleus of operative facts. [2] But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

*Lyon v. Whisman*, 45 F.3d 758, 760 (3rd Cir. 1996).

Here, the issue is whether the ERISA claims and the corporate waste and accounting claims grow out of a "common nucleus of operative fact." Under supplemental jurisdiction principles, "mere tangential overlap of facts is insufficient, but total congruity between the operative facts of the two cases is unnecessary." *Nanavanti v. Burdette Tomlin Memorial Hosp.*, 857 F.2d 96, 105 (3rd Cir. 1988). Only one ERISA claim - the $220,000 loan to Mr. Mendel - can be said to relate directly to the corporate waste count. The other ERISA claims involve the handling of Plan assets and investments, while the corporate waste claims concern the alleged misuse of the law firm's assets. The evidentiary interrelationship of these matters is insubstantial. From the standpoint of operative fact, these claims cannot be considered to be so intertwined as to be part of the same case or controversy. See *McCarthy v. Pelino & Lentz*, 1995 WL 347001, *4 (E.D.Pa. 1995); *Vanguard Savings and Loan Ass'n. v. Banks*, 1994 WL 456361, *2 (E.D.Pa. 1994).

*3 Even less of a factual nexus inheres between the ERISA and accounting claims. [FN7] The argument that the accounting is "directly related to the Mendel firm's annual profits and the funding of the Plan" is not persuasive. Pl. Resp. Def. Mot. Dis., 9.

III. Plaintiffs' Motion for Injunctive Relief

When this action was filed, plaintiffs moved for a temporary restraining order or a preliminary injunction to prohibit defendants from initiating an action in state court. In general terms, the reasons given were that a state court should not be permitted to exercise jurisdiction over the same matters as those to be adjudicated in the present action. Otherwise, it was argued, a state court could enter orders affecting this proceeding. No hearing was held; and instead, upon conference, the parties entered into a stipulation, filed of record - in which defendants

Not Reported in F.Supp.
1996 WL 284996 (E.D.Pa.)
(Cite as: 1996 WL 284996 (E.D.Pa.))

Page 3

agreed not to begin a state court action before giving plaintiffs 10 days written notice following the disposition of the ERISA summary judgment motions. Stipulation, October 30, 1996. Thereafter, extensive but unsuccessful settlement discussions occurred.

An injunction may not be issued. There is no basis for a finding of irreparable harm. The ERISA bond protects Mr. Schoener's interest in the Plan. The supplemental state claims are now relinquished. Moreover, under any circumstances, to enjoin the filing of an action in a state court would amount to highly extraordinary relief. "Any doubts ... should be resolved in favor of permitting the state courts to proceed in an orderly fashion...." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977) (quoting *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970)).

ORDER

AND NOW, this 24th day of May, 1996 the parties' motions are ruled on as follows:

1. Defendants' motion for summary judgment as to Count I, ERISA claims: Granted as to occurrences pre-dating the six-year limitations period and as to the amount of the Plan's bond from 1990 to 1994. Otherwise, denied. *See* Memorandum at 3-4.

2. Plaintiffs' cross-motion for summary judgment as to ERISA claims: Granted as to the Szostak loan, subject to a determination at trial as to fiduciary's *scienter*. Otherwise, denied. The claim as to distributions to children is not considered.

3. Defendants' motion to dismiss Counts II and III, the supplemental state claims: Granted.

4. Plaintiffs' motion for injunctive relief: Denied.

> FN1. This motion originally sought a temporary restraining order. Upon the parties' stipulation, the request became moot. *See infra* at 7.
>
> FN2. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The movant has the burden of showing that there is no triable issue. The opposing party must point to specific, affirmative evidence in the record - and not simply rely on allegations or denials in the pleadings - in order to defeat a properly supported motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir. 1994).
>
> FN3. 29 U.S.C. § 1113:
> "(a) No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation ..., after the earlier of --
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation,... except that in case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation."
>
> FN4. Pre-1990 bond amount contentions are barred by the limitations statute.
>
> FN5. A Rule 12 motion looks exclusively to the material facts alleged in the complaint. If it cannot be said with certainty that there is no set of facts under which plaintiff could recover, the motion must be denied. *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, ----, 113 S.Ct. 2891, 2917, 125 L.Ed. 612 (1993).
>
> FN6. It is undisputed that Mr. Schoener owned a 12 percent interest in the Mendel law firm as of the time of his departure. Defendants contest his right to retain cases that they contend were and continue to be the Mendel firm's property.
>
> FN7. At oral argument, plaintiffs conceded "there is not an immediate nexus." Tr., May 8, 1996, at 37.

1996 WL 284996 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:95CV06002 (Docket) (Sep. 22, 1995)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1996 WL 284996 (E.D.Pa.)  
**(Cite as: 1996 WL 284996 (E.D.Pa.))**

Page 4

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.