# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE IT GROUP, INC., et al.<br>Debtors, | Case No. 02-10118 (MFW)<br>Jointly Administered |
| IT Litigation Trust,<br>Plaintiff, | Civil Action No.: 04-1268 KAJ |
| v. | |
| DANIEL A. D'ANIELLO, FRANCIS J.<br>HARVEY, JAMES C. McGILL, RICHARD<br>W. POGUE, PHILIP B. DOLAN, E. MARTIN<br>GIBSON, ROBERT F. PUGLIESE, CHARLES<br>W. SCHMIDT, JAMES DAVID WATKINS,<br>ANTHONY J. DeLUCA, HARRY J. SOOSE,<br>THE CARLYLE GROUP, THE CARLYLE<br>GROUP, L.L.C., CARLYLE PARTNERS II,<br>L.P., CARLYLE SBC PARTNERS, II, L.P.,<br>CARLYLE INTERNATIONAL PARTNERS<br>II, L.P., CARLYLE INTERNATIONAL<br>PARTNERS III, L.P., C/S INTERNATIONAL<br>PARTNERS, CARLYLE INVESTMENT<br>GROUP, L.P., CARLYLE-IT<br>INTERNATIONAL PARTNERS, L.P.,<br>CARLYLE-IT INTERNATIONAL<br>PARTNERS II, L.P., CARLYLE-IT<br>PARTNERS L.P., and T.C. GROUP, L.L.C.,<br>Defendants. | JURY TRIAL DEMANDED |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS'
## JOINT MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

June 3, 2005

Mark D. Collins (ID No. 2981)
Marcos A. Ramos (ID No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: ramos@rlf.com

Thomas L. Patten
David A. Becker
LATHAM AND WATKINS, LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Telecopier: (202) 637-2201
E-mail: tom.patten.lw.com

Laurie B. Smilan
LATHAM & WATKINS, LLP
11955 Freedom Drive, Suite 500
Reston, VA 20190
Telephone: (703) 456-1000
Telecopier: (703) 456-1001
Email: laurie.smilan@lw.com

*Attorneys for Defendants Daniel A.
D'Aniello, Francis J. Harvey, James C.
McGill, Richard W. Pogue, Phillip B. Dolan,
E. Martin Gibson, Robert F. Pugliese,
Charles W. Schmidt, James David Watkins,
The Carlyle Group, The Carlyle Group
L.L.C., Carlyle Partners II, L.P., Carlyle
SBC Partners II, L.P., Carlyle International
Partners II, L.P., Carlyle International
Partners III, C/S International Partners,
Carlyle Investment Group, L.P., Carlyle-IT
International Partners, L.P., Carlyle-IT
International Partners II, L.P., Carlyle-IT
Partners L.P. and T.C. Group, L.L.C.*

Roger D. Anderson (ID No. 3480)
SMITH, KATZENSTEIN & FURLOW LLP
800 Delaware Avenue, 7th Floor,
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Email: randerson@skfdelaware.com

Charles A. De Monaco
Kimberly L. Haddox
DICKIE MCCAMEY & CHILCOTE, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222
Telephone: (412) 392-5523
Telecopier: (412) 392-5367
Email: demonac@dmclaw.com

*Attorneys for Defendant,
Harry J. Soose, Jr.*

Ronald S. Gellert (ID No. 4259)
ECKERT, SEAMANS, CHERIN & MELLOTT,
LLC
The Towne Center
4 East 8th Street, Suite 200
Wilmington, DE 19801
Telephone: (302) 425-0430
Email: rgellert@eckertseamans.com

Mark A. Willard
Paul D. Steinman
F. Timothy Grieco
ECKERT SEAMANS CHERIN & MELLOT,
LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219-2788
Telephone: (412) 566-6000
Telecopier: (412) 566-6099
Email: mark.willard@escm.com

*Attorneys for Defendant, Anthony J.
DeLuca*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

ARGUMENT ....................................................................................................................... 2

I.      PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF
        FIDUCIARY DUTY OR CORPORATE WASTE ....................................................... 2

        A.      The Opposition Brief Fails To Refute Defendants' Showing
                That Plaintiff's Duty Of Loyalty Claims Are Not Sufficiently
                Pled ....................................................................................................... 2

        B.      Plaintiff Cannot Refute That IT Group's Exculpation
                Provision In Its Charter Eliminates The Directors' Liability
                For Non-Intentional Breaches Of The Duty Of Care ........................... 7

        C.      The Opposition Brief Underscores The Fact That There Are
                No Well-Pleaded Allegations Sufficient To Overcome The
                Business Judgment Rule ....................................................................... 9

        D.      Plaintiff Fails To Allege A Breach Of The Duty Of Care
                Resulting From A Failure Of Oversight ............................................. 11

        E.      Plaintiff Is Unable To Identify Any Facts Sufficient Supporting
                His Claim For Corporate Waste ......................................................... 13

        F.      Plaintiff Cannot Establish That The Carlyle Defendants Owed
                A Fiduciary Duty To IT Group's Shareholders Or Creditors ........... 14

        G.      Plaintiff Fails To Support Its Allegation That The Carlyle
                Defendants Aided Or Abetted A Breach Of Fiduciary Duty .............. 16

II.     THE SIXTH THROUGH EIGHTH CLAIMS FOR RELIEF, FOR
        VIOLATIONS OF THE BANKRUPTCY CODE, MUST BE
        DISMISSED FOR FAILURE TO STATE A CLAIM ................................................ 17

        A.      Plaintiff's Sixth Claim For Relief Fails To State A Claim .................. 17

        B.      Plaintiff's Seventh Claim For Relief Fails To State A Claim .............. 18

        C.      Plaintiff Concedes That It's Seventh Claim For Relief
                Pursuant To 11 U.S.C. § 548 Should Be Dismissed As Untimely
                As To Any Alleged Transfer Made Earlier Than January 16,
                2001 ..................................................................................................... 18

        D.      Plaintiff's Seventh And Eighth Claims For Relief For Actual
                Fraud Pursuant To Sections 544 and 548 Of The Bankruptcy
                Code And 6 Del. Code § 1304(a)(1) Should Be Dismissed As
                Untimely .............................................................................................. 19

III.    PLAINTIFF DOES NOT RESPOND TO DEFENDANTS'
        DEMONSTRATION THAT THE CLAIM FOR ILLEGAL PAYMENT
        OF DIVIDENDS FAILS TO STATE A CLAIM ....................................................... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Abbott Laboratories Derivative S'holders Litigation,*
325 F.3d 795 (7th Cir. 2003) ...............................................................................11, 12

*Aronson v. Lewis,* 473 A.2d 805 (Del. 1984)..............................................................7, 15

*Blackmore Partners, L.P. v. Link Energy LLC,*
864 A.2d 80 (Del. Ch. 2004).............................................................................................3

*In re Budget Rent A Car Corp. S'holders Litigation,*
1991 Del. Ch. LEXIS 29 (Del Ch., March 15, 1991) ......................................................4

*In re Caremark International,*
698 A.2d 959 (Del. Ch. 1996)........................................................................................11

*Commonwealth of Pa. v. PepsiCo, Inc.,*
836 F.2d 173 (3d Cir. 1988).............................................................................................20

*Continuing Creditors' Committee of Star Telecomm., Inc. v. Edgecomb, et*
*al.,* 2004 U.S. Dist. LEXIS 25807 (D. Del. Dec. 21, 2004)................................... passim

*Education & Research Foundation v. Philadelphia Health Care Trust*
253 B.R. 157 (Bankr. W.D. Pa. 2000) .............................................................................9

*In re Freeport-McMoran Sulphur, Inc. Shareholders Litig*
2001 WL 50203 (Del. Ch. Jan. 11, 2001).........................................................................4

