# EXHIBIT D

Westlaw.

Not Reported in A.2d
2001 WL 50203 (Del.Ch.), 27 Del. J. Corp. L. 672
(Cite as: 2001 WL 50203 (Del.Ch.))

Page 1

**H**
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
In re FREEPORT-MCMORAN SULPHUR, INC. SHAREHOLDERS LITIGATION,
No. C.A. 16729.

Date Submitted Sept. 26, 2000.
Date Decided Jan. 5, 2001.
Date Revised Jan. 11, 2001.

Pamela S. Tikellis, Robert J. Kriner, Jr., and Timothy R. Dudderar, Chimicles & Tikellis, Wilmington, Delaware and Norman M. Monhait, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, Delaware, and Goodkind Labaton, Rudoff & Sucharow LLP, New York, New York, for Plaintiffs.

Henry N. Herndon, Jr., and Lewis H. Lazarus, Morris, James, Hitchens & Williams, Wilmington, Delaware, and Robert B. Bieck, Jr., David G. Radlauer and Amy L. Landry, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., for Defendant McMoRan Oil & Gas Company.

A. Gilchrist Sparks, III, Alan J. Stone and Christopher F. Carlton, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, and Dennis E. Glazer and John J. Clarke, Jr., Davis Polk & Wardwell, New York, New York, for Defendants James R. Moffett, Rene L. Latiolais, B.M. Rankin, Jr., Richard C. Adkerson, Robert M. Wohleber and Freeport-McMoRan Sulphur Inc.

Allen M. Terrell, Jr. and Peter B. Ladig, Richards, Layton & Finger, Wilmington, Delaware, and Terrence M. Murphy and James P. Karen, Jones, Day, Reavis & Pogue, Dallas, Texas, for Defendants Terrell J. Brown and Thomas D. Clark, Jr.

*MEMORANDUM OPINION*

JACOBS, Vice Chancellor.

*1 The plaintiffs in this shareholder class action challenge a stock-for-stock merger on the basis that the interestedness of the directors of the subject corporation resulted in its stockholders receiving an unfair price for their shares. It is claimed that those directors breached their fiduciary duty of loyalty and that the other constituent corporation aided and abetted that breach. All defendants have moved to dismiss the complaint under Court of Chancery Rule 12(b)(6). The director-defendants have moved to dismiss on the additional ground that any monetary recovery is barred by the exculpatory clause of the corporation's certificate of incorporation. This Opinion decides those motions.

I. FACTS [FN1]

FN1. The pertinent facts are as alleged in the complaint and documents incorporated therein by reference, including the Joint Proxy Statement/Prospectus ("the Proxy Statement"). Recited at this point are certain background facts. Other facts are set forth in the Analysis of the issues. See Part III, *infra*, of this Opinion.

On August 3, 1998, Freeport-McMoRan Sulphur Inc. ("FSC") announced that it had entered into an agreement to merge with McMoRan Oil & Gas Co. (MOXY). That transaction took the form of FSC and MOXY being merged into McMoRan Exploration Co. ("MEC"), a new holding company specially created for purposes of the Merger. The shareholders of FSC and MOXY would receive, as consideration, stock of MEC in exchange for their shares in FSC and MOXY. The MEC stock they would receive would be allocated among FSC's and MOXY's shareholders on the basis of .625 MEC shares for each share of FSC and .2 MEC shares for each share of MOXY.

The merger was negotiated on behalf of FSC by a special committee of directors, none of whom (it appears) were employed by FSC or MOXY. On October 9, 1998, the Proxy Statement was mailed to the shareholders of both companies, soliciting their approval of the Merger. The Proxy Statement disclosed MOXY shareholders would receive approximately 61%, and that FSC shareholders would receive approximately 39%, of the MEC stock being distributed in the Merger. Both the FSC and MOXY shareholders approved the Merger on November 17, 1998.

The Amended Consolidated Complaint (the

Not Reported in A.2d
2001 WL 50203 (Del.Ch.), 27 Del. J. Corp. L. 672
(Cite as: 2001 WL 50203 (Del.Ch.))

