# EXHIBIT F

1996 Del. Ch. LEXIS 76, *

LEXSEE 1996 DEL. CH. LEXIS 76

STUART GREEN, Plaintiff, v. LAWRENCE S. PHILLIPS, ELLIS E. MEREDITH, PETER J. SOLOMON, IRWIN W. WINTER, EDWARD H. COHEN, ESTELLE ELLIS, MARIA ELENA LAGOMASINO, WILLIAM S. SCOLNICK, JOSEPH B. FULLER, BRUCE J. KLATSKY, BRUCE MAGGIN and STEVE OSTERWEIS, Defendants, and PHILLIPS-VAN HEUSEN CORPORATION, Nominal Defendant.

Civil Action No. 14436

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

*1996 Del. Ch. LEXIS 76*

March 8, 1996, Date Submitted
June 19, 1996, Date Decided

**NOTICE:** [*1] THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**DISPOSITION:**

Rule 12(b)(6) motion to dismiss granted in favor of the individual defendants (other than Mr. Phillips) with respect to all duty of care claims, and the defendants' Rule 23.1 motion to dismiss denied.

**LexisNexis(R) Headnotes**

**COUNSEL:**

Norman M. Monhait, Esquire, of ROSENTHAL, MONHAIT, GROSS & GODDESS, P.A., Wilmington, Delaware; Attorneys for Plaintiff.

A. Gilchrist Sparks, III, Jon E. Abramczyk, and Donna L. Culver, Esquires, of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware; and Joel W. Sternman and Phillip B. Gerson, Esquires, of ROSENMAN & COLIN, New York, New York; Attorneys for Defendants Ellis E. Meredith, Peter J. Solomon, Irwin W. Winter, Edward H. Cohen, Estelle Ellis, Maria Elena Lagomasino, William S. Scolnick, Joseph B. Fuller, Bruce J. Klatsky, Bruce Maggin and Steven L. Osterweis.

John H. Small, Wayne J. Carey, and April Caso Ishak, Esquires, of PRICKETT, JONES, ELLIOTT, KRISTOL & SCHNEE, Wilmington, Delaware; and Andrew J. Levander, Scott M. Zimmerman, and Louis M. Solomon, Esquires, of SHEREFF FRIEDMAN HOFFMAN & GOODMAN, L.L.P., New York, New York, Attorneys for Defendant [*2] Lawrence S. Phillips.

Richard D. Heins, Esquire, of ASHBY & GEDDES, Wilmington, Delaware; Attorneys for Nominal Defendant Phillips-Van Heusen Corporation.

**JUDGES:** JACOBS, VICE CHANCELLOR.

**OPINIONBY:** JACOBS

**OPINION:**

MEMORANDUM OPINION

JACOBS, VICE CHANCELLOR

This is a derivative action brought by a shareholder of Phillips-Van Heusen Corporation ("PVH"), on behalf of PVH against twelve of its present and former directors. n1 The complaint alleges that the defendants breached their fiduciary duty and committed corporate waste by approving a consulting and non-competition agreement made in February, 1995 (the "1995 Agreement") between PVH and Lawrence Phillips ("Phillips"), PVH's former Chief Executive Officer and Chairman of the Board. The plaintiff seeks an adjudication declaring the 1995 Agreement void ab initio, and directing Phillips to return to PVH all benefits

received by him pursuant to that Agreement. The plaintiff also seeks a judgment against the individual defendants for the damages PVH sustained as a result of the board's decision to approve the 1995 Agreement.

> n1 The named defendants, in addition to Mr. Phillips, are Bruce Klatsky, Irwin Winter, Edward Cohen, Estelle Ellis, Maria Elena Lagomasino, William Scolnick, Ellis Meredith, Peter Solomon, Joseph Fuller, Bruce Maggin and Steven Osterweis.

