# EXHIBIT L

Case 1:04-cv-01268-***-MPT   Document 60-13   Filed 06/03/2005   Page 1 of 6

Westlaw.

Not Reported in A.2d
1987 WL 11283 (Del.Ch.), 13 Del. J. Corp. L. 795
(Cite as: 1987 WL 11283 (Del.Ch.), 13 Del. J. Corp. L. 795)

Page 1

**H**
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware, New Castle County.
In re SEA-LAND CORPORATION SHAREHOLDERS LITIGATION.
Civ. A. No. 8453.

Submitted: May 5, 1987.
Decided: May 22, 1987.

**797 Charles S. Crompton, Jr., Michael D. Goldman, Peter M. Sieglaff, and Kent A. Jordan, of Potter Anderson & Corroon, Wilmington, Gary J. Greenberg (argued), New York City, for plaintiffs Hecco Ventures and James J. Cotter.

Joseph A. Rosenthal, of Morris and Rosenthal, P.A., Wilmington, Mordecai Rosenfeld, of Wolf, Popper, Ross, Wolf & Jones, New York City, and Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., for plaintiffs George Grover, Arthur W. Austin and Bernard and Rosalyn Lowe.

A. Gilchrist Sparks, III and Edmond D. Johnson, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Jeffrey S. Davidson, Daniel F. Attridge (argued) and John G. Froemming, of Kirkland & Ellis, Washington, D.C., for defendant LLC Corporation.

**798 Steven J. Rothschild, Thomas J. Allingham, III and Paul L. Regan, of Skadden, Arps, Slate, Meagher & Flom, Wilmington, for Sea-Land defendants.

Charles F. Richards, Jr. and Kevin G. Abrams, of Richards, Layton & Finger, Wilmington, and Wachtell, Lipton, Rosen & Katz, New York City, for defendant CSX Corporation.

JACOBS, Vice Chancellor.

*1 In these consolidated class actions, the plaintiffs, who are former stockholders of Sea-Land Corporation ("Sea-Land"), challenge (i) a "Call Option" agreement between defendants LLC Corporation ("LLC") and CSX Corporation ("CSX") whereby CSX acquired LLC's 39.5% stock interest in Sea-Land and eliminated LLC as a bidder for control of Sea-Land, and (ii) a subsequent "cash out" merger, preceded by a cash tender offer, between CSX and Sea-Land whereby CSX acquired Sea-Land's remaining minority shares.

Defendant LLC has moved to dismiss the complaint as to it for failure to state a claim upon which relief can be granted. This is the Opinion of the Court on LLC's dismissal motion. For the reasons which follow, LLC's motion to dismiss the complaint will be granted with leave to amend.

I.

On a motion to dismiss for failure to state a claim, all well-pleaded allegations of the complaint are taken as admitted and all legitimate inferences are construed in favor of the plaintiff. *Margolies v. Pope & Talbot, Inc.*, Del.Ch., C.A. No. 8244, Hartnett, V.C. (December 23, 1986), at 10; *Jefferson Chemical Co., Inc. v. Mobay Chemical Co.*, Del.Ch., 253 A.2d 512, 516 (1969). The motion will not be granted unless it appears with reasonable certainty that the plaintiff would not be entitled to the relief sought under any set of facts that could be proven to support the claim. *Jefferson Chemical Co.*, 253 A.2d at 516; *Rabkin v. Philip A. Hunt Chemical Corp.*, Del.Supr., 498 A.2d 1099, 1104 (1985).

For purposes of the instant motion, the pertinent facts are these: Sea-Land is a Delaware corporation engaged principally in the transportation of containerized cargo. As of April 15, 1986, Sea-Land had 23,429,567 issued and outstanding shares of stock that were **799 listed and traded on the New York and Pacific Stock Exchanges. According to the complaint, each of the plaintiffs was a Sea-Land shareholder, at least up to April 29, 1986.

