# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                    )
                                          )  Chapter 11
THE IT GROUP, INC., et al.                )  Case No. 02-10118
          Debtors,                        )  Jointly Administered
_____     )
                                          )
IT Litigation Trust,                      )
                                          )
          Plaintiff,                      )
                                          )
     v.                                   )  Civil Action No.: 04-1268 KAJ
                                          )
DANIEL A. D'ANIELLO, FRANCIS J.           )
HARVEY, JAMES C. McGILL, RICHARD          )
W. POGUE, PHILIP B. DOLAN, E.             )
MARTIN GIBSON, ROBERT F.                  )
PUGLIESE, CHARLES W. SCHMIDT,             )
JAMES DAVID WATKINS, ANTHONY J.           )
DeLUCA, HARRY J. SOOSE, THE               )  JURY TRIAL DEMANDED
CARLYLE GROUP, THE CARLYLE                )
GROUP, L.L.C., CARLYLE PARTNERS II,       )
L.P., CARLYLE SBC PARTNERS, II, L.P.,     )
CARLYLE INTERNATIONAL PARTNERS            )
II, L.P., CARLYLE INTERNATIONAL           )
PARTNERS III, L.P., C/S                   )
INTERNATIONAL PARTNERS,                   )
CARLYLE INVESTMENT GROUP, L.P.,           )
CARLYLE-IT INTERNATIONAL                  )
PARTNERS, L.P., CARLYLE-IT                )
INTERNATIONAL PARTNERS II, L.P.,          )
CARLYLE-IT PARTNERS L.P., and T.C.        )
GROUP, L.LC.,                             )
                                          )
          Defendants.                     )

## DEFENDANTS' BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR RECONSIDERATION AND DEFENDANTS' PETITION FOR CERTIFICATION OF ISSUES OF LAW TO THE SUPREME COURT OF DELAWARE

Date:  November 30, 2005

Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: ramos@rlf.com

Thomas L. Patten
Laurie B. Smilan
David A. Becker
LATHAM AND WATKINS, LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Telecopier: (202) 637-2201
E-mail: tom.patten@lw.com

*Attorneys for Defendants Daniel A.
D'Aniello, Francis J. Harvey, James C.
McGill, Richard W. Pogue, Phillip B. Dolan,
E. Martin Gibson, Robert F. Pugliese,
Charles W. Schmidt, James David Watkins,
The Carlyle Group, The Carlyle Group
L.L.C., Carlyle Partners II, L.P., Carlyle
SBC Partners II, L.P., Carlyle International
Partners II, L.P., Carlyle International
Partners III, C/S International Partners,
Carlyle Investment Group, L.P., Carlyle-IT
International Partners, L.P., Carlyle-IT
International Partners II, L.P., Carlyle-IT
Partners L.P. and T.C. Group, L.L.C.*

Ronald S. Gellert (No. 4259)
ECKERT, SEAMANS, CHERIN & MELLOTT,
LLC
The Towne Center
4 East 8th Street, Suite 200
Wilmington, DE 19801
Telephone: (302) 425-0430
Email: rgellert@eckertseamans.com

Mark A. Willard
Paul D. Steinman
F. Timothy Grieco
ECKERT SEAMANS CHERIN & MELLOT,
LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219-2788
Telephone: (412) 566-6000
Telecopier: (412) 566-6099
Email: mwillard@eckertseamans.com

*Attorneys for Defendant, Anthony J.
DeLuca*

2

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS.............................................................................................................i

TABLE OF AUTHORITIES ...............................................................................................iii

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................1

ARGUMENT ..........................................................................................................................2

I.    THE COURT ERRED BY FAILING TO DISMISS PLAINTIFF'S DUTY OF
      CARE AND LOYALTY CLAIMS ON THE GROUNDS THAT PLAINTIFF
      FAILED TO PLEAD SPECIFIC FACTS TO OVERCOME THE BUSINESS
      JUDGMENT RULE'S PRESUMPTION ..........................................................................2

      A.    This Court Is Authorized to Grant a Motion for Reconsideration............................2

      B.    This Court's Decision Sustaining Plaintiffs' Duty of Loyalty Claims
            Should Be Reconsidered Because the Judgments At Issue Were Made
            Before Carlyle Became An Investor or Designated Any Directors........................3

      C.    This Court's Decision, While Following Controlling Third Circuit
            Precedent, Fails, Like That Precedent, To Apply Delaware Substantive
            Law Concerning the Business Judgment Rule.........................................................5

            1.    The Third Circuit's *Tower Air* Decision, Which This Court Was
                  Bound To Follow, Erroneously Fails To Apply Delaware
                  Substantive Law.........................................................................................5

            2.    By Applying *Tower Air,* This Court Erred In Its Holdings
                  Regarding Plaintiff's Fiduciary Duty Claims ...........................................10

                  a.    The Court Should Have Dismissed The Duty Of Loyalty
                        Claims For Failure To Plead Facts Sufficient To Overcome
                        The Business Judgment Rule's Presumption Of Loyalty ..............10

                  b.    Plaintiff's Duty of Care Claims Should Have Been
                        Dismissed For Failure to Plead Sufficient Facts To
                        Overcome the Business Judgment Rule.........................................14

      D.    The Far-Reaching Policy Implications of the *Tower Air* Court's Decision
            Demonstrate the Extent to Which the Business Judgment Rule's Pleading
            Presumptions are Intertwined with the Rule's Substantive Protections ...............15

i

II.   CERTIFICATION IS PROPER BECAUSE THERE IS AN IMPORTANT AND
      URGENT REASON FOR THE DELAWARE SUPREME COURT TO
      ADDRESS THE SCOPE OF THE BUSINESS JUDGMENT RULE'S
      PRESUMPTIONS AFTER *TOWER AIR* ..........................................................................17

      A.   The Delaware Supreme Court has Authorized this Court to Certify
           Questions of Law Where There is a Dispute as to the Proper Interpretation
           of Delaware Substantive Law .................................................................................18

      B.   The *Tower Air* Decision Creates an Important and Urgent Need for the
           Delaware Supreme Court to Resolve Whether the Pleading Requirements
           Accompanying the Business Judgment Rule are Part of the Substantive
           Law of the State of Delaware .................................................................................19

CONCLUSION ...................................................................................................................23

ii

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re 3COM Corp. Shareholders Litigation,*
    C.A. No. 16721, 1999 Del. Ch. LEXIS 215 (Del. Ch. Oct. 25, 1999) ...............................4

*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984) ....................................................................................7, 13

*Blasband v. Rales,*
    971 F.2d 1034 (3d Cir. 1992) ......................................................................................21

*In re Budget Rent A Car Corp. Shareholders Litigation,*
    No. 10,418, 1991 Del. Ch. LEXIS 29 (Del. Ch. Mar. 15, 1991) ........................................12

*Cede & Co. v. Technicolor, Inc.,*
    634 A.2d 345 (Del. 1993) ...........................................................................................12

*CIENA Corp. v. Corvis Corp.,*
    352 F. Supp. 2d 526 (D. Del. 2005) ...............................................................................2

*Citron v. Fairchild Camera & Instrument Corp.,*
    569 A.2d 53 (Del. 1989) .............................................................................................6

