Westlaw.

Not Reported in B R                                                    Page 1

Not Reported in B R, 2003 WL 22989669 (Bankr S D N Y )

(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

▷
Only the Westlaw citation is currently available.

United States Bankruptcy Court,
S D New York
In re: RSL COM PRIMECALL, INC and Rsl Com
U S A , Inc , Debtors.
THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF RSL COM PRIMECALL, INC.
and
RSL COM U S A , Inc , and RSL COM U S A ,
Inc , RSL COM Primecall, Inc., and
Ldm Systems, Inc , Plaintiffs,
v.
Joel BECKOFF, Nesim Bildirici, Gustavo Cisneros,
Paul Domorski, Avery Fischer,
Itzhak Fisher, Fred Langhammer, Leonard A.
Lauder, Ronald S Lauder, Rolland
Mallcott, Michael Marino, Steven Schiffman,
Eugene Sekulow, Donald Shassian,
Jacob Schuster, Nir Tarlovsky, Nicholas Trollope,
and Richard E Williams,
Defendants.
Nos. 01-11457 (ALG), 01-11458(ALG),
01-11459(ALG), 01-11460(ALG), 01-
11461(ALG), 01-11462(ALG), 01-11463(ALG),
01-11464(ALG), 01-11465(ALG), 01-
11466(ALG), 01-11467(ALG), 01-11468(ALG),
01-11469(ALG), ADV. 03-2176(ALG).

Dec. 11, 2003.
Torys, LLP, By: William F. Gray, Jr., William F.
Kuntz, II, Steven R. Schoenfeld, New York, New
York, for the Plaintiffs.

Debevoise & Plimpton, Nesim Bildirici, Paul
Domorski, Avery Fischer, Itzhak Fisher, Ronald S
Lauder, Rolland Mallcott, Steven Schiffman, Jacob
Schuster, and Eugene Sekulow, By: John S. Kiernan
, Sean Mack, Emily O Slater, New York, New
York, for Defendants Joel Beckoff

Loeb & Loeb LLP, By: P. Gregory Schwed, John
Lang, Eric S. Manne, New York, New York, for
Defendant Donald Shassian.

Kramer Levin Naftalis & Frankel LLP, Gustavo
Cisneros, Fred Langhammer, Leonard A. Lauder,
and Nicholas Trollope, By: Gary P. Naftalis, Alan
R Friedman, Steven S. Sparling, New York, New
York, for Defendants.

Warshaw Burstein Cohen, Schlesinger & Kuh,
LLP, By: Robert Fryd, Donald M. Levinsohn, New
York, New York, for Defendant Michael Marino.

### MEMORANDUM OF DECISION

GROPPER, Bankruptcy J.

*1 On March 15, 2003, RSL COM U S.A., Inc.
("RSL USA"), RSL COM PRIMECALL, Inc., its
subsidiary, and LDM Systems, Inc., a third-tier
subsidiary (collectively the "Debtors"), together
with the Debtors' Official Committee of Unsecured
Creditors, filed an adversary proceeding against
eighteen individuals, some of whom were RSL
USA's officers or directors and some of whom were
officers or directors of affiliated companies. [FN1]
The complaint is in four counts and sets forth the
following claims for relief: (1) breach of fiduciary
duty, (2) aiding, abetting, inducing or participating
in a breach of fiduciary duty, (3) constructive fraud
and aiding and abetting constructive fraud, and (4)
alter/ego, piercing the corporate veil. Defendants
have moved to dismiss the complaint in its entirety.

> FN1. The defendants ("Defendants") are:
> Joel Beckoff, Nesim Bildirici, Gustavo
> Cisneros, Paul Domorski, Avery Fischer,
> Itzhak Fisher, Fred Langhammer, Leonard
> A. Lauder, Ronald S. Lauder, Rolland
> Mallcott, Michael Marino, Steven
> Schiffman, Eugene Sekulow, Jacob
> Schuster, Donald Shassian, Nir Tarlovsky,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B R , 2003 WL 22989669 (Bankr S D N Y )

(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

Nicholas Trollope and Richard E. Williams According to the complaint, the following were affiliated with LTD: Messrs Cisneros, Langhammer, L. Lauder, Schuster, Sekulow, Shassian and Trollope were directors of LTD (Shassian denies this); Messrs Beckoff, Bildirici, Domorski, Fisher, R. Lauder, Schiffman, Shassian and Tarlovsky were officers of LTD. The following were affiliated with PLC: Messrs Bildirici, Fisher, Schuster, Sekulow, Tarlovsky and Williams were directors of PLC; R. Lauder was Chairman The following were affiliated with RSL USA: Messrs Beckoff, Domorski, Fisher, Mallcott, Marino, Schiffman, Shassian and Tarlovsky were directors of RSL USA at one time or another; Beckoff, A Fischer, Fisher, Mallcott, Marino and Tarlovsky were officers of RSL USA Two of the Defendants, Williams and Tarlovsky, did not appear in this proceeding; Plaintiffs were authorized to move to enter default judgments against them but have not done so

## FACTS
### The Facts as Alleged in the Complaint

The following facts alleged in the complaint, presented in the light most favorable to Plaintiffs on this motion to dismiss, are assumed to be true for purposes of this motion

The Debtors were part of a telecommunications conglomerate that provided services to businesses and residential customers in the United States and abroad At the top of the corporate structure was a holding company, RSL Communications, Ltd ("LTD"), incorporated in Bermuda, where it is currently in liquidation proceedings. [FN2] According to the complaint, Ronald S. Lauder owned 28 4% of its stock and controlled 57 2% of the voting power LTD in turn owned all the stock of RSL Communications PLC ("PLC"), an operating United Kingdom company that is currently in liquidation proceedings in the United

Kingdom. PLC in turn owned RSL Com North America ("RSL North America"), an intermediate holding company whose only function was to hold 100% of the stock of RSL USA

> FN2. LTD also brought a proceeding in this Court under § 304 of the Bankruptcy Code to stay its creditors from taking action against its assets in this country in derogation of the Bermuda proceeding. (Case No. 01-11506 ) The § 304 proceeding was largely unopposed and a permanent injunction was entered

The complaint categorizes Defendants primarily in two groups Fourteen of the Defendants, a group Plaintiffs refer to as the "Lauder Control Group," are alleged to have controlled RSL USA for their own personal interests and to the detriment of the Debtors and their creditors. [FN3] The remaining four Defendants were directors of RSL USA, and are alleged to have supported and permitted the exercise of control by the Lauder Control Group. [FN4] The complaint alleges that the Lauder Control Group was able to exercise its control over RSL USA through Ronald S Lauder and Itzhak Fisher, who were Chairman of the Board and President of LTD, respectively, and were allegedly able to pick and choose the directors of LTD at will. These two individuals indirectly controlled the election of the directors of RSL USA.

> FN3. The Debtors allege the "Lauder Control Group" consisted of the following defendants: Messrs Bildirici, Cisneros, A. Fischer, Fisher, Langhammer, L. Lauder, R. Lauder, Mallcott, Schuster, Sekulow, Shassian, Tarlovsky, Trollope and Williams

> FN4. This group includes Messrs Beckoff (Director and Treasurer/Secretary of RSL USA and Corporate Controller of LTD), Domorksi (Director of RSL USA and President/CEO of LTD), Marino (Director and President of RSL USA) and Schiffman (Director of RSL USA and CFO of LTD)

© 2005 Thomson/West No Claim to Orig. U S Govt Works.

Not Reported in B.R.                                                                                                   Page 3

Not Reported in B.R., 2003 WL 22989669 (Bankr.S.D.N.Y.)

(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

Against the backdrop of alleged control of RSL USA by the Lauder Control Group and acquiescence by the four other Defendants, the complaint charges wrongdoing that can generally be categorized in the following manner. First, the complaint charges that RSL USA was insolvent and undercapitalized from inception, and/or that it was from the start unable to pay its debts as they became due. (Complaint, ¶¶ 43-44.) By concealing RSL USA's insolvency from creditors, it is alleged, Defendants breached a fiduciary duty to RSL USA and to its creditors, who were unaware of the insolvency, relied on false information and continued to provide goods, services and credit to RSL USA. Thus, the complaint alleges that the fraud damaged the Debtors and all creditors alike. (Complaint, ¶¶ 72- 75.)

*2 Second, the complaint asserts that Defendants breached their fiduciary duties to creditors by wrongfully prolonging the corporate existence of RSL USA and operating it well past the point of insolvency. It is argued that Defendants, in deciding to keep RSL USA in business, were not independent and continued to incur massive amounts of debt when the company should have been liquidated. (Complaint, ¶¶ 46-47.) As the principal example of Defendants' wrongdoing, the complaint claims that Defendants caused RSL USA to guarantee a total of $1.6 billion of the debt of PLC in February, 2000, 13 months prior to RSL USA's chapter 11 filing. This guarantee was of debt issued under seven indentures between PLC as issuer, LTD as guarantor and J.P. Morgan Chase Bank as indenture trustee, pursuant to which PLC issued approximately $1.6 billion in public debt securities from October 1996 through May 1999. RSL USA was not a party to and did not originally guarantee the debt. In February 2000, the complaint alleges, the Lauder Control Group caused PLC and LTD to enter into two additional indentures to raise more capital for the companies (and, it is further charged, to increase the value of Defendants' ownership interest). But unlike practice in connection with the previous seven indentures, the Lauder Control Group allegedly caused RSL USA to guarantee all of the debt, both old and new. On February 14, 2000, Defendants Fisher, Shassian,

Beckoff and Marino signed a "Unanimous Written Consent" of the Board of Directors of RSL USA authorizing the officers of RSL USA to execute documentation guaranteeing the full $1.6 billion of old PLC debt, assertedly against RSL USA's interests and without any independent analysis or evaluation. No other subsidiary of LTD had guaranteed the debt of PLC, making RSL USA the only operating subsidiary responsible for the PLC debt. (Complaint, ¶ 56.)

Plaintiffs charge that this guarantee was wrongful and occurred at a time when the RSL enterprise as a whole was suffering net losses in excess of $600 million, with further losses expected through 2001 and beyond. (Complaint, ¶ 53.) Furthermore, it is asserted that with declining revenue in all markets, PLC and/or LTD were unlikely to repay their obligations to the holders of the public debt securities. The complaint charges that Defendants who did not sign the "Unanimous Written Consent" and were not members of the Lauder Control Group also breached their fiduciary duty to the Debtors and their creditors by supporting the guarantees and by failing in their capacity as officers, directors and managers of the business of RSL USA.

Subsequent to the RSL USA guarantee of the $1.6 billion of PLC debt, the complaint further charges, the Lauder Control Group caused PLC, as borrower, and LTD and RSL USA as "guarantors," to enter into a Senior Standby Loan and Warrant Agreement ("the Lauder Loan Agreement"), dated July 6, 2000, with Ronald S. Lauder as lender. This agreement permitted PLC to borrow up to $100 million from Lauder and provided him with warrants to purchase up to 1.5 million shares of LTD stock. It is alleged that Defendant Itzhak Fisher signed the agreements on behalf of PLC, LTD and RSL USA, and that he authorized the guarantee by RSL USA without giving due regard to the interests of RSL USA and without the authorization of its Board of Directors. Plaintiffs charge that the Lauder Loan Agreement was exclusively for the benefit of the Lauder Control Group and to the detriment of the Debtors and their "non-insider creditors." It is also alleged that the other Defendants either supported or assisted in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                          Page 4

Not Reported in B.R., 2003 WL 22989669 (Bankr.S.D.N.Y.)

