# EXHIBIT A

Westlaw.

Not Reported in A.2d                                                                                                Page 1
Not Reported in A.2d, 2006 WL 456786 (Del.Ch.)
(Cite as: Not Reported in A.2d)

C

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware.
CANADIAN COMMERCIAL WORKERS INDUSTRY PENSION PLAN, derivatively and on behalf of Case Financial, Inc., a Delaware corporation, Plaintiff,
v.
Eric ALDEN, Harvey Bibicoff, Gordon Gregory, and Lorne Pollock, former and present directors and officers of Case Financial, Inc., Defendants,
andCASE FINANCIAL, INC., a Delaware corporation, Nominal Defendant.
No. Civ.A. 1184-N.

Submitted Oct. 7, 2005.
Decided Feb. 22, 2006.

Michael F. Bonkowski, Chad J. Toms, Saul Ewing LLP, Wilmington, Delaware; Timothy E. Hoeffner, Shiloh D. Napolitan, Saul Ewing LLP, Philadelphia, Pennsylvania, for Plaintiff.
Albert H. Manwaring, IV, Pepper Hamilton LLP, Wilmington, Delaware, for Defendant Eric Alden.
Edward M. McNally, Thomas E. Hanson, Jr., Morris, James, Hitchens & Williams LLP, Wilmington, Delaware; Robert Weiss, Narvid Scott & Schwartz, LLP, Sherman Oaks, California, for Defendants Harvey Bibicoff and Gordon Gregory.
William M. Lafferty, Natalie J. Haskins, Morris, Nichols, Arsht & Tunnell, LLP, Wilmington, Delaware; Jeffrey I. Shinder, Kerin E. Coughlin, Constantine Cannon, New York, New York, for Defendant Lorne M. Pollock.

MEMORANDUM OPINION
PARSONS, Vice Chancellor.

*1 Plaintiff Canadian Commercial Workers Industry Pension Plan ("CCWIPP" or "Plaintiff") brought this derivative action on behalf of nominal defendant Case Financial, Inc. ("Case Financial") against four former directors and officers of Case Financial. All four individual defendants moved to dismiss. Two individual defendants-Gordon Gregory ("Gregory") and Lorne Pollock ("Pollock") (collectively, the "Settling Defendants")-settled with CCWIPP just before argument of their motions. This is the Court's decision on the remaining individual defendants' motions to dismiss. For the reasons stated below, the Court denies in part and grants in part defendant Eric Alden's ("Alden") and defendant Harvey Bibicoff's ("Bibicoff") motions to dismiss.

I. BACKGROUND [FN1]

FN1. The facts set forth herein are taken from the First Amended Derivative Complaint ("Amended Complaint") unless otherwise indicated and accepted as true for purposes of the individual defendants' motions to dismiss.

A. The Parties

CCWIPP is a Canadian pension plan. At all relevant times, it owned Case Financial stock and, as of the filing of the Amended Complaint, owned 1,449,000 shares.

Case Financial is a Delaware corporation with its principal place of business in California. It provides funding to personal injury attorneys to cover the costs of litigation. The current iteration of Case Financial came into existence via an asset purchase agreement between a predecessor entity, also called Case Financial, and Asia Web in or around 2002. Asia Web bought substantially all of the assets of the predecessor entity and then changed the name of the resulting company to Case Financial. The original Case Financial entity continues to exist and is referred to by the parties as Old Case.

Defendant Alden is the former President, CEO and Co-Chairman of Case Financial. He resigned his positions on February 23, 2004.

Defendant Bibicoff is a former director of Case Financial.FN2 He resigned as a director on October 7, 2004. From February to June 2004, Bibicoff also served as interim CEO of Case Financial.

FN2. The Court will refer to Alden and Bibicoff collectively as "Defendants".

B. Plaintiff's Allegations

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 456786 (Del.Ch.)
(Cite as: Not Reported in A.2d)

Page 2

CCWIPP advances claims against both Alden and Bibicoff for 1) breach of the duty of loyalty and corporate waste, 2) breach of the duty of oversight, *i.e.*, a *Caremark*[FN3] claim, and 3) common law fraud arising out of the formation of Case Financial.

> FN3. *In re Caremark Int'l Derivative Litig.*, 698 A.2d 959 (Del. Ch.1996).

In support of its duty of loyalty claims, CCWIPP alleges, *inter alia,* that Alden received stock options in contravention of his agreement with the Case Financial board of directors, that Alden used Case Financial property and employees to operate his tax preparation business without reimbursing Case Financial and that Alden used Case Financial capital to further his own private investments. Plaintiff also alleges that, shortly after the creation of Case Financial, Bibicoff improperly transferred accounts receivable from Old Case to an entity in which he had a significant interest, that Bibicoff improperly authorized the payment of bonuses to management and that Bibicoff usurped corporate opportunities of Case Financial by funding litigation via Bibicoff & Associates, a company he ran out of his office at Case Financial.

*2 In support of its duty of oversight claims, CCWIPP alleges that Alden's and Bibicoff's failure to prevent the various alleged breaches of the duty of loyalty by the other and by the Settling Defendants constitutes a breach of the duty of oversight as defined in *Caremark.* For example, having pled that Alden improperly received stock options, CCWIPP alleges that "[d]espite their knowledge of the premature issuance of stock to [ ] Alden, Defendants took no action as directors of [Case Financial] to stop the issuance of these shares to [ ] Alden."[FN4] In further support of its *Caremark* claim, Plaintiff alleges that Alden and Bibicoff "consistently and continuously" failed to follow Case Financial's internal policies.[FN5] Finally, CCWIPP alleges that Case Financial personnel other than Defendants failed to follow Case Financial's internal policies, and that Defendants "consciously ignored their duties to [Case Financial] and failed to perform their oversight responsibility to ensure, for example, that borrowers were paying the amounts due to [Case Financial] on time and in full."[FN6]

> FN4. Am. Compl. ¶ 27.
>
> FN5. *Id.* ¶ 60.
>
> FN6. *Id.* ¶ 65.

In support of its fraud claims, CCWIPP alleges that "certain of the Defendants"[FN7] provided Asia Web with materially inaccurate financial statements, while "Defendants"[FN8] failed to disclose to Asia Web a request by one of Old Case's lenders that Old Case perform a fraud audit. Finally, CCWIPP alleges that Defendants allowed Asia Web to purchase worthless notes from a group of investors of which Gregory was a part.

> FN7. *Id.* ¶ 13.
>
> FN8. *Id.* ¶ 17.

C. Alden's Release

On June 7, 2004, Case Financial entered into an Agreement and Mutual Release (the "Release") with Alden.[FN9] The Release provided for the "release and discharge" by Case Financial of Alden from

> FN9. *Id.* ¶ 65; Def. Eric Alden's Opening Br. in Support of his Mot. to Dismiss Pl. [CCWIPP's] First Am. Derivative Compl. ("AOB") Ex. B. The Court may consider the Release in deciding a motion to dismiss because the Complaint makes reference to it. *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,* 872 A.2d 611, 620 n. 30 (Del. Ch.2005).

any and all debts, claims, demands, liabilities, obligations, contracts, agreements, guarantees, causes of action, known and unknown, against any of them which any of them now owns, holds or has at any time heretofore owned or held by reason of any act, matter, cause or thing whatsoever done prior to the execution of this Agreement.[FN10]

> FN10. AOB Ex. B. ¶ 4.

The Release does not, however, "release or discharge Alden from any act or conduct that constitutes a crime under California and/or federal law" (the "Crime Exception").[FN11]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 456786 (Del.Ch.)
(Cite as: Not Reported in A.2d)

Page 3

> FN11. *Id.*

The parties to the release waived the protections of Section 1542 of the California Civil Code ("Section 1542") [FN12] and were represented by counsel. [FN13]

> FN12. Cal. Civil Code § 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

> FN13. The parties argue and the Court agrees that California law governs the Release. It was entered into in California by a California resident and makes explicit reference to California law.