*In re General Motors (Hughes) S'holders Litigation,*
2005 Del. Ch. LEXIS 65 (Del. Ch., May 4, 2005) ..........................................................4

*Grobow v. Perot,*
539 A.2d 180 (Del. 1988) .................................................................................................3

*Hackett v. Community Behavioral Health,*
2005 WL 1084621 (E.D. Pa. May 6, 2005) ....................................................................19

*Ivanhoe Partners v. Newmont Mining Corp.,*
535 A.2d 1334 (Del. 1987) .............................................................................................14

*Litigation Trust of MDIP v. Rapoport*
2004 WL 3101575 (D. Del. 2004) ..................................................................................13

ii

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ........................................................................8

*In re National Cred. S'holders Litigation*,
    2003 Del. Ch. LEXIS 5 (Del. Ch., Jan. 10, 2003) ......................................14

*NHI, Inc. v. FleetBoston Finance Corp.*,
    320 B.R. 563 (Bankr. D. Del. 2005) ...........................................................17

*Neilson v. Cor Karaffa (In re Webvan Group, Inc.)*,
    2004 Bankr. LEXIS 270 (Bankr. D. Del. March 9, 2004)............................9

*Official Comm. of Unsecured Cred. of the IT Group v. Brandywine*
    *Apartments*
    313 B.R. 370 (Bankr. D. Del. 2004) ......................................................9, 17

*Peltz v. CTC Direct, Inc. (In re: MBC Greenhouse Co.)*,
    2004 WL 489091 (Bankr. D. Del. Mar. 12, 2004)......................................19

*Pogostin v. Rice*,
    480 A.2d 619 (Del. 1984) ............................................................................7

*Production Resources Group, LLC v. NCT Group, Inc.*,
    863 A.2d 772 (Del. Ch. 2004)...............................................................6, 7, 8

*In re Sea-Land Corp. S'holders Litigation*,
    1987 WL 11283 (Del. Ch. May 22, 1987) ..................................................14

*Seville Industrial Machine Corp. v. Southmost Machine Corp.*,
    742 F.2d 786 (3d Cir. 1984).........................................................................9

*Stanziale v. Nachtomi*,
    2004 U.S. Dist. LEXIS 7375 (D. Del. April 20, 2004)......................9, 10, 12

*Stanziale v. Nachtomi*,
    2004 U.S. Dist. LEXIS 15664 (D. Del. Aug. 6, 2004) ................................11

*In re 3COM Corp. S'holders Litigation*,
    1999 Del. Ch. LEXIS 215 (Del. Ch. Oct. 25, 1999) ...........................5, 7, 11

*Telxon Corp. v. Bogomolny*,
    792 A.2d 964 (Del. Ch. 2001).....................................................................14

*In re Tri-Star Pictures, Inc. Litigation*,
    634 A.2d 319 (Del. 1993) ............................................................................9

*In re Walt Disney Co. Derivative Litigation,*
    731 A.2d 342 (Del. Ch. 1998).........................................................................4

*In re Webvan Group, Inc.,*
    2004 WL 483580 (Bankr. D. Del. 2004) ......................................................18

*In re Western National Corp. S'holders Litigation,*
    2000 WL 710192 (Del. Ch. 2000) ...............................................................16

*White v. Panic,*
    793 A.2d 356 (Del. Ch. 2000)........................................................................3

## DOCKETED CASES

*Official Cmt. Of Unsecured Creditors of Teleglobe Communications*
    *Corp., et al. v. Pacific Bell Telegraph Co.,* Adv. No. 04-55062 (PBL).......................18

## FEDERAL STATUTES

8 Del. C. § 144(a)(1)-(2) ......................................................................................5

8 Del. Code § 174 ...............................................................................................20

## INTRODUCTION AND SUMMARY OF ARGUMENT

As Defendants showed in their Opening Brief (D.I. 37, "Open. Br."), this case, premised on allegations that IT Group's Directors and Officers, supposedly under the Carlyle Defendants' direction, incurred too much debt and overpaid for an acquisition strategy they pursued for too long, is a classic example of the kind of hindsight second-guessing that the business judgment rule does not permit. With respect to Plaintiff's fiduciary duty and waste claims, Defendants showed that Plaintiff's claims for breach of the duty of care or oversight are (1) barred by the exculpation clause in IT Group's charter; (2) precluded by the business judgment rule; and (3) unsupported by any facts to support any oversight claim under the exceptionally high standard set by *Caremark*. There also is no viable claim for breach of any duty of loyalty by the Director and Officer Defendants, who did not receive <u>any</u> personal financial benefit from any transaction or business decision at issue. The allegations that these individuals were "dominated" or "controlled" by the Carlyle Defendants is unsupported by any factual allegation and betrayed by the facts of the Director Defendants' actions against Carlyle's interests.

The sole allegation Plaintiff's Opposition (D.I. 54, "Opp.") raises to show that <u>any</u> Defendant was interested or lacked independence—that the Carlyle Defendants received dividends and consulting fees from IT Group—is nullified by (1) case law showing that such payments alone are insufficient to raise any inference of interest; (2) the fact that IT Group's shareholders approved the preferred stock dividend structure and the consulting fee arrangement; and (3) the Board's suspension and subsequent <u>rescission</u> of the dividends as IT Group's financial situation worsened. This last set of facts also betrays any allegation that any Director or Officer Defendant lacked independence because he was "controlled" by or "beholden to" the Carlyle Defendants.[1] Further, the Opening Brief established that the Carlyle Defendants, as minority stockholders, were not controlling shareholders who owed any fiduciary duties, or aided or

---

[1] Plaintiff's assertion that he intends to seek yet another amendment to add information that he "recently obtained" from the deposition testimony of Defendant Harvey in a related case, Opp. at 3 n.2, is spurious. That testimony occurred in 2002, and counsel for Plaintiff was at the deposition, and in fact questioned Dr. Harvey.

abetted any breach of fiduciary duty by anyone else. For all these reasons, this Court's recent decisions in *Star* and *Stanziale I* and *II* require that each of these claims be dismissed.

Plaintiff likewise fails to refute Defendants' showing that his claims under the Bankruptcy Code for avoidance of preferential and constructively fraudulent transfers were insufficiently pled, and that his fraudulent conveyance claims were untimely. Plaintiff's Opposition wrongly asserts that Defendants' authority was overruled, and instead cites inapposite cases to justify the conclusory pleading in the Amended Complaint (D.I. 30, "AC"). Finally, Plaintiff' Opposition fails to respond at all to Defendants' showing that his Count Nine for illegal payment of dividends was inadequately pled, thus conceding the point.

For each of these reasons, as shown herein and in the Opening Brief, Plaintiff's Amended Complaint should be dismissed.