Page 2

"complaint") was filed as both an individual and as a class action on February 18, 2000. That complaint alleges that the FSC board of directors (the "FSC Defendants") breached their fiduciary duty of loyalty in connection with the Merger, by permitting MOXY shareholders to receive a disproportionate share of the Merger consideration. It is also claimed that MOXY aided and abetted those fiduciary breaches. The defendants have challenged the legal sufficiency of all these claims. [FN2]

> FN2. The original complaint, captioned *Krasner v. Moffett, et al.*, C.A. No. 16792, was consolidated with *Sheffield & Katz v. Adkerson, et al.*, C.A. No. 16845. Defendants moved to dismiss the complaint on December 17 & 18, 1998 and filed briefs in support of that motion on January 29, 1999. On February 18, 2000, plaintiffs filed the Consolidated Amended Complaint, which is the subject of the current motion to dismiss.

II. THE LEGAL STANDARD AND THE PARTIES' CONTENTIONS
A. The Legal Standard

On a motion to dismiss under Court of Chancery Rule 12(b)(6), the Court must assume the truthfulness of all well-pled allegations of the complaint and draw all reasonable inferences therefrom. [FN3] A complaint will not be dismissed unless it can be determined with reasonable certainty that the plaintiff could not prevail on any set of facts that are reasonably inferable from the complaint's allegations. [FN4] These standards govern the Court's analysis of the issues presented.

> FN3. *Grobow v. Perot*, Del.Supr., 539 A.2d 180, 187 n. 6 (1988); see also *In re USA Cafes, L.P. Litig.*, Del. Ch., 600 A.2d 43, 47 (1991).

> FN4. *Solomon v. Pathe Comm. Corp.*, Del.Supr., 672 A.2d 35, 39 (1996).

B. The Contentions

*2 The FSC defendants' position is that the complaint must be dismissed for failure to state a cognizable legal claim. The premise of that position is that the applicable standard under which the Merger will be reviewed is the business judgment rule. Under that standard of review, the defendants urge, the complaint states no claim because it fails to allege that the FSC directors acted in a manner that was either grossly negligent or disloyal. The director defendants additionally argue that the plaintiff's claims for money damages are barred by the exculpatory provision in FSC's certificate of incorporation which tracks 8 Del. C. § 102(b)(7) of the Delaware General Corporation Law.

Defendant MOXY argues that the complaint must be dismissed as against it, for failure to state a cognizable claim for aiding and abetting.

In defense of its complaint, the plaintiffs argue that because the complaint alleges that a majority of the FSC directors were interested in the Merger transaction, the applicable standard of review is entire fairness. Under that standard, the plaintiffs contend, the complaint states a cognizable claim because it alleges that the Merger resulted in unfair consideration being paid to FSC and MOXY shareholders, and also was the product of an unfair decision making process. Those allegations, plaintiffs maintain, are sufficient to state a claim for breach of the FSC directors' fiduciary duty of loyalty, which cannot be exculpated under § 102(b)(7). The plaintiffs further argue that the complaint sufficiently charges MOXY with having aided and abetted that fiduciary breach.

III. ANALYSIS
A. The Standard of Review

The parties agree that the critical issue on this motion is what standard of review-business judgment or entire fairness-governs the Merger. That issue is critical because it is outcome-determinative: if the standard is entire fairness, the motion must be denied because the complaint adequately states a claim that the Merger consideration was unfair. If, however, the applicable standard of review is business judgment, the complaint states no cognizable claim because (a) the plaintiffs have not adequately pled that the FSC defendants acted disloyally or in a grossly negligent manner, and (b) even if the Merger consideration paid to FSC shareholders was unfair, to overcome the business judgment rule presumption the plaintiff must allege that the price was so low as to constitute waste or fraud. [FN5] Neither claim is alleged here.

> FN5. See *Smith v. Van Gorkom*, Del.Supr., 488 A.2d 858, 889 (1985) (stating that in order for the plaintiff to overcome the presumption of the business judgment rule, they "have the heavy burden of proving that the Merger price was so grossly inadequate

Not Reported in A.2d                                                                                            Page 3
2001 WL 50203 (Del.Ch.), 27 Del. J. Corp. L. 672
**(Cite as: 2001 WL 50203 (Del.Ch.))**

as to display itself as a badge of fraud.").

I turn to the determinative issue: which of the standards of review applies?