[*3]

The defendants have moved to dismiss this action pursuant to Court of Chancery Rule 23.1, on the ground that the plaintiff failed to make a pre-suit demand on the PVH board, or, alternatively, to allege particularized facts that would establish demand futility. The defendants have also moved to dismiss pursuant to Chancery Court Rule 12(b)(6), on the ground that the plaintiff has failed to state a claim upon which relief may be granted.

This is the decision of the Court on the defendants' dismissal motions.

I. FACTS

The facts stated below are based upon the well-pleaded allegations in the complaint and the documents incorporated therein by reference. See *Grobow v Perot, Del. Supr., 539 A.2d 180, 187 (1988)*, McAllister v. Kallop, Del. Ch., No. 12856, Chandler, V.C., Mem. Op. at 1 (Mar. 19, 1993) (holding that the Court may consider documents referenced in the complaint to determine their contents).

PVH, a Delaware corporation that manufactures and sells clothing apparel and footwear, is the successor to a business founded by Mr. Phillips' great-grandfather in the 19th century. Mr. Phillips began his employment with PVH in 1948. In 1967 he succeeded his father as PVH's [*4] President, and thereafter he served as its Chief Executive Officer. During Mr. Phillips' tenure, PVH experienced dramatic growth, and his long and successful stewardship earned him the confidence of many long-time PVH shareholders.

Mr. Phillips became a director of PVH in 1951, and served in that capacity until he resigned in February 1995. As of April 1993, Mr. Phillips was also Chairman of the PVH board as well as PVH's largest stockholder, controlling directly and indirectly over 8% of its issued and outstanding stock. n2

> n2 In addition, Mr. Phillips' sister beneficially owned 5% of PVH's issued and outstanding shares.

In 1987, defendant Bruce Klatsky ("Klatsky") was appointed President of PVH. While being groomed by Mr. Phillips as his potential successor, Mr. Klatsky received a lucrative offer to leave PVH in April 1993. The PVH Board, with Mr. Phillips' approval, believed that it was in PVH's best interest to retain Klatsky.

To accomplish that, the board decided to change PVH's management and to replace [*5] Mr. Phillips with Mr. Klatsky. Accordingly, PVH, Mr. Phillips and Mr. Klatsky entered into an agreement (the "1993 Agreement") which provided, inter alia, that (i) Mr. Phillips would resign as Chief Executive Officer in June 1993, and would resign as Chairman of the PVH Board in June 1994; (ii) Mr. Klatsky would be Mr. Phillips' successor in both positions; (iii) Mr. Phillips would become Honorary Chairman or Chairman Emeritus of PVH, and would serve in that capacity and also as consultant to the Chairman until June 7, 1999; (iv) Mr. Phillips would retain an office (outside of the corporation's principal offices) and have an assistant paid for by PVH; and (v) until June 1999, Mr. Phillips would receive compensation, equal at a minimum to his then-current compensation ($ 616,000 per year), and would continue receiving the perquisites he was then currently enjoying. 1993 Agreement at P 7. n3

> n3 Because the 1993 Agreement and the 1995 Agreement are incorporated by reference into the complaint, they form part of the "facts" that are properly considered on these motions.

[*6]

Initially, Mr. Klatsky's tenure as Chief Executive Officer was a success. By the end of 1993 the market price for PVH stock had increased from $ 27 per share to $ 37 per share. After 1993, however, although PVH's sales continued to improve, its earnings per share declined, and by the end of 1994 PVH's market price had dropped to $ 15 per share.

Unhappy with PVH's declining performance, Mr. Phillips demanded that the PVH's Board dismiss Mr. Klatsky and reinstate him (Phillips) as Chairman and Chief Executive Officer. The board refused. That refusal created an "embittered relationship between Phillips and the Board, particularly [with] Klatsky." Complaint at P 21. At that time Mr. Phillips, together with his sister,

controlled and/or influenced the voting of approximately 10.7% of the issued and outstanding PVH shares. That voting power, combined with Mr. Phillips' good relationship with other PVH shareholders, gave Phillips the "potential" ability to mount a proxy contest challenging the Board's control of PVH. Id.