As of June 25, 1985, LLC, a Delaware corporation, and its affiliates, Mr. Harold Simmons ("Simmons") and Amalgamated Sugar Company [FN1] (collectively "Simmons", unless otherwise indicated), announced that they had acquired 9.1% of Sea-Land's common stock. In November, 1985, Simmons advised Sea-Land's board of directors that he proposed to purchase all of Sea-Land's outstanding shares at $25 per share. At the same time Simmons continued to purchase Sea-Land stock on the open market. Sea-Land's directors rejected Simmons' $25 per share proposal as inadequate. In December, 1985, Simmons offered to refrain from buying any more Sea-Land securities without the Sea-Land

Not Reported in A.2d                                                                                                                  Page 2
1987 WL 11283 (Del.Ch.), 13 Del. J. Corp. L. 795
**(Cite as: 1987 WL 11283 (Del.Ch.), 13 Del. J. Corp. L. 795)**

board's approval, if Simmons were given the opportunity to top any bid for Sea-Land that might be made by a third party. Sea-Land's directors rejected that proposal as well. Accordingly, Simmons pressed forward with their open-market purchases until they had accumulated 39.5% of Sea-Land's then-outstanding shares.

Meanwhile, Sea-Land took steps to prevent and thwart a hostile acquisition by Simmons. Sea-Land adopted a "poison-pill" rights dividend to deter a hostile takeover, and it contacted CSX and other potential "white knights" in an effort to interest them in acquiring Sea-Land. In early January, 1986, after reviewing confidential data, CSX informed Sea-Land that it had no interest in pursuing the matter.

*2 Simmons persisted in their attempt to gain control of Sea-Land, and in response, Sea-Land's directors urged Simmons to better their $25 per share offer. In early January, 1986, Simmons threatened to wage a proxy contest, unless they were allowed to name three persons to fill the three board vacancies that would occur at the next annual stockholders meeting. Sea-Land then agreed that Simmons would be allowed to nominate three directors to stand for election at the annual meeting scheduled for May, 1986. In recognition of Simmons' "stock control", the directors also agreed to allow Simmons and his nominees to attend and participate in all board meetings until the formal election. It is not alleged, however, that Simmons' nominees were **800 ever elected to the board, and it is undisputed that they were not.

On April 11, 1986, Simmons offered to raise their price to $26 per share for all of Sea-Land's stock. By that point Sea-Land had also reopened negotiations with CSX. On or about April 20, 1986, CSX offered to purchase all of Sea-Land's shares (including the shares owned by Simmons) for $28 per share. The Sea-Land board determined to accept CSX's offer, and to cement the deal, Sea-Land granted CSX a "lock up" option under which CSX could purchase up to 6,500,000 authorized-but-unissued Sea-Land shares at $28 per share.

CSX realized that Simmons might well seek to top CSX's $28 bid, and that Simmons, by virtue of their "stock control," could and would thwart any bid that they opposed. Accordingly, CSX decided to offer a "special bonus" to the Simmons defendants, with the knowledge and consent of Sea-Land's directors. A meeting between CSX and Simmons representatives took place on April 22 and 23, 1986, where Simmons agreed that it would not oppose or thwart the CSX's $28- per-share offer, and that it would not make a higher, competing offer. In return, CSX would pay Simmons $33 per share for its Sea-Land stock, and would reimburse $4 million of expenses. That agreement took the form of an option (the "Call Option") whereby CSX would pay Simmons $5 per share for the right to buy all of Simmons' Sea-Land shares for $28 per share, plus the additional $4 million for expenses. The payment of the combined $4 million and $5 per share option price resulted in Simmons receiving a "special bonus" of approximately $50 million above the $28 per share price paid for Simmons' Sea-Land stock.

Having thus "bought off" Simmons, CSX next proceeded to negotiate a two-step transaction with Sea-Land's directors to acquire Sea-Land. The transaction involved a tender offer by CSX to purchase all outstanding Sea-Land shares at $28 per share, to be followed by a "second step" merger at the same $28 per share price (the "merger"). Approximately 93% of Sea-Land's shares were subsequently tendered into the CSX offer, and the merger took place some time thereafter.