*Conley v. Gibson,*
    355 U.S. 41 (1957)....................................................................................................8

*Continuing Creditors' Committee of Star Telecommunications, Inc. v. Edgecomb,*
    385 F. Supp. 2d 449 (D. Del. 2004)...............................................................11, 12, 20, 22

*Crescent/Mach 1 Partners L.P. v. Turner,*
    846 A.2d 963 (Del. Ch. 2000)......................................................................................11

*Erie Railroad v. Tompkins,*
    304 U.S. 64 (1938)....................................................................................................6

*Fiat Motors of North America, Inc. v. Wilmington,*
    619 F. Supp. 29 (D. Del. 1985)................................................................................6, 21

*In re Freeport-McMoran Sulphur, Inc. Shareholders Litigation,*
    No. C.A. 16729, 2001 WL 50203 (Del. Ch. Jan. 11, 2001) .............................................12

*In re General Motors Class E Stock Buyout Sec. Litigation,*
    694 F. Supp. 1119 (D. Del. 1988)..............................................................................7, 20

*In re General Motors Class E Stock Buyout Securities Litigation,*
    790 F. Supp. 77 (D. Del. 1992)..................................................................................6

*In re General Motors (Hughes) Shareholders Litigation,*
    C.A. No. 20269, 2005 Del. Ch. LEXIS 65 (Del. Ch. May 4, 2005)...................................12

*Grobow v. Perot,*
    539 A.2d 180 (Del. 1988) ..................................................................................7

*Kamen v. Kemper Financial Services, Inc.,*
    500 U.S. 90 (1991)..........................................................................................6

*Levine v. Smith,*
    591 A.2d 194 (Del. 1991) ................................................................................20

*Lewis v. Austen,*
    C.A. No. 12937, 1999 WL 378125 (Del. Ch. June 2, 1999) .........................................7, 21

*Litigation Trust of MDIP, Inc. v. Rapoport,*
    No. C.A. 03-779 (GMS), 2004 WL 3101575 (D. Del. Nov. 29, 2004) ...............................22

*Max's Seafood Cafe v. Quinteros,*
    176 F.3d 669 (3d Cir. 1999)...............................................................................2

*McMichael v. U.S. Filter Corp.,*
    Nos. EDCV 99-182VAP (MCX) et al., 2001 WL 418981 (C.D. Cal. Feb. 23,
    2001) .........................................................................................................8

*Moran v. Household International,*
    490 A.2d 1059 (Del. Ch. 1985), *aff'd*, 500 A.2d 1346 (Del. 1985) ...................................12

*Nemours Foundation v. Manganaro Corp.,*
    878 F.2d 98 (3d Cir. 1989).................................................................................18

*Official Committee of Bond Holders of Metricom, Inc. v. Derrickson,*
    No. C 02-04756 JF, 2004 WL 2151336 (N.D. Cal. Feb. 25, 2004)....................................8

*Official Committee of Unsecured Creditors of Color Tile, Inc. v. Investcorp S.A.,*
    No. 97 Civ. 9261 (MGC), 1999 U.S. Dist. LEXIS 14826 (Sept. 24, 1999) ........................9

*Orman v. Cullman,*
    794 A.2d 5 (Del. Ch. 2002)..........................................................................10, 11

*Production Resources Group, L.L.C. v. NCT Group, Inc.,*
    863 A.2d 772 (Del. Ch. 2004).............................................................................16

*Rales v. Blasband*,
    626 A.2d 1364 (Del. 1993) ............................................................................18, 20

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) .........................................................................18, 21, 22

*In re RSL Com Primecall, Inc.*,
    Nos. 01-11457 (ALG) *et al.*, 2003 WL 22989669 (Bankr. S.D.N.Y. Dec. 11,
    2003) ...........................................................................................................................9

*Shaw v. Agri-Mark Inc.*,
    50 F.3d 117 (2d Cir. 1995)....................................................................................22

*Solomon v. Armstrong*,
    747 A.2d 1098 (Del. Ch. 1999)..............................................................................7

*Stanziale v. Nachtomi*,
    No. 01-403 KAJ, 2004 U.S. Dist LEXIS 7375 (D. Del. Apr. 20, 2004) .............22

*Stanziale v. Nachtomi (In re Tower Air, Inc.)*,
    416 F.3d 229 (3d Cir. 2005)..................................................................1, 8, 14, 20

*Steinman v. Levine*,
    C.A. No. 19107, 2002 Del. Ch. LEXIS 132 (Del. Ch. Nov. 27, 2002) .................4

*In re Stoico Restaurant Group, Inc.*,
    No. Civ. A. 00-2109-KHV, 2001 WL 30651 (D. Kan. Jan. 8, 2001)....................9

*Superwire.com, Inc. v. Hampton*,
    805 A.2d 904 (Del. Ch. 2002)................................................................................8

*Timothy v. Our Lady of Mercy Medical Center*,
    No. 03 Civ. 3556(RCC), 2004 WL 503760 (S.D.N.Y. Mar. 12, 2004)................9

*In re Walt Disney Co. Derivative Litigation*,
    731 A.2d 342 (Del. Ch. 1998)..............................................................................12

*In re Walt Disney Co. Derivative Litigation*,
    C.A. No. 15452, 2004 WL 2050138 (Del. Ch. Aug. 9, 2005)...............................3

*In re Western National Corp. Shareholders Litigation*,
    No. 15927, 2000 WL 710192 (Del. Ch. May 22, 2000)......................................13

*Wroblewski v. Washburn*,
    965 F.2d 452 (7th Cir. 1992) .................................................................................9

## STATE CONSTITUTIONAL PROVISIONS AND STATUTES

Del. Const. Art. IV, § 11(a) ...................................................................................................17

8 Del. Code § 144(a)(1) ........................................................................................................4

## OTHER AUTHORITY

Del. Sup. Ct. R. 41 ........................................................................................................17, 18

Del. Sup. Ct. R. 42 ........................................................................................................19, 20

2 MOORE'S FEDERAL PRACTICE § 8.04[8][c] (3d ed. 2005) .................................................9

RODMAN WARD, JR. *et al.*, FOLK ON THE DELAWARE GENERAL CORPORATION LAW
    § 141.2.2.9 (4th ed. 1999 & Supp. 2005)..........................................................................4

## INTRODUCTION AND SUMMARY OF ARGUMENT

This Court's November 15, 2005 Memorandum Opinion and Order sustaining certain of Plaintiff's claims for breach of the duty of loyalty was premised on what this Court appears to acknowledge was a fundamental error in the application of substantive Delaware corporate law. Bound by the Third Circuit's erroneous decision in *Stanziale v. Nachtomi (In re Tower Air, Inc.*), 416 F.3d 229 (3d Cir. 2005) (*"Tower Air"*), this Court was constrained to hold that the Business Judgment Rule's presumption that directors act with due care and loyalty could be overcome by the barest conclusory allegations required under Federal notice pleading requirements. What this Court recognized in reluctantly following *Tower Air*, but the *Tower Air* court failed even to address, is (1) that the Business Judgment Rule and its presumptions are matters of substantive Delaware law, and (2) the heightened pleading standard which plaintiffs must satisfy under Delaware law acts as "an implementation of the substantive presumption of the [B]usiness [J]udgment [R]ule." Memorandum Opinion ("Mem. Op.") at 18 n.10.