**(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))**

making of the guarantee of the Lauder Loan Agreement and thereby failed to carry out their duties to manage the business and affairs of the Debtors in a proper manner. [FN5]

> FN5. This includes Messrs. Joel Beckoff (Director and Treasurer/Secretary of RSL USA and Corporate Controller of LTD), Paul Domorksi (Director of RSL USA and President/CEO of LTD), Michael Marino (Director and President of RSL USA) and Steven Schiffman (CFO of LTD).

*3 The alleged wrongful acts by Defendants can thus generally be summarized as follows: (i) wrongful concealment of the fact that RSL USA was insolvent from its inception to the detriment of RSL USA and its creditors; (ii) wrongful prolongation of the corporate existence of RSL USA to the detriment of RSL USA and its creditors; (iii) wrongful imposition on RSL USA of guarantees totaling $1.7 billion of debt of its parent, PLC; and (iv) misuse of RSL USA's corporate form in a manner that would permit piercing the corporate veil from the American subsidiaries through PLC to LTD. Defendants have sought dismissal as to all counts for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction as to the constructive fraud claims. Alternatively, they seek dismissal on the ground that the complaint does not allege fraud, breach of duty and grounds for piercing the corporate veil with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure and applicable Delaware law.

### DISCUSSION
*The Rule 12(b)(6) Standard*

A complaint may not be dismissed under Federal Rule of Civil Procedure 12(b)(6), incorporated herein by Bankruptcy Rule 7012(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45- 46 (1957). Upon consideration of the allegations contained in the complaint, including any exhibits attached thereto, the Court is obligated

to accept all of the allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Stuto v. Fleischman,* 164 F.3d 820, 824 (2d Cir.1999). The scope of the court's review is limited as the "[i]ssue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002); *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995). In order to survive a motion to dismiss, a plaintiff only has to allege sufficient facts, not prove them. *Koppel v. 4987 Corp.,* 167 F.3d 125, 133 (2d Cir.1999).

It is with these legal standards in mind that this Court will consider the allegations of the complaint.

*Wrongful Concealment or Constructive Fraud*

The complaint charges that Defendants wrongfully concealed certain facts from RSL USA and its creditors and that Plaintiffs suffered harm as a consequence. Defendants have moved to dismiss the constructive fraud claims on the grounds that: (i) Plaintiffs have no standing to bring the claims, and (ii) even if Plaintiffs have standing, the complaint does not plead the claims with the requisite particularity required by Bankruptcy Rule 7009(b), incorporating Federal Rule of Civil Procedure 9(b).

Constructive fraud has been defined as "a breach of duty which, irrespective of moral guilt and intent, the law declares fraudulent because of its tendency to deceive, to violate a confidence or to injure public or private interests which the law deems worthy of special attention." *Grand Union Mount Kisco Employees Fed. Credit Union v. Kanaryk,* 848 F.Supp 446, 455 (S.D.N.Y.1994), citing *Brown v. Lockwood,* 76 A.D.2d 721, 730-31, 432 N.Y.S.2d 186, 193 (2d Dept.1980). *See also, Klembczyk v. Di Nardo,* 265 A.D.2d 934, 936, 705 N.Y.S.2d 743, 744 (4th Dept 1999); *Callahan v. Callahan,* 127 A.D.2d 298, 301, 514 N.Y.S.2d 819, 821 (3d Dept 1987). In order to establish a claim for constructive fraud, a plaintiff must establish the same elements as a claim for fraud, except that the element of *scienter* is not essential in view of the existence of a fiduciary or confidential relationship

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                      Page 5

Not Reported in B.R., 2003 WL 22989669 (Bankr.S.D.N.Y.)

(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

between the parties. *Burrell v. State Farm and Cas. Co.*, 226 F.Supp.2d 427, 438 (S.D.N.Y.2002). The elements of a cause of action for constructive fraud under New York law, which all parties agree is applicable on the constructive fraud claims, are the following: (1) a representation was made, (2) the representation was of a material fact, (3) the representation was false, (4) the representation was made with intent that the other party would rely upon it, (5) the other party did, in fact, rely on the representation without knowledge of its falsity, (6) injury resulted and (7) the parties were in a fiduciary or confidential relationship. *See Northwestern Nat'l Ins. Co. of Milwaukee, Wisconsin v. Alberts*, 717 F.Supp. 148, 155 (S.D.N.Y.1989); *Brown v. Lockwood*, 76 A.D.2d at 730.

Standing

*4 Defendants first argue that Plaintiffs lack standing to pursue the constructive fraud claims. They contend that the constructive fraud claims (i) cannot be brought on behalf of all creditors generally because such claims, if they exist, belong to individual creditors, and (ii) cannot be brought on behalf of RSL USA because it was not harmed or injured by the alleged wrongdoing.

It is black letter law that a trustee in bankruptcy (including a debtor in possession) may only pursue claims that belong to the estate. *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 429 (1972). A claim may belong to a bankrupt company, such as RSL USA, only where the complaint can identify a direct injury to the debtor, or in limited circumstances where the claim is so generally for the benefit of all creditors as an undifferentiated group that the trustee can be considered to be acting for "creditors generally." *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 696-700 (2d Cir.1989); *Murray v. Miner*, 876 F.Supp. 512, 516-17 (S.D.N.Y.1995), *aff'd*, 74 F.3d 402 (2d Cir.1996). Because standing is a jurisdictional matter, the burden is on the plaintiff "clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Thompson v. County of Franklin*, 15 F.3d 245, 249

(2d Cir.1994).

Whether a claim is property of the estate or of individual creditors depends on whether the claim is general or particular. "[I]f the claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." *Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir.1993), quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d at 701. The question whether a claim is general, so that it should be brought by a trustee, or particular, so that it belongs to individual creditors, is a question of state law, which in this case is New York law. *In re Mediators, Inc.*, 105 F.3d 822, 825 (2d Cir.1997).

In the instant complaint Plaintiffs charge Defendants with failure to disclose certain facts, particularly that RSL USA was "insolvent from inception." Since RSL USA was in existence for approximately six years, Plaintiffs lump together creditors who allegedly relied on information made available by Defendants over a six-year period. In addition to a failure to plead fraud over such a long period with particularity (see below), there is no basis on which Plaintiffs' basic premise-that all creditors were damaged identically by a six-year course of non-disclosure-can be accepted, even on this motion to dismiss. Plaintiffs cannot be deemed to act as surrogates for all creditors who extended credit to the Debtors throughout this entire period and necessarily relied (or did not rely) on different information at different times. It is no answer that the failure to disclose insolvency was common throughout the period. A cause of action for fraudulent concealment requires, in addition to a misrepresentation and a fiduciary or confidential relationship, reliance and subsequent injury. *See Banque Arabe Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995); *Congress Fin. Corp. v. John Morrell & Co.*, 790 F.Supp. 459, 472 (S.D.N.Y.1992). In this case, charging a State law wrong, Plaintiffs are not relieved of their burden of alleging and proving individual reliance and damages. *Orderline*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B R                                                    Page 6

Not Reported in B R , 2003 WL 22989669 (Bankr S D N Y )

(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

*Wholesale Distribs., Inc v Gibbons, Green, van Amerongen, Ltd*, 675 F Supp. 122, 129 (S D N Y 1987) Fraud is a claim that peculiarly belongs to individual plaintiffs who had different access to information about RSL USA at different times, and in some cases may not have relied on any information *In re Granite Partners*, 194 B R. 318, 320 (Bankr S D N Y 1996).

*5 Defendants also challenge the standing of Plaintiffs on the ground that RSL USA was conferred a benefit and not harmed by the alleged wrongful concealment. The intentional distortion of a corporation's financial picture and its solvency, for the purpose of misleading creditors to extend goods and services, is undoubtedly wrongful. But absent an allegation of direct injury to the corporation, or a diversion of goods or services from the company, it cannot be presumed that the alleged wrongful concealment of RSL USA's insolvency from creditors harmed or injured RSL USA *See Colotone Liquidating Trust v Bankers Trust New York Corp*, 243 B.R. 620 (S D N Y 2000), where the court had before it claims for fraud and breach of fiduciary duty and held that there was no injury to the debtor Colotone where its controlling affiliate allegedly knowingly disseminated false financial information about it. "On the contrary, there is every reason to suppose that Colotone was the beneficiary of any such deceit because it would have resulted in its receiving goods and services, the obligation to pay for which was discharged in bankruptcy." *Id* at 622

Plaintiffs cite several cases for the proposition that RSL USA was harmed by the non-disclosure. In these cases, the real harm suffered by the company was the self-dealing or looting engaged in by insiders during the period of non-disclosure *See e g. Schacht v Brown*, 711 F 2d 1343 (7th Cir 1983), an action to recover for RICO violations against officers, directors and the parent corporation who allegedly kept an insurer in business past the point of insolvency; the court found that the corporation was harmed because the defendants looted the insurer of valuable business, not because of the non-disclosure; *Investors Funding Corp of New York Sec Litig v Dansker (In re Investors*

*Funding Corp Sec. Litig)*, 523 F Supp. 533 (S D N Y 1980), where principal officers and directors created the false appearance of fiscal strength to raise capital for plundering.

Plaintiffs, in their papers responding to the instant motion, argue for the first time that all three alleged wrongful acts-the concealment of insolvency, the prolongation of the life of RSL USA and the guarantees of $1.7 billion of parent debt-are inextricably linked together and give the complaint any necessary allegations of looting. They argue that Defendants continued to sink RSL USA into deepening insolvency and hid RSL USA's insolvency from creditors so that they could wrongfully guarantee the $1.7 billion of parent company debt Passing the fact that this new theory does not appear in the complaint, *Wright v Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998), it does not bolster the Plaintiffs' standing to bring constructive fraud or wrongful concealment claims. First, there is no allegation that the fact of the guarantees was concealed. Second, the complaint is still insufficient for the Court to find that the constructive fraud claims can be brought on behalf of "creditors generally " Plaintiffs cannot bring the same constructive fraud claims on behalf of those creditors who may have extended credit after disclosure of the guarantees as they could on behalf of others who extended credit unknowingly

*6 Accordingly, Plaintiffs do not have standing to bring the constructive fraud claims on behalf of "creditors generally" of RSL USA, and Defendants' motion to dismiss these claims is granted. *A fortiori*, Plaintiffs do not have standing to pursue claims for aiding and abetting any such constructive fraud

Constructive Fraud Not Pleaded With 9(b) Particularity

In any event, the constructive fraud claims would have to be dismissed because they have not been pleaded with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity."

© 2005 Thomson/West. No Claim to Orig U S. Govt Works.

Not Reported in B.R.

Not Reported in B.R., 2003 WL 22989669 (Bankr.S.D.N.Y.)

**(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))**

Irrespective of whether a claim is for actual fraud or constructive fraud, Rule 9(b) applies. *See Burrell v. State Farm & Casualty Co.,* 226 F.Supp.2d at 438; *Victor v. Riklis,* 1992 WL 122911, at *5 n.6 (S.D.N.Y.1992) ("Rule 9(b)'s particularity requirements are not 'relaxed' for constructive fraud claim "); *Frota v. Prudential Bache Sec., Inc.,* 639 F.Supp. 1186, 1193 (S.D.N.Y.1986) ("Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty-statutory, common law, tort, contractual or fiduciary.")