D. Alden's Motion to Dismiss

Alden moves for dismissal on three grounds. First, he seeks dismissal of the entire Amended Complaint based on an affirmative defense. According to Alden, the Release extinguished any claims Case Financial may have had against him. Second, he moves for dismissal of Plaintiff's *Caremark* claim-Count II of the Amended Complaint-on the grounds that Plaintiff's allegations are not sufficiently egregious to fall outside of the protections of Case Financial's 102(b)(7) exculpatory provision. Finally, Alden moves in the alternative for dismissal of the entire Amended Complaint, arguing that CCWIPP is an inadequate representative of the stockholders of Case Financial under Court of Chancery Rule 23.1.

E. Bibicoff's Motion to Dismiss

*3 Bibicoff also moves for dismissal on three grounds. First, he argues that the Case Financial board of directors improperly abdicated its duties by delegating prosecution of these claims to CCWIPP without an adequate investigation into their merits. He contends that abdication warrants dismissal of the entire Amended Complaint. Second, Bibicoff moves for dismissal of the *Caremark* claim for failure to state a claim upon which the Court can grant relief. Finally, Bibicoff moves for dismissal of the fraud claim for lack of personal jurisdiction over him because, he argues, the claim does not arise out of his conduct as a director of Case Financial. He further argues that this Court should decline to exercise "pendent" [FN14] jurisdiction over the fraud claim because the facts of the claim are unrelated to CCWIPP's fiduciary duty claims.

> FN14. Opening Br. of Defs. [Bibicoff and Gregory] in Support of their Mot. to Dismiss ("BOB") at 16.

II. ANALYSIS

A. Legal Standard

The standard for dismissal pursuant to Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted is well established. The motion will be granted if it appears with reasonable certainty that the plaintiff could not prevail on any set of facts that can be inferred from the pleadings. In considering a motion to dismiss under Rule 12(b)(6), the court is required to assume the truthfulness of all well-pleaded allegations of fact in the complaint. All facts of the pleadings and inferences that can reasonably be drawn therefrom are accepted as true. However, neither inferences nor conclusions of fact unsupported by allegations of specific facts are accepted as true. That is, a trial court need not blindly accept as true all allegations, nor must it draw all inferences from them in the plaintiff's favor unless they are reasonable inferences. [FN15]

> FN15. *Albert v. Alex Brown Mgmt. Servs.,* 2005 WL 1594085, at *12 (Del. Ch. June 29, 2005) (internal citations omitted).

B. The Release

Alden argues that the Release extinguished any and all claims Case Financial may have had against him. "When a motion to dismiss relies upon affirmative defenses, such as waiver and release, the Court may dismiss a claim if the plaintiff includes in its pleadings facts that incontrovertibly constitute an affirmative defense to a claim." [FN16] CCWIPP has not done this with respect to the fraud and duty of loyalty claims, but has done so with respect to the *Caremark* claims against Alden.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> FN16. *Capano v. Capano,* 2003 WL 22843906, at *2 (Del. Ch. Nov. 14, 2003) (internal quotation omitted).

### 1. The Crime Exception Creates a Factual Issue that Precludes Dismissal of the Fraud and Duty of Loyalty Claims (Counts I and III of the Amended Complaint)

CCWIPP has pled facts in connection with the fraud claim that, if proven, may constitute a violation of the federal securities laws, the California securities laws or both. If such facts are proven true, they would bar application of the Release because of the Crime Exception contained therein.

Section 10 of the Securities Exchange Act of 1934 (the "Exchange Act") provides, in relevant part, that "[i]t shall be unlawful for any person ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities & Exchange] Commission ["SEC"] may prescribe...."[FN17] SEC Rule 10b-5 makes it unlawful for any person

> FN17. 78 U.S.C. § 78j(b).

*4 (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.[FN18]

> FN18. 17 C.F.R. § 240.10b-5.

The federal courts repeatedly have held, although in varying forms, that "[a] violation of Rule 10b-5 comprises four elements: a (1) misleading (2) statement or omission (3) of a 'material' fact (4) made with scienter."[FN19] A federal jurisdictional means, *e.g.,* the use of the mails or "any facility of any national securities exchange,"[FN20] is an additional, necessary element of a violation of section 10 of the Exchange Act.[FN21]

> FN19. *U.S. v. Smith,* 155 F.3d 1051, 1063 (9th Cir.1998); *see also SEC v. Hasho,* 784 F.Supp. 1059, 1106 (S.D.N.Y.1992) ("To establish liability under [section 10 of the Exchange Act and Rule 10b-5], the SEC must establish ... (1) a misrepresentation, or an omission (where there is a duty to speak), or other fraudulent device; (2) in the offer or sale, or in connection with the purchase or sale, of a security; (3) scienter on the part of the defendant ... and (4) materiality, in the case of any misrepresentation or omission...."). "Although criminal violations of § 10(b) require a showing that the act was done willfully, the elements of [ ] civil and criminal violations of the statute are otherwise the same, and courts in criminal cases frequently cite civil interpretations of the statute to determine whether there has been a violation." *In re Enron Corp. Secs., Derivative & ERISA Litig.,* 235 F.Supp.2d 549, 579 n. 18 (S.D.Tex.2002).

> FN20. *Hasho,* 784 F.Supp. at 1106.

> FN21. *SEC v. Rana Research, Inc.,* 8 F.3d 1358, 1364 (9th Cir.1993).

Like section 10, section 25401 of the California Corporate Securities Law of 1968 provides that it is
unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.[FN22]

> FN22. Cal. Corp.Code § 25401.

"[K]nowledge of the falsity or misleading nature of a statement or of the materiality of an omission, or criminal negligence in failing to investigate and discover them" is also an element of a violation of section 25401.[FN23]

> FN23. *People v. Simon,* 886 P.2d 1271, 1291 (Cal.1995).

CCWIPP alleges that Defendants misstated Old Case's ac-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                                                                               Page 5
Not Reported in A.2d, 2006 WL 456786 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

counts payable and overhead to Asia Web in connection with the sale of Old Case's assets.[FN24] Plaintiff further alleges that Defendants failed to disclose significant legal fees owed by Old Case, along with a request for a fraud audit by one of Old Case's creditors.[FN25] In the aggregate, the allegedly misrepresented and omitted amounts total approximately $1.5 million.[FN26] These misstatements and omissions, Plaintiff avers, were material and induced Asia Web to issue securities to Defendants. The Amended Complaint also alleges that Defendants were aware of these misstatements and omissions.[FN27] These allegations, if proven, could give rise to a violation of California or the federal securities laws. To wit, Defendants allegedly 1) offered to buy stock from Asia Web, 2) by means of an oral communication, 3) which included a material untrue statement and 4) knew the statement was untrue. Therefore, contrary to Alden's contention, the Amended Complaint does not include facts that incontrovertibly support his affirmative defense of release to the fraud claim.

> FN24. Am. Compl. ¶ 14.
>
> FN25. *Id.* ¶¶ 15-17.
>
> FN26. *See id.* ¶¶ 14 (alleging a difference of $136,000 between the amounts disclosed and actually owed), 15 (alleging that $133,714.83 in legal bills were not disclosed), 16 (alleging that a creditor was owed $1.3 million).
>
> FN27. *See, e.g., id.* ¶¶ 14 (alleging that Defendants represented that overhead would be approximately $70,000 per month when it was $200,000 per month immediately following the closing of the stock issuance), 17 (alleging that Defendants were aware of a fraud audit request letter but did not disclose it to Asia Web before closing on the asset purchase transaction).