## ARGUMENT

## I. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY OR CORPORATE WASTE

### A. The Opposition Brief Fails To Refute Defendants' Showing That Plaintiff's Duty Of Loyalty Claims Are Not Sufficiently Pled

In the Opening Brief, Defendants showed that Plaintiff's laundry list of allegations consist, primarily, of unwise business decisions which are factually insufficient to support any claim for breach of any fiduciary duty, but which do not implicate the duty of loyalty at all. Open Br. at 6-9. As this Court held in *Continuing Creditors' Comm. of Star Telecomm., Inc. v. Edgecomb, et al.*, 2004 U.S. Dist. LEXIS 25807, at *26 (D. Del. Dec. 21, 2004) ("*Star*"), poor business decisions—here, allegedly incurring debt to pay for ill-fated acquisitions while the Company was in or near the zone of insolvency (Opp. at 13)—do not "support[], even inferentially, a claim for breach of the fiduciary duty of loyalty." 2004 U.S. Dist. LEXIS 25807 at *43-44 (directors' approval of financing transaction at the "insistence" of, and approval of a payment to, an executive of an outside investor did not support any claim for breach of duty of

2

loyalty).[2] Instead, "[t]o allege a breach of the duty of loyalty, the Plaintiff must plead facts demonstrating that a majority of a board that approved the transaction in dispute was interested and/or lacked independence," *i.e.*, "that the director was on both sides of a transaction or received a benefit not received by the shareholders." (internal citation omitted). *Id.* at *26

As Defendants showed, there are only two categories of allegations here that could even potentially implicate any duty of loyalty: (1) that Defendants "artificially extended the life of the company" so the Carlyle Defendants could recoup their investment; and (2) that the Director Defendants authorized unspecified payments to unspecified insiders—now identified in the Opposition as dividends and consulting fees paid to the Carlyle Defendants.[3] Opp. at 13-14. Plaintiff now claims that (1) the Carlyle Defendants were interested because they obtained those dividends and fees, as well as an "artificial extension" of the Company's life, so it could recoup its investment (which they lost); and (2) the Director Defendants were interested or lacked independence because they were beholden to the Carlyle Defendants (whose dividends they suspended and rescinded). Opp. at 13-15.

However, as shown in the Opening Brief, while these generic allegations at least touch upon some purported issue of interest or lack of independence, they fall far short of pleading any

---

[2] *Blackmore Partners, L.P. v. Link Energy LLC*, 864 A.2d 80, 85-86 (Del. Ch. 2004), (cited in Opp. at 15), does not support Plaintiff's position. In *Blackmore*, the court explicitly noted that "[w]hile the absence of well-pleaded allegations of self-interest or lack of independence often is . . . a fatal defect in a claim for the breach of the duty of loyalty," the complaint adequately alleged disloyalty because the defendant directors approved a sale of all of the company's assets, with proceeds going exclusively to the company's creditor, thus wiping out the value of the company's common equity. *Id.* at 86. The *Blackmore* court held, unlike the facts here, the defendants there had taken an "action directed against a class of securities" without justification. *Id. Blackmore* does not lend any support to the notion that poor business decisions can give rise to a duty of loyalty claim under circumstances such as those here.

[3] Plaintiff concedes, as he must, that the "premise that a director who owns a lot of stock" (or who is appointed by a shareholder who owns a lot of stock) "cannot cast a disinterested vote" is "unsupportable." *Star*, 2004 U.S. Dist. LEXIS 25807, at *28; *see* Open. Br. at 8. Further, this Court also rejected the "proposition that stock ownership, coinciding with a Board decision that may affect the price of those shares can suffice to show a breach of the duty of loyalty." *Id.* at *28. *See also White v. Panic*, 793 A.2d 356, 366 (Del. Ch. 2000) (rejecting any allegation of interest or lack of independence based on directors' receipt of stock option grants, annual retainer, and per-meeting fees); and *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988) (allegations that "directors are paid for their services . . . without more, do not establish any financial interest").

3

breach of the duty of loyalty. Open. Br. at 7-9. *Star*, 2004 U.S. Dist. LEXIS 25807, at *28. First, as this Court recently noted in *Star*, "It is obvious . . . that showing a director lacks independence because of a subservient relationship to an interested person depends in the first instance on showing that the supposedly dominating person actually is interested in the transaction in question." *Star*, 2004 U.S. Dist. LEXIS 25807, at *32. Plaintiffs have failed to show that the Carlyle Defendants were interested (or that they dominated any Director Defendant—*see* § I.F, infra). The mere fact that the Carlyle Defendants received dividends and consulting fees—the only allegations supporting "interest" here—has consistently been held insufficient by Delaware courts to give rise to any inference of a breach of the duty of loyalty absent a showing that the payment was material to the recipient. *See, e.g., In re General Motors (Hughes) S'holders Litig.*, 2005 Del. Ch. LEXIS 65, at *38 (Del. Ch., May 4, 2005) (refusing to find that GM-affiliated directors' decision to issue a $275 million "special dividend" to GM, the company's sole shareholder, rendered the GM directors "interested," as this amount was not shown to be "material," and therefore "does not suggest it was probable that an overriding personal interest was influencing the . . . directors"); *In re Budget Rent A Car Corp. S'holders Litig.*, 1991 Del Ch. LEXIS 29, at *12 (Del Ch., March 15, 1991) (payment of $550,000 in consulting fees to controlling shareholder did not demonstrate interest; controlling shareholder's equity investment showed "there can be no question but that [its] interest was in obtaining the highest possible price for its stock, not in obtaining a short term consulting agreement.").[4]

Further, any allegation of interest or unfairness is defeated by the fact that the terms of the Carlyle Defendants' investments, including the provisions for dividends and consulting fees, were approved by IT Group's Board and its shareholders **before** the Carlyle Defendants made their investment. *See* IT Group Proxy Statement dated October 30, 1996 ("10/30/96 Proxy

---

[4] *See also, e.g., In re Walt Disney Co. Derivative Litig.*, 731 A.2d 342, 360 (Del. Ch. 1998) (director not shown to be interested where consulting fees not shown to be material); *In re Freeport-McMoran Sulphur, Inc. Shareholders Litig.*, No. C.A. 16729, 2001 WL 50203 (Del. Ch. Jan. 11, 2001) (same).

4

Statement"), Ex. A to Declaration of David A. Becker ("Decl."), at 2-3.[5] Section 144 of the

Delaware General Corporation Law provides a safe harbor for transactions between a corporation

and any other entity in which directors of the corporation have a financial interest (such as the

Carlyle Defendants here), where the facts of the relationship and the contract or transaction at

issue are disclosed to and authorized by a majority of the disinterested directors, or specifically

approved by vote of the shareholders. 8 Del. C. § 144(a)(1)-(2); *see, e.g., In re 3COM Corp.*

*S'holders Litig.*, 1999 Del. Ch. LEXIS 215, at *10-11 (Del. Ch. Oct. 25, 1999) (shareholders

approval of stock option plan precluded option grants under plan from being considered

interested).[6] Here, both the dividend payments under the preferred stock arrangement and the

Carlyle Defendants' consulting fee were specifically proposed to and ratified by the shareholders

at the November 1996 shareholder meeting. *See* 10/30/96 IT Group Proxy Statement, Ex. A to

Decl., at 3-4. Additionally, each individual payment had to be approved by the IT Group Board,

which—rather than simply rubber-stamping payments to the Carlyle Defendants—suspended the

Carlyle Defendants' preferred stock dividends in November 2001, and rescinded two prior

dividend payments that had previously been declared as IT Group's financial condition began to

deteriorate. *See* IT Group 8-K dated November 30, 2001 and attached Press Release, Ex. B to

Decl.[7]

---

[5] The proposal to shareholders provided that the Carlyle Defendants would receive no dividend in the first year, a 3% dividend the second year and 6% thereafter. *Id.* at 4.

[6] Section 144 provides that "[n]o contract or transaction between a corporation and…any other [entity] in which 1 or more of its directors…have a financial interest, shall be void of voidable solely for this reason, if" the directors' financial interest is disclosed or known and the contract or transaction is (a) "authorized…by the affirmative votes of a majority of the disinterested directors," and/or (b) "approved in good faith by vote of the shareholders…" 8 Del. C. § 144(a)(1)-(2).

[7] Moreover, Plaintiff's suggestion that the Carlyle Defendants did not provide services to justify their consulting fees is without factual or actual support. The proposal approved by the shareholders acknowledges that the Carlyle Defendants brought significant experience and expertise to the table. *See* 10/30/96 Proxy Statement, Ex. A to Decl., at 10 (citing Carlyle Defendants' expertise in capital markets, government contracting and regulations, and acquisitions and strategic alliances as reasons justifying approval of Carlyle Defendants investment, including terms of the fees and preferred stock and the consulting (i.e., "financial advisory") fees).