B. The Special Committee

In determining what review standard applies, the Court is constrained to address a threshold matter-the legal consequence of the fact that the FSC special committee negotiated the Merger terms on behalf of FSC. Under Delaware law, where a transaction is negotiated and approved by an independent committee of directors and is subsequently approved by the stockholders of the company in an uncoerced, fully informed vote, the transaction is normally reviewed under the business judgment standard. [FN6] In this case it appears undisputed that the two FSC board members who made up the special committee were disinterested and independent. [FN7] I say "appears," because the role of the committee is barely alluded to, let alone developed, in the briefs. Yet, the Proxy Statement, which is incorporated into the complaint by reference, [FN8] is replete with disclosures-not disputed by the plaintiffs-that the FSC special committee retained independent legal and financial advisors, met on several occasions, and recommended the Merger to the full board, which approved the Merger terms as recommended. [FN9] If true, those disclosures would establish that the Merger terms were negotiated by directors who had acted "on an informed basis, in good faith and in the honest belief that their actions [were] in the corporation's best interest." [FN10] In that case the business judgment review standard would govern, and the result would be the dismissal of the complaint for failure to state a claim upon which relief could be granted.

FN6. *See In re Western Nat'l Corp. Shareholders Litig.*, Del. Ch., C.A. No. 15927, Chandler, C, Mem. Op. at 67-68 (May 22, 2000).

FN7. The plaintiffs do not specifically allege that the FSC special committee members were interested or lacked independence. Instead, they advance the argument that because the MOXY independent committee members held significantly more shares of MOXY than the FSC committee members held stock of FSC, the MOXY committee had an "overwhelmingly greater personal financial interest in obtaining the most advantageous exchange ratio for MOXY."

Complaint, at ¶ 21. That argument, while creative, is not supported by any legal authority in the plaintiff's brief and, moreover, would be unwieldy and uncertain in its application. Under that rule, a board would not only have to decide each candidate's independence when appointing a special committee, but also it would have to measure each candidate's stockholdings against the stockholdings of each of the other candidates for appointment to the special committee, and then speculate whether the special committee collectively has a stronger interest in protecting its corporation's shareholders than would the counterpart special committee on the other side of the bargaining table.

FN8. Complaint, at ¶ 16.

FN9. Proxy Statement at 28-29.

FN10. *See Grobow v. Perot*, Del.Supr., 539 A.2d 180, 187 (1988).

*3 Because the parties nowhere address in a reasoned or developed way the legal import of a relevant reality-that the Merger appears to have been negotiated by a special committee of independent, disinterested FSC directors-the briefs on the instant motion have an unreal quality. Instead, the parties ignore that subject and frame the issues in terms of whether a majority of the *full* FSC board that approved the Merger was (or was not) disinterested or independent. [FN11] But even under that approach, the complaint fails to allege facts that would establish that the Merger was approved by a majority of interested directors. My reasons for this conclusion next follow.

FN11. One reason for the defendants' failure to raise that issue may be that the facts pertaining to the special committee were disclosed in the Proxy Statement but not in the complaint. If the plaintiffs were challenging the Proxy disclosures, then the truth of those disclosures could not be assumed for purposes of a dismissal motion. *In re Santa Fe Pacific Corp. Shareholders Litig.*, Del.Supr., 669 A.2d 59, 70 (1995). But, the Proxy Statement is incorporated by reference into the complaint and the plaintiffs do not claim that the disclosures in the Proxy Statement were materially false or misleading. Thus, the reason for the

Not Reported in A.2d
2001 WL 50203 (Del.Ch.), 27 Del. J. Corp. L. 672
**(Cite as: 2001 WL 50203 (Del.Ch.))**

Page 4

defendants' failure to raise this issue remains mysterious.

C. *The Interestedness of the FSC Board of Directors*

A transaction will be reviewed under the entire fairness standard "where actual self-interest is present and affects a majority of the directors approving a transaction." [FN12] That exacting standard is also applied where a minority of interested directors exercises a dominating influence over a sufficient number of board members to constitute a majority. [FN13] A director is "interested" in a transaction if he or she appears on both sides of the transaction or expects to derive a "personal financial benefit from [the transaction] in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." [FN14]

> FN12. *Paramount Comm., Inc. v. QVC Network, Inc.*, Del.Supr., 637 A.2d 34, 42 n. 9 (1994).
>
> FN13. *In re Frederick's of Hollywood, Inc. Shareholders Litig.*, C.A. No. 15944, Jacobs, V.C. (Jan. 31, 2000), Mem. Op. at 17.
>
> FN14. *Aronson v. Lewis*, Del.Supr., 473 A.2d 805, 812 (1984).