As a result of that potential threat, the Board decided to terminate Mr. Phillips' relationship with PVH, on the following basis: The Board arranged for Vaneton [*7] International Inc., PVH's largest supplier, to purchase Mr. Phillips' and his sister's PVH shares at an above-market premium. The PVH board also entered into an agreement with Phillips dated February 14, 1995 (the "1995 Agreement") under which Mr. Phillips' resigned from the PVH board, and the employment and compensation provisions of the 1993 Agreement were terminated.

The 1995 Agreement contained superseding employment and compensation provisions under which PVH would retain Mr. Phillips as a consultant until June 2004, and would compensate him at a rate of $ 250,000 per year. In exchange, the 1995 Agreement called for Phillips to perform,

> consulting services as may be reasonably requested by the chief executive officer ... [and] shall not require more than an average of 10 hours per month or more than 20 hours in any one month and shall not require Phillips to travel [other than to PVH's New York Office not more than once a year].

1995 Agreement at pp. 1-2. n4

n4 Mr. Phillips would also receive $ 50,000 per year for out-of-pocket expenses, including fees and transportation to various business seminars, in connection with his consulting services.

[*8]

The complaint further alleges that the 1995 Agreement additionally and separately provided that PVH would pay Phillips $ 500,000 per year until June 2004, in exchange for his agreement not to compete with PVH and to keep confidential his knowledge of the business. Complaint at P 23.

Importantly, the 1995 Agreement provided that Mr. Phillips would receive other benefits, including (inter alia): (i) a company car, (ii) an employee discount for PVH merchandise, (iii) generous health insurance benefits for Mr. Phillips and his wife, (iv) life insurance, (v) an office and assistant provided by PVH, (vi) reimbursement for telecommunications equipment, (vii) stock options to acquire 100,000 shares of PVH and (viii) contributions to be made by PVH to certain charities selected by Mr. Phillips, and (ix) indemnification for the costs of all litigation arising out of the 1995 Agreement.

Importantly, the 1995 Agreement does not identify any specific consideration to be provided by Mr. Phillips to PVH for these additional benefits. Because that fact is significant to this Motion, the benefits conferred upon Mr. Phillips by the 1995 Agreement, and the consideration that PVH would receive [*9] in exchange, are summarized in chart form below:

Terms of the 1995 Agreement

| Consideration to Phillips | Consideration to PVH |
|---|---|
| $250,000 per year through 2004. (1995 Agreement at P 2) | Consulting services. (P2) |
| $500,000 per year through 2004. (P 9) | Covenant not to compete. (P 9). |
| $50,000 for out-of-pocket expenses including attendance at various business seminars. (P 3) | Expenses incurred in connection with Phillips' performance of consultant duties. (P 3) |
| Use of a company car. (P 3) | |
| Merchandise discount. (P 3) | |
| Medical benefits for Phillips and his wife, including dental and optical coverage, through | |

June 2004. (P 4)
Life insurance on the life of Phillips. (P 4)
Cost of a furnished office and assistant. (P 5)
Cost of telecommunications equipment. (P 5)
Yearly contributions totalling $180,000 to
charities designated by Phillips. (P 7)
Option for 100,000 shares of PVH stock.
(P 7)
Indemnification Agreement. (P 11)
Transportation of furnishings from PVH's
principal offices to Phillips' new office. (P 12)
Indemnification for all of Phillips' expenses
for the cost of litigation arising from the 1995
Agreement. (P 15)

?

[*10]

The plaintiff commenced this action on July 21, 1995, claiming that the 1995 Agreement constituted a waste of corporate assets and that the defendants had breached their fiduciary duties in approving it. The complaint also alleges that no pre-suit demand was made on the PVH board because a demand would have been futile. These dismissal motions followed. n5

> n5 Mr. Phillips has joined in the other defendants' motions, and has also moved to dismiss the complaint under Chancery Court Rule 12(b)(2) for lack of personal jurisdiction. Because that latter motion is subject to discovery ( *Hart Holding Co. v. Phillips Burnham Lambert, Inc., Del. Ch., 593 A.2d 535 (1991)*), the plaintiff and Phillips have agreed to defer its consideration at this time.