Plaintiffs allege that in approving the acquisition agreement with CSX, the Sea-Land board made no effort to object to the $50 million dollar "bonus" paid by CSX to Simmons, or to have that amount pro-rated among all Sea-Land shareholders. Nor (plaintiffs allege) did the board seek to obtain for all shareholders the same $33 per share price that Simmons had received from CSX.

**801 II.
*3 In opposing LLC's motion, the plaintiffs argue that the complaint alleges several cognizable causes of action, any or all of which would suffice to defeat a motion to dismiss. Plaintiffs contend that because of Simmons' position as the owner of 39.5% of Sea-Land's stock, LLC, as a member of the Simmons group, was a fiduciary to Sea-Land and its other stockholders. Plaintiffs further contend that the complaint alleges that LLC committed three actionable violations. The first is that LLC, by seeking and/or accepting the "special bonus" of $50 million from CSX, violated its duty not to use its fiduciary position to obtain a benefit that would not be shared equally by Sea-Land's other shareholders. The second claim is that LLC, by accepting the $50 million, engaged in an illegal "vote buying" transaction. In the alternative, plaintiffs argue that even if LLC was not a fiduciary, it is still liable for having aided and abetted Sea-Land's directors, who

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                      Page 3
1987 WL 11283 (Del.Ch.), 13 Del. J. Corp. L. 795
**(Cite as: 1987 WL 11283 (Del.Ch.), 13 Del. J. Corp. L. 795)**

had violated their independent fiduciary duty to Sea-Land's shareholders by not attempting to secure for them in the merger, the same $33 per share that CSX had previously paid to LLC.

In support of its dismissal motion, LLC first argues that the claims asserted against it are derivative and, as such, cannot be maintained, because the plaintiffs are no longer Sea-Land stockholders and thus lack standing to sue derivatively on Sea-Land's behalf. LLC next contends that as a noncontrolling stockholder, it had no fiduciary obligations to Sea-Land. Finally, LLC contends that even if it were a fiduciary, the complaint alleges no cognizable claims against it, because: (1) LLC was at all times legally free to dispose of its stock at whatever price it could obtain, with no obligation to share any profits with other stockholders, (2) all Sea-Land shareholders were treated uniformly in the merger, since all received the same $28 per share price, (3) as a matter of law the Call Option Agreement was not an illegal vote buying agreement, and (4) the complaint alleges no facts, and raises no inference, that LLC aided and abetted Sea-Land's directors in any wrongdoing that the directors may have committed.

III.

Because they are most readily disposed of, plaintiffs' "vote buying" and "aiding and abetting" claims are first addressed.

**802 Although our case law has not developed an all-inclusive definition of what constitutes "vote buying," this Court has stated that:

Vote buying, despite its negative connotation, is simply a voting agreement supported by consideration personal to the stockholder, whereby the stockholder divorces his discretionary voting power and votes as directed by the offeror.

_Schreiber v. Carney_, Del.Ch., 447 A.2d 17, 23 (1982). Recent decisions indicate that even transactions that fall within the above description will not be considered as invalid _per se_. Rather, their validity will be tested on a case-by-case basis in light of the transaction's object and purpose. _Schreiber_, 447 A.2d at 23, 25; _see Kass v. Eastern Airlines, Inc._, Del.Ch., Civil Action Nos. 8700, 8701, 8711, Allen C. (November 14, 1986), at 9-10. At the oral argument, plaintiffs' counsel conceded that the Call Option agreement was not a "vote buying" transaction within the meaning of _Schreiber v. Carney_. I concur. Therefore, no legally cognizable vote buying claim is stated by the complaint.

*4 As for the claim of aiding and abetting, the law is clear that three elements (exclusive of the element of damage) must be alleged and ultimately established: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, and (3) a knowing participation in that breach by the defendants who are not fiduciaries. _Weinberger v. Rio Grande Industries, Inc._, Del.Ch., 519 A.2d 116, 131 (1986); _Gilbert v. El Paso Co._, Del.Ch. 490 A.2d 1050, 1057 (1984).