This Court can rectify this erroneous result in one of two ways. First, this Court may dismiss the breach of the duty of loyalty claims without regard to the Business Judgment Rule because the judicially-noticeable facts before this Court demonstrate that the business judgments at issue – IT Group's agreement to pay fees and dividends to Carlyle – occurred before Carlyle made its investment and became a fiduciary or designated any directors to the Board. Alternatively, this Court may dismiss for the related reason that these transactions were ratified by the majority of IT Group's stockholders and thus, as a matter of law, cannot provide the basis of liability for breaches of the duty of loyalty or care.

1

Second, this Court can set the law straight beyond the factual confines of this case by certifying to the Delaware Supreme Court the question of whether Delaware's Business Judgment Rule is a matter of substantive law which, as such, this Court would then be bound to apply. As this Court recognized, the failure of the federal courts in this Circuit to implement substantive Delaware corporate law – of which the Business Judgment Rule is a fundamental cornerstone – has such broad ranging legal and policy implications that the issue cries out for certification to the Delaware Supreme Court. With direct authority from the Delaware Supreme Court, this Court would be empowered to apply the heightened scrutiny demanded by the Delaware Business Judgment Rule and dismiss <u>all</u> of Plaintiff's fiduciary duty claims in this case, for failure to meet their burden of pleading specific facts to overcome that rule's presumptions of due care, good faith and loyalty.

## ARGUMENT

I.    **THE COURT ERRED BY FAILING TO DISMISS PLAINTIFF'S DUTY OF CARE AND LOYALTY CLAIMS ON THE GROUNDS THAT PLAINTIFF FAILED TO PLEAD SPECIFIC FACTS TO OVERCOME THE BUSINESS JUDGMENT RULE'S PRESUMPTION**

A.    **This Court Is Authorized to Grant a Motion for Reconsideration**

Pursuant to Delaware Local Rule 7.1.5, the Court may reconsider and modify an opinion "to correct manifest errors of law." *CIENA Corp v Corvis Corp*, 352 F. Supp. 2d 526, 527 (D. Del. 2005) (quoting *Max's Seafood Cafe v Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)) (granting motion for reconsideration where there was a "need to correct a clear error of law or fact to prevent manifest injustice"). In this case, there is a clear error of law – largely forced by the Third Circuit's decision in *Tower Air* – threatening

manifest injustice, and thus requiring reconsideration of this Court's November 15, 2005

Memorandum Opinion.

**B.    This Court's Decision Sustaining Plaintiffs' Duty of Loyalty Claims
Should Be Reconsidered Because the Judgments At Issue Were Made
Before Carlyle Became An Investor or Designated Any Directors**

This Court should reconsider its decision and dismiss Plaintiff's duty of loyalty

claims for the simple reason that the business judgments challenged here (i) were made

prior to Carlyle investing, becoming a fiduciary, and appointing directors, and (ii) were

ratified by IT Group's shareholders. Those business judgments therefore cannot be the

basis of liability as a matter of law. That is because the terms of the Carlyle Defendants'

investments, including the provisions for dividends, consulting fees and the future right to

appoint a majority of the Board were not approved by any of the Defendants as designees

of Carlyle. Instead, they were approved by directors who served on IT Group's Board, as

well as by its shareholders, **before** the Carlyle Defendants ever made their investment,

and thus before they appointed any directors.[1] *See* Reply in Support of the Open. Br.

("Reply") at 4-5; IT Group Proxy Statement dated October 30, 1996 ("10/30/96 Proxy

Statement"), Ex. A to Second Declaration of David A. Becker, Docket Entry No. 61 ("2d

Decl."), at 2-3. This set of facts has two implications. First, such decisions cannot form

the basis of liability for the Carlyle Defendants because the Carlyle Defendants could not

have owed any fiduciary duties at that time. *See, e g., In re Walt Disney Co. Derivative

Litig.*, C.A. No. 15452, 2004 WL 2050138, at *6 (Del. Ch. Aug. 9, 2005) (holding that

Michael Ovitz could not have breached his duty of loyalty in connection with the

---

[1]    Only Defendants DeLuca, Gibson and McGill were on the IT Group Board at the time the
shareholders approved the Carlyle Defendants' investment, and the terms of their dividends and
consulting fees. Further, none were proposed to become Carlyle appointees at the completion of
the investment. *See* 10/30/96 IT Group Proxy Statement, Ex. A to 2d Decl., at 29-30.

employment contract he negotiated with Disney <u>before</u> joining the company, because he was not a fiduciary at the time and owed no duty of loyalty).

Second, Section 144 of the Delaware General Corporation Law provides directors a safe harbor for any such interested transactions with entities with which they have any affiliation where the facts of the relationship and the contract or transaction at issue are disclosed to and authorized by a majority of the disinterested directors, or specifically approved by a vote of the shareholders. 8 Del. Code § 144(a)(1)-(2); *see also* Reply at 5 & n.6. Here, both the dividend payments under the preferred stock arrangement and the Carlyle Defendants' consulting fees were specifically proposed to, and ratified by, the shareholders at the November 1996 shareholder meeting, before the Carlyle Defendants invested.[2] *See* 10/30/96 IT Group Proxy Statement, Ex. A to 2d Decl., at 3-4. As the Delaware courts have held, where a company's stockholders have ratified a transaction that benefits an interested person, it cannot be argued that the transaction constituted a breach of the director's duty of loyalty. *See, e.g., In re 3COM Corp S'holders Litig.*, C.A. No. 16721, 1999 Del. Ch. LEXIS 215, at *10-11 (Del. Ch. Oct. 25, 1999) (shareholder approval of stock option plan precluded challenge to option grants under plan as interested and the decision is protected by the Business Judgment Rule); RODMAN

---

[2]    While the IT Group Board subsequently was required to approve specific dividend payments to the Carlyle Defendants, the terms of the preferred stock demonstrate that the Carlyle Defendants were legally <u>entitled</u> to their dividends. *See* IT Group 10/30/96 Proxy Statement, Exhibit A to 2d Decl., at 21-22 (stating that the preferred stock dividend accumulates annually and accrues if not paid). As the Delaware courts have recognized, directors cannot be considered interested simply by virtue of causing a company to make payments on a legal obligation. *See, e.g., Steinman v. Levine*, C.A. No. 19107, 2002 Del. Ch. LEXIS 132, at *43-44 (Del. Ch. Nov. 27, 2002) (dismissing duty of loyalty claim alleging "that paying money legally owed was detrimental to stockholders because it transferred capital from" the company to significant stakeholders, noting "[a]nytime a corporation pays a legal obligation... it may be argued that it decreases the value of stockholders' equity. Without more, there cannot be a cause of action for such a payment.").

4

WARD, JR. *et al.*, FOLK ON THE DELAWARE GENERAL CORPORATION LAW § 141.2.2.9 (4th
ed. 1999 & Supp. 2005) (even in a case where a director is shown to be interested or to
lack independence, stockholder ratification changes the standard of review from "entire
fairness" to business judgment, with plaintiffs having the burden of proof).