Plaintiffs argue that cases assessing the pleading requirements for constructive fraudulent *transfer* claims have held that the heightened pleading requirements of Rule 9(b) do not apply. *See Securities Investor Protection Corp. v. Stratton Oakmont, Inc.,* 234 B.R. 293, 310 (Bankr.S.D.N.Y.1999); *see also In re White Metal Rolling and Stamping Corp.,* 222 B.R. 417, 428 (Bankr.S.D.N.Y.1998); *In re Allegheny Health, Educ. & Research Found.,* 253 B.R. 157, 162 n.2 (Bankr.W.D.Pa.2000). This argument is misplaced. The instant claims are for constructive fraud or wrongful concealment, not for a constructive fraudulent *transfer,* which is a separate and distinct cause of action with different elements. [FN6] Moreover, in the cases cited by Plaintiffs, Rule 9(b) has been "relaxed" where a trustee who had no direct knowledge of the case has been appointed and could not frame a detailed complaint without discovery and access to information. Such is not the case here. Plaintiffs have already had discovery and access to information, including the books and records of RSL USA and depositions of both Ronald S. Lauder and Itzhak Fisher, the primary members of the alleged Lauder Control Group [FN7]

> FN6. A constructive fraudulent transfer claim has nothing to do with fraud, and instead is based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee. *See In re White Metal Rolling and Stamping Corp.,* 222 B.R. at 428-29 (noting also a split of authority as to whether Rule 9(b) applies to constructive

fraudulent transfer claims).

> FN7. This also answers Plaintiffs' contention that if Rule 9(b) does apply, they should be entitled to leniency in the pleading requirement on the ground that courts sometimes grant such leniency to a trustee who has never had an opportunity to conduct discovery.

Thus, the complaint's allegations of fraudulent concealment must comply with Rule 9(b). "To pass muster [under Rule 9(b) ] in this Circuit, a complaint 'must allege with some specificity the acts constituting fraud' ... conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings, Ltd.,* 85 F.Supp.2d 282, 293 (S.D.N.Y.2000), quoting *Lobatto v. Berney,* 1999 WL 672994, at *9 (S.D.N.Y.1999). This is particularly true where fraud is alleged against multiple defendants. *Ellison v. Am. Image Motor Co., Inc.* 36 F.Supp.2d 628, 640-41 (S.D.N.Y.1999) ("where a case involves multiple defendants F.R.C.P. 9(b) requires that the complaint allege facts specifying each defendant's contribution to the fraud, identifying which defendant is responsible for which act.").

*7 Here, even if Plaintiffs could overcome the standing requirements, they have not adequately pleaded the constructive fraud claims pursuant to Rule 9(b). It is not enough, as Plaintiffs argue, merely to state the elements of a constructive fraud claim and assert generally that a fiduciary relationship was established with creditors and subsequently breached. The complaint lacks any specific misrepresentation that was made to creditors or any specific detrimental reliance and subsequent injury thereto. Simply stating that RSL USA was "insolvent from inception" and that Defendants-all eighteen of them-are somehow culpable does not comport with the requirements of Rule 9(b).

*Wrongful Prolongation of RSL USA's Corporate Life*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                    Page 8

Not Reported in B.R., 2003 WL 22989669 (Bankr.S.D.N.Y.)

(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

The second principal charge against Defendants is that they (i) breached their fiduciary duties to creditors by wrongfully prolonging the corporate existence of RSL USA when they should have liquidated it for the benefit of creditors, and (ii) cannot rely on the business judgment rule because they were not independent. Defendants argue that these claims should be dismissed because (i) they did not breach any fiduciary duty to creditors, as there is no "duty to liquidate," and (ii) a decision by directors to keep an insolvent corporation operating is subject to the business judgment rule, and the complaint does not set forth sufficient allegations to overcome the presumption of validity that the business judgment rule confers. The parties agree that Delaware law applies, as RSL USA is a Delaware corporation and the charges relate to the duties of its directors. *See Walton v. Morgan Stanley Co.,* 623 F.2d 796, 798 (2d Cir.1980); *H.S.W Enters., Inc. v. Woo Lae Oak, Inc.,* 171 F.Supp.2d 135, 142 (S.D.N.Y.2001).

The Alleged Duty to Liquidate

The fiduciary duty of a director of a financially troubled corporation has been the subject of much analysis by both courts and commentators. Traditionally, under Delaware law, directors owe fiduciary duties to stockholders, and perhaps to the corporation, and the relationship between directors and creditors is not fiduciary but contractual in nature. *See Katz v. Oak Indus., Inc.,* 508 A.2d 873 (Del. Ch.1986); *Mia Shoes v. Republic Factors Corp.,* 1997 WL 525401 (S.D.N.Y.1997); *In re Hechinger Inv. Co. of Delaware,* 274 B.R. 71, 88 (D.Del.2002). *See also,* 3A W. Fletcher, *Private Corporations* § 1035.60 (2003). Insolvency, however, changes the scope of a director's duties, and upon insolvency directors owe fiduciary duties to creditors or, stated differently, to the corporation and to all of its interested constituencies, including creditors and shareholders. *See Geyer v. Ingersoll Publ'ns Co.,* 621 A.2d 784 (Del. Ch.1992); *In re Subpoena Issued to Friedman,* 286 B.R. 505, 508 (S.D.N.Y.2002); *In re Kingston Square Assocs.,* 214 B.R. 713, 736 n. 24 (Bankr.S.D.N.Y.1997). The rationale behind the "insolvency exception" is that the fiduciary duties held ordinarily for the benefit of shareholders should shift to creditors who "now occupy the position of residual owners." *Geyer v. Ingersoll Publ'ns Co.,* 621 A.2d at 787.

*8 In *Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.,* Civ. 12150, 1991 WL 277613, at *34 n. 55 (Del. Ch.1991), the Delaware Chancellor held that when a corporation is "in the vicinity of insolvency," the directors owe fiduciary duties to the entire "community of interests" of those involved with the corporation, including creditors. Subsequent decisions have emphasized that when managing a corporation "in the vicinity of insolvency," directors must consider the best interests of the corporation, and not just the interests of either creditors or shareholders alone. "[W]hile this duty does not necessarily place creditor interests ahead of the interests of stockholders, it requires the board to maximize the corporation's long-term wealth creating capacity." *In re Hechinger Inv. Co. of Delaware,* 274 B.R. at 89; *In re Ben Franklin Retail Stores, Inc.,* 225 B.R. 646, 654 (Bankr.N.D.Ill.1998), *aff'd in part by,* 1999 WL 982963 (N.D. Ill.1999), *rev'd in part on other grounds,* 2000 WL 28266 (N.D. Ill 2000). *See also,* Jonathan C. Lipson, *Directors' Duties to Creditors: Power Imbalance and the Financially Distressed Corporation,* 50 U.C.L.A. L. REV. 1189 (2003); Steven L. Schwarz, *Rethinking a Corporation's Obligation to Creditors,* 17 CARDOZO L. REV. 647 (1996); Ann E. Conway Stilson, *Reexamining the Fiduciary Paradigm at Corporate Insolvency and Dissolution: Defining Directors' Duties to Creditors,* 20 DEL. J. CORP. L. 1 (1995).

In the case at bar, the dispute between the parties as to the wrongful prolongation claims does not center around the abstract question whether directors of an insolvent corporation have fiduciary duties to creditors, but rather the scope of those duties. Most of the Defendants do not seriously contend that directors of an insolvent corporation are free of any fiduciary duties to creditors. Defendants argue principally that there is no absolute duty for directors of an insolvent corporation to liquidate for the immediate benefit of creditors. [FN8] Instead, in pursuance of their duties to the entire corporate

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                     Page 9

Not Reported in B.R., 2003 WL 22989669 (Bankr.S.D.N.Y.)

(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

enterprise, directors facing the decision whether to continue a corporation in business or to file an insolvency petition must still seek to "maximize the corporation's long-term wealth creating capacity." Such a decision, Defendants argue, is entitled to the protection of the business judgment rule absent self-dealing, which they assert has not been effectively alleged in this case

> FN8. Several of the Defendants contend that even when the corporation is insolvent, the directors of a subsidiary corporation owe duties only to the parent company This argument is dealt with below

There is no authority that supports Plaintiffs' position that there is a blanket duty to liquidate upon insolvency, untempered by the business judgment rule. Plaintiffs have not cited any case in the United States that supports this bald proposition It would require directors to determine what standard of insolvency might apply-two possibilities are inability to pay debts as they come due (as used in § 303(b)(1) of the Bankruptcy Code ) and balance sheet insolvency (as defined in § 101(32)) *See Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d at 789, which refers to them both It would then require them to make a determination as to the exact status of the corporation's financial affairs, on pain of liability to creditors In the absence of the protection of the business judgment rule, a director would ordinarily have to opt for an insolvency filing, as the director could have little confidence that the corporation would not, in the bright light of hindsight, be deemed to have been insolvent under one definition or the other. It has never been the law in the United States that directors are not afforded significant discretion as to whether an insolvent company can "work out" its problems or should file a bankruptcy petition *See Sanford Fork & Tool Co v. Howe, Brown & Co.* 157 U.S. 312, 319 (1895), where the Court said, in a different context, "Surely, a doctrine like that would stand in the way of the development of any new enterprise." *See also, In re Ben Franklin Retail Stores, Inc.,* 225 B.R. at 655, where the court rejected the notion of "a duty to liquidate and pay creditors when the corporation is

near insolvency, provided that in the directors' informed, good faith judgment there is an alternative." [FN9]

> FN9. United States law differs markedly in this respect from the laws of many other countries, where by statute directors can be liable for corporate debts if they continue to trade after liquidation appears unavoidable *See In re Ionica, PLC,* 241 B.R. 829, 839 (Bankr.S.D.N.Y.1999), citing § 214(2) of the English Insolvency Act that makes a director liable for the debts of a corporation if he "knew or ought to have concluded that there was no reasonable prospect that the company would avoid going into insolvent liquidation." *See also,* Carl Felsenfeld, *et al., International Insolvency* (2000), at vol. II, pp. U.K. 24-25 and U.S. 22-25 for a comparison of English and American law on this point.

*9 Plaintiffs cite four cases for the proposition that the business judgment rule is inapplicable to insolvent corporations. None is persuasive. In *Askanase v. Fatjo,* 1993 WL 208440 (S.D.Tex.1993), the court considered a claim to recover a preferential transfer by the Chapter 7 trustee, and discussed both Texas and Delaware law before ultimately concluding that it could not determine which state's law applied In *dicta,* the court stated that the business judgment rule has no effect in the context of insolvency. [FN10] In *Shultz v. Miramar Res., Inc.,* 208 B.R. 723 (M.D.Fla.1997), the court does not even discuss the business judgment rule. In *In re General Homes Corp.,* 199 B.R. 148 (Bankr.S.D.Tex.1996), the court-applying Texas law-held that the business judgment rule has "no consequence in the context of a conservatorship." In *In re Performance Nutrition, Inc.,* 239 B.R. 93 (N.D.Tex.1999), another case applying Texas law, the court cited *In re General Homes Corp* for the proposition that the business judgment rule *may* be wholly inapplicable where the corporation is insolvent.

> FN10.    The    court    held    there    were

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.

Not Reported in B.R., 2003 WL 22989669 (Bankr.S.D.N.Y.)

(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

outstanding questions as to whether or not Delaware law applied to the case, but that if Delaware law were applicable, it would apply the Delaware Trust Fund Doctrine. This doctrine provides that under certain circumstances, a corporation's assets are deemed a *res,* held in trust by corporate fiduciaries for the benefit of creditors. *See American Nat'l Bank of Austin v. Mortgage Am., (In re Mortgage Am.).* 714 F.2d 1266, 1268-69 (5th Cir.1983). The complaint contains no reference to the doctrine, and one commentator states it has been repudiated 15A W. Fletcher, *Private Corporations* § 7373 (2003).