Similarly, the Amended Complaint does not include facts that incontrovertibly constitute an affirmative defense to the duty of loyalty claim because there is a possibility, however remote, that the alleged actions may constitute crimes such as theft or common law fraud under California law. As such, the Crime Exception also precludes dismissal of the duty of loyalty claim pursuant to the Release.[FN28]

> FN28. This decision on a motion to dismiss does not preclude Alden from arguing at a later stage in this litigation that the Release, in fact, does extinguish the duty of loyalty claim.

*5 Alden argues that CCWIPP cannot defend against the motions to dismiss by arguing that the Crime Exception bars enforcement of the Release because it did not so argue in its Complaint.[FN29] Alden misapprehends Delaware law. As he correctly observes, Court of Chancery Rule 15(aaa) requires plaintiffs confronted with a Rule 12(b)(6) motion to dismiss to either stand on the allegations of their complaint or amend their complaint.[FN30] Rule 15(aaa) does not, however, require a plaintiff to make all of its *arguments* in its complaint. CCWIPP alleged *facts* that may constitute a crime in its Complaint. This is all Rule 15(aaa) requires.[FN31]

> FN29. Def. [ ] Alden's Reply Br. in Support of His Mot. to Dismiss Pl. [CCWIPP's] First Am. Derivative Compl. ("ARB") at 11-13.
>
> FN30. *Id.* at 12 (citing *Stern v. LF Capital Partners, LLC,* 820 A.2d 1143 (Del. Ch.2003)).
>
> FN31. *See Stern,* 820 A.2d at 1144 (denying motion to amend complaint where plaintiffs chose to stand on their complaint but then sought to amend to make more detailed allegations of fact based on information known to plaintiffs at time they filed original complaint); *Orman v. Cullman,* 794 A.2d 5, 28 n. 59 (Del. Ch.2002) (refusing to consider additional facts alleged in briefing on a motion to dismiss when facts were offered to substantiate allegations made in complaint).

2. The Release extinguished any claims Case Financial may have had against Alden for breaches of the duty of oversight
(Count II of the Amended Complaint)

In contrast to the allegations made by CCWIPP in connection with the fraud claim, the allegations made in connection with its *Caremark* claim do not give rise to an inference that the challenged conduct may constitute a crime. At most, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d  
Not Reported in A.2d, 2006 WL 456786 (Del.Ch.)  
**(Cite as: Not Reported in A.2d)**

Page 6

allegations give rise to an inference of poor management of Case Financial.[FN32] As such, the Crime Exception does not apply to the *Caremark* claim.

> FN32. As explained *infra*, Part II.C.1, there arguably is significant overlap between the underlying wrongs complained of in the breach of loyalty claim and the "self-dealing transactions" involving directors and officers as to which the *Caremark* claim alleges Defendants failed to provide adequate oversight in conscious disregard of their duties to Case Financial. The allegations of the Amended Complaint in this regard are extremely vague and provide no support for inferring some independent form of criminal activity related to the degree of oversight. The other alleged misconduct that Defendants allegedly failed to monitor relates to managerial concerns such as the creditworthiness of borrowers and the perfection of security interests. *See* Am. Compl. ¶ 81.

CCWIPP further argues that Alden procured the Release by fraudulent inducement and thus it is null and void. Alternatively, it argues that Alden's fraudulent nondisclosure of potential claims bars enforcement of the Release. As to the former argument, CCWIPP misapprehends California law; as to the latter, CCWIPP has pled facts that incontrovertibly refute this argument.

General releases of all claims known and unknown are completely enforceable under California law [FN33] if the release explicitly covers "unknown or unanticipated claims," both parties were represented by counsel and the parties waived the protections of Section 1542.[FN34] The Release here satisfies these three requirements. Moreover, fraudulent inducement is not a defense to the enforcement of a general release that satisfies these requirements.[FN35] Fraud in the inception, *i.e.*, one party did not know what it was signing, and a misrepresentation by a fiduciary are defenses to the enforcement of a release,[FN36] but neither of those exceptions applies here.

> FN33. *Winet v. Price*, 4 Cal.App. 4th 1159, 1173 (Cal.Ct.App.1992).

> FN34. *San Diego Hospice v. County of San Diego*, 31 Cal.App. 4th 1048, 1053-54 (Cal.Ct.App.1995) (citing *Winet*, 4 Cal.App. 4th at 1168).

> FN35. *Id.*

> FN36. *Id.* at 1054-55.

In a final attempt to avoid enforcement of the Release, CCWIPP relies upon a dictum from *San Diego Hospice* to the effect that fraudulent nondisclosure bars enforcement of a general release.[FN37] Even assuming that is a correct statement of California law, it does not bar enforcement of Alden's Release because CCWIPP has pled facts that eliminate any requirement of disclosure on the part of Alden to Plaintiff. A duty to disclose arises when "(1) the material fact is known to (or accessible only to) the defendant and (2) *the defendant knows the plaintiff is unaware of the fact and cannot reasonably discover the undisclosed fact.*"[FN38] CCWIPP has pled that defendants Bibicoff and Gregory, who were serving as officers and directors of Case Financial when it entered into the Release, were aware of all of the material facts that Alden allegedly did not disclose.[FN39] Under California law, this knowledge is imputed to Case Financial.[FN40] Therefore, under the facts alleged by CCWIPP, no duty to disclose by Alden arose.

> FN37. Pl.'s Am. Mem. of Law in Opposition to Defs.' Mots. to Dismiss ("POB") at 35 (citing *San Diego Hospice*, 31 Cal.App. 4th at 1055).

> FN38. *San Diego Hospice*, 31 Cal.App. 4th at 1055 (internal citations omitted).

> FN39. *Compare* Am. Compl. ¶ 67 (listing five facts Alden allegedly did not disclose) *with* Am. Compl. ¶¶ 13-21, 58 (alleging all individual defendants had knowledge of Alden's activities).

> FN40. *Austin v. Hallmark Oil Co.*, 21 Cal.2d 718, 729 (Cal.1943) ( "[A] corporation is presumed to know what is known to its managing officers and directors.").

*6 In sum, Plaintiff has shown no reason to bar enforcement of the Release as to the *Caremark* claim against Alden.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                                                                           Page 7
Not Reported in A.2d, 2006 WL 456786 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Thus, the Court concludes that the Release bars that claim and dismisses it with prejudice.

### C. The Complaint Fails to Adequately State a *Caremark* Claim

To state a claim for breach of the duty of oversight, CCWIPP must allege facts that show "(1) that the directors knew or (2) should have known that violations of law were occurring and, in either event, (3) that the directors took no steps in a good faith effort to prevent or remedy that situation, and (4) that such failure proximately resulted in the losses complained of...." [FN41] Such a claim is a difficult one to prove. [FN42]

> FN41. *Caremark,* 698 A.2d at 971; *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,* 833 A.2d 961, 976 (Del. Ch.2003) ("Two key elements necessary to proving a breach of fiduciary duty claim in this instance would be that (1) the directors knew or should have known that a violation of the law was occurring and, (2) 'the directors took no steps in a good faith effort to prevent or remedy that situation.' ") (quoting *Caremark,* 698 A.2d at 971).

> FN42. *Guttman v. Huang,* 823 A.2d 492, 505-06 (Del. Ch.2003); *Caremark,* 698 A.2d at 967 ("The theory here advanced is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.").

The duty of oversight implicates both the duty of care and the duty of loyalty:

Although the *Caremark* decision is rightly seen as a prod towards greater exercise of care by directors in monitoring their corporations' compliance with legal standards, by its plain and intentional terms, the opinion articulates a standard for liability for failures of oversight that requires a showing that the directors breached their duty of loyalty by failing to attend to their duties in good faith. Put otherwise, the decision premises liability on a showing that the directors were conscious of the fact that they were not doing their jobs. [FN43]

> FN43. *Guttman,* 823 A.2d at 506.