5

*Production Res. Group, LLC v. NCT Group, Inc.*, 863 A.2d 772 (Del. Ch. 2004), which

Plaintiff cites in support of its duty of loyalty claims, is not to the contrary. Indeed, in *Production*

*Resources,* Vice Chancellor Strine <u>dismissed</u> allegations of "generalized mismanagement" and

"gross neglect," and upheld certain duty of loyalty claims only because that case presented an

"unusual set of particularized facts," amounting to "bad faith" not remotely similar to the

allegations here. 863 A.2d at 800. In *Production Resources,* the board had (1) not convened a

stockholder meeting for several years; (2) caused the company to issue billions of unauthorized

shares; (3) permitted its "de facto controlling stockholder"[8] to obtain liens on the company's

assets; (4) entered consulting contracts with numerous companies affiliated with this shareholder

while refusing to pay the company's debts; and (5) placed funds in a subsidiary to avoid

collection by creditors. *Id.* at 799-800. Here, by contrast, Plaintiff does not dispute that the

Director Defendants held regular meetings and retained restructuring experts and divestiture

consultants. *See* AC ¶¶ 53-54 (complaining, in hindsight, only that efforts were too late). Nor

does Plaintiff allege any *ultra vires* acts, such as unauthorized stock issuance, payments to the

Carlyle Defendants in lieu of debt payments, or shielding of funds from creditors, as occurred in

*Production Resources*. To the contrary, as noted, the Director Defendants stopped payments

which the Carlyle Defendants were legally entitled to receive. This case could not be more

different than the egregious circumstances presented in *Production Resources* on which Plaintiff

purports to rely.

Moreover, even if Plaintiff could show the Carlyle Defendants were "interested"—which,

as shown, he has not—he would still have to plead facts showing that the Director Defendants

"lack[ed] independence because of a subservient relationship to [the Carlyle Defendants]." *Star*,

2004 U.S. Dist. LEXIS 15807, at *32. Here, as shown in the Opening Brief, "[Plaintiff's]

shorthand shibboleth of dominated and controlled directors" is all that is offered, and it is

---

[8] The shareholder at issue in *Production Resources* was deemed "de facto controlling" because she had the ability to convert her interest in the company to a majority equity interest. *Id.* at 774-75. This was not true for the Carlyle Defendants.

"insufficient" to establish that the Director Defendants were controlled and lacked independence.
*Aronson v. Lewis*, 473 A.2d 805, 816 (Del. 1984); *see* Open. Br. at 9, 17-19. Nor does the fact
that the Carlyle Defendants had the right to appoint a majority of IT Group's Board (a right not
exercised after May 1999, *see* Open. Br. at 9 n.3) suffice to establish that any Director Defendant
was "beholden to" the Carlyle Defendants. Indeed, here, unlike the board's "faithless behavior"
in *Production Resources*, where board meetings were cancelled to save money but large
payments were made to insiders while creditors were rebuffed, 863 A.2d at 777, the IT Group
Directors suspended and even later rescinded dividends previously paid to the Carlyle Defendants
as IT Group's financial condition worsened.

    In sum, Plaintiff's Opposition does not—because it cannot—compensate for the
Complaint's wholesale failure to allege facts sufficient to state a claim for a breach of the duty of
loyalty. For this reason, Plaintiff's duty of loyalty claim must be dismissed.[9]

### B.    Plaintiff Cannot Refute That IT Group's Exculpation Provision In Its Charter Eliminates The Directors' Liability For Non-Intentional Breaches Of The Duty Of Care

    In their Opening Brief, Defendants showed that the §102(b)(7) exculpation clause in IT
Group's Certificate of Incorporation bars claims against the Director Defendants for non-
intentional breaches of the duty of care and claims of corporate waste. Open. Br. at 9-11 (citing

---

[9] The hodgepodge of cases Plaintiff cites does nothing to support his duty of loyalty claim—if anything, those cases highlight the vast gulf between adequately pled duty of loyalty claims and the few, anemic allegations in the Complaint. For example, the complaint in *Guth v. Loft, Inc.*— unlike Plaintiff's Complaint—included numerous detailed allegations about how the individual defendant (1) made decisions that usurped the company's corporate opportunity; (2) stood to benefit from these decisions; and (3) directly competed with the company. 5 A.2d 503, 510 (Del. 1939). Plaintiff's reliance on *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) likewise underscores the Complaint's weakness because, in that duty of care case, the court concluded that "mere directorial approval of a transaction, absent particularized facts supporting a breach of fiduciary duty,… is insufficient to excuse demand." 473 A.2d at 817. Plaintiff's citation to *Pogostin v. Rice*, 480 A.2d 619, 624 (Del. 1984), is even more surprising. There, the court affirmed the grant of a motion to dismiss on the grounds that demand was not excused where (1) there was no evidence that a majority of the board that approved executive compensation was interested or disloyal and (2) plaintiff failed to make "particularized allegations of a breach of fiduciary duty, such as self-dealing, fraud, overreaching, or lack of good faith" showing that a takeover decision was not the product of considered judgment. *Id.* at 627.

*Star,* 2004 U.S. Dist. LEXIS 25807, at *36-38). This precludes liability for the bulk of Plaintiff's claims, which—much like the claims in *Star*—allege purported mismanagement of the Company's acquisition and financing strategies. *See Star*, 2004 U.S. Dist. LEXIS 25807, at *36 ("exculpation clauses . . . apply to prevent creditors as well as shareholders from bringing duty of care claims" and dismissing plaintiff's duty of care challenge to defendants' failed finance, acquisition, and merger strategy).

In its Opposition Brief, Plaintiff argues that §102(b)(7) does not protect the Director Defendants because the Complaint alleges violations of "the breach of duty of loyalty and the duty [of] good faith." Opp. at 21. But this argument completely misses the mark—the Director Defendants never claimed that the exculpation clause precluded Plaintiff's duty of loyalty claim, but rather "Plaintiff's <u>duty of care</u> and <u>corporate waste</u> claims." Open. Br. at 10-11. *Star*, 2004 U.S. Dist. LEXIS 25807, at *38 ("a proper exculpation clause bars all claims of the breach of the duty of care"). Moreover, to the extent Plaintiff contends that it can avoid the preclusive effect of the exculpatory provisions with respect to its duty of care claims merely by also pleading a purported breach of loyalty or good faith claim, this obviously is incorrect. *See Star*, 2004 U.S. Dist. LEXIS 25807, at *33-38 (dismissing duty of care and waste claims under § 102(b)(7) independently from duty of loyalty claims pled on same facts); *Production Res.*, 863 A.2d at 777 (dismissing duty of care claims despite sustaining other claims for breach of duty of loyalty). Instead, as Chief Justice Veasey noted, once §102(b)(7) is invoked with respect to duty of care claims, "[that] is the end of the case." *Malpiede v. Townson*, 780 A.2d 1075, 1094-5 (Del. 2001) (emphasis added).[10]

---

[10] *See also Production Res.*, 863 A.2d at 793 (noting that the legislature's purpose in enacting § 102(b)(7) was to provide directors "with the freedom to make risky . . . business decisions without fear of personal liability" and dismissing claims against directors for mismanagement during an acquisition).