These standards govern the Court's inquiry into the disinterest and independence of each of the FSC directors who approved the Merger.

1. *Directors Moffett, Adkerson and Rankin*

These three gentlemen were directors of both MOXY and FSC at the time of the Merger. Defendant James R. Moffett was co-chairman of the boards of both FSC and MOXY. Mr. Moffett was also the board chairman and the chief executive officer of Freeport-MOXY Copper and Gold, Inc. ("Freeport Copper"), an affiliate of FSC and MOXY. Mr. Moffett held 1,774,359 shares of MOXY stock and 130,670 shares of FSC stock. [FN15]

> FN15. Complaint ¶ 18.

Defendant Richard C. Adkerson was vice chairman of the board of FSC and also co-chairman of the board and chief executive officer of MOXY. In addition, he was the president and chief operating officer of Freeport Copper. [FN16] Mr. Adkerson held 492,892 shares of MOXY stock and 28,186 shares of FSC. [FN17]

> FN16. *Id.*, at ¶ 5.
>
> FN17. *Id.*, at ¶ 18.

Defendant B.M. Rankin, Jr. served as a director of FSC, MOXY and Freeport Copper. [FN18] Mr. Rankin held 1,109,290 shares of MOXY stock and 37,736 shares of FSC stock. [FN19]

> FN18. *Id.*, at ¶ 7.
>
> FN19. *Id.*, at ¶ 18.

By virtue of being directors and officers of both FSC and MOXY, these three directors stood on both sides of the Merger, and accordingly, must be deemed to have had a conflicting interest in that transaction. [FN20] Being thus conflicted, these three directors could not independently and disinterestedly consider the Merger on behalf of the FSC public shareholders.

> FN20. See note 15 *supra*.

Because three of FSC's seven board members were clearly interested, it follows that if even one of the four remaining directors was either interested or not independent, then the entire fairness standard of review would apply.

*4 Of the remaining four directors, the plaintiff concedes that two were independent and disinterested. These two directors, Terrell J. Brown and Thomas D. Clark, were directors of only FSC. Neither held any MOXY stock, Brown held no FSC stock, and Clark held only 500 FSC shares. Thus, only the disinterest and independence of the two remaining directors-Richard M. Wohleber ("Wohleber") and Rene L. Latiolais ("Latiolais")-are disputed and need be addressed.

2. *Wohleber*

Mr. Wohleber was FSC's chief executive officer, president and a director. [FN21] He was also a senior vice president of Freeport Copper. [FN22] The complaint alleges that in connection with the Merger, Mr. Wohleber was promised that he would become the executive vice president, chief financial officer and a director of MEC. [FN23] That promise allegedly was made before Wohleber voted in favor of the Merger. [FN24] In 1998, Wohleber received a bonus of $250,000 in addition to his salary of $225,000. [FN25] Finally, it is alleged that Wohleber served as senior vice president of Freeport Copper,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2001 WL 50203 (Del.Ch.), 27 Del. J. Corp. L. 672
(Cite as: 2001 WL 50203 (Del.Ch.))

Page 5

and that Mr. Moffett served as chairman and CEO of the same entity. The plaintiffs argue that it is reasonable to assume that in those capacities; Mr. Wohleber was subordinate to Mr. Moffett and that Mr. Moffett was in a position to influence, if not determine, Mr. Wohleber's continued employment at Freeport Copper.

>    FN21. Complaint ¶ 6.
>
>    FN22. Id.
>
>    FN23. Id., at ¶ 17.
>
>    FN24. Id., at ¶ 22.
>
>    FN25. Id., at ¶ 19.