II. DECISION

A. The Parties' Contentions

The defendants contend that the complaint should be dismissed because the plaintiff failed to establish through particularized factual allegations that a pre-suit demand on the PVH board would have been futile. First, [*11] the defendants argue that those allegations are insufficient to create a reasonable doubt that a majority of the director-defendants were disinterested and independent in approving the 1995 Agreement. Second, the defendants contend that the plaintiff's allegations amount, at best, to a claim of corporate waste, and that from the pleaded facts a reasonable PVH director could conclude that the 1995 Agreement was in the corporation's best interests. For those reasons, defendants argue, dismissal under Rule 23.1 is required.

In the alternative, the defendants contend that dismissal under Rule 12(b)(6) is required because Article Eighth of PVH's Articles of Incorporation, which tracks *8 Del. C. § 102(b)(7)*, exculpates the PVH directors from liability for the claims alleged here. Consequently, defendants urge, the plaintiff has failed to state a claim upon which relief may be granted. The plaintiff responds that the complaint's particularized allegations do create a reasonable doubt as to (i) the disinterest and independence of the PVH board, and (ii) whether the board's approval of the 1995 Agreement was a product of a valid exercise of business judgment, i.e., amounted to corporate [*12] waste. Therefore, plaintiff concludes, the complaint establishes demand futility and excuses his failure to make a demand.

Moreover, the plaintiff argues that the Court should not dismiss the complaint by reason of the exculpatory provision of the PVH charter, because (i) the Rule 12(b)(6) dismissal motion rests upon what essentially is an affirmative defense as to which the plaintiffs have had no opportunity to take discovery, and (ii) in any event, the plaintiff's claim that the 1995 Agreement is void ab initio falls outside the scope of that exculpatory provision.

For the reasons discussed below, the Court denies the defendants' Rule 23.1 motion, but grants the defendants' (other than Phillips') Rule 12(b)(6) motion to the extent the complaint alleges claims for money damages against the individual defendants for breach of the duty of care.

B. Demand Futility

The Rule 23.1 standard for demand futility is well settled. Pre-suit demand is deemed futile if the

particularized factual allegations of the complaint (including, where appropriate, the contents of documents referenced therein), create a reasonable doubt that (a) the directors were disinterested and independent, [*13] or that (b) the challenged action was otherwise the result of a valid exercise of business judgment. *Aronson v. Lewis, Del. Supr., 473 A.2d 805, 815 (1984);* see also *Levine v. Smith, Del. Supr., 591 A.2d 194, 205 (1991).*

I conclude that in this case the pleaded facts are insufficient to excuse demand under the first prong of the Aronson standard. As to the second prong, the Court is unable to conclude as a matter of law on this record that the complaint fails to create a reasonable doubt that the 1995 Agreement was a product of a valid exercise of business judgment. The Rule 23.1 motion must therefore be denied.

1. Director Disinterest and Independence

As a general matter, to establish director "interest" sufficient to excuse demand, the plaintiff must allege particularized facts showing that a majority of the board had either (i) a financial interest not equally shared by the stockholders, or (ii) an entrenchment purpose. n6 *Grobow, 539 A.2d at 188.* To plead entrenchment, the complaint must allege facts sufficient to demonstrate that the "sole or primary purpose" of the challenged board action was to perpetuate the directors in control of the corporation. [*14] *Kahn v. Roberts, Del. Ch., C.A. No. 12324, Hartnett, V.C., Mem. Op. at 14-15 (Feb. 28, 1994).* To establish a reasonable doubt as to director independence, a plaintiff must allege with particularity facts demonstrating that the "directors were dominated or otherwise controlled by an individual or entity interested in the transaction." *Grobow, 539 A.2d at 189* (citing *Aronson, 473 A.2d at 815-816).*