Even if it is assumed that Sea-Land's directors were properly charged with having breached a fiduciary duty by failing to negotiate for the same $33 per share price received by LLC, [FN2] no facts are alleged from which it can be inferred that LLC "knowingly participated" in that breach. The complaint alleges only that Sea-Land's directors negotiated the merger with CSX. It does not allege that LLC was involved in those negotiations or that LLC played any role in the Sea-Land directors' decision to accept $28 per share as the merger price. Accordingly, the complaint fails to state a legally cognizable claim against LLC for "aiding and abetting."

**803 The issues posed by plaintiffs' breach of fiduciary duty claims are more complex. As to those claims, the thrust of the complaint is that LLC, by accepting $33 per share in the Call Option transaction, breached a fiduciary duty that it owed to Sea-Land's other stockholders who received only $28 per share in the (subsequent) CSX-Sea-Land merger.

Plaintiffs' fiduciary claim is flawed in two respects. First, it rests upon the premise that LLC was a fiduciary with respect to Sea-Land and its shareholders. But the complaint alleges no facts upon which a fiduciary relationship could be predicated. Under Delaware law a stockholder has fiduciary obligations only if it is a controlling stockholder. A stockholder is not deemed controlling unless it owns a majority of the stock, _Aronson v. Lewis_, Del.Supr., 473 A.2d 805, 815 (1984); _Gilbert v. El Paso Co._, 490 A.2d at 1055; _Kaplan v. Centex Corp._, Del.Ch., 284 A.2d 119, 122-123 (1971), or has exercised actual domination and control in directing the corporation's business affairs. _Gilbert_, 490 A.2d at 1055; _see Kaplan_, 284 A.2d at 122-123.

Despite its conclusory allegations concerning LLC's "stock control," the complaint admits that LLC was not a majority (51%) stockholder, and plaintiffs

Not Reported in A.2d
1987 WL 11283 (Del.Ch.), 13 Del. J. Corp. L. 795
**(Cite as: 1987 WL 11283 (Del.Ch.), 13 Del. J. Corp. L. 795)**

Page 4

admit in their briefs that Simmons did not control the day-to-day affairs of Sea-Land. Plaintiffs contend, nonetheless, that Simmons' 39.5% share interest "gave [Simmons] sufficient leverage to control the fate of the company when it was clear that it would be sold", as well as "the power to make or break any offer to acquire Sea-Land, since no one could have ... tried to buy Sea-Land without their support." (Hecco Plaintiffs' Brief, at 17). Plaintiffs also point to the fact that because of its large holdings, Simmons had been given the right to nominate three directors at the next annual meeting.

*5 Those arguments are not sufficient to carry the day. Even if Simmons had caused its nominees to be elected to the Sea-Land board (an event which never occurred), that fact, without more, does not establish actual domination or control. See *Kaplan v. Centex Corporation,* 284 A.2d at 123. That Simmons had a 40% stock interest might permit the inference that Simmons had the potential ability to frustrate a competing bid. But that circumstance, without more, will not suffice to elevate Simmons' status to that of a controlling stockholder with concomitant fiduciary obligations. As this Court has previously recognized, the *potential* ability to exercise control is not equivalent to the actual *exercise* of that ability. See *Gilbert v. El Paso Co.,* 490 A.2d at 1055-1056. Here no allegation is made that LLC **804 actually took any steps to exert leverage to pressure Sea-Land to accede to a transaction that disadvantaged Sea-Land's other stockholders. Nor does the complaint allege that LLC acted in any other way so as to influence the Sea-Land directors' conduct. (On the contrary, the complaint indicates that the directors had agreed to the $28 per share "lock up option" price before Simmons was approached.) Thus, even allowing plaintiffs the benefit of all reasonable inferences from the pleaded facts, no sufficient basis exists for bestowing (involuntarily) upon Simmons the mantle of a fiduciary.