  In sum, the judicially-noticeable facts before the Court affirmatively demonstrate
that the challenged transactions in question were ratified by IT Group's Board and its
shareholders before the Carlyle Defendants' investment and designation of directors. For
this reason alone, Plaintiff's duty of loyalty claims should have been dismissed.

  **C.**  **This Court's Decision, While Following Controlling Third Circuit
Precedent, Fails, Like That Precedent, To Apply Delaware
Substantive Law Concerning the Business Judgment Rule**

  All of plaintiffs' breach of fiduciary duty claims should also have been dismissed
because this Court, constrained by *Tower Air*'s erroneous decision, failed to apply the
heightened pleading standards dictated by Delaware substantive law as reflected in its
Business Judgment Rule. Accordingly, the Court should reconsider its decision and
dismiss the fiduciary duty claims on this additional basis. Alternatively, this Court
should certify for resolution to the Delaware Supreme Court the question of whether the
Business Judgment Rule is a matter of procedural law (as the *Tower Air* court
misperceived) or substantive law (as the decisions of most Federal courts and the
Delaware courts seem to hold).

  **1.**  **The Third Circuit's *Tower Air* Decision, Which This Court
Was Bound To Follow, Erroneously Fails To Apply Delaware
Substantive Law**

  It is well-settled that when a federal court is faced with a conflict between state
and federal law, it must apply federal procedural law and "the substantive law of the
appropriate state jurisdiction as expressed in that state's statutes and the decisions of its

state's highest court." *Fiat Motors of N. Am., Inc. v. Wilmington*, 619 F. Supp. 29, 32 (D.

Del. 1985) (citing *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938)). Indeed, following

U.S. Supreme Court precedent, this Court has held in the context of shareholder demand

cases that "the federal pleading requirements . . . which dictate when and how facts must

be alleged, must be read in conjunction with state substantive law, which controls what

facts must be alleged." *In re General Motors Class E Stock Buyout Sec. Litig.*, 790 F.

Supp. 77, 80 (D. Del. 1992) (holding in demand refusal context that Federal Rules of

Civil Procedure 12(b)(6) and 23.1 must be read in conjunction with Delaware's

substantive business judgment presumption and accompanying requirements of factual

specificity), *following Kamen v. Kemper Fin. Svcs., Inc.*, 500 U.S. 90 (1991).

Accordingly, the presumptions and protections of the Business Judgment Rule – which ,

as shown below, and as this Court recognized, are an inherent and essential part of

Delaware's substantive law – should govern. *See* Mem. Op. at 17 n.10.

The *Tower Air* decision, and the Court's decision in this case following it, are

inconsistent with Delaware substantive law. As this Court correctly explained, the

Delaware Business Judgment Rule – a presumption that applies <u>at the pleading stage</u> – is

"a matter of <u>substantive</u> corporate law." Mem. Op. at 17 n.10 (emphasis added); *id.* at 19

n.10; *see also Citron v. Fairchild Camera & Instrument Corp.*, 569 A.2d 53, 64 (Del.

1989) ("The [business judgment] rule operates as both a procedural guide for litigants

and a substantive rule of law.").[3] Under Delaware's Business Judgment Rule, directors

are presumed to act "on an informed basis, in good faith, and in the honest belief that the

---

[3]    As the Court further correctly observed, the Business Judgment Rule's presumption is
meant to implement Delaware's substantive policy decision that Boards should be encouraged to
make risky decisions and judgments believed to be in the Company's best interest without fear of
being second-guessed by Courts and shareholders in hindsight. Mem. Op. at 17-18 n.10.

action taken was in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984). This presumption is a hurdle that <u>plaintiffs</u> bear the burden of surmounting: "[u]nder the business judgment rule, <u>the burden of pleading and proof is on the party challenging the decision to allege facts to rebut the presumption…</u> includ[ing] allegations that the board (in whole or in part) breached one or both of the duties of care and loyalty…" *Solomon v. Armstrong*, 747 A.2d 1098, 1111-12 (Del. Ch. 1999) (emphasis added).

As this Court also recognized, the heightened pleading requirements necessary to overcome the Business Judgment Rule's presumption are not a mere "procedural peccadillo," but instead are "fundamental to Delaware corporate law" because they "shape the substance of fiduciary duty claims by enforcing the business judgment rule." Mem. Op. at 18. Thus, most federal courts, like the Delaware courts, hold that in order to effectuate the Business Judgment Rule's substantive protections, a plaintiff must satisfy his burden of alleging "well-pleaded facts" with sufficient factual specificity to overcome its presumptions. Mem. Op. at 18 n.10 (citing *In re General Motors Class E Stock Buyout Sec. Litig.*, 694 F. Supp. 1119, 1132 (D. Del. 1988) (citing *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988))); *see also Lewis v. Austen*, C.A. No. 12937, 1999 WL 378125, at *4 (Del. Ch. June 2, 1999) (self-dealing claim dismissed under Rule 12(b)(6) because the plaintiff failed to "rebut [the Business Judgment Rule] presumption…with <u>specific, nonconclusory factual allegations</u>") (emphasis added). The application of notice pleading standards, as the *Tower Air* decision requires, vitiates the Business Judgment Rule's presumptions, which by their very nature cannot be overcome by conclusory

7

pleading.[4] *See Tower Air*, 416 F.3d at 237 (requiring use of federal notice pleading standards).

Because Delaware substantive law here requires pleading of specific facts to overcome the Business Judgment Rule's presumption, the Court's failure to apply those heightened standards was error. Although the Third Circuit in *Tower Air* invoked traditional Rule 8 and Rule 12(b)(6) standards[5], most federal courts, like the Delaware courts, recognize that the application of a heightened Business Judgment Rule pleading standard, requires allegation of specific facts to overcome the Rule's presumption. *See, e.g., Official Comm. of Bond Holders of Metricom, Inc. v. Derrickson*, No. C 02-04756 JF, 2004 WL 2151336 (N.D. Cal. Feb. 25, 2004) (granting a motion to dismiss creditors' duty of loyalty claims where creditors failed to plead specific facts sufficient to overcome the Delaware Business Judgment Rule's presumption); *McMichael v. U.S. Filter Corp.*, Nos. EDCV 99-182VAP (MCX) *et al.*, 2001 WL 418981 (C.D. Cal. Feb. 23, 2001) (granting motion to dismiss where the Delaware Business Judgment Rule was not

---

[4]     Indeed, the *Tower Air* court seemed to believe that Delaware cases applying the Business Judgment Rule simply reflect a higher overall standard for "notice pleading" under Chancery Rule 8 than Federal Rule 8. 416 F.3d at 236-37. That misconstrues Delaware law. Delaware courts outside the Business Judgment Rule context apply Chancery Rule 8 notice pleading standards similar to those in Federal court, holding that, as under Federal Rule 8, "it is sufficient under the general notice pleading standard found in Chancery Rule 8(a) that the complaint 'contain ... a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Superwire.com, Inc. v. Hampton*, 805 A.2d 904, 912-13 (Del. Ch. 2002) (denying motion to dismiss because complaint sufficiently alleged bare elements of statutory requirement for plaintiffs' claim). Thus, contrary to the Third Circuit's assertion, Delaware's requirement that plaintiffs must plead specific facts to overcome the Business Judgment Rule's presumption of good faith and loyalty does not reflect a general decision by Delaware that plaintiffs must plead with specificity, but rather a recognition that such specific pleading is required to enforce the Business Judgment Rule.