In sum, Plaintiffs have no substantial support for the proposition that a director's decision to postpone a bankruptcy filing and attempt to "work out" a financial problem is not subject to the business judgment rule, a rule that protects directors' decision-making in other situations.

The Business Judgment Rule

The business judgment rule in Delaware law creates a presumption that in making a business decision the disinterested directors of a corporation act on an informed basis, in good faith and in the honest belief that the action taken is in the best interests of the company *See Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984); *Parnes v. Bally Entm't Corp.* 722 A.2d 1243, 1246 (Del.1999); *Unocal Corp. v. Mesa Petroleum Co.,* 493 A.2d 946, 954 (Del.1985). The presumptive validity of an exercise of business judgment is rebutted in cases where the decision under attack is "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith." *Ryan v. Aetna Life Ins. Co.,* 765 F.Supp. 133, 138 (S.D.N.Y.1991). A plaintiff bears the burden of alleging well-pleaded facts to overcome the presumption and survive a motion to dismiss *Id., Aronson v. Lewis,* 473 A.2d at 812.

In the instant case, Defendants argue that Plaintiffs have failed to plead any specific facts that would demonstrate that their decision not to file an insolvency petition for RSL USA earlier than in 2001 was not taken on an "informed basis, in good faith and in an honest belief that the action was in the best interest of RSL USA." They argue further that courts that have actually addressed the issue of the duty of directors of insolvent corporations have uniformly found officers and directors not liable in the absence of self-dealing. *See In re Ben Franklin Retail Stores, Inc.,* 225 B.R. at 655-56, where the court-relying on Delaware law-dismissed a claim for wrongful prolongation of corporate life where the directors of an insolvent corporation were alleged to have manipulated accounts so that third parties would continue to lend money and supply inventory. The court found that the complaint was subject to dismissal because it did not allege specific facts demonstrating that the directors failed to use the corporate assets in "an informed, good faith effort to maximize the corporation's long-term wealth creating capacity", citing *Credit Lyonnais,* 1991 WL 277613, at *34. The court further noted, in dismissing the claim, that "All of the decisions in which courts have allowed creditors to recover for breach of fiduciary duty have involved directors of an insolvent corporation diverting corporate assets for the benefit of insiders or preferred creditors." *Id* at 655, citing Laura Lin, *Shift of Fiduciary Duty Upon Corporate Insolvency Proper Scope of Directors' Duty of Creditors,* 46 VAND. L.REV. 1485, 1512 (1993) [FN11] *See also, Bank of America v. Musselman,* 222 F.Supp.2d 792, 799-800 (E.D.Va 2002), where the court also cites and relies on the Lin article.

> FN11. In that article, on which the Defendants rely and which will be further discussed below, the author indicates that courts have permitted creditors to recover for breach of fiduciary duty in different contexts where self-dealing is alleged. The article includes, as one type of self-dealing, the situation where directors allegedly have "permitted the company to engage in transactions, usually without fair consideration to the company, for the benefit of its parent corporation or related entities". Lin, 46 VAND. L.REV. at 1514.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R., 2003 WL 22989669 (Bankr.S.D.N.Y.)

(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

*10 Except for the transaction discussed below (the corporate guarantees), Plaintiffs have failed to allege any specific fact that would amount to self-dealing on the part of Defendants. One specific charge made by the complaint with respect to an "insider transaction" is that Ronald S. Lauder made a $100 million loan and received "valuable" warrants at a time when PLC, LTD and RSL USA were all insolvent. It appears that, as it turned out, the warrants were worthless, and Lauder received only a claim in two insolvency cases. [FN12] In any event, whether or not Lauder lost most of his investment, for present purposes it cannot be ignored that at a time when LTD, PLC and RSL USA were arguably insolvent and nearing collapse, Lauder put money into PLC on an unsecured basis, instead of taking it out. [FN13]

> FN12. The Court can take judicial notice of the fact that Lauder filed a claim for $100 million in the RSL USA Chapter 11 cases; according to the Disclosure Statement for the Debtors' First Amended Plan of Reorganization, he will receive at best a very small recovery.

> FN13. We discuss separately below the charge that RSL USA's guarantee of the Lauder Loan involved a breach of fiduciary duty.

As another example of alleged bad faith, Plaintiffs allege that Defendants should have sought equity infusions to fund RSL USA, rather than continuing to accumulate debt. It is, at best, an open question whether RSL USA could have attracted equity investors, given that Plaintiffs allege it was "insolvent from inception." In any case, absent well-pleaded allegations of specific acts of self-dealing or even bad faith, Plaintiffs cannot overcome the presumption afforded by the business judgment rule that the directors acted reasonably and in good faith in the manner in which they obtained funding for the business.

Nor have Plaintiffs shown that there was such a lack of independence on the part of the directors as to make the business judgment rule generally inapplicable. Plaintiffs have alleged that most if not all Defendants were not independent because they were close associates, "beholden" to Ronald S. Lauder and Itzhak Fisher, and that the other Defendants feared that the exercise of good faith judgment could compromise their employment or other relationships. But domination and control is not established by arguing that a director is not independent because of selection by and ties to an interested director. This is a common and accepted way of becoming a corporate director. *In re Walt Disney Co. Derivative Litig.,* 731 A.2d 342, 355 (Del. Ch.1998), *aff'd in relevant part,* 746 A.2d 244 (Del.2000); *Aronson v. Lewis,* 473 at 816. Plaintiffs also assert that each defendant had a personal stake in LTD in that he possessed a stock ownership interest in it. This, too, is not enough; conclusory allegations, unaccompanied by specific factual allegations that directors were somehow controlled or dominated are insufficient to establish a lack of independence. *See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Investcorp S.A.,* 1999 WL 754015, at *5 (S.D.N.Y.1999); *Polar Int'l Brokerage Corp. v. Reeve,* 108 F.Supp.2d 225, 247 (S.D.N.Y.2000).

Except in one respect, which will be discussed next, Plaintiffs have not in the instant complaint shown enough to rebut the presumptive validity of the business judgment of Defendants in continuing RSL USA's corporate existence.

*Wrongful Guarantee of Affiliate Debt*

*11 The one exception referred to above, and the principal specific act of wrongdoing alleged in the complaint, is RSL USA's guarantee of $1.6 billion of the outstanding debt of PLC at a time when both entities were insolvent. It is alleged, and presumed as true, that the Defendants who were directors of RSL USA at the time-Messrs. Fisher, Shassian, Beckoff and Marino-signed a Unanimous Written Consent of Directors approving the guarantees. They thereby authorized the assumption of $1.6 billion of the debt of the parent, allegedly amidst the backdrop of net losses of the corporate group in excess of $600 million. It is alleged that the guarantee was approved just days after the directors

Not Reported in B.R.

Not Reported in B.R., 2003 WL 22989669 (Bankr.S.D.N.Y.)

(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

took office without any independent analysis or evaluation whatsoever. It is also alleged that, thereafter, RSL USA guaranteed the $100 million Lauder Loan, bringing the total amount of PLC debt guaranteed by RSL USA to $1.7 billion, and that defendant Fisher signed that guarantee on behalf of RSL USA without even obtaining the authorization of the RSL USA Board. Plaintiffs argue that the directors of RSL USA breached their direct fiduciary duty to RSL USA and that the other Defendants were *de facto* directors of RSL USA and directed and/or aided and abetted the breach of fiduciary duty of the RSL USA Board members. In short, Plaintiffs allege, all Defendants, in one way or another, breached a fiduciary duty to RSL USA in connection with the guarantees.

Defendants contend that these claims should be dismissed because (i) the guarantees embody decisions made by RSL USA officers and directors that are entitled to the protection of the business judgment rule, (ii) the complaint does not identify how any director benefited and that the guarantees accordingly did not reflect self-dealing, and (iii) Defendants who were not RSL USA board members had no fiduciary duties to RSL USA and certainly cannot be charged with the wrongdoing in connection with the guarantees.

As discussed above, decisions made by directors are protected by a presumption of validity under the business judgment rule. The allegations as to the guarantees, however, charge the directors with authorizing precisely that type of conduct which the courts have held is proscribed for a corporation operating in the vicinity of insolvency: "transactions, usually without fair consideration to the company, for the benefit of the parent corporation or related entities." *See* Lin, 46 VAND. L.REV. at 1514, citing *Federal Deposit Ins Co v. Sea Pines Co.*, 692 F.2d 973 (4th Cir.1982), *cert. denied*, 461 U.S. 928 (1983); *Clarkson v. Shaheen Co. Ltd.*, 660 F.2d 506 (2d Cir.1981), *cert. denied*, 455 U.S. 990 (1982); *Automatic Canteen Co. of Am. v. Wharton*, 358 F.2d 587 (2d Cir.1966); and *South Falls Corp. v. Rochelle*, 329 F.2d 611 (5th Cir.1964). These cases do not require that the plaintiffs allege that each defendant director was the

recipient of a direct pecuniary benefit from a challenged transaction, but in each the transaction allegedly benefited only the affiliate and was patently inequitable to the subsidiary. Here, especially in view of the enormous size of the guarantees and the lack of any record of any review of their propriety, the Plaintiffs' have adequately alleged self-dealing. *In re Healthco Int'l Inc.*, 208 B.R. 288, 305 (Bankr.D.Mass.1997); *see also, Arwood v. Dunn (In re Caribbean)*, 288 B.R. 908, 919 (Bankr.S.D.Fla.2002); *In re STN Enters.*, 779 F.2d 901, 902 (2d Cir.1985).

*12 Moreover, the business judgment rule does not protect conduct of directors where material decisions are made in the absence of any information and any deliberation. Allegations that the RSL USA directors abdicated all responsibility to consider action that was arguably of material importance to the corporation puts directly in question whether the board's decision-making processes were employed in a good faith effort to advance corporate interests. *See In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275 (Del. Ch.2003); *see also Pereira v.Cogan*, 2001 WL 243537, at *13 (S.D.N.Y.2001). Based on the allegations in the complaint, a breach of fiduciary duty claim has been adequately pleaded against those RSL USA directors who signed the "Unanimous Written Consent" for the $1.6 billion guarantee, as well as against the director who purported to authorize the guarantee of the Lauder Loan without even obtaining Board approval.

These defendants argue that they are relieved from all potential liability on the facts alleged in the complaint by virtue of an exculpation clause in RSL USA's certificate of incorporation. RSL USA's exculpation clause eliminates directors' liability for all claims of breach of duty founded upon negligence, including gross negligence, but does not eliminate claims based on breach of loyalty and does not bar "[a]cts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law...." With respect to the guarantees, Plaintiffs have challenged the Defendants' good faith and this is enough, at this stage, to overcome the exculpation clause. *See In re*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B R                                                      Page 13

Not Reported in B R , 2003 WL 22989669 (Bankr.S D N Y.)