Thus, if the Amended Complaint adequately states a *Caremark* claim, the stated claim necessarily falls outside the liability waiver provided by Case Financial's 102(b)(7) exculpatory charter provision. [FN44]

> FN44. *See Caremark,* 698 A.2d at 971 ("Generally where a claim of directorial liability for corporate loss is predicated upon ignorance of liability creating activities within the corporation ... in my opinion only a sustained or systematic failure of the board to exercise oversight ... will establish the *lack of good faith* that is a necessary condition to liability.") (emphasis added); *Guttman,* 823 A.2d at 506 ("Functionally, *Caremark* also matches the liability landscape for most corporate directors, who are insulated from monetary damage awards by exculpatory charter provisions."); *cf. In re Walt Disney Co. Derivative Litig.,* 825 A.2d 275, 290 (Del. Ch.2003) ("Where a director consciously ignores his or her duties to the corporation, thereby causing economic injury to its stockholders, the director's actions are either 'not in good faith' or 'involve intentional misconduct.' ").

Plaintiff's *Caremark* allegations fall into two categories. First, CCWIPP alleges that Defendants' failure to stop each other's and the Settling Defendants' alleged self-dealing transactions violated their duty of oversight. [FN45] Second, CCWIPP alleges that Defendants themselves, along with officers of Case Financial, "failed to follow the policies and procedures or standard industry practices to investigate the creditworthiness of the proposed borrowers." [FN46] "Thus," CCWIPP argues, "Defendants ... consciously ignored their duties to [Case Financial] and failed to perform their oversight responsibility to ensure that borrowers were paying the amounts due to [Case Financial] on time and in full." [FN47] Plaintiff's Amended Complaint avers just a few specific facts coupled with numerous generalizations and conclusory allegations; together, these facts and unsupported legal conclusions fall well short of stating a *Caremark* claim.

> FN45. Am. Compl. ¶¶ 27, 31, 34, 41, 45, 57, 58.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN46. *Id.* ¶ 63.

FN47. *Id.* ¶ 65.

### 1. Failure to stop other Defendants' alleged self-dealing transactions

CCWIPP's claim for breach of the fiduciary duty of oversight is exceedingly general. First, they attempt to have most of their breach of loyalty allegations double as *Caremark* claims, as well, by averring that "Defendants breached [this duty of oversight] by continually failing to provide adequate oversight over the underwriting and operations of [Case Financial,] consciously ignoring their duties to [Case Financial.] Specifically, Defendants failed to (a) prevent directors and officers from engaging in self-dealing transactions...." FN48 The Amended Complaint, however, lacks the specificity required to support a *Caremark* or conscious disregard claim, as opposed to a duty of loyalty claim, for the alleged self-dealing transactions. FN49 A conclusory allegation at the end of a general description of self-dealing transactions that Defendants were aware of, or consciously ignored, their duties to Case Financial in failing to be aware of the challenged transactions or to stop them is not sufficient to support a separate *Caremark* claim or demonstrate conscious disregard of the directors' duties.

FN48. *Id.* ¶ 81(a).

FN49. *See, e.g., Guttman,* 823 A.2d at 507 ("'[Plaintiffs'] conclusory complaint is empty of the kind of fact pleading that is critical to a *Caremark* claim, such as contentions that the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation."); *Malpiede v. Townson,* 780 A.2d 1075, 1092-94 (Del.2001) (where, as here, a defendant raises a Section 102(b)(7) provision as a defense, a plaintiff must allege "well-pleaded facts supporting a breach of loyalty or bad faith claim"); *David B. Shaev Profit Sharing Account v. Armstrong,* No.

1449-N, slip op. at 11-12 & n. 13 (Del. Ch. Feb. 13, 2006) (listing a variety of ways a plaintiff can plead a *Caremark* claim, but concluding, in the demand excusal context, that plaintiff's bald allegations that defendants should have known about wrongdoing within the company simply because of the financial materiality of the wrongdoing were insufficient).

*7 The Amended Complaint identified seven or eight self-dealing transactions. Defendant Alden allegedly participated in and benefited from at least half of those actions. FN50 The other individual Defendant, Bibicoff, approved at least two of those transactions. Some or all of these incidents may give rise to liability on the part of Alden or Bibicoff or both under a breach of the duty of loyalty theory. On the facts alleged, however, they fail to support a *Caremark* claim. As an interested party, Alden had loyalty obligations, but neither logic nor precedent suggests he had a separate enforceable duty to oversee his own actions in such circumstances. FN51 For example, CCWIPP alleges that Alden failed to prevent Bibicoff from investing his own money in lines of business similar to those pursued by Case Financial and that Alden and Bibicoff failed to stop each other and the Settling Defendants from running other businesses out of their Case Financial offices. But, directors of Delaware corporations generally have no duty to monitor the personal affairs of other directors and officers. FN52 In addition, the Amended Complaint fails to allege specific facts showing that the accused directors had knowledge of the alleged wrongdoing or ignored a "red flag" regarding it or that the board exhibited a sustained or systematic failure to exercise oversight. FN53

FN50. *See* Am. Compl. ¶¶ 23-27, 32-34, 47-49 and 50-53.

FN51. Similarly, alleged self-dealing activities of Bibicoff himself, *see id.* ¶¶ 28-31, 35-41, cannot provide the predicate for a claim that Bibicoff breached his duty of oversight. Further, based on the scant facts alleged, the decision by Bibicoff and Gregory, as members of the Compensation Committee of the Case Financial board, to pay Alden and Pollock bonuses to cover taxes related to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

receipt of company stock, *see id.* ¶ 32, provides no basis for a duty of oversight claim. Bibicoff conceivably could be liable for a breach of loyalty in that situation, but Defendants' motion does not address that issue. Moreover, the allegations regarding the decision to pay bonuses to cover taxes lack specificity in terms of, for example, whether Bibicoff's approval of that transaction was disinterested, independent and informed, and whether it proximately resulted in any loss to the corporation.

FN52. *Beam,* 833 A.2d at 971.

FN53. *See id.* ("In *Graham v. Allis-Chalmers Manufacturing Co.,* the Delaware Supreme Court held that 'absent cause for suspicion there is no duty upon directors to install and operate a corporate system of espionage to ferret out wrongdoing which they have no reason to suspect exists.... [T]he quoted statement from *Graham* refers to wrongdoing *by the corporation.*"); *Caremark,* 698 A.2d at 971.

The remaining self-dealing transactions that CCWIPP alleges Defendants failed to stop do not come close to the level of sustained or systematic failure of oversight necessary to sustain a *Caremark* claim. The Amended Complaint provides few, if any, details regarding the various incidents. No dates are given for some and others appear to have occurred before Case Financial even existed. CCWIPP's pleading also fails to provide much, if any, specific information on any damage that proximately resulted from the alleged failures of oversight.

2. Failure to oversee Case Financial personnel FN54

FN54. Plaintiff's argument that Defendants should be held to a higher standard of care because they are professionals-Alden is a CPA, while Bibicoff is an attorney-is unavailing. First, no Delaware case has held that directors with professional qualifications are held to a higher standard of care in the duty of oversight context. Second, CCWIPP fails to articulate how Defendants' status as professionals provides them greater ability to ferret out wrongdoing or puts them in a "unique position to know" what their fellow directors are doing. *Cf. In re Emerging Commc'ns S'holders Litig.,* 2004 WL 1305745, at *39-40 (Del. Ch. May 3, 2004) (holding after a full trial on the merits that a director with *financial expertise* and "in a unique position to know" should have argued more vociferously that the *$10.25 price* of a proposed transaction was unfair where the court concluded that the price was $27.80/share too low and that the director was not independent); *see also* E. Norman Veasey & Christine T. Di Guglielmo, *What Happened in Delaware Corporate Law and Governance from 1992-2004? A Retrospective on Some Key Developments,* 153 U. Pa. L.Rev. 1399, 1445-47 (2005) ("It would be a perversity of corporate governance goals, in my view, for the Delaware courts to announce a general rule that a director with special expertise is more exposed to liability than other directors solely because of her status as an expert. Rather, the facts and procedural posture should be key.").