**C.    The Opposition Brief Underscores The Fact That There Are No Well-Pleaded Allegations Sufficient To Overcome The Business Judgment Rule**

In their Opening Brief, Defendants showed that the Director Defendants' good faith conduct is also immune from attack unless Plaintiff satisfies its heavy burden of setting forth, "<u>with particularity</u>," sufficient "well-pleaded facts . . . [to] establish that the contested decision was not the product of a valid business judgment." Open. Br. at 11, *citing Stanziale v. Nachtomi,* 2004 U.S. Dist. LEXIS 7375, at \*8-9 (D. Del. Apr. 20, 2004) ("*Stanziale I*") (quoting *In re Gen Motors Class E Stock Buyout Litig.*, 694 F. Supp. 1119, 1132 (D. Del. 1988)); *see also Star,* 2004 U.S. Dist. LEXIS 25807, at \*22-23 (plaintiff must plead "facts from which [] an inference can be drawn" that directors' decisions were not "a valid exercise of business judgment") (citing *In re Tri-Star Pictures, Inc. Litig.*, 634 A.2d 319, 326 (Del. 1993) ("specific allegations of fact" must be pled to support plaintiff's conclusions)). Plaintiff's Opposition ignores this pleading standard. Instead, Plaintiff asserts that "[t]he claims in the amended complaint are subject to the liberal notice pleading standard contained in Rule 8(a)(2) . . . ." Opp. at 11-12. The cases upon which Plaintiff relies, however, are inapt—none involves breaches of fiduciary duties.[11] By contrast, the cases Plaintiff ignores—this Court's recent decisions in both *Stanziale I* and *Star*—are directly on point and directly contrary to Plaintiff's position. In both cases, this Court applied Rule 9(b) to dismiss the plaintiffs' fiduciary duty claims.[12]

---

[11] None of the cases Plaintiff cites for this rule concern claims for breach of fiduciary or corporate waste—the claims at issue here. *See Education & Research Found. v. Philadelphia Health Care Trust (In re Allegheny Health)*, 253 B.R. 157 (Bankr. W.D. Pa. 2000) (fraudulent conveyance claims); *Neilson v. Cor Karaffa (In re Webvan Group, Inc.)*, Adv. Proc. No. 03-54365, 2004 Bankr. LEXIS 270, (Bankr. D. Del. March 9, 2004) (same); *Official Comm. of Unsecured Creditors of the IT Group v. Brandywine Apartments (In re IT Group, Inc.)*, 313 B.R. 370 (Bankr. D. Del. 2004) (same); *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984) (RICO, breach of contract, and conversion claims). There is no basis, and Plaintiff identifies none, for applying the pleading standard in those cases here—especially in light of this Court's recent holdings.

[12] Plaintiff also argues that this Court's reference in *Star* to the pleading standards from cases occurring in the demand-refusal context should not control here, because the parties in *Star* "agreed" that analysis was appropriate. Plaintiff is wrong: this Court's holding was not so limited, and the suggestion that this Court applied the incorrect standard simply because the parties requested it is misguided. This Court observed in *Star* that the parties agreement on application of the principles from demand-refusal cases was appropriate ("the parties . . . agree, <u>as they ought</u>"), and emphasized that those cases are a critical source of law in assessing the

9

In any event, Defendants' Opening Brief showed that Plaintiff's conclusory allegations fail under *any* pleading standard. Allegations that IT Group's Directors and Officers pursued a roll-up strategy for too long, paid too much for acquisitions, and over-leveraged the Company may reflect poor business judgment, but even "taken in the light most favorable to the Plaintiff, do not constitute such egregiously bad decisions as to abrogate the business judgment rule." *Stanziale I,* 2004 U.S. Dist. LEXIS 7375, at *11-*12. In *Stanziale,* for example, this Court held that the director and officer defendants' decision to borrow millions of dollars to purchase new jet engines while the company was mired in debt and "suffering a severe cash flow problem" was entitled to the protection of the business judgment rule. *Id.* at 10. Although the purchases ultimately bankrupted the company, the complaint failed to plead specific facts—though the facts pled were far more specific than here—sufficient to demonstrate that the decisions could not have been taken in a "good faith pursuit of corporate purposes." *Id.* at *12-13 (citing *Gagliardi v. TriFoods Int'l, Inc.,* 683 A.2d 1049, 1051 (Del. Ch. 1996)).

Plaintiff's Complaint is similarly deficient. There are <u>no</u> factual allegations, much less <u>specific</u> factual allegations, showing that any decision was not a "good faith pursuit" of business strategies thought to be in the Company's interests. *See* Opp. at 21-22. Because Plaintiff cannot, therefore, overcome the presumption of the business judgment rule, the Complaint, just as in *Stanziale,* should be dismissed.[13]

---

adequacy of fiduciary duty claims: "The 'demand excused' cases are essential precedent in reviewing the sufficiency of the Complaint because those cases embody and articulate the business judgment rule's impact on [such] claims…" 2004 U.S. Dist. LEXIS 25807, at *20.

[13] Plaintiff attempts to side-step the presumptions of the business judgment rule by arguing that its "breach of the duty of loyalty … claims against the Directors and Officers are properly pled." Opp. at 21-22. As demonstrated at length both in the Opening Brief and Section I.A, *supra,* this argument cannot prevail, as the Complaint falls far short of establishing any breach of the duty of loyalty. Open. Br. 7-9. To allow plaintiffs to avoid the business judgment rule by alleging deficient duty of loyalty claims would vitiate this long-standing provision of Delaware law.

**D.    Plaintiff Fails To Allege A Breach Of The Duty Of Care Resulting From A Failure Of Oversight**

Plaintiff's failure of oversight claim is even more clearly fated for failure than the failed claims for alleged breaches of the duty of care. As Defendants showed in their Opening Brief, Plaintiff faces a nearly insurmountable hurdle in establishing a failure of oversight claim. Open. Br. at 14-15. To avoid outright dismissal, Plaintiff must show "a sustained and systematic failure of the board to exercise oversight," amounting to a "lack of good faith." *Stanziale v. Nachtomi*, 2004 U.S. Dist LEXIS 15664, at *9 (D. Del. Aug. 6, 2004) (*Stanziale II*) (citing *In re Caremark Int'l*, 698 A.2d 959, 971 (Del. Ch. 1996)). This theory—which has never resulted in an award of damages in Delaware—is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l*, 698 A.2d 959, 967 (Del. Ch. 1996) (emphasis added). Here, Plaintiff fails to even mention, let along address, the stringent *Caremark* standard (*see* Opp. at 16-18), and has not come close to pleading such a claim.

The courts have hewed closely to the *Caremark* court's admonition that failure of oversight is a uniquely difficult theory upon which to base a claim. Those few cases in which courts have permitted claims to proceed based on an alleged failure of oversight have involved extreme facts starkly different from Plaintiff's generic and anemic allegations. In *In re Walt Disney Co Deriv. Litig*, for example, minutes from a key board meeting showed that the directors approved the decision to hire Michael Ovitz as the company's president—including a $140 million severance package—without (1) obtaining a recommendation from the compensation committee; (2) reviewing a single document; (3) seeking the advice of any experts; or (4) asking "any questions about the details of Ovitz's salary, stock options, or . . . the consequences of a termination." 825 A.2d 275, 281 (Del. Ch. 2003). Moreover, the Disney board left "[f]inal negotiation of the employment agreement... to [CEO] Eisner, Ovitz's close friend for over twenty-five years," thus cementing its abdication of oversight. *Id.* Similarly, in *In re Abbott Labs. Derivative S'holders Litig*, 325 F.3d 795, 799-800 (7th Cir. 2003), the complaint showed that the board of directors utterly ignored six years worth of FDA warnings, several of which

11

were sent directly to the chairman of the board. Ultimately, the company's inaction led to a $100 million civil fine (the largest fine in FDA history) and approximately $250 million in lost revenue from the suspension of the product. *Id.* at 801. Six years of doing nothing, culminating in staggering sanctions, are facts that do not remotely resemble the reasonable and responsive actions of the Defendants in this case, which, at worst, were overly-optimistic, and then only in hindsight.