I conclude that the foregoing facts, even if taken as true, do not establish that Mr. Wohleber lacked independence. The plaintiffs' position appears to rest on the supposition that Wohleber's position as senior vice president of Freeport Copper made him vulnerable to pressure from Mr. Moffett to vote (as a director of FSC) in favor of the Merger. This supposition is nowhere straightforwardly pled, let alone supported by any factual allegations in the poorly drafted complaint. Moreover, the complaint alleges no facts that shed any light on the relationship between FSC (and/or MOXY) and Freeport Copper. Nor are any facts alleged from which one might infer that Moffett had the authority either to fire Mr. Wohleber or significantly to influence a decision by others to fire him, or that Wohleber had a substantial financial stake in maintaining his job at Freeport Copper. [FN26] These woeful deficiencies in the complaint preclude any determination that Mr. Wohleber was either interested or lacked the independence to consider the Merger transaction impartially.

>    FN26. See Rales v. Blasband, Del.Supr., 634 A.2d 927 (1993); Benerofe v. Cha, Del. Ch., C.A. No. 14614, Chandler, V.C., Mem. Op. (Sept. 12, 1996).

3. *Latiolais*

Mr. Latiolais was both a director of FSC and the vice chairman of the board of Freeport Copper. In addition, he provided consulting services to FSC before the Merger, and thereafter will continue to provide such services to MEC. After the Merger, the consulting fee Mr. Latiolais received for those services was increased from $230,000 to $330,000-a nearly 43% increase.

The FSC defendants argue that the increase in Latiolais' consulting fees is not material and, moreover, that there is no allegation that Latiolais knew his fees would be increased at the time he voted on the Merger. The plaintiff rejoins that (1) a $100,000 (or 43%) increase is inherently material, (2) a $230,000 consulting contract, in and of itself, is a material financial interest regardless of whether the fee was increased, (3) Latiolais had a conflicting interest in continuing to render the consulting services for a fee to MEC after the Merger.

*5 In support of their position, the defendants rely upon *In re Walt Disney Co. Derivative Litigation,* [FN27] where Chancellor Chandler, in granting a motion to dismiss the complaint, found that a director who received consulting fees could not be deemed interested where the complaint did not allege facts that would establish that those fees were material to *that* director. [FN28] The plaintiff has failed to allege such facts in this case. Accordingly, here, as in *Disney,* the Court is unable to conclude that the current pleading sufficiently alleges that Latiolais lacked independence or had a conflicting self-interest in the Merger.

>    FN27. *In re Walt Disney Co. Derivative Litig.,* Del. Ch., 731 A.2d 342 (1999) aff'd in part, rev'd in part on other grounds sub nom *Brehm v. Eisner,* Del.Supr., 746 A.2d 244 (2000).
>
>    FN28. In discussing consulting fees paid to Senator George Mitchell, the Court stated that the "plaintiffs have not alleged that the ... consulting fees [were] even material to [defendant]." *Id.* at 360.

Because neither Wohleber or Latiolais can be deemed interested or to lack independence on the facts alleged, the pled facts do not establish that entire fairness is the applicable standard of review. Because (on the current pleading) the Merger would be reviewed under the business judgment standard, and because no facts are alleged that would establish that the Merger consideration was so low as to constitute fraud or waste, the complaint fails to state a cognizable claim that the FSC directors breached any fiduciary duty owed to the corporation. [FN29]

>    FN29. Because the complaint cannot survive the FSC defendants' motion to dismiss, I need not address MOXY's motion to dismiss

Not Reported in A.2d
2001 WL 50203 (Del.Ch.), 27 Del. J. Corp. L. 672
**(Cite as: 2001 WL 50203 (Del.Ch.))**

Page 6

the aiding and abetting claim against it, because an underlying breach of fiduciary duty an essential element of a claim for aiding and abetting. *See In re Santa Fe Pac. Corp. Litig.,* 669 A.2d 59, 72 (1995) (citing *Weinberger v. Rio Grande Indus., Inc.,* Del. Ch., 519 A.2d 116, 131 (1986)).

### IV. CONCLUSION

For the foregoing reasons, the FSC defendants motion to dismiss is granted, with leave to amend the complaint within 30 days of this Opinion to add nonconclusory factual allegations that would establish that the Merger is not governed by the business judgment standard, either because (a) the FSC independent committee process did not merit business judgment rule protection, or (b) a majority of the FSC directors who approved the Merger were interested and were not independent. If no further amended complaint is filed within that 30 day period, the dismissal of this action shall be final.

IT IS SO ORDERED.

2001 WL 50203 (Del.Ch.), 27 Del. J. Corp. L. 672

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.