> n6 Corporate action that would have a materially detrimental impact on a director, but not on the corporation and its stockholders, has also been deemed to constitute a disqualifying interest. See *Rales v. Blasband, Del. Supr., 634 A.2d 927, 936 (1993).*

The complaint in this case does not claim that a majority of the PVH directors were financially interested in the 1995 Agreement but, rather, alleges that the defendants approved that Agreement to protect their incumbency. Complaint at PP 27, 29. The threat to the defendants' incumbency is claimed to be Mr. Phillips' potential ability to mount a proxy [*15] challenge to oust the board. Complaint at P 21. The difficulty, however, is that the complaint pleads no facts demonstrating an actual threat to the directors' positions. See *Grobow, 539 A.2d at 188* (demand not excused where plaintiff failed to plead facts that showed an actual threat to the defendants' positions as directors). The complaint also fails to allege facts that would show that the directors' sole or primary motivation for approving the 1995 Agreement was to perpetuate themselves in control. Accordingly, the plaintiff has not established that the defendants, in approving the 1995 Agreement, had a disqualifying self interest that would excuse demand.

Nor does the complaint create a reasonable doubt as to the board's independence. Specifically, the pleaded facts do not show that a majority of the PVH directors were dominated or controlled by Mr. Phillips. On the contrary, the board's independence is demonstrated by their having rejected Phillips demand to dismiss Mr. Klatsky and be reinstated in control of PVH. Complaint at P 21.

The plaintiff urges that the test of board independence also includes the directors' ability to take corporate action without regard to [*16] "extraneous considerations or influences." *Aronson, 473 A.2d at 816.* The plaintiff then argues that the complaint alleges specific extraneous factors that improperly influenced a majority of the board to approve the 1995 Agreement, viz., (i) entrenchment motives (ii) the directors' desire to mollify Phillips, and (iii) the directors' longstanding personal and business ties to Phillips. These allegations, in my view, are insufficient to overcome the directors' presumption of independence, particularly in light of the board's refusal to reinstate Phillips to his former positions as CEO and Chairman of the board.

Because no reasonable doubt is created with respect to the board's disinterest and independence, the complaint fails to establish demand futility under the first prong of Aronson.

2. An Otherwise Valid Exercise Of Business Judgment.

Under Aronson's second prong, demand may be excused if the complaint creates a reasonable doubt the contested action was the result of a valid exercise of business judgment. *Aronson, 473 A.2d at 815.* The claim sub judice -- corporate waste -- is generally addressed under that second prong. See *Kahn v. Roberts, Mem.* [*17] *Op. at 12-13.* A waste claim arises where a board authorizes action on the corporation's behalf "on terms that no person of ordinary, sound business judgment could conclude represents a fair exchange." *Steiner v. Meyerson, Del. Ch., C.A. No. 13139, Allen, C., Mem. Op. at 2 (July 18, 1995).* That extreme test is rarely satisfied, because if a reasonable person could conclude

the board's action made business sense, the inquiry ends and the complaint will be dismissed. Id.

To state a claim for corporate waste, the complaint must allege particularized facts showing that the corporation, in essence, gave away assets for no consideration. For this Court to conclude as a matter of law that the complaint fails to state such a claim (as defendants argue), the record must, at a minimum, enable the Court to relate the benefits or consideration being paid by the corporation to some corresponding benefit or consideration that the corporation is receiving. In this case, however, neither the complaint nor the 1995 Agreement, which is incorporated by reference, enables the Court to do that. Certain provisions of the 1995 Agreement that confer benefits upon Mr. Phillips are not tied in any way [*18] to any consideration that Mr. Phillips must provide in return. 1995 Agreement at PPP 3-7, 11-12, 15-16. In contrast, other provisions of that same Agreement explicitly predicate Phillips' monetary compensation upon his promise either to provide consulting services to PVH and its Chairman (1995 Agreement at P 2), or not to compete with the company (1995 Agreement at P 9). See Chart, supra at p 6.