Plaintiffs' fiduciary claim is flawed for a second reason. Even if the pleaded facts were sufficient to elevate Simmons' status to that of a fiduciary, plaintiffs do not allege any act by Simmons that amounts to a fiduciary violation. The complaint avers that Simmons, with the Sea-Land directors' knowledge and consent, negotiated an agreement with CSX to sell its stock interest in Sea-Land and not to oppose CSX efforts to gain control. In return Simmons received $33 per share, including $4 million for expenses. That conduct, standing alone, is not wrongful. Even if the $33 per share is assumed to have included a premium for their stock, Simmons (including LLC) were free to receive such a premium. See *Manacher v. Reynolds,* Del.Ch., 165 A.2d 741, 751-754 (1960). A controlling stockholder is generally under no duty to refrain from receiving a premium upon the sale of his controlling stock. *Christophides v. Porco,* 289 F.Supp. 403, 405 (S.D.N.Y.1968); 12B *Fletcher Cyc. Corp.* § § 5805, 5805.10, at 135, 139. Under Delaware law, LLC would not have violated a fiduciary duty if it had sold its shares directly to Sea-Land for a premium not available to other stockholders. See, e.g., *Polk v. Good,* Del.Supr., 507 A.2d 531, 537 (1986); *Unocal Corp. v. Mesa Petroleum Co.,* Del.Supr., 493 A.2d 946, 953- 954 (1985). *A fortiori,* LLC was not legally prohibited from selling its stock to CSX, a third party, for whatever price it was able to negotiate.

Plaintiffs do not dispute the foregoing propositions of law. Their contention, made in their briefs and at oral argument, is that LLC and Simmons did more than simply sell their shares for a premium. Plaintiffs contend that CSX, as acquirer, was willing to pay only a finite amount to acquire Sea-Land and that Simmons, knowing this, (i) wrongfully used their leverage as a 39.5% stockholder to extract for themselves, in the Call Option transaction, a disproportionate percentage ($33 per share) of the total amount CSX was willing to pay for the entire company, and (ii) that this was done at the expense of the remaining stockholders, who would necessarily receive a proportionately lower amount ($28 per share) in the merger. Those **805 facts, plaintiffs argue, establish a claim that LLC used its fiduciary position to benefit itself at the expense of its stockholder beneficiaries.

*6 The difficulty with that argument is that even under the liberal standard of "notice" pleading, no such scenario can reasonably be inferred from the complaint. Plaintiffs argue that the evidence developed during preliminary discovery lends support to that theory. They urge that they ought not to suffer dismissal of their complaint simply because their theory may not have been artfully expressed. The short answer is that if plaintiffs believe that there is a valid basis for asserting such a claim, then they should specifically allege it in their complaint. Unless and until that is done, the Court will not speculate upon the legal sufficiency of a claim that has not been alleged.

* * *

To summarize, I find that the facts alleged in the complaint (and the reasonable inferences therefrom)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                            Page 5
1987 WL 11283 (Del.Ch.), 13 Del. J. Corp. L. 795
**(Cite as: 1987 WL 11283 (Del.Ch.), 13 Del. J. Corp. L. 795)**

do not support the plaintiffs' claims that LLC was a fiduciary, or that LLC violated fiduciary duties to Sea-Land's shareholders, or that it aided and abetted a breach of fiduciary duty by Sea-Land's directors. However, in light of plaintiffs' theories as articulated at oral argument and in their briefs, and given plaintiffs' representation that they developed evidence during discovery to support their theories, it is possible that an amended complaint would survive a motion to dismiss. Accordingly, LLC's motion to dismiss is granted, with plaintiffs having leave to amend within 30 days of this Opinion. *Kleinhandler v. Borgia,* Del.Ch., C.A. No. 8334, Berger, V.C., (March 31, 1987).

IT IS SO ORDERED.

> FN1. Mr. Simmons and Amalgamated Sugar have been named as defendants, but have not appeared in the action. The only member of the Simmons group presently before the Court is LLC.

> FN2. Nothing herein is intended as a ruling on the legal sufficiency of the claims alleged against the Sea-Land defendants. No motion has been filed by those defendants, and, therefore, no issue concerning those defendants is presented by LLC's motion.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.