[5]     The *Tower Air* court held that it would consider the pleading adequate "[u]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim[s] which would entitle him to relief." 416 F.3d at 239 (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

rebutted with specific factual allegations); *In re Stoico Restaurant Group, Inc*, No. Civ.

A. 00-2109-KHV, 2001 WL 30651, at *3-4 (D. Kan. Jan. 8, 2001) (granting motion to

dismiss where Delaware's Business Judgment Rule was not rebutted, but then denying

the renewed motion to dismiss after the plaintiff amended the complaint to add sufficient

facts to show a conflict of interest).[6]

Moreover, in other contexts, the courts have recognized that when a presumption

imposing a heightened pleading requirement is part of the protections of the applicable

substantive law, as in the case of the Business Judgment Rule, the plaintiff must meet that

burden <u>at the pleading stage</u>. *See, e.g.*, 2 MOORE'S FEDERAL PRACTICE § 8.04[8][c] (3d

ed. 2005) ("State statutory modifications of pleading requirements for state law claims in

federal courts are possible under the *Erie* doctrine when federal courts deem special state

pleading requirements to be substantive."); *Wroblewski v. Washburn*, 965 F.2d 452, 459-

60 (7th Cir. 1992) (holding that because "the rational basis standard is [a] <u>substantive</u>

<u>burden</u>[,]" at the 12(b)(6) stage, "a plaintiff must allege <u>facts</u> sufficient to overcome the

presumption of rationality that applies to government classifications") (emphasis added);

*Timothy v. Our Lady of Mercy Med. Ctr.*, No. 03 Civ. 3556(RCC), 2004 WL 503760, at

*6-7 (S.D.N.Y. Mar. 12, 2004) (rejecting plaintiff's argument that complaint need only

provide "fair notice" of retaliation claim as adverse to purpose of Title VII, and

dismissing claim because plaintiff failed to plead required <u>facts</u> to support claim).

---

[6]    *See also In re RSL Com Primecall, Inc*, Nos. 01-11457 (ALG) *et al.*, 2003 WL 22989669
(Bankr. S.D.N.Y. Dec. 11, 2003) (holding plaintiff failed to allege specific facts to overcome the
presumption of the Delaware Business Judgment Rule, but allowing one claim to proceed where
directoral self-interest was adequately alleged); *Official Comm. of Unsecured Creditors of Color
Tile, Inc v. Investcorp S.A.*, No. 97 Civ. 9261 (MGC), 1999 U.S. Dist. LEXIS 14826, at *14-18
(Sept. 24, 1999) (dismissing creditors committee's duty of loyalty claims against directors
because factual allegations regarding director independence were insufficient to overcome
Business Judgment Rule presumption).

In sum, Delaware substantive law requires an examination of whether the Complaint alleges factual specifics sufficient to overcome the Business Judgment Rule's presumption that IT Group's directors were informed, and acting loyally and in good faith. In applying notice pleading standards, as this Court recognized, the *Tower Air* Court improperly "weaken[ed] a substantive presumption." Mem. Op. at 18-19 n.10. This Court was unwillingly forced to compound the *Tower Air* court's error given "the lack of Delaware authority directly stating that the *Tower Air* approach contravenes Delaware law." *Id.* at 20 n.10.

### 2. By Applying *Tower Air,* This Court Erred In Its Holdings Regarding Plaintiff's Fiduciary Duty Claims

As a result of the Third Circuit's misapplication of Delaware law in *Tower Air*, this Court's analysis of Plaintiff's fiduciary duty claims reflects several errors. Specifically, the Court was forced to misapply the Business Judgment Rule in analyzing both Plaintiff's duty of loyalty claims, which it sustained, and the duty of care claims, which it nevertheless dismissed.

#### a. The Court Should Have Dismissed The Duty Of Loyalty Claims For Failure To Plead Facts Sufficient To Overcome The Business Judgment Rule's Presumption Of Loyalty

Plaintiff's duty of loyalty claims, which this Court sustained, should have also been dismissed under a proper application of the Delaware Business Judgment Rule. "[T]he business judgment rule presumption [is] that a board acted loyally." *Orman v. Cullman,* 794 A.2d 5, 22 (Del. Ch. 2002). This presumption of "loyalty" and "disinterestedness" operates to preclude duty of loyalty claims at the motion to dismiss phase in the absence of specific, well-pleaded facts demonstrating that (1) the defendants' alleged "interest" was material and disabling, and (2) the defendants' lack of

independence was not merely hypothetical but resulted from actual domination or control. As this Court correctly held in *Continuing Creditors' Committee of Star Telecommunications, Inc. v. Edgecomb,* 385 F. Supp.2d 449, 460 (D. Del. 2004) ("*Star*"), "[t]o allege a breach of the duty of loyalty . . . the Plaintiff must plead facts demonstrating that a majority of a board that approved the transaction in dispute was interested and/or lacked independence," *i.e.,* "that the director was on both sides of a transaction or received a benefit not received by the shareholders." (Internal citation omitted.); *see also Orman,* 794 A.2d at 22 ("[t]o rebut successfully business judgment presumptions [that board members acted loyally], a plaintiff must normally plead <u>facts</u> demonstrating…[that] director defendants have a financial interest in the transaction or were dominated or controlled by a materially interested director'") (emphasis added), citing *Crescent/Mach 1 Partners L.P. v. Turner,* 846 A.2d 963, 984 (Del. Ch. 2000) (holding that "[u]nless this presumption [that a board acted loyally] is sufficiently rebutted, I must defer to the discretion of the board and acknowledge that their decisions are entitled to the protection of the business judgment rule," and finding "plaintiffs' allegations of self-interest and dominance . . . inadequately pleaded").

Here, as the Court recognized, there are only two categories of allegations that even potentially implicate any duty of loyalty: (1) that Defendants "artificially extended the life of the company" so the Carlyle Defendants could recoup their investment; and (2) that the Director Defendants authorized payments to the Carlyle Defendants.[7] Mem. Op. at 15-16. However, the mere fact that the Carlyle Defendants received dividends and

---

[7]    The Court dismissed fiduciary duty claims premised on payments received by the Director Defendants, noting that "the board is not alleged to have made any decision or acted in any way concerning those payments." Mem. Op. at 20.