(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

*Walt Disney Co Derivative Litig .* 825 A 2d 275, 286 (Del. Ch 2003), where there was a similar clause at issue It has also been held that an exculpation clause allocates the risk of loss only between the parties to the articles of incorporation, *i e ,* the shareholders and the directors, but not as among directors and third parties such as creditors, and that it therefore does not affect suits by creditors. *See Pereira v Cogan,* 2001 WL 243537, at *10, *In re Ben Franklin Retail Stores, Inc ,* 2000 WL 28266, at *7-8

The Defendants further contend that the facts alleged in the complaint, together with facts of record in the RSL USA Chapter 11 case, demonstrate that there could be no damages because RSL USA attempted to set aside the guarantees But the Chapter 11 record shows that the Debtors were only partially successful in this effort Moreover, it is premature to reach issues of damages on this motion There may be defenses to the charges in the complaint, but at this stage a claim has been properly pleaded against four of the Defendants

Finally, certain of these Defendants argue that they owed no duty to RSL USA because RSL USA was part of a larger corporate group and a subsidiary of another corporation They advance this proposition by quoting out of context statements in several decisions where the actions of a parent corporation were challenged by the new shareholders of the subsidiary after the subsidiary had been spun off. *See Anadarko Petroleum Corp v Panhandle Eastern Corp .* 545 A 2d 1171, 1174 (Del 1998), where the court stated, "in a parent and wholly-owned subsidiary context, the directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders"; *see also Aviall v Ryder System,* 913 F Supp 826, 832 (S D N Y 1996), *aff'd on other grounds,* 110 F 3d 892 (2d Cir 1997) In those cases, however, the holding merely reflected the principle that directors of a solvent corporation are obligated to manage it in the interest of the shareholders-in those cases, the parent corporation None of the cases involved the duty that directors owe to the corporation and its entire community of interests when the corporation

is in the vicinity of insolvency.

*13 It would be absurd to hold that the doctrine that directors owe special duties after insolvency is inapplicable when the insolvent company is a subsidiary of another corporation. That is precisely when a director must be most acutely sensitive to the needs of a corporation's separate community of interests, including both the parent shareholder and the corporation's creditors. The Delaware courts have recognized that directors who hold dual directorships in the parent-subsidiary context may owe fiduciary duties to each corporation. *Weinberger v UOP,* 457 A 2d 701, 710 (Del.1983); *In re Digex Inc Shareholders Litig ,* 789 A 2d 1176, 1205-06 (Del. Ch.2000), citing *Warshaw v Calhoun,* 221 A 2d 487, 492 (1966); *see Shaev v Wyly,* 1998 WL 13858 (Del. Ch.1998), *aff'd,* 719 A 2d 490 (Del 1998). There is no basis for the principle propounded by a few of the Defendants that the directors of an insolvent subsidiary can, with impunity, permit it to be plundered for the benefit of its parent corporation.

The Other Defendants

Plaintiffs seek to impose liability not only on the directors of RSL USA who participated in the approval of the guarantees but also on additional defendants. These include the following:

*1 The "Non-Participating" Directors of RSL USA and Its Officers*

Plaintiffs have named as defendants four individuals who were directors of RSL USA at times that are not clearly stated in the complaint. This includes Domorski, a director starting "some time in 2000"; Mallcott, an officer starting February 3, 2000 and a director "in 2000"; Schiffman, a director from "on or about February 3, 2000"; and Tarlovsky, a director "at various times." Plaintiffs also name one individual, Avery Fischer, who was RSL USA's Assistant Secretary and General Counsel These Defendants also seek dismissal of the complaint as against them, and they are entitled to it. In brief, the complaint is simply too vague to retain these individuals as defendants in a $1.8

© 2005 Thomson/West. No Claim to Orig. U S Govt. Works.

Not Reported in B.R.                                                                  Page 14

Not Reported in B.R., 2003 WL 22989669 (Bankr.S.D.N.Y.)

(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

billion lawsuit, when Plaintiffs do not even clarify when they became directors so that it is clear what they did wrong. *See Goodrich v. E.F. Hutton Group, Inc.,* 542 A.2d 1200, 1201-02 (Del. Ch.1988); *Jefferson Chemical Co. v. Mobay Chemical Co.,* 253 A.2d 512 (Del. Ch.1969) *See also, Stevelman v. Alias Research Inc., et al.,* 174 F.3d 79, 84 (2d Cir.1999). The same is true for defendant Fischer, who was not a director. Under Delaware law, officers as well as directors may owe fiduciary duties *Harris v. Carter,* 582 A.2d 222, 234 (Del.1990). In order to sustain a claim against Fischer, however, Plaintiffs would have to allege more than that he held the office of Assistant Secretary and Legal Counsel. *See Lippe v. Bairnco Corp.,* 230 B.R. 906, 917 (S.D.N.Y.1999).

These Defendants are entitled to an order dismissing the complaint as against them.

*2. The Non-RSL Officers and Directors*

That brings us to the Defendants who were only officers and directors of PLC and LTD. [FN14] Plaintiffs seek to impose liability on these Defendants on two principal theories: (i) that they had *de facto* or effective control over the affairs of RSL USA and its directors; and (ii) that they aided and abetted the breach of fiduciary duty committed by the directors of RSL USA.

> FN14. This includes Messrs. Bildirici, Cisneros, Langhammer, L. Lauder, R. Lauder, Schiffman, Schuster, Sekulow, Trollope, and Williams.

*14 As to the concept of *de facto* control, Plaintiffs' allegations are too vague as to any wrongdoing on the part of these Defendants. As discussed above, there is much in the complaint regarding the "Lauder Control Group," but insufficient specificity as to facts that the Lauder Control Group (or Lauder personally) so dominated the RSL USA Board that they became *de facto* directors. *See Odyssey Partners, L.P. v. Fleming Cos., Inc.,* 735 A.2d 386 (Del. Ch.1999); *Aronson v. Lewis,* 473 A.2d at 815-16. Indeed, the parent corporation appointed at least several directors for RSL USA who were not

directors of either PLC or LTD, and it was the responsibility of these and the other members of the Board of RSL USA to manage the corporation. [FN15]

> FN15. According to the complaint, two of the defendants who were RSL USA directors, Messrs. Mallcott and Marino, were not either officers or directors of LTD or PLC.

The Defendants who were not directors of RSL USA also rely on the authority cited above that indicates that a subsidiary corporation should be operated in the interests of its shareholder parent and that neither the directors of the parent nor the directors of the subsidiary can be faulted for such action. *See, e.g., Anadarko Petroleum Corp.* 545, A.2d at 1174. As discussed earlier, this line of authority cannot be applied blindly to immunize an insolvent subsidiary's Board from liability for action in disregard of its own interests and those of its creditors. By the same token, the directors of the parent cannot be compelled at such time to attend only to the interests of the subsidiary, especially where (as here) *both* were insolvent. To the extent American corporate law would have been applicable, PLC and LTD were entitled to have directors who had due regard for their respective interests and the interests of their creditors, just as was RSL USA. *Lippe v. Bairnco Corp.,* 230 B.R. at 916; *Aviall, Inc. v. Ryder Sys. Inc.,* 913 F.Supp. 826, 832 (S.D.N.Y.1996), *aff'd,* 110 F.3d 892 (2d Cir.1997).

Plaintiffs' alternative theory is that the other Defendants aided and abetted the breach of duty of the RSL USA directors. Aiding and abetting a breach of duty is usually used to impose liability on third parties and raises the question as to whether the wrongdoing of the corporation itself is not a bar to the action. *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114 (2d Cir.1991); *In re Mediators, Inc.,* 105 F.3d 822, 826 (2d Cir.1997). Plaintiffs offer no authority that the doctrine has been used to impose wholesale liability on directors of an affiliate. Even if it could, aiding and abetting requires knowing participation in the wrongdoing,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                Page 15

Not Reported in B.R., 2003 WL 22989669 (Bankr.S.D.N.Y.)

(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

and Plaintiffs do not adequately plead specific facts demonstrating knowing participation by these other Defendants in the allegedly wrongful guarantees. *See In re Santa Fe Pacific Corp. Shareholder Litig.,* 669 A.2d 59, 72 (Del.1995); *Kolbeck v. LIT America,* 939 F.Supp. 240, 246 (S.D.N.Y.1996), *aff'd,* 152 F.2d 918 (2d Cir.1998).

These Defendants are also entitled to an order dismissing the complaint as against them.

*Alter Ego/Piercing the Corporate Veil*

*15 The complaint finally seeks to pierce the corporate veil of RSL USA and to hold PLC and LTD (and presumably their officers and directors) liable for all of the Debtors' debts. According to the complaint, Defendants exercised a degree of control over RSL USA that caused the Debtors to be mere instrumentalities or alter egos of the other corporations, and Defendants used their control to commit wrongs that resulted in loss and injury to Plaintiffs. Defendants have moved to dismiss this count, arguing that Plaintiffs fail to plead facts, which, if established, would show that piercing the corporate veils is warranted and that even if the veils were pierced, the affiliates' officers and directors would not become automatically liable for all of the debts of all of the companies.

In determining whether the corporate form will be disregarded and a corporate veil pierced, the law of the state of incorporation is applied. *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir.1995); *Sunbeam Corp. v. Morgan Stanley & Co., (In re Sunbeam Corp.),* 284 B.R. 355 (Bankr.S.D.N.Y.2002). Since RSL USA is a Delaware corporation, Delaware law applies. Under Delaware law, in order to pierce the corporate veil and establish alter ego liability, a party must show: (1) that the parent and the subsidiary operated as a single economic entity; and (2) that an overall element of injustice or unfairness was present. *Fletcher v. Atex, Inc.,* 68 F.3d at 1457. Allegations of mere domination or control by one entity over another are insufficient; in the context of veil piercing, "it is not sufficient at the pleading stage to make conclusory allegations of control." *In re*

*Sunbeam Corp.,* 284 B.R. at 366. Rather, "[t]he extent of the domination and control must preclude the controlled entity from having legal or independent significance of its own. There must be an abuse of the corporate form to effect a fraud or an injustice-some sort of elaborate shell game." *Id.*

To survive a motion to dismiss, a plaintiff must allege facts that the controlling owners operated the company as an "incorporated pocketbook" and used the corporate form to shield themselves from liability. *United States v. Golden Acres, Inc.,* 702 F.Supp. 1097, 1105-07 (D.Del.1988); *In re Sunbeam Corp.,* 284 B.R. at 368. Further, the plaintiff must plead facts showing that the "corporation [is] a sham and exist[s] for no other purpose than as a vehicle for fraud." *Wallace v. Wood,* 752 A.2d 1175, 1184 (Del. Ch.1999); *see also Foxmeyer Drug Co. v. General Elec. Corp.,* 290 B.R. 229, 236 (Bankr.D.Del.2003) ("the fraud or similar injustice that must be demonstrated in order to pierce the corporate veil under Delaware law must, in particular, be found in the defendant's use of the corporate form.") (internal citations omitted). In determining whether the corporate form has been misused under Delaware law, courts have considered the following factors:

(1) whether the corporation was adequately capitalized for the corporate undertaking; (2) whether the corporation was solvent; (3) whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; (4) whether the dominant shareholders siphoned corporate funds; and (5) whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*16 *Fletcher v. Atex, Inc.,* 68 F.3d at 1458; *In re Sunbeam Corp.,* 284 B.R. at 365.