To reiterate, in order to state a *Caremark* claim adequately, CCWIPP must plead facts that would support a reasonable inference that there was a "sustained or systematic" failure of oversight.FN55 "In other words, liability is premised on a showing that the directors were conscious of the fact that they were not doing their jobs." FN56

FN55. *Caremark,* 698 A.2d at 971.

FN56. *Saito v. McCall,* 2004 WL 3029876, at *6 (Del. Ch. Dec. 20, 2004) (internal quotation omitted), *aff'd,* 2005 Del. LEXIS 106 (Del. Mar. 8, 2005); *Guttman,* 823 A.2d at 506.

CCWIPP has not pled such a sustained or systematic failure. At most, Plaintiff has pled facts detailing one concrete incident in which it is possible Case Financial's policies were not followed.FN57 The few remaining paragraphs of the Amended Complaint addressed to the *Caremark* claim only broadly allege that procedures were not followed.FN58 CCWIPP does not describe how Defendants, as directors, interacted with Case Financial personnel, how much time

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                                 Page 10
Not Reported in A.2d, 2006 WL 456786 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

they spent, or did not spend, overseeing the activities of Case Financial personnel, etc. In fact, Plaintiff pleads that Case Financial used both an Underwriting Manual and a Standard Operating Procedures Manual,[FN59] so it arguably had adequate procedures and safeguards. The *Caremark* section of the Amended Complaint then conclusorily avers that Defendants "ignored their duties to the Company." [FN60] Absent supporting facts, such bald conclusions need not and will not be accepted as sufficient to survive a motion to dismiss.[FN61]

> FN57. Am. Compl. ¶¶ 61-62. This sole specific example of a violation of Case Financial's policies relates to advances Alden made to an attorney in March and April of 2001, more than a year before the formation of Case Financial. CCWIPP complains that two years later Defendants still had not taken "any affirmative action to recover these fees." *Id.* ¶ 62. Perhaps, CCWIPP could have questioned that inaction as a breach of the duty of care, but, as pled, it does not provide a basis for a breach of the duty of *oversight* claim that would be outside the protections of Case Financial's 102(b)(7) exculpatory provision.
>
> FN58. *See id.* ¶¶ 63-64 ("[O]fficers responsible for the underwriting analysis on behalf of [Case Financial] failed to follow the policies and procedures.... In addition, for many of these loans, the Company failed to perfect the security interests it received...."). *Cf. Saito,* 2004 WL 3029876, at *7 (concluding that plaintiffs had "barely" stated a *Caremark* claim even though they had pled numerous, specific facts demonstrating that directors should have been aware of accounting irregularities and a $40-$55 million accounting problem in an acquisition target).
>
> FN59. Am. Compl. ¶ 59.
>
> FN60. *Id.* ¶ 65.
>
> FN61. *In re Walt Disney Co.,* 825 A.2d at 285 ("Conclusory statements, without specific allegations to support them, will not suffice [to survive a

12(b)(6) motion to dismiss]."); *UbiquiTel Inc. v. Sprint Corp.,* 2005 WL 3533697, at *2 (Del. Ch. Dec. 14, 2005) ("Neither inferences nor conclusions of fact unsupported by allegations of specific facts are accepted as true.") (internal quotation omitted).

*8 CCWIPP also has not pled specific facts supporting a reasonable inference that Defendants were conscious of the fact that they were not doing their jobs. Likewise, the Amended Complaint contains no specific allegations that Defendants ignored red flags that should have alerted them that Case Financial personnel were ignoring company policies.

CCWIPP's allegations, therefore, fail to meet the requirements for pleading a *Caremark* claim. Thus, the Court dismisses Plaintiff's *Caremark* claim as to both Alden and Bibicoff.[FN62]

> FN62. CCWIPP's failure to state a *Caremark* claim provides an independent, alternative ground for dismissal of this claim as to Alden.

D. Adequacy of CCWIPP as a Derivative Plaintiff

To pursue a derivative claim, CCWIPP must satisfy the adequacy requirements of Court of Chancery Rule 23.1.[FN63] The burden of proof, however, rests with the defendant challenging a plaintiff's adequacy.[FN64] Alden contends that CCWIPP is not an adequate derivative plaintiff for the Case Financial stockholders because 1) CCWIPP is a creditor of Case Financial as well as a stockholder, 2) CCWIPP is not the driving force behind the litigation and 3) CCWIPP "bears a high degree of vindictiveness toward [him]."[FN65] To prevail, Alden "must show a *substantial likelihood* that the derivative action is not being maintained for the benefit of the shareholders."[FN66]

> FN63. *Emerald Partners v. Berlin,* 564 A.2d 670, 673 (Del. Ch.1989) ("Although Chancery Rule 23.1 contains no specific requirements as to the competency of a stockholder derivative plaintiff, the analogous adequacy requirements of Chancery Rule 23, which relates to class actions, is applied....

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d  
Not Reported in A.2d, 2006 WL 456786 (Del.Ch.)  
(Cite as: Not Reported in A.2d)

Page 11

> Rule 23.1 is intended to make explicit that adequacy of representation is a requirement of derivative as well as class actions.") (internal citations and quotation omitted).
>
> FN64. *Id.* at 674.
>
> FN65. AOB at 25.
>
> FN66. *Emerald Partners,* 564 A.2d at 674 (emphasis added) (citing *Youngman v. Tahmoush,* 457 A.2d 376, 380 (Del. Ch.1983); *Owen v. Modern Diversified Indus., Inc.,* 643 F.2d 441 (6th Cir.1981)).

The elements relevant to this inquiry are (1) the existence of economic antagonisms between the plaintiff and those he would represent; (2) the nature of the remedy sought; (3) indications that the named plaintiff was not the driving force behind the litigation; (4) plaintiff's unfamiliarity with the litigation; (5) the existence of other litigation pending between plaintiff and defendants; (6) the relative magnitude of plaintiff's personal interests as compared with his interest in the derivative action itself; (7) plaintiff's vindictiveness toward the defendants; and (8) the degree of support plaintiff receives from the stockholders he purports to represent.[FN67]

> FN67. Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate & Commercial Practice in the Delaware Court of Chancery* § 9-2[b] (2005) [hereinafter *Wolfe & Pittenger* ] (citing *Katz v. Plant Indus., Inc.,* 1981 WL 15148, at *2 (Del. Ch. Oct. 27, 1981)); *accord Youngman,* 457 A.2d 376.

A combination of these factors often forms the basis of a dismissal of a plaintiff as inadequate, but a strong showing as to one factor is sufficient if that factor "involve[s] some conflict of interest between the derivative plaintiff and the class."[FN68] The primary factor in this inquiry "is whether there is an economic conflict between the plaintiff and the other stockholders making it likely that the interests of the other stockholders will be disregarded in the prosecution of the suit."[FN69] "Purely hypothetical, potential, or remote conflicts of interest [ ] will not disable a derivative plaintiff."[FN70]

> FN68. *In re Fuqua Indus., Inc. S'holder Litig.,* 752 A.2d 126, 130 (Del. Ch.1999).
>
> FN69. David A. Drexler, Lewis S. Black, Jr. & A. Gilchrist Sparks, III, *Delaware Corporation Law & Practice* § 42.03[3] (2002) [hereinafter *Drexler, Black & Sparks* ] (internal citation omitted).
>
> FN70. *Id*

The Delaware courts have not directly addressed what the proper procedural standard is to evaluate a motion to disqualify a derivative plaintiff pursuant to Rule 23.1. The inquiry is highly factual.[FN71] In this case, the record remains largely undeveloped. The movant Alden proffered facts outside of the pleadings but did not engage in any discovery; the nonmovant Plaintiff chose not to present any counterveiling evidence of its own. Therefore, the Court considers it appropriate to apply the familiar summary judgment standard:

> FN71. *See Wolfe & Pittenger* § 9-2[b] ("[T]he Delaware decisions [on the question of adequacy of a derivative plaintiff] are markedly fact-specific.").