As shown in the Opening Brief, the allegations in this case are much closer to, but even less serious, than those in *Stanziale I*, where this court <u>rejected</u> failure of oversight allegations. In *Stanziale I,* the complaint showed that the minutes of Tower Air's board of directors failed to (1) discuss the merits and consequences of the company's plan to borrow $50 million to purchase new—and allegedly unnecessary—jet engines; (2) consider a number of issues raised by the company's Director of Safety; (3) insist that the company's president and CEO centralize operations, financial records and bank accounts so that they were subject to oversight by the other members of management and the Board; and (4) ever "conduct a feasibility, profitability, or other similar study." 2004 U.S. Dist. LEXIS 7375, at *18-19. Despite these relatively specific failures of action and oversight drawn from the board's own minutes, this Court held that that the directors were protected by the business judgment rule. As this Court explained, because the complaint "only alleged that minutes of various board meetings do not reflect a discussion" of the business issues in question, it did "not allege facts that show the <u>deliberate indifference</u>" of the directors "with sufficient particularity to overcome the protections of the business judgment rule." *Id.* at *23 (emphasis added).

Plaintiff's vague allegations here are far less specific than—and nowhere near as troubling as—those rejected by this court in *Stanziale I.* Here, Plaintiff cannot even point to any minutes, memoranda, or other evidence to support its mere say-so that the Director and Officer Defendants "failed to inform themselves of all material information" and "failed to make considered business decisions." Opp. at 16. These conclusory allegations do not even remotely approach the egregious level of abdicated responsibility in *Walt Disney* and *Abbott Labs,* the only

12

cases on record which, by virtue of their egregious facts, supported failure of oversight claims. It is clear, then, that the Complaint comes nowhere near to satisfying the *Caremark* standard of "sustained and systematic" abdication of oversight bordering on a lack of good faith and, for this reason, Plaintiff's failure of oversight claims must be dismissed.[14]

### E.    Plaintiff Is Unable To Identify Any Facts Sufficient Supporting His Claim For Corporate Waste

As Defendants explained in their Opening Brief, Open Br. at 15-16, the standard for pleading corporate waste—"rarely satisfied in Delaware court"—is met only where "an exchange [is] so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Star*, 2004 U.S. Dist. LEXIS, at *40. In his Opposition, Plaintiff argues—citing no authority in support—that it has met this stringent standard merely by alleging that, while purportedly insolvent, the Director Defendants paid "the Carlyle Defendants preferential stock dividends . . . and monthly and annual consulting fees," and "incurred debt it could not service to finance acquisitions…" Opp. at 22-23. Plaintiff is wrong.

Instead, Plaintiff's waste claim resembles those dismissed in *Star*, where the complaint "merely relists the same actions cited as support for [the fiduciary duty claims]," and offers nothing to demonstrate that the Company "did not receive adequate consideration for the transactions." Plaintiff's bald rhetoric that IT Group "received nothing for [its consulting fee] payments" to the Carlyle Defendants is backed by nothing, and thus is insufficient to state a claim for corporate waste.[15] Because Plaintiff's conclusory corporate waste claim is virtually identical

---

[14] Plaintiff's own—and only—authority, *Litigation Trust of MDIP v. Rapoport*, No. C.A. 03-779, 2004 WL 3101575 (D. Del. 2004) demonstrates precisely why Plaintiff's claim must fail. Unlike Plaintiff's conclusory Complaint, the 80-page complaint in *MDIP* contained an abundance of specific factual allegations that enabled it to survive a motion to dismiss its failure of oversight claim, including (1) that the director defendants hired the company's president "on the basis of two lines in a one page memorandum written by the CEO"; (2) that the director defendants were notified "on at least ten occasions" that the president was grossly mismanaging the company; and (3) that the directors not only ignored these complaints but "actively took steps to ensure that additional concerns . . . would not be brought to the Board's attention." *Id.* at *1-3.

[15] Plaintiff's corporate waste claim is also precluded by §102(b)(7). *See* Open. Br. at 15; *Star*, 2004 U.S. Dist. LEXIS 25807, at *41 (quoting *Green*, 1996 LEXIS 76, at *22). ("Absent a breach [of] loyalty, §102(b)(7) protects directors and officers from a claim of corporate waste.").

to those dismissed in *Star*—and in no way resembles the single, highly-specific claim this Court allowed to proceed in that case[16]—it should be dismissed.[17]

### F.    Plaintiff Cannot Establish That The Carlyle Defendants Owed A Fiduciary Duty To IT Group's Shareholders Or Creditors

In the Opening Brief, the Carlyle Defendants showed that Plaintiff cannot establish that the Carlyle Defendants were "controlling shareholders," with concomitant fiduciary duties, since such duties exist "only if" the shareholder: (1) "owns a <u>majority</u> interest in . . . the corporation"; or (2) "exercises control over the business affairs of the corporation." Open. Br. at 16-20, *citing Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987). Moreover, the shareholder must <u>actually exercise</u> control; "the potential ability to exercise control" will not suffice to establish a fiduciary relationship as a controlling stockholder. *In re Sea-Land Corp S'holders Litig.*, 1987 WL 11283, *5 (Del. Ch. May 22, 1987). Here, the undisputed facts demonstrate that the Carlyle Defendants were minority shareholders and did not appoint a majority of the Board. *See* AC ¶31.[18] Plaintiff's "controlling shareholder" argument therefore

---

[16] In stark contrast to Plaintiff's unsupported, conclusory allegation, the single corporate waste claim this Court permitted to proceed in *Star* was supported by facts showing that the Company's CEO—just prior to his resignation—requested and received a "reimbursement" for expenses allegedly incurred as part of his service as CEO. *Star*, 2004 U.S. Dist. LEXIS 25807 at *16. In reality, the Complaint showed that this disbursement covered a large payment the CEO had made to a private school, as well as the "rent and support services" for an investment company the CEO ran in Los Angeles. *Id.* This Court held that, because the company clearly received "no consideration" for these disbursements, the arrangement was (literally) so one-sided that "any reasonable business person" would find that there had been corporate waste. *Id.* at *48.

[17] Other cases where courts have permitted corporate waste claims to survive a motion to dismiss are rare and also involve facts far more egregious than those alleged here. *See, e.g., In re Nat'l Cred. S'holders Litig.*, C.A. No. 19028, 2003 Del. Ch. LEXIS 5, *49-55 (Del. Ch., Jan. 10, 2003) (noting it was "not merely the sheer magnitude of the purchase price" that made a transaction wasteful but the fact plaintiff alleged defendant received <u>nothing</u> in return and that a compensation package effectively paid a Director "essentially to sit idle"); *Telxon Corp. v. Bogomolny*, 792 A.2d 964, 976 (Del. Ch. 2001) (waste claim permitted where company's founder purchased 10 % of company's stock using non-recourse note that permitted him simply to return the stock to the company, without risk or liability, if the company failed).

[18] The Complaint correctly notes that Carlyle held "approximately 25% of the IT Group's voting power." AC ¶31. This is even less than the 26% stake the Delaware Supreme Court held, "by definition," could not give rise to a fiduciary duty. *Ivanhoe*, 535 A.2d at 1344. While Plaintiff claims that the Carlyle Defendants appointed a majority of the Board (AC ¶¶ 14, 31), the Amended Complaint failed even to identify which of the IT Group's Directors were appointed

rests entirely on its ability to show that the Carlyle Defendants <u>actually exercised control</u> over the Company. Because Plaintiff falls far short of making such a showing, the fiduciary duty claims against the Carlyle Defendants must be dismissed.