The defendants argue that the 1995 Agreement's provisions that confer benefits upon Phillips without identifying any corresponding consideration flowing to PVH are not problematic, because those provisions did not grant Phillips any new benefits. Rather, they simply carried forward preexisting benefits already conferred under the 1993 Agreement. While that may ultimately prove to be the case, I cannot so conclude as a matter of law on this record. Nowhere does the 1995 Agreement recite (as the defendants claim) that it was carrying forward preexisting benefits already conferred upon Mr. Phillips by the 1993 Agreement. Indeed, the first paragraph of the 1995 Agreement provides that "the Provisions of Section 7 of the [1993] Agreement [that provided for Phillips' compensation]. [*19] . .shall be terminated as of the effective date of agreement and shall be of no further force or effect thereafter."

On this motion, the Court must decide all reasonable inferences in favor of the non-moving party. See Emerald Partners v Berlin, Del. Ch., C.A. No. 9700, Hartnett, V.C., Mem. Op. at 17-18 (Dec. 23, 1993)(denying Rule 23.1 motion to dismiss corporate waste claim). On this record -- viewed in the light most favorable to the plaintiffs and in the absence of contrary particularized pleaded facts -- the 1995 Agreement must be read as conferring certain benefits upon Mr. Phillips for no consideration. On that basis the complaint creates a reasonable doubt that the defendants' approval of that agreement was the result of a valid exercise of business judgment. Id.; Lewis v. Hett, Del. Ch., C.A. No. 6752, Berger, V.C., Mem. Op. at 10 (Sept. 4, 1984). Accordingly, the plaintiff has established that a pre-suit demand would have been futile.

B. The Exculpatory Charter Provision

Article Eighth of PVH's Certificate of Incorporation, modeled on *8 Del. C. § 102(b)(7)*, exempts the directors from personal liability for money damages for claims of breach of the [*20] duty of care. n7 See Defendants' Exhibit A. That Article pertinently provides:

> "EIGHTH: No director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of his or her fiduciary duty as a director; provided, however, that nothing in this Article EIGHTH shall eliminate or limit the liability of any director (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the General Corporation Law of the State of Delaware, or (iv) for any transaction from which the director derived an improper personal benefit..."

---

n7 Although the Certificate of Incorporation is not attached to the Complaint or referenced therein, the Court may take judicial notice of the Certificate in deciding a motion to dismiss under Rule 12(b)(6). In re Wheelabrator Technologies, Inc. Shareholders Litig., Del. Ch., C.A. No. 11495, Jacobs, V.C., Mem. Op. at 2 (Sept. 1, 1992).

[*21]

The defendants maintain that this provision shields the directors (other than Mr. Phillips) n8 from personal liability with respect to the corporate waste claim, because the plaintiff seeks money damages and none of the stated exceptions is applicable. See Steiner, Mem. Op. at 13 ("The waste claim entails no claim of bad faith or conflict of interest if it did it would be a breach of fiduciary duty claim.") The plaintiff disagrees, arguing that the corporate waste claim draws into question the good faith of all defendants (including Phillips). See Emerald Partners v. Berlin, Mem. Op. at 20.

n8 Mr. Phillips, as the beneficiary of the 1995 Agreement, cannot claim the protection afforded by Article Eighth because the waste allegations, if proved, would support a finding that he derived an improper personal benefit from the corporation.

I cannot accept the plaintiff's position, because there are no well-pleaded allegations that (i) the defendants (other than Phillips) were financially interested, or that [*22] (ii) the other defendants acted in other than good faith in approving the 1995 Agreement. Thus, this action is distinguishable from Emerald Partners, where the waste claim alleged there did bring the directors' loyalty and good faith into question.

Accordingly, to the extent that the complaint can be read to claim a duty of care violation and seeks money damages against the directors (other than Mr. Phillips), those claims are barred as a matter of law.

### III. CONCLUSION

For the above reasons, the Rule 12(b)(6) motion to dismiss is granted in favor of the individual defendants (other than Mr. Phillips) with respect to all duty of care claims, and the defendants' Rule 23.1 motion to dismiss is denied. IT IS SO ORDERED.