consulting fees – the only allegation supporting "interest" here – has consistently been held insufficient by Delaware courts to give rise to any inference of a breach of the duty of loyalty absent a showing that the payment was material to the recipient. Here, there is no such showing. *See, e.g., In re General Motors (Hughes) S'holders Litig.*, C.A. No. 20269, 2005 Del. Ch. LEXIS 65, at *38 (Del. Ch. May 4, 2005) (refusing to find that GM-affiliated directors' decision to issue a $275 million "special dividend" to GM, the company's sole shareholder, rendered the GM directors "interested," as this amount was not shown to be "material," and therefore "does not suggest it was probable that an overriding personal interest was influencing the . . . directors"); *In re Budget Rent A Car Corp. S'holders Litig.*, No. 10,418, 1991 Del. Ch. LEXIS 29, at *12 (Del. Ch. Mar. 15, 1991) (payment of $550,000 in consulting fees to controlling shareholder did not demonstrate interest; controlling shareholder's equity investment showed "there can be no question but that [its] interest was in obtaining the highest possible price for its stock, not in obtaining a short term consulting agreement."); *In re Walt Disney Co. Derivative Litig.*, 731 A.2d 342, 360 (Del. Ch. 1998) (director not shown to be interested where consulting fees not shown to be material); *In re Freeport-McMoran Sulphur, Inc. S'holders Litig.*, No. C.A. 16729, 2001 WL 50203 (Del. Ch. Jan. 11, 2001) (same).[8] Moreover, as this Court held in *Star*, "[i]t is obvious . . . that showing a director lacks independence because of a subservient relationship to an interested person depends in the first instance on showing that the supposedly dominating person actually is interested in the transaction in question." *Star*, 385 F. Supp. 2d at 462.

---

[8]    *See also Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 364 (Del. 1993) (director "self-interest" must be shown to be material to be shown to be disabling); *Moran v. Household Int'l*, 490 A.2d 1059, 1074 (Del. Ch. 1985), *aff'd*, 500 A.2d 1346 (Del. 1985) (fact that directors receive fees for their services does not demonstrate that they have acted disloyally).

As this Court correctly observed, here there are no well-pleaded <u>facts</u> to support Plaintiff's "conclusory allegations of control" which the Court "seriously doubt[ed]…would survive a 12(b)(6) motion in the Delaware Court of Chancery..." *See* Mem. Opp. at 16. Indeed, the sole supporting factual allegation – *i.e.,* that the Carlyle Defendants had the right to appoint a majority of IT Group's Board (a right not exercised after May 1999)[9] – does not suffice to establish that any Director Defendant was "beholden to" the Carlyle Defendants. As the Delaware courts have long held, the "shorthand shibboleth of 'dominated and controlled directors'" offered here is "insufficient" to establish that the Director Defendants were controlled and lacked independence, even where a majority stockholder exists and has the ability to elect all the directors. *Aronson*, 473 A.2d at 816. To the contrary, as the *Aronson* court remarked and this Court acknowledged, "[t]hat is the usual way a person becomes a corporate director." Mem. Opp. at 16 (citing *Aronson,* 473 A.2d at 816); *see also In re Western Nat'l Corp. S'holders Litig.,* No. 15927, 2000 WL 710192, at *1, 11-17 (Del. Ch. May 22, 2000) (dismissing complaint where "[t]he fact that . . . a large shareholder played some role in the nomination process" was insufficient to support the notion that [defendant] dominated or "exercised actual control over the Company's business and affairs").

Moreover, in any event, the Board's actions as IT Group's financial condition began to deteriorate – its <u>suspension</u> of the Carlyle Defendants' preferred stock dividends in November 2001, and <u>rescission</u> of two prior dividend payments – plainly demonstrate

---

[9]    *See* Defendants Brief in Support of Motion to Dismiss For Failure To State A Claim ("Open. Br.") at 9 n.3

that the Board was not dominated or controlled by the Carlyle Defendants. *See* IT Group 8-K dated November 30, 2001 and attached Press Release, Ex. B to 2d Decl.[10]

In sum, Plaintiff's duty of loyalty claims allege no facts sufficient to overcome the Business Judgment Rule's presumption. For this reason, Defendants respectfully submit that these claims should have been dismissed.

### b. Plaintiff's Duty of Care Claims Should Have Been Dismissed For Failure to Plead Sufficient Facts To Overcome the Business Judgment Rule

While the Court dismissed Plaintiff's duty of care claims, it declined to do so on the basis that Plaintiff failed to allege sufficient facts to overcome the Business Judgment Rule's substantive protections. Instead, the Court dismissed Plaintiff's claims premised on "poor decision-making about the Roll-Up acquisitions" because the Complaint affirmatively pled "self-defeating" facts demonstrating on the face of the pleading that the acquisition strategy "had a legitimate business purpose" – allegations that, if accepted as true, themselves showed that the challenged business decisions were protected by the Business Judgment Rule. Mem. Op. at 26-27, citing *Tower Air,* 416 F.3d at 239 (holding allegations "self-defeating" because complaint on its face alleged facts showing that the challenged conduct, the board's decision to order new jet engines instead of repairing old ones, could have been for a "legitimate business purpose"). Second, the Court dismissed the claims for breach of the duty of care against IT Group's former directors on the basis

---

[10]    Moreover, Plaintiff's suggestion that the Carlyle Defendants did not provide services to justify their consulting fees is without factual support. The proposal approved by the shareholders before the Carlyle Defendants invested acknowledges that the Carlyle Defendants brought significant experience and expertise to the table. *See* 10/30/96 Proxy Statement, Ex. A to 2d Decl., at 10 (citing Carlyle Defendants' expertise in capital markets, government contracting and regulations, and acquisitions and strategic alliances as reasons justifying approval of Carlyle Defendants investment, including terms of the fees and preferred stock and the consulting (i.e., "financial advisory") fees).

14

that they were precluded by the exculpatory provisions of 8 Del. Code § 102(b)(7).

Mem. Op. at 24. While these results are correct and consistent with both *Tower Air* and

the requirements of Delaware law, the Court should have <u>also</u> applied the proper

substantive standard, required Plaintiff to plead particularized facts affirmatively

rebutting the Business Judgment Rule's presumption, and dismissed on the ground that

Plaintiff failed to do so.

> **D.    The Far-Reaching Policy Implications of the *Tower Air* Court's Decision Demonstrate the Extent to Which the Business Judgment Rule's Pleading Presumptions are Intertwined with the Rule's Substantive Protections**

In addition to pointing out the error, as a matter of law, of the *Tower Air* court's

conclusion that the Business Judgment Rule was procedural and not substantive, this

Court carefully delineated the deleterious policy implications of the Third Circuit's

decision as well.

First, the Court noted that *Tower Air* creates perverse pleading incentives – it not

only "make[s] particularized pleading unnecessary; it actively penalizes it and, instead,

rewards obscurity" by encouraging plaintiffs to make "deliberately obtuse allegations."