In support of its argument that the corporate veil of RSL USA should be disregarded, the Debtor and Committee rely on six principal factors: (i) RSL USA was undercapitalized and insolvent since its inception; (ii) there was significant overlap in the directors and executive officers of RSL USA, PLC and LTD; (iii) certain directors of PLC and LTD had ownership interests in RSL USA; (iv) RSL

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B R , 2003 WL 22989669 (Bankr S D N Y )

**(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))**

USA was never able to sustain a financially viable business and thus was dependent on its parents for financing; (v) PLC and LTD provided managerial and other services to RSL USA, and PLC and LTD officers often became involved in and directed the day-to-day business of RSL USA; and (vi) RSL USA merely served as a tool to further the interests of Defendants

These are insufficient allegations to state a claim that RSL USA and LTD operated as a single entity and that there was an overall element of injustice or unfairness present arising from abuse of the corporate form  If lack of adequate capitalization were alone enough to justify piercing the corporate veil, the veil of every insolvent subsidiary or failed start-up corporation could be pierced. *United States v Golden Acres, Inc ,* 702 F Supp. at 1104. Plaintiffs have alleged (i) extensive overlapping officers and directors; (ii) managerial and other services that LTD provided to RSL USA; and (iii) unspecified involvement in the day-to-day business affairs of RSL USA by several officers and directors of LTD. These do not show that RSL USA was a mere sham  Rather than supporting a finding of domination, the allegations of the complaint describe a "typical" relationship between parent and subsidiary *See Fletcher v Atex, Inc ,* 68 F 3d at 1459-60  Plaintiffs further argue that RSL USA merely served as a tool to further Defendants' interests, and that this indicates an overall element of injustice  This claim alone cannot support a finding that RSL USA was used improperly for the benefit of its parents or affiliates, nor does it show overall fraud or injustice from the use of the corporate form  There are insufficient allegations to show an "overall element of injustice or unfairness" which would have arisen from the sham nature of RSL USA's corporate identity *Fletcher v Atex, Inc ,* 68 F 3d at 1461; *see also LaSalle Nat'l Bank v Perelman,* 82 F Supp 2d  279, 295 (D Del 2000)

Moreover, the complaint recognizes that RSL USA operated three business units (some or all acquired as operating concerns) and had its own employees responsible for its day-to-day operations. (Complaint, ¶¶ 36, 38-39 ) These allegations are inconsistent with the contention that RSL USA was

a mere shell, and the existence of separate operating companies usually negates a piercing of the veils. *See Japan Petroleum Co (Nigeria) Ltd v Ashland Oil, Inc ,* 456 F Supp. 831, 845-46 (D Del 1978). Further, RSL USA, PLC and LTD were incorporated and doing business in three different nations  It is commonplace for subsidiaries governed by the laws of different legal systems to be separately incorporated, so that their corporate structure can address the potential differences between applicable corporate laws  *See* Lynn M LoPucki, *Cooperation in International Bankruptcy A Post-Universalist Approach,* 84 CORNELL L REV. 696, 724-25, 750-51 (1999); *see also, supra,* n 9 Plaintiffs have not cited to any authority in which courts have pierced the veils of affiliates doing business and incorporated in different countries

**\*17** As discussed above, the Debtors have adequately pleaded a claim against certain Defendants related to the guarantees given by RSL USA with respect to the $1.7 billion debt of PLC already guaranteed by LTD. But this well pleaded claim is not enough to justify a general piercing of the corporate veil and, in fact, appears to cut just the other way. Prior to the guarantees, RSL USA was not liable for its affiliates' substantial debts, even though there are allegations that PLC and LTD financed their subsidiary  If the guarantee was a wrong, it was because the companies were separate; if the veil between PLC and RSL USA were pierced, it would be pierced for all purposes, making RSL USA and its parent one company, and in substance validating the guarantees. *Cf. Geyer v Ingersoll Publ'ns Co ,* 621 A 2d at 790; *Eagle Transp Ltd v O'Connor,* 449 F Supp. 58, 59-60 (S D N Y 1978)  Thus, the one adequately pleaded claim cuts against the concept of piercing the corporate veils

Plaintiffs' fourth count is dismissed on the ground that the allegations of the complaint are insufficient to support a claim for piercing the corporate veils between RSL USA, PLC and LTD  There is no need to consider the further issue as to the liability of the directors of PLC and LTD if the veils were pierced

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.

Not Reported in B.R., 2003 WL 22989669 (Bankr S.D.N.Y.)

(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

*CONCLUSION*

The allegations of the complaint with respect to the claims for wrongful concealment and constructive fraud, and for aiding and abetting constructive fraud, are dismissed. The allegations of the complaint with respect to breach of fiduciary duty are sustained only as to the claims relating to the guarantees by RSL USA and only as against Defendants Fisher, Shassian, Beckoff and Marino in their capacities as directors of RSL USA. The claims for aiding and abetting a breach of fiduciary duty are dismissed, as are the claims relating to piercing the corporate veil. Defendants shall settle an order consistent with this decision on five days' notice.

Not Reported in B.R., 2003 WL 22989669 (Bankr S.D.N.Y.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

LEXSEE 2004 U.S. DIST LEXIS 7375

**CHARLES STANZIALE, Plaintiff, v. MORRIS NACHTOMI, et al., Defendants.**

**Civil Action No. 01-403 KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**330 B.R. 56; 2004 U.S. Dist. LEXIS 7375**

**April 20, 2004, Decided**

**SUBSEQUENT HISTORY:** Motion denied by Stanziale v. Nachtomi, 2004 U.S. Dist. LEXIS 15664 (D. Del., Aug. 6, 2004)
Affirmed in part and reversed in part by Stanziale v. Nachtomi (In re Tower Air, Inc.), 416 F.3d 229, 2005 U.S. App. LEXIS 15942 (3d Cir. Del., Aug. 3, 2005)

**DISPOSITION:** [**1] Defendants' Motion granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff trustee of a debtor corporation alleged that defendants, directors and officers of the debtor corporation, breached their fiduciary duties of loyalty, care, and good faith, and that their acts or omissions to act constituted gross negligence, mismanagement, and corporate waste. The directors and officers sought to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted.

**OVERVIEW:** The debtor corporation maintained and operated a fleet of jet airliners consisting of 14 passenger aircraft and three cargo aircraft. The debtor corporation filed a voluntary petition for relief under Chapter 11. The case was converted to a proceeding under Chapter 7, and the trustee was appointed. The court found that the officers and directors' motion to dismiss the trustee's claim that they breached their fiduciary duties of loyalty, good faith, and due care by causing significant losses to the debtor corporation through the decision to lease or purchase new jet engines rather than repair and properly maintain the older jet engines should have been granted because the trustee did not sufficiently allege that their decision was the product of self dealing or improper motive, and the decisions did not constitute such egregiously bad decisions as to abrogate the business judgment rule. The officers' motion to dismiss the trustee's claims that their acts and omissions constituted gross mismanagement and gross negligence was granted be- cause the trustee failed to present any evidence that the decisions of any of the officers were unintelligent, unadvised, or reckless.

**OUTCOME:** The officers and directors' motion to dismiss was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN1] In analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint. The moving party has the burden of persuasion.

*Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities*
[HN2] Under Delaware law, the business judgment rule operates as a presumption that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest. A plaintiff may prevent the application of the business judgment rule within well-pleaded facts establishing that the directors acted out of self-interest. Directors act in self-interest if they appear on both sides of the transaction, or derive any personal financial benefit from it which did not devolve upon the corporation and the shareholders generally. Given that self-interest was not sufficiently alleged, in order to overcome the presumption of the business judgment rule, the plaintiffs must allege with particularity facts which establish that the

Case 1:04-cv-01268-***-MPT    Document 75-6    Filed 11/30/2005    Page 19 of 25

Page 2

330 B.R. 56, *; 2004 U.S. Dist. LEXIS 7375, **

contested decision was not a product of valid business judgment.

*Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities*
[HN3] In the absence of facts showing self-dealing or improper motive, a corporate officer or director is not legally responsible for losses that may be suffered as a result of a decision that an officer made or that directors authorized in good faith. A theoretical exception to the above-mention rule holds that some decisions may be so egregious that liability they cause may follow even in the absence of proof of conflict of interest or improper motivation. An egregious, patently frivolous, or capricious act is one which no person of ordinary sound business judgment would believe to be rational and is an abuse of discretion not protected by the business judgment rule.

*Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities*
[HN4] The Delaware Supreme Court has stated that to allege that a corporation has suffered a loss as a result of a lawful transaction, within the corporation's powers, authorized by a corporate fiduciary acting in a good faith pursuit of corporate purposes, does not state a claim for relief against that fiduciary no matter how foolish the decision may appear in retrospect.

*Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities*
[HN5] A corporate officer is not legally responsible to the corporation for losses that are the result of a good faith decision. Conclusory allegations are not considered as expressly pleaded facts or factual inferences, sufficient to rebut the presumption of good faith inherent in the business judgment rule.

*Torts > Negligence > Negligence Generally*
*Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities*
[HN6] To state a claim of gross negligence, the plaintiffs must allege facts to support the conclusion that the board acted with so little information that their decision was unintelligent and unadvised, or outside of the bounds of reason and reckless. Gross negligence also applies to the decisions made by corporate officers.

*Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities*
[HN7] The Delaware law standard for pleading waste is stringent. Directors are only liable for waste when they authorize an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration.

Conclusory allegations are not sufficient to overcome the protections of the business judgment rule.

**COUNSEL:** John L. Reed, Esq., Duane Morris LLP, Wilmington, Delaware, Counsel for Plaintiff.

Bruce E. Jameson, Esq., Prickett Jones & Elliott, Wilmington, Delaware. James E. Tolan, Esq., Rodney M. Zerbe, Esq., Dechert Price & Rhoads, New York, New York. P. Gregory Schwed, Esq., Loeb & Loeb LLP, New York, New York. Robert M. Kaplan, Esq., Robson Ferber Frost Chan & Eisner, New York, New York, Counsel for Defendants.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

[*58] MEMORANDUM OPINION

DATE: April 20, 2004
Wilmington, Delaware

**JORDAN, District Judge**

**I. Introduction**

Presently before the court is a motion (Docket Item ["D.I."] 22; the "Motion") filed by defendants Morris K. Nachtomi ("Nachtomi"), Stephen L. Gelband ("Gelband"), Stephen A. Osborn ("Osborn"), Henry P. Baer ("Baer"), Leo-Arthur Kelmenso ("Kelmenso"), Eli J. Segal ("Segal"), and Terry v. Hallcom ("Hallcom") (collectively the "Defendants"), seeking to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

The Complaint filed by Charles [**2] A. Stanziale, Jr. (the "Plaintiff"), in his capacity as Chapter 7 Trustee of Tower Air, Inc. (the "Debtor"), alleges that the Defendants, as directors and officers of the Debtor, breached their fiduciary duties of loyalty, care, and good faith, and that their acts or omissions to act constituted gross [*59] negligence, mismanagement and corporate waste. (D.I. 19.) The Plaintiff seeks compensatory damages, consequential damages, punitive damages, interest, and costs. (*Id.*)

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1334. For the reasons set forth herein, the Motion will be granted.

**II. Background n1**

330 B.R. 56, *; 2004 U.S. Dist. LEXIS 7375, **

n1 The following rendition of the background information for my decision is cast in the light most favorable to the non-moving party, the Plaintiff.

Nachtomi founded the Debtor in 1982. (D.I. P18.) The Debtor began operations primarily as a charter airline offering chartered international flights for private, government, and military customers. (Id. at P19.) [**3] Eventually, the Debtor offered scheduled passenger service, and by 1998, scheduled passenger service accounted for approximately two-thirds of the Debtor's total revenue. (Id. at P20.) By 1999, the Debtor maintained and operated a fleet of jet airliners consisting of 14 passenger aircraft and three cargo aircraft, and had more than 1,700 employees worldwide. (Id. at PP23-24.)

On February 29, 2000, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq., in the Bankruptcy Court for the District of Delaware. (Id. at P7.) Plaintiff was appointed as the Chapter 11 Trustee for the Debtor's bankruptcy estate on or about May 5, 2000. (Id. at P10.) On December 20, 2000, the case was converted to a proceeding under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 et seq. (Id. at P7), and the Plaintiff was appointed as Chapter 7 Trustee for the Debtor's bankruptcy estate.