*9 Summary judgment will be granted where the moving party demonstrates that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law. When determining whether to grant summary judgment, a court must view the facts in the light most favorable to the nonmoving party.[FN72]

> FN72. *UbiquiTel Inc. v. Sprint Corp.,* 2006 WL 44424, at *2 n. 15 (Del. Ch. Jan. 4, 2006) (internal quotation omitted); *Cf.* Court of Chancery Rule 12(b)(6); *Flynn v. Bachow,* 1998 WL 671273, at *4 (Del. Ch. Sept. 18, 1998) (exercising discretion to convert motion to dismiss into motion for summary judgment because movant offered documents outside of the pleadings to the court for consideration).

As with a motion for summary judgment, CCWIPP does not have to supply affidavits or other competent evidence to meet Alden's motion to dismiss for inadequate representa-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                              Page 12
Not Reported in A.2d, 2006 WL 456786 (Del.Ch.)
(Cite as: Not Reported in A.2d)

tion. When it elects not to do so, however, the test is whether the factual showing made by Alden is sufficient to demonstrate that CCWIPP would be an inadequate representative.[FN73]

> FN73. See *Gutridge v. Iffland*, 2005 WL 3454129, at *5 (Del. Dec. 15, 2005) ("The burden initially falls upon the moving party to show the nonexistence of a material fact, but then shifts to the nonmoving party to show the contrary."). The burden only shifts, however, if the movant has made a sufficient showing. *Phillips v. Del. Power & Light Co.*, 216 A.2d 281, 285 (Del.1966) ("[W]e have made it plain that the moving party has the initial burden; he has the job of seeing that the record contains enough evidence to justify the granting of his motion. If he fails, the resisting party need not introduce anything into the record.").

Alden submitted an affidavit in support of his motion and thus attempts to rely on facts outside of the pleadings.[FN74] CCWIPP argues that, Alden's facts notwithstanding, it is an adequate derivative plaintiff. Because CCWIPP has not disputed Alden's allegations, the Court assumes they are true, but otherwise draws inferences in favor of the nonmoving Plaintiff.

> FN74. AOB Ex. D (Aff. of Eric Alden).

Alden first argues that because CCWIPP is a large creditor, as well as a stockholder, of Case Financial there exists a disabling economic antagonism between it and Case Financial's other stockholders.[FN75] This Court has held, however, that "the fact that the plaintiff may have interests which go beyond the interests of other stockholders, but are at least coextensive with the interests of the other stockholders, will not defeat the plaintiff serving as a derivative representative."[FN76] CCWIPP's interests are at least coextensive with the interests of the other stockholders: it wants the largest recovery possible so that it will realize some value for its equity investment.[FN77] Further, the requirement that this Court approve settlements of derivative actions provides a check against CCWIPP settling this suit for an inadequate amount that merely provides it recovery as a creditor but not as a stockholder.

> FN75. Alden Aff. ¶ 14; AOB at 25-26.

> FN76. *Drexler, Black & Sparks* § 42.03[3] (citing *Youngman*, 457 A.2d at 380).

> FN77. Cf. *Production Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 790 n. 56 (Del. Ch.2004) (observing that the interests of creditors and stockholders in an insolvent company may diverge). The *Production Resources* case did not address the specific situation presented here, however, where one entity is both a large creditor and a large stockholder.

Alden also alleges that this suit is part of a pattern whereby the current CEO of Case Financial, Michael Schaffer ("Schaffer"), purchases assets, launches a new business with a new name to generate gratuitous trading activity in the new business's stock and then, when the stock price inevitably goes down, sues everyone involved.[FN78] Schaffer is the true driving force behind this litigation, Alden further argues, not CCWIPP.[FN79] Assuming these very general allegations are true, they do not necessarily disqualify CCWIPP from serving as a derivative plaintiff in this case because there may be an innocent explanation for the pattern of facts involving Schaffer. Drawing all reasonable inferences in CCWIPP's favor, the Court cannot rule out that possibility. Further, there is nothing inherently improper about the CEO of a company being the driving force behind a suit attempting to recover money for his company.

> FN78. Alden Aff. ¶¶ 5-8.

> FN79. AOB at 26.

Alden also alleges that instituting this suit against him when he had previously entered into a release with Case Financial demonstrates vindictiveness towards him. It is possible that CCWIPP brought this suit only to harass Alden, but it is also possible that CCWIPP did so because it had a good faith argument that the Release was not enforceable and believed Alden had wronged Case Financial. Further, "[i]nadequacy as a class representative is not made out merely because of a disconcordant relation between plaintiff and defendants. To the contrary, this may inspire plaintiff to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d																													Page 13
Not Reported in A.2d, 2006 WL 456786 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

be an even more forceful advocate." FN80

> FN80. *Emerald Partners*, 564 A.2d at 676 (internal quotation omitted).

*10 At this early stage of the litigation, where the only evidence offered on the question of adequacy is Alden's affidavit and there has been no discovery the Court finds that Alden's allegations and the inferences from them could support a conclusion that CCWIPP is an inadequate derivative plaintiff, but they do not compel that conclusion. In the Court's opinion, Alden has not yet shown a substantial likelihood that CCWIPP is not acting for the benefit of all Case Financial stockholders.FN81 Further development of the facts, however, may prove that CCWIPP is an inadequate derivative plaintiff. Therefore, the Court denies without prejudice Alden's motion to disqualify CCWIPP as a derivative plaintiff.

> FN81. See *Wolfe & Pittenger* at text accompanying n. 95 ("Mere allegations that the plaintiff is motivated by personal gain or animus are unlikely to succeed, at least in the early stages of the litigation."); *Emerald Partners*, 564 A.2d at 676 (considering deposition testimony on the question of adequacy of a derivative plaintiff); *Youngman*, 457 A.2d 376 (same).

### E. The Case Financial Board's Decision to Allow CCWIPP to Prosecute this Action

Defendant Bibicoff asserts that the Case Financial board impermissibly abdicated its duties by delegating prosecution of this action to CCWIPP. CCWIPP served its demand on the Case Financial board on March 11, 2005; three days later, the board delegated prosecution to CCWIPP.FN82 According to Bibicoff, "the haste with which the decision was made precluded the meaningful deliberations required of a board deciding whether to pursue derivative litigation ." FN83

> FN82. Am. Compl. ¶¶ 71-72.
>
> FN83. Reply Br. of Defs.' [Bibicoff and Gregory] in Support of their Mot. to Dismiss ("BRB") at 3.

Upon receipt of a valid stockholder demand, the board of directors of a Delaware corporation must engage in a two-step process.

First, the directors must determine the best method to inform themselves of the facts relating to the alleged wrongdoing and the considerations, both legal and financial, bearing on a response to the demand. If a factual investigation is required, it must be conducted in good faith. Second, the board must weigh the alternatives available to it, including the advisability of implementing internal corrective action and commencing legal proceedings.FN84

> FN84. *Wolfe & Pittenger* § 9-2[b] (quoting *Rales v. Blasband*, 634 A.2d 927, 935 (Del.1993)).