In their Complaint and Opposition, Plaintiff offers only conclusory allegations that the Carlyle Defendants "were entitled to and did elect a majority of the IT Group's directors," and that because "[t]hese directors were beholden to the Carlyle Group . . . [t]herefore, the Carlyle Defendants controlled the Company." Opp. at 23; AC ¶ 14. These allegations are wrong and insufficient to show "actual control." While the Carlyle Defendants had the right to appoint a majority of the IT Group's directors, they did not exercise this right, and thus by definition could not have exercised control. Open. Br. at 17-19, *citing Sea-Land,* 1987 WL 11283, at *4-5 (rejecting plaintiffs' contention that "controlling shareholder" status—with its accompanying fiduciary duty—could be inferred where a 39.5 % stockholder did not exercise right to nominate several directors). Even if the Amended Complaint established that the Carlyle Defendants were involved in the appointment of the five Board members identified—for the first time—in the Opposition Brief, it is undisputed that, after May 1999, the IT Group Board grew to <u>ten</u> members, a fact which refutes Plaintiff's argument that the Carlyle Defendants even appointed, <u>much less controlled</u>, a majority of the Board after that point.

Second, even if the Carlyle Defendants <u>had</u> appointed a majority of the IT Group Board—and they clearly did not—this bare fact would not suffice to demonstrate corporate control. As shown in the Opening Brief, "[i]t is not enough to charge that a director was nominated by or elected at the behest of an allegedly controlling shareholder. That is the usual way a person becomes a corporate director." *Aronson v. Lewis*, 473 A.2d at 816. Instead, Plaintiff must show the exercise of "actual control." Open. Br. at 18-19; *see also Aronson*, 473

---

and controlled by the Carlyle Defendants, noting only that *two* IT Group Directors—Messrs. D'Aniello and Dolan——were Managing Directors of Carlyle-related entities. AC ¶¶ 3, 7. Plaintiff now alleges—for the first time in its Opposition Brief—that the Carlyle Defendants appointed Messrs. Gibson, Pugliese, and Watkins, as well—still only five of ten Directors, and still not a majority of the Board. Opp. at 23.

A.2d at 816 (47 % shareholders who selected <u>all</u> of the directors not shown to be controlling shareholders for purposes of demonstrating demand futility in shareholder derivative case); *In re Western Nat'l Corp. S'holders Litig*, 2000 WL 710192, at *15 n.46 (stockholder which appointed <u>all</u> of the board members was not deemed to be a controlling shareholder).

### G. Plaintiff Fails To Support Its Allegation That The Carlyle Defendants Aided Or Abetted A Breach Of Fiduciary Duty

As shown in the Opening Brief, the Amended Complaint fails to plead the last two of the three essential elements of a proper aiding and abetting claim as to the Carlyle Defendants: "(1) the existence of a fiduciary relationship; (2) a breach of that relationship; and (3) knowing participation by the defendant in the fiduciary's breach." Open. Br. at 20 (citing *Crescent/Mach I Partners, L.P. v. Turner,* 846 A.2d 963, 989 (Del. Ch. 2000)). While the Amended Complaint does allege the existence of a fiduciary relationship between the Director Defendants and the Company (but as shown in § I.F, *supra*, does <u>not</u> sufficiently allege such a relationship between IT Group and the Carlyle Defendants themselves), Sections I.A through I.E herein demonstrate that Plaintiff fails to provide the basic facts needed to support a finding that any breach occurred.

Moreover, to survive mandatory dismissal, an aiding and abetting claim must assert "well-pleaded facts to support imputing <u>knowledge of wrongdoing</u>" by "<u>each</u>" alleged aider and abettor. *See, e.g., Turner,* 846 A.2d at 990 (granting motion to dismiss) (emphasis added). The Amended Complaint is devoid of <u>any</u> facts—well-pleaded or otherwise—showing that <u>any</u> Carlyle Defendant—let alone "each"—"knowingly participated" in the alleged wrongful action. Plaintiff's Opposition plaintively asserts that the Carlyle Defendants "undoubtedly knew" of the existence of certain transactions. Opp. at 25. This is not nearly enough to show both (1) that these transactions were wrongful and (2) that <u>each</u> Carlyle Defendant knew this. Having failed to make either showing, Plaintiff's aiding and abetting claims must be dismissed.

16

II.    **THE SIXTH THROUGH EIGHTH CLAIMS FOR RELIEF, FOR VIOLATIONS OF THE BANKRUPTCY CODE, MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM**

A.    **Plaintiff's Sixth Claim For Relief Fails To State A Claim**

Defendants' Opening Brief argued that Plaintiff's Sixth Claim for Relief failed to satisfy the pleading standard set forth by the Honorable Peter J. Walsh in TWA, *Inc. v. Marsh USA Inc.*, *Pardo v. Gonzaba* and *Valley Media, Inc. v. Borders, Inc.* Open. Br. at 28-31. Plaintiff does not dispute Defendants' argument or otherwise attempt to distinguish its pleading from the authority relied upon by Defendants. Opp. Br. at 25-26. Instead, Plaintiff argues that Defendants' case authority has been "rejected" and that other decisions support the adequacy of Plaintiff's pleading. *See id.* Neither proposition is correct.

As an initial matter, Defendants' cited authority has been neither rescinded nor overruled. Indeed, Judge Walsh recently reaffirmed the pleading standard for a preference claim as set forth in the *Marsh*, *Gonzaba* and *Valley Media* decisions. *See NHI, Inc. v. FleetBoston Fin. Corp.*, 320 B.R. 563, 573 (Bankr. D. Del. 2005) (Walsh, J.) ("With regard to preference actions, I have found that complaints must contain the following information: '(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer.'"). Plaintiff does not contest that it has failed to identify the (i) nature and amount of each antecedent debt, (ii) date of any alleged preferential transfer, (iii) name of the specific transferor or (iv) name of any specific Carlyle transferee. Opp. Br. at 25-26.

Moreover, the cases relied upon by Plaintiff to justify its pleading are inapposite. In *Official Comm. of Unsecured Creditors of the IT Group, et al. v. Brandywine Apartments*, 313 B.R. 370 (Bankr. D.Del. 2004) (Lindsey, J.), Judge Lindsey denied a motion to dismiss a preference count "because the complaint alleges a single transfer in the amount of $10,620 and provides an exhibit indicating the date, amount, and number of the payment." *Id.*, at 374. Plaintiff's Sixth Claim for Relief fails to set forth similar information. Further, there was only one defendant in the *IT Group/Brandywine* case; here, Plaintiff's Sixth Claim for Relief identifies

17

6 individuals and 12 separate entities. Similarly unavailing is Plaintiff's reliance on *In re Webvan Group, Inc.*, 2004 WL 483580 (Bankr. D. Del. 2004) (Case, J.). There, Judge Case denied a motion to dismiss where plaintiff's preference claim identified (i) only one defendant, (ii) the specific antecedent debt for which the transfer was allegedly made and (iii) each alleged preferential payment by the date of payment. *Id* at *1 (noting that the single defendant was paid the alleged preferential transfers on specific dates based upon bonus and severance obligations).

### B.   Plaintiff's Seventh Claim For Relief Fails To State A Claim

Plaintiff relies upon *IT Group/Brandywine* and *Webvan* to argue that its Seventh Claim for Relief is appropriately plead. For the reasons set forth *supra*, Plaintiff's argument is unavailing. Defendants note that Plaintiff made no effort to distinguish any of the specific case authority discussed by Defendants in their Opening Brief. *Compare* Open. Br. at 23-24 *with* Opp. Br. at 26-27. Moreover, recent case authority supports Defendants' position that Plaintiff's Seventh Claim for Relief, which merely parrots the statutory language, is deficient. *See Official Cmt. Of Unsecured Creditors of Teleglobe Communications Corp., et al. v. Pacific Bell Tel. Co.*, Adv. No. 04-55062 (PBL), slip. op., pp. 7-8 (Bankr. D. Del. Nov. 18, 2004) (Lindsey, J.) (dismissing fraudulent transfer claim pursuant to Section 548 of the Bankruptcy Code where plaintiff "essentially recited only the statutory language" and failed to demonstrate the manner in which the payments were allegedly fraudulent).