Mem. Op. at 19 n.10. This is because *Tower Air* allows a plaintiff to survive dismissal

even if his or her complaint fails to plead <u>any</u> facts that overcome the Business Judgment

Rule's presumption, so long as the plaintiff takes care not to mention the Business

Judgment Rule, or facts which suggest its applicability (*e.g.*, a possible legitimate

business purpose) in his pleading. *Id.* As this Court correctly noted, the *Tower Air* rule

thus gives plaintiffs "a powerful and perverse incentive to 'dummy-up' about the obvious

implications of the business judgment rule when drafting their complaints in the first

instance [because a]ny plaintiff unwise enough to actually allude to the rule 'must plead

that he overcomes the presumption created by that rule.'" Mem. Op. at 19 n.10. As the Court observed, such an outcome "truly bears scant resemblance to the operation of the Business Judgment Rule in Delaware courts, " which instead requires that specific facts overcoming the presumption be plead *ab initio* in order to satisfy plaintiffs' burden in stating a claim. *Id.*

Second, the Third Circuit's decision holds plaintiffs lucky enough to find a way into federal court – such as those alleging corporate malfeasance against officers and directors of an insolvent company[11] – to a substantially <u>lower</u> pleading burden than if the suit were brought in the standard derivative context. In so doing, it "expand[s] the risk of directors and officers simply because a corporation is insolvent." *Id.* As this Court observed, "the Delaware Chancery Court has rightly noted [that] '[i]t would be puzzling if, in insolvency, the equitable law of corporations expand[ed] the rights of firms to recover against their directors so to better protect creditors, who, unlike shareholders, typically have the opportunity to bargain and contract for additional protections to secure their positions.'" *Id.* (quoting *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 794 (Del. Ch. 2004)).

Finally, because *Tower Air* dramatically weakens the Business Judgment Rule's substantive protections in Federal court, the Federal courts will necessarily provide a more attractive venue for plaintiffs bringing fiduciary duty claims. As this Court noted, "[t]he outcome of an application of Delaware corporate law ought not turn on whether one is appearing in the Delaware Court of Chancery or a federal district court." Mem. Op. at 19 n.10.

---

[11]   Such are the sad circumstances of the Defendants in this case and those in *Tower Air.*

&ast;   &ast;   &ast;

In sum, reconsideration here is warranted because there is a need to (1) correct this Court's analysis of the duty of care claims, and (2) amend its decision to dismiss the duty of loyalty claims. The application of the proper Delaware substantive law standard compels their dismissal. Defendants respectfully suggest that the Court may correct this error by granting reconsideration, certifying the question of whether the Business Judgment Rule's presumption is a substantive rule of law abrogated by *Tower Air* to the Delaware Supreme Court, and thereby obtain the necessary authority to reach the outcome it acknowledges federal and state law require. Defendants also respectfully request that the Court apply the Business Judgment Rule's presumption to Plaintiff's duty of care and loyalty claims and, on that basis, dismiss such claims for failing to plead the requisite particular facts necessary to overcome the Rule's protections. Further, Defendants request that the Court amend its decision to dismiss Plaintiff's duty of loyalty claims on the additional ground that those claims were based on decisions that were made by the IT Group Board before the Carlyle Defendants ever invested or appointed any board member, and that were approved by the Company's shareholders.

## II.    CERTIFICATION IS PROPER BECAUSE THERE IS AN IMPORTANT AND URGENT REASON FOR THE DELAWARE SUPREME COURT TO ADDRESS THE SCOPE OF THE BUSINESS JUDGMENT RULE'S PRESUMPTIONS AFTER *TOWER AIR*

If this Court concludes reconsideration is appropriate, pursuant to Del. Sup. Ct. Rule 41 and Del. Const. Art. IV, § 11(a), Defendants also petition this Court to certify the following questions to the Delaware Supreme Court:

1.  Is the requirement that a plaintiff alleging a breach of fiduciary duty plead specific facts sufficient to overcome the presumptions of the Business Judgment Rule a requirement of Delaware's substantive law?

17

2. Does the holding in *Tower Air* that a plaintiff must only satisfy federal notice pleading requirements with respect to fiduciary duty claims conflict with the business judgment rule's requirement that a plaintiff plead specific facts sufficient to overcome that rule's presumption that the defendant directors acted loyally and with due care?

For the reasons set forth below, there are important and urgent reasons requiring the Delaware Supreme Court to resolve these unsettled questions of law.

### A.    The Delaware Supreme Court has Authorized this Court to Certify Questions of Law Where There is a Dispute as to the Proper Interpretation of Delaware Substantive Law

Del. Sup. Ct. Rule 41 delineates the parameters for the certification process.

Under Rule 41, this Court may, on motion or *sua sponte*, certify to the Delaware Supreme Court for decision a question of law arising in any case before it prior to the entry of final judgment if (1) there is an important and urgent reason for an immediate determination of such question by the Delaware Supreme Court and (2) the certifying court has not finally decided the question in the case. Del. Sup. Ct. Rule 41(a)(ii). *See also Rales v. Blasband ("Rales II")*, 634 A.2d 927, 930 (Del. 1993) (deciding question regarding excuse of demand under Delaware law certified by the District Court for the District of Delaware). If in the exercise of its discretion, the Court decides certification is appropriate, it may certify the question(s) to the Delaware Supreme Court by completing Official Form K (a copy of which is appended hereto), and "stat[ing] with particularity the important and urgent reason[] for an immediate determination by [the Delaware Supreme Court]." *Id.*[12]

---

[12]    The issue of whether certification is appropriate is discretionary both with the certifying court and with the Delaware Supreme Court. *Rales v. Blasband ("Rales I")*, 626 A.2d 1364, 1366 (Del. 1993). This Court's decision to grant certification is not subject to interlocutory review by the Third Circuit. *Nemours Found. v. Manganaro Corp.*, 878 F.2d 98 (3d Cir. 1989).

In deciding whether to accept certification, pursuant to Del. Sup. Ct. Rule 42(b), the Delaware Supreme Court will consider, among other things whether (1) the question of law is of the first instance in Delaware; (2) the decisions of the trial courts are conflicting upon the question of law; or (3) the question of law relates to the constitutionality, construction or application of a Delaware statute which has not been, but should be, settled by the Delaware Supreme Court. *See id* at 42(b)(i)-(iii) (noting that these reasons are only illustrative and do not limit the Delaware Supreme Court's discretion in deciding whether to accept certification).

**B.    The *Tower Air* Decision Creates an Important and Urgent Need for the Delaware Supreme Court to Resolve Whether the Pleading Requirements Accompanying the Business Judgment Rule are Part of the Substantive Law of the State of Delaware**

For three reasons, this Court should grant certification to address an unresolved question concerning the enforcement of the Business Judgment Rule, a central and fundamental tenet of Delaware corporate law, in the federal courts. First, as this Court's well-reasoned opinion suggests, *Tower Air*'s application of Federal notice pleading standards to claims for breaches of fiduciary duty causes significant confusion with respect to whether Delaware's requirement that plaintiffs plead specific facts to overcome the presumptions of the Business Judgment Rule is a rule of substantive or procedural law. This confusion is not elucidated by any clear statement by the Delaware courts. *See* Mem. Op. at 20 n.10 ("I am uncomfortable changing the scope of Delaware fiduciary duty claims by weakening a substantive presumption, but, given the ruling in *Tower Air* and the lack of any Delaware authority directly stating that the *Tower Air* approach contravenes Delaware law, I must yield to the Third Circuit's interpretation.").