Nachtomi has been a director of the Debtor since 1982, the Debtor's President from 1986 until January 1998 and again since July 1998, and Chairman of the Board of Directors and Chief Executive [**4] Officer of the Debtor since 1989. (Id. at P11.) n2 Nachtomi and members of his family owned a majority of the outstanding common stock and a controlling interest in the Debtor at all times relevant to Plaintiff's Complaint. (Id.) Defendants Osborn, Baer, Kelmenson, and Segal were at all times directors of the Debtor. (Id. at PP13-16.) Osborn was a director from May 1993 until the bankruptcy; Baer was a director from 1997 until the bankruptcy; Kelmenson was a director from 1997 until the bankruptcy; and Segal was a director from 1998 until the bankruptcy. (Id.) Gelband was a director of the Debtor from 1985 until bankruptcy, as well as the Debtor's Secretary and General Counsel from 1988 until bankruptcy. (Id. at P12.) Hallcom was the Debtor's President and Executive Vice President for Operations and a director from January through July 1998. (Id. at P17.)

n2 There is no indication in the record of when Nachtomi's service as an officer and director may have ended.

Plaintiff "brings this [**5] action in his capacity as the representative of the Debtor and of its estate and for the benefit of creditors of the Debtor and any other parties in interest." (Id. at P10.) In Count I, Plaintiff alleges that the Defendants, as directors of the debtor (collectively the "Directors"), breached their "fiduciary duties of loyalty, good faith and due care" by "leasing and/or financing the purchase of new jet engines rather than repairing and properly maintaining the Debtor's older engines." (Id. at P75.) In Count II, Plaintiff alleges that Nachtomi, Gelband, and Hallcom, as officers of the Debtor [*60] (collectively "the Officers"), breached their "fiduciary duties of loyalty, good faith and due care" by failing to fully inform the Board of Directors concerning the condition of the engines, the long-term financial ramifications of the failure to properly maintain the Debtor's older engines, the decision to lease and/or finance the purchase of new jet engines, and the problems with the Debtor's maintenance division, and by failing to maintain the engines and physical assets in good repair and condition. (Id. at P87.)

In Count III, Plaintiff claims that the Directors breached their [**6] "fiduciary duties of loyalty, good faith, and due care" by failing to adequately oversee and control the management and by failing to keep themselves informed. (Id. at P97.) In Count IV, Plaintiff contends that the Officers breached their fiduciary duties of "loyalty, good faith, and due care" by, among other things, failing to process used airline tickets for payment, failing to implement and maintain the proper oversight and control of ticket processing and operations, reducing fairs to unprofitable levels, expanding the Debtor's international routes during financial hardships, and ceding all management responsibility to Nachtomi. (Id. at P107.) In Count V, Plaintiff asserts that the Officers' acts and omissions caused "significant losses," and constitute "gross mismanagement of the Debtor's business, gross negligence, and a gross violation of Defendants' duties of due care to the Debtor." (Id. at PP117-118.) In Counts VI and VII, Plaintiff alleges that the Directors and Officers "wasted corporate assets to the financial loss and detriment of the Debtor's estate." (Id. at PP125-132.) n3

n3 Plaintiff does not state what specific actions by the Defendants constitute corporate waste. Presumably, the Plaintiff is relying on allegations in Counts I-V regarding the purchase and lease of new jet engines and the failure to repair old jet engines, the expansion of the Debtor's international routes, the reduction of fares, and the failure to process some of the airline tickets

## III. Standard of Review

[HN1] In analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991).

## IV. Discussion

The Defendants argue that the Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because "Plaintiff has failed to plead any basis for overcoming the protections" of the business judgment rule. (D.I. 23 at 18.) [HN2] Under Delaware law, the business judgment rule operates as a presumption "that [**8] directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest." *Grobow v. Perot,* 539 A.2d 180, 187 (Del. 1988). "[A] Plaintiff[] may prevent the application of the business judgment rule within well-pleaded facts establishing that the directors acted out of self-interest." *In re General Motors Class E Stock Buyout Sec. Litig.,* 694 F. Supp. 1119, 1132 (D. Del. 1988) (citing *Aronson v.* [*61] *Lewis,* 473 A.2d 805, 812 (Del. 1984).) Directors act in self-interest if they appear on "both sides of the transaction, or [derive] any personal financial benefit from it which did not devolve upon the corporation and the shareholders generally." *In re General Motors,* 694 F. Supp. at 1132.

In the Amended Complaint, Plaintiff alleges that the Defendants have acted in self-interest and engaged in self-dealing (D.I. 19 at PP97, 108), but has not alleged any facts to support this assertion. "Given that self-interest was not sufficiently alleged, in order to overcome the presumption of the business judgment [**9] rule, plaintiffs must allege with particularity facts which establish that the contested decision was not a product of valid business judgment." *In re General Motors,* 694 F. Supp. at 1132. *See also Brehm v. Eisner,* 746 A.2d 244, 255 (Del. 2000) (stating that "the issue is whether plaintiffs have alleged particularized facts creating a reasonable doubt that the actions of the defendants were protected by the business judgment rule").

### A. Count I

In Count I of the Amended Complaint, Plaintiff has alleged that the business judgment rule is inapplicable because the Directors breached their fiduciary duties of loyalty, good faith, and due care by causing significant losses to the Debtor and to its estate through the decision to lease or purchase new jet engines rather than repair and properly maintain the Debtor's older jet engines. (D.I. 19 at PP75, 78-79.) [HN3] "In the absence of facts showing self-dealing or improper motive, a corporate officer or director is not legally responsible ... for losses that may be suffered as a result of a decision that an officer made or that directors authorized in good faith." *Gagliardi v. TriFoods Int'l, Inc.,* 683 A.2d 1049, 1051 (Del. Ch. 1996). [**10] As previously mentioned, Plaintiff does not sufficiently allege that the directors' decision was the product of self dealing or improper motive. A "theoretical exception" to the above-mention rule "holds that some decisions may be so 'egregious' that liability for losses they cause may follow even in the absence of proof of conflict of interest or improper motivation." *Id.* at 1051-1052. n4

> n4 The court went on to say that the "exception, however, has resulted in no awards of money judgments against corporate officers or directors in this jurisdiction." *Gagliardi,* 683 A.2d at 1052.

Plaintiff alleges that the Directors resolved to borrow millions of dollars for the purchase of new jet engines and authorized the lease of new jet engines, while the Debtor still had debt associated with its older engines, and at the same time that Nachtomi reported that the Debtor was suffering a severe cash flow problem. (D.I. 19 at PP61-68.) Plaintiff also asserts that because the older engines [**11] were not repaired, a "significant diminution in their value as assets of Debtor" resulted. (*Id.*) According to Plaintiff, these decisions caused the Debtor to incur "substantial additional debt" and led to "significant losses" (*Id., see also id.* at P81). While the directors' may, indeed, have exercised poor business judgment in borrowing and authorizing the purchase and lease of new jet engines, the facts that Plaintiff alleges, taken in the light most favorable to the Plaintiff, do not constitute such egregiously bad decisions as to abrogate the business judgment rule. *See Aronson,* 473 A.2d at 812 (stating that an egregious, patently frivolous, or capricious act is one which "no person of ordinary sound business judgment would believe" to be rational and is an "abuse of discretion" not protected by the business judgment rule). A [*62] person of sound business judgment could have believed the decision to purchase or lease new engines was rational. Nor does that decision show that the directors did not act in good faith. n5

Therefore, Plaintiff's allegations do not fall into any exceptions to the general statement that an officer or director, absent self-dealing or [**12] improper motive, is not liable for business decisions made in good faith.

> n5 See In re J.P. Stevens & Co S'holders Litig., 542 A.2d 770, 780-81 (Del. 1998) ("A court may ... review the substance of a business decision made by an apparently well motivated board for the limited purpose of assessing whether that decision is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith"). Here, the decision to purchase or lease new engines is not "so far beyond the bounds of reasonable judgment" that bad faith is the only explanation.

[HN4] The Delaware Supreme Court has also stated that "to allege that a corporation has suffered a loss as a result of a lawful transaction, within the corporation's powers, authorized by a corporate fiduciary acting in a good faith pursuit of corporate purposes, does not state a claim for relief against that fiduciary no matter how foolish the [the decision] may appear in retrospect." Gagliardi, 683 A.2d at 1052. [**13] Plaintiff has not alleged that the decision to lease or finance new engines instead of repair old engines was not the result of a lawful transaction, not within the Debtor's powers, and not made in a good faith pursuit of corporate purposes. Therefore, Plaintiff's claims in Count I of the Amended Complaint do not rebut the presumption that the Directors' decisions were the product of valid business judgment.

**B. Count II**

Plaintiff alleges in Count II of the Amended Complaint that the Officers "breached their fiduciary duties of loyalty, good faith and due care, and acted recklessly" by neglecting to repair and properly maintain the Debtor's older jet engines and by leasing or financing the purchase of new jet engines. (D.I. 19 at P86.) Furthermore, Plaintiff alleges that the Officers breached their fiduciary duties by failing to inform the Directors concerning the jet engines. (Id. at P87.) Specifically, Plaintiff states that the Director of Safety reported to "management ... at least as early as June 1998" that there were a lack of spare part for repairs, deficient quality assurance on repairs that were performed, deficient record keeping regarding needed repairs and the [**14] absence of any type of maintenance program (D.I. 19 at P55; D.I. 26 at 27.) Plaintiff asserts that the Director of Safety called for additional staffing for the maintenance department as well as changes to the Debtor's management structure to ad-

dress these and other deficiencies in the Debtor's maintenance department. (Id.) Plaintiff claims that the Officers "took no actions or steps to evaluate and/or remedy or to provide any substantive resolution" to those problems with the maintenance division and did not inform the directors of such problems because minutes of the Debtor's Board of Director meetings held after June 1998 "do not discuss, address and/or give any consideration" to them. (Id. at P56.) Plaintiff alleges that the Officers' breaches of their fiduciary duties "caused significant losses" and that "the business judgment rule provides no protection and/or no defense" to his claims. (Id. at PP90-91.)

As previously discussed, even if the Officers' decision to lease or purchase new jet engines rather than repair older jet engines, or the Officers' decision to "cannibalize[] its own planes and older engines by taking them out of service and using them as sources [**15] of spare parts for other planes and engines" (Id. at PP58-60), [*63] caused loss to the Debtor, [HN5] a corporate officer is not legally responsible to the corporation for losses that are the result of a good faith decision. Gagliardi v. TriFoods Int'l, Inc., 683 A.2d at 1051. Plaintiff has not alleged any facts that the Officers' acted in bad faith, nor any facts that would characterize their actions as egregious. See id. at 1052. Plaintiff has merely alleged that the Officers acted in bad faith, and "conclusory allegations are not considered as expressly pleaded facts or factual inferences," sufficient to rebut the presumption of good faith inherent in the business judgment rule. Brehm v. Eisner, 746 A.2d 244, 255 (Del. 2000).

With respect to Plaintiff's claims that the Officers' failure to "inform and advise" the Directors concerning the jet engines was a breach of their fiduciary duties, and is therefore not protected by the judgment rule (D.I. 19 at PP87-88, 91), Plaintiff does not explain how this alleged failure by the Officers violates any of their fiduciary duties, nor does Plaintiff cite any legal authority is support of that theory. [**16] (See D.I. 26.) Plaintiff's claims are merely conclusory, and, once again, Plaintiff's conclusory allegations do not overcome the presumption that the Officers' acted in good faith and in the best interest of the Debtor. See Brehm, 746 A.2d at 255.