There is neither a prescribed procedure that a board must follow in carrying out these tasks nor a set amount of time these tasks must take.FN85 Further, a formal factual investigation may not always be necessary for the board to sufficiently inform itself.FN86

> FN85. *Id.*; see also *Charal Inv. Co. v. Rockefeller*, 1995 WL 684869, at *3 (Del. Ch. Nov. 7, 1995) ("[N]o formula exists by which the Court may determine if a 'reasonable' investigation period has elapsed.").
>
> FN86. *Wolfe & Pittenger* § 9-2[b].

In essence, Bibicoff argues that the Case Financial board could not possibly have fulfilled its demand-response duties in the time it did. Bibicoff may be correct that three days was an insufficient amount of time for the Case Financial board to fulfill its duties in the context of this case, but the Court cannot draw that conclusion without further development of the relevant facts. Three days is not per se insufficient *as a matter of law*. In fact, the "amount of time needed for a response [varies] in direct proportion to the complexity of the technological, quantitative, and legal issues raised by the demand." FN87 "[W]hether the board has taken a reasonable amount of time in its investigation is essentially a question of fact." FN88 As such, the Court cannot resolve the question of whether the Case Financial board fulfilled its duties on the undeveloped record available at this prelimin-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ary stage of the litigation. Therefore, the Court denies Bibicoff's motion to dismiss the entire Amended Complaint because of an improper delegation by the Case Financial board.

> FN87. *Charal Inv. Co.,* 1995 WL 684869, at *3 (quoting *Allison v. Gen. Motors Corp.,* 604 F.Supp. 1106, 1117-18 (D.Del.1985)).
>
> FN88. *Id.*

F. Jurisdiction over Bibicoff with respect to the Fraud Claim

*11 This Court has personal jurisdiction over nonresident directors and officers of Delaware corporations under 10 Del. C. § 3114.[FN89] "[T]he Delaware courts have consistently held that Section 3114 is applicable only in connection with suits brought against a nonresident for acts performed in his ... capacity as a director ... of a Delaware corporation."[FN90] Further narrowing the scope of Section 3114, "Delaware cases have consistently interpreted [early cases construing the section] as establishing that [it] ... appl[ies] only in connection with suits involving the statutory and nonstatutory fiduciary duties of nonresident directors." FN91

> FN89. Regarding directors elected, appointed or serving after September 1, 1977, 10 Del. C. § 3114(a) states in relevant part:
> Every nonresident of this State who ... accepts election or appointment as a director ... of a corporation organized under the laws of this State ... shall, by such acceptance or such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation ... as an agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such director ... is a necessary or proper party, or in any action or proceeding against such director ... *for violation of a duty in such capacity,* whether or not the person continues to serve as such director ... at the time suit is commenced. Such acceptance or service as such director ... shall be a signification of such director ... that any process when so served shall be of the same legal force and validity as if served upon such director ... within this State .... (emphasis added).
> Regarding officers elected, appointed or serving after January 1, 2004, *see* 10 Del. C. § 3114(b) (providing for same jurisdiction over officers as for directors).
>
> FN90. *Wolfe & Pittenger* § 3-5[a] (citing cases).
>
> FN91. *Id.* Effective January 1, 2004, 10 Del. C. § 3114 was amended to bring officers of Delaware corporations within its reach. The language and holdings of the pre-2004 cases concerning Section 3114 thus now apply to officers, too.

Bibicoff argues that the claim of fraud arising out of his pre-formation conduct as an employee of Case Financial's predecessor, Old Case, does not concern his service as a director of Case Financial and thus this Court lacks personal jurisdiction over him with respect to that claim. "[O]nce a defendant has moved to dismiss the complaint for lack of personal jurisdiction the plaintiff bears the burden of showing that the court has personal jurisdiction over the defendant." FN92 Where, as here, "no evidentiary hearing [has been] held, the plaintiff typically meets this burden by making a prima facie showing that the exercise of personal jurisdiction is appropriate." FN93 "[I]n such a case, the record is construed in the light most favorable to the plaintiff." FN94

> FN92. *Newspan, Inc. v. Hearthstone Funding Corp.,* 1994 WL 198721, at *3 (Del. Ch. May 10, 1994).
>
> FN93. *Wolfe & Pittenger* § 3-3 (citing cases). Bibicoff argues, citing *Newspan,* 1994 WL 198721, at *3, that once a defendant questions the existence of personal jurisdiction over it, "a plaintiff cannot simply rest on the bare allegations in its complaint." BOB at 13. He further argues, again citing *Newspan,* that to meet its burden, "a plaintiff must offer 'affirmative proof in support of its contention that there is personal jurisdiction." *Id.* at 13. Bibicoff accurately restates *one* of the standards described by former Chancellor Allen in *Newspan,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 456786 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

The Chancellor did not, however, decide among the various standards he set out. See *Newspan,* 1994 WL 198721, at *3 ("I need not, however, for resolution of this case decide the Delaware rule...."). Later decisions of this Court have made clear that a plaintiff can, in fact, make the necessary prima facie showing using only the facts alleged in the complaint. See *Optimalcare, Inc. v. Hightower,* 1996 WL 417510 (Del. Ch. July 17, 1996) (denying a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction relying solely on facts as alleged in plaintiff's complaint despite quoting language from *Newspan* concerning plaintiff not resting on allegations in its complaint).

FN94. *Cornerstone Techs., LLC v. Conrad,* 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003).

Bibicoff does not dispute this Court's jurisdiction over him for purposes of CCWIPP's breach of loyalty claims. The actions giving rise to the alleged fraud claim in Count I of the Amended Complaint, however, occurred before Bibicoff's service as a director of Case Financial.[FN95] As such, this Court has jurisdiction over Bibicoff with respect to the fraud claim only if one of the 'exceptions' to the strict construction of Section 3114 applies.[FN96] This Court has "held that once jurisdiction is obtained pursuant to Section 3114, non-resident directors are properly before the court with respect to any claims that are sufficiently related to the cause of action asserted against such directors in their capacity as directors."[FN97]

> FN95. Am. Compl. ¶ 22 ("After the asset purchase transaction was completed, Defendants took on positions as directors and officers of Case Financial."). On or about May 24, 2002, the assets and business of Old Case became the assets and business of Case Financial, a Delaware corporation. *Id.* ¶ 11.
>
> FN96. See *Goodrich v. E.F. Hutton Group, Inc.,* 1987 WL 17045, at *1 (Del. Ch. Sept. 10, 1987) ("[Section 3114] does not contemplate consent by a director [to jurisdiction] for acts that were not performed in his capacity as a director.").

> FN97. *Wolfe & Pittenger* § 3-5[a] (citing cases).

In this case, whether the fraud claim is sufficiently related to the fiduciary duty claims against Bibicoff to give rise to personal jurisdiction depends on whether the claims arise out of the "same nucleus of operative facts."[FN98] Or, put another way, construing the Amended Complaint in the way most favorable to Plaintiff, as the Court must, is the fraud claim predicated on the same nucleus of facts as one of the fiduciary duty claims?[FN99]

> FN98. *Hovde Acquisition, LLC v. Thomas,* 2002 WL 1271681, at *4 n .16 (Del. Ch. June 5, 2002) (citing a case construing Section 3114 in the context of applying Delaware's implied consent statute for managers of limited liability companies).
>
> FN99. *Infinity Investors Ltd. v. Takefman,* 2000 WL 130622, at *6 (Del. Ch. Jan. 28, 2000) ("The Court of Chancery has held that once jurisdiction is properly obtained over a non-resident director defendant pursuant to § 3114, such non-resident director is properly before the court for any claims that are *sufficiently related to the cause of action* asserted against such directors in their capacity as directors. Here, Infinity's tort claim is predicated on the same set of facts as one of its breach of fiduciary duty allegations.... Clearly, the two claims are closely related.").