### C.   Plaintiff Concedes That It's Seventh Claim For Relief Pursuant To 11 U.S.C. § 548 Should Be Dismissed As Untimely As To Any Alleged Transfer Made Earlier Than January 16, 2001

Plaintiff does not address Defendant's argument that Plaintiff's Seventh Claim for Relief under Section 548 of the Bankruptcy Code should be dismissed as untimely to the extent that it seeks to avoid and recover any alleged fraudulent transfers made more than one year prior to the IT Group's petition date. *Compare* Open. Br. at 24-25 *with* Opp. Br. at 26-28. Plaintiff's failure to address Defendant's timeliness argument operates as an abandonment of Plaintiff's claims.

18

*See Hackett v. Cmty. Behavioral Health*, 2005 WL 1084621, at *6 (E.D. Pa. May 6, 2005) (plaintiff abandoned claim when it failed to respond to specific arguments for dismissal).

**D.    Plaintiff's Seventh And Eighth Claims For Relief For Actual Fraud Pursuant To Sections 544 and 548 Of The Bankruptcy Code And 6 Del. Code § 1304(a)(1) Should Be Dismissed As Untimely**

Plaintiff summarily argues that its "actual fraud" claims pursuant to its Seventh and Eighth Claims for Relief should be deemed timely because those claims should "relate-back" to the filing date of Plaintiff's first-filed Complaint. *See* Opp. Br. at 27-28. Plaintiff cites no legal support for its argument. *See id.* Plaintiff's argument also is misplaced.

Plaintiff's original Complaint included two avoidance-related causes of action for recovery of alleged preferential and constructively fraudulent transfers. *See Complaint*, Sixth and Seventh Claims for Relief. Neither of those claims included an allegation of actual fraud. *See id.* In contrast, Plaintiff's Seventh and Eighth Claims for Relief in its First Amended Complaint each attempt to state a claim based upon alleged *actual* fraud. Judge Walsh has held that a claim asserted in an amended complaint did not "relate back" when the claim involved different essential facts and defenses than the original claim. *See Peltz v. CTC Direct, Inc. (In re. MBC Greenhouse Co.)*, 2004 WL 489091, at *4 (Bankr. D. Del. Mar. 12, 2004) (Walsh, J.) (Plaintiff's proposed amendment "results in different essential facts giving rise to different alleged recoveries. Furthermore, these additional transactions may be subject to different § 547(c) defenses than those identified in the original complaint."). Of course, the facts and defenses relevant to Plaintiff's preference and constructively fraudulent transfer claims (neither of which involve any element of actual fraud) are substantially different from those that would be at issue on an actual fraud claim. In short, Plaintiff's Complaint failed to provide notice that Plaintiff would attempt to pursue a claim for actual fraud pursuant to either of Sections 544 or 548 of the Bankruptcy Code or any allegedly relevant state law. Accordingly, Plaintiff's Seventh and Eighth Claims for Relief for actual fraud must be dismissed.

19

Plaintiff also argues that its Eighth Claim for Relief is not time-barred because "[t]here is no evidence before the Court that Plaintiff could reasonably have discovered these fraudulent transfers sooner than when the Original Complaint was filed." Opp. at 28 (emphasis added) Plaintiff's argument fails because Plaintiff did not allege that it could not have reasonably discovered the alleged fraudulent transfers "when the Original Complaint was filed" and Plaintiff may not amend its Complaint by argument in response to a motion to dismiss. *See Commonwealth of Pa. v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint... 'It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'").

## III.    PLAINTIFF DOES NOT RESPOND TO DEFENDANTS' DEMONSTRATION THAT THE CLAIM FOR ILLEGAL PAYMENT OF DIVIDENDS FAILS TO STATE A CLAIM

In the Opening Brief, Defendants showed that Plaintiff's claim for illegal payment of dividends under 8 Del. Code 174 fails to state a claim because Plaintiff fails to plead the required predicate facts regarding IT Group's financial condition. Open. Br. At 25-28. Specifically, Defendants demonstrated that Plaintiff failed to plead any facts to show the IT Group's alleged insolvency, or when it occurred in relation to the dividend payments; nor does Plaintiff plead any facts to show that the Director Defendants knew IT Group was insolvent at the time they declared these dividends. *Id.* In their Opposition, Plaintiffs do not respond, apparently conceding the point. Thus, for the reasons set forth in the Opening Brief, Plaintiff's claims for illegal payment of dividends should be dismissed.

## CONCLUSION

For the reasons set forth herein and in the Opening Brief, Defendants respectfully request that the Court dismiss the Amended Complaint.

20

Dated:  June 3, 2005

Respectfully submitted,

/s/ Marcos A. Ramos
Mark D. Collins (ID No. 2981)
Marcos A. Ramos (ID No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  ramos@rlf.com

*Attorneys for Defendants Daniel A. D'Aniello,*
*Francis J. Harvey, James C. McGill, Richard W.*
*Pogue, Phillip B. Dolan, E. Martin Gibson, Robert*
*F. Pugliese, Charles W. Schmidt, James David*
*Watkins, The Carlyle Group, The Carlyle Group*
*L.L.C., Carlyle Partners II, L.P., Carlyle SBC*
*Partners II, L.P., Carlyle International Partners II,*
*L.P., Carlyle International Partners III, C/S*
*International Partners, Carlyle Investment Group,*
*L.P., Carlyle-IT International Partners, L.P.,*
*Carlyle-IT International Partners II, L.P., Carlyle-*
*IT Partners L.P. and T.C. Group, L.L.C.*

Thomas L. Patten
David A. Becker
LATHAM AND WATKINS, LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone:  (202) 637-2200
Telecopier:  (202) 637-2201
E-mail:  tom.patten@lw.com

Laurie B. Smilan
LATHAM & WATKINS, LLP
11955 Freedom Drive, Suite 500
Reston, VA  20190
Telephone:  (703) 456-1000
Telecopier:  (703) 456-1001
Email:  laurie.smilan@lw.com

/s/ Ronald S. Gellert
Ronald S. Gellert (ID No. 4259)
ECKERT, SEAMANS, CHERIN & MELLOTT, LLC
The Towne Center
4 East 8th Street, Suite 200
Wilmington, DE  19801
Telephone:  (302) 425-0430
Email:  rgellert@eckertseamans.com

Mark A. Willard
Paul D. Steinman
F. Timothy Grieco
ECKERT SEAMANS CHERIN & MELLOT, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA  15219-2788
Telephone:  (412) 566-6000
Telecopier:  (412) 566-6099
Email:  mark.willard@escm.com

*Attorneys for Defendant, Anthony J. DeLuca*

/s/ Roger D. Anderson
Roger D. Anderson (ID No. 3480)
SMITH, KATZENSTEIN & FURLOW LLP
800 Delaware Avenue, 7th Floor,
P.O. Box 410
Wilmington, DE 19899
Telephone:  (302) 652-8400
Email:  randerson@skfdelaware.com

Charles A. De Monaco
Kimberly L. Haddox
DICKIE MCCAMEY & CHILCOTE, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA  15222
Telephone:  (412) 392-5523
Telecopier:  (412) 392-5367
Email:  demonac@dmclaw.com

*Attorneys for Defendant, Harry J. Soose, Jr.*