Prior to *Tower Air*, Federal courts addressing claims for breach of fiduciary duty under Delaware law assumed that the requirement that a plaintiff must plead with sufficient factual specificity to overcome the Business Judgment Rule was a rule of substantive Delaware law. *See Star*, 385 F. Supp. 2d at 459 ("[E]ven if Plaintiff is not required to plead 'particularized facts' to raise 'a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment[,]'it must still plead facts from which such an inference can be drawn.") (quoting *Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991)); *General Motors*, 694 F. Supp. at 1135 (dismissing class claim for breach of fiduciary duty for failure to plead facts to overcome the Business Judgment Rule's presumption).[13]  In stark contrast, *Tower Air* incorrectly assumed that Delaware Rule 8 – not the substantive protections of the Business Judgment Rule itself – was the impetus for Delaware's requirement that a plaintiff plead with sufficient factual specificity to overcome the business judgment rule's presumption.  416 F.3d at 236-37 (Noting that "Chancery Rule 8['s] specificity requirements [are more stringent than and] bear scant resemblance to the federal species [of notice pleading].").  Because the holdings of the Third Circuit in *Tower Air* and of the Delaware courts are squarely at odds, certification is needed to resolve whether the basis for Delaware's requirement that plaintiffs plead with sufficient factual specificity to overcome the Business Judgment Rule's presumption is a function of the state's procedural rules or its substantive law.  *See* Del. Sup. Ct. R. 42(b)(i)-(iii).  *See also Rales I*, 626 A.2d at 1366 (certifying question that

---

[13]    As noted above, federal courts in other Circuits applying Delaware law have similarly applied a heightened pleading standard under the Delaware Business Judgment Rule. *See supra* at 5 n.4.

"involve[e]d the corporation law of the State of Delaware" and where "[t]he issue presented is apparently one of first impression").[14]

Second, "[c]ertification is unquestionably appropriate when," as set forth in Section I.C *supra*, "resolution of the particular questions of law presented will have a broad impact on state policy." *See Fiat Motors*, 619 F. Supp. at 31. Delaware has made a decision to apply the Business Judgment Rule to shield directors and officers from suit or second-guessing by the Courts where the plaintiff does not plead specific facts showing that their conduct was the result of bad faith or self-dealing. *See, e.g., Lewis v. Austen*, 1999 WL 378125, at *4 (dismissing duty of loyalty claim for lack of "specific, nonconclusory factual allegations" to overcome the Business Judgment Rule). By substantially "weakening [that] substantive presumption," Mem. Op. at 20 n.10, the Third Circuit's opinion effects a fundamental sea change in that policy without considering how Delaware would rule on the question at bar. Certification provides the Delaware Supreme Court with an opportunity to address these issues.

Third, there also is an important and urgent need for the Delaware Supreme Court to resolve this question at this time because this question is likely to recur. *See Fiat Motors*, 619 F. Supp. at 34 (addressing certification prior to the enactment of Del. Sup. Ct. R. 41, but noting that "the likely recurrence of a question of law" is a factor to consider in determining whether certification is appropriate). Indeed, this Court alone has decided four cases in the last two years that turn on the pleading standard to be

---

[14]     In evaluating the need for certification, the Delaware Supreme Court's opinion in *Rales* is particularly instructive. In *Rales*, this Court certified to the Delaware Supreme Court a question concerning what a plaintiff must plead to state a cause of action which the Third Circuit described as a "first cousin to a double derivative suit." *Blasband v. Rales*, 971 F.2d 1034, 1046 (3d Cir. 1992). The Delaware Supreme Court accepted certification and articulated the requirements under the "substantive law" of the State of Delaware for excusing demand in the context presented. *Rales II*, 634 A.2d at 937.

applied in cases implicating the Business Judgment Rule. *See Stanziale v. Nachtomi*, No. 01-403 KAJ, 2004 U.S. Dist LEXIS 7375 (D. Del. Apr. 20, 2004); *Litig. Trust of MDIP, Inc. v. Rapoport*, No. C.A. 03-779 (GMS), 2004 WL 3101575 (D. Del. Nov. 29, 2004); *Star*, 385 F. Supp. 2d 449 (Dec. 21, 2004); Mem. Op. (Nov. 15, 2005). That this Court was then faced with this issue again in this case, just a few months after the Third Circuit decided *Tower Air*, demonstrates the issue is recurring, and will likely recur in other jurisdictions as well. *Cf Shaw v. Agri-Mark Inc.*, 50 F.3d 117, 120 (2d Cir. 1995) (certifying question involving substance of Delaware corporate law to the Delaware Supreme Court where "the answers to these important questions of law will guide other courts seeking to apply Delaware law to Delaware corporations…").

Finally, certification is also appropriate because Delaware Supreme Court Rule 41's remaining requirements are satisfied here. Since this is a certification from a motion to dismiss, the question is purely one of law, and the facts are not in dispute. Likewise, because this Court would be certifying the question in conjunction with a decision to grant a motion for reconsideration, the certifying court has not conclusively decided the question in the case. *See Rales II*, 634 A.2d at 931 (explaining that a certifying court decides an issue for the purposes of Delaware Supreme Court Rule 41 when the court's opinion can be said to be the law of the case).

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court (1) grant Defendants' Motion for Reconsideration and (2) certify the following questions to the Delaware Supreme Court:

1.  Is the requirement that a plaintiff alleging a breach of fiduciary duty plead specific facts sufficient to overcome the presumptions of the Business Judgment Rule a requirement of Delaware's substantive law?

2.  Does the holding in *Tower Air* that a plaintiff must only satisfy federal notice pleading requirements with respect to fiduciary duty claims conflict with the business judgment rule's requirement that a plaintiff plead specific facts sufficient to overcome that rule's presumption that the defendant directors acted loyally and with due care?

Dated:  November 30, 2005

Respectfully submitted,

/s/ Marcos A. Ramos
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  ramos@rlf.com

Thomas L. Patten
Laurie B. Smilan
David A. Becker
Gregory A. Harris
Amanda P. Biles
LATHAM AND WATKINS, LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone:  (202) 637-2200
Telecopier:  (202) 637-2201
E-mail:  tom.patten@lw.com

*Attorneys for Defendants Daniel A.
D'Aniello, Francis J. Harvey, James C.
McGill, Richard W. Pogue, Phillip B.
Dolan, E. Martin Gibson, Robert F.
Pugliese, Charles W. Schmidt, James
David Watkins, The Carlyle Group, The
Carlyle Group L.L.C., Carlyle Partners II,
L.P., Carlyle SBC Partners II, L.P.,
Carlyle International Partners II, L.P.,
Carlyle International Partners III, C/S
International Partners, Carlyle Investment
Group, L.P., Carlyle-IT International
Partners, L.P., Carlyle-IT International
Partners II, L.P., Carlyle-IT Partners L.P.
and T.C. Group, L.L.C.*

/s/ Ronald S. Gellert
Ronald S. Gellert (No. 4259)
ECKERT, SEAMANS, CHERIN & MELLOTT,
LLC
The Towne Center
4 East 8th Street, Suite 200
Wilmington, DE  19801
Telephone:  (302) 425-0430
Email:  rgellert@eckertseamans.com

Mark A. Willard
Robert V. Campedel
ECKERT SEAMANS CHERIN & MELLOT,
LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA  15219-2788
Telephone:  (412) 566-6000
Telecopier:  (412) 566-6099
Email:  mwillard@eckertseamans.com

*Attorneys for Defendant, Anthony J.
DeLuca*

24