**C. Count III**

In Count III of the Amended Complaint, Plaintiff alleges that the directors breached their fiduciary duties of loyalty, good faith, and due care by:

> allowing the mismanagement of the Debtor to continue and to persist to the detriment of the Debtor and its best interests, and failing adequately to oversee

330 B.R. 56, *; 2004 U.S. Dist. LEXIS 7375, **

and to control the management of the Debtor and thereby allowing the specific instances of mismanagement set forth in Count II to occur. ... [and] failing to keep themselves fully and adequately informed concerning the daily management of the Debtor and thereby making or failing to make decisions on a fully informed basis.

(*Id.* at P97.)

Specifically, Plaintiff asserts that the Directors, other than Nachtomi, "abdicated their responsibility over the management and business affairs of the Debtor" because the minutes of the special meeting in April 1998, at which the Directors [**17] resolved to borrow $ 50 million and authorized the purchase of eight new jet engines, "do not reflect that the Board engaged in any discussion concerning, or gave any consideration to, the need for such new engines, the status and/or state of repair of the older engines already owned or under lease by the Debtor, and/or the long term financial impact on the Debtor of the decision to incur additional debt to purchase such new engines." (*Id.* at P61.) Plaintiff also asserts that the minutes of the October 1998 meeting, at which the Directors authorized Nachtomi to negotiate the leasing of four new jet engines, did not "give any consideration to the need for the four ... new engines, the status and/or state of repair of the older engines already owned or under lease by the Debtor, and/or the long term financial impact on the Debtor." (*Id.* at P62.) Plaintiff further claims that the minutes of each Board meeting subsequent to June 1998 show that nothing was done by any of the Directors to address any of the issues identified the Debtor's Director of Safety, *supra.* which "is at best evidence of the Boards' failure to erect systems to gather such information and at worst evidence [**18] of the Board's reckless disregard of such deficiencies if they were, in fact, aware of any of the conditions covered by the Director of Safety's June 1990 report." (*Id.* at P56; D.I. 26 at 27-28.)

[*64] Plaintiff also claims that the Board, "completely abandoned its duties to monitor [the Debtor's] overall business" because the directors permitted Nachtomi to operate the Debtor's office in Tel Aviv n6 "independently of the Debtor's other offices and without any oversite or control." (D.I. 26 at 30; D.I. 19 at P43.) As evidence of this assertion, Plaintiff alleges that the Tel Aviv office maintained its financial records separate from the rest of the company, and opened its own bank account in Israel that only Nachtomi and two other members of management in that office had access to. (D.I. 19 at P44.) Plaintiff alleges that despite the large revenues of the Tel Aviv operation, the Debtor was even-

tually forced into liquidation proceedings in Israel. (*Id.* at P46.)

n6 Plaintiff claims that the Debtor's 1998 Annual Report stated that the Tel Aviv service was "the largest United States carrier and second only to El Al, Israel's national flag carrier" in the passenger airline market between the United States and Israel. (D.I. 19 at P28.)

[**19]

Plaintiff further claims that the Board abdicated its responsibility for the business affairs of the Debtor by not conducting a feasibility, profitability, or other similar study, and by not seeking the advice of an outside consultant prior to opening the Santo Domingo route, a route that, according to Plaintiff, was never profitable. (*Id.* at PP34-35.) Plaintiff also alleges that there "was an absolute lack of any management controls or procedures to ensure that used passenger tickets were processed for payment," the value of which was at least one million dollars. (D.I. 26 at 32; D.I. 19 at PP40-41.) Finally, Plaintiff alleges that the directors failed to oversee the Debtor's operations department. (*Id.* at PP50-53.)

Plaintiff asserts that the business judgment rule does not apply to those alleged actions or omissions by the Directors because "unconsidered inaction," or the "failure of the Board to consider, or even be aware of conditions or activities within the corporation that cause the corporation harm," is an independent basis for liability. (D.I. 26 at 22-23.) In support of this theory, Plaintiff cites *In re Caremark Int'l, Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996). [**20] In *Caremark,* the claim was that "the directors allowed a situation to develop and continue which caused the corporation to enormous legal liability and that in so doing they violated a duty to be active monitors of corporate performance." *Id.* at 967. Like the case at bar, the complaint in *Caremark* did not charge either director self-dealing or loyalty-type problems arising from cases of suspect director motivation. *Id.* The complaint asserted a theory of liability against the defendant directors based on their inaction, which Chancellor William T. Allen said "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Id.* Chancellor Allen went on to explain the theoretical basis for such liability, saying, "a director's obligation includes a duty to attempt in good faith to assure that a corporate information and reporting system, which the board concludes is adequate, exists, and that failure to do so under some circumstances may, in theory at least, render a director liable for losses cause by non-compliance with applicable legal standards." *Id.* at 970.

330 B.R. 56, *; 2004 U.S. Dist. LEXIS 7375, **

*Caremark* is inapposite [**21] to the present case because there is no claim, nor evidence, that the directors' alleged failure to assure an adequate reporting system resulted in a violation of the law. However, Plaintiff's theory of "unconsidered inaction" does find some support in *In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275 [*65] (Del. Ch. 2003). In that case, the plaintiffs alleged that the defendant directors breached their fiduciary duties by blindly approving an employment agreement with the company's president and then, again without any review or deliberation, ignored the chief executive officer's dealings with that officer regarding his termination. *Id.* at 277. Similar to Plaintiff in the case at bar, the plaintiffs alleged that the directors "failed to exercise *any* business judgment and failed to make *any* good faith attempt to fulfill their fiduciary duties" to the corporation. *Id.* at 278 (emphasis in the original). "In short, that . . . complaint," like this complaint "alleged facts implying that the . . . directors failed to 'act in good faith and meet minimal proceduralist standards of attention.'" *Id.* (citing *Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1052 (Del. Ch. 1996) [**22].)

In holding that the business judgment rule didn't apply, the court in *In re Walt Disney Co.* stated that "the facts alleged . . . suggest that the defendant directors consciously and intentionally disregarded their responsibilities, adopting a 'we don't care about the risks' attitude concerning a material corporate decision." *Id.* at 289. "Put differently, all of the alleged facts, if true, imply that the defendant directors knew that they were making material decisions without adequate deliberation, and that they simply did not care if the decisions caused the corporation and its stockholders to suffer injury or loss." *Id.* While Plaintiff asserts in the Amended Complaint that the directors "blindly" approved Nachtomi's decision to purchase or lease new jet engines, this case is distinguishable from *In re Walt Disney Co.*, because Plaintiff has not alleged facts that show that the directors "consciously and intentionally" disregarded their responsibilities, nor do they show that the directors didn't care about the effect their decision would have on the Debtor. The Plaintiff has only alleged that minutes of various board meetings do not reflect a discussion about the need [**23] for new engines or the repair of the old engines.

With respect to the Tel Aviv office, Plaintiff argues that the directors "ceded all responsibility" to Nachtomi, and that the office eventually was forced into liquidation proceedings (D.I. 26 at 30-31), but once again, the facts that Plaintiff has alleged do not show deliberate indifference on the part of the directors. Moreover, Plaintiff does not allege facts that show the deliberate indifference with respect to the Santo Domingo route, the processing of tickets, the operations department of the Debtor, or the report by the Director of Safety. Accordingly, Plaintiff has not alleged facts with sufficient particularity to overcome the protections of the business judgment rule.

### D. Count IV

Plaintiff alleges in Count IV of the Amended Complaint that the Officers breached their fiduciary duties of loyalty, good faith and due care by failing to process used airline tickets for payment, failing to implement and maintain the proper oversight and control of ticket processing and operations, reducing fairs to unprofitable levels, expanding the Debtor's international routes during financial hardships, failing to implement and maintain [**24] the proper oversight and control over the Debtor's Tel Aviv operations, establishing and continuing to service the New York to Santo Domingo routes when there was no evidence that such route could be profitable, ceding all responsibility to manage and control the affairs of the Debtor to Nachtomi, failing to address problems with the debtor's operations department and maintenance division, failing to maintain the Debtor's jet engines in good repair, [*66] and failing to inform the Directors of mismanagement and the financial ramifications of such acts or omissions (*Id.* at P107.) Plaintiff asserts that the Officers' breaches of their fiduciary duties "caused significant losses to the Debtor and to its estate."

As previously discussed, a corporate officer is not legally responsible for losses that result from a good faith decision if there are not any facts showing self-dealing or improper motive. See *Gagliardi*, 683 A.2d at 1051. In Count IV, Plaintiff has not alleged self-dealing or improper motive, and the allegations Plaintiff has made are not supported by facts showing that the Officers acted in bad faith or that there was an abuse of discretion that would void the [**25] protections of the business judgment rule. *See id.* at 1052, *Aronson*, 473 A.2d at 812. Finally, to the extent that Plaintiff alleges Officer liability for "unconsidered inaction" in this Court, Plaintiff has not cited any authority that the Delaware courts have applied this theory to corporate officers.

### E. Count V

In Count V, Plaintiff claims that the Officers' acts and omissions, as previously stated, "constitute gross mismanagement of the Debtor's business, gross negligence, and a gross violation of Defendants' duties of due care to the Debtor," and that the Debtor and its estate has suffered significant losses as a result (D.I. 19 at PP117-118.) [HN6] "To state a claim of gross negligence, plaintiffs must allege facts to support the conclusion that the Board acted with so little information that their decision was 'unintelligent and unadvised,' or outside of the 'bounds of reason and reckless[].'" *In re General Motors*, 694 F. Supp. at 1133. Gross negligence also applies to the decisions made by corporate officers. See *Kaufman v.*

330 B.R. 56, *; 2004 U.S. Dist. LEXIS 7375, **

*Beal,* 1983 Del. Ch. LEXIS 391, CIV. A. Nos. 6485, 6526, 1983 WL 20295 at *3 (Del. Ch. Feb. 25, 1983) As [**26] discussed, other than to allege that the minutes of various Board meetings in 1998 do not reflect any discussion about the purchase or lease of new jet engines, or the repair of old jet engines, which, by itself, does not support a conclusion that the decisions of any of the Officers or Directors were unintelligent, unadvised, or reckless, Plaintiff does not allege any facts that any of the other decisions, acts, or omissions of the Officers were unintelligent, unadvised, or reckless. Accordingly, Plaintiff's conclusory allegations of gross negligence do not overcome the protections of the business judgment rule. *See Brehm,* 746 A.2d at 255.

### F. Counts VI and VII

Plaintiff alleges in Counts VI and VII that the Directors and Officers "wasted corporate assets to the financial loss and detriment of the debtor's estate." (D.I. 19 at PP125, 132. [HN7] The Delaware law standard for pleading waste is stringent. "Directors are only liable for waste when they authorize an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *In re Walt Disney Co. Derivative Litig.* 731 A.2d 342, 362. [**27] Here, the Debtor has not alleged facts that the Debtor did not receive adequate consideration for the transactions entered into and approved by the Officers and Directors, such as the decision to purchase or lease new engines and not repair the older engines, the decision to reduce fares, the decision to expand the Debtor's international routes, and the failure to process some airline tickets. Therefore, Plaintiff's corporate waste claim is conclusory, and conclusory allegations are not sufficient to overcome the protections of the business judgment rule. *See Brehm,* 746 A.2d at 255.

### [*67] V. Conclusion

For the reasons set forth herein, the Defendants' Motion will be granted. An appropriate order will issue.

### ORDER

For the reasons stated in the Memorandum Opinion issued today,

IT IS HEREBY ORDERED that the Defendants' Motion to Dismiss (D.I. 22) is GRANTED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

April 20, 2004
Wilmington, Delaware