CCWIPP alleges in support of its fraud claim that, in conjunction with the asset purchase agreement between Asia Web and Old Case, Asia Web purchased certain notes from a financing group of which Gregory was a part.[FN100] The debtor on the notes was Old Case and they were in default. Defendants neither informed Asia Web that the notes were in default nor told Asia Web that, shortly after the asset purchase agreement closed, Bibicoff would transfer $458,000 in accounts receivable that could have been used to repay the notes to Case Funding, Inc. ("Case Funding"), an entity in which he had a significant, direct interest.[FN101] As a result of this nondisclosure and subsequent transfer, Plaintiff alleges Case Financial had to write off the value of the notes.[FN102]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN100. Am. Compl. ¶¶ 19-20.

FN101. *Id.* ¶¶ 20, 28. Plaintiff alleges, without greater specificity, that "Asia Web was not made aware that the notes were in default." *Id.* Reading this statement in the light most favorable to Plaintiff, the Court assumes that Plaintiff means *Defendants, including Bibicoff,* did not make Asia Web aware that the notes were in default. *See* Am. Compl. ¶ 85 ("Defendants ... made misrepresentations to Asia Web ... (d) by misrepresenting the value of the bridge financing group's Old Case notes.").

FN102. Am. Compl. ¶ 21, 89.

**\*12** In support of its breach of the duty of loyalty claim, Plaintiff alleges that Bibicoff transferred the same $458,000 in accounts receivable from Old Case to Case Funding instead of insisting that they be used to pay off the notes then owned by Case Financial.FN103 Bibicoff thus profited at the expense of Case Financial, Plaintiff argues, in violation of his duty of loyalty to Case Financial.FN104 Hence, Plaintiff's fraud claim is predicated on the same nucleus of facts as one of its fiduciary duty claims. In other words, both the fraud claim and the breach of the duty of loyalty claim depend on a number of the same facts. It is therefore proper as a matter of Delaware law for this Court to exercise personal jurisdiction over Bibicoff with respect to the fraud claim.

FN103. *Id.* ¶ 28.

FN104. *Id.* ¶¶ 29, 75(b).

It is also proper as a matter of constitutional law for this Court to exercise jurisdiction over Bibicoff as to the fraud claim. "[T]he due process clause of the Fourteenth Amendment [of the U.S. Constitution] requires that a nonresident defendant have 'minimum contacts' with the forum jurisdiction 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " FN105 "The touchstone of this minimum contacts analysis is foreseeability-whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." FN106 Bibicoff's acceptance of a position as a director of a Delaware corporation certainly should have made him aware of the possibility of being haled into court here.FN107 Further, having to defend against the fraud claim in Delaware cannot be said to be unfair or to offend notions of substantial justice when Bibicoff is already before this Court for alleged breaches of his fiduciary obligations to a Delaware corporation and that corporation was likely harmed as a result of his alleged fraud.FN108 Bibicoff will face only minimal inconvenience in having to respond to an additional claim in this action.

FN105. *Conrad,* 2003 WL 1787959, at \*13 (quoting *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945)).

FN106. *Wolfe & Pittenger* § 3-3 (internal quotation omitted).

FN107. *Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc.,* 1996 WL 608492, at \*5 (Del. Ch. Oct. 16, 1996) (holding that Section 3114 puts directors on notice of the possibility of being haled into court in Delaware); *cf. Conrad,* 2003 WL 1787959, at \*13 (observing that officer of Delaware LLCs should not be surprised at being haled into court here and exercising jurisdiction over nonresident officer); *see also Cairns v. Gelmon,* 1998 WL 276226, at \*3 (Del. Ch. May 21, 1998) (holding that act of incorporating a company under the laws of Delaware satisfied the minimum contacts requirement of *International Shoe* ); *Manchester v. Narragansett Capital, Inc.,* 1989 WL 125190, at \*7 (Del. Ch. Oct. 19, 1989) ("Furthermore, given the fact that the individual defendants are all ... directors of the corporation, it would be artificial to distinguish their actions as having been taken in different guises when, as directors, they control the corporation. In that capacity, they should expect to answer in a Delaware court for the contract actions related to plaintiff's breach of fiduciary duty claims.").

FN108. *See Manchester,* 1989 WL 125190, at \*7

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                                                    Page 17
Not Reported in A.2d, 2006 WL 456786 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

(although not discussing due process requirements, finding jurisdiction over nonresident director proper with respect to breach of contract claim where the same facts that gave rise to breach of fiduciary duty claims gave rise to the breach of contract claim).

### III. CONCLUSION

For the reasons stated, Alden's motion to dismiss the entire Amended Complaint because of the Release is granted as to the *Caremark* claim, but denied as to the fraud and duty of loyalty claims. Alternatively, Count II of the Amended Complaint-the *Caremark* claim-is dismissed as to Alden for failure to state a claim. The *Caremark* claim is similarly dismissed as to Bibicoff. Bibicoff's motion to dismiss Count I of the Amended Complaint-the fraud claim-for want of personal jurisdiction is denied. Alden's and Bibicoff's motions to dismiss the entire Amended Complaint because CCWIPP is an inadequate derivative plaintiff and because of an improper delegation by the Case Financial board of directors, respectively, are denied.

Pursuant to Rule 15(aaa), the dismissal of the *Caremark* claims against Alden and Bibicoff is with prejudice.

IT IS SO ORDERED.

Del.Ch.,2006.
Canadian Commercial Workers Industry Pension Plan v. Alden
Not Reported in A.2d, 2006 WL 456786 (Del.Ch.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1083984 (Trial Pleading) Answer to First Amended Derivative Complaint (Mar. 23, 2006)
• 2006 WL 1312062 (Trial Pleading) Answer to First Amended Derivative Complaint (Mar. 23, 2006)
• 2006 WL 1312061 (Trial Pleading) Answer to First Amended Derivative Complaint (Mar. 20, 2006)
• 2006 WL 842449 (Trial Motion, Memorandum and Affidavit) Brief in Support of Proposed Settlement between Canadian Commercial Workers Industry Pension Plan, Case Financial, Inc. and Defendants Gordon Gregory and Lorne Pollock (Feb. 21, 2006)

• 2005 WL 3670880 (Trial Motion, Memorandum and Affidavit) Plaintiff's Amended Memorandum of Law in Opposition to Defendants' Motions to Dismiss (Oct. 10, 2005)
• 2005 WL 2367774 (Trial Motion, Memorandum and Affidavit) Reply Brief of Defendants Harvey Bibicoff and Gordon Gregory in Support of their Motion to Dismiss (Aug. 31, 2005)
• 2005 WL 2367773 (Trial Motion, Memorandum and Affidavit) Defendant Eric Alden's Reply Brief in Support of his Motion to Dismiss Plaintiff Canadian Commercial Workers Industry Pension Plan's First Amended Derivative Complaint (Aug. 29, 2005)
• 2005 WL 2367775 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Defendant Lorne M. Pollock's Motion to Dismiss (Aug. 29, 2005)
• 2005 WL 2217516 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss (Aug. 12, 2005)
• 2005 WL 2217517 (Trial Motion, Memorandum and Affidavit) Opening Brief in Support of Defendant Lorne M. Pollock's Motion to Dismiss (Jul. 14, 2005)
• 2005 WL 2217514 (Trial Motion, Memorandum and Affidavit) Defendant Eric Alden's Opening Brief in Support of his Motion to Dismiss Plaintiff Canadian Commercial Workers Industry Pension Plan's First Amended Derivative Complaint (Jul. 13, 2005)
• 2005 WL 2217515 (Trial Motion, Memorandum and Affidavit) Opening Brief of Defendants Harvey Bibicoff and Gordon Gregory in Support of their Motion to Dismiss (Jul. 13, 2005)
• 2005 WL 1149801 (Trial Pleading) First Amended Derivative Complaint%n1%n (Apr. 25, 2005)
• 2005 WL 1410727 (Trial Pleading) First Amended Derivative Complaint%n1%n (Apr